IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| DOUGLAS MASTRIANO<br>*PLAINTIFF,*<br><br>v.<br><br>James Gregory, III<br>1509 Vandivort Place<br>Edmond, OK 73034<br><br>And<br><br>Roland Kuhn, the National Research Council of Canada, Paul Mazerolle, President and Vice-Chancellor, University of New Brunswick, Canada; David MaGee, Vice-President, Research; Drew Rendall, Dean, Graduate Studies; Jeff Brown; Cindy Brown; Stephen Dutcher; Sean Kennedy; Erin Morton; Matthew Sears; Lee Windsor; Stefanie Hunt-Kennedy; Carolyn MacDonald; Sasha Mullaly; Lisa Todd; Sarah-Jane Corke; Bonnie Huskins; Elizabeth Mancke; Janet Mullin; Angela Tozer; Margaret MacMillan; Robert Bothwell; John Ferris;<br>- *each in his or her individual capacity,*<br><br>And<br><br>University of New Brunswick, Canada,<br><br>And<br><br>National Research Council of Canada,<br><br>And<br><br>John & Jane Doe<br><br>*DEFENDANTS.* | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | CIVIL CASE NO. __CIV-24-567-F_____<br><br>JURY TRIAL DEMANDED<br><br><br>CIVIL RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO) CASE<br><br>SHERMAN ACT VIOLATIONS<br><br>18 U.S.C. § 1961-68 (RICO)<br><br>15 U.S.C. §§ 1-7 (SHERMAN ACT)<br><br>2 U.S.C. 441(E) (ELECTION INTERFERENCE)<br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff Douglas Mastriano, PhD. ("Colonel Mastriano"), for his complaint against Defendants ("Defendants") alleges as follows:

I.   INTRODUCTION

1

1. As a son of a career sailor, and with two brothers who served as Marines, Colonel Douglas Mastriano (U.S. Army, Retired) dedicated most of his adult life to his country. He was commissioned as an officer in 1986. His first assignment was with the 2nd Armored Cavalry Regiment (2ACR) based in Nuremberg, West Germany. The mission of the 2ACR was to defend freedom's frontier along the Iron Curtain borders of East Germany and Czechoslovakia. After witnessing the dramatic end of the Cold War, Colonel Mastriano and his regiment deployed to Saudi Arabia to serve as the spearhead in Desert Storm to liberate Kuwait. During Operation Desert Storm he nearly lost his life during a counterattack by the Iraqi 12th Armored Division.  In the 1990s and early 2000s, Mastriano supported the U.S. led missions in the Balkans (both in Bosnia and Kosovo) and served in an array of assignments around the nation. After 9/11, Colonel Mastriano was the lead planner for the plan to invade Iraq via Turkey, with the operational design to tie up 1/3 of Saddam Hussein's forces.  He also served three tours in Afghanistan and led men and women from eighteen diverse nations in NATO. He led one of the most successful multinational organizations there. Colonel Mastriano took the initiative to lead seven relief operations to aide Afghan orphans.  In 2010, he was one of only two colonels selected for the highly competitive PhD program at the U.S. Army War College. While serving as a Professor of the Army War College (PAWC),  Colonel Mastriano participated in six NATO operations in the Baltics.  As a result of this expertise, he was requested by the Chief of Staff of the Army (CSA) to lead an assessment of the security of the Baltic nations (Estonia, Latvia, Lithuania) to formulate ground-based recommendations of defending our NATO allies and deterring Russian aggression. Mastriano personally briefed the findings and recommendations to the CSA. This resulted in two multinational studies that bolstered our deterrence and assurance operations in the region as well as influencing our

posture in the region.  As a Military Intelligence officer, Colonel Mastriano passed eight intensive background investigations to receive and maintain the nation's highest security clearance of Top Secret/Special Compartmental Information (TS/SCI). Due to his honor, integrity and superior character, Mastriano maintained this TS/SCI access for the entirety of his 30 years of active military service. In addition to having access to the nation's most sensitive secrets, he was entrusted with running classified programs on three continents.  All while being entrusted with some of the nation's most sensitive secrets and operations.  In addition to his PhD, Mastriano is well respected academically, having three published books, two multinational studies as well as 30 plus articles on historic, military, or strategic matters. Mastriano is a much sought out speaker, having lectured or presented across the United States, as well as in Poland, Germany, United Kingdom, Canada, Belgium, Netherlands, Greece, Latvia, Estonia, France and Italy. He also has a bachelor's degree and four master's degrees in addition to a PhD. Colonel Mastriano is a highly decorated officer, a recipient of the Legion of Merit and sixteen other medals. He was one of only three officers in his class to make it to colonel. This was a direct result of over three decades of selfless service, excellence and maintaining his honor as well as his character and being above reproach.  His military service spanned three decades, which came with immense sacrifice and suffering for him and his family. This encompassed being assigned twelve years outside the country as well as twelve moves abroad or around the nation. Mastriano's service took a heavy toll on him, being assessed by the Veteran Affairs (VA) administration as 100% disabled.

2.  Colonel Douglas Mastriano is the victim of a multi-year racketeering and anti-trust enterprise seeking to derivatively steal, use and thereupon debunk his work, taking the equity and market therefrom, which is worth, in present value and future contracts, a minimum of $10

million in tourism-related events, validated museum artifacts, book, media, television and movie deals. This racketeering enterprise against Colonel Mastriano has extended for nearly four years, carried out by the named domestic and international Defendants, to fraudulently, and with extortion, steal his historic international recognition for his military archeological finds in the Argonne, France, steal his PhD in U.S. military history, steal his widely-published book sales, steal his lucrative and sustaining speaking engagements and professional opportunities, and steal his future equity contracts and royalties, all causing him permanent economic harm and deprivation of intangible and tangible property interests.

