## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

*PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council
of Canada, Paul Mazerolle, President and
Vice-Chancellor, University of New
Brunswick, Canada; David MaGee, Vice-
President, Research; Drew Rendall, Dean,
Graduate Studies; Jeff Brown; Cindy Brown;
Stephen Dutcher; Sean Kennedy; Erin
Morton; Mattew Sears; Lee Windsor; Stefanie
Hunt-Kennedy; Carolyn MacDonald; Sasha
Mullaly; Lisa Todd; Sarah-Jane Corke;
Bonnie Huskins; Elizabeth Mancke; Janet
Mullin; Angela Tozer; Margaret MacMillan;
Robert Bothwell; John Ferris;
-   *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

*DEFENDANTS*.

Case No.: 5:24-cv-00567-F

Assigned to the Hon. Stephen P. Friot

## CERTAIN DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 3

        A.      The Plaintiff and the University Defendants ........................................... 3

        B.      The Underlying Dispute and The Alleged "Scheme" ............................ 4

        C.      Procedural History ................................................................................. 5

III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
        UNIVERSITY DEFENDANTS ............................................................................ 5

        A.      The University Defendants are Instrumentalities of a Foreign Government ........ 6

        B.      Service on the Individual Defendants Was Not Properly Made .......................... 9

        C.      No Exceptions to the Immunity Provides by the FSIA Apply ........................... 10

                1.      The waiver exception does not apply as Plaintiff has failed to provide evidence
                        establishing either an express or implied waiver. ............................................ 10

                2.      The commercial activity exception does not apply as Plaintiff has failed to
                        provide evidence of commercial activities. .................................................... 11

                3.      The expropriation exception does not apply as Plaintiff has failed to show that
                        the University Defendants "took" property from him. .................................... 12

                4.      The tortious acts exception does not apply as any act allegedly done by the
                        University Defendants did not occur in the United States. ............................. 13

IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE UNIVERSITY
        DEFENDANTS .................................................................................................. 14

        A.      A Due Process Analysis Applies to the Question of Personal Jurisdiction ......... 15

        B.      This Court Does Not Have General Jurisdiction Over the University Defendants
                as All are Domiciled in Canada ....................................................................... 16

        C.      This Court Does Not Have Specific Jurisdiction Over the University Defendants
                as They Do Not Have Sufficient Minimum Contacts and the Exercise of

Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice ................................................................................................................ 17

1.  The University Defendants do not have sufficient minimum contacts with the forum ..................................................................................................... 17

    a.  There are no allegations that UNB purposefully directed its activities at the United States .......................................................................... 18

    b.  There are no allegations that the Individual Defendants purposefully directed their activities at the residents of Oklahoma. ................................... 19

2.  The exercise of personal jurisdiction over the University Defendants offends traditional notions of fair play and substantial justice. .................................... 19

V.  THE INDIVIDUAL DEFENDANTS WERE NOT PROPERLY SERVED .......... 23

VI.  PLAINTIFF FAILS TO STATE A CLAIM ............................................... 25

A.  Plaintiff Has Failed to State a Claim in Support of a RICO Violation in Counts One and Two ...................................................................................... 25

B.  Plaintiff Fails to Plead a Sherman Act Violation in Counts Three and Four ...... 26

C.  Plaintiff Fails to Plead a Fraud Claim in Count Five ........................................ 27

D.  Plaintiff Fails to Plead an Aiding and Abetting Claim in Count Six ................. 28

E.  Plaintiff Fails to Plead a Breach of Contract Claim in Count Seven ................. 29

F.  Plaintiff Fails to Plead a Negligence Claim in Count Eight ............................. 30

G.  Plaintiff Fails to Plead a Defamation Claim in Count Nine .............................. 31

VII.  LEAVE TO AMEND WOULD BE FUTILE ............................................. 32

VIII.  CONCLUSION ................................................................................. 33

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Rectors & Visitors of George Mason Univ.*, No. 1:15CV879
    JCC/MSN, 2015 WL 5638102 (E.D. Va. Sept. 23, 2015) ............................ 7

*Almeida v. BOKF, NA*,
    471 F. Supp. 3d 1181 (N.D. Okla. 2020) .................................................. 28, 29

*Andrews v. Heaton*,
    483 F.3d 1070 (10th Cir. 2007) ..................................................................... 26

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989) ........................................................................................ 6

*Asahi Metal Indus. Co. v. Superior Court of Calif.*,
    480 U.S. 102 (1987) ................................................................................. 17, 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 25

*Barrett v. Tallon*,
    30 F.3d 1296 (10th Cir. 1994) ...................................................................... 28

*Bayro v. State Farm Fire and Cas. Co.*,
    No. Civ-14-1084-D, 2015 WL 4717166 (W.D. Okla., Aug. 7, 2015) ...................... 29

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................... 25

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) .............................................................. 20, 21

*Bowman v. Presley*,
    212 P.3d 1210 (Okla. 2009) .......................................................................... 28

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*,
    429 U.S. 477 (1977) ...................................................................................... 27

*Chettri v. Nepal Rastra Bank*, 834 F.3d 50 (2d Cir. 2016) ............................ 12

*Chuidian v. Philippine Nat'l Bank*,
    912 F.2d 1095 (9th Cir. 1990) ........................................................................ 7

iii

*Cohimia v. Ardent Health Services, L.L.C.*,
    448 F. Supp. 2d 1253 (N.D. Okla. 2006) ................................................... 31

*Cooper v. Bondoni*,
    841 P.2d 608 (Okla. Ct. App. 1999) ........................................................ 29

*Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T*
    *Respect*, 89 F.3d 650 (9th Cir. 1996) ...................................................... 8

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) .............................................................. 16

*Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842
    (D. Me. Feb. 5, 2013), *aff'd*, No. 1:12-CV-193-DBH, 2013 WL 685668
    (D. Me. Feb. 25, 2013) ........................................................................ 9

*Deck v. Engineered Laminates*,
    349 F.3d 1253 (10th Cir. 2003) .............................................................. 26

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
    946 F.3d 1223 (10th Cir. 2020) .............................................................. 15

*Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834 (Okla. 2001) .............. 29, 30

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
    514 F.3d 1063 (10th Cir. 2008) .............................................................. 16

*Goel v. Am. Digital Univ., Inc.*,
    No. 14-CV-1895 (KBF), 2017 WL 1082458 (S.D.N.Y. Mar. 21, 2017) .................... 12

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*,
    190 F.3d 1156 (10th Cir. 1999) .............................................................. 6

*Hood v. Am. Auto Care, LLC*,
    21 F.4th 1216 (10th Cir. 2021) ........................................................... 16, 17

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir.
    2000) ................................................................................... 15, 20

*Intercontinental Dictionary Series v. De Gruyter*,
    822 F. Supp. 662 (C.D. Cal. 1993) ........................................................ 7, 14

*Irizarry-Mora v. Univ. of Puerto Rico*,
    647 F.3d 9 (1st Cir. 2011) ................................................................... 7

*Jackson v. GreerWalker, LLP*,
　2018 WL 894873 (N.D. Okla. Feb. 14, 2018) ............................................................ 28

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
　213 F.3d 841 (5th Cir. 2000) ...................................................................................... 7

*Koch v. Koch Indus.*,
　203 F.3d 1202 (10th Cir. 2000) ................................................................................ 28

