## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Douglas Mastriano | : | CIVIL NO. 5:24-cv-00567-F |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| James Gregory, III, *et al* | : | |
| Defendants. | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
## RESPONSE IN OPPOSITION TO VOLOKH'S
## <u>MOTION TO INTERVENE AND UNSEAL</u>

Volokh, whose half-million annual salary is funded by a California University

caught receiving dark money[1], seeks intervention apparently with such funded

support and for their behalf in order to supply his benefactors with an expected

written product for financial return.  Volokh has no Article III or Rule 24(b) standing

to intervene.    Instead, he seeks to apparently advance a scheme to support

---

[1] "Stanford's Settlement with the Justice Department Shows Just How Deep China Has Its Claws in Our Universities."  Moore, Paul.  The Hill news online, October 11, 2023.  "Fudan University is a prominent Chinese research institution, and Stanford's ties with it are extensive. Stanford co-directs the Fudan-Stanford Institute for China Financial Technology and Risk Analytics, and its Graduate School of Business partners with the Fudan School of Management.  In 2019, Fudan University altered its charter by promising its adherence "to the leadership of the Chinese Communist Party (CCP)" and "the party's educational policy." The CCP's dominance of Fudan University assures that research developed there may be fully utilized in the CCP's military-civil fusion efforts that compose a critical part of China's efforts to eclipse the military and economic capabilities of the U.S. and its allies by 2025. Despite this, Stanford's ties with Fudan remain undiminished.  <u>Stanford failed to report</u> <u>more than $64 million in Chinese donor identities</u> — disclosure failures that coincided with Stanford's unprecedented expansion of its Chinese operations." <u>https://thehill.com/opinion/national-security/4246080-stanfords-settlement-with-doj-shows-how-deep-china-has-its-claws-in-our-universities/</u> (accessed August 6, 2024 at 5:50 p.m.).

Defendants herein with his own third-party financial support and has no valid "limited" third-party interest.

There is no absolute constitutional and common-law "right" to access court documents, especially not for Volokh's conspiracy blogging to be protected from liability by this Court's order as he claims to seek by intervening and unsealing Exhibits 2 and 4, which are already available to him on the Internet.

## MEMORANDUM OF LAW

### I.    <u>Volokh has no Article III standing to intervene.</u>

While Volokh avers his own interest in intervention *pro se*, he does so speciously on behalf of the State of California-funded Stanford University (a University in partnership with the People's Republic of China, CCP[2]), and Reason Magazine.  Volokh Mot. Interv. Pg. 1, ¶ 2.  He does so using his Stanford University e-mail, funded in part by the taxpayers who pay his half-million annual salary.  He seeks to intervene in order to not only advance his stated entities' economic interests, but his own economic interests.  *Id.* ("he needs to write about this case…").  Volokh admits he likely has access to the same "on the internet" but apparently hasn't taken

---

[2] Colonel Mastriano is a former USA officer supporting NATO's mission.  NATO recently issued a stern warning to the PRC, stating: "26. The PRC has become a decisive enabler of Russia's war against Ukraine through its so-called "no limits" partnership…27. The PRC continues to pose systemic challenges to Euro-Atlantic security.  We have seen sustained malicious cyber and hybrid activities, including disinformation, stemming from the PRC." https://www.nato.int/cps/en/natohq/official_texts_227678.htm (accessed August 7, 2024).

the time to download them.  *Id.* at pg. 3.  Instead, he admits he seeks liability protection from libel suits by obtaining them via a court order such as one he seeks here. *Id.*

There is no constitutional standing under Article III for Volokh here.  *Mann v. Boatright*, 477 F.3d 1140 (10th Cir. 2007)(while "third-party standing" applies to "guardianship proceedings" which implicate the constitutional rights of a daughter to sue for her father's estate, such does not "sanction[] the practice of asserting such claims pro se.").

 Volokh claims a "personal right," filing his motion to intervene "*pro se*" yet he files no such affidavit attesting to the same under oath nor demonstrating any "right" inhibited.  Col. Mastriano has filed his sworn and verified Complaint, attesting to his egregious harm; evidence this Court must take it as true.  Indeed, Volokh has averred economic and corporate interests of third parties, not actual constitutional interests.

