## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Douglas Mastriano | : | CIVIL NO. 5:24-cv-00567-F |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| James Gregory, III, *et al* | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ 2

TABLE OF AUTHORITIES ........................................................................ 4

I.    INTRODUCTION ................................................................................ 9

II.   CORRECTION OF DEFENDANTS' 'STATEMENT OF FACTS'. .................... 9

III.  ARGUMENT ...................................................................................... 9

   A.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS. .... 9

      1.   *Defendant's Activities Underlying Plaintiff's Complaint Were Commercial*
      *Activities.* ................................................................................ 11

      2.   *Individual Defendants Are Not "Foreign States" Protected by Immunity Under*
      *Foreign Sovereign Immunities Act* ........................................ 14

      3.   *Even If This Court Finds Individual Defendants Immune Under Foreign*
      *Sovereign Immunities Act, Defendants Lack Immunity Under Commercial Activity*
      *Exception.* ................................................................................ 16

         a.   *Defendants' Actions Have Sufficient Nexus to United States.* ........... 17

   B.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS. ................ 19

      1.   *There is Personal Jurisdiction Over James Gregory Jr. and Defendants*
      *Through Oklahoma's Long Arm Statute.* .................................. 20

      2.   *This Court Has General Jurisdiction Over Defendants.* ................... 20

      3.   *This Court Has Specific Jurisdiction Over UNB.* ......................... 23

      4.   *This Court Only Need Specific Jurisdiction Over the Individual Defendants for*
      *One of the Claims.* ................................................................ 25

      5.   *This Court's Exercise of Personal Jurisdiction Over Defendants Is Reasonable,*
      *Comporting with Traditional Notions of Fair Play and Substantial Justice.* .......... 27

6. *Because There is Personal Jurisdiction Over University Defendants, the 10th Circuit's "Pendent Personal Jurisdiction" Covers All Other Claims and Defendants Connected to this Action.* ............................................. 30

C. PLAINTIFF'S COMPLAINT DOES NOT FAIL TO STATE ACTIONABLE CLAIM UNDER FRCP 12(B)(6). ....................................................................... 31

1. *RICO Violations in Counts One and Two Are Well-Pleaded.* ........................... 32

2. *Sherman Act Violations in Counts Three and Four Are Well-Pleaded.* .............. 33

3. *Count Five – Fraud – Is Well Pleaded.* ..................................................... 34

4. *Count Six – Aiding and Abetting – Is Well-Pleaded.* .................................... 35

5. *Count Seven – Breach of Contract – Is Well-Pleaded.* ................................... 36

6. *Count Eight – Negligence – Is Well-Pleaded.* ............................................. 36

7. *Count Nine – Defamation – Is Well-Pleaded.* ............................................. 37

D. SERVICE OF PROCESS HAS MET THE REQUIREMENTS OF WAIVER UNDER ART. 10 OF THE HAGUE CONVENTION ........................................................... 38

1. *Service of Process Is Not Defective Under Art. 10 Waiver.* ........................... 38

2. *Even If This Court Finds Art. 10 Service Defective, Plaintiff's Service of Process Is Curable.* ............................................................................ 40

III. LEAVE TO AMEND REQUESTED FOR ANY DISMISSAL ................................. 42

IV. CONCLUSION ................................................................................ 43

# TABLE OF AUTHORITIES

## CASES

*American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F. Supp. 861, 863-64 (N.D. Ill. 1987) ----------------------------------------------------------------- 10

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)---------------------------------------------- 6, 29

*Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) ----------------------------------- 6

*Calder v. Jones*, 465 U.S. 783, 788–90 (1984) ------------------------------------------------ 27

*Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 167-68 (D.C. Cir. 1994) -------------- 10

*Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, No. 2:2022cv02435, U.S. Dist. 166811, at *43–44 (D. Kan. Sept. 19, 2023)---------------------------------------------- 39

*Cooper v. Bondoni*, 841 P.2d 608, 611 (Okla. Ct. App. 1999)------------------------------- 33

*Cory v. Aztec Steel Bldg. Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006) ---------------------- 18

*Dimensional Communications, Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653, 656 (D.N.J. 2002) ------------------------------------------------------------------------------------- 37

*Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) -------------------------------------- 12

*Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs*, 2014 U.S. Dist. LEXIS 178838, at *18–19 (W.D. Okla. Sept. 26, 2014)------------------------------------------------------ 38

*Hart v. Salois*, No. 14-4053 (10th Cir. Mar 10, 2015),------------------------------------- 18

*Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024)------------------------------------------- 29

*Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 24-25 (D. Mass. 2019) -------------- 10

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945).-------------------------------- 22

*Jackson v. Greerwalker*, LLP, Case No. 17-CV-0436-CVE-FHM at *8 (N.D. Okla. Feb
   14, 2018) ------------------------------------------------------------------------------- 33

*Jenkins v. Prime Ins.*, Case No. 23-4113 (10th Cir. Sep 04, 2024) -------------------------- 29

*Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3rd Cir. 1993) ------------------------- 34

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 296-
   98 (S.D.N.Y. 2001) ------------------------------------------------------------------------- 10

*Long v. Fulmer*, No. 13-6156 (10th Cir. Nov 15, 2013) ------------------------------------- 6

*Marcus Food Co. v. Dipanfilo*, No. 09-1261-EFM, 2010 WL 3946314, at *3 (D. Kan.
   2010).------------------------------------------------------------------------------------ 37

*Melea, Ltd. v. Jawar SA*, 511 F.3d 1060, 1069 (10th Cir. 2007)---------------------------- 19

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35-36 (2015)------------------------------ 14

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1998 WL 348037 (10th
   Cir. 1998) ----------------------------------------------------------------------------------- 23

*Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 992 (10th Cir. 2007) ------------- 7, 9

*Peel Payments, LLC v. First Data Corp.*, NO. CIV-16-0425-HE, (W.D. Okla. Oct. 28,
   2016) --------------------------------------------------------------------------------------- 29

*Peel Payments, LLC v. First Data Corp.*, NO. CIV-16-0425-HE, 4-5 (W.D. Okla. Oct.
   28, 2016) ----------------------------------------------------------------------------------- 33

*Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)----------------------------- 38

*Republic of Argentina v. Weltover*, 504 U.S. 607, 611, 614 (1992) ---------------------- 9, 10

*Republic of Austria v. Altmann*, 541 U.S. 677, 690, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004)
   --------------------------------------------------------------------------------------------- 7

*Rudman v. Oklahoma*, 2022 WL 17083406, at \*2 (W.D. Okla. Nov. 18, 2022) ---------- 38

*S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)---------------------------------- 29

*Samantar v. Yousuf*, 560 U.S. 305, 313–19, n.9 (2010)--------------------------------- 11, 12

*Southway Constr. Co. v. Cent. Bank of Nig.*, 198 F.3d 1210, 1216 (10th Cir. 1999) - 7, 10, 14

*Systemcare, Inc. v. Wang Labratories Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997) ---- 31

*Thrasher v. Rocky Mountain. Auto Brokers, Inc.*, 2019 U.S. Dist. LEXIS 164799, at \*6–8 (D. Colo. Sept. 25, 2019). ------------------------------------------------------------- 38

*Thrasher*, 2019 U.S. Dist. LEXIS 164799 at \*7; *Richardson v. Carl's Jr.*, 2021 U.S. Dist. LEXIS 225600, at \*15–17 (D. Colo. Nov. 23, 2021)-------------------------------- 39

*Turkiye Halk Bankasi AS v. United States*, 143 S.Ct. 940, 941-42 (2023) ------------ 12, 30

*U.S. v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) ------------------------------- 28

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983)----------------------------------------------------------------------- 7, 8

*VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021) --------------------------------------------------------------------------------- 29

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 599, 62 L.Ed.2d 490 (1980). ----------------------------------------------------------------- 23

*XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020) ------------------------- 16, 23

*Yegiazaryan v. Smagin*, 599 U. S. _____, pps. 5-14 (2023) ------------------------------ 7, 30

<u>STATUTES</u>

Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602-11 --------------------- 7, 11

18 U. S. C. §1964(c) ------------------------------------------------------------------- 7

18 U.S.C. 1965(a)-(b)------------------------------------------------------------------ 18

28 U.S.C. § 1603(d)------------------------------------------------------------------- 9

28 U.S.C. § 1605(a)(2).---------------------------------------------------------------- 13

28 U.S.C. §§ 1603-1605----------------------------------------------------------------- 11

Fed. R. C. Proc. 12(b)(6). -------------------------------------------------------------- 28

RICO §1964(c) ------------------------------------------------------------------------ 30

<u>OTHER AUTHORITIES</u>

Article 10 of the Hague Convention ----------------------------------------------- 36, 37, 39

Article 6 of the Hague Convention ----------------------------------------------------- 37

Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638, Art. 10 (Feb. 10,

    1969). *passim* ----------------------------------------------------------------- 36-37

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents----- 36

<u>RULES</u>

Fed. R. Civ. P. 12(b)(5)---------------------------------------------------------- 36, 38

Fed. R. Civ. P. 4(f)(1)------------------------------------------------------------------ 36

Fed. R. Civ. P. 9(b)-------------------------------------------------------------------- 31

Fed. R. Civ. Proc. 15(a)(1)------------------------------------------------------------- 40

Fed. R. Civ. P. 4 ------------------------------------------------------------------------------- 39

<p style="text-align:center">T<span style="font-variant:small-caps">REATISES</span></p>

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (3d

ed. 2023) ------------------------------------------------------------------------------------- 39

Joseph F. Morrissey, *Simplifying the Foreign Sovereign Immunities Act: If a Sovereign*

*Acts Like a Private Party, Treat It Like One*, 5 Chi. J. Int'l L. 675, 682 (Winter 2005)  9

## I.    INTRODUCTION

Col. Mastriano is a retired U.S. Army officer with an impeccable service record who is having his life and intangible property destroyed by the racketeering of Defendants, an Oklahoma Ph.D. student Gregory and his cohorts the UNB and Individual Defendants.

This civil action and the circumstances surrounding the same arose in Oklahoma, United States.  UNB and Defendants did the acts alleged using the United States wires and mails, defaming him in the press, all while falsely claiming UNB was not involved in the egregious libel letter.  See Plaintiff's Opposition **Exhibit One**, attached hereto.

## II.    CORRECTION OF DEFENDANTS' 'STATEMENT OF FACTS'.

Defendants' specious recitation of "facts" are to be disregarded by this Court.
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, "all well-pleaded allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).  *Long v. Fulmer*, No. 13-6156 (10th Cir. Nov 15, 2013).

## III.    ARGUMENT

## A.    This Court Has Subject Matter Jurisdiction Over Plaintiff's Claims.

Plaintiff has sued under the Racketeer Influenced and Corrupt Organizations Act (RICO), which provides a private right of action to "[a]ny person injured in his business or

property by reason of a violation of" RICO's substantive provisions. 18 U. S. C. §1964(c). The Supreme Court has held that "a plaintiff alleges a domestic injury for purposes of §1964(c) when the circumstances surrounding the injury indicate it arose in the United States. *Yegiazaryan v. Smagin*, 599 U. S. ____, pps. 5-14 (2023).

Since the United States was founded, foreign sovereign states received near complete civil immunity from suit in American courts. *Orient Mineral Co. v. Bank of China*, 506 F.3d 980 (10th Cir. 2007))(internal citations omitted).  In 1952, the State Department adopted a rule allowing suits for "private or commercial activity." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487 (1983); *Republic of Austria v. Altmann*, 541 U.S. 677, 690, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004).  In 1976, Congress codified this practice. Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602-11.  *See* 506 F.3d at 991.

To determine whether a foreign sovereign is immune from suit in the United States under the FSIA, courts employ a burden-shifting analysis. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1271-72 (10th Cir.2003).

The defendant must first establish a prima facie case that it is a sovereign state, creating a rebuttable presumption of immunity.  506 F.3d at 991.  Once the foreign sovereign makes that prima facie showing of immunity, the plaintiff has the burden of production to make an initial showing that a FSIA exception to foreign immunity applies. *Id.*  If the plaintiff implicates an exception, then the foreign sovereign bears the "ultimate burden of proving," by a preponderance of the evidence, that the exception does not apply in that case.  506 F.3d at 992.

Here, the certain defendants have made no showing of their acting on behalf of any foreign state in either a public or official act or role in regard to Plaintiff and the allegations in this civil action. Their actions are commercial activity. *Verlinden* at 487. They file no affidavits other than a declaration by UNB president and defendant Mazerolle (Defs. Ex. 3). But that declaration merely asserts receipt of government funding as a majority of its revenues and that its employees are permitted to participate in the pension system. That does not make it a state sovereign. Plaintiff has averred that his degree and those of other American soldiers he recruited to UNB has been paid for in United States Department of Defense grants to UNB – not Canadian funds. ECF 1, Compl. pg. 12, ¶ 38. Defendants assert no actual sovereign authority by or from the government of Canada as to their present actions. While they include in "Exhibit 1" to their motion an 1859 statute averring the University of New Brunswick (UNB) was established by the authority of the King of England and the British Empire, the government of Canada separated and became independent from Britain on July 1, 1867 – eight years later. Defendants' "Exhibit 2" "statute of 1984" for UNB does not provide sovereign state immunity but that it is established as a corporation. *Id.* at pg. 3. Indeed, numerous members of the Board of Governors of UNB are private citizens. *Id.* at pgs. 13-14.

### 1. Defendant's Activities Underlying Plaintiff's Complaint Were Commercial Activities.

UNB is a university best viewed as public-private partnership corporation, not an official instrumentality or agency of Canada. *Id.* It does not act on behalf of the government, and at this early stage of litigation is not known to have done so here. But

even if UNB is found by this Court to be an official agency or instrumentality of the government of Canada, the "FSIA commercial activity exception, see 28 U.S.C. § 1605(a)(2), applies in this case to give United States courts subject matter jurisdiction." *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 992 (10th Cir. 2007). The "commercial activity" exception is the FSIA's "most significant ... exception[ ]" to foreign sovereign immunity. *Id.*, citing, *Republic of Argentina v. Weltover, Inc*., 504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). It "is at the heart" of the FSIA's codification of the restrictive theory of foreign sovereign immunity. *Id.*, citing, Joseph F. Morrissey, *Simplifying the Foreign Sovereign Immunities Act: If a Sovereign Acts Like a Private Party, Treat It Like One*, 5 Chi. J. Int'l L. 675, 682 (Winter 2005).

FSIA defines "commercial activity" as follows:

[E]ither a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).

In determining whether an activity is commercial within these provisions, courts consider whether the foreign state acts as a private actor within the market rather than as a market regulator. *Southway Constr. Co. v. Cent. Bank of Nig.*, 198 F.3d 1210, 1217 (10th Cir. 1999) (quoting *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992)). In doing so, the motivation or purpose of the action is irrelevant. *Id.* Ultimately, this determination rests on the whether the particular actions are of a type that a private party engages in "trade and traffic or commerce." *Id.* If so, the actions constitute commercial activity. Further, the

action's illegality is irrelevant. *See id.* (citing *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 167-68 (D.C. Cir. 1994)).

