## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO,

*Plaintiff*,

v.

JAMES GREGORY III, *et al.*,

*Defendants*.

**CIVIL ACTION NO.:**
**5:24-cv-00567-F**

---

## DEFENDANT JAMES GREGORY'S MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR, AND NINE AND BRIEF IN SUPPORT

---

Under Federal Rule of Civil Procedure 12(b)(6) and the Oklahoma Citizens Participation Act (Okla. Stat. tit. 12, § 1430, *et seq.*), Defendant James Gregory respectfully moves to dismiss all counts against him, i.e., counts One, Two, Three, Four, and Nine. Mastriano Complaint, ECF No. 1 ("Compl.").

Respectfully submitted,

*/s/ Sara Berinhout*
SARA BERINHOUT*
MA Bar No. 703217
GREG HAROLD GREUBEL*
PA Bar No. 321130
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
sara.berinhout@thefire.org
greg.greubel@thefire.org
* Admitted *Pro Hac Vice*

Robert D. Nelon, OBA #6610
Hall, Estill, Hardwick, Gable,
Golden & Nelson, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ..........................................2

    Gregory Reports Inaccuracies in Mastriano's Publications......................................3

    Over a Year Ago, University Defendants—Not Gregory—Publish a Letter
    Criticizing Mastriano's Political Ideology..................................................6

    Years After Gregory Reports His Concerns to the University, Mastriano Sues
    Gregory and 27 Other Defendants to Silence Their Criticism. ................................6

ARGUMENT....................................................................................................7

    I.    Mastriano's Untimely Defamation Claim Cannot Survive Under Rule
          12(b)(6) and Oklahoma's anti-SLAPP Statute. .............................................9

          A.    Mastriano offers a single allegedly defamatory statement that, for
                 several reasons, cannot support a claim against Gregory. ..............10

          B.    Mastriano's defamation claim also fails because Mastriano does not
                 allege actual malice. .......................................................12

          C.    Gregory's academic opinions about Mastriano's historical
                 scholarship cannot form the basis of a defamation claim. ..............13

          D.    The OCPA provides an independent basis for dismissal of
                 Mastriano's defamation claim against Gregory. ............................14

    II.    Public Debate Among Historians Is Not a Violation of Civil RICO or
          Antitrust Law..............................................................16

          A.    Mastriano's claims that Gregory violated, and conspired to violate,
                 civil RICO cannot satisfy Rule 12(b)(6). ........................................17

               1.    Mastriano has not plausibly alleged that Defendants committed a
                      single predicate act, let alone a "pattern" of racketeering
                      activity. ..............................................................17

               2.    Mastriano has not plausibly alleged facts to support the existence
                      of a common "enterprise."...................................................19

               3.    Mastriano's highly speculative injuries cannot sustain a RICO
                      claim. ................................................................20

   4. Mastriano's RICO conspiracy claim fails because he has not alleged facts to support that Gregory knowingly joined a conspiracy to violate RICO. ....................................................21

 B. Historical debate is not an unreasonable restraint on trade under the Sherman Antitrust Act. ................................................................22

   1. Mastriano's unreasonable restraint on trade claim fails because he did not allege any adverse effect on competition in general, rather than on his business interests. .........................................23

   2. Mastriano's restraint on trade claim fails because he does not define the relevant market or identify facts to support a finding that Defendants control it. .........................................................24

   3. Defendants did not unlawfully tie two products to exploit a market in violation of the Sherman Antitrust Act. ...................25

CONCLUSION................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Intermountain Health Care Inc.*,
461 F.3d 1249 (10th Cir. 2006)................................................................9, 25

*Andrews v. Heaton*,
483 F.3d 1070 (10th Cir.2007)........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................7, 21

*Boyle v. United States*,
556 U.S. 938 (2009)...................................................................................19, 20

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
846 F.3d 1297 (10th Cir. 2017).....................................................................24

*Budicak, Inc. v. Lansing Trade Grp., LLC*,
452 F. Supp. 3d 1029 (D. Kan. 2020)...........................................................23

*Campfield v. State Farm Mut. Auto. Ins. Co.*,
532 F.3d 1111 (10th Cir. 2008)......................................................................24

*Chase Mfg., Inc. v. Johns Manville Corp.*,
84 F.4th 1157 (10th Cir. 2023) ......................................................................26

*Craig PC Sales & Service, LLC v. CDW Government, LLC*,
No. civ-17-003-F, 2018 WL 4861522 (W.D. Okla. April 30, 2018)...........15

*Dalton v. City of Las Vegas*,
282 Fed. Appx. 652 (10th Cir. 2008)............................................................17

*Dilworth v. Dudley*,
75 F.3d 307 (7th Cir. 1996).....................................................................13, 14

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992).........................................................................................25

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002)..........................................................................18

*Foster v. Wintergreen Real Estate Co.*,
    363 F. App'x 269 (4th Cir. 2010) ................................................................17

*George v. Urb. Settlement Servs.*,
    833 F.3d 1242 (10th Cir. 2016) ............................................................19, 20

*Ghrist v. CBS Broad., Inc.*,
    40 F. Supp. 3d 623 (W.D. Pa. 2014) ..........................................................11

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
    398 U.S. 6 (1970) ........................................................................................12

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*,
    385 U.S. 589 (1967) ....................................................................................13

*KLX Energy Servs., LLC v. Magnesium Mach., LLC*,
    521 F. Supp. 3d 1124 (W.D. Okla. 2021) ...............................................7, 14

*Magnusson v. New York Times Co.*,
    98 P.3d 1070 (Okla. 2004) ..........................................................................11

*McGeorge v. Continental Airlines, Inc.*,
    871 F.2d 952 (10th Cir. 1989) .....................................................................10

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
    No. 20-CV-00054-SPF-JFJ, 2022 WL 377415 (N.D. Okla. Jan. 7, 2022) .....................4

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) .................................................................................8, 12

