# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

        *PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council
of Canada, Paul Mazerolle, President and
Vice-Chancellor, University of New
Brunswick, Canada; David MaGee, Vice-
President, Research; Drew Rendall, Dean,
Graduate Studies; Jeff Brown; Cindy Brown;
Stephen Dutcher; Sean Kennedy; Erin
Morton; Mattew Sears; Lee Windsor; Stefanie
Hunt-Kennedy; Carolyn MacDonald; Sasha
Mullaly; Lisa Todd; Sarah-Jane Corke;
Bonnie Huskins; Elizabeth Mancke; Janet
Mullin; Angela Tozer; Margaret MacMillan;
Robert Bothwell; John Ferris;
   -  *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

        *DEFENDANTS*.

Case No.: 5:24-cv-00567-F

Assigned to the Hon. Stephen P. Friot

**UNVERSITY DEFENDANTS'
REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION AND SUMMARY OF THE REPLY ........................................ 1

II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB ........ 2

    A.    UNB Is An Instrumentality Of The Province Of New Brunswick ............... 2

    B.    The Commercial Activity Exception To FSIA Immunity Does Not Apply .. 5

III.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
      INDIVIDUAL DEFENDANTS ................................................................ 6

    A.    The Individual Defendants Are Entitled To Sovereign Immunity ............... 7

    B.    The Commercial Activity Exception Does Not Apply To The Individuals .. 7

    C.    In the Alternative, Sovereign Immunity Applies To UNB, and Claims
            Against the Individual Defendants Cannot Go Forward .............................. 8

IV.   THE COURT LACKS GENERAL JURISDICTION OVER THE UNIVERSITY
      DEFENDANTS ........................................................................................ 8

    A.    The University Defendants Timely Raised Their Jurisdictional Defenses ... 8

    B.    This Court Does <u>Not</u> Have General Jurisdiction Over These Defendants .... 9

V.    THE COURT LACKS SPECIFIC JURISDICTION OVER UNB ....................... 10

    A.    28 U.S.C. § 1330(b) Does Not Automatically Confer Personal Jurisdiction
            .................................................................................................................... 10

    B.    In The Alternative, UNB Does <u>Not</u> Have the Requisite Minimum Contacts
            to Establish Personal Jurisdiction and the Exercise of Such Would Offend
            Traditional Notions of Fair Play and Substantial Justice ........................... 11

VI.    THE COURT LACKS SPECIFIC JURISDICTION OVER THE INDIVIDUAL

     DEFENDANTS ............................................................................................... 12

     A.    Plaintiff Does Not Allege Sufficient Minimum Contacts ....................... 13

     B.    Exercising Jurisdiction Over The Individuals Is Not Reasonable ............ 14

VII.   THE INDIVIDUAL DEFENDANTS WERE NOT PROPERLY SERVED ......... 16

VIII.  PLAINTIFF FAILS TO STATE A CLAIM .................................................... 17

     A.    Plaintiff Fails To State A Claim For RICO Violations .......................... 17

     B.    Plaintiff Fails To State A Claim For Sherman Act Violations ................ 18

     C.    Plaintiff Fails To State A Claim For Fraud .......................................... 18

     D.    Plaintiff Fails To State A Claim For Aiding And Abetting ..................... 18

     E.    Plaintiff Fails To State A Claim For Breach Of Contract ...................... 18

     F.    Plaintiff Fails To State A Claim For Negligence .................................. 19

     G.    Plaintiff Fails To State A Claim For Defamation ................................. 19

IX.    LEAVE TO AMEND WOULD BE FUTILE ................................................. 20

X.     CONCLUSION ....................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181 (N.D. Okla. 2020)......................................18

*Am. Bonded Warehouse Corp. v. Compagnie Nationale Air France*,

    653 F. Supp. 861 (N.D. Ill. 1987) ...................................................................6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)..............................................................19

*State ex rel. Bd. of Regents for Oklahoma Agr. & Mech. Colleges v.*

    *McCloskey Bros.*, 2009 OK 90, 227 P.3d 133 ................................................3

*Bradshaw v. Uber Tech., Inc.*,

    No. CIV-16-388-R, 2017 WL 2455151 (W.D. Okla. June 6, 2017) ..........................19

*Calder v. Jones*, 465 U.S. 783 (1984) ..............................................................11

*Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012 (2nd Cir.1993) ....................10

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) .........................................9

*Cutcliffe v. Univ. of Ulster*,

    No. 1:12-CV-00193-DBH, 2013 WL 682842 (D. Me. Feb. 5, 2013),

    *aff'd*, No. 1:12-CV-193-DBH, 2013 WL 685668 (D. Me. Feb. 25, 2013) ...................2

*Eighteen Seventy, LP v. Jayson*, 32 F.4th 956 (10th Cir. 2022).........................................12

*Hansen v. PT Bank Negara Indonesia (Persero)*,

    706 F.3d 1244 (10th Cir. 2013) ...................................................................5

*Hart v. Salois*, 605 F. App'x 694 (10th Cir. 2015) .............................................................9

*Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18 (D. Mass. 2019) ...............................6

*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*,

    205 F.3d 1244 (10th Cir. 2000) ................................................... 15

*Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9 (1st Cir. 2011)..................................... 2

*Kashani v. Purdue Univ.*, 813 F.2d 843 (7th Cir. 1987) ................................................... 2, 5

*Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) ....................................... 19

*Leutwyler v. Off. of Her Majesty Queen Rania Al-Abdullah*,

    184 F. Supp. 2d 277 (S.D.N.Y. 2001)............................................. 6

*Marcus Food Co. v. Dipanfilo*,

    No. CIV. 09-1261-EFM, 2010 WL 3946314 (D. Kan. Oct. 5, 2010),

    *aff'd*, 671 F.3d 1159 (10th Cir. 2011) ........................................ 17