## II. Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and diversity jurisdiction between all parties. Douglas Mastriano sues under 18 U.S.C. 1961-68 for violations of the civil RICO act, 15 U.S.C. §§ 1-7 (Sherman Anti-Trust Act), 2 U.S.C. 441(E) (Election Interference) and common law claims.

4. Plaintiff seeks all available remedies including injunctive and declaratory relief, treble damages under 19 U.S.C. 1961-68, damages under all counts and reasonable attorney's fees and costs.

5. Defendants may not plead immunity under 28 U.S.C. chapter 97, The Foreign Sovereign Immunities Act (FSIA) because this Court has jurisdiction under the exceptions to that Act including 28 U.S.C. 1605(a)(1), Waiver by the University of New Brunswick accepting and signing commercial education payment agreements with the Plaintiff and with the Department of Defense for the education of its soldiers including Col. Mastriano, 28 U.S.C. 1605(a)(2), Commercial Activity, 28 U.S.C. 1605(a)(3), property taken by Defendants from Col. Mastriano that exists in the United States in connection with the commercial

activity of an international PhD program for United States military members which was carried out in the United States by Defendants, 28 U.S.C. 1605(a)(5) for tortious acts of fraud and RICO election interference.

6. Venue is proper in this judicial district pursuant to 18 U.S.C. 1965 and 28 U.S.C. 1391 because James Gregory III is subject to personal jurisdiction and resides in this district. All other defendants are subject to personal jurisdiction in this district by both diversity and supplemental jurisdiction and because a substantial part of the events giving rise to the claims occurred in this judicial district.

7. Furthermore, pursuant to section 1965(b) of RICO, process may be served in "any judicial district of the United States "when required by the ends of justice."  Courts have held that such "nationwide service of process" provisions also confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum sufficient contacts with the United States.

8. PARTIES

9.  Plaintiff Douglas V. Mastriano is a retired U.S. Army Colonel and 2013 graduate and PhD in military history recipient of the University of New Brunswick, former professor of the Army War College, is the current State Senator for the Commonwealth of Pennsylvania's 33rd District, was the 2022 Republican nominee for Governor and was considered the frontrunner for the 2024 U.S. Senate seat, with his principal residence in that state.

10. Defendant James Gregory III is a culpable person residing at 1509 Vandivort Pl., Edmond, Oklahoma 73034 and is a graduate student and PhD candidate at the University of Oklahoma, and adjunct professor at Rose State College, a community college in Midwest City, Oklahoma.  He has had repeated and ongoing contacts with Defendant University of New Brunswick and other defendants advancing the RICO scheme and Sherman Act

violations against Col. Mastriano, as well as the common law violations alleged herein. As a proximate cause from his actions, the violations of law and damages herein occurred.

11. Defendant Roland Kuhn is a self-proclaimed "mentor" of "student interns," and claims he has a "keen interest in research integrity" in his academic integrity attack on Col. Mastriano while admittedly citing only news articles. He is a so-called "Professional Research Officer (PRO) at the National Research Council of Canada (NRC) and "serves on PhD committees." As a proximate cause from his actions, the violations of law and damages herein occurred.

12. The National Research Council of Canada (NRC) is a government entity employing and/or sponsoring Roland Kuhn to publish and advance the scheme and pattern of racketeering activity against Col. Mastriano. They are located at 1200 Montreal Road, Building M-58, Ottawa, Ontario K1A-0R6. As a proximate cause from its actions, the violations of law and damages herein occurred.

13. Defendant Paul Mazzerolle is the president of the University of New Brunswick (UNB) and as such has the control and command of its staff, including its history and research departments. As a proximate cause from his actions, the violations of law and damages herein occurred.

14. Defendant David MaGee is Vice President and Director of Research at University of New Brunswick and in his role as such he controls, directs and has both permitted and advanced the acts alleged herein against Col. Mastriano. As a proximate cause from his actions, the violations of law and damages herein occurred.

15. Defendant Drew Rendall is Dean of Graduate Studies and the faculty member who, by immediate letter in opposition to the law, due process and Col. Mastriano's demands,

DocuSign Envelope ID: F3C83C6D-5AEC-4914-AC45-05B964E3F55D

released from embargo Col. Mastriano's dissertation thesis in a scheme to deprive him of his intangible property interests and rights under law.  As a proximate cause from his actions, the violations of law and damages herein occurred.

16. Defendant Jeff Brown is an American citizen and history department professor at UNB and has also served on the dissertation approval Board of UNB for Col. Mastriano's PhD., which was unanimously approved after intense and years-long work.  As a proximate cause from his actions, the violations of law and damages herein occurred.

17. Defendants Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, Elizabeth Mancke, Janet Mullin, Angela Tozer are each history professors, faculty or instructors at the University of New Brunswick and each have committed the violations of law alleged herein and have signed the fraudulent letter attached and sealed herewith as Exhibit D.  As a proximate cause from their actions, the violations of law and damages herein occurred.

18. Defendants Paul Mazzerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, Elizabeth Mancke, Janet Mullin, Angela Tozer, when not referred to individually, are collectively referred to as "University-associated defendants."  Their address is: Sir Howard Douglass Hall, Fredericton, NB E3B 5A3.

19. Defendants Margaret MacMillan, Robert Bothwell and John Ferris are members of the so-called "investigatory commission" into Col. Douglas Mastriano's PhD work and as such

DocuSign Envelope ID: F3C83C6D-5AEC-4914-AC45-058994E3F55D

have each committed the violations of law alleged herein.  As a proximate cause from their actions, the violations of law and damages herein occurred.

20. Defendant University of New Brunswick is a public university in Fredericton, Canada with a principal address of Sir Howard Douglass Hall, Fredericton, NB E3B 5A3.