*Lane v. Simon*,
　495 F.3d 1182 (10th Cir. 2007) ................................................................................ 25

*Monge v. RG Petro-Mach. (Grp.) Co.*,
　701 F.3d 598 (10th Cir. 2012) .................................................................................. 15

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
　149 F.3d 1086 (10th Cir. 1998) ........................................................ 14, 17, 20, 21, 22

*Orient Min. Co. v. Bank of China*,
　506 F.3d 980 (10th Cir. 2007) .................................................................................... 6

*Paccar Int'l., Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065
　(9th Cir. 1985) .......................................................................................................... 22

*Persinger v. Islamic Republic of Iran*,
　729 F.2d 835 (D.C. Cir. 1984) .................................................................................. 14

*U.S. ex. rel. Ritchie v. Lockheed Martin Corp.*,
　558 F.3d 1161 (10th Cir. 2009) ................................................................................ 32

*In re Rivera Torres*,
　432 F.3d 20 (1st Cir. 2005) ....................................................................................... 11

*Rudman v. Oklahoma ex rel. Bd. of Regents for the Reg'l Univ. Sys. of*
*Oklahoma*,
　No. CIV-22-0091-F, 2022 WL 17083406 (W.D. Okla. Nov. 18, 2022) .............. 23, 24

*Saudi Arabia v. Nelson*,
　507 U.S. 349 (1993) ................................................................................................... 10

*Shapiro v. Republic of Bolivia*,
　930 F.2d 1013 (2d Cir. 1991) .................................................................................... 11

*Supra Med. Corp. v. McGonigle*, 955 F.Supp. 374 (E.D.Pa. 1997) .................................. 7

*Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority*,
  325 F.Supp.2d 15 (D.R.I. 2004) ................................................................. 11

*Sturgeon v. Retherford Publications, Inc.*,
  987 P.2d 1218 (Okla. Civ. App. Div. 4, 1999) ......................................... 31

*Systemcare, Inc. v. Wang Laboratories Corp.*,
  117 F.3d 1137 (10th Cir. 1997) ................................................................. 27

*Tal v. Hogan*,
  453 F.3d 1244 (10th Cir. 2006) ........................................................... 25, 27

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*,
  488 F.3d 1282 (10th Cir. 2007) ........................................................... 20, 21

*Tripati v. Beaman*,
  878 F.2d 351 (10th Cir. 1989) ................................................................... 32

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
  964 F.2d 1022 (10th Cir. 1992) ................................................................. 27

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*,
  821 F. Supp. 1405 (D. Colo. 1993), *aff'd*, 33 F.3d 1232 (10th Cir. 1994) ................. 16

*Wofford v. Eastern State Hospital*,
  795 P.2d 516 (Okla. 1990) ......................................................................... 30

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ................................................................................... 17

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ................................................................. 11

*XMission, L.C. v. Fluent LLC*,
  955 F.3d 833 (10th Cir. 2020) ............................................... 14, 15, 17, 18

**Federal Statutes**

18 U.S.C. § 1341 ............................................................................................ 26

18 U.S.C. § 1343 ............................................................................................ 26

28 U.S.C. § 1602 .............................................................................................. 6

28 U.S.C. § 1603 ........................................................................................... 6, 7

28 U.S.C. § 1604 ............................................................................................................. 6

28 U.S.C. § 1605 ............................................................................................ 10, 11, 12, 13

28 U.S.C. § 1608 ...................................................................................... 9, 10, 15, 16, 23

18 U.S.C. § 1961 ........................................................................................................... 25

18 U.S.C. § 1962 ........................................................................................................... 26

18 U.S.C. § 1965 ........................................................................................................... 16

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 4 .................................................................................................. 2, 15, 23

Fed. R. Civ. P. 9 ...................................................................................................... 26, 28

Fed. R. Civ. P. 12 .............................................................. 1, 2, 3, 6, 14, 22, 23, 24, 25

Fed. R. Civ. P. 15 ........................................................................................................ 32

## Oklahoma Statutes

Okla. Stat. tit. 12, § 95 ................................................................................................ 31

## New Brunswick Statutes

23 Victoria – Chapter 63 (1859) ................................................................................... 8

The University of New Brunswick Act, SNB 1984 ........................................................ 8

## New Brunswick Rules of Court

Rules of Court, N.B. Reg. 82-73, 18.01 ...................................................................... 24

Rules of Court, N.B. Reg. 82-73, Rule 18.02 ............................................................. 24

Rules of Court, N.B. Reg. 82-73, Rule 18.03 ............................................................. 24

Rules of Court, N.B. Reg. 82-73, Rule 18.04 ............................................................. 24

## International Treaties

Convention Done at the Hague ............................................................................... 23, 24

**Restatements**

Restatement (Second) of Torts § 558 (1977) ..................................................................... 31

NOW COME Defendants the University of New Brunswick (identified in the Complaint as "University of New Brunswick, Canada," and referred to herein as "UNB") and its alleged administrators and staff members Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, and Angela Tozer (the individuals are collectively referred to as "Individual Defendants," and the Individual Defendants and UNB are collectively referred to as "the University Defendants") and respectfully requests that this Court dismiss the Complaint of Plaintiff Douglas Mastriano ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). In support of their Motion, the University Defendants state as follows:

## I.   <u>INTRODUCTION</u>

This is a dispute over academic protocol that should be resolved by an educational committee but instead has been dressed up as an international conspiracy. As alleged in Plaintiff's Complaint, he received a Ph.D. from UNB, and years later, questions were raised as to the credibility of Plaintiff's research that served as the basis for his doctoral thesis, and UNB investigated those same questions. (Doc. # 1 at ECF pp. 10, 13). However, according to Plaintiff, this exercise in academic analysis and protocol constituted racketeering, anti-trust violations, and an endless parade of horribles that caused Plaintiff unspecified economic harm.

While the University Defendants vehemently deny the allegations brought against them, the threshold issue for the Court to decide is whether the Court has jurisdiction over

the University Defendants. It does not. This Court lacks subject matter jurisdiction over the University Defendants. As an instrumentality of Canada, the University Defendants are entitled to immunity against Plaintiff's claims pursuant to the Foreign Sovereign Immunities Act ("FSIA"). This Court lacks subject matter jurisdiction and, pursuant to Fed. R. Civ. P. 12(b)(1), should dismiss all claims against the University Defendants.

Additionally, this Court lacks personal jurisdiction over all the University Defendants. As alleged in Plaintiff's Complaint, all the University Defendants are in Canada, and all their alleged wrongdoing occurred in Canada. There are no allegations that University Defendants ever purposely directed their activities at residents of Oklahoma (Plaintiff is a citizen of Pennsylvania). In fact, Oklahoma and this Court have no interest in Plaintiff's dispute with the University Defendants. It would offend traditional notions of fair play and substantial justice to force the University Defendants to litigate these allegations in Oklahoma. Thus, pursuant to Fed. R. Civ. P. 12(b)(2), this Court should dismiss all claims against the University Defendants due to a lack of personal jurisdiction.

Furthermore, the claims against the Individual Defendants should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) as none of them were served in a manner consistent with Fed. R. Civ. P. 4. Alternatively, the Court should quash service on each of the Individual Defendants.