Volokh has not attested to any deprivation of any First Amendment "right" and instead he has admitted the unredacted article of Exhibit 2 is in the public domain and that he "*may* be able to find" it online[3], Volokh Mot. Interv. Pg. 3, ¶ 3.  And the Complaint reveals that UNB published Exhibit 4 online as well.  Instead, Volokh

---

[3] There can be no injury in fact when the intervenor himself admits he may obtain the material himself and he has not yet discovered whether he may do so because of his own actions.  Web pages being "sometimes changed" Volokh Mot. Inter. Pg. 3 is an invalid argument, since it is not based in any asserted or attested factual reality in the instant matter and is easily disproven as to the complained Exhibits.

believes he needs the Court to give him power to "benefit[] from being able to quote material from the court rather than just from the internet [sic]" so that a "libel claim may not be brought against" him under his expansive view of the Oklahoma statute providing liability protection for writing on any "fair and true report of any…judicial proceeding..".  *Id.*  Volokh must not be permitted to misuse Oklahoma statutes protecting fair reporting to make an end run around all defamation claims and cases. With Volokh's argument, all an intervenor need do is await a defamation case filing, and then force access to the defamation via the Court docket, write and "disseminate" the same (*Id.* at pg. 1), and obtain via this process complete liability protection.  Thus, no defamation case is safe from the Volokh Conspiracy method of potentially libeling via court-ordered release of the alleged libel, obtaining liability protection via that Order – and thereby using the very protections of Plaintiffs under law against them to ruin them forever without recourse.  This the law does not contemplate.

The Supreme Court has yet to explicitly rule on whether there is a First Amendment right to access civil judicial proceedings documents and records. *Courthouse News Serv. v. N.M. Admin. Office of the Courts*, 53 F.4th 1245 (10th Cir. 2022), citing, *Courthouse News Serv. v. Planet ("Planet III "),* 947 F.3d 581, 590 (9th Cir. 2020)

The First Amendment to the United States' Constitution does not require access by parties to all documents in the state or federal courts, more less by third parties.  *Box, Inc. v. Top Ia Tech*., IPR2023-00430, Patent 11,003,622 B2 (P.T.A.B Aug 08, 2023)("Motion to Seal: "Having reviewed Patent Owner's Motion and the accompanying materials, we find good cause for sealing Exhibit 2018...");  *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir.2007)("Although "[c]ourts have long recognized a common-law right of access to judicial records," this right "is not absolute"); *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.1985) (internal quotation marks omitted)("Accordingly, this Court, "in its discretion, may seal documents if the public's right of access is outweighed by competing interests."); *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir.1980)("In exercising this discretion, we weigh the interests of the public, which are presumptively paramount, against those advanced by the parties."); *Helm v. State*, 656 F.3d 1277, 113 Fair Empl.Prac.Cas. (BNA) 225, 94 Empl. Prac. Dec. P 44264 (10th Cir. 2011); *Sacchi v. IHC Health Servs., Inc.*, 918 F.3d 1155, 1160 (10th Cir. 2019) (second alteration in original) (quoting *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135-36 (10th Cir. 2011))("'articulat[ing] a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process.''); *Beus Gilbert PLLC v. Donald L. Robertson Tr.*, No. 20-4061 (10th Cir. Apr 30, 2021).  Indeed, Oklahoma state law prevents

access by "educational institutions" to sealed court records for reasons including employment.   22 OK Stat. § 19(I) (2023).

Volokh has not met any redressability requirement just because Exhibit 4 is filed with the Court.  Volokh Mot. Interv. Pgs. 3 ¶ 2, and 4, ¶ 1, distinguishing *Okla. Hosp. Ass'n v. Okla. Publ'g Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984) from *Parson v. Farley*, 353 F. Supp. 3d 1141, 1148 (N.D. Okla. 2018).  Here, like the publishing company in *Okla. Hosp. Ass'n*, Plaintiff will be harmed with the dissemination of Exhibit 4 to third parties.  That is a reason for this suit.  While Volokh claims ability to disseminate defamation once that defamation is brought into court, that is not the law, nor could it ever allow redressability for any Plaintiff harmed by such defamation.  If all a party need do to defeat defamation claims is disseminate them once filed with the court, then we have no real defamation law.

But this Court need not be persuaded by *Parson* in the instant case for several reasons.  First, Plaintiff Parson did not oppose Volokh's intervention.  *Parson* at 1148.  But the Colonel has so opposed him.  Second, the court only found Volokh had suffered a "concrete and particular injury" by the sealing because "<u>but for</u> the sealing Volokh would be able to gather information…and disseminate his opinion…" via his "blog."  *Id.* (emphasis added).   However, here Volokh admits that he can likely gather this information from the public internet – he just wants to utilize statutory protection from libel in order to disseminate the libel.  Volokh Mot.