Federal courts have interpreted commercial activity broadly, specifically finding that defamatory acts, wrongful dissemination of intellectual property, and acts involving contracts, constitute commercial activity. *See Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 24-25 (D. Mass. 2019) (implicitly finding defamation against plaintiff constituted commercial activity under FSIA); *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 296-98 (S.D. N.Y. 2001) (finding publication of plaintiff's photos in violation of copyright and entering contract with plaintiff both constituted commercial activities under FSIA); *American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F. Supp. 861, 863-64 (N.D. Ill. 1987) (finding scheme to eliminate industry competition by publication of false materials and advertising against plaintiff in violation of RICO constituted commercial activity under FSIA); *Southway Constr. Co.*, 198 F.3d at 1217-18 (finding entering of assignment contract constituted commercial activity under FSIA).

Here, Defendants engaged in numerous defamatory acts against Plaintiff by repeatedly making statements to the press regarding Plaintiff and his Ph.D., publishing via various media a letter to the world denouncing Plaintiff and his Ph.D., the content of which Defendants knew to be false at the time of communication. (Compl. 15, 29-30, ECF No. 1). Defendants engaged in wrongful dissemination of Plaintiff's private educational records, namely his Ph.D. thesis and corrigendum, by publicly releasing it from embargo against Plaintiff's wishes. (Compl. 11, ECF No. 1). Defendants also breached a contract

with Plaintiff regarding conferral of his Ph.D. degree by willfully and fraudulently reopening review of Plaintiff's degree via investigations ten years after having conferred a fully reviewed and approved degree. (Compl. 12, 28, ECF No. 1). These defamatory acts were not of the kind in which a foreign state acts as a market regulator but of the kind that private actors, however unsavory, might engage in when conducting commerce for profit. Thus, they are commercial under FSIA.  Consequently, this Court has subject matter jurisdiction over Plaintiff's Complaint.

**2.    Individual Defendants Are Not "Foreign States" Protected by Immunity Under Foreign Sovereign Immunities Act**

Under 28 U.S.C. § 1604's Foreign Sovereign Immunities Act ("FSIA"), foreign states (including their political subdivisions, agents, and instrumentalities) are generally immune from suit in the United States unless one of the Act's enumerated exceptions in § 1605 is satisfied. 28 U.S.C. §§ 1603-1605. However, foreign sovereign state officials and other individuals do not constitute a "foreign state" under FSIA, and therefore, such persons are not immune from suit thereunder. *See Samantar v. Yousuf*, 560 U.S. 305, 313–19, n.9 (2010) (expressly holding that individual foreign official is not included within FSIA's foreign state definition and thus not immune and noting that legislative history indicates this definition also does not apply to individuals broadly).  There, the "terms Congress chose simply do not evidence the intent to include individual officials within the meaning of 'agency or instrumentality.'"  C.f., *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (describing § 1603(b) as containing "indicia that Congress had corporate formalities in mind").  *Samantar* at 316; *See also*, *Turkiye Halk Bankasi AS v. United*

*States*, 143 S.Ct. 940 (2023)("this Court's decision in *Samantar*, in which the Court analyzed the FSIA's 'text, purpose, and history' and determined that the FSIA's 'comprehensive solution' for suits against foreign states did not extend to suits against individual officials,...").

Here, Individual Defendants (all Defendants except for UNB and National Research Council of Canada) are all non-entity, individual persons sued in their individual capacities. (Compl. 1, 5-8, ECF No. 1). Consequently, even if the Court were to find that UNB and National Research Council of Canada[1] constitute foreign states under FSIA, Individual Defendants as employees or officials thereof do not fall within FSIA's definition of foreign state and thus are not immune from this suit. In addition to official University action, the certain Individual Defendants herein have also acted in their own personal capacities, including, publicly proclaiming via international wires and mails and electronic distribution a negative action against Col. Mastriano's Ph.D. in order to place him in a false and negative light in order to damage his election and his private Ph.D. and book property interests, releasing Col. Mastriano's embargoed thesis, and furthermore by signing the defamatory maliciously libelous letter intended to cause Col. Mastriano to lose his American election front-runner position[2]. UNB may not claim immunity while

---

[1] Plaintiff does not concede or admit that National Research Council of Canada constitutes a foreign state under FSIA. Further, Defendants do not allege in their Motion to Dismiss and Brief in Support that National Research Council of Canada constitutes a foreign state under FSIA. (Defs.' Mot. Dismiss Br. Supp. 1-34).

[2] Col. Mastriano's front-runner status for the GOP nomination for U.S. Senate in 2023 when the individual defendants first issued their malicious libel against him via the electronic wires, on social media and in the American press was not in question – national polls showed him winning the nomination in a landslide, with anywhere from 18 to 24 points ahead of every other candidate for the nomination. See, https://www.publicpolicypolling.com/polls/trump-and-mastriano-have-

empowering Individual Defendants via Official UNB Letterhead, official e-mail distribution, and official social media (Facebook) pages, to act maliciously in seeking destruction of Col. Mastriano's distinct property interests and defeat of his elections. *Id*.; *see also*, Ex. 1 hereto. This Court should deny Defendants' motion.

3.    **Even If This Court Finds Individual Defendants Immune Under Foreign Sovereign Immunities Act, Defendants Lack Immunity Under Commercial Activity Exception.**

Under § 1605(a)(2)'s exception to FSIA immunity for commercial activities ("commercial activity exception"):

> [A foreign state is not immune from suit when] the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

Here, Plaintiff's action is based upon commercial activities performed by Defendants in Canada, Oklahoma, and the United States in relation to Defendants' commercial activities in the United States as to Plaintiff and with the USDOD. Those activities caused a direct effect in the United States by damaging Plaintiff personally as well as his intangible property and protected interests. Consequently, should this Court find that Defendants are foreign sovereigns, their actions bring them within the commercial activity exception.

---

big-leads-in-pennsylvania-republican-primary-for-president-and-senate/ (accessed Sept. 7, 2024).
Defendants' malicious actions further damaged him in his proposed match-up with U.S. Senator Bob Casey.

### a.    Defendants' Actions Have Sufficient Nexus to United States.

In order for a sufficient nexus to exist between the defendant's commercial activities and the United States under the commercial activity exception's third clause, a "[p]laintiff['s] action must (1) be based on an act outside the United States; (2) that was done 'in connection with' a commercial activity; and (3) that caused a 'direct effect' in the United States." *Southway Constr. Co. v. Cent. Bank of Nig.*, 198 F.3d 1210, 1216 (10th Cir. 1999) (citing district court's opinion). In evaluating nexus—i.e., considering whether a plaintiff's suit is actually based upon commercial activity—courts look to the gravamen of the plaintiff's suit by referring to the sovereign acts actually causing injury. *See OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35-36 (2015); *but see id.* at n.2 (implying that approach may be different for cases where gravamen of suit did not occur in same place for all claims).

Here, the gravamen of Plaintiff's Complaint is that Defendants[3] engaged in a years-long scheme to defraud Plaintiff of his intangible property[4], economic opportunities, and interests in connection with Defendants' commercial activities of operating a Ph.D. program at UNB, joining in concert with Gregory's scheme to destroy Col. Mastriano's Ph.D. and work while knowing that Gregory's own competing alternative historical work included attacking Plaintiff's work, for economic gain and to commit election interference.

---

[3] For brevity, as used throughout, "Defendants" refers to each defendant individually, collectively, or any combination thereof, as the case may be.

[4] As used throughout, "intangible property" includes all intangible property interests, including but not limited to Plaintiff's intellectual property in his Ph.D. degree and items related thereto.