*NMP Corp. v. Parametric Tech. Corp.*,
    958 F. Supp. 1536 (N.D. Okla. 1997) .........................................................11

*ONY v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) ........................................................................14

*Roberts v. Bush*,
    537 P.3d 147 (Okla. Civ. App. 2023) ..........................................................13

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ....................................................................................17

*Sensoria, LLC v. Kaweske*,
    581 F. Supp. 3d 1243 (D. Colo. 2022) ........................................................20

*Snyder v. Phelps,*
   562 U.S. 443 (2011) ........................................................................................15

*Sports Racing Servs., Inc. v. Sports Car Club of Am.,*
   131 F.3d 874 (1997) .......................................................................................25

*Stinson v. Maynard,*
   No. 07-CV-387-WFD, 2008 WL 4525399 (W.D. Okla. Sept. 30, 2008) ......................18

*Sweezy v. New Hampshire,*
   354 U.S. 234 (1957) .......................................................................................15

*Tal v. Hogan,*
   453 F.3d 1244 (10th Cir. 2006) ....................................................5, 17, 20, 23

*Thacker v. Cowling,*
   473 P.3d 518 (Okla. Civ. App. 2020) ..............................................................11

*Underwager v. Salter,*
   22 F.3d 730 (7th Cir. 1994) ...........................................................................13

*United States v. Harris,*
   695 F.3d 1125 (10th Cir. 2012) ......................................................................21

*United States v. O'Connor,*
   910 F.2d 1466 (7th Cir. 1990) ........................................................................18

*Yates v. Gannett Co., Inc.,*
   523 P.3d 69 (Okla. Civ. App. 2022) ...............................................10, 11, 12

**Statutes**

Okla. Stat. tit. 12, § 1430 ...................................................................................14

Okla. Stat. tit. 12, § 1431 .................................................................................9, 15

Okla. Stat. tit. 12, § 1434 ...........................................................................2, 8, 14, 16

Okla. Stat. tit. 12, § 1438 .............................................................................2, 8, 27

18 U.S.C. § 1961 ........................................................................................17, 22

18 U.S.C. § 1964 .............................................................................................17

42 Pa.C.S. § 5523 ...........................................................................................11

## INTRODUCTION

The First Amendment demands that even the most powerful engage their critics in the marketplace of ideas—not the courts. Plaintiff Douglas Mastriano, a prominent Pennsylvania politician, has dragged a historical debate into this Court, suing his critics for defamation and a wild assortment of claims under the civil Racketeer Influenced and Corrupt Organizations Act (RICO) and the Sherman Antitrust Act. This classic strategic lawsuit against public participation (SLAPP) runs headlong into the First Amendment and the Oklahoma Citizens Participation Act (OCPA).

This dispute boils down to a debate between military historians. While Mastriano has been a prominent political figure for years, he is also a historian who has published works on Alvin York, a World War I hero whose story inspired the 1941 Academy Award-winning movie *Sergeant York.* As the story goes, Sgt. York single-handedly captured over one hundred and thirty German soldiers. While earning his Ph.D. at the University of New Brunswick, Mastriano wrote a thesis on Sgt. York and later expanded it into a book, tracking themes from the movie.

For years, some historians argued Sgt. York received too much credit for capturing German soldiers. Defendant James Gregory is one of those historians. In his critically acclaimed 2022 book, *Unraveling the Myth of Sgt. Alvin York: The Other Sixteen*, Gregory tells the story of the sixteen soldiers who bravely fought alongside Sgt. York. While conducting his research, Gregory identified errors in Mastriano's scholarship. After careful review, Gregory reported these issues to Mastriano's publisher and the University of New

Brunswick in 2021 and 2022. When Mastriano ran for governor of Pennsylvania in 2022, the media covered Gregory's reports.

Rather than publicly rebut Gregory's argument, Mastriano waited until after the statute of limitations had closed to file this defamation lawsuit. But even if Mastriano had filed on time, he fails to state a claim against Gregory, requiring dismissal under Rule 12(b)(6). The OCPA independently mandates dismissal of his defamation claim because it is premised on speech regarding matters of public concern that the statute squarely protects. *See* Okla. Stat. tit. 12, § 1431. And even the most generous reading of Mastriano's Complaint cannot satisfy a single element of his RICO and Sherman Antitrust Act claims. Criticizing a fellow historian's scholarship is neither racketeering activity nor an unreasonable restraint on trade. Simply put, the First Amendment and Oklahoma law ensure scholars like Gregory are free to opine on the merits of a public official's scholarship.

The Court should therefore dismiss claims One, Two, Three, Four, and Nine of Plaintiff's Complaint with prejudice under Rule 12(b)(6). It should also dismiss the defamation claim (count Nine) under the OCPA, award Gregory mandatory attorneys' fees for this motion, and sanction Mastriano for this SLAPP. Okla. Stat. tit. 12, § 1438.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant James Gregory is a respected historian and museum director. Compl. ¶¶ 10, 23, 43, 50. He first read Mastriano's scholarship on Sgt. York while a graduate student at the University of Oklahoma. *Id.* ¶ 23. Gregory later authored his own book on Sgt. York: *Unraveling the Myth of Sgt. Alvin York: The Other Sixteen. Id.* ¶ 33.

2

Plaintiff Douglas Mastriano is a Pennsylvania state senator, Veteran, and former Republican gubernatorial candidate. *Id.* ¶¶ 9, 25. He received a Ph.D. in 2013 from the University of New Brunswick in Canada ("the University"). *Id.* ¶ 37. His doctoral thesis on Sgt. York formed the basis of his 2014 book, *Alvin York: A New Biography of the Hero of the Argonne*. *See Id.* ¶ 32.