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007)............................................ 9, 13

*Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013)............................................ 14, 16

*Orient Mineral Co. v. Bank of China*, 506 F.3d 980 (10th Cir. 2007) ............................. 10

*Peel Payments, LLC v. First Data Corp.*,

    No. CIV-16-0425-HE, 2016 WL 6407432 (W.D. Okla. Oct. 28, 2016) ..................... 18

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992)............................................ 5

*Rush v. Savchuk*, 444 U.S. 320 (1980) ................................................................................. 9

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) .................................................................. 10

*Southway v. Cent. Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) ................................ 6

*Underwager v. Salter*, 22 F.3d 730 (7th Cir. 1994) ........................................................... 1

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) .................................... 10

*Walden v. Fiore*, 571 U.S. 277 (2014) .............................................................................. 11

*Watson v. University of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir. 1996) .............................. 4

*XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300 (10th Cir. 2024) ............................ 13

**Decisions Of The Commissioner To The Visitor Of UNB**

*Isaac v. UNB*, 1992 CarswllNB 417 (Nov. 25, 1995) ......................................................... 3

**Federal Statutes**

15 U.S.C. § 1, *et seq.* ...................................................................................................... 15

18 U.S.C. § 1965 .............................................................................................................. 9

28 U.S.C. § 1330 .............................................................................................................. 10

28 U.S.C. 1605 ................................................................................................................. 5

28 U.S.C. § 1961, *et seq.* .................................................................................................. 15

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 9 .............................................................................................................. 17

Fed. R. Civ. P. 12 ...................................................................................... 6, 8, 12, 16, 20

Fed. R. Civ. P. 19 ............................................................................................................ 8

**Oklahoma Statutes**

Okla. Stat. tit. 12, § 95(A)(4) ......................................................................................... 19

**Canadian Statutes**

Constitution Act, 1867 ..................................................................................................... 3

**New Brunswick Statutes**

23 Victoria – Chapter 63 (1859) ...................................................................................... 2

Interpretation Act, RSNB 1973 ....................................................................................... 4

Right to Information and Protection of Privacy Act, SNB 2009 ......................................... 3

University of New Brunswick Act, SNB 1984 ("UNB Act")...........................................3-4

**New Brunswick Rules Of Court**

Rules of Court, N.B. Reg. 82-73, Rule 18.01 ..................................................... 17

**Ontario Rules Of Civil Procedure**

Rules of Civil Procedure, Rule 16.02 ................................................................. 17

**International Treaties**

Convention Done at the Hague....................................................................16-17

**Secondary Sources**

Francis C. Amendola, *et al.*, 17 C.J.S. Contracts § 61 (May 2024) .................................. 19

In further support of their Motion to Dismiss (Doc. # 12) and in reply to the Plaintiff's Opposition Brief (Doc. # 81), the University Defendants state as follows:

## I.    INTRODUCTION AND SUMMARY OF THE REPLY

Nothing in Plaintiff's Opposition Brief changes the fact that this dispute is, at base, a dispute over the credibility of Plaintiff's academic research that should be resolved by an educational committee. *See Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation"). Nothing in Plaintiff's Opposition Brief changes the fact that Plaintiff is suing the instrumentality of a foreign state and its alleged employees, all of whom are immune from suit. Nothing in Plaintiff's Opposition Brief changes the fact that this dispute concerns claims against a Canadian university and Canadian individuals relating to an academic relationship formed in Canada, statements allegedly made in Canada, and an investigation allegedly taking place in Canada. Nothing in Plaintiff's Opposition Brief changes the fact that the Individual Defendants were improperly served. Nothing in Plaintiff's Opposition Brief changes the fact that Plaintiff fails to state a legally cognizable claim. All of Plaintiff's claims should be dismissed *with prejudice*.

To avoid repetitious argument and in compliance with LCvR7.1(h), this Reply Brief focuses on the arguments raised in Plaintiff's Opposition Brief. However, in support of their Motion to Dismiss, the University Defendants also incorporate by reference, and adopt to the extent they apply, the arguments in the Motions to Dismiss filed by the Committee Defendants, Janet Mullin, and James Gregory, III. (*See* Docs. # 66, 85, and 89).

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB

Plaintiff argues that: (1) UNB is not an instrumentality of a foreign state; and (2) even if UNB is an instrumentality of a foreign state, UNB is not entitled to FSIA immunity because its conduct at issue in this action was commercial in nature. Plaintiff is incorrect.

### A.   UNB Is An Instrumentality Of The Province Of New Brunswick

Plaintiff alleges that UNB is a public university. (Doc. # 1 at ECF p. 8). In his Opposition Brief, Plaintiff never acknowledges his own allegation or the case law holding that state universities are arms of the state. (See Doc. # 12 at ECF p. 16).

Plaintiff argues that UNB is not an instrumentality of New Brunswick because Plaintiff's education at UNB was paid for by U.S. Department of Defense grants – not Canadian funds. (Doc. # 81 at ECF p. 11). Certainly, collecting fees from another sovereign to train soldiers does not negate sovereignty.  Nonetheless, charging tuition and fees does not negate a public university's sovereign nature. *See Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 16 (1st Cir. 2011); *Kashani v. Purdue Univ.*, 813 F.2d 843, 847 (7th Cir. 1987); *see also Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842, at *2 (D. Me. Feb. 5, 2013), *aff'd*, No. 1:12-CV-193-DBH, 2013 WL 685668 (D. Me. Feb. 25, 2013) (public university in Northern Ireland, that was an organ of a foreign state, charged tuition).