21. Defendants are each sued in their individual capacities.

FACTUAL ALLEGATIONS

22. Defendants embarked on a racketeering enterprise to deprive Col. Mastriano of his intangible property interests in his PhD, his books, and his speaking engagements. Additionally, they did so while further taking specific actions in radio, newspaper and social media and e-mail in order to deprive him of his intangible property interests in his PhD, his books, media appearance, movie and television opportunities, interests in validated historical artifacts and tourism-related events.

23. These included a scheme of Defendants, UNB, Mazerolle, Rendall, MaGee, Gregory, and possibly others, to conspire to publicly release Col. Mastriano's embargoed PhD thesis to the world.  This resulted in a substantial loss and deprivation of his intangible property interests therein, and joining together with James Gregory III, a University of Oklahoma student who is seeking his own PhD in history in the same topic, to permit his fraudulent filing of academic complaints  use the theft of the formerly embargoed Col. Mastriano PhD thesis in Gregory's own research and work, misusing the same for use in the student's own book debunking Col. Mastriano's book on the same topic.  These acts caused an economic fraud on the market on the World War I topic regarding the history of the Argonne Allied victory, causing a deprivation of Col. Mastriano's property interest in his PhD, loss of economic value, threat of loss of all economic value and fraud against his international book sales, speaking engagements and international appearances, military history

engagements, and destruction of his intangible interests in seeking a seat in the United States Senate.

24. Defendants Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, Elizabeth Mancke, Janet Mullin, Angela Tozer signed a letter horrifically defaming Col. Mastriano after he hired counsel to oppose the "investigation" of his PhD granted 10 years prior under intense scrutiny. This letter, included as Exhibit D hereto, was a coordinated and hateful RICO violation predicate act designed to divest and cancel Col. Mastriano's intangible property interests.

25. These civil fraud, racketeering, and Sherman Act violations causing egregious threat of a lifetime of economic harm and total destruction of the intangible property interests of Col. Mastriano only escalated after he declared his candidacy for State Senate in 2019, and then again for Governor in 2022 and finally when his frontrunner status for United States Senate was announced, causing him to forgo such pursuits because of the election interference and theft of attack on the valuation of his property interests in his historical work.

26. The racketeering acts of and conspiracy by Defendants included at a minimum the joining together into an enterprise and scheme by James Gregory III and Defendants to mutually advance their property interests, tuition enrollments, and Gregory's international book sales.

27. In or about 2019, James Gregory III joined with unnamed persons to seek to debunk the archeological research of Col. Mastriano by seeking to undermine the world event 100th year anniversary of Sgt. Alvin York's heroic actions in the Argonne by communicating to

the military historical committee overseeing the event that "Colonel Mastriano's work is a fraud" or similar words.

28. On or about July 11, 2022, Dr. Drew Rendall, and University of New Brunswick, issued a letter releasing Col. Mastriano's embargoed PhD thesis against his request "effective immediately." (**Exhibit 1 ).**

29. In or about 2022, James Gregory III filed a false complaint with the University of New Brunswick seeking to debunk Colonel Mastriano's PhD thesis in order to cancel his books and his historical authority in the field of World War I history.

30. In or about 2022 James Gregory III made fraudulent statements to the press seeking to debunk and devalue Col. Mastriano's PhD thesis and books.

31. In or about 2022, the University of New Brunswick, and Defendants Paul Mazerolle and David MaGee made fraudulent statements to the press calling into question Col. Mastriano's PhD thesis and books, and informing the world that they had opened an investigation on James Gregory Jr.'s fraudulent complaint against Col. Mastriano.

32. In or about 2022, the University of Kentucky informed Colonel Mastriano that James Gregory III had filed complaints, using Col. Mastriano's released PhD thesis, with them against his books on Sgt. Alvin York, causing them to lose sales and to decide to scale back printing his books "until you can resolve this matter."

33. In or about 2023, James Gregory III made repeated fraudulent statements to the press against Col. Mastriano's books and thesis, and filed fraudulent complaints with the University of New Brunswick, seeking to steal his PhD, devalue and steal his market share, and place himself into the market limelight on the same historical matters, all while he was

DocuSign Envelope ID: F3C83G6D-5AEC-4914-9C4D-85B964E3FEED

publishing a book on the same topic entitled "The Myth of Sgt. York" and traveling and engaging in commerce with speaking engagements and events. **(Exhibits 2 & 3).**

34. The scheme included the unlawful publication to the world in 2023, led by Professor Brown who was also a member of the PhD oversight committee originally approving Dr. Mastriano's PhD thesis, of a public letter of denouncement of Col. Mastriano issued to the world attached hereto as **Exhibit 4** (filed under seal) trotted out and designed to falsely deprive him of both his intangible property interests in his books and speaking engagements but also in his seeking of the intangible interests in his government elected positions and candidacies. These attacks further escalated when he was considered the most formidable and likely candidate for U.S. Senate in 2023. It further included posts on Facebook posts, e-mails and letters disseminated to students, colleagues, and the world, as well as a concerted, bad faith effort to repeatedly open and close so-called investigations into his dissertation work which had been unanimously approved by the University 10 years before but repeatedly attacked by James Gregory III and Defendants joining and conspiring together since at least 2019.

35. The racketeering of Defendants includes, on information and belief, the efforts of James Gregory III and unnamed historians and authors competing in or about the year 2013 with Col. Mastriano in their archeology in the Argonne, France, including an attempt to nullify and shut down a historical trail honoring American 82nd Airborne hero Sergeant Alvin C. York established in the Argonne by the Mayor of the local village and Colonel Mastriano, to attempt to have the international community find against Col. Mastriano's discoveries and debunk and steal those discoveries, and in exchange for their theft of said recognition,

the establishment of alternative histories and the theft of Col. Mastriano's current and future royalties and intangible property interests in his discoveries and copyrighted works.