Finally, even if the Court were to have jurisdiction, if the Individual Plaintiffs were to have been properly served and even accepting all of Plaintiff's disorganized and speculative allegations as true, Plaintiff has nonetheless failed to state a legally cognizable

claim against the University Defendants. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's claims against all the University Defendants should be dismissed.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

For the purposes of this Motion to Dismiss, the University Defendants have generally presented the facts as alleged in Plaintiff's Complaint. However, the University Defendants do not admit that these facts are true and expressly reserve the right to challenge these facts in this litigation, including in discovery and at trial.

### A.     The Plaintiff and the University Defendants

In 2013, UNB awarded Plaintiff a Ph.D. in military history. (Doc. # 1 at ECF p. 5). Plaintiff has since published books, written several articles, and given historical lectures or presentations. (*Id.* at ECF p. 3). Plaintiff is also a Pennsylvania State Senator and, in 2022, Plaintiff unsuccessfully ran for governor of Pennsylvania. (*Id.* at ECF p. 5).

UNB is a public university located in Fredericton, New Brunswick, Canada. (*Id.* at ECF p. 8). Dr. Mazerolle is allegedly the president of UNB. (*Id.* at ECF p. 6). Dr. MaGee is allegedly the Vice President and Director of Research at UNB. (*Id.*). Dr. Rendall is allegedly the Dean of Graduate Studies at UNB (in fact, he is the past Dean of Graduate Studies). (*Id.* at ECF pp. 6-7). The remaining Individual Defendants are allegedly history professors, faculty members, or instructors at UNB or were at the time of the allegations

contained in Plaintiff's Complaint. (*Id.* at ECF p. 7). Plaintiff admits that all the addresses for the University Defendants are in New Brunswick, Canada. (*Id.* at ECF pp. 7-8).[1]

**B.      The Underlying Dispute and The Alleged "Scheme"**

In 2019, James Gregory III, a graduate student at the University of Oklahoma. (*Id.* at ECF p. 5), allegedly joined with "unnamed persons" to debunk Plaintiff's academic research pertaining to the topic of Plaintiff's Ph.D. thesis. (*Id.* at ECF pp. 9-10). Mr. Gregory allegedly called Plaintiff's work on this topic a "fraud." (*Id.* at ECF p. 10).

At the time that Mr. Gregory brought allegations against Plaintiff's academic research, Plaintiff's Ph.D. thesis was "embargoed," meaning that it was not available to the public. Plaintiff requested that UNB continue the embargo until 2030. On July 11, 2022, Dr. Rendall is alleged to have written to Plaintiff denying his request to keep his thesis embargoed. In his letter to Plaintiff, Dr. Rendall explained that University guidelines provided for a maximum embargo duration on a graduate thesis for only 4-years. Therefore, the embargo on Plaintiff's thesis would "be removed, effective immediately, in order to uphold long-standing policy and ensure appropriate accessibility of publicly funded research and scholarly activity." (*Id.* at ECF p. 10; Doc. # 1-1 at p. 2).

In 2022, Mr. Gregory is alleged to have filed a "false" complaint with UNB, again raising questions about the validity of the research contained in Plaintiff's thesis. (Doc. # 1 at ECF p. 10). In October 2022, UNB opened an investigation into Plaintiff's Ph.D. based

---

[1] Unfortunately, Dr. Mancke passed away in 2023. Her passing has been the subject of several publicly accessible memorials. Nevertheless, as noted below, Plaintiff attempted to serve Dr. Mancke, a deceased individual. Dr. Mancke's Estate joins in this Motion.

on the issues raised in Gregory's complaint. (*Id.* at ECF p. 16). UNB, Dr. Mazerolle, and Dr. MaGee also allegedly made statements to the press calling into question Plaintiff's thesis and books and informing the world that they had opened an investigation. (*Id.* at ECF p. 10). Around the same time, Mr. Gregory also made a complaint to the University of Kentucky, Plaintiff's publisher, which allegedly led to lost sales and a decision by the University of Kentucky to scale back printing of Plaintiff's books. (*Id.*).

In 2023, several Individual Defendants allegedly signed a "public letter of denouncement" concerning Plaintiff that was allegedly disseminated to the press and to current and former students of UNB. (*Id.* at ECF pp. 7, 11-12; *see* Docs. # 1-4).

Plaintiff alleges that, through the actions mentioned above, Mr. Gregory and the University Defendants joined and conspired together in a "scheme" that deprived Plaintiff "from having open doors for opportunities to teach at Universities, continued the depression of his book sales, and interfered with his election campaign for the United States Senate." (Doc. # 1 at ECF pp. 12-13).

### C.    Procedural History

On May 31, 2024, Plaintiff filed his Complaint. (Doc. # 1). On July 16, 2024, Plaintiff attempted to serve the University Defendants by delivering Summonses and the Complaint to UNB's President's Chief of Staff. (Doc. # 8).

### III.   <u>THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE UNIVERSITY DEFENDANTS</u>

The FSIA provides the exclusive means by which federal and state courts may obtain subject-matter jurisdiction over civil suits involving foreign states, their agencies,

or instrumentalities. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). This Court should dismiss the University Defendants from this suit under FSIA, which requires the court to address three related questions at the outset: (1) is the defendant a "foreign state or government" within the meaning of the statute; (2) has valid service been made as provided by statute; and (3) does a valid statutory exception to immunity apply? 28 U.S.C. § 1602 *et seq*.; *see generally Orient Min. Co. v. Bank of China*, 506 F.3d 980, 991-992 (10th Cir. 2007).

It is Plaintiff's burden to provide evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence. *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n. 5 (10th Cir. 1999). Plaintiff has not done so here. Accordingly, the University Defendants are immune from suit and the claims against them must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## A.   The University Defendants are Instrumentalities of a Foreign Government

A "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," subject to limited exceptions. 28 U.S.C. § 1604. A "foreign state" is either a political subdivision of a foreign state or an agency or instrumentality of a foreign state. 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" includes any entity that is "a separate legal person," "an organ of a foreign state," and not organized under the laws of a U.S. state or third country. 28 U.S.C. § 1603(b).

UNB and the Individual Defendants[2] are instrumentalities of a foreign state. UNB

is not a commercial entity, and Plaintiff correctly alleges that UNB is a public university in

Canada. (Doc. # 1 at ECF p. 8). "[T]he vast majority of state universities have been found

to be 'arms' of the State." *Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 14 (1st Cir.

2011) (citation omitted); *see also Adkins v. Rectors & Visitors of George Mason Univ.*, No.

1:15CV879 JCC/MSN, 2015 WL 5638102, at *2 (E.D. Va. Sept. 23, 2015) ("A state

supported university enjoys the same sovereign immunity as States.") (citation omitted).[3]

The University also qualifies as an organ of a foreign state under the five-factor

approach used by many courts: "(1) whether the foreign state created the entity for a

national purpose; (2) whether the foreign state actively supervises the entity; (3) whether

the foreign state requires the hiring of public employees and pays their salaries; (4) whether

the entity holds exclusive rights to some right in the [foreign] country; and (5) how the

entity is treated under foreign state law." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d

841, 846-47 (5th Cir. 2000) (quoting *Supra Med. Corp. v. McGonigle*, 955 F.Supp. 374,

---

[2] For an employee to qualify as a "foreign state" under FISA, the employee must show that
his or her employer is a foreign state, and that the employee was acting in his official
capacity and scope of his authority when he undertook acts which are the subject of the
lawsuit. 28 U.S.C. § 1603(a); *see also Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095,
1103 (9th Cir. 1990). Plaintiff alleges that the Individual Defendants are or were employees
of UNB and are alleged to have been working in their capacity at UNB when Plaintiff's
allegations occurred. (Doc. # 1 at ECF pp. 6-8).