Inter. Pg. 3, ¶ 3.  This the Court should not permit because it would be a "concrete and particular injury" to Colonel Mastriano, not Volokh.  *Mann* at 1140 ("*pro se*" cannot establish a particular injury).  Finally, *Parson* indicated that Volokh could be redressed in his alleged harm by accessing the sealed discovery matter, there a secret or private finding of a state agency.  *Parson* at 1148.  But the sealed exhibits are not sealed discovery matter, and they are available to the intervenor.  In *Parson*, the sought-after libelous letter was not available to the public as it was published to the Inola Chamber of Commerce.  All the related statements about the letter, including the affidavit filed under seal, were referencing the sealed letter generally unavailable to Volokh and the public.  Here, the sought-after exhibits being widely distributed via the Internet are requested by Volokh to be unsealed in the court for only one purpose: liability protection under the Oklahoma statute he cites, Volokh Mot. Interv. at 3, so that he may do exactly what Colonel Mastriano is complaining about towards Defendants – use the letter to disseminate it widely, all in total deprivation of Col. Mastriano's rights causing him further injury in fact.  In essence, he wishes to carry on the Defendants' schemes without fear of repercussion at law.

For the reasons stated herein, Plaintiff requests this Court DENY intervenor's motions.

## II.   Volokh is not entitled to permissibly intervene under Fed. R. Civ. P. 24(b).

Volokh seeks permissive intervention under Federal Rule of Civil Procedure 24(b) but that rule requires either a *conditional right* to intervene under some federal statute, or that he has a "claim or defense that shares with the main action a common question of law or fact." *Id.*  Neither standard applies here.

Volokh cites no federal statute granting him any conditional right to intervene. Instead, he looks to his "flexible" argument that he stands on behalf of the public for its right of access to judicial records.  Volokh Mot. Interv. at 6.  There are at least two errors in Volokh's argument here.  First, the rule requires a collateral action/suit with a shared claim or defense with the main action regarding a common question of *law or fact*.  Fed. R. Civ. P. 24(b)(1)(B); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990)(the rule requires "a claim or defense that shares *with the main action*" and some nexus of fact or law need exist "between the *two suits*.")(emphasis added).  Here, Volokh wishes to expand the rule to include his "flexible" analysis that actually vicarates the rule itself by logical implication. Volokh seeks intervention as a member of the public in order to allegedly *educate the public* (citing his work for third party funded entities not in this suit).  Volokh Mot. Interv. At 6.  Such could never provide standing, since the public may not intervene and unseal every court filing merely because they have an interest in

educating themselves on the case.  If that were true, there would be no concern for standing – ever.  Everyone has standing under Volokh's errant theory.

No different is any pretended standing under the First Amendment, since Volokh is doing so as a private citizen while improperly claiming some kind of standing with third parties not representing in this case.  As such his arguments must be disregarded.  While he cites to *SanMedica Int'l v. Amazon.com, Inc.*, No. 2:13-cv-00169, 2015 WL 6680222, at *3 (D. Utah Nov. 2, 2015), he does so to claim "another law professor" was "allow[ed]…to intervene to unseal records."  Vololk Mot. Interv. At 6.  Yet, Volokh's citation is meaningless because it is a non-persuasive district case and there is no exalted law professor standing under the Rule, notwithstanding.

Furthermore, there are no judicial documents sealed in this case at this point.  The only sealed Exhibit 4 is a letter published on Facebook and widely disseminated by UNB defendants which is libelous.  Just because that letter is sealed in this case by request of the one it harmed, does not make it fair game to be adopted as a court record available to the public so that the person seeking it may disseminate it and continue to expose Plaintiff to public obloquy – but this time with statutory liability protection from any defamation suit.

Libel is defined as: "a defamatory statement expressed in a fixed medium, esp. writing but also a picture, sign, or electronic broadcast."  Black's Law Dict., ed. 7th.

Libel is defined in Oklahoma law as: "a false or malicious unprivileged publication…which exposes any person to public hatred, contempt, ridicule or obloquy…". 12 Ok. Stat. 2011 §1441. Oklahoma's Uniform Jury Instructions 28.2 for the Elements of Defamation explain that such libel is defamation when it "exposed Plaintiff to public hatred, contempt, ridicule or disgrace…".

Here, Volokh is not a neutral person with common factual or legal interests, with a separate case, seeking "limited intervention." *United Nuclear* at 1427; Volokh Mot. Interv. at 6-7. He most certainly has similar interests as Defendants to be "vindicated" in his redress to "disseminate" the letter he seeks to unseal. *Id.* He falsely claims to join in with Defendants' view of the libel as well in his motion to Unseal Record Documents, stating "the defamation portion of this case is 'a garden variety libel case involving a few alleged false statements about an individual running for office…". Volokh Mot. To Unseal, pg. 1. This demonstrates he is not seeking "limited intervention" but is a hostile party seeking to find liability protection to spread far and wide the continued "hatred, ridicule, contempt [and] disgrace" that Defendants have done.