(Compl. 3-30, ECF No. 1). Defendants acted in furtherance of this scheme by, among other things, reopening Plaintiff's Ph.D. approval process by publicly launching multiple fraudulent investigations into Plaintiff's and his Ph.D.'s academic integrity at UNB in breach of contract and fiduciary duty, wrongfully disseminating to the public Plaintiff's private educational records including his Ph.D. thesis dissertation, and making fraudulent and defamatory public statements about Plaintiff and his work across various media, in violation of US law. (Compl. 3-30, ECF No. 1). These actions harmed Plaintiff in the United States. *Id.*

Defendants launched these investigations and disseminated Plaintiff's property at the University of New Brunswick in Fredericton, Canada. (Compl. 10, 13, 16-17, 19, 8, 12, ECF No. 1). Defendants made defamatory statements about Plaintiff and his Ph.D. that were distributed throughout the United States via wire and mail, including publication of a letter denouncing Plaintiff and his Ph.D. to university students, alumni, other universities, and American news media outlets; statements to the press and news media outlets; and social media statements. (Compl. 11-12, 30, 15, 10, ECF No. 1); see also, **Exhibit 5, attached hereto**. As these actions were performed both in Canada and the United States, the first nexus requirement that Defendants' actions, having arisen from Oklahoma, USA, includes as its scheme and foundation actions outside the United States.

If in assessing nexus this Court should find that any of Defendants' actions were solely performed outside the United States, these actions would still subject Defendants to the second clause of the commercial activity exception by making defamatory statements to the American press about Plaintiff and his Ph.D. being under "investigation" just days

before the 2022 election where Col. Mastriano was competing for votes in a tight race for Governor, publishing a letter denouncing Plaintiff and his Ph.D., and taking action causing limitation of Plaintiff's book sales and printing by the University of Kentucky. (Compl. 10-12, 30, ECF No. 1).

**B.    This Court Has Personal Jurisdiction Over Defendants.**

Plaintiff has met his preponderance burden of establishing that the court can exercise personal jurisdiction and has made his *prima facie* showing that jurisdiction exists through means of affidavits, acceptance with signatures of actual authorities of UNB, notices and other written material. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). Furthermore, counsel for the instant defendants has made no objections to the undersigned for the service of process accomplished, and indeed, the Defendants themselves attested through their UNB agents that they accepted service. See Ex. 4 attached hereto; Returns of service filed.

UNB and the Individual Defendants use the American wires to publish advertising in America where the United States has for many years including those relevant been listed in the top five of all international UNB student population both in residence and online[5], maintain an "International Student Advisor's Office (ISAO)" for American and other students in order to expand enrollment, receives money sponsorships from the United States, citizens and U.S. companies, regularly host career fairs on campus and virtually

---

[5] See, UNB enrollment statistics, summaries located at:
https://www.unb.ca/finance/_assets/documents/rpb/factbooktables/2023-enrollment/tablee1-enrollment-tables-summary-combined.pdf (accessed September 9, 2024).

with dozens of international companies including those from the United States, and participates in the MITACS Globalink Research Internship, a competitive program which advertises to the United States and the world. They have and are obtaining significant financial contracts from United States and its citizens including the USDOD and Col. Mastriano and other U.S. Army officers in the U.S.  They are publishing a horrific letter on UNB letterhead on American social media (Facebook), sent the same through American wires and e-mail, appeared on and were interviewed in American media distributed throughout Oklahoma, Pennsylvania and the world, and Defendants Jeff Brown, Rendall, Mazerolle, MaGee, Ferris, Bothwell and MacMillan each joined with Oklahoma Ph.D. student Gregory in his public crusade in Oklahoma and elsewhere to reopen a closed fraudulent "investigation" and cause intangible property loss in Col. Mastriano's University of Kentucky book publishing, career, speaking engagements and commercial opportunities.

## 1.    There is Personal Jurisdiction Over James Gregory Jr. and Defendants Through Oklahoma's Long Arm Statute.

This court may obtain personal jurisdiction over an individual by two avenues in order to satisfy the Due Process clause of the Fourteenth Amendment: General Jurisdiction and Specific Jurisdiction.  Here, this Court has both.

## 2.    This Court Has General Jurisdiction Over Defendants.

There is no dispute that defendant Gregory at all times relevant is a resident of the Western District of Oklahoma and is a student at the University of Oklahoma and professor at Rose State College in Oklahoma, and thus "personal jurisdiction based on minimum

contacts is established as to at least one defendant.'..." *Hart v. Salois*, No. 14-4053 (10th Cir. Mar 10, 2015), *citing*, *Cory v. Aztec Steel Bldg. Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006).

There is also no dispute that UNB and its agents, including the instant certain defendants, "transact [] affairs" in the Western District of Oklahoma by advertising to its students via their worldwide web site (unb.ca), defaming Plaintiff on its Facebook broadcast in Oklahoma, enrolling students from Oklahoma both online and in person or in some hybrid of the two on information and belief, and that they maintained repeated contacts with Gregory over years facilitating his fraudulent complaints via their e-mail wires and academic system open to Oklahoma residents. 18 U.S.C. 1965(a)-(b) (civil RICO jurisdiction and service exists as to residents and those who transact affairs in the judicial district). See **Exhibit 3**, attached hereto, MaGee forward of Gregory e-mail complaint. Therefore, nationwide service of Gregory under civil RICO is permitted. *Id.* Plaintiff further provides sufficient "ends of justice" grounds to include personal jurisdiction of defendants, and has submitted the notarized receipts of the served summons upon Defendants, which have also been served upon Defendants' counsel in Denver, Colorado via e-mail, something that Defendants confirmed in writing to have received without any accompanying statement of limitation. See, Ex. 3 attached hereto.

General Jurisdiction over an individual alone is enough to satisfy the Due Process requirement for personal jurisdiction. Because Gregory at all times relevant to the instant case has had his domicile, work and affairs transacted in Oklahoma, this court has that

general jurisdiction to hear any case or controversy that Gregory causes including UNB and Individual Defendants.

The ends of justice mandates in this case nationwide service for Gregory and Defendants. UNB and Individual Defendants avail themselves of Oklahoma and United States' laws allowing advertising, attracting students to their program, and use of U.S. federal tax dollars for its Ph.D. and graduate programs which they misused against Plaintiff. UNB and Individual Defendants may not be found to have no personal jurisdiction in the Western District of Oklahoma while they are at this very moment continuing to transact affairs in the Western District of Oklahoma, including the very gravamen of the matter at issue in this case – scheming with and advancing its scheme a malicious competitor (Gregory) to commit fraud against Col. Mastriano by the wires and mail. ECF 1, Compl. ¶ 2, 22-45. *Melea, Ltd. v. Jawar SA*, 511 F.3d 1060, 1069 (10th Cir. 2007)( "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may…subject another co-conspirator to the forum's jurisdiction.'...". The sworn complaint stands unopposed as to any facts of the RICO scheme of Defendants and a mere averment by Defendants that they live in Canada, while transacting affairs in the Western District of Oklahoma and while joining in the specific and egregious scheme with a Western District of Oklahoma defendant Gregory to defraud Co. Mastriano via the wires and mails, is insufficient to deny general jurisdiction over them. Plaintiff has met his burden in pleading without need of a hearing. But if this Court believes more evidence is needed to ascertain or additionally validate all the substantial and ongoing contacts with the Western District


of Oklahoma by Defendants, Plaintiff respectfully requests an evidentiary hearing on this matter.

This Court has general jurisdiction over Defendants.

**3.    This Court Has Specific Jurisdiction Over UNB.**

Additionally, if this Court finds that UNB constitutes a foreign sovereign under FSIA, this Court automatically has personal jurisdiction over UNB under 28 U.S.C. § 1330(b).