**Gregory Reports Inaccuracies in Mastriano's Publications.**

In 2018, Gregory began researching Sgt. York as a graduate student in preparation for writing his book. *Id.* ¶¶ 23, 29. During his research, Gregory read Mastriano's scholarship on Sgt. York. *Id.* After observing numerous inaccurate citations, Gregory began to suspect that Mastriano had engaged in academic fraud. *Id.* To confirm his suspicions, Gregory spent two years carefully reviewing Mastriano's work and comparing it with the historical record. Only then did he report his concerns to the University and the publisher of Mastriano's book. *Id.* ¶¶ 23, 29, 32.

For example, Gregory discovered that the cover photograph of Mastriano's book was not what Mastriano had claimed. Mastriano asserts in his book that the photo depicts Sgt. York escorting his German prisoners on October 8, 1918. *See* Douglas Mastriano, *Alvin York: A New Biography of the Hero of Argonne (American Warrior Series)* [112] (2014).[1] In his dissertation, Mastriano labeled the photograph, also attached as Exhibit 2, as shown below:

---

[1] Because Mastriano repeatedly references his book and Gregory's complaints about his book, those documents are incorporated by reference and this Court may consider them when ruling on this motion. *See Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, No. 20-cv-00054-SPF-JFJ, 2022 WL 377415, at *5 (N.D.



Photo of York escorting his German prisoners on 8 October 1918 near Varennes.  AHEC

U.S. Army records, however, confirm that Mastriano's depiction is a magnified portion of a larger photograph taken on September 26—weeks before October 8—that depicts "PRISONERS ON WAY TO P.C. 36th Division near 35th Division headquarters near Boureuilles, Meuse, France," with no mention of Sgt. York:

---

Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209 (10th Cir. 2023). A copy of the cover of Mastriano's book is attached as Exhibit 1 to this motion.

 

Item 45799, WWI Signal Corps Collection, 82nd Division, Box 55 (annotated).[2]

When Gregory reported his concerns about Mastriano's book to the University, Gregory also requested that the University release Mastriano's embargoed thesis on Sgt. York. Compl. ¶ 23. After the University released the thesis, Gregory reviewed it and filed another report with the University in 2023, identifying similar concerns. *Id.* ¶ 33.

Gregory's reports to the University attracted media attention during Mastriano's 2022 bid for the Pennsylvania governorship. *Id.* ¶ 31. Around 2022 and 2023, Gregory was contacted by journalists and answered their questions about his concerns with Mastriano's scholarship. *Id.* ¶¶ 30, 33.

---

[2] This photograph is attached as Exhibit 3 to this motion. Because this photograph is a public document, the Court may take judicial notice of its presence among U.S. Army records without converting this motion to dismiss to one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

*Over a Year Ago, University Defendants—Not Gregory—Publish a Letter Criticizing Mastriano's Political Ideology.*

On April 26, 2023, faculty members in the University's Department of History (who are also named Defendants) published an open letter broadly criticizing Mastriano's "anti-trans political discourses" and "hatred and bigotry" (the "faculty letter"). Compl. ¶¶ 17, 38, ECF 1-4. The faculty letter does not reference any criticism of Mastriano's scholarship. And Gregory, who is not a faculty member of the University, is not listed as an author of the letter or otherwise mentioned in it. *Id.* But Mastriano still named Gregory a defendant in his defamation claim based on the faculty letter's publication. *Id.* ¶¶ 124–25.

*Years After Gregory Reports His Concerns to the University, Mastriano Sues Gregory and 27 Other Defendants to Silence Their Criticism.*

On May 31, 2024, Mastriano sued Gregory and 27 others, most affiliated with the University. Compl. The Complaint asserts nine causes of action, five of which include Gregory: Defamation (Count 9); Violation of RICO (Count 1); Civil conspiracy to violate RICO (Count 2); Violation of the Sherman Antitrust Act based on an unreasonable restraint on trade (Count 3); and Violation of the Sherman Antitrust Act based on unlawful tying of products (Count 4). The only allegedly defamatory statement Mastriano cites as a basis for his defamation claim is the University Defendants' April 2023 faculty letter, published thirteen months before the Complaint was filed. *Id.* ¶ 125.

On August 6, 2024, the University Defendants[3] moved to dismiss the Complaint. ECF No. 12. On August 30, the Committee Defendants[4] moved to dismiss and joined the University Defendants' motion to dismiss. ECF No. 66. On September 9, Mastriano filed his opposition to the University Defendants' motion to dismiss. ECF No. 75-1. On September 13, Mastriano filed his opposition to the Committee Defendants' motions to dismiss. ECF No. 81. On September 16, Defendant Janet Mullin moved to dismiss and joined the University and Committee Defendants' motions to dismiss. ECF No. 85.

## ARGUMENT

Mastriano's claims against Gregory rest on years-old protected speech, sparse factual allegations, and implausible legal theories. To that end, Mastriano fails to state a claim under Rule 12(b)(6). In analyzing Gregory's 12(b)(6) motion to dismiss, the court "disregard[s] mere 'labels and conclusions' and '[t]hreadbare recitals of the elements of a cause of action' to determine if what remains meets the standard of plausibility." *KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124, 1129 (W.D. Okla. 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Only Mastriano's well-pleaded factual allegations are accepted as true and viewed in a light favorable to him. *Id.*

---

[3] The "University Defendants" are the University of New Brunswick, Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, and Angela Tozer. ECF No. 12.

[4] The "Committee Defendants" are Margaret MacMillan, Robert Bothwell, and John Ferris. ECF No. 66.

To start, Mastriano does not identify a single allegedly defamatory statement *Gregory* has ever published, let alone one made within the one-year statute of limitations *or* with the requisite actual malice. Instead, Mastriano relies on bald conclusions that Gregory made "false and fraudulent" statements about Mastriano's book at some unspecified time. Compl. ¶ 58. Mastriano's defamation claim also triggers the OCPA because the claim is "based on, relates to, or is in response to" Gregory's protected speech. Okla. Stat. tit. 12, § 1434(B). For the same reasons Mastriano's defamation claim fails under Rule 12(b)(6), it fails the OCPA's requirement that each element be supported "by clear and specific evidence." *Id.* at § 1434(C). The Court should thus dismiss Mastriano's defamation claim under both Rule 12(b)(6) and the OCPA, and award Gregory fees and sanctions under the OCPA. *Id*; §§ 1438, 1434(C).