Plaintiff argues that the public purpose described in UNB's incorporation statute is not relevant because the statute was enacted by the "King of England" before Canadian independence. (Doc. # 81 at ECF p. 11). In fact, the statute was enacted by New Brunswick's General Assembly. (23 Victoria – Chapter 63 (1859), Doc. # 12-1 at ECF p. 1). When Canada became independent, the laws in New Brunswick remained in force under

the same monarchy. *See* <u>Exhibit 1</u>, Canadian Constitution Act, 1867 at WHERAS clause and § 129. The current statute expressly continues the 1859 incorporation. (Doc. # 12-2 at ECF p. 3). Accordingly, the public purpose enshrined in the 1859 statute continues today.

Plaintiff also argues that UNB cannot be an instrumentality of New Brunswick because UNB was established as a "corporation." (Doc. # 81 at ECF p. 11 *citing* UNB Act, Doc # 12-2 at ECF p. 3). But UNB is a *public corporation*. *See* <u>Exhibit 2</u>, *Isaac v. University of New Brunswick*, 1992 CarswllNB 417, ¶ 38 (Nov. 25, 1995) (UNB is a "publicly incorporated educational institution.").[1] In *Isaac*, the Commissioner to the Visitor of UNB (New Brunswick's Lieutenant Governor) explained UNB's governance as follows:

> The continuation of the Office of the Visitor by a public statute, for a <u>publicly incorporated educational institution</u>, emphasizes the unique nature of the University of New Brunswick. The University has the full power and authority to promote and carry out the work of a university but, as <u>a public institution</u>, it is subject to the <u>scrutiny of the Legislature</u> responsible for its continued existence. The Office of the Visitor allows the University to maintain its independence, without undue public interference, while providing for <u>public accountability</u>.

*Id.* at ¶ 38 (emphasis added). The *Isaac* decision confirms that UNB is a *public corporation* that is accountable to the Lieutenant Governor (the Visitor) and the Province's legislature.[2]

---

[1] The Oklahoma State University Board of Regents is also public corporation. *State ex rel. Bd. of Regents for Oklahoma Agr. & Mech. Colleges v. McCloskey Bros.*, 2009 OK 90, ¶ 14, 227 P.3d 133, 141.  OSU also charges tuition to carry out its public educational purpose. *See* https://bursar.okstate.edu/tuition_fees/tuition_fees.html (accessed Sep. 27, 2024).

[2] Consistent with *Isaac*, UNB is by statute a "public body." *See* <u>Exhibit 3</u>, Right to Information and Protection of Privacy Act, SNB 2009, c R-10.6, at p. 5, 9-11 ("public body" includes "local public body," "local public body" includes "educational body," and "educational body" includes UNB). The current version of the Privacy Act can be accessed at  https://www.canlii.org/en/nb/laws/stat/snb-2009-c-r-10.6/latest/snb-2009-c-r-10.6.html (last accessed Sep. 27, 2024). New Brunswick also names UNB in its Directory of Public

Finally, Plaintiff argues that UNB cannot be an instrumentality of New Brunswick because some members of UNB's Board are private citizens. (Doc. # 81 at ECF p. 11). In fact, the Board is statutorily immune from suit without consent of New Brunswick's attorney general. (UNB Act, Doc. 12-2 at ECF p. 59).  Moreover, nearly two-thirds of Board were appointed by the Lt. Governor in Council, were elected by voters, or were appointed by the Board that includes individuals appointed by the Lt. Governor in Council and by elected officials. *See* <u>Exhibit 4</u>, Second Declaration of Paul Mazerolle at ¶¶ 2-5.[3] Accordingly, UNB is an instrumentality of New Brunswick. *See Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir. 1996) (majority of members of board

---

Bodies. *See* Directory at p. 23, https://www2.gnb.ca/content/dam/gnb/Departments/tb-ct/pdf/ripp-dipp/DirectoryofPublicBodies.pdf (last accessed Sep. 27, 2024).

[3] The Board includes UNB's Chancellor and UNB's President / Vice-Chancellor, who are appointed by the Lieutenant Governor of New Brunswick in Council. (Doc. # 12-2 at ECF pp. 9-10 and 13). Ten additional members of the Board are appointed by the Lieutenant Governor in Council. (Doc. # 12-2 at ECF p. 13). The Board also includes two elected officials: the Mayor of the City of Fredericton and the Mayor of the City of Saint John. (Doc. # 12-2 at ECF p. 13). The Board as a whole – which includes the members appointed by the Lieutenant Governor in Council or elected by the voters – then appoints: (a) Vice-Presidents; (b) the Secretary of the Board; (c) Governors Emeriti; and (d) other "additional members" – all of which also serve on the Board (Doc. # 12-2 at ECF p. 12-14). The Lieutenant Governor represents the monarch of Canada. *See* https://www2.gnb.ca/content/gnb/en/lgnb/ltgov/role.html (accessed Sep. 27, 2024). The "Lieutenant Governor in Council" means the Lieutenant Governor acting with the advice of the Executive Council of New Brunswick. *See* <u>Exhibit 5</u>, Interpretation Act, RSNB 1973, c. I-13, at § 38 - definitions. The current version of the Interpretation Act can be accessed at  https://www.canlii.org/en/nb/laws/stat/rsnb-1973-c-i-13/latest/rsnb-1973-c-i-13.html (last accessed Sep. 27, 2024). The Executive Council's President is the Premier, the head of New Brunswick's democratically elected government. *See* Members of the Executive Council,  https://www2.gnb.ca/content/gnb/en/contacts/minister_list.html (last accessed Sep. 27, 2024). Therefore, many of the Board members are appointed with the advice of the democratically elected government of New Brunswick.

appointed by Governor; university was arm of the state); *Kashani*, 813 F.2d at 847 (7th Cir. 1987) (majority of board selected by Governor; university was instrumentality of the state).