36. The fraud, racketeering, and intangible property loss of Col. Mastriano includes the unlawful leaking of his doctorate thesis and files in opposition to the University embargo, the law of educational privacy and due process, and the demands of Plaintiff through himself and through counsel.

37. The fraud, racketeering, and intangible property loss of Col. Mastriano includes a pattern of racketeering including at least two (2) predicate acts have been caused by Defendants in the last four years after the University Board voted unanimously in 2013 to confer the doctorate upon Col. Mastriano.

38. On or about April 26, 2023 a colleague of Col. Mastriano's at the United States Army War College who Col. Mastriano also recruited to enroll at University of New Brunswick and obtain a degree from the same via the USDOD scholarship program, contacted Col. Mastriano and informed him that the said University defendants who signed the fraudulent letter against Col. Mastriano advancing the RICO scheme and enterprise, had not only be disseminated to the American press and social media to the world, but had also been e-mailed by Defendant UNB to all current and former students of UNB, and on information and belief, other colleges, universities and news outlets.

39. This additional predicate act fraudulently using the electronic wires and mails of the United States by defendant signatories and University advanced the RICO scheme to deprive Col. Mastriano of his intangible property interests, and further deprived Col. Mastriano from having open doors for opportunities to teach at Universities, continued the depression of his book sales and interfered with his election campaign for the United States Senate.  His current authority

and work was negatively impacted with sleepless nights, physical illness and extreme emotional pain and suffering because of the horrific and false allegations in the letter defrauding him of his economic intangible and tangible property interests.

40. These acts by Defendants further constituted unreasonable interference with economic trade egregiously affecting Col. Mastriano's interstate and foreign commerce in violation of the Sherman Act by concerted action of each defendant in the distinct acts aforesaid in order to restrain Col. Mastriano from trade, use and profit of his tangible and intangible property, and as such each individual defendant herein is liable under that Act at a minimum for $1 million in civil penalties each and the University of New Brunswick is liable for up to $100 million.

41. These acts of and pattern of racketeering and interference with commerce were continuous, and satisfy the requirement that the last alleged act occurred within ten years after the commission of a prior act of racketeering activity, were not isolated, and are part of a continuity scheme and enterprise to deprive Col. Mastriano of his intangible and tangible property interests and further include the threat of ongoing criminal misconduct with open-pending "investigations" instigated at this moment with Defendants before the University of New Brunswick "investigation commission" with the threat of theft of Col. Mastriano's PhD once again set in for investigation of fraudulent allegations by Defendants James Gregory III by David MaGee, the "investigation committee" Defendants, and defendant University of New Brunswick, beginning again on June 1, 2024 by order of electronic e-mail fraud from David MaGee, the "investigation commission" and the University of New Brunswick.

42. The time, place and manner of the wire fraud by e-mail have occurred at numerous occasions, the above facts setting forth numerous dates, including but not limited to additional acts on information and belief including: September 9, 2022 (alleged communications with WHYY

calling into question Col. Mastriano's "academic credentials" which story was then widely published during his governor election campaign in order to interfere with his election); November 2, 2022 (90.5 WESA FM alleged communications running story publishing Col. Mastriano's "academic credentials called into question" in order to interfere with his election and defraud him of intangible property via foreign and interstate commerce); University of Calgary Journal publication about Prof. Kuhn hosting an event advancing the fraud against Col. Mastriano in or about June 2023 and publishing the same in or about July 31, 2023; March 3, 2023 at 2:53pm EST (email from MaGee/UNB with a re-opened investigation of allegations of "misconduct"); March 10, 2023 at 3:43pm EST (email from MaGree/UNB confirming receipt of letter from counsel exposing the Gregory fraud, while taking no action to close the reopened matter); March 26, 2023 at 1:33pm (email from MaGee/UNB indicating rebuttal of Col. Mastriano's concerns provided to UNB concerning the scheme by James Gregory Jr. and UNB to defraud being perpetrated via the reopened "investigation" of his PhD granted 10 years prior); April 28, 2023 (email from UNB counsel informing of refusal to take action to protect Col. Mastriano and instead furthering the pattern of racketeering by averring that the official letterhead and social media postings were the "personal views and opinions of the signatories of the letter and not the university's…" but that they would take no action to correct the scheme and instead Col. Mastriano would have to take action to do so and "contact the signatories directly" himself); December 12, 2023 (email from MaGee/UNB relaunching the "investigation committee" review claiming it was "granted additional time to investigate" Col. Mastriano beyond the 60 day window which closed in or about May 2023);

43. Defendant Ronald Kuhn ("Kuhn") advanced the fraudulent enterprise and public scheme joining with James Gregory III whom he refers to as a "respected historian" that "found

multiple instances of fraud in Col. Mastriano's thesis, falsely claiming UNB awarded Col.

Mastriano's PhD under "unusual circumstances" falsely alleging impropriety in order to

pressure UNB into reopening a debunked "investigation." In concert with Gregory's

complaint and UNB's appointment of a new "investigation committee," Kuhn published a

fraudulent article entitled "The Douglas Mastriano Scandal" on July 31, 2023 in the journal

"Canadian Perspectives on Academic Integrity", Vol. 6, No. 1(2023), all in order to defraud

Col. Mastriano from his PhD and intangible property and economic interests.  Kuhn's

statement that his views "focus on recent media coverage…[and as such his] references are

*all* drawn from the (mainstream) media" belie his fraud. He goes on to write "I am not

aware of *any* academic publications on this topic."(emphasis added).  He furthermore used

a two-day "Canadian Symposium for Academic Integrity (CSAI) 2023 program in June

2023 at the University of Toronto to scheme with UNB to fraudulently reopen a closed

investigation into Col. Mastriano's PhD to defraud him of his intangible property, while

openly claiming it was election related and citing additional false information in order to

defraud and extort him, including an extreme and malicious falsity and fraud that Col.