[3] Although the courts in *Irizarry-Mora* and *Atkins* determined whether a university was
immune under the 11th Amendment, "[t]he factors determinative of 11th Amendment
immunity are analogous to those for determining 'agency or instrumentality' status under
the FSIA." *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662, 674 (C.D.
Cal. 1993).

379 (E.D.Pa. 1997)); *see generally Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 654-55 (9th Cir. 1996).

UNB was established by the Lieutenant Governor, Legislative Council, and General Assembly of the Province of New Brunswick in 1859. *See generally* <u>Exhibit 1</u>, 23 Victoria – Chapter 63 (1859). The General Assembly explained that the purpose of UNB was "… to make provision for a comprehensive system of University Education, such as will embrace not only the usual subjects of a Collegiate course, but also those branches of practical science and art which are adapted to the agricultural, commercial, and mechanical pursuits of the great body of the inhabitants of New Brunswick." (*Id.*). UNB is currently governed by the University of New Brunswick Act, which was passed in 1984. *See generally* <u>Exhibit 2,</u> The University of New Brunswick Act, SNB 1984, c 40; *see also* <u>Exhibit 3</u>, Declaration of Paul Mazerolle at ¶ 4. The Lieutenant Governor of New Brunswick has statutory powers as the "Visitor" of UNB. *See* <u>Exhibit 2</u>, at § 17(1); *see also* <u>Exhibit 1</u>, at § 6 (stating that the Lieutenant Governor serves on behalf of the Canadian monarch).

UNB's website underscores its public mission in New Brunswick and Canada. UNB advertises itself as "[c]reating the New Brunswick of tomorrow." *See* https://www.unb.ca/toward2030/vision.html (last accessed August 1, 2024). UNB's websites also states that "We [UNB] create the industries and opportunities of the New Brunswick of tomorrow." (*Id.*). UNB's website further explains:

> New Brunswick and Canada need bold new ideas and decisive action to secure a more prosperous and just future. We will create and share the knowledge that is essential to push society forward. UNB will

> tackle society's great challenges head-on and create positive change.
> This is our mission of service to our province and the world.

UNB receives significant funding from the Province of New Brunswick. <u>Exhibit 3</u> at ¶¶ 5-7. That funding contributes significantly to the operations of UNB, including paying employees' salaries. (*Id.* at ¶ 8). UNB employees are public employees. (*Id.* at ¶ 9).

Accordingly, UNB is founded, regulated, supervised, and financed by a Canadian province; and UNB has a public role, public mission, public funding, and public oversight. These facts establish that UNB and its employees are an organ of the state and are entitled to foreign sovereign immunity. *See Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842, at *11 (D. Me. Feb. 5, 2013), *aff'd*, No. 1:12-CV-193-DBH, 2013 WL 685668 (D. Me. Feb. 25, 2013) (holding that University of Ulster was an organ of the state where "the University was founded as a charity to advance education and the vast majority of its funding is public, the University serves a national purpose of advancing education . . . [and] [t]he University has a public role, public mission, and public funding.").

### B.    Service on the Individual Defendants Was Not Properly Made

28 U.S.C. § 1608 prescribes the exclusive means of service on both foreign states and their agencies and instrumentalities. Service of process on agencies and instrumentalities is governed by 28 U.S.C. § 1608(b) and may be made as follows:

1.    Under any special arrangement between the parties; or

2.    By personal delivery to an officer or authorized agent in the United States; or in accordance with an applicable international convention on service of judicial documents; or

3.    If it cannot be made under (1) or (2) above, then by delivery of a copy of summons and compliant as directed by letter rogatory, or by any

form of mail requiring signed receipt, or "as directed by order of the court consistent with the law of the place where service is to be made."

Here, service was made by delivery of the Summonses to the UNB President's Chief of Staff, Melissa Dawe. (Doc. # 8). As discussed in greater detail in Section V *infra*, service on the Individual Defendants was not properly made pursuant to the terms of the Hague Convention nor was service made in compliance with any other portion of 28 U.S.C. § 1608(b). (Doc. # 8). Accordingly, service on the Individual Defendants was improper and ineffective pursuant to the FSIA.

**C.    No Exceptions to the Immunity Provides by the FSIA Apply**

A foreign state is presumptively immune from the jurisdiction of United States courts unless a specified and limited exception applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). In his Complaint, Plaintiff asserts the following exceptions apply to this matter pursuant to 28 U.S.C. § 1605(a): (1) waiver; (2) certain commercial activities; (3) expropriations; and (4) damages caused by specific tortious acts.

**1.    The waiver exception does not apply as Plaintiff has failed to provide evidence establishing either an express or implied waiver.**

Under the FSIA, a foreign sovereign is not immune from the jurisdiction of United States courts in any case "in which the foreign state has waived its immunity either explicitly or by implication . . . ." 28 U.S.C. § 1605(a)(1). Plaintiff contends that the University Defendants waived their immunity by "accepting and signing commercial education payment agreements with the Plaintiff and with the Department of Defense for the education of its soldiers including [Plaintiff]." (Doc. # 1 at ECF p. 4).

However, Plaintiff fails to provide any evidence that these purported documents establish either an express or implied waiver under the FSIA. "The standard for finding a waiver is quite stringent. A waiver must be 'unequivocally expressed' and 'must be strictly construed in favor of the sovereign,' with ambiguities construed against waiver." *In re Rivera Torres*, 432 F.3d 20, 23-24 (1st Cir. 2005) (citations omitted). "A foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *see also Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority*, 325 F.Supp.2d 15, 26–27 (D.R.I. 2004).

Here, Plaintiff does not point to any particular language demonstrating that the University Defendants have explicitly waived their sovereign immunity or, even if they did waive their immunity in some situations, that the waiver extends to this case. Similarly, nothing about the facts of this case justifies finding an implied waiver here, especially when considering "[f]ederal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). For these reasons, Plaintiff has not demonstrated that the waiver exception applies.

> **2.    The commercial activity exception does not apply as Plaintiff has failed to provide evidence of commercial activities.**

The commercial activity exception only applies if action is based upon: (1) a commercial activity carried on in the United States by the foreign state; (2) upon an act performed in the United States in connection with a commercial activity of the foreign state

elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2). The threshold step in assessing the applicability of the commercial activity exception is to "identify the act of the foreign sovereign state that serves as the basis for the plaintiff's claims." *Goel v. Am. Digital Univ*., *Inc.*, No. 14-CV-1895 (KBF), 2017 WL 1082458, at *14–15 (S.D.N.Y. Mar. 21, 2017) (citing *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 56 (2d Cir. 2016)).

Plaintiff provides no facts to support the application of this exception. Instead, Plaintiff merely cites "28 U.S.C. 1605(a)(2), Commercial Activity." (Doc. # 1 at ECF p. 4). This case is about Plaintiff's education, the conferral of his degree, the subsequent investigation into his thesis, and the statements that followed. These are <u>not</u> commercial activities. All these activities took place in Canada, and none of these activities had any direct effect on the United States. As such, the commercial activity exception does not apply.

### 3. The expropriation exception does not apply as Plaintiff has failed to show that the University Defendants "took" property from him.