Additionally, Rule 24(b) does not apply here because Volokh's motion is unfounded in that he claims Defendants have not represented his "interests adequately" merely because he wants to "check the integrity of the Judicial Branch" and also "due [sic] to his interest in the First Amendment." Volokh Mot. Interv. at

6. He has not demonstrated this to be true whatsoever as service of process is still being completed, and this argument is not a ground for intervention under either the First Amendment, Rule 24(b) or the common law.

Finally, Rule 24(b) does not apply here because Volokh's motions to intervene and unseal are most definitely "delay[ing] proceedings" and running up Col Mastriano's litigation costs. The undersigned has had to respond to Volokh's voluminous *pro se* filings of over 31 pages to date at a time when motions are being filed by Defendants and process is still being had at the outset of the case, which now has at least six attorneys who have entered their appearance. Volokh wishes to join in and increase the costs of Defendant for no good cause.

For the reasons stated herein, Plaintiff requests this Court DENY intervenor's motions.

### III.   <u>Volokh's Motion to Unseal Must Also Be Denied.</u>

Much of Volokh's motion to unseal is repetitive of his motion to intervene and thus has already been addressed *supra*. Plaintiff therefore responds to Volokh's additional arguments, *seriatim.*

Tellingly, Volokh begins his motion with the false, prejudicial and outrageously biased statement that the defamation portion of this case is nothing more than "garden variety libel…". Volokh Mot. Unseal at 1. But the Defendants' scheme to totally ruin Col. Mastriano's livelihood, his financial earnings and

property, and to permanently destroy reputation including his PhD, bringing him into "public hatred, contempt, ridicule or disgrace," Ok. Unif. Jury Instr. 28.2 Defamation, alongside the reputation of an historical American icon in U.S. military history, is more representative of the harsh finality of a graveyard, not a garden.

      a. ***Nixon v. Warner Commc'ns, Inc.*, Does Not Apply Here as There Is No Compelling Interest for Volokh to Keep A Watchful Eye On the Judiciary's Action of Sealing Exhibit 4.**

Volokh cites *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) to reach far and wide trying to tie together a bogus interest in using the Court to obtain liability protection for his own interest in "disseminating" what he already has access to and apparently has read and developed his own opinion regarding.

But that case held the opposite of what Volokh here offers it for in support of his improvident theory to unseal Plaintiff's exhibit 4.  In *Warner*, the Supreme Court held: 1) there is no absolute common law right of access to judicial records but the decision to do so is left to the trial court's sound discretion considering the relevant facts and circumstances of each particular case; 2) "the presence of an alternative means of public access tips the scales in favor of denying release,"; 3) when the sealed exhibits "were given wide publicity by all elements of the media," *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328, distinguished,  "under the First Amendment the press has no right to information about a trial superior to that of the general public,"; and 4) the Sixth amendment

guarantee of a public trial does not mandate publication and distribution of the all matters in the Courtroom beyond "permitting attendance at trial" *Nixon v. Warner Communications, Inc*, 435 U.S. 589-90, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

Like the Court in *Warner*, this Court should find that the presence of alternative means of public access, and the fact that the Exhibits were widely distributed in the public social media, means that Volokh has no special access to unseal any record filed by Plaintiff. *Id.*

Contrary to Volokh's argument, "the letter [Exhibit 4] and the article [Exhibit 2] are not similar to the letter in *Parson*, *supra*, which was not distributed widely on the Internet and was not available to the intervenor, and are in no way relevant to Volokh's perceived self-interest in overseeing "the judiciary's functions" and "substantive decisions." Volokh Mot. Unseal at 4, ¶ 2. The motion to unseal is not made to oversee the Judiciary's functions by Volokh or understand any future decisions not yet having occurred and therefore without any basis in argument, it is admittedly for his own purpose of disseminating the libel against Col. Mastriano without any liability, all which will egregiously harm Col. Mastriano's rights, not Volokh's.

There is therefore no presumption of access and Volokh's motion must be DENIED.