In cases wherein service of process is made in compliance with 28 U.S.C. § 1608 pursuant to a FSIA exception, federal district courts automatically have personal jurisdiction over the defendant under 28 U.S.C. § 1330(b), regardless of his minimum contacts with the forum state. *See Samantar v. Yousuf*, 560 U.S. 305, n.20 (2010) (noting that personal jurisdiction is "automatic" and need not be established when granted under § 1330(b) pursuant to FSIA exception.); *Southway v. Cent. Bank of Nigeria*, 994 F. Supp. 1299, 1312 (D. Colo. 1998) (holding minimum contacts test does not apply to determine personal jurisdiction over defendant pursuant to FSIA exception).

Here, if this Court finds that UNB is a foreign sovereign under FSIA, this Court automatically has personal jurisdiction over UNB because as Defendants concede in their motion and brief, service of process has been made on UNB as a foreign sovereign in accordance with 28 U.S.C. § 1608. (Defs.' Mot. Dismiss Br. Supp. 16, ECF No. 12). Consequently, this Court's personal jurisdiction over UNB is automatic under 28 U.S.C. § 1330(b) and need not be established by a minimum contacts analysis.

Even if this Court does not find UNB as a foreign sovereign or that it has automatic personal jurisdiction over UNB by operation of § 1330(b), this Court still has specific personal jurisdiction over UNB according to this section's minimum contacts analysis. In fact, as noted by Defendants in their motion and brief, Col. Mastriano's burden of establishing this Court's personal jurisdiction over UNB is eased by the treatment of the United States generally, rather than Oklahoma specifically, as the forum state in a minimum contacts analysis. *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 821 F. Supp. 1405, 1410 (D. Colo. 1993), *aff'd*, 33 F.3d 1232 (10th Cir. 1994); Defs.' Mot. Dismiss Br. Supp. 16, ECF No. 12). Intentional defamatory acts by a defendant outside the forum state calculated to have primary participation in the forum state through harm caused to the plaintiff by those acts in the forum state makes it reasonable for a defendant to anticipate being haled into court there such that he may fairly be subjected to personal jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (finding personal jurisdiction over FL defendants for primary participation in publication of defamatory article in national magazine harming plaintiff primarily in CA).

Here, as analyzed in this section, UNB conspired and acted with and through other Defendants to defame Col. Mastriano by repeatedly making statements to the American press regarding Col. Mastriano and his Ph.D. and publishing via various media a letter to the world (including the United States) denouncing Col. Mastriano and his Ph.D.—the content of which Defendants knew or should have known to be false at the time of communication. (Compl. 15, 29-30, ECF No. 1). These defamatory acts were timely calculated to and did in fact cause harm to U.S. citizen Col. Mastriano's reputation

24

primarily in the United States (to an extent including Oklahoma). (Compl. 3-30, ECF No. 1; Ex. 2). The acts have and are depriving him of his property interests in his Ph.D. and thesis, interfered with his election campaigns in Pennsylvania, reduced his book sales and printing contract with University of Kentucky, and deprived him of other interests relating to his intangible property and economic opportunities in the United States and abroad. (Compl. 3-30, ECF No. 1; Ex. 2). In taking such defamatory actions against Col. Mastriano, UNB should have reasonably anticipated being haled into a United States federal district court.

In sum, regardless of UNB's status as a foreign sovereign, UNB is subject to this Court's personal jurisdiction.

### 4. This Court Only Need Specific Jurisdiction Over the Individual Defendants for One of the Claims.

Due process requires that a defendant who is not physically present in a forum state have certain minimum contacts with the forum state such that the maintenance of the suit does not violate traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Courts evaluate whether the defendants' contacts are continuous and systematic and consider the degree to which the defendants' activity is related to the cause of action on a sliding scale. *Id*.; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 599, 62 L.Ed.2d 490 (1980). Here, the pleaded contacts are numerous and substantive. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

Plaintiff has affirmed under penalty of perjury in his attached Declaration (**Exhibit 2)** and verified complaint (ECF 1) the facts and matters showing sufficient minimum contacts with the Western District of Oklahoma by Defendants, such that they knew or should have known that by conspiring with Gregory of the University of Oklahoma against Col. Mastriano they could reasonably anticipate being hauled into court there." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1998 WL 348037 (10th Cir. 1998), *citing*, *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559;. ECF 1, Compl. ¶ 2, 22-45.

Defendant Gregory purposefully availed himself of the protections and laws of Oklahoma.  While a graduate student at the University of Oklahoma, Gregory joined with other defendants to debunk the Colonel Mastriano's academic research. (ECF 1, p. 5). Gregory also filed false complaints raising questions about the validity of Colonel Mastriano's research while he was a student in Oklahoma which then led UNB and Individual Defendants to open repeated false investigations into Col. Mastriano's settled Ph.D. thesis and work. *Id.*  Gregory, along with Mazerolle and Jeff Brown, made fraudulent statements to the press seeking to debunk and devalue Col. Mastriano's work. *Id*. at ECF 1, p. 10.  UNB and Defendants conducted and participated in the conduct of the enterprise's affairs by coordinating complaints, public press hits, releasing his embargoed thesis in time for public dissemination of false allegations during elections, international and national e-mails to de-monetize his career and history speaking and teaching credentials and honorariums, pressuring cancelation in commerce of his book printing and malicious fraud and libel via the wires on UNB letterhead, all done through a pattern of racketeering activity

using and impacting U.S. electronic commerce, banking, media and communications. The motive and unlawful purpose of intentionally defrauding Col. Mastriano included UNB and the Individual Defendants in concert, scheme and collusion with Gregory, a resident adjunct professor and graduate student of Oklahoma. *Id*. at ECF 1, p. 16.     Col. Mastriano has made a *prima facie* case of personal jurisdiction against Defendants.

**5.    This Court's Exercise of Personal Jurisdiction Over Defendants Is Reasonable, Comporting with Traditional Notions of Fair Play and Substantial Justice.**

Even if a defendant's minimum contacts with the forum state are established, the exercise of personal jurisdiction over him there must still be reasonable. Courts consider the following factors in this determination:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). These factors operate on a sliding scale and can serve to preclude jurisdiction when minimum contacts are sufficient or permit it when minimum contacts are lacking. *See Burger King Corp.*, 471 U.S. at 477; *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1289 (10th Cir. 2020). However, even when these factors weigh against jurisdiction, it is rare for jurisdiction to be held unconstitutional once the plaintiff has established sufficient minimum contacts, requiring the defendant to prove a

compelling case to contest jurisdiction. *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013).

While important, a defendant's burden of litigating in a foreign forum is not dispositive, and courts have found the requirement of Canadian defendants traveling to Oklahoma and other American states as inconsequential, posing little if any particular burden on such defendants. *See Newsome*, F.3d at 1273 (finding no burden where Canadian defendant had to travel from Alberta to OK to litigate, though defendant itself had no property or offices in U.S.). Here, Defendants, except for Gregory and Jeff Brown, are all Canadian citizens or entities. Other than inconvenience of traveling, Defendants allege no specific burden posed by litigating in Oklahoma. As this type of inconvenience has been found inconsequential and does not pose a particular burden on Defendants, this factor does not weigh in favor of jurisdiction being unreasonable.