Mastriano has similarly failed to allege facts sufficient to state civil RICO or Sherman Antitrust Act claims. Under RICO, Mastriano does not allege that Gregory and his co-defendants committed anything approaching a predicate act, let alone a pattern of racketeering activity. Mastriano also cannot point to any tangible injury suffered due to a RICO violation, nor does he allege facts to support that Gregory knowingly joined a RICO conspiracy.

Under the Sherman Antitrust Act, Mastriano asserts two theories, both of which fail. First, he alleges that Gregory's criticism constituted an unreasonable restraint on market competition. But public debate and the exchange of viewpoints *advance* and *contribute to* competition—they do not suppress it. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (noting our "profound national commitment to the principle that debate on

public issues should be uninhibited, robust, and wide-open"). Moreover, Mastriano cannot define what market is relevant to his claims or what harm has allegedly befallen consumers rather than his own alleged business interests. Second, Mastriano alleges that Gregory has unlawfully "tied" two products together. Yet he does not even identify which two products are at issue, nor allege that Gregory possessed the requisite control over any two products—the most baseline requirements for any unlawful tying claim. *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1264–65 (10th Cir. 2006). Instead, Mastriano asserts that *voters* "tied" Gregory's criticism of Mastriano's scholarship to their decisions not to vote for him on several occasions. That's not an antitrust violation—it's democracy.

## I.    Mastriano's Untimely Defamation Claim Cannot Survive Under Rule 12(b)(6) and Oklahoma's anti-SLAPP Statute.

Mastriano's attempt to turn a historical debate into a defamation claim fails under Fed. R. Civ. Pro. 12(b)(6) and the OCPA for five reasons. First, the single defamatory statement Mastriano specifically alleges falls outside the statute of limitations. Second, this statement is not attributable to Gregory. Third, this statement consists of non-actionable statements of opinion. Fourth, Mastriano's allegations fail to satisfy his burden to plead actual malice. Each of these deficiencies, standing alone, warrant Rule 12(b)(6) dismissal. Finally, the OCPA protects Gregory's speech on matters of public concern, including statements related to a "public figure," a "product . . . in the marketplace," or "community well-being." Okla. Stat. tit. 12, § 1431(7). For this last reason, and because Mastriano cannot satisfy his OCPA evidentiary burden, the Court should dismiss his defamation claim

under the OCPA, sanction him for filing this SLAPP, and award Gregory attorneys' fees for this Motion.

> **A.  Mastriano offers a single allegedly defamatory statement that, for several reasons, cannot support a claim against Gregory.**

Mastriano's defamation claim rests on the following allegation: "On or about the summer of 2023 and prior, Defendants made statements, including but not limited to Exhibit D under seal, that exposed Col. Mastriano to public hatred, contempt, ridicule and disgrace."[5] Compl. ¶ 125. Exhibit 4 is the only allegedly defamatory statement that Mastriano specifies in his Complaint and Response to Defendants' Motion to Dismiss. ECF No. 81, p. 37. His vague allusion to other "statements" made at an unspecified time cannot support a defamation claim. *See, e.g., Yates v. Gannett Co., Inc.*, 523 P.3d 69, 76–77 (Okla. Civ. App. 2022) (affirming that a plaintiff must plead any allegedly defamatory statement with specificity). Any defamation claim must, at a minimum, include sufficient details to provide "notice of the communications complained of to allow" Gregory to respond. *McGeorge v. Continental Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989).

This leaves Exhibit 4 of the Complaint as Mastriano's only allegedly defamatory statement. Compl. ¶ 125; ECF 1-4. Exhibit 4, however, is the faculty letter published on April 26, 2023, which cannot support Mastriano's claim for several reasons.

First, the one-year statute of limitations bars the claim. Under Oklahoma law, Mastriano had until April 26, 2024, to bring a defamation claim based on the faculty letter.

---

[5] What Mastriano refers to as "Exhibit D" here and elsewhere in his Complaint is Exhibit 4 of the Complaint (ECF 1-4).

*See Thacker v. Cowling*, 473 P.3d 518, 522 (Okla. Civ. App. 2020) (calculating the statute of limitations from the publication date).[6] Because Mastriano filed his Complaint 35 days later, on May 31, 2024, the statute of limitations bars his defamation claim.

Second, Mastriano does not allege that Gregory had any knowledge of the faculty letter, let alone involvement in its authorship or dissemination. Nor does the letter contain Gregory's signature, or mention Gregory or his criticism of Mastriano's scholarship. ECF 1-4. A defamation claim cannot survive when the plaintiff fails to allege that the *defendant* published a defamatory statement. *See, e.g.*, *Yates*, 523 P.3d at 76.

Finally, the letter communicates a political opinion about a public official, not verifiable facts, and is thus unactionable under defamation law. *See Magnusson v. New York Times Co.*, 98 P.3d 1070, 1076 (Okla. 2004) (affirming that "opinions" cannot support defamation claim and "enjoy absolute immunity protected both by the First Amendment

---

[6] "Under Oklahoma conflict of law rules, the rights and liabilities of parties in a tort action are to be determined by the substantive law of the state having the most significant relationship to the occurrence and to the parties involved." *NMP Corp. v. Parametric Tech. Corp.*, 958 F. Supp. 1536, 1543 (N.D. Okla. 1997). Oklahoma's substantive defamation law thus controls because Mastriano does not allege that Gregory made any statement outside of Oklahoma. *See, e.g.*, *Thacker*, 473 P.3d at 522. *Even* if the Court were to apply Pennsylvania law (as the jurisdiction where any alleged harm caused to Mastriano's reputation would ostensibly have occurred), the statute of limitations period remains the same. *See* 42 PA. CONS. STAT. § 5523(1) (establishing a one-year limitations period for defamation); *see also Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 628 (W.D. Pa. 2014) (affirming Pennsylvania's one-year statute of limitations for defamation begins running from time of "initial publication").

and . . . the Oklahoma Constitution"); *see also Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398

U.S. 6, 14 (1970) (holding that "rhetorical hyperbole" is not actionable as defamation).[7]

For those reasons alone, Mastriano fails to state a defamation claim against Gregory.