For these reasons and the reasons contained in the University Defendants' Motion to Dismiss, UNB is an instrumentality of New Brunswick and is entitled to FSIA immunity.

**B.    The Commercial Activity Exception To FSIA Immunity Does Not Apply**

Plaintiff argues that even if UNB is an instrumentality of a foreign state, UNB is not entitled to FSIA immunity because, <u>according to Plaintiff</u>, UNB's conduct was commercial in nature. (Doc. # 81 at ECF pp. 11-14). As Plaintiff admits (Doc. # 81 at ECF p. 10), it is <u>Plaintiff's</u> burden to make a showing that an exception to immunity applies. *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1248 (10th Cir. 2013). The only reference to commercial activity in Plaintiff's Complaint is a mere citation to "28 U.S.C. 1605(a)(2), Commercial Activity." (Doc. # 1 at ECF p. 4). Plaintiff fails to meet his burden.

Plaintiff nevertheless argues that allegations of defamation, breach of contract, and causes of action allege commercial activity. (Doc. # 81 at ECF pp. 12-13). As Plaintiff acknowledges (Doc. # 81 at ECF p. 12), the relevant test is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the <u>type</u> of actions by which a private party engages in trade and traffic or commerce." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (emphasis original; quotation marks omitted).

Plaintiff alleges that that he attended UNB as part of a U.S. government program to educate soldiers. (Doc. # 1 at ECF p. 4; *see also* Doc. # 81 at ECF p. 11). A public education program wherein one sovereign engages another sovereign to educate soldiers, who are state employees, is <u>not</u> the <u>type</u> of action by which a private party engages in trade and

traffic or commerce. Likewise, a public university's investigation of academic research is not the type of action by which a private party engages in trade and traffic or commerce.[4]

By contrast, the cases cited by Plaintiff in support of the application of the commercial activity exception (*see* Doc. # 81 at ECF p. 13) did involve the type of actions by which a private party engages in trade and traffic or commerce. *See Southway v. Cent. Bank of Nigeria*, 198 F.3d 1210, 1218 (10th Cir. 1999) (obtaining the proceeds from a sale); *Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 24-25 (D. Mass. 2019) (commercial production and broadcasting of media); *Leutwyler v. Off. of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 291-96 (S.D.N.Y. 2001) (selling a publication); *Am. Bonded Warehouse Corp. v. Compagnie Nationale Air France*, 653 F. Supp. 861, 864 (N.D. Ill. 1987) (scheming to eliminate competition). There are no allegations in this case that UNB obtained the proceeds from a sale, engaged in commercial production or broadcasting of media, sold any publications, or schemed to eliminate competition.

For these reasons and the reasons in the University Defendants' Motion to Dismiss, the commercial activity exception FSIA immunity does not apply and the claims against UNB must be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1).

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

In his Opposition Brief, Plaintiff argues that: (1) the Individual Defendants are not entitled to sovereign immunity; and (2) even if the Individual Defendants are otherwise

---

[4] There are no allegations to suggest that Plaintiff's program was available to anyone except at UNB (a public university) or available to anyone other than state employees.

entitled to sovereign immunity, they are not entitled immunity in this case because their conduct at issue in this action was commercial in nature. Both arguments are incorrect.

**A.    The Individual Defendants Are Entitled To Sovereign Immunity**

Plaintiff argues that that sovereign immunity applies to foreign states rather than to individuals. (Doc. # 81 at pp. 14-16). However, immunity also extends to individuals who are sued in their <u>official</u> capacity. On this point, the University Defendants adopt and incorporate by reference the arguments in the Motions to Dismiss filed by the Committee Defendants and Janet Mullin. (Doc. # 66 at ECF pp. 5-8 and Doc. # 85 at ECF pp. 5-8).

In his Opposition Brief, Plaintiff argues that certain Individual Defendants acted in their <u>personal</u> capacities by: (1) allegedly making public statements placing Plaintiff in a false and negative light; (2) allegedly releasing Plaintiff's embargoed thesis; and (3) allegedly signing what Plaintiff contends is a defamatory letter. (Doc. # 81 at ECF p. 15). But, in his Complaint, Plaintiff links each of these allegations to *UNB* and to *UNB's* investigation. (*See*, *e.g.*, Doc. # 1 at ECF p. 10 [*UNB* and certain Individual Defendants made fraudulent statements to the press], Doc. # 1 at ECF p. 8 [*UNB* and certain Individual Defendants conspired to publicly release Plaintiff's thesis], Doc. # 1 at ECF p. 9 [linking the allegedly defamatory letter to *UNB's* investigation of Plaintiff's PhD]).

Accordingly, UNB is the real party in interest targeted by Plaintiff and the Individual Defendants are therefore immune from this Court's subject matter jurisdiction.

**B.    The Commercial Activity Exception Does Not Apply To The Individuals**

Plaintiff argues that even if the Individual Defendants are otherwise entitled to sovereign immunity, they are not entitled immunity in this case because their conduct was

commercial in nature. (Doc. # 81 at ECF pp. 16-19). Plaintiff cites <u>nothing</u> to suggest that a commercial activity exception to "official capacity" immunity even exists. Additionally, as discussed above, none of the actions alleged in Plaintiff's Complaint are the <u>type</u> of actions by which a private party engages in trade and traffic or commerce. Therefore, the commercial activity exception does <u>not</u> apply. Plaintiff's claims against the Individual Defendants should be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1).