Mastriano was a "participant in…an invasion of the U.S. Capitol."  One of the UNB

"investigation committee" appointees was from the University of Toronto which had

hosted this fraudulent attack on Col. Mastriano's thesis.

44. Defendant Kuhn is also a culpable person and a member of a covered and culpable

organization which sponsored publication of the said fraud on Col. Mastriano's intangible

and tangible economic property, the National Research Council of Canada (NRC), under

the RICO Act and the Sherman Act.

45. These aforesaid acts of racketeering were perpetrated by James Gregory III in concert with Defendants David MaGee, Jeff Brown, the other named Defendants, and the University of New Brunswick, Canada.

Count One
Violation of Civil Racketeering Influenced and Corrupt Organizations (RICO)
18 U.S.C. 1962(c)
Conduct

46.  Col. Mastriano repeats and re-alleges each of the allegations in paragraphs 1-45.

47. Col. Mastriano brings this Count against all Defendants.

48. Defendants are engaged in and affecting interstate and foreign commerce, or are employed by, associated with, or joined in action with, the enterprise.  This includes, but is not limited to, the University of New Brunswick receiving money from the United States Department of Defense for the purpose of educating and providing graduate diplomas to United States members of the Armed Forces, and citizens of the United States of America.

49. The Count One Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff.  Specifically: the conduct and pattern of Defendants' scheme and enterprise was willful and included, with the aforementioned factual matters, 1) interfering with the American elections in the United States by releasing plaintiff's dissertation at the demands of his political enemies in violation of the embargo during his election for governor in order to harm him economically and give his private, protected educational records to those who sought to deny him elected office; 2) Countenancing and opening a false investigation in or about October 2022 at the height of his election campaign for Governor of Pennsylvania; 3) willful failure and refusal to notify and provide due process to Col. Mastriano concerning the "complaints" against him; 4) willful failure and

DocuSign Envelope ID: F3C83G6D-5AEC-4914-6C4B-85B961E3FEED

refusal to follow University and Tri-Agency ethics and professional rules regarding "investigation(s)" against him; 5) publication of a false and defamatory letter against Col. Mastriano to defraud him of his intangible property; 6) Countenancing and re-opening of a false investigation in or about March 2023; 7) Countenancing and, "extending" and/or re-opening of a false investigation of him in or about December 12, 2023; 8) Speaking to the American press criticizing and discussing his dissertation in violation of election inference law and student privacy law, in order to harm plaintiff's political chances and government service in the United States, all while UNB was using taxpayer funds from the United States and all to advance the deprivation of property interests in intangible economic loss to Col. Mastriano.

50. Defendant UNB and the UNB defendants joined and advanced the scheme and enterprise to reopen the fraudulent "investigation" with James Gregory III, who was publishing and marketing a competing book with Col. Mastriano's books on Sgt. Alvin York and the Argonne WWI battle(s), was a "museum" curator seeking to debunk artifacts discovered by Col. Mastriano, and was seeking to steal the market share and advance his speaking engagements and notoriety through the pattern of repeated false complaints and making those known to the media and to others.

51. The Civil Racketeering Influenced and Corrupt Organizations (RICO) statute prohibits Defendant organizations and culpable persons from committing a pattern of acts in violation of law designed to affect interstate or international commerce with injury to the person, business and property of Plaintiff. The Defendants have so joined themselves in "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 945-46 (2009)(quoting *United States* v.

DocuSign Envelope ID: F3C83G6D-5AEC-4914-ACAB-858964E3FEED

*Turkette*, 452 U.S. 576, 580 (1981). They have caused great economic and intangible property interest damages and pain and suffering injuries to plaintiff.

52. These acts set forth above and incorporated herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. 1961(5).

53. The Count One Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. 1962(c).

54. As a direct and proximate result of the Count One Defendants' racketeering activities and violations of 18 U.S.C. 1962(c) Plaintiff has been injured in his personal, intangible and tangible property interests, his business and in his economic opportunity in that he has lost economic interests in his books, in his teaching and speaking, in his University professorship opportunities, in his future book and movie/tv script opportunities and in his academic and property interests in his PhD.

55. WHEREFORE, Plaintiff requests this Court enter judgment against the Count One Defendants as follows: compensatory and consequential actual damages, emotional pain and suffering, treble damages, attorney's fees, costs and injunctive and declaratory relief in the form of an order removal of statements concerning this matter from any source and to prevent and restrain violations of Section 1962.

COUNT TWO
VIOLATION OF CIVIL RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS (RICO)
18 U.S.C. 1962(d)
CIVIL CONSPIRACY

56. Col. Mastriano repeats each of the allegations in paragraphs 1 through 55.

57. Col. Mastriano brings this Count against all Defendants.

58. Defendants agreed and conspired to violate 18 U.S.C. 1962(c) by conspiring to continuing

a pattern of racketeering towards Col. Mastriano by repeatedly over three years allowing false complaints against his PhD and leaking and/or sending the same to the press, by releasing his embargoed thesis to the public, on information and belief by Defendant Gregory contacting the University of Kentucky Press to call into question and disrepute Col. Mastriano's research and thesis in order to stop the publication of Col. Mastriano's books, and by Defendant Kuhn joining with false and fraudulent media claims sourced by Gregory and UNB defendants and actors including, but not limited to, Jeff Brown, for the unlawful purpose of intentionally defrauding Plaintiff of his tangible and intangible economic interests.

59.  Defendants are further liable for their willful and knowing joining into the RICO conspiracy by affixing their signatures during Col. Mastriano's election to bring him and his PhD work into disrepute, devaluation and economic loss, and to disseminate the fraud through and via the wires and electronic mails and social media, advancing a scheme which included the operation and management of a RICO enterprise meant to harm Col. Mastriano and which did harm him.