Plaintiff next contends that the University Defendants fall under the "expropriation exception" to foreign sovereign immunity. Under the FSIA, a foreign sovereign is not immune from suit in any case:

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the

foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a)(3).

In support of this, Plaintiff alleges that there was "property taken by Defendants from [Plaintiff] that exists in the United States in connection with the commercial activity out of an international Ph.D. program for United States military members which was carried out in the United States by Defendants." (Doc. # 1 at ECF pp. 4-5).

Plaintiff has not alleged facts that support the proposition that the University Defendants "took" property from Plaintiff. Rather, the basis of Plaintiff's Complaint concerns the release of Plaintiff's thesis from embargo and statements made about the veracity and viability of Plaintiff's research. If anything, this action is governed by academic protocol and is in no way a violation of international law. The expropriation exception is inapplicable here.

### 4. The tortious acts exception does not apply as any act allegedly done by the University Defendants did not occur in the United States.

Lastly, Plaintiff argues that the tortious acts exception prevents the application of immunity under the FISA. (*Id.* at ECF p. 4-5). Pursuant to 28 U.S.C. § 1605(a)(5), a foreign entity is not immune under the FSIA in any case:

> . . . in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment.

13

Moreover, in order for this exception to be applicable, both the tortious acts or omissions and the injury must occur within the United States. *Intercontinental*, 822 F. Supp. at 677; *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984).

In support of this exception, Plaintiff only pleads that "tortious acts of fraud and RICO election interference." (Doc. # 1 at ECF p. 5). The acts that serve as a basis for Plaintiff's fraud and RICO claims concern failure to follow academic protocol. (*Id.* at ECF pp. 16-17). The University Defendants contest that these actions were "tortious," but, even if they were, Plaintiff himself alleges that the University Defendants' acts occurred outside of the United States. The tortious acts exception is therefore inapplicable.

\*     \*     \*

In summary, the University Defendants are entitled to immunity under the FSIA, and no exceptions apply. Therefore, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE UNIVERSITY DEFENDANTS

Even if the Court believes that the University Defendants are somehow subjected to the subject matter jurisdiction of the Court, Plaintiff's Complaint must still be dismissed as this Court cannot exercise personal jurisdiction of the University Defendants. Plaintiff bears the burden of establishing that the court can exercise personal jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of

14

affidavits and other written material, the plaintiff must make a *prima facie* showing that jurisdiction exists. *XMission*, 955 F.3d at 839. He has failed to do so.

A. **A Due Process Analysis Applies to the Question of Personal Jurisdiction**

Here, Plaintiff alleges that this Court has jurisdiction over this action based on: (1) diversity jurisdiction; and (2) federal question jurisdiction. (Doc. # 1 at ECF p. 4).

In a diversity action, Plaintiff must demonstrate that jurisdiction is proper under the laws of the forum state—in this case Oklahoma—and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). Because "Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry collapses into the single due process inquiry." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) (quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)).

With respect to federal question jurisdiction, the Court first looks to whether the applicable federal statute potentially confers jurisdiction by authorizing service of process on the defendant. *Dental Dynamics*, 946 F.3d at 1228. As noted above, service on a foreign state or political subdivision of a foreign state is governed by 28 U.S.C. § 1608. *See* FRCP 4(j)(1). 28 U.S.C. § 1608 provides several options for service, including service through diplomatic channels and through international convention (*e.g.*, Hague Convention). If service is effectuated by way of 28 U.S.C. § 1608, then the due process analysis that the court uses is <u>not</u> the regular forum analysis. Instead, "[w]here service is made under [28

15

U.S.C.] § 1608, the relevant area in delineating contacts is the entire United States, not merely the forum state. *United World Trade, Inc. v. Mangyshlaknept Oil Prod. Ass'n*, 821 F. Supp. 1405, 1410 (D. Colo. 1993), *aff'd*, 33 F.3d 1232 (10th Cir. 1994).

For the purposes of this Motion, the Court may assume that Plaintiff properly served UNB itself pursuant to 28 U.S.C. § 1608, meaning that, for the purposes of UNB, the Court's analysis should focus on UNB's contacts with the United States. However, as will be discussed in greater detail Section V *infra*, the Individual Defendants were not served pursuant to 28 U.S.C. § 1608. Where there is no statutory basis for jurisdiction, the inquiry effectively collapses into a constitutional analysis of contacts with the forum state. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Therefore, the analysis below will discuss UNB's contacts with the *United States* and the Individual Defendants' contacts with *Oklahoma*. Both evaluations will show that exercising personal jurisdiction over the University Defendants would violate due process.[4]

### B.   This Court Does Not Have General Jurisdiction Over the University Defendants as All are Domiciled in Canada

There are two types of personal jurisdiction: general and specific. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021). A court can exercise general jurisdiction

---

[4] Plaintiff alleges that, when required by the ends of justice, 18 U.S.C. § 1965(b) authorizes nationwide service of process in RICO actions to confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum sufficient contacts with the United States. (Doc. # 1 at ECF p. 5). However, none of the University Defendants reside in a judicial district of the United States or were served in the United States. (Doc. # 1 at ECF pp. 7-8; Doc. # 8). Therefore, RICO's nationwide service of process provision cannot provide the statutory basis for personal jurisdiction in this case. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006).

over defendants who are "essentially at home" in the forum, as when an individual is domiciled in the State, or a corporation is incorporated or has its principal place of business there. (*Id.*). There are no allegations suggesting that the University Defendants are "at home" in the Western District of Oklahoma, as all the University Defendants are Canadian. Moreover, Plaintiff pleads in his complaint that the addresses for the University Defendants are all in Canada. (Doc. # 1 at ECF pp. 7-8). As such, general jurisdiction does not apply.

C. **This Court Does Not Have Specific Jurisdiction Over the University Defendants as They Do Not Have Sufficient Minimum Contacts and the Exercise of Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice**

A specific jurisdiction analysis involves a two-step inquiry. First, a court must consider whether defendants have minimum contacts such that they should reasonably anticipate being hauled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, if the defendant's actions create sufficient minimum contacts, a court must then consider whether the exercise of personal jurisdiction over Defendants offends traditional notions of fair play and substantial justice. *OMI,* 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)).

1. **The University Defendants do not have sufficient minimum contacts with the forum.**

To establish that a defendant's contacts with a forum are such that they should reasonably anticipate being hauled into court here, a plaintiff must establish that the defendant purposely directed its activities at residents of the forum. *See XMission*, 105 F.4th at 1308. Specific jurisdiction does not attach as a result of random, fortuitous, or

attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction. (*Id.* at 1308-09). Specific jurisdiction is proper over an email sender only if a plaintiff can show that the sender had knowledge that the offending emails were going to a specific forum. (*Id.* at 1310). When examining specific jurisdiction in the context of communications involving the internet, the U.S. Court of Appeals for the 10th Circuit has applied a "harmful effects test" under which a plaintiff must allege, among other things, that the defendant acted with knowledge that the brunt of the injury would be felt in the forum. (*Id.* at 1309-10).