**IV.    Col. Mastriano Has Met His Burden in His Verified Complaint and Motion to Seal to Overcome Volokh's Perceived Third-Party Interest in Obtaining the Libel for His Own Purposes of Self-Dissemination.**

Volokh is not an interested person under any standard and has failed to file any affidavit attesting he is actually seeking to intervene and unseal *pro se* and not for third party financial interests he affirmatively proclaims he represents.  Col. Mastriano is the only party who has attested he has been damaged under oath in his 28 U.S.C. § 1746 verification of the Complaint.  This attestation is unmet with any contradictory response whatsoever.  Instead, Volokh falsely claims that Col. Mastriano must produce detailed evidence of pecuniary losses in the record at the outset in order to overcome Volokh's motion to unseal.  This the law does not contemplate.

The 10th Circuit mandates only that a plaintiff seeking to seal a record have and "articulate a real and substantial interest" justifying the same.  *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1135–36 (10th Cir.2011) (quoting *Helm*, 656 F.3d at 1292).  This, Col. Mastriano has done in his Complaint and his motion to seal, identifying his massive loss of past, present and future income, including a lucrative movie opportunity worth at least $10 million, and his property interests in the sales of his books, his speaking tours and his career and academic degree.  His motion also articulated "highly defamatory statements" –

which the law defines as that which causes him a financial loss and injury which he has articulated, placing him in "public hatred, contempt, ridicule or disgrace". Ok. Uniform Jury Instr.-Civil. 28.2.

Volokh wrongly cites to *JetAway Aviation, LLC v. Bd. Of Cnty. Comm'rs of Cnty. Of Montrose, Colorado*, 754 F.3d 824, 827 (10th Cir. 2014) because that case held that JetAway gave *no basis* for the sealing but simply asked for maintaining the status quo protective order. *Jetaway Aviation, LLC v. Bd. of Cnty. Comm'rs of the Cnty. of Montrose*, 754 F.3d 824 (10th Cir. 2014). Furthermore, there the 10th Circuit cited as a reminder that "it is *uncontested* that the right to inspect and copy judicial records "is not absolute" and is "in our discretion" to seal documents. *Id.*, citing, *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir.2011) (quoting *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir.1985)).

There is therefore no presumption of access and Volokh's motion must be DENIED.

**V.   Plaintiff's Public Official Status Is Irrelevant to Volokh and his Public Interest Argument.**

Volokh, a resident of California, turns finally to Plaintiff's status as an elected official *in Pennsylvania* to claim a lessened standard for him to seal a record, allowing unsealing of records under the district case in *Parson v. Farley*, 352 F. Supp. 3d 1141 (N.D. Okla. 2018). Volokh Mot. Unseal at 9. Yet this is a Volokh

red herring on at least two grounds. First, government officials are not protected less under law than others and do not give up their rights to question malicious libel, otherwise society could merely make up outrageous false accusations or use such as extortion against every person running for office they dislike without repercussion, or to obtain their votes or obedience to another official, or even a to foreign power such as the one sponsoring Volokh's university that pays his salary. More less considering the fact that Volokh has no relation to, or possible stake in, a Pennsylvania election, nor does his California and federally funded employer. Second, the logic of *Parson* would not apply to the instant case because here we have an entity of a foreign government issuing an election-interfering letter of libel against Col. Mastriano not just about his public service but also in relation to its attack on his private property interests in his degree, and copyrighted books, movie script and speaking engagements. The court in *Parson* was not indicating a persuasive bright line rule that every case which involved someone standing for election can have all their educational records unsealed. Exhibit 4 is from Col. Mastriano's University, not an election competitor. Such a misguided position as Volokh's would mandate all of former President Obama's sealed Oberlin College records, or any candidate's private educational files for that matter, be immediately released to the public. Indeed, under Volokh's faulty reasoning, because he is himself a public official in the sense of being a state-paid half-million-a-year

employee and self-described public figure blogger, anyone could access his state e-mails and read his correspondence that appears on Stanford's computers or in any way is related to his alleged "research" and writing work which they fund.  Anyone may then access his financial statements in his bank accounts to show the world who is supporting his "*pro se*" filings and "dissemination" of libel via court-protected orders, as he requests this Court to permit him to do.

There is therefore no presumption of access and Volokh's motion must be DENIED.

## VI.   <u>Conclusion.</u>

For the foregoing reasons intervenor's motions to intervene and unseal Exhibits 2 and 4 of the Complaint is respectfully requested to be DENIED.

**Filed: August 7, 2024.**

Respectfully submitted,
By: _____//s//_____
Daniel L. Cox, OKWD Fed. Bar no. 24-90
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was served on all counsel of record via CM/ECF and upon Eugene Volokh via his e-mail he provided: volokh@stanford.edu .

_____/s/_____
Daniel L. Cox