The forum state has an important interest in adjudicating a dispute between non-residents when a defendant's conduct effects forum residents or resolution of the dispute requires general application of the forum state's law. *See OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1096 (10th Cir. 1998). Application of the forum state's law weighs heavily in favor of exercising jurisdiction in that state. *See Newsome*, F.3d at 1272. Here, Oklahoma, through this Court as a federal district court, has a substantial interest in adjudicating this suit because the sole governing law is (1) federal law under 28 U.S.C. §§ 1961–68 regarding RICO claims and 15 U.S.C. §§ 1–7 regarding anti-trust claims; and (2) Oklahoma statutory and common law are applicable. Consequently, this factor weighs

strongly in favor of this Court's exercising jurisdiction over Defendants as this case will require general application of federal and Oklahoma law.

Regarding the plaintiff's interest in receiving convenient and effective relief, courts have considered the plaintiff's limited resources and involuntary participation in the dispute as weighing in favor of jurisdiction. *See Intercon, Inc.*, 205 F.3d at 1249. Here, Col. Mastriano is an individual who resides in the United States and lacks the vast financial resources to litigate in a foreign jurisdiction's court that an institution like UNB or UNB's institutional employees would have. Thus, this factor weighs in favor of this Court's exercise of jurisdiction over Defendants.

In assessing the judicial system's interest in efficient adjudication, courts consider where witnesses are located, where the underlying wrong at issue in the suit occurred, what law governs the dispute, and whether jurisdiction is required to prevent piecemeal litigation. *Newsome*, 722 F.3d at 1274 (quoting *OMI Holdings, Inc.*, 149 F.3d at 1097). Here, at all times relevant witnesses are located both in the United States (including Oklahoma) and Canada (including New Brunswick), as the Defendants' conspiracy and actions spanned across both nations. The underlying wrong began and arose when Gregory took specific action in Oklahoma such as by filing fraudulent complaints against Col. Mastriano.  Adjudication in Oklahoma may be required to avoid piecemeal litigation.

In assessing the shared interests of furthering substantive social policies, courts consider whether one of the parties is a foreign citizen, whether the foreign nation's law governs, and whether the foreign citizen chose to conduct business with forum citizens. *Newsome*, 722 F.3d at 1274. Here, two Defendants are Americans, the one initiating the

29

dispute did so in Oklahoma, and American common law, federal law and Oklahoma state law govern this dispute, providing Oklahoma through this federal Court a strong interest on this factor. Further, UNB and certain other Defendants have chosen to conduct business in the United States, receiving the fraudulent complaints from and conspiring with Gregory to destroy Col. Mastriano's Ph.D. and thesis here in Oklahoma, and also by contracting with the federal government to confer Ph.D.'s to U.S. military members, advertising in every state of the United States, including Oklahoma by the wires, social media and world wide web, and recruiting and enrolling many U.S. students into its programs.

On balance, these factors weigh strongly in favor of this Court exercising its personal jurisdiction over Defendants, even providing jurisdiction if this Court finds that Col. Mastriano did not make the requisite showing of minimum contacts.

6.   **Because There is Personal Jurisdiction Over University Defendants, the 10th Circuit's "Pendent Personal Jurisdiction" Covers All Other Claims and Defendants Connected to this Action.**

This court has personal jurisdiction over the Defendants for the federal questions. Because it does, this court may use pendent personal jurisdiction to cover all other claims brought by Col. Mastriano.

The doctrine of pendent personal jurisdiction may be used by a court when it has personal jurisdiction over a defendant to "piggyback" onto a claim, all other claims over which it lacks independent personal jurisdiction provided that all other claims arise from the same nucleus of operative fact. *U.S. v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).

Here, the common law claims that were brought against the Defendants all stem from the collusion that occurred between the Defendants in their scheme against Col.

Mastriano's economic intangible interests. Col. Mastriano has demonstrated that this court has personal jurisdiction over the defendants in this case. Because it does, the Court may utilize this Court's pendent personal jurisdiction doctrine to cover all other claims that are connected to the action. With this showing of personal jurisdiction, the court must deny the defendants' Fed. R. Civ. P. 12(b)(2) Motion to Dismiss.

## C.    Plaintiff's Complaint Does Not Fail to State Actionable Claim Under FRCP 12(b)(6).

"When considering a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations of the complaint as true and views them in the light most favorable to the nonmoving party." *Peel Payments, LLC v. First Data Corp.*, NO. CIV-16-0425-HE, (W.D. Okla. Oct. 28, 2016), *citing*, *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014). Under a Rule 12(b)(6) motion to dismiss, a district court determines whether allegations in the complaint stated a facially plausible claim. See *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)." *Jenkins v. Prime Ins.*, 23-4113 (10th Cir. Sep 04, 2024). A "complaint survives a motion to dismiss" when "there are two alternative explanations, one advanced by the defendant, and the other advanced by the plaintiff, both of which are plausible." *VoteVets Action Fund v. U.S. Dep't of Veterans Affs.*, 992 F.3d 1097, 1104 (D.C. Cir. 2021); *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024). Plaintiffs' complaint is not merely "plausible," it is prima facie actionable and stands without a single material effort to counter or explain the damage that Col. Mastriano has suffered by the Defendants. Defendants' motion must be denied.

Additionally, because the certain Defendants do not concede United States laws govern this civil action, their motion is premature and must be denied.

**1.  RICO Violations in Counts One and Two Are Well-Pleaded.**

RICO's two predicate acts for a civil action are more than met in this action. Facts alleging mail and wire fraud are well pleaded in the Complaint.  ECF 1, pps. 12, 19-20; Exhibits 1, 2, 4.

Contrary to Defendants' contention, American criminal law does govern the acts of those who are foreign states or members of the same.  The United States "has jurisdiction under § 3231 over…criminal prosecution." *Turkiye Halk Bankasi AS v. United States*, 143 S.Ct. 940, 941-42, 215 L.Ed.2d 242 (2023).  But this is a civil RICO action.  The Supreme Court has recently held that civil RICO is actionable against a foreign state when, as here, "a plaintiff alleges a domestic injury for purposes of civil RICO §1964(c) when the circumstances surrounding the injury indicate it arose in the United States.  *Yegiazaryan v. Smagin*, 599 U. S. ____, pps. 5-14 (2023).  There the Court analyzed liability upon where the "injurious effects" of the racketeering activity manifested; the thwarting of rights occurred; assets existed; and where the key international instigator of the scheme lived, worked and conducted his affairs.  *Id.* at pg. 11.

Here, each applies to grant Col. Mastriano the right to plead civil RICO relief in Oklahoma.  There, Gregory lived, lied and filed his fraudulent complaints via United States' mail and wires to UNB in order to egregiously damage with permanent harm Col. Mastriano's Ph.D., livelihood, intangible property interests, assets, and to interfere with his

United States and Pennsylvania elections from Oklahoma. This pattern of fraud is well-pleaded against UNB and Individual Defendants with Plaintiff's sworn attestation of the ongoing fraud over years, from at least 2019 to the present. Compl. pps. 8-15, ¶ 22-45. Contrary to the self-serving and spurious averment of Defendants (ECF 12, pg. 26, ¶ 2), Plaintiff has well-attested under oath to asset and intangible property loss estimated not less than $10 million. Compl. ¶¶ 2, 54, 65, 99, 108, 116, 122, 130. Plaintiff's pleading more than meets the standards of Fed. R. Civ. P. 9(b) as he has specified in detail "the circumstances constituting fraud" surrounding the RICO civil action. *Id.*

Defendants' motion must be denied.