## B.    Mastriano's defamation claim also fails because Mastriano does not allege actual malice.

Mastriano's Complaint, which touts his prominence as a well-known elected

official, politician, and military historian, leaves no doubt he is a public official and public

figure. *E.g.,* Compl. ¶ 1. Oklahoma law agrees. *See, e.g.*, *Yates*, 523 P.3d at 76 (affirming

public officials are "public figures" under Oklahoma law). Yet Mastriano's allegations fail

to meet a constitutional bedrock: When public figures sue for defamation, they must plead

facts showing the defendant made the allegedly defamatory statement "with knowledge

that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376

U.S. at 280.

Instead of pleading *facts* to allege actual malice, Mastriano merely asserts that all

Defendants' "statements were false and ... known to be false by Defendants when they

made the same with malice aforethought." Compl. ¶ 128. Yet Mastriano fails to offer any

allegations to support this claim or to indicate what the claim is based upon. That is

---

[7] Although Mastriano's defamation claim does not appear to rest on the documents filed in Exhibits 2 and 3, they are also outside the one-year statute of limitations: Exhibit 2 is a media article about the "controversy" over Mastriano's dissertation published on October 17, 2022. ECF 1-2 at 2. Exhibit 3 contains various X (formerly "Twitter") posts and an article describing Gregory's lecture on Sgt. York at the World War I museum, published on April 28, 2023. ECF 1-3 at 1–5, 7. Exhibit 3 also contains X posts with the latest publication from May 9, 2022, when Gregory reposted a tweet by the World War I Museum sharing a link to the YouTube video of the lecture. *Id.*, Ex. 3.

insufficient to plausibly allege actual malice. *Roberts v. Bush*, 537 P.3d 147, 152 (Okla. Civ. App. 2023) (finding conclusory allegations failed to plausibly allege actual malice).

**C.    Gregory's academic opinions about Mastriano's historical scholarship cannot form the basis of a defamation claim.**

Gregory's criticism contributed to an ongoing debate about an important figure in our nation's history. Defamation law requires that such debates be settled in the marketplace of ideas, not the courts. While *all* opinions receive robust First Amendment protection, statements made within the context of academic discussion are "a special concern of the First Amendment." *Keyishian v. Bd. of Regents of Univ. N.Y.*, 385 U.S. 589, 603 (1967). For academic freedom to have meaning, courts must ensure baseless defamation claims do not chill it.

A plaintiff "cannot, simply by filing suit and crying 'character assassination!', silence those who hold divergent views, no matter how adverse those views may be to plaintiffs' interests." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994). Instead, academic controversies "must be settled by the methods of [academia] rather than by the methods of litigation." *Id.* Thus, when an engineer sued a mathematician for defamation because the mathematician wrote a book criticizing the engineer's academic articles and calling him a "crank," the Seventh Circuit affirmed dismissal, emphasizing that "judges are not well equipped to resolve academic controversies … Unlike the ordinary citizen, a scholar generally has ready access to the same media by which he is allegedly defamed." *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996). Judge Posner, writing for the court,

explained that such academic controversies are inactionable because it is "not the character but the ideas of the scholar [that] are attacked." *Id.*

Like the academic debate in *Dilworth*, Gregory's alleged statements concerned Mastriano's scholarship. Instead of publicly refuting Gregory's criticism, Mastriano turns to this Court to silence it. Academic debates, however, should not be decided through defamation lawsuits because, for one thing, "courts are ill-equipped to undertake to referee such controversies." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013). "Instead, the trial of ideas plays out in the pages of peer-reviewed journals, and the scientific public sits as the jury." *Id.* Thus, to the extent the defamation claim is based upon Gregory's academic work debunking Mastriano's research, the Court should dismiss it.

> **D.    The OCPA provides an independent basis for dismissal of Mastriano's defamation claim against Gregory.**

The OCPA requires dismissal of Mastriano's defamation claim as a "legal action [that] is based on, relates to, or is in response to the party's exercise" of the "right of free speech," "right to petition" or "right of association." Okla. Stat. tit. 12, § 1434(B). The statute's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 1430. This Court has twice concluded that the OCPA applies to state claims in federal court. *See KLX Energy*, 521 F. Supp. at 1131 (Friot, J.); *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*, No. civ-17-

14

003-F, 2018 WL 4861522, at *16 n.8 (W.D. Okla. Apr. 30, 2018) (Friot, J.). There is no reason for the Court to stray from its previous holdings, and the OCPA protects Gregory's speech and requires dismissal for at least three reasons.

First, the OCPA protects Gregory's speech about "a public official or public figure." Okla. Stat. tit. 12, § 1431(7)(d) (defining "Matter of public concern" under the OCPA). As a state senator and former candidate for higher office, Mastriano is *both* a public official and a public figure. Compl. ¶ 25.

Second, Gregory's speech relates to "community well-being," *see* Okla. Stat. tit. 12, § 1431(7)(b), as the academic community and wider public have strong interests in protecting historians who critically analyze one another's scholarship. *Cf.* § I.C., *supra* (discussing the importance of academic freedom). As the Supreme Court explained in *Sweezy v. New Hampshire*, "[t]eachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." 354 U.S. 234, 250 (1957). Moreover, the Supreme Court has broadly interpreted what constitutes speech on matters of public concern, *see Snyder v. Phelps*, 562 U.S. 443, 453 (2011), and media coverage surrounding Gregory's criticism of Mastriano's scholarship confirms the community cares deeply about the integrity of a public official's claims on matters of historical importance.