> **C.    In the Alternative, Sovereign Immunity Applies To UNB, and Claims Against the Individual Defendants Cannot Go Forward**

On this point, to avoid repetitious argumentation to the Court, the Individual Defendants adopt and incorporate by reference the arguments and authorities in the Committee Defendants' Motion to Dismiss and in Janet Mullin's Motion to Dismiss. (Doc. # 66 at ECF pp. 8-11 and Doc. # 85 at ECF pp. 8-10). Fed. R. Civ. P. 19(b) is an alternative basis to dismiss the claims against the Individual Defendants.

## IV.    <u>THE COURT LACKS GENERAL JURISDICTION OVER THE UNIVERSITY DEFENDANTS</u>

> **A.    The University Defendants Timely Raised Their Jurisdictional Defenses**

Plaintiff argues that personal jurisdiction exists because counsel for the University Defendants made no objections to Plaintiff's counsel regarding service of process. (Doc. # 81 at ECF pp. 20-23). However, the University Defendants presented their personal jurisdiction defenses by way of motion. (Doc. # 12). Plaintiff cites <u>nothing</u> to suggest that, before filing a Fed. R. Civ. P. 12(b)(2) motion, the University Defendants were required to advise plaintiff's counsel of an objection to personal jurisdiction. No such authority exists.

**B.        This Court Does <u>Not</u> Have General Jurisdiction Over These Defendants**

Plaintiff argues that the Court has general jurisdiction over Defendant James Gregory, and therefore general jurisdiction is established over all the defendants by establishing jurisdiction over "at least one defendant." (Doc. # 81 at pp. 20-21). In support of this argument, Plaintiff cites *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015). However, *Hart* actually holds that *venue* is proper where personal jurisdiction based on minimum contacts is established as to at least one defendant. *Hart* goes on to explain that even when the *venue* test is met, *personal jurisdiction* must be analyzed separately. *Id*.

Although 18 U.S.C. § 1965(b) authorizes, when required by the ends of justice, nationwide service of process in RICO actions to confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum sufficient contacts with the U.S., none of the University Defendants reside in a U.S. judicial district or were served in the U.S. (Doc. # 1 at ECF pp. 7-8; Doc. # 8). Therefore, RICO's nationwide service of process provision does not provide a basis for personal jurisdiction in this case. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006).

Instead, in this case, Plaintiff has the burden of establishing that the personal jurisdiction requirements are met as to each defendant. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). In *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007), the U.S. Court of Appeals for the 10th Circuit held that the mere presence of one alleged co-conspirator in the forum did <u>not</u> automatically create personal jurisdiction over the other alleged co-conspirator. The *Melea* decision is on point: even *if* this Court has general jurisdiction over Mr. Gregory, it does <u>not</u> have general jurisdiction over the University Defendants.

## V.     THE COURT LACKS SPECIFIC JURISDICTION OVER UNB

Plaintiff argues that: (1) if UNB is deemed to be a foreign state, then this Court automatically has personal jurisdiction under 28 U.S.C. § 1330(b); and (2) alternatively, if UNB is not found to be a foreign state, personal jurisdiction can nonetheless be conferred through a minimum contact analysis. Both of Plaintiff's arguments are incorrect.

### A.     28 U.S.C. § 1330(b) Does Not Automatically Confer Jurisdiction

Plaintiff argues that if UNB can be established as a foreign sovereign under FSIA, then personal jurisdiction is automatically conferred pursuant to 28 U.S.C. § 1330(b). (Doc. # 81 at ECF p. 23).  However, § 1330(b) can only be used as a method of conferring personal jurisdiction over a foreign state when subject matter jurisdiction has already been established. 28 U.S.C. § 1330(b).  The two legal principles are interwoven.  Thus, if this Court finds UNB to be a foreign state and none of the exceptions to FSIA immunity applies, then the Court is left without both subject matter jurisdiction and personal jurisdiction. *Saudi Arabia v. Nelson,* 507 U.S. 349, 355 (1993); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 485 n. 5 (1983).  Subject matter jurisdiction, however, is to be determined first.  *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 991 (10th Cir. 2007) (quoting *Cargill Intern. S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2nd Cir.1993)).

As discussed above in Section II, UNB is an instrumentality of a foreign state and, therefore, is subject to immunity.  Plaintiff has not met its burden to come forward with evidence showing that an exception to UNB's immunity applies.  Therefore, this Court lacks both subject matter jurisdiction and personal jurisdiction over UNB.

**B.    In The Alternative, UNB Does <u>Not</u> Have the Requisite Minimum Contacts to Establish Personal Jurisdiction and the Exercise of Such Would Offend Traditional Notions of Fair Play and Substantial Justice**

Plaintiff argues that even if this Court does not find that UNB is a foreign state, this Court has specific jurisdiction over UNB based on a minimum contacts and reasonability analysis. (Doc. # 81 at pp. 24-25). According to Plaintiff, this Court has specific jurisdiction over UNB because UNB allegedly made statements to the American press regarding his Ph.D. and circulated a letter "to the world." (Doc. # 81 at ECF p. 24).  Plaintiff argues that UNB could therefore anticipate being haled into American court.  (Doc. # 81 at ECF p. 25).

In support of his argument, Plaintiff cites the Supreme Court's 40-year-old decision in *Calder v. Jones*, 465 U.S. 783 (1984). (Doc. # 81 at ECF p. 24). In *Calder*, 465 U.S. at 789-90, the Supreme Court held that a state court could assert personal jurisdiction over the author and editor of a national magazine which published an allegedly libelous article about a resident of that state, and where the magazine had wide circulation in that state. In other words, the <u>plaintiff's</u> connection to the forum drove the contacts analysis.