60. Defendants intentionally conspired to use the United States DOD contracted income to advance the scheme against the United States citizenry including Col. Mastriano, using this income indirectly as derived from the conduct and participation in the conduct, pattern and scheme of racketeering to pay its faculty signing the letters used to devalue his books and economic interests, to hold multi-year illegal investigations into his PhD granted 11 years ago, and to permit one of the actors and members of the RICO conspiracy by supporting the multi-year complaint filing and false attack on Col. Mastriano's PhD and repeated reopening of its fake "investigation" in order to profit off the same with his book

and speaking tour, namely, James Gregory III and the lectures and publications and academic advancement of Roland Kuhn, all at the economic deprivation of Col. Mastriano.

61. The conspiracy to advance the RICO enterprise against Col. Mastriano and his PhD and books is multi-national involving foreign commerce between the United States and Canada, and interstate involving conduct of Defendants in several U.S. states and at least two countries, the United States and Canada.

62. The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violation 18 U.S.C. 1962(c).

63. Defendants are liable for a RICO conspiracy as they knew or should have known that additional American antagonists with whom they joined in confederacy were part of a network of competing scholars who saw the elections of Col. Mastriano as their opportunity to file complaints with and push UNB in publicly defaming him, committing extortion and election interference, so that he might drop out of the election or lose.

64. The conspirator Defendants herein may not have nor need they have agreed to commit or facilitate each and every part of the substantive offense. *Howard*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). It is enough that they knew of the faculty's plan to defame, destroy and interfere with Col. Mastriano's election, and that he was standing for office when they did so, and that they affixed their signatures to the letter(s) and then published the same on the mails and wire of the United States and into the United States and Pennsylvania news media, disseminating their conspiracy to interfere with and destroy his election.

DocuSign Envelope ID: F3C83G6D-5AEC-4914-8C4B-85B964E3FEED

65. As a direct and proximate result of the Count One Defendants' racketeering activities, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. 1962(d) Plaintiff has been injured in his business and intangible and tangible property interests, in his economic opportunity in that he has lost economic interests in his books, in his teaching and speaking, in his University professorship opportunities, in his future book and movie/tv script opportunities and in his academic and property interests in his PhD.

66. WHEREFORE, Plaintiff requests this Court enter judgment against the Count One Defendants as follows: compensatory and consequential actual damages, emotional pain and suffering, treble damages, attorney's fees, costs and injunctive and declaratory relief in the form of an order removal of statements concerning this matter from any source and to prevent and restrain violations of Section 1962.

COUNT THREE

SHERMAN ANTI-TRUST ACT VIOLATION

UNREASONABLE RESTRAINT ON TRADE REGARDING PHD

15 U.S.C. §§ 1-7

67. Col. Mastriano repeats each of the allegations in paragraphs 1 through 66.

68. Col. Mastriano brings this Count against all Defendants.

69. This cause of action is brought under Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."

70. Defendants conspired to restrain trade and commerce internationally and intrastate by joining with James Gregory III to accept his complaints against Col. Mastriano's PhD and thesis, and books, all in exchange for Mr. Gregory's similar-topic book and speaking engagements would benefit and that UNB's economic opportunities would advance in the

face of smears of one of its students' Col. Mastriano.

71. Gregory, along with Defendants Jeff Brown and David MaGee, entered into agreements with UNB to have Col. Mastriano's thesis investigated, and then ensured that the whole world learned of his complaint by way of media publications immediately disseminated. These acts had the effect to unreasonable restrict Col. Mastriano's use of his PhD, publication and sales of his books and disruption of his speaking opportunities, especially on the issues of WWI history.

72. These actions of Defendants serve no legitimate or procompetitive purpose that could justify their anticompetitive effects, and thus illegally restrain competition on the marketing of Col. Mastriano's WWI history, books and have thus far prevented potential movie deals.

73. WWI history affects a substantial volume of international and interstate commerce.

74. Defendants have engaged in a continuous course of unlawful anticompetitive conduct which has harmed Gregory's primary competition.

75. The harm has been inclusive of thousands of the general economies and substantial residents of states, colleges, universities and high schools, as well as books stores worldwide and in particular in the United States and Europe, where Col. Mastriano's books and historical information has been in high demand since the 100th anniversary of the heroism of Sgt. Alvin York in 2018.

76. To date, Col. Mastriano's book publisher has greatly reduced publications and has halted the possible second editions planned for each of his books, after the anti-competitive actions of Defendants against his works began in or about 2020.

77. As a result of Defendants' anticompetitive conduct, Plaintiff Col. Mastriano has suffered

DocuSign Envelope ID: F3C83G6D-5AEC-4914-ACAB-858964E3FEFD

and continues to suffer damages.  Additionally, Plaintiff has suffered and continues to suffer irreparable injury for which no adequate remedy at law exists and therefore seeks an injunction ending Defendants' anticompetitive conduct.

COUNT FOUR

SHERMAN ANTI-TRUST ACT VIOLATION

UNLAWFUL TYING OF PHD TO ELECTIONS AND BOOK SALES

15 U.S.C. §§ 1-7

78.  Col. Mastriano repeats each of the allegations in paragraphs 1 through 77.

79. Col. Mastriano brings this Count against all Defendants.

80. This cause of action is brought under Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."

81. Defendants have illegally tied Gregory's conflicted and compromised complaints against Col. Mastriano's PhD to a widespread attack on his intangible voting rights and property interests including his elections and campaigns to public office and the publication of his books on Sgt. Alvin York and the WWI conflict in France.

82. Defendants have further tied these complaints to a widespread effort to prevent fair market opportunities with his earned PhD by making maliciously false accusations against Col. Mastriano regarding academic dishonesty, political viewpoints falsely imputed to him, and even malicious lies of violence.

83. The purpose and effect of this conspiracy to violate the Sherman Anti-Trust Act is to prevent Col. Mastriano from offering different story accounts and history regarding the heroism of Sgt. Alvin York and his miraculous victories on the battlefields of France.