> **a.** **There are no allegations that UNB purposefully directed its activities at the United States.**

The crux of Plaintiff's argument as it pertains to UNB appears to be that because UNB purportedly takes money from the United States Department of Defense to educate United States members of the Armed Forces, UNB and its employees can be sued in any state Plaintiff so desires. (Doc. # 1 at ECF p. 16). However, Plaintiff has not established that UNB has the requisite minimum contacts within the United States. Indeed, in his Complaint, Plaintiff does not allege that UNB has any bank accounts in the U.S., any offices or other property in the U.S., that it conducts any business/provides educational opportunities in the U.S., has any employees in the U.S., that it advertises in the U.S., or that it pays taxes in the U.S. Instead, Plaintiff admits that UNB is a public university domiciled in Canada and fails to provide any allegations that UNB targeted the United States. (*Id.* at ECF p. 8). In addition, none of Plaintiff's education, including the writing of his thesis, is alleged to have occurred in the United Sates. For that matter, neither did the

release of Plaintiff's previously embargoed thesis nor any of the alleged statements made by UNB take place in the U.S. Simply stated, the United States does not have a significant role in UNB's dealings.

> **b.      There are no allegations that the Individual Defendants purposefully directed their activities at the residents of Oklahoma.**

Plaintiff admits that the Individual Defendants are employees of UNB. (Doc. # 1 at ECF pp. 7-8). In fact, the only address that Plaintiff provides for the Individual Defendants is in Canada. (*Id.* at ECF p. 7). Plaintiff complains about a letter allegedly sent by UNB and an Individual Defendant that Plaintiff's own pleading indicates was sent to Pennsylvania, not Oklahoma. (Doc. # 1-1 at ECF p. 2). Plaintiff also complains of statements allegedly made by UNB and certain Individual Defendants "to the press," "to the world," "to the American press and social media to the world," but not specifically Oklahoma. (Doc. # 1 at ECF pp. 10-14). There are <u>no allegations</u> that the Individual Defendants directed anything at residents of Oklahoma, had knowledge that their communications were going to Oklahoma, or had information that the brunt of the injury their communications would (allegedly) cause would be felt in Oklahoma, especially when considering Plaintiff is domiciled in Pennsylvania.

> **2.      The exercise of personal jurisdiction over the University Defendants offends traditional notions of fair play and substantial justice.**

In assessing whether an exercise of jurisdiction is reasonable, a court must consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of controversies; and (5) the

shared interest of the several states in furthering fundamental substantive social policies.

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007)

(quoting *Intercon, Inc.*, 205 F.3d at 1249 (10th Cir. 2000)); *see also OMI*, 149 F.3d at 1095.

The analyses of minimum contacts and reasonableness are complementary:

> … the reasonableness prong of the due process inquiry evokes a
> sliding scale: the weaker the plaintiff's showing on [minimum
> contacts], the less a defendant need show in terms of unreasonableness
> to defeat jurisdiction. The reverse is equally true: an especially strong
> showing of reasonableness may serve to fortify a borderline showing
> of [minimum contacts].

*OMI*, 149 F.3d at 1092 (alterations in original); *see also TH Agric.*, 488 F.3d at 1292.

With respect to the first factor, the University Defendants are unquestionably

burdened by litigating in Oklahoma given that they are all located in Canada (Doc. # 1 at

ECF pp. 7-8) and there are no allegations that any of the University Defendants maintain

an office in Oklahoma, own property in Oklahoma, or employ anyone in Oklahoma (or the

United States). *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (the

burden on a Canadian corporation with no offices, property, or employees in the forum

State was "significant" and weighed against exercising jurisdiction).

With respect to the second factor of the reasonableness analysis, Oklahoma has no

interest in the dispute between Plaintiff and the University Defendants. Plaintiff is a citizen

of Pennsylvania. (Doc. # 1 at ECF p. 5). The University Defendants are in Canada. (*Id.* at

ECF pp. 7-8). The relationship between Plaintiff and the University Defendants arises from

Plaintiff's receipt of an academic degree in Canada. (*Id.* at ECF p. 5). Accordingly, this

factor weighs in favor of dismissal. *See OMI*, 149 F.3d at 1096 (concluding that this factor weighed heavily in favor of defendants where no parties were residents of the forum State or conducted business in the forum State, and the forum State's law did not apply, and the relationship between the parties was formed in Canada). In fact, the United States as a whole has little interest in this dispute because, although Plaintiff is a United States citizen, this dispute involves education he received in Canada and statements about him made in Canada related to the education he received in Canada.

With respect to the third and fourth factors of the reasonableness analysis, there is no reason to assume that this Court is the only place, or even the most effective place, for Plaintiff to obtain relief. Plaintiff is seeking to recover from a Canadian university and from Canadian individuals for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian university. (Doc. # 1 at ECF p. 28). The witnesses will therefore be in Canada. There are no allegations to suggest that litigating in Canada would cause undue hardship to Plaintiff. In fact, Plaintiff is not an Oklahoma resident, so Plaintiff will be geographically inconvenienced regardless of whether litigation proceeds in Oklahoma or Canada. *See Benton*, 375 F.3d at 1079 (holding that the third factor weighed against exercising jurisdiction because Canadian law governed the dispute and litigating in Canada would not cause undue hardship).

Finally, the fifth factor of the reasonableness analysis focuses on whether the exercise of personal jurisdiction by the forum state affects the substantive social policy interests of other states or foreign nations. *TH Agric.*, 488 F.3d at 1297 (citation omitted). "[G]reat care must be exercised when considering personal jurisdiction in the international

context." *Asahi Metal*, 480 U.S. at 103. "[W]hen jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated." *OMI*, 149 F.3d at 1098 (citing *Paccar Int'l., Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)). Again, Plaintiff is seeking to recover from a Canadian university and from Canadian individuals for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian university. (Doc. # 1 at ECF p. 28). All the policy interests in play are held by Canada, and none are held by Oklahoma.

Canada's policy interests are especially strong in this case because UNB is a public university (*Id.* at ECF p. 8) and therefore an asset of the government of New Brunswick, a Canadian province. UNB is currently governed by the University of New Brunswick Act, which allows the Lieutenant-Governor of New Brunswick to have statutory powers as the "Visitor" of UNB. *See* University of New Brunswick Act, SNB 1984, c 40 § 17(1). This Court should not exercise jurisdiction over a Canadian governmental entity and its alleged employees for conduct that allegedly occurred in Canada.

In sum, Plaintiff has failed to establish sufficient purposeful contacts between the University Defendants and either the United States or the State of Oklahoma. Extending jurisdiction over them would offend traditional notions of fair play and substantial justice. This Court lacks personal jurisdiction over the University Defendants and the claims against them must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## V.      THE INDIVIDUAL DEFENDANTS WERE NOT PROPERLY SERVED

Fed. R. Civ. P. 12(b)(5) authorizes dismissal of a lawsuit for insufficient service of process. Without proper service, the court lacks personal jurisdiction over the Individual Defendants. *Rudman v. Oklahoma ex rel. Bd. of Regents for the Reg'l Univ. Sys. of Oklahoma*, No. CIV-22-0091-F, 2022 WL 17083406, at *2 (W.D. Okla. Nov. 18, 2022) (citation omitted). Plaintiff bears the burden of making a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over defendants. (*Id.*). Plaintiff must demonstrate that the procedure employed by him to effect service satisfied the requirements of Fed. R. Civ. P. 4. (*Id.*).