**2. Sherman Act Violations in Counts Three and Four Are Well-Pleaded.**

Plaintiff has alleged a concerted action by UNB and Individual Defendants in the form of a combination or conspiracy that caused an unreasonable restraint of trade. ECF 1, Compl. ¶¶ 67-93. *Systemcare, Inc. v. Wang Labratories Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997). Plaintiff does not "allege[] only that" UNB "investigated accusations of misconduct…violat[ing] academic protocol." ECF 12, pg. 27, ¶ 1. He has plainly alleged injury to competition by the instant Defendants combining with Gregory to nullify and shut down competition regarding archeology and historical discoveries including a trail honoring American 82nd Airborne hero Sgt. Alvin C. York in the Argonne Forest in France, using this scheme to deprive Plaintiff of opportunities to teach at Universities, speak, depress and cancel his book sales, defame and rob him of his history Ph.D., thereby supporting not only Gregory but other unnamed historians in commerce. ECF 1, Compl.

¶¶ 22-45.  This competition loss is a business and property injury and impacts commerce in order to disfavor some historians in a particular field while advancing other historian's marketplace interests, which is precisely what the Sherman Act was meant to contemplate and is unlawful.

Defendants' motion must be denied.

**3.  Count Five – Fraud – Is Well Pleaded.**

Fed. R. C. Proc. 9(b) requires the "circumstances constituting fraud" to be stated with particularity, which has been done here.  "Malice, intent, knowledge and other condition of mind may be averred generally."  *Id.*  Common law fraud is well pleaded by Col. Mastriano under Oklahoma law.  ECF 1, Compl. ¶¶ 94-99.  The fraud included the reopening of Col. Mastriano's unanimously approved Ph.D. in history paid for by the United States Military, upon the false pretenses of an "inquisition for political, anti-American reasons…" ECF 1, Compl. ¶ 97.  This was specifically averred to include the UNB and Individual Defendants' statements of outrageous malicious internationally distributed libel and election interference, resulting in the defrauding of Col. Mastriano and the United States of his intangible interests in his Ph.D. and materials. ECF 1, Compl. ¶¶ 1-2, 22-45, 94, 97-98.  The political and anti-American reasons for defrauding Col. Mastriano of his Ph.D. and interfering in his elections by Defendants included their outrageous false statements in their letter (Exhibit 4 to Compl.) that his alleged - made-up and misrepresented by Defendants - viewpoints have harmed people and/or caused their deaths.  This fraud includes not only the fraud upon Col. Mastriano – who has honorably

served and saved lives in the Cold War and in Middle East, but the United States as well which funded his Ph.D. upon the promise that Col. Mastriano would not be mistreated, robbed or deprived of his intangible property interests and research, but would have his completed and unanimously approved doctorate conferred and respected. ECF 1, Compl. ¶¶ 94-99.

Defendants' motion must be denied.

### 4.  Count Six – Aiding and Abetting – Is Well-Pleaded.

Oklahoma law provides that "a defendant can be liable if he aids the commission of a tort—such as breach of fiduciary duty—by giving substantial assistance or encouragement to the tortfeasor. *Jackson v. Greerwalker*, LLP, Case No. 17-CV-0436-CVE-FHM at *8 (N.D. Okla. Feb 14, 2018), (*citing*, *Cooper v. Bondoni*, 841 P.2d 608, 611 (Okla. Ct. App. 1999)).. Defendants influenced and aided and abetted UNB's breach of fiduciary duty through the participation in the reopening of Col. Mastriano's Ph.D. and establishment of the "inquisition committee." Further, they "participated in the acts and conduct alleged herein to publicly investigate …[his] Ph.D.," along with issuing the libelous letter that seeks even at this moment to destroy the fiduciary duty of UNB to Col. Mastriano. ECF 1, Compl. ¶ 105.

Indeed, Defendants citations to Northern District case law is belied by Western District case law more on point. Here, the Court has already found aiding and abetting the breach of a fiduciary duty as a valid cause of action at the motion to dismiss stage. *Peel Payments, LLC v. First Data Corp.*, NO. CIV-16-0425-HE, 4-5 (W.D. Okla. Oct. 28, 2016) ("There is some reason to believe Oklahoma courts may recognize [the tort of aiding and

abetting the breach of fiduciary duty]," citing Oklahoma Supreme Court precedent including application of Oklahoma torts as well as Texas and Brazilian law).

Plaintiff well pleaded Individual Defendants aided and abetted UNB in investigating Col. Mastriano including Mazerolle commanding UNB's staff including history and research departments, MaGee controlling and directing the acts alleged, Rendall taking action to release his embargoed thesis, Jeff Brown, an American citizen, leading efforts to aid and abet Gregory in his scheme to reopen Col. Mastriano's thesis and to defame him in American media, thus joining with UNB to violate its fiduciary duties to Col. Mastriano and the United States in his Ph.D.  ECF 1, ¶¶ 10-22; 100-108.

Defendants' motion must be denied.

### 5.  Count Seven – Breach of Contract – Is Well-Pleaded.

Plaintiff affirmatively attested to breach of contract for Col. Mastriano's property interest in his Ph.D. conferred upon him 10 years prior to the scheme and unlawful inquisition of Defendants.  ECF 1, ¶¶ 109-116.  Plaintiff clearly pleaded the terms of payments and the agreement was "for the purpose of degree completion" (ECF 1, Compl. ¶ 114), which was materially breached when reopened 10 years after conferment.  *Id.* at 115.  Defendants cannot argue only "violations of academic protocol" are alleged while denying the plain pleading of those violations being averred as having "constituted a material breach of the agreements with Col. Mastriano.  *Id.*

Defendants' motion must be denied.

### 6.  Count Eight – Negligence – Is Well-Pleaded.

Defendants wrongly equate its duty towards Plaintiff as not including any duty of care "from a university and its employees to someone who received a degree."  ECF 12, pg. 30, ¶¶ 2-3.  Contrary to Defendants' assertion (ECF 1, pg. 31, ¶ 1), negligence is not "a matter for an educational committee," but under Pennsylvania and US law "[I]t is a question of fact for the jury to determine whether or not appellee University acted reasonably..." *Kleinknecht v. Gettysburg College*, 989 F.2d 1360 (3rd Cir. 1993).  Col. Mastriano was and is a resident of Pennsylvania.  ECF 1, ¶ 9.  Thus PA law on negligence applies.  Like the duty of care found in *Gettysburg College*, UNB was not merely allowing Col. Mastriano to advance a private, personal interest; it actively engaged Col. Mastriano via the United States Army for his Ph.D. program, and further entered into additional USDOD contracts to receive payments from the United States to engage its military officers in Ph.D. research in military history.  ECF 1, Compl. 1-45. There was not merely a "general duty" but a very foreseeable specific duty to both Col. Mastriano and the United States.  Here, even though Col. Mastriano is retired, his back pay, front pay and rank at retirement would likely all be affected by Defendants' actions breaching its duty to Plaintiff.  ECF 1, Compl. ¶¶ 117-122.

Defendants' motion must be denied.

### 7.  Count Nine – Defamation – Is Well-Pleaded.

Plaintiff has plainly averred libel against "all defendants."  ECF 1, Compl. 123-130. This included realleging the false statements of those defendants to media regarding the reopening of his Ph.D. for "investigation" (ECF 1, Compl. ¶¶ 2, 22-45; 123), releasing of

his embargoed thesis providing Col. Mastriano's property and information via the wires in the United States to Gregory empowering him to defame him in the media during the elections (*Id.*), speaking to the media and informing the world that Col. Mastriano's Ph.D. was "under investigation" in order to defame him and destroy his reputation as a history expert and to interfere with his elections, and to release the extreme and malicious libelous letter to the world during the election and "Ph.D. investigation" in order to further defame and destroy Col. Mastriano's good name and life's work. *Id.*

In his Count 9, Col. Mastriano further avers that such libel and slander "including but not limited to" Compl. Exhibit 4 (ECF 1-4) filed under seal which were "false and horrific" and known to be so when made with malice aforethought. *Id.*

These statements continue published to this day. They are alleged to be displayed on social media and are not retracted by Defendants from distribution to the United States, the world, and media outlets where they are reported on as so-called fact. Every allegation in the Compl. Exhibit 4 is false and horrific, and the complaint well pleads this despite the Defendants' specious claim. Plaintiff does not have to recite the defamation word for word, becoming his own distributer of what is false, in order to well plead a defamation claim.