Third, Gregory's speech, as criticism of Mastriano's book and other publications, relates to "a good … in the marketplace." Okla. Stat. tit. 12, § 1431(7)(e). Mastriano admits this throughout his Complaint. For instance, Mastriano repeatedly alleges that Gregory's speech was an effort to "devalue" his book in the marketplace. *See, e.g.*, Compl. ¶¶ 2, 29,

30, 35, 50. Because Mastriano bases his defamation claim on Gregory's criticism of his book, Oklahoma law protects it.

Accordingly, because Mastriano's defamation claim is "based on, relates to, or is in response to" his "right of free speech," this Court must dismiss it unless the Mastriano "establishes by clear and specific evidence a prima facie case for each essential element." *Id.* § 1434(B–C). For the reasons discussed *supra*, I.A, Mastriano has failed to allege sufficient facts to support a single element of his defamation claim—let alone carry his burden under the OCPA of establishing each element "by clear and specific evidence." Okla. Stat. tit. 12, § 1434(C). Additionally (and independently), the statute of limitations requires OCPA dismissal. *Id.* § 1434(D) (a court "shall" dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the claim."); *see* Section I.B. *supra*. Oklahoma law thus protects Gregory's speech, and this Court should dismiss Mastriano's defamation claim under the OCPA.

## II. Public Debate Among Historians Is Not a Violation of Civil RICO or Antitrust Law.

Mastriano's claims against Gregory amount to no more than a defamation suit that runs headlong into the First Amendment and the OCPA. With no viable claim in sight, Mastriano resorts to implausible claims under the RICO Act and the Sherman Antitrust Act. But laws intended to stop racketeering and protect commerce have no place near a historical debate. So, unsurprisingly, Mastriano's Complaint does not support a single

element of these claims—and Mastriano's attempt to plead around the First Amendment fails.

> **A.    Mastriano's claims that Gregory violated, and conspired to violate, civil RICO cannot satisfy Rule 12(b)(6).**

Mastriano failed to plead a private RICO cause of action because he did not plead facts to establish the four necessary elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Dalton v. City of Las Vegas*, 282 Fed. Appx. 652, 654 (10th Cir. 2008) (cleaned up); *see also* 18 U.S.C. § 1964(c). In fact, Mastriano fails to satisfy a single element of either RICO claim.

> **1.    Mastriano has not plausibly alleged that Defendants committed a single predicate act, let alone a "pattern" of racketeering activity.**

Mastriano complains about criticism of his politics and scholarship. But he fails to plausibly plead a pattern of racketeering activity because he fails to allege "that the defendants committed at least two predicate acts (violations of criminal statutes listed in RICO, § 1961(1)) and that the plaintiff has suffered injury to his business or property as a result." *Id.* Mastriano also does not plead sufficient facts to suggest that each element of the criminal predicates is met. *Tal*, 453 F.3d at 1257–60; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Mastriano's failure to plead this "pattern" of racketeering activity is fatal because this requirement is the heart of any RICO claim. 18 U.S.C. § 1961(4). "Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 273 (4th Cir. 2010) (internal quotations omitted). Federal courts have used the "pattern" element as

a means "to trim off the excesses of a civil RICO claim" and distinguish proper RICO claims from "garden variety" fraud cases. *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002).

Mastriano makes little effort to establish this critical pattern element. For one thing, it is not clear *what* two predicate acts Mastriano alleges Gregory violated. At best, Mastriano appears to allege Gregory committed mail or wire fraud. Compl. ¶¶ 49, 50. Yet Mastriano does not allege any facts to satisfy the elements of either offense. At *most*, he alleges Defendants engaged in "a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff," *e.g.*, Compl. ¶ 49, which are "conclusory allegations without supporting factual averments" insufficient to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That is particularly insufficient here, as fraud must meet Rule 9(b)'s heightened pleading requirements, which in the RICO context are "especially crucial given the threat of treble damages and injury to reputation which attend RICO claims." *Stinson v. Maynard*, No. 07-CV-387-WFD, 2008 WL 4525399, at *2 (W.D. Okla. Sept. 30, 2008), *aff'd sub nom. Stinson ex rel. U.S. v. Maynard*, 341 F. App'x 413 (10th Cir. 2009) (internal quotations and citations removed) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007)). Mastriano cannot merely "ma[k]e bald allegations on each . . . element[] of fraud," but must "state the circumstances surrounding the alleged fraud with particularity." *Id*. His failure to do so is fatal to his RICO claim.

### 2.    Mastriano has not plausibly alleged facts to support the existence of a common "enterprise."

Mastriano also fails to allege any factual allegations to show a "relationship" or "common interest" among Gregory and his co-defendants. *Boyle v. United States*, 556 U.S. 938, 946 (2009). A RICO "enterprise" must be a group of individuals or entities that are "associate[ed]-in-fact" with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*; *see also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (applying this definition of "enterprise"). Mastriano fails to allege "both interpersonal relationships and a common interest" among those alleged to comprise the "enterprise." *Boyle*, 556 U.S. at 946.

Instead, accepting each of Mastriano's factual allegations as true, Defendants' interests concerning Mastriano's scholarship directly *conflict*. Apart from Gregory and two co-defendants, each defendant Mastriano sued is directly affiliated with the University where Mastriano received his doctorate. As Mastriano suggests, Gregory could benefit—albeit legitimately and *lawfully*—from criticizing Mastriano's historical narrative on Sgt. York. Compl. ¶ 33. The same cannot be said about the University and its affiliates. The University granted Mastriano his doctorate based on the same flawed research Gregory now criticizes. Thus, Gregory's criticism of Mastriano's scholarship impugns the University's doctoral policies and procedures; it does not benefit the University in any way. Without alleging facts to support that Gregory and his co-defendants had a common

purpose and an ongoing relationship sufficient to permit them to pursue it, Mastriano's RICO claim fails. *See, e.g.*, *Boyle*, 556 U.S. at 946; *George*, 833 F.3d at 1248.