In fact, as discussed above, UNB <u>is</u> an instrumentality of a foreign state that is entitled to immunity. Therefore, there is no subject matter jurisdiction over UNB. However, if the Court finds that UNB is <u>not</u> the instrumentality of a foreign state, then, in the alternative, specific jurisdiction still does not exist. Since *Calder* was decided four decades ago, the Supreme Court no longer allows the <u>plaintiff's</u> connection to the forum to drive the personal jurisdiction contacts analysis. *Walden v. Fiore*, 571 U.S. 277, 289 (2014) ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply

11

because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis").[5]

Therefore, the Court's focus should <u>not</u> be on <u>Plaintiff's</u> connections to the U.S., but on whether <u>UNB</u> has minimum contacts with the U.S. to establish specific jurisdiction. UNB does <u>not</u> have such minimum contacts. This case is <u>not</u> about Canadians who reached into Oklahoma or the U.S. to injure Plaintiff; instead, this case is about a Plaintiff who reached into Canada to form a relationship in Canada with a Canadian public university and has complaints over conduct in Canada, but is attempting to litigate in the U.S.

For these reasons and the reasons further contained in the University Defendants' Motion to Dismiss, Plaintiff's claims against UNB should be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(2).

## VI.   <u>THE COURT LACKS SPECIFIC JURISDICTION OVER THE INDIVIDUAL DEFENDANTS</u>

Plaintiff argues that: (1) in his Complaint and in the Declaration submitted with his Opposition Brief, he alleges sufficient minimum contacts between the Individual Defendants and Oklahoma; and (2) the exercise of jurisdiction over the Individual Defendants is reasonable. Both arguments are incorrect.

---

[5] *See also*, *e.g.*, *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 972 (10th Cir. 2022) ("[W]e have centered the express aiming analysis on whether the defendant's allegedly tortious conduct was focused on or directed at the forum state—not, as [plaintiffs] would seemingly have it, on whether the defendant's wrongful conduct was focused on or directed at the interests of the plaintiffs who reside in or otherwise have significant connections to the forum state").

### A.      Plaintiff Does <u>Not</u> Allege Sufficient Minimum Contacts

Plaintiff argues that, in his Complaint, he alleges sufficient minimum contacts between the Individual Defendants and Oklahoma. However, Plaintiff focuses his argument on activity that *Mr. Gregory* allegedly conducted in Oklahoma. (Doc. # 81 at ECF p. 26). The mere presence of one alleged co-conspirator in the forum does <u>not</u> create personal jurisdiction over the other alleged co-conspirators. *See Melea*, 511 F.3d at 1070.

The allegations specific to the Individual Defendants cited in the Opposition Brief (Doc. # 81 at ECF pp. 26-27) all allegedly took place in Canada. There are no allegations that UNB's investigation into the credibility of Plaintiff's research took place in Oklahoma. On the contrary, the only address that Plaintiff provides for the Individual Defendants is in Canada. (Doc. # 1 at ECF p. 7). There are no allegations in the Complaint to suggest that the allegedly fraudulent statements made by certain Individual Defendants, or any other statements that Plaintiff characterizes as a "press hit" (Doc. # 81 at ECF p. 26), were made in Oklahoma or directed to Oklahoma – especially when considering Plaintiff is domiciled in Pennsylvania. (Doc. #1 at ECF p. 10). None of these allegations satisfy Plaintiff's burden to establish that the Individual Defendants acted with knowledge that the brunt of the injury allegedly caused by their statements would be felt in Oklahoma. *See XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1310 (10th Cir. 2024).

Plaintiff also argues that, in the Declaration submitted with his Opposition Brief, there are sufficient minimum contacts between the Individual Defendants and Oklahoma. (Doc. # 81 at ECF p. 26). But <u>none</u> of the University Defendants' alleged statements that are cited in Plaintiff's Declaration have any connection to Oklahoma. Instead, the

Declaration refers to communications to "the world," to the public, to the "American media," "across America on social media, and to alumni and current UNB students," and on "local American radio in Harrisburg, PA." (Doc. # 81-2 at ECF pp. 3-4). The letter referred to in Plaintiff's Declaration (Doc. # 81-2 at ECF p. 4) does not reflect that it was directed to anyone in Oklahoma. (Doc. # 5 at ECF p. 2, reflecting no recipient's address).

### B.     Exercising Jurisdiction Over The Individuals Is Not Reasonable

Plaintiff concedes that even if a defendant's minimum contacts with the forum state are established, the exercise of personal jurisdiction over the defendant must still be reasonable. (Doc. # 81 at ECF p. 27). In assessing whether an exercise of jurisdiction is reasonable, a court must consider a five-factor test. (Doc. 12 at ECF pp. 28-29).

Plaintiff argues that litigating in Oklahoma is only an "inconsequential" burden on the Individual Defendants. (Doc. # 81 at ECF p. 28). In support of this argument, Plaintiff cites *Newsome v. Gallacher*, 722 F.3d 1257, 1273 (10th Cir. 2013), in which the U.S. Court of Appeals for the 10th Circuit found that there was "no particular burden" for the Canadian defendants to travel from Alberta to Oklahoma. However, in *Newsome*, 722 F.3d at 1262, 1268, and 1273, the Court found that that the allegedly injured party – plaintiff's beneficiary – operated in Oklahoma, maintained property and offices in Oklahoma, and was injured in Oklahoma. Here, the allegedly injured party – Plaintiff – lives and was allegedly injured in Pennsylvania. (Doc. # 1 at ECF p. 5). Accordingly, here, the Court should consider not only the burden of travel, but also the burden of obtaining documents and witnesses – most of which are likely in Canada or Pennsylvania, not Oklahoma. In fact, Plaintiff admits that relevant witnesses are in Canada. (Doc. # 81 at ECF p. 29).