84. These actions by Defendants are maliciously, falsely and with willful knowledge and

intent, driving down the economic interest, teaching professor status and payment, and value of his books and his speaking fees, while driving up the value of Gregory's book, speaking opportunities and teaching professor status.  Furthermore, it is reinventing history from only one perspective while willfully interfering in the commerce of alternative viewpoints and interpretations of actual, historical facts.

85. The purpose and intent of the actions of Defendants is to reduce procompetitive efficiencies from the market of higher education and to de-monetize Col. Mastriano's life's work in historical research and military science and knowledge.

86. There is no anticompetitive basis or interest for Defendants' actions, and alternatively, there are none that outweighs the anticompetitive effects of Defendants' actions that could not have been achieved by less anticompetitive and less harmful means.  For instance, Gregory's book and speaking engagements are his viewpoint with all the prejudices he brings to the subject, while presenting the same to the marketplace in competition with Col. Mastriano would be permissible.

87. This illegal tying of the conflicted Gregory's complaints with the Defendants concerted actions to harm Col. Mastriano in his business and personal property substantially affects interstate and foreign commerce in the tied market.  Thousands of schools, universities and students, as well as historians and the general public, are being impacted by the actions of Defendants unlawful anticompetitive tying actions in this market.

88. Defendants have engaged in a continuous course of unlawful anticompetitive conduct over the past three years in its ongoing attempt to destroy both of the competitive benefits of Col. Mastriano's works and PhD.

89.  Defendants' actions have harmed competition and the economy of Plaintiff in a manner

the antitrust laws were intended to prevent.  It is now difficult to obtain the once leading works on Sgt. Alvin York and the battles in the Argonne France by Col. Mastriano and his speaking and teaching opportunities are no longer offered.

90.  As a direct and proximate result Plaintiff has and continues to suffer damages, both actual and emotional.   Additionally, Plaintiff is suffering irreparable injury for which no adequate remedy at law exists and therefore seeks an injunction ending Defendants' anticompetitive conduct.

91. Plaintiff has a vested interest in preventing illegal competitive conduct against him and his intangible economic interests generally.

92.  Defendants have thus engaged in a *per se* illegal tying arrangement; the Court does not need to assess the anticompetitive effects of Defendant Gregory's product and conduct and Defendants' conduct in general or the purported justifications for the same. Alternatively only, even if Defendants' conduct does not constitute a *per se* illegal tie, an analysis of Defendants' tying arrangement demonstrates that it violates the rule of reason and is illegal.

93. As a result of Defendants' anticompetitive conduct, Plaintiff Col. Mastriano has suffered and continues to suffer damages.  Additionally, Plaintiff has suffered and continues to suffer irreparable injury for which no adequate remedy at law exists and therefore seeks an injunction ending Defendants' anticompetitive conduct.

### Count Five
#### Fraud

94. Col. Mastriano repeats each of the allegations in paragraphs 1 through 93.

95. Col. Mastriano brings this Count against the University of New Brunswick (UNB).

25

DocuSign Envelope ID: F3C83C66D-5AEC-4914-ACAB-85B964E3FEFD

96. In connection with the enrollment agreement of Col. Mastriano and the contract with the United States Department of Defense paying UNB significant funds to provide Col. Mastriano with the opportunity to complete and receive his PhD in History, UNB invoiced the United States and Col. Mastriano fees and tuition which were paid in exchange for the product of a completed educational research product and ultimate approval of his thesis and conferring of his degree.

97. After about seven years from the date of the conferring of his PhD, Defendant UNB began to systematically act with fraudulent intent to reopen the thesis unanimously approved and to begin an inquisition for political, anti-American reasons, defrauding Col. Mastriano and the United States.

98. Defendant UNB knew or should have known that the reopening of unanimously approved PhD in history conferred upon Col. Mastriano would result in severe economic loss and emotional damages, and that the payment of their expensive invoices on behalf of Col. Mastriano by the United States Department of Defense for overseeing and then conferring said degree would result in the tangible and intangible fraud because of the false and fraudulent scheme to reconsider Col. Mastriano's degree while having pocketed the money for full payment of the same over 10 years before

99. As a direct and foreseeable result of the foregoing, Col. Mastriano has been damaged in an amount to be determined at trial but not less than $10,000,000.

### COUNT SIX

### AIDING AND ABETTING

### BREACH OF FIDUCIARY DUTY

100. Col. Mastriano repeats each of the allegations in paragraphs 1 through 99.

101. Col. Mastriano brings this Count against the University of New Brunswick (UNB) and

University-associated defendants.

102. The tuition and costs invoices billed to Col. Mastriano in exchange for the oversight and final conferring of his PhD in history were timely paid in full, causing the United States and Colonel Mastriano to rely on the fiduciary relationship and management of said payments to the University.

103. The University had actual knowledge that the work performed in advance of the degree review and under the oversight of the history and research departments was satisfactory such that it both issued Col. Mastriano a PhD degree in history and collected money from him and on his behalf to fully pay for the degree.

104. The university-associated defendants also had actual knowledge that Col. Mastriano had been awarded a PhD in history by UNB.

105. Even with this actual knowledge, said Defendants participated in the acts and conduct alleged herein to seek to publicly investigate, 10 years later during the height of Col. Mastriano's political campaign in the United States, Col. Mastriano's PhD.

106. The said Defendants reaped the benefit of the financial payments of Col. Mastriano and the United States Department of Defense by virtue of their salaries, positions, retirement and benefits, and other benefits as professors and staff at UNB and by UNB with the direct receipt of said funds.

107. By virtue of the said acts and conduct alleged herein, Defendants provided substantial assistance to, and aided and abetted, UNB in breaching its fiduciary duties to Col. Mastriano and to the United States.