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *See* Fed. R. Civ. P. 4(f)(1). 28 U.S.C. § 1608 also provides several options for service on employees of a foreign state or political subdivision of a foreign state, including service through international convention (*e.g.*, Hague Convention). The United States and Canada are both signatories to the Hague Convention. *See HCCH Members*, https://www.hcch.net/en/states/hcch-members (last accessed Aug. 1, 2024).

Under the Convention, each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States. Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638, Art. 2 (Feb. 10, 1969).

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either: (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory; or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed. (*Id.* at Art. 6). The Court should therefore look to local law to determine whether service was proper.

The Summonses purported served by Plaintiff were delivered in New Brunswick, Canada. Under the New Brunswick Rules of Court, personal service is necessary when being served for an originating process. *See* <u>Exhibit 4</u>, Rules of Court, N.B. Reg. 82-73, 18.01(1)(a). With regard to individuals, personal service must be made by leaving a document with the individual themselves. (*Id.* at Rule 18.02(1)(a)). Under proper circumstances, and pursuant to specific rules, service may also be effectuated on an individual at their place of residence, or by leaving the documents at their place of residence, if necessary. (*Id.* at Rule 18.03(6)). Finally, New Brunswick recognizes that, when personal service is impractical, substituted service is permitted, but only in accordance with a court order. (*Id.* at Rule 18.04).

In this case, service was made by delivery of the Summonses to the UNB President's Chief of Staff, Melissa Dawes. (Doc. # 8). The Summonses are addressed to a UNB administration building (Doc. # 8), not a residence. Accordingly, service of the Summonses on the Individual Defendants was improper and ineffective. The claims against the Individual Defendants should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(5) or, in the alternative, service should be quashed. *See Rudman*, 2022 WL 17083406, at *2.

## VI.    PLAINTIFF FAILS TO STATE A CLAIM

The University Defendants do not concede that Oklahoma law governs Plaintiff's claims, but even if it did, Plaintiff has failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).[5] To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (citation omitted). Plaintiff has failed to do so with each of the theories and counts alleged in his Complaint.

### A.    Plaintiff Has Failed to State a Claim in Support of a RICO Violation in Counts One and Two

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff alleging a RICO violation must allege that the defendant (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006). "Racketeering activity" is statutorily defined. 18 U.S.C. § 1961(1). Additionally, a

---

[5] To the extent the Court determines that Canadian law governs some or all of these claims, then, as discussed above, that underscores the University Defendants' argument that exercising jurisdiction over these Canadian University Defendants offends the traditional notions of fair play and substantial justice, and the claims should be dismissed.

plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of 18 U.S.C. § 1962. *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir. 2003). RICO violations must be pleaded with specificity to provide clear factual notice of the alleged basis for the claim. *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *see also* Fed. R. Civ. P. 9(b).

The only statutorily defined "racketeering activities" potentially referenced in the Complaint are mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343). (Doc. # 1 at ECF pp. 12, 19-20). However, in the Complaint, Plaintiff does <u>not</u> sufficiently allege *facts* to suggest any mail fraud or wire fraud, let alone a pattern of fraud. The majority of Plaintiff's contentions of supposed fraud are simply allegations of failure to follow academic protocol. (Doc. # 1 at ECF pp. 16-17). American criminal law does not govern Canadian academic protocol. Plaintiff also alleges "publication of a false and defamatory letter," but Plaintiff provides no further details, such as what was false or defamatory, when the letter was sent, who relied on the letter, and what injury Plaintiff incurred other than loss of unspecified "intangible property" and other vague and unspecified economic losses. (*Id.* at ECF pp. 17-18). Plaintiff's speculative allegations do <u>not</u> meet the specificity requirements of Fed. R. Civ. P. 9(b), which is fatal to Plaintiff's RICO claims. As such, Plaintiff's RICO allegations must be dismissed against the University Defendants.

### B. Plaintiff Fails to Plead a Sherman Act Violation in Counts Three and Four

To make out a violation of Section I of the Sherman Act, a plaintiff must allege and prove: (1) concerted action in the form of a contract, combination or conspiracy; and (2)

an unreasonable restraint of trade. *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992). Plaintiff alleges only that the University Defendants investigated accusations of academic misconduct and by doing so, allegedly violated academic protocol. (Doc. # 1 at ECF pp. 21-22). Those contentions, even if true, simply do not amount to unreasonable restraints on trade.

Additionally, to plead an antitrust injury, the "plaintiff must allege a business or property injury, an antitrust injury, as defined by the Sherman Act." *Tal*, 453 F.3d at 1257-58 (internal quotation marks) (citation omitted). Antitrust injury is limited to an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 477-78, 489 (1977). Thus, to have antitrust injury, a plaintiff must allege an injury to competition, not a generic injury to the plaintiff. (*Id.*). There are no such allegations of injury to competition in Plaintiff's Complaint. Plaintiff merely alleges that he personally lost economic opportunities, which is not the type of "injury" that the Sherman Act was meant to contemplate. (Doc. # 1 at ECF p. 22). This claim must also be dismissed.

### C.     Plaintiff Fails to Plead a Fraud Claim in Count Five

Under Oklahoma law, an actionable claim for fraud or deceit requires the plaintiff to establish the following elements: (1) a false material misrepresentation; (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth; (3) with the intention that it be acted upon; and (4) which is relied on by the other party to his or her own detriment. *Tal*, 453 F.3d 1244, 1265; *see also*

*Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009). Common law fraud must be pleaded with particularity. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). In order to plead fraud with particularity, the Complaint must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

In his Complaint, Plaintiff alleges that UNB investigated his thesis. (Doc. # 1 at ECF p. 26). Plaintiff fails, as is required by Fed. R. Civ. P. 9(b), to make an adequate factual allegation that any representation made by UNB concerning this investigation was false. Plaintiff also fails to identify who allegedly relied upon any of UNB's statements. At most, Plaintiff alleges that the University of Kentucky relied on Mr. Gregory's statements. (*Id.* at ECF p. 10). Thus, Plaintiff's fraud claim against Defendant UNB is insufficient under the applicable pleading standards and must be dismissed.

### D.   Plaintiff Fails to Plead an Aiding and Abetting Claim in Count Six

Plaintiff's allegations of violations of academic protocol (Doc. # 1 at ECF p. 27) are not aiding and abetting breach of fiduciary duty. Moreover, the Oklahoma Supreme Court has never recognized a claim for aiding and abetting a breach of fiduciary duty. *Jackson v. GreerWalker, LLP*, 2018 WL 894873, at *4 (N.D. Okla. Feb. 14, 2018). "Oklahoma courts have imposed civil aiding-and-abetting liability in only a handful of contexts, so it seems doubtful that the Oklahoma Supreme Court would expand the doctrine to cover aiding and abetting breach of fiduciary duty." *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1198 (N.D. Okla. 2020). Therefore, even accepting as true the allegations in Plaintiff's Complaint,

Plaintiff's claim for aiding and abetting a fiduciary duty must be dismissed because it is not a cognizable theory under Oklahoma law.