Defendants' motion must be denied.

## D.  Service of Process Has Met the Requirements of Waiver Under Art. 10 of the Hague Convention.

### 1.  Service of Process Is Not Defective Under Art. 10 Waiver.

This court should deny the defendants' Motion to Dismiss on Fed. R. Civ. P. 12(b)(5) grounds because contrary to the defendants' contention, service of process was

proper and sufficient through Fed. R. Civ. P. 4(f)(1) and Article 10 of the Hague Convention.

Sufficient service of process on an individual in a foreign country occurs through "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents". Fed. R. Civ. P. 4(f)(1). The defendants' Motion to Dismiss applies Article 6 of the Hauge Convention but fails to consider another avenue of the Hague Convention that provides sufficient service of process. Article 10 of the Hague Convention provides that alternative avenue.

Article 10 provides that sufficient service of process can occur through the sending of judicial documents by postal channels and such documents can be served by "judicial officers, officials, or other competent persons" to individuals through "judicial officers, officials, or other competent persons of the State of designation". Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638, Art. 10 (Feb. 10, 1969). The United States District Court of Kansas notes specifically that as of 2010, postal service through a process server was sufficient to satisfy the service of process requirement. *Marcus Food Co. v. Dipanfilo*, No. 09-1261-EFM, 2010 WL 3946314, at *3 (D. Kan. 2010). *Dipanfilo* further notes that Canada has "not declared to object to methods of service of Article 10, sub-paragraphs b) and c)". *Id*. at *4 (quoting *Dimensional Communications, Inc. v. OZ Optics Ltd.*, 218 F.Supp.2d 653, 656 (D.N.J. 2002).

Here, service of the Summonses of the Individual Defendants was proper, , because the Summonses are judicial documents that were served through the postal channels and

were served to the Individual Defendants by the licensed Canadian process servers with notary certification. *Dipanfilo* at *4.

Service under the Hague Convention, Article 10, was sufficiently met without any objection by opposing counsel, indeed, with his written confirmation of receipt and with the consent of the served parties by them and/or their agents in Canada. Notarized affidavits of service for each are filed demonstrating these facts. Because service was proper under Article 10, the defendants' Motion to Dismiss in regard to Fed. R. Civ. P. 12(b)(5) should be denied.

**2.    Even If This Court Finds Art. 10 Service Defective, Plaintiff's Service of Process Is Curable.**

As recognized by this Court in *Rudman v. Oklahoma*, while district courts have discretion in deciding whether to dismiss a case or merely quash service for insufficient service of process, courts generally should choose the latter option and permit the plaintiff to re-serve the defendant if the insufficient service is curable. *Rudman v. Oklahoma*, 2022 WL 17083406, at *2 (W.D. Okla. Nov. 18, 2022) (quoting *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983)). Under Tenth Circuit precedent, a defect in service of process is "curable" when the district court can reasonably conclude that the plaintiff can ultimately affect proper service of process on the defendant. *See, e.g.*, *Harper v. Woodward Cnty. Bd. of Cnty. Comm'rs*, 2014 U.S. Dist. LEXIS 178838, at *18–19 (W.D. Okla. Sept. 26, 2014); *Thrasher v. Rocky Mountain. Auto Brokers, Inc.*, 2019 U.S. Dist. LEXIS 164799, at *6–8 (D. Colo. Sept. 25, 2019). Further, in such cases, courts consider the following factors as weighing in favor of quashing rather than dismissing: (1) the defendant's actual notice of

the impending lawsuit; and (2) the defendant's failure to allege any prejudice resulting from the defective service. *See Thrasher*, 2019 U.S. Dist. LEXIS 164799 at *7; *Richardson v. Carl's Jr.*, 2021 U.S. Dist. LEXIS 225600, at *15–17 (D. Colo. Nov. 23, 2021). The courts' general inclination toward quashing rather than dismissing stems from the policy consideration that dismissal would be without prejudice and probably lead to the plaintiff's reinstitution of the suit, therefore needlessly (1) burdening the parties with extra expense and delay and (2) postponing adjudication of the controversy on the merits. *See, e.g.*, *Clear Spring Prop. & Cas. Co. v. Arch Nemesis, LLC*, 2023 U.S. Dist. 166811, at *43–44 (D. Kan. Sept. 19, 2023) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 (3d ed. 2023)).

Here, if this Court finds Plaintiff's service of process on Individual Defendants pursuant to FRCP 4 and Hague Convention Article 10 to be defective, any defect is curable because if given additional time, Plaintiff is fully capable of properly serving process on Individual Defendants in compliance with FRCP 4 and the Hague Convention and intends to do so in such case.

Additionally, here, Individual Defendants[6] received actual notice of Plaintiff's impending lawsuit as shown by their filing this Motion to Dismiss and Brief in Support and by Defendants' counsel's[7] email to Plaintiff's counsel acknowledging receipt of summons. Defs.' Mot. Dis. Br. 1-34, ECF No. 12; Plaintiff's **Exhibit 4** attached hereto.

---

[6] For purposes of this Section II.D., the term "Individual Defendants" is used as Defendants use it in their Motion to Dismiss and Brief in Support.

[7] Defense counsel Bill Swallow represents all Defendants except Gregory, Kuhn, and National Research Council of Canada.

Defendants also have not alleged any prejudice resulting from the alleged defect in service. ECF No. 12, Defs.' Mot. Dis. Br. 1-34).

Finally, for the reasons set forth in the detailed arguments above responding to Defendants' Motion to Dismiss and Brief in Support, this Court has personal and subject matter jurisdiction over Defendants and Plaintiff states a claim upon which relief can be granted under FRCP 12(b)(6). Therefore, not granting Plaintiff additional time to properly serve Individual Defendants would result in unnecessary additional inconvenience, expense, and postponement of adjudication relating to this controversy.

## III. LEAVE TO AMEND REQUESTED FOR ANY DISMISSAL.

Plaintiff consented to Defendants extending time to file their extended brief so long as similar courtesies were granted Plaintiff by Defendants. Now, Defendants attempt to misuse that gesture to deny Plaintiff any right to amend under the Rules and to deny any request for leave to amend.

The Federal Rules permit amendment without leave of court under timelines that by courtesy may be extended, as here. Fed. R. Civ. Proc. 15(a)(1). Furthermore, the Rule also allows the Court to permit leave to amend "freely when justice so requires." *Id.* at (2). Here, there has been no prior amendment in this matter involving numerous defendants and briefing. It is improper of Defendants, and outrageous, to falsely claim Col. Mastriano's pleading is "meritless" inferring any intent by the Colonel to "intimidate and harass" Defendants. ECF 12, pgs. 12-13. Any deficiencies this Court finds in the

Plaintiff's pleading is respectfully requested to be freely amended as justice so requires the same.

## IV.    CONCLUSION

WHEREFORE, considering the foregoing, plaintiff respectfully requests this Court DENY the certain defendants' motion to dismiss.

<div align="right">

Respectfully submitted,
The Cox Law Center, LLC
By: _____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

</div>

### CERTIFICATE OF SERVICE

This is to certify on this 13th day of September, 2024, that a copy of the foregoing was served on counsel of record via CM/ECF.

_____/s/_____
Daniel L. Cox