> **3.    Mastriano's highly speculative injuries cannot sustain a RICO claim.**

Mastriano fails another essential RICO element because he has not plausibly alleged that "his business or property" has suffered injury as a direct result of defendants' racketeering activity. *Tal*, 453 F.3d at 1270. Like all RICO elements, the causation and injury requirements present a high bar: the injury "must be tangible, quantified, realized (that is, actual and not hypothetical), non-speculative, and non-contingent." *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1267 (D. Colo. 2022). Mastriano cannot merely assert that an injury occurred but must allege "the injuries [he] suffered as a result" in "detail." *George*, 833 F.3d at 1256. And even where, unlike here, a plaintiff adequately pleads two or more predicate acts, if he "do[es] not plead a direct link between [his] property loss and a predicate RICO act by Defendants," the RICO claim fails. *Sensoria*, 581 F. Supp. 3d at 1267. Mastriano's Complaint satisfies none of these requirements.

Mastriano's alleged injuries are conclusory, highly speculative, and frequently hypothetical. Mastriano alleges he "has been injured in his personal, intangible and tangible property interests, his business and in his economic opportunity in that he has lost economic interests in his books, in his teaching and speaking, in his University professorship opportunities, in his future book and movie/tv script opportunities and in his academic and property interests in his Ph.D." Compl. ¶ 54. But he says no more. Elsewhere, Mastriano alleges, without explanation or factual support, to have suffered injury "worth, in present

value and future contracts, a minimum of $10 million in tourism-related events, validated museum artifacts, book, media, television and movie deals." *Id.* ¶ 2.

Even if these purported injuries were potentially verifiable, Mastriano alleges nothing to substantiate or quantify them. Nor does Mastriano advance any factual allegations suggesting his purported loss of "teaching and speaking" engagements, "professorship opportunities," or "future book and movie/tv script" deals were the direct result of Gregory's conduct. Mastriano's RICO claim fails for these reasons as well.

### 4.    Mastriano's RICO conspiracy claim fails because he has not alleged facts to support that Gregory knowingly joined a conspiracy to violate RICO.

Mastriano does not allege facts necessary to support a RICO conspiracy claim against Gregory that (1) a conspiracy or agreement existed between Gregory and one or more persons "to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity"; (2) that Gregory "deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose"; and (3) Gregory agreed that someone "would commit at least two of the racketeering acts detailed in the indictment." *United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012). Instead, he offers only a series of bald assertions and legal conclusions that cannot satisfy Rule 12(b)(6). *See Hall*, 935 F.2d at 1110; *see also Twombly*, 550 U.S. at 570.

For instance, instead of factual allegations showing Gregory knowingly entered an agreement to violate RICO, Mastriano offers several conclusory statements:

- "The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further

the schemes described above. That conduct constitutes a conspiracy to violat[e] 18 U.S.C. 1962(c)." Compl. ¶ 62.

- "Defendants are liable for a RICO conspiracy as they knew or should have known that additional American antagonists with whom they joined in confederacy were part of a network of competing scholars who saw the elections of Col. Mastriano as their opportunity to file complaints with and push UNB in publicly defaming him, committing extortion and election interference, so that he might drop out of the election or lose." *Id.* ¶ 63.

- "The conspirator Defendants . . . . knew of the faculty's plan to defame, destroy and interfere with Col. Mastriano's election, and that he was standing for office when they did so, and that they affixed their signatures to the letter(s) and then published the same on the mails and wire of the United States and into the United States and Pennsylvania news media, disseminating their conspiracy to interfere with and destroy his election." *Id.* ¶ 64.

Not only do these allegations fail to support a RICO conspiracy claim, Mastriano's exhibits disprove some of them. For instance, Gregory never "affixed [his] signature[] to the letter" to which Mastriano refers and attaches (as Exhibit 4) to his Complaint. ECF 1-4. Nor does Mastriano allege Gregory had any involvement in, or even knowledge of, that letter. And in any case, neither election interference nor defamation—even properly alleged (which it is not here)—constitute predicate acts under RICO. 18 U.S.C. § 1961(1). The Court should dismiss Mastriano's RICO conspiracy claim for these reasons as well.

**B.    Historical debate is not an unreasonable restraint on trade under the Sherman Antitrust Act.**

Mastriano cannot satisfy the elements of his "unreasonable restraint on trade" claim in Count 3 "under Section 1 of the Sherman Act, 15 U.S.C. § 1," which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Even accepting each of

Mastriano's factual allegations as true, Gregory's critiques of Mastriano's work and proffering of alternative viewpoints *advanced* and *contributed to* competition—they did not suppress it. Criticizing a competitor's work is not unlawful conduct, let alone an unlawful restriction on trade—it's protected speech.

> **1. Mastriano's unreasonable restraint on trade claim fails because he did not allege any adverse effect on competition in general, rather than on his business interests.**

Mastriano's allegations that defendants' actions harmed his business interests, rather than commerce in general, cannot support an antitrust claim. Rather than general allegations, the Sherman Act requires Mastriano to plead a "contract, combination, or conspiracy among two or more independent actors" that "unreasonably restrains trade" and "substantially affects[] interstate commerce." *Budicak, Inc. v. Lansing Trade Grp., LLC*, 452 F. Supp. 3d 1029, 1052 (D. Kan. 2020). When a business venture "fails because of legitimate competitive forces, it is not entitled to recover under the antitrust laws." *Tal*, 453 F.3d at 1258.