14

Plaintiff argues that Oklahoma has a substantial interest in adjudicating this dispute because, according to Plaintiff, "the sole governing law is (1) federal law under 28 U.S.C. §§ 1961–68 regarding RICO claims and 15 U.S.C. §§ 1–7 regarding anti-trust claims; and (2) Oklahoma statutory and common law are applicable." (Doc. # 81 at ECF p. 28). However, Plaintiff contends later in his Opposition Brief that Pennsylvania law applies to at least one of his common law claims. (Doc. # 81 at ECF p. 37). Although the Individual Defendants do not concede that Pennsylvania law necessarily applies, Oklahoma has no substantial interest in adjudicating a dispute between Canadians and a citizen of Pennsylvania, where Plaintiff admits that Oklahoma law does not apply, and which concerns the receipt of an academic degree in Canada, statements made in Canada, and a Canadian university's investigation of academic research.

Plaintiff argues that considerations of convenience and effective relief favor litigating in Oklahoma due to Plaintiff's allegedly "limited resources" and "involuntary participation in the dispute." (Doc. # 81 at ECF p. 29). In support of this argument, Plaintiff cites *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244 (10th Cir. 2000). In *Intercon*, 205 F.3d at 1249, the plaintiff was a "small local company with limited resources" and plaintiff's evidence indicated that it would suffer prejudice if forced to litigate outside of its home state of Oklahoma. Here, there is no evidence to suggest that Plaintiff lacks the resources to litigate outside his home state. In fact, Plaintiff filed this action in Oklahoma despite living in Pennsylvania. Moreover, in *Intercon*, 205 F.3d at 1246, the plaintiff's involvement with the out-of-state defendant was truly involuntary and only occurred because the defendant mistakenly routed certain e-mail messages to the plaintiff's e-mail

server. Here, Plaintiff intentionally attended a Canadian university, and the most convenient and efficient place for him to litigate his dispute with his Canadian *alma mater* is in Canada.

Plaintiff argues that furthering Oklahoma's substantive social policies outweighs the substantive social policy interests of Canada because this dispute arises out of the Individual Defendants' choice to do business with forum citizens. (Doc. # 81 at ECF 29-30). But Plaintiff is not a citizen of this forum. Plaintiff is a citizen of Pennsylvania who chose to attend a university in Canada and is suing over statements made in Canada by Canadians. All the policy interests are held by Canada, and none are held by Oklahoma.

Finally, Plaintiff argues that litigation in Oklahoma is reasonable because adjudication in Oklahoma "may" be required to avoid piecemeal litigation. Plaintiff cites no law and no facts for this conclusory statement. (Doc. # 81 at ECF p. 29). As the U.S. Court of Appeals for the 10th Circuit pointed out in *Newsome*, 722 F.3d at 1274, arguments about piecemeal litigation are circular: one reason why litigation becomes piecemeal is lack of jurisdiction over a particular defendant; but, if a court lacks jurisdiction, it cannot then turn around and say that it should have jurisdiction to prevent litigation from becoming piecemeal. The Court should not credit Plaintiff's conclusory and circular argument.

For these reasons and the reasons in the University Defendants' Motion to Dismiss, Plaintiff's claims against the Individual Defendants should be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(2).

## VII.    THE INDIVIDUAL DEFENDANTS WERE NOT PROPERLY SERVED

Plaintiff appears to concede that he did not serve the Individual Defendants pursuant to Article 6 of the Convention Done at the Hague Nov. 15, 1965, T.I.A.S. No. 6638 (Feb.

10, 1969). However, Plaintiff argues that he properly served the Individual Defendants under Article 10 of the Convention, which Plaintiff contends permits service by mail and by process servers. (Doc. # 81 at ECF p. 39). However, Plaintiff did not serve the Individuals by mail. Instead, he had Summonses delivered to a UNB administration building. (Doc. # 8). Additionally, even if the Summonses were delivered by process server, they were not served on the Individual Defendants personally – instead, the Summonses were delivered to UNB President's Chief of Staff, Melissa Dawes. (Doc. # 8). Plaintiff has provided no evidence that Ms. Dawes was the Individual Defendants' agent for process.

Contrary to Plaintiff's suggestion, neither Article 10 of the Convention nor *Marcus Food Co. v. Dipanfilo*, No. CIV. 09-1261-EFM, 2010 WL 3946314, at *4 (D. Kan. Oct. 5, 2010), aff'd, 671 F.3d 1159 (10th Cir. 2011) (cited by Plaintiff, Doc. # 81 at ECF p. 39) permit a plaintiff to serve Person A by having a process server deliver a Summons to Person B. In fact, in *Marcus Food*, 2010 WL 3946314, at *4, the District Court held that service by a process server in Canada was effective when the defendant was personally served. *Id*. (citing Ontario Rules of Civil Procedure, R. 16.02(1)(a)). New Brunswick also requires personal service. New Brunswick Rules of Court, N.B. Reg. 82-73, R. 18.01(1)(a) (Doc. # 12-4 at ECF p. 1). Accordingly, Plaintiff has not properly served the Individual Defendants.

## VIII.  PLAINTIFF FAILS TO STATE A CLAIM

### A.  Plaintiff Fails To State A Claim For RICO Violations

Plaintiff argues that "[f]acts alleging mail and wire fraud are well pleaded in the Complaint." (Doc. # 81 at ECF p. 32). However, Plaintiff does not identify any such facts. Plaintiff cannot meet the specificity requirements of Fed. R. Civ. P. 9(b).