108. As a direct and foreseeable result of the foregoing, Col. Mastriano has been damaged in an amount to be determined at trial but not less than $10,000,000.

## Count Seven

### Breach of Contract

109. Col. Mastriano repeats each of the allegations in paragraphs 1 through 108.

110. Col. Mastriano brings this Count against the University of New Brunswick (UNB), Professor David MaGee and President Paul Mazerolle.

111. The enrollment agreement between Col. Mastriano and UNB and unanimous conferring of the PhD by UNB upon Col. Mastriano governed the payment of funds to UNB in exchange for the oversight, review, and approval of Col. Mastriano's work and thesis.

112. In exchange for successful completion of segments of each academic requirement, Col. Mastriano and the United States would forward payments on account upon invoicing for the same by the University.

113. Conditional upon advancement in the degree program at UNB was the intense review process, successful affirmation of satisfactory work and express authorization by UNB for Col. Mastriano to proceed at each stage of his degree program.

114. With each stage of successful completion, UNB invoiced and received payment from and on behalf of Col. Mastriano and applied said funds to Col. Mastriano's account for the purpose of degree completion.

115. Defendants willful reopening, after 10 years and upon political and professional bias, Col. Mastriano's degree review process by way of the unlawful "investigation committee" constituted a material breach of the agreements of UNB with Col. Mastriano.

116. As a direct result of the above breach of contract, Col. Mastriano has suffered damages in an amount to be determined at trial but not less than $10,000,000.

## Count Eight

### Negligence

117. Col. Mastriano repeats each of the allegations in paragraphs 1 through 116.

118. Col. Mastriano brings this Count against the University of New Brunswick (UNB), and the university-associated defendants.

119. Said Defendants each owed a duty of care to Col. Mastriano because Col. Mastriano is the beneficiary of the receipt of a unanimously conferred and intensely critiqued PhD in history, and because said Defendants are each recipients of monetary benefit from the payments to UNB by Col. Mastriano and the United States on his behalf.

120. Defendants knew or should have known that Col. Mastriano would be relying on them to exercise reasonable care in directing, authorizing, overseeing, critiquing, granting and conferring his PhD, and the professional support as colleagues owed by the duty of UNB colleagues pursuant to the University and Tri-Agency Framework policies for researchers.

121. But for Defendants' gross and common negligence, Col. Mastriano would not have his degree from UNB publicly maligned and devalued, his speaking tours canceled, and his book sales canceled and/or greatly depressed.

122. As a direct and proximate result of said Defendants' negligence, Col. Mastriano suffered damages in an amount to be determined at trial but not less than $10,000,000.

COUNT NINE

DEFAMATION

123. Col. Mastriano repeats each of the allegations in paragraphs 1 through 122.

124. Col. Mastriano brings this Count against all Defendants.

125. On or about the summer of 2023 and prior, Defendants made statements, including but not limited to Exhibit D under seal, that exposed Col. Mastriano to public hatred, contempt, ridicule and disgrace.

DocuSign Envelope ID: F3C83G6D-5AEC-4914-ACAB-858964E3FFEFD

126. Defendants communicated these statements in writing (libel) and orally (slander) to the world via electronic wires, social media, speaking events and interactions, and the public airways and media, and to Col. Mastriano's colleagues and fellow former classmates at UNB, including by way of e-mailing students and/or former students.

127. The individuals who heard and read the defamatory statements reasonably understood the statements to be about Col. Mastriano because they named him directly and opined about him as a person including his involvement in service to the United States and/or Commonwealth of Pennsylvania, ensuring that he was identified by all who read their defamation.

128. The statements were false and horrific, and all allegations were known to be false by Defendants when they made the same with malice aforethought.

129. The statements caused Col. Mastriano to suffer great financial loss, emotional injuries and a loss of reputation such that his professional and personal damages are extreme.

130. As a direct and proximate result of said Defendants' statements, Col. Mastriano has suffered damages in an amount to be determined at trial but not less than $10,000,000.

REQUEST FOR RELIEF

WHEREFORE, Col. Mastriano respectfully asks this Court to grant the following relief:

1. .Entering judgment in favor of Col. Mastriano in a final order against each of the Defendants;

2. Awarding actual damages including compensatory, consequential and nominal, treble damages, emotional and pain and suffering damages, punitive damages, equitable relief in the form of a declaratory judgment and injunction, pre-judgment interest, post-judgment interest and attorney's fees, and costs of suit; and

3. All other relief provided by law and/or as the interests of justice requires.

UNSWORN PLAINTIFF'S VERIFICATION PURSUANT TO 28 U.S.C. §1746

I DECLARE AND VERIFY, UNDER PENALTY OF PERJURY, THAT THE FOREGOING FACTS AND MATTERS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

EXECUTED ON: _5/31/2024_____

*Douglas Mastriano* _____
98508DFC9183493
COLONEL DOUGLAS MASTRIANO (USA, RET.)

RESPECTFULLY SUBMITTED THIS 31ST DAY OF MAY, 2024.

/S/DANIEL L. COX
LEAD COUNSEL
DANIEL L. COX
U.S. WESTERN DISTRICT OKLAHOMA BAR NO. 2490
THE COX LAW CENTER, LLC
P.O. BOX 545
EMMITSBURG, MD 21727
PH: 410-254-7000
E-MAIL: dcox@coxlawcenter.com
LEAD COUNSEL FOR PLAINTIFF

RICHARD WHITE, ESQ.
BARBER & BARTZ
TULSA, OK
PH: 918-599-7755
E-MAIL: rwhite@barberbartz.com
U.S. WESTERN DISTRICT OF OKLAHOMA BAR NO. 9549
LOCAL COUNSEL FOR PLAINTIFF

DEMAND FOR TRIAL BY JURY

PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE.

/S/DANIEL L. COX
COUNSEL FOR PLAINTIFF