Even if Plaintiff's "aiding and abetting" claim was viable under Oklahoma law, Plaintiff's claim must nonetheless be dismissed. To state a claim for "aiding and abetting" a tort, a plaintiff must show that the defendant aided in the commission of a tort "by giving substantial assistance or encouragement to the tortfeasor." *Cooper v. Bondoni*, 841 P.2d 608, 611-12 (Okla. Ct. App. 1999). Moreover, any claim for aiding and abetting a breach of fiduciary duty "requires an allegation that the defendant had knowledge of the primary actor's wrongful conduct." *Almeida*, 471 F.Supp.3d at 1199 (citation omitted). A complaint claiming aiding and abetting of a tort must contain "enough information to put the defendant on notice of the factual basis for the claims against them." (*Id.* at 1198). Therefore, to make a claim for aiding and abetting a breach of fiduciary duty, Plaintiff must plead sufficient factual allegations to establish that the University Defendants: (1) had knowledge of a breach of fiduciary duty; and (2) gave substantial assistance or encouragement in allegedly breaching their fiduciary duties. Plaintiff's Complaint fails to provide evidence of either requisite element and his aiding and abetting claim must be dismissed accordingly.

### E.    Plaintiff Fails to Plead a Breach of Contract Claim in Count Seven

To state a claim for breach of contract, a plaintiff must plead facts showing: "1) formation of a contract; 2) breach of the contract; and 3) damages as a result of the breach." *Bayro v. State Farm Fire and Cas. Co.*, No. Civ-14-1084-D, 2015 WL 4717166 (W.D. Okla., Aug. 7, 2015) (citing *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834,

29

843 (Okla. 2001)). Although Plaintiff mentions the existence of an "enrollment agreement" between Plaintiff and UNB (Doc. # 1 at ECF p. 28), Plaintiff does <u>not</u> allege what contractual terms were supposedly breached. Instead, Plaintiff alleges only, at most, violations of academic protocol. (*Id.*). Therefore, Plaintiff's breach of contract claim should be dismissed.

### F.    Plaintiff Fails to Plead a Negligence Claim in Count Eight

The threshold question for negligence suits is whether a defendant owes a plaintiff a duty of care. *Wofford v. Eastern State Hospital*, 795 P.2d 516, 519 (Okla. 1990). Duty is a question of law. (*Id.*). "The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct to persons "who are foreseeably endangered by his conduct with respect to risks which make the conduct unreasonably dangerous." *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 519 (Okla. 1990).

Plaintiff alleges that the University Defendants "owed a duty of care to [Plaintiff] because [Plaintiff] is the beneficiary of the receipt of a unanimously conferred and intensely critiqued Ph.D. in history, and because said Defendants are each recipients of a monetary benefit from the payments to UNB by [Plaintiff] and the United States on his behalf." (Doc. # 1 at ECF p. 29). The law simply does <u>not</u> recognize an open-ended duty of care running from a university and its employees to someone who received a degree.

Even if this were a legally cognizable duty, there is no breach. Plaintiff is alleging an academic dispute regarding the way in which a degree was conferred and later

investigated (*Id.*). That is a matter for an educational committee, not a court. For these reasons, Plaintiff's negligence claim should be dismissed.

### G.     Plaintiff Fails to Plead a Defamation Claim in Count Nine

In order to prevail on a defamation claim, Plaintiff must show:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication.

*Sturgeon v. Retherford Publications, Inc.*, 987 P.2d 1218, 1223 (Okla. Civ. App. Div. 4, 1999) (citing Restatement (Second) of Torts § 558 (1977)). "In pleading defamation, the plaintiff must afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Cohimia v. Ardent Health Services, L.L.C.*, 448 F. Supp. 2d 1253, 1268 (N.D. Okla. 2006) (internal quotation marks omitted) (citation omitted).

Plaintiff's defamation claim first fails because he does not allege specifically when the act of defamation occurred. Plaintiff must bring any claim for defamation within one year of when the alleged defamation was published. Okla. Stat. tit. 12, § 95(A)(4). Instead of pleading facts sufficient to show when the University Defendants purportedly defamed him, Plaintiff merely alleges that certain nondescript "statements" were made "on or around the Summer of 2023." (Doc. # 1 at ECF p. 29).

The Court should not assume that the defamation claim was timely brought. But even assuming for argument's sake that the claim was timely brought, Plaintiff's Complaint does not describe what statements or what portion of the statements were purportedly false. Rather, the Complaint only contends that the University Defendants "made statements"

that "exposed [Plaintiff] to public hatred, contempt, ridicule, and disgrace." (*Id.*). Although Plaintiff does not describe with any detail what these statements were, he claims they were "false and horrific, and all allegations were known to be false by Defendants when they made the same with malice aforethought." (*Id.* at ECF p. 30). Plaintiff does not assert precisely what he contends was false or defamatory about the statements that were purportedly made by the University Defendants. Without any allegations of facts of this crucial element, Plaintiff's defamation claim cannot stand.

## VII.   LEAVE TO AMEND WOULD BE FUTILE

Fed. R. Civ. Pro. 15(a)(2) provides that courts should grant leave to amend when justice so requires. However, district courts "may withhold leave to amend only for reasons such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *See U.S. ex. rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (internal quotation marks omitted) (alternation in original) (citation omitted). Here, given the nature of Plaintiff's claims against the University Defendants, there are no conceivable set of facts upon which Plaintiff can plead a claim against the University Defendants over which this Court will have personal jurisdiction.

Additionally, Plaintiff's Complaint is so vague, conclusory, and utterly incomprehensible that providing Plaintiff with opportunity to amend his defective pleadings will not result in clarity but will only allow him to further "abuse the judicial process" by attempting to "prosecute an action that is frivolous [and] malicious." *Tripati v.*

*Beaman*, 878 F.2d 351, 353 (10th Cir. 1989). Meritless pleadings must not be allowed to serve as a vehicle to intimidate and harass. Plaintiff's dispute with the University Defendants belongs in front of an academic committee, not a U.S. District Court in Oklahoma.

**VIII.   <u>CONCLUSION</u>**

This Court lacks personal and subject matter jurisdiction over the University Defendants, service of process was insufficiently made on the Individual Defendants, and Plaintiff has failed to state a legally cognizable claim upon which relief can be granted. Accordingly, Plaintiff's Complaint against the University Defendants cannot proceed. The University Defendants respectfully request that its Motion to Dismiss be granted, the claims against it be dismissed, and for such further relief this Court deems just and proper.

Dated:  August 6, 2024

Respectfully submitted,

s/Don W. Danz
DON W. DANZ, OBA #14607
McATEE & WOODS, P.C.
410 N.W. 13th Street
Oklahoma City, OK  73103
Telephone: (405) 232-5067
Facsimile: (405) 232-0009
dond@mcateeandwoods.com

and

William C. Swallow (IL No. 6293910)
*Pro Hac Vice To Be Filed*
Michael H. Passman (IL No. 6297381)
*Pro Hac Vice To Be Filed*
Emily M. Vanderlaan (CO No. 55293)
*Pro Hac Vice To Be Filed*
CLYDE & CO US LLP
55 W. Monroe Street, Suite 3000
Chicago, Illinois 60603
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

***Attorneys for University Defendants***

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on the 6th day of August 2024, I electronically transmitted a true and correct copy of the foregoing document to the Clerk of the Court using the ECF System for filing.  Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Daniel L. Cox, OBA #2490
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Telephone: (410) 254-7000
dcox@coxlawcenter.com
***Lead Counsel for Plaintiff***

Richard White, OBA #9546
Barber & Bartz
525 S. Main Street, Ste. 800
Tulsa, Oklahoma 74103
Telephone: (918) 599-7755
rwhite@barberbartz.com
***Local Counsel for Plaintiff***

s/*Don W. Danz*
DON W. DANZ

34