While Mastriano concludes that Gregory's actions impacted "trade and commerce internationally and intrastate," Compl. ¶ 70, every alleged fact pertains to his business interests and no more. Mastriano alleges, for instance, that Defendants served to "restrict Col. Mastriano's use of his PhD" [*sic*] and "illegally restrain competition on the marketing of Col. Mastriano's WWI history, books [*sic*] and have thus far prevented potential movie deals" and "speaking opportunities." *Id.* ¶¶ 71, 72. He further alleges that Defendants

"conspired to restrain trade and commerce internationally and intrastate" by publicly undermining Mastriano's dissertation. Compl. ¶¶ 69–71.[8]

Even if these purported injuries exist, they are not due to unlawful conduct—and certainly not actionable under antitrust law. Instead, they reflect an impact on Mastriano's personal business interests, i.e., the "use of his PhD," "potential movie deals," and "speaking opportunities." *Id.* ¶¶ 71, 72. Because antitrust laws are, by design, "concerned with effects on *consumers* rather than *competitors*," Mastriano cannot maintain a claim based solely on harm to his business interests. *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1310 (10th Cir. 2017) (emphasis added).

> ## 2. Mastriano's restraint on trade claim fails because he does not define the relevant market or identify facts to support a finding that Defendants control it.

Mastriano also cannot sustain his antitrust claim because he has failed to *define* the particular "product market" harmed by Gregory's allegedly anticompetitive conduct. *Id.* at 1313. "A plaintiff cannot arbitrarily choose the product market relevant to its claims; instead, the plaintiff must justify any proposed market by defining it 'with reference to the rule of reasonable interchangeability and cross-elasticity of demand.'" *Id.* (quoting *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008)).

---

[8] Mastriano asserts that the "UNB's economic opportunities would advance in the face of smears of one of its students' [*sic*] Col. Mastriano." Compl. ¶ 70. As described *supra*, II.B., this claim is nonsensical. Criticisms levied against Mastriano's scholarship—and particularly against his "PhD and thesis," [*sic*] *id.*—necessarily impugn the UNB's doctoral program, which enabled Mastriano to receive a Ph.D. on the basis of faulty research.

Mastriano does neither: he makes no effort to define a particular product market nor to justify that definition as required by antitrust law. Those failures are fatal to this claim as well. *See, e.g.*, Compl. ¶¶ 68-77.

**3.    Defendants did not unlawfully tie two products to exploit a market in violation of the Sherman Antitrust Act.**

None of Mastriano's factual allegations support his second Sherman Act claim (Count Four) for "unlawful tying," and the facts he does allege directly undermine this theory of liability. Antitrust law proscribes unreasonable restraints on trade through a "tying arrangement." *Abraham*, 461 F.3d at 1265. This is "an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." *Id.* at 1263. These agreements are unlawful because the seller denies "competitive access to the tied product market" by leveraging "the tying product market, and forc[ing] buyers to forego free choice between sellers." *Id.*

To successfully plead an unlawful tying agreement, a plaintiff must first "establish the existence of two separate products." *Id.*; *see also Sports Racing Servs., Inc. v. Sports Car Club of Am.*, 131 F.3d 874, 886 (1997); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992). Second, a plaintiff must demonstrate a relationship between "the demand for the two items," not simply their "functional relation." *Abraham*, 461 F.3d at 1264 (cleaned up.) Third, a plaintiff must establish that "the seller's exploitation of its control over the tying product [] force[d] the buyer []to [] purchase [] the tied product." *Id.* at 1265.

Mastriano alleges "Unlawful Tying of PhD to Elections and Books Sales" Compl. Count IV, but his "PhD" and "Elections" are neither products nor tied together, making his "unlawful tying" claim as implausible as his others. Even if Mastriano's Complaint were (*very* liberally) construed to allege the unlawful tying of his and Gregory's books on Sgt. York, the claim still fails due to a lack of control over the two products. *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1179–80 (10th Cir. 2023) ("The thrust of an unlawful tying claim is leveraging *control* over a tying-product market to force a customer to buy another product it likely wouldn't have bought.") (emphasis in original). There are no allegations to suggest that a single seller controls the sale of each book (one does not), much less exploits that control to force buyers to purchase both together.[9] And Mastriano's repeated assertions that his and Gregory's books are competitors directly undermine this notion. In fact, Mastriano refers to himself as Gregory's "primary competition[,]" alleging that Gregory "was publishing and marketing a competing book" and "seeking to steal the market share." Compl. ¶¶ 50, 74, 76.

Mastriano's entire theory of damages—i.e., that Gregory's actions improperly *harmed* the marketability of Mastriano's book—negates this claim. Either Mastriano and Gregory are marketplace competitors, or their books are jointly controlled and unlawfully tied such that the purchase of one ensures the purchase of the other. It cannot be both. The Court should dismiss this claim, too.

---

[9] Getting over this "hurdle" means demonstrating "*significant* market power—more than the mere ability to raise price only slightly, or only on occasion, or only to a few of a seller's many customers." *Chase Mfg.*, 84 F.4th at 1180.

## CONCLUSION

Mastriano cannot identify any defamatory statement made by Gregory—let alone one made with actual malice or within one year before Mastriano filed this SLAPP. With no viable defamation claim, Mastriano tried and failed to stretch the RICO and Sherman Antitrust Acts beyond recognition to silence critics of his scholarship. For these reasons, Defendant James Gregory respectfully requests this Court dismiss claims One, Two, Three, Four, and Nine of Plaintiff's Complaint with prejudice under Rule 12(b)(6). The Court should also dismiss the defamation claim under the OCPA, sanction Mastriano for this SLAPP, and award Gregory attorneys' fees for this motion.  Okla. Stat. tit. 12, § 1438.

Respectfully submitted,

/s/ Sara Berinhout
SARA BERINHOUT*
MA Bar No. 703217
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No.
171622015; CA Bar No. 343028; IA Bar
No. 201452
FOUNDATION FOR INDIVIDUAL RIGHTS
    AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
sara.berinhout@thefire.org
greg.greubel@thefire.org

Robert D. Nelon, OBA #6610
Hall, Estill, Hardwick, Gable,
Golden & Nelson, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

* Admitted *Pro Hac Vice*

Date: September 19, 2024