17

**B.    Plaintiff Fails To State A Claim For Sherman Act Violations**

Plaintiff argues that the University Defendants' conduct "disfavor[s] some historians in a particular field while advancing other historian's marketplace interests[.]" (Doc. # 81 at ECF p. 34). However, Plaintiff's Complaint pleads <u>no facts</u> about any historian other than Plaintiff and Mr. Gregory, and certainly pleads <u>no facts</u> about the "marketplace" as a whole. Therefore, Plaintiff's Sherman Act claim must be dismissed.

**C.    Plaintiff Fails To State A Claim For Fraud**

Plaintiff argues that UNB made fraudulent statements (Doc. # 81 at ECF pp. 34-35). But he does <u>not</u> identify facts indicating that UNB knew its statements were false or that anyone relied on UNB's statements. (Doc. # 1 at ECF p. 10).

**D.    Plaintiff Fails To State A Claim For Aiding And Abetting**

Plaintiff argues that, in *Peel Payments, LLC v. First Data Corp.*, No. CIV-16-0425-HE, 2016 WL 6407432, at \*2 (W.D. Okla. Oct. 28, 2016), this Court recognized the possible existence of a claim for aiding and abetting the breach of a fiduciary duty. (Doc. # 81 at ECF pp. 35-36). The unpublished *Peel Payments* decision was considered and directly contradicted by later published authority. *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1196-97 (N.D. Okla. 2020). The University Defendants urge this Court to adopt the more detailed, published reasoning of the later decided *Almeida* decision.

**E.    Plaintiff Fails To State A Claim For Breach Of Contract**

Plaintiff argues that he has adequately alleged the terms of the contract that was purportedly breached. (Doc. # 81 at ECF p. 36). This is not correct. (*See* Doc. # 12 at ECF p. 39). Plaintiff fails to plead a price for the alleged contract, which is fatal to the claim.

18

*See* Francis C. Amendola, *et al.*, 17 C.J.S. Contracts § 61 (May 2024) ("A definite price or compensation is generally an essential element of a binding contract, and if a contract does not specifically fix it, a definite method for ascertaining it must ordinarily be provided."); *see also Bradshaw v. Uber Tech., Inc.*, No. CIV-16-388-R, 2017 WL 2455151 *5 (W.D. Okla. June 6, 2017) (plaintiff must plead facts to support both formation and breach of a contract, including whether there was a meeting of the minds as to essential terms).

### F.    Plaintiff Fails To State A Claim For Negligence

Plaintiff cites *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) in support of his argument that the University Defendants owe him a duty. (Doc. # 81 at ECF p. 37). In *Kleinknecht*, 989 F.2d at 1367, the court recognized that a college owed a duty to a student athlete engaged in an athletic practice for a school-sponsored intercollegiate team. Plaintiff cites <u>nothing</u> recognizing an open-ended duty of care running from a university and its employees to someone who received a degree years earlier. No such authority exists.

### G.    Plaintiff Fails To State A Claim For Defamation

Plaintiff cannot overcome the one-year statute of limitations. Okla. Stat. tit. 12, § 95(A)(4). This action was filed on May 31, 2024. (Doc. # 1). Plaintiff argues that he was defamed in the letter attached to his Complaint, which is dated April 26, 2023. (Doc. # 81 at ECF p. 38; *see* Doc. # 5 at ECF p. 2). Plaintiff also points to other statements allegedly "published to this day." (Doc. # 81 at ECF p. 38). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court may begin by identifying allegations that, because they are mere

conclusions, are not entitled to the assumption of truth. *Id.* at 664. Plaintiff has failed to provide <u>facts</u> indicating that the defamation claim was timely filed.

For these reasons, and the reasons in the University Defendants' Motion to Dismiss and the Motions to Dismiss filed by the Committee Defendants, Janet Mullin, and James Gregory, III (*see* Docs. # 66, 85, and 89), which are adopted to the extent they apply, Plaintiff's claims should be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(6).

## IX.    <u>LEAVE TO AMEND WOULD BE FUTILE</u>

Plaintiff's argument for leave to amend is that Plaintiff consented to an extension of time for Defendants' to file an oversized brief. (Doc. # 81 at ECF p. 42). This is a non-sequitur. While Defendants appreciate the civility and professional courtesy extended by Plaintiff's counsel (which has been reciprocated, *see* Doc. # 77), that is <u>not</u> relevant to the substantive arguments at issue in the University Defendants' Motion to Dismiss. Plaintiff's claims should be dismissed *with prejudice* and leave to amend would be futile.

## X.    <u>CONCLUSION</u>

The University Defendants request that their Motion be granted, the claims against it be dismissed *with prejudice*, and for such further relief this Court deems just and proper.

\*\*\* SIGNATURE BLOCK INTENTIONALLY MOVES TO NEXT PAGE \*\*\*

Dated:  September 27, 2024

Respectfully submitted,

*/s/ William C. Swallow*

William C. Swallow                          Don W. Danz
*Admitted Pro Hac Vice*                     McATEE & WOODS, P.C.
Michael H. Passman (IL No. 6297381)         410 NW 13th Street
*Admitted Pro Hac Vice*                     Oklahoma City, OK 73103
Emily M. Vanderlaan (CO No. 55293)          T: (405) 232-5067
*Admitted Pro Hac Vice*                     F: (405) 232-0009
CLYDE & CO US LLP                           E: DonD@McAteeandWoods.com
30 S. Wacker Dr., Suite 2600
Chicago, Illinois 60606
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

*Attorneys for the University of New Brunswick, Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, Angela Tozer, Margaret MacMillan, Robert Bothwell, John Ferris, and Janet Mullin*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically on this 27th day of September, 2024, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

*/s/ William C. Swallow*

William C. Swallow

*Admitted Pro Hac Vice*
