# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO,

      *Plaintiff*,

    *v.*

JAMES GREGORY III, *et al.*,

      *Defendant*.

Case No. CIV-24-567-F

## MOTION TO DISMISS BY DEFENDANT
## NATIONAL RESEARCH COUNCIL CANADA

Paul E. Swain III (OBA# 8785)
PAUL E. SWAIN, PLC
2727 E. 21st Street, Suite 420
Tulsa, OK 74114
Telephone: (918) 599-0100
pswain@swainlaw.com

John B. Bellinger III*
Stephen K. Wirth*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, DC 20001
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
john.bellinger@arnoldporter.com

Robert Reeves Anderson*
ARNOLD & PORTER KAYE SCHOLER LLP
1144 Fifteenth Street, Suite 3100
Denver, CO 80202

* *Admitted pro hac vice.*

*Counsel for National Research Council Canada*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 3

ARGUMENT ........................................................................................................... 7

I.    NRC Is Immune from Suit. ............................................................................ 7

    A.    NRC has not waived its immunity. .......................................................... 9

    B.    The Complaint does not allege that NRC engaged in any commercial
         activities or that its conduct has any U.S. nexus. ................................... 9

    C.    The Complaint does not allege a taking in violation of international
         law. ........................................................................................................ 14

    D.    The Complaint fails to plead that NRC committed any tortious
         conduct in the United States. .................................................................. 15

II.    The Complaint Fails to State a Valid Claim for Relief. ............................... 19

    A.    The Complaint fails to state a RICO claim. .......................................... 20

         1.    Plaintiff fails to sufficiently allege any predicate acts. ................. 20

         2.    Plaintiff fails to allege a pattern of racketeering activity. .............. 23

         3.    Plaintiff fails to allege a RICO enterprise. ..................................... 25

         4.    Plaintiff fails to state a RICO conspiracy claim. ............................ 26

    B.    The Complaint fails to state an antitrust claim. ..................................... 26

         1.    Plaintiff fails to allege antitrust injury. .......................................... 27

         2.    Plaintiff fails to allege that NRC entered into an agreement to
             unreasonably restrain trade. ............................................................ 28

         3.    Plaintiff fails to allege an unlawful tying agreement. ..................... 29

    C.    The Court should decline to exercise supplemental jurisdiction over
         Plaintiff's state-law defamation claim, which is meritless in any event. .... 29

CONCLUSION ...................................................................................................... 30

CERTIFICATE OF SERVICE ............................................................................... 32

## TABLE OF AUTHORITIES

**Cases**                                                                         Page(s)

*Abraham v. Intermountain Health Care Inc.*,
    461 F.3d 1249 (10th Cir. 2006) ................................................................................28

*AD/SAT v. AP*,
    181 F.3d 216 (2d Cir. 1999).................................................................................28

*Am. President Lines, LLC v. Matson, Inc.*,
    633 F. Supp. 3d 209 (D.D.C. 2022) .......................................................................27

*Annulli v. Panikkar*,
    200 F.3d 189 (3d Cir. 1999)..................................................................................20

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989).........................................................................7, 8, 16, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................3, 19, 22

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)..................................................................................3, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................19

*Berkovitz v. United States*,
    486 U.S. 531 (1988)...........................................................................................17

*Bibeau v. Pac. Nw. Rsch. Found., Inc.*,
    339 F.3d 942 (9th Cir. 2003) ..............................................................................18

*Boyle v. United States*,
    556 U.S. 938 (2009)...........................................................................................24

*Brannon v. Boatmen's First Nat'l Bank of Okla.*,
    153 F.3d 1144 (10th Cir. 1998) ...........................................................................25

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
    846 F.3d 1297 (10th Cir. 2017) ...........................................................................26

*Cohlmia v. St. John Med. Ctr.*,
    693 F.3d 1269 (10th Cir. 2012) ...........................................................................28

*Ctr. for Immigr. Studs. v. Cohen*,
    410 F. Supp. 3d 183 (D.D.C. 2019) .....................................................................22

*Dalton v. City of Las Vegas,*
    282 F. App'x 652 (10th Cir. 2008) ................................................................. 20

*De Csepel v. Republic of Hungary,*
    859 F.3d 1094 (D.C. Cir. 2017) ..................................................................... 14

*Dial A Car, Inc. v. Transp., Inc.,*
    82 F.3d 484 (D.C. Cir. 1996) ......................................................................... 27

*Doe v. Holy See,*
    557 F.3d 1066 (9th Cir. 2009) ....................................................................... 18

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
    48 F.3d 1260 (D.C. Cir. 1995) .................................................................. 23, 24

*Efron v. Embassy Suites (Puerto Rico), Inc.,*
    223 F.3d 12 (1st Cir. 2000) ........................................................................... 24

*Gaylord Ent. Co. v. Thompson,*
    958 P.2d 128 (Okla. 1998) ............................................................................ 29

*Gregory v. Fort Bridger Rendezvous Ass'n,*
    448 F.3d 1195 (10th Cir. 2006) ..................................................................... 26

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ...................................................................................... 20

*Jam v. Int'l Fin. Corp.,*
    3 F.4th 405 (D.C. Cir. 2021) ......................................................................... 13

*Jam v. Int'l Fin. Corp.,*
    586 U.S. 199 (2019) ...................................................................................... 13

*Johnson v. Heath,*
    56 F.4th 851 (10th Cir. 2022) ....................................................................... 24

*Kimberlin v. Nat'l Bloggers Club,*
    No. 13-cv-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015) ....................... 22

*Kimm v. Lee,*
    No. 04-cv-5724, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) ......................... 22

*Koch v. Koch Indus., Inc.,*
    203 F.3d 1202 (10th Cir. 2000) ..................................................................... 22

*Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.,*
    657 F. Supp. 2d 104 (D.D.C. 2009) .............................................................. 24

*N. Pac. Ry. Co. v. United States*,
    356 U.S. 1 (1958) .............................................................................28

*Nat'l Rifle Assn. of Am. v. Vullo*,
    49 F.4th 700 (2d Cir. 2022) ...........................................................18

*Nat'l Rifle Assn. of Am. v. Vullo*,
    602 U.S. 175 (2024) .........................................................................18

*New Mexicans for Bill Richardson v. Gonzales*,
    64 F.3d 1495 (10th Cir. 1995) ........................................................11

*O'Bryan v. Holy*
    *See*, 556 F.3d 361 (6th Cir. 2009) .......................................16, 17, 18

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) .....................................................................13, 14

*Odhiambo v. Republic of Kenya*,
    930 F. Supp. 2d 17 (D.D.C. 2013) ............................................12, 13

*Princz v. Fed. Republic of Germany*,
    26 F.3d 1166 (D.C. Cir. 1994) ...................................................12, 13

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ...................................................................12, 13

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .........................................................................25

*Ritchie v. Sempra Energy*,
    No. 10-cv-1513, 2013 WL 12171757 (S.D. Cal. Oct. 15, 2013) ...........22

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016) .........................................................................20

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012) ......................................................26

*Schermerhorn v. State of Israel*,
    876 F.3d 351 (D.C. Cir. 2017) ........................................................16

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) .................................................26, 27

*TV Commc'ns Network, Inc. v. Turner Network Television Inc.*,
    964 F.2d 1022 (10th Cir. 1992) ......................................................27

*U.S. v. Antico*,
  275 F.3d 245 (3d Cir. 2001) ............................................................................ 23

*U1it4less, Inc. v. Fedex Corp.*,
  871 F.3d 199 (2d Cir. 2017) ............................................................................ 25

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ......................................................................................... 29

*United States v. Harris*,
  695 F.3d 1125 (10th Cir. 2011) ........................................................................ 26

*Upton v. Empire of Iran*,
  459 F. Supp. 264 (D.D.C. 1978) ...................................................................... 12

*US Dominion, Inc. v. MyPillow, Inc.*,
  No. 21-cv-0445, 2022 WL 1597420 (D.D.C. May 19, 2022) ............................ 25

*Valambhia v. United Republic of Tanzania*,
  964 F.3d 1135 (D.C. Cir. 2020) ....................................................................... 12

*Verlinden B.V. v. Central Bank of Nigeria*,
  461 U.S. 480 (1983) ........................................................................................... 8

*Vickers v. United States*,
  228 F.3d 944 (9th Cir. 2000) ............................................................................ 17

*Virtual Countries Inc. v. Republic of South Africa*,
  300 F.3d 230 (2d Cir. 2002) ............................................................................. 13

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*,
  546 U.S. 164 (2006) ......................................................................................... 26

*W. Assocs. Ltd. P'ship v. Mkt. Square Assocs.*,
  235 F.3d 629 (D.C. Cir. 2001) .................................................................... 23, 24

*Weltover, Inc., v. Republic of Argentina*,
  941 F.2d 145 (2d Cir. 1991) ......................................................................... 12, 13

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
  296 F.3d 1154 (D.C. Cir. 2002) ......................................................................... 9

*Wye Oak Tech., Inc. v. Republic of Iraq*,
  24 F.4th 686 (D.C. Cir. 2022) ...................................................................... 11, 13

*Yegiazaryan v. Smagin*,
  599 U.S. 533 (2023) ......................................................................................... 20

**Statutes**

15 U.S.C. § 1 ..............................................................................................................27

18 U.S.C.
    § 1961(1) ........................................................................................20, 21
    § 1961(5) ............................................................................................20
    § 1962 ................................................................................................20
    § 1962(b) ............................................................................................20
    § 1962(c) ................................................................................19, 20, 23
    § 1964(c) ............................................................................................19

Defendant National Research Council Canada hereby moves to dismiss the Complaint (ECF No. 1) under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

National Research Council Canada (NRC) is the primary national agency of the Government of Canada dedicated to scientific and industrial research. NRC supports research and development initiatives that advance Canadian priorities across a broad range of scientific and industrial fields—from agriculture and clean energy to deep sea exploration and astrophysics. It partners with the private and public sector, as well as academic and other research organizations, to advance transformative, high-risk, high-reward research. Among other functions, NRC maintains Canada's national building and fire safety codes, provides precise instrument calibration and assessment services for research and industrial uses, and maintains the atomic clocks that keep Canada's official time.

NRC has been named as a defendant in this lawsuit, but the Complaint offers little hint as to what NRC is alleged to have done wrong. According to the Complaint, a graduate student in Oklahoma contacted Plaintiff's *alma mater*, the University of New Brunswick (UNB), which opened a series of investigations into allegations of academic misconduct related to UNB's conferral of Plaintiff's PhD. Plaintiff alleges that, over the course of these investigations, UNB publicly released Plaintiff's PhD thesis (which reportedly contained numerous errors and fabrications), and a group of UNB faculty members wrote an allegedly defamatory public letter concerning Plaintiff and his scholarship. That is Plaintiff's core dispute, and it has nothing to do with NRC.

After those primary events transpired, a researcher employed by NRC appeared in his *personal* capacity at a small Canadian symposium on academic integrity, where he discussed the scandal based on media reporting. This appearance has apparently caused the Plaintiff to sue not only the researcher but NRC as well.

In this Complaint, Plaintiff attempts to transform an academic dispute over the quality of Plaintiff's scholarship into an international racketeering and antitrust conspiracy, allegedly aimed at defrauding him out of his PhD, books, (hypothetical) movie deals, speaking fees, and other supposed "tangible and intangible" rights. That attempt fails: the Complaint suffers numerous legal deficiencies already identified by other defendants named in this suit. But with respect to NRC in particular, the Court also lacks subject-matter and personal jurisdiction under the Foreign Sovereign Immunities Act. That law provides that foreign government agencies, like NRC, are presumptively immune from suit in the United States unless a specifically enumerated exception to immunity applies. None does here. NRC has not waived its immunity; Plaintiff's claims do not arise out of NRC's commercial conduct; Plaintiff does not allege a taking in violation of international law; and Plaintiff does not allege that NRC committed any tortious conduct in the United States. Since no exception applies, NRC is immune from suit.

Immunity can be the first and last word with respect to NRC. But if the Court does reach the merits, it can and should dismiss all claims against NRC for failure to state a claim. The Complaint does not allege any conduct by NRC whatsoever aside from its employment relationship with its researcher. Instead, the Complaint relies on impermissible group pleading—lumping in NRC with "all Defendants" without identifying any specific

conduct by NRC. And even if the acts of other defendants were attributable to NRC (they are not), the Complaint's RICO, antitrust, and defamation claims lack any factual or legal basis.

The Court should dismiss NRC from this lawsuit with prejudice.

## BACKGROUND

NRC summarizes the allegations of the Complaint (ECF No. 1) in this background section without conceding their truth. While the Court must accept certain of Plaintiff's allegations as true for purposes of this motion, the Court need not accept as true inferences unsupported by facts set out in the Complaint or legal conclusions cast as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can the Court "assume that [Plaintiff] can prove facts that [he] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Plaintiff is Douglas Mastriano, a retired colonel in the U.S. Army and a sitting state senator for the Commonwealth of Pennsylvania. Compl. ¶¶ 1, 9. He was the Republican Party's nominee in the 2022 Pennsylvania gubernatorial election. *Id.* ¶ 9; *see id.* ¶ 25.

In 2013, before beginning his political career, Plaintiff received a PhD in military history from the University of New Brunswick (UNB), where he wrote his doctoral thesis on Sgt. Alvin York's participation in the Battle of Argonne in World War One. *Id.* ¶¶ 9, 23, 27. He also wrote two books on related topics, which were published by the University Press of Kentucky in 2014 and 2018. *See id.* ¶ 32; Douglas V. Mastriano, *Alvin York: A New Biography of the Hero of the Argonne* (2014); Douglas V. Mastriano, *Thunder in the Argonne: A New History of America's Greatest Battle* (2018).

Plaintiff alleges that Defendant James Gregory, a doctoral candidate at the University of Oklahoma (then in his mid-twenties), contacted UNB and the University Press of Kentucky to raise criticisms of Plaintiff's scholarship on Sgt. York. *See* Compl. ¶¶ 10, 23, 27, 29, 32. According to Plaintiff, Mr. Gregory "joined with" UNB and UNB faculty to "deprive [Plaintiff] of his intangible property interests in his PhD, his books, media appearance, movie and television opportunities, interests in validated historical artifacts and tourism-related events." *Id.* ¶¶ 22, 27. Plaintiff alleges that UNB, UNB faculty members, and Mr. Gregory "conspire[d] to publicly release Col. Mastriano's embargoed PhD thesis to the world" in July 2022. *Id.* ¶ 23; *see id.* ¶ 28. Plaintiff further alleges that, throughout 2022 and 2023, UNB and certain UNB faculty members "[c]ountenanc[ed]," "open[ed]," "re-open[ed]," or "extend[ed]" multiple investigations into Plaintiff's scholarship based on Mr. Gregory's criticisms. *Id.* ¶ 49; *see id.* ¶¶ 29–33. And Plaintiff alleges that in 2023 sixteen UNB faculty members—all of whom he has named as Defendants—"signed a letter horrifically defaming [him]." *Id.* ¶ 24; *see id.* ¶¶ 34, 125; Compl., Ex. D (filed under seal).

Aside from UNB and its faculty members, Plaintiff also names as a Defendant Ronald Kuhn, PhD. According to Plaintiff, Dr. Kuhn "is a self-proclaimed 'mentor' of 'student interns,' and claims he has a 'keen interest in research integrity.'" Compl. ¶ 11. Plaintiff alleges that Dr. Kuhn "is a so-called 'Professional Research Officer [*sic*] (PRO) at the National Research Council of Canada (NRC) and 'serves on PhD committees.'" *Id.*[1] Plaintiff alleges that Dr. Kuhn "published a fraudulent article entitled 'The Douglas

---

[1] Dr. Kuhn's actual title is "Principal Research Officer." *See* Def. Kuhn's Mot. to Dismiss, Ex. 1 ("Kuhn Decl.") ¶ 3 (ECF No. 105-1).

Mastriano Scandal' on July 31, 2023 in the journal 'Canadian Perspectives on Academic Integrity', Vol. 6, No. 1 (2023), all in order to defraud Col. Mastriano from his PhD and intangible property and economic interests." *Id.* ¶ 43. Plaintiff further alleges that Dr. Kuhn "used a two-day 'Canadian Symposium for Academic Integrity [*sic*] (CSAI) 2023 program in June 2023 at the University of Toronto [*sic*] to scheme with UNB to fraudulently reopen a closed investigation into Col. Mastriano's PhD to defraud him of his intangible property, while openly claiming it was election related and citing additional false information in order to defraud and extort him, including an extreme and malicious falsity and fraud that Col. Mastriano was a 'participant in … an invasion of the U.S. Capitol.'" *Id.*[2]

The Complaint does not allege that Dr. Kuhn engaged in this alleged conduct in his professional capacity or as part of his professional duties as an employee of NRC. Nor does the Complaint allege that NRC directed or authorized Dr. Kuhn's alleged conduct. In fact, Dr. Kuhn has submitted a declaration in support of his motion to dismiss in which he states that, with respect to his statements concerning Plaintiff, Dr. Kuhn acted entirely "on [his] own behalf, and not as a representative of the NRC." Def. Kuhn's Mot. to Dismiss, Ex. 1 ("Kuhn Decl.") ¶ 14 (ECF No. 105-1). And Dr. Kuhn's presentation slides at the symposium expressly stated in bright green text: "**DISCLAIMER:** this presentation does not in <u>any way</u> represent the views of my employer! (I'm on my own time & paying my own way here)." Kuhn Decl., Ex. 1 at 1. He placed a similar disclaimer on all slides containing any of his substantive remarks. *Id.* at 1–17.

---

[2] The symposium was actually held at the Winnipeg campus of the University of Manitoba. Kuhn Decl. ¶ 7.

Nevertheless, the Complaint names NRC as a defendant—apparently in its capacity as Dr. Kuhn's employer. Beyond the caption of the lawsuit, the Complaint contains almost no mention of NRC and no factual allegations concerning any conduct by NRC whatsoever. Only three sentences in the 130-paragraph Complaint even mention NRC and only serve to identify NRC as "a government entity" and Dr. Kuhn's employer. Compl. ¶ 12; *see id.* ¶¶ 11, 44. Plaintiff alleges: "[Dr. Kuhn] is a so-called 'Professional Research Officer [*sic*] (PRO) at the National Research Council of Canada (NRC)." *Id.* ¶ 11. Plaintiff further alleges: "The National Research Council of Canada (NRC) is a government entity employing and/or sponsoring Roland Kuhn to publish and advance the scheme and pattern of racketeering activity against Col. Mastriano." *Id.* ¶ 12. And Plaintiff alleges: "Defendant Kuhn is also a culpable person and a member of a covered and culpable organization which sponsored publication of the said fraud on Col. Mastriano's intangible and tangible economic property, the National Research Council of Canada (NRC), under the RICO Act and the Sherman Act." *Id.* ¶ 44.

Plaintiff contends that the various Defendants' alleged conduct—*e.g.*, publicly criticizing his scholarship, opening academic investigations, signing an open letter—amounts to a vast "racketeering enterprise," which was "carried out by the named domestic and international Defendants, to fraudulently, and with extortion, steal his historic international recognition for his military archeological finds in the Argonne, France, steal his PhD in U.S. military history, steal his widely-published book sales, steal his lucrative and sustaining speaking engagements and professional opportunities, and steal his future equity contracts and royalties, all causing him permanent economic harm and deprivation of

intangible and tangible property interests." Compl. ¶ 2.

Plaintiff's lawsuit includes nine causes of action: two claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts 1 and 2), two claims under the Sherman Act (Counts 3 and 4), a fraud claim (Count 5), an "aiding and abetting breach of fiduciary duty" claim (Count 6), a breach of contract claim (Count 7), a negligence claim (Count 8), and a defamation claim (Count 9). *See id.* ¶¶ 46–130. NRC is not specifically named in *any* of the causes of action. The RICO claims, Sherman Act claims, and defamation claim are pleaded against "all Defendants." Compl. ¶¶ 47, 57, 68, 79, 124. The other claims are pleaded against specific Defendants only and do not name NRC. *See id.* ¶¶ 95, 101, 110, 118.

Plaintiff seeks a judgment awarding him "actual damages including compensatory, consequential and nominal, treble damages, emotional and pain and suffering damages, punitive damages, equitable relief in the form of a declaratory judgment and injunction, pre-judgment interest, post-judgment interest and attorney's fees, and costs of suit." Compl. at 30, Request for Relief ¶ 2.

## ARGUMENT

### I.    NRC Is Immune from Suit.

The Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1330, 1602–11, provides "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Under the FSIA, a foreign state—which is defined to include its agencies and instrumentalities—is immune from suit in the United States courts unless "one of the specified exceptions to foreign

sovereign immunity" applies. *Id.* at 435 (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493 (1983)); *see* 28 U.S.C. §§ 1603(a)–(b), 1604. The FSIA enumerates seven exceptions to immunity: (1) waiver; (2) commercial activities; (3) takings in violation of international law; (4) succession, gifts, and rights in real property; (5) non-commercial torts; (6) arbitral awards; and (7) terrorism. *See* 28 U.S.C. §§ 1605(a), 1605A, 1605B. If none of those exceptions to immunity applies, then the FSIA deprives courts of both subject-matter jurisdiction and personal jurisdiction over the foreign state. *Amerada Hess*, 488 U.S. at 435 n.3.

NRC is the primary national agency of the Government of Canada dedicated to scientific and industrial research. *See* Compl. ¶ 12 (NRC "is a government entity"). As an "agency or instrumentality" of Canada, NRC falls within the FSIA's definition of a "foreign state." 28 U.S.C. § 1603(a)–(b). NRC is thus presumptively entitled to immunity—and the Complaint must be dismissed—unless Plaintiff can allege facts establishing that an exception to immunity applies. *Id.* § 1604.

Plaintiff asserts in his Complaint that the Court may exercise jurisdiction under the following exceptions to immunity: (1) "Waiver by the University of New Brunswick," (2) "Commercial Activity," (3) "property taken by Defendants … in connection with the commercial activity of an international PhD program," and (4) "tortious acts of fraud and RICO election interference." Compl. ¶ 5. But he fails to plead any non-conclusory facts to support the application of any exception—indeed, the Complaint contains essentially no allegations regarding any conduct by NRC, much less conduct sufficient to abrogate NRC's immunity under the FSIA.

8

### A.    NRC has not waived its immunity.

Plaintiff has invoked the waiver exception only as to UNB: The Complaint alleges "Waiver *by the University of New Brunswick* accepting and signing commercial education payment agreements with the Plaintiff and with the Department of Defense for the education of its soldiers including Col. Mastriano." Compl. ¶ 5 (emphasis added). Plaintiff does not allege that NRC entered into any agreements with Plaintiff or otherwise engaged in any conduct by which it has "clearly and unambiguously" waived its immunity. *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002). The exception therefore does not apply to NRC.

### B.    The Complaint does not allege that NRC engaged in any commercial activities or that its conduct has any U.S. nexus.

Plaintiff also invokes jurisdiction under the so-called "commercial activity" exception (Compl. ¶ 5), which provides that a sovereign is not immune in a case

> in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (bracketed numbers added for clarity).

Each clause of the commercial activity exception requires not only that Plaintiffs identify commercial activities carried out by the foreign state, but also that such activities have a sufficient nexus to the United States. Plaintiff cannot carry this burden.

**1.** Plaintiff cannot invoke the commercial activity exception for the simple reason that his claims are not "based upon" any "commercial activity" conducted by NRC. *Id.*

Only three paragraphs of the Complaint mention NRC at all. Plaintiff alleges: "[Dr. Kuhn] is a so-called 'Professional Research Officer [*sic*] (PRO) at the National Research Council of Canada (NRC)." *Id.* ¶ 11. Plaintiff alleges: "The National Research Council of Canada (NRC) is a government entity employing and/or sponsoring Roland Kuhn to publish and advance the scheme and pattern of racketeering activity against Col. Mastriano." Compl. ¶ 12. And Plaintiff alleges: "Defendant Kuhn is also a culpable person and a member of a covered and culpable organization which sponsored publication of the said fraud on Col. Mastriano's intangible and tangible economic property, the National Research Council of Canada (NRC), under the RICO Act and the Sherman Act." *Id.* ¶ 44.

None of these paragraphs—nor any other allegation in the Complaint—identifies any "commercial activity" by NRC on which Plaintiff's claims are "based." 28 U.S.C. § 1605(a)(2). It appears that Plaintiff has named NRC a defendant in this lawsuit solely because NRC allegedly "employ[ed] and/or sponsor[ed]" Dr. Kuhn. Compl. ¶ 12. But Plaintiff's claims are not "based on" that employment relationship. 28 U.S.C. § 1605(a)(2). Nothing about NRC's employment relationship with Dr. Kuhn is alleged to be wrongful or to have caused Plaintiff any injury. Instead, Plaintiff alleges that Dr. Kuhn made statements in an academic journal and at an academic symposium that harmed Plaintiff's reputation. *See id.* ¶ 43. But that conduct plainly is not "commercial." 28 U.S.C. § 1605(a)(2). And, even if an academic speech could be recharacterized as commercial activity, Plaintiff does not allege facts establishing that Dr. Kuhn's conduct is attributable to NRC. For example, he does not allege that NRC directed Dr. Kuhn's conduct or that Dr. Kuhn was acting in his professional capacity when he engaged in those activities. In fact, Dr. Kuhn has

submitted a declaration in support of his motion to dismiss in which he states that he acted entirely "on [his] own behalf, and not as a representative of the NRC." Kuhn Decl. ¶ 14. And Dr. Kuhn's presentation slides at the symposium expressly stated: "**DISCLAIMER:** this presentation does not in <u>any way</u> represent the views of my employer! (I'm on my own time & paying my own way here)." Kuhn Decl., Ex. 1 at 1.[3]

**2.** Even if Plaintiff could allege facts demonstrating that NRC engaged in some commercial activity somewhere, Plaintiff still cannot invoke the commercial activity exception because NRC's conduct lacks sufficient nexus to the United States.

The first two clauses of the commercial activity exception require Plaintiff to identify specific acts performed *in the United States* by the foreign state, *i.e.*, by NRC. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 700–02 & n.2 (D.C. Cir. 2022). The first clause "relate[s] only to the conduct of the foreign state—*i.e.*, it is the foreign state that has to have engaged in activity that took place in the United States." *Id.* at 700–01. The "second clause … requires that the act at issue be one that *the foreign state* has performed in the United States in connection with its commercial activity elsewhere." *Id.* at 700; *see id.* at 696. Yet Plaintiff has failed to allege a single act—commercial or otherwise—that NRC performed in the United States. The first two clauses obviously do not apply.

The commercial activity exception's third clause applies only if Plaintiffs "first

---

[3] To be clear, the Court can dismiss the Complaint because Plaintiff *does not* allege plausible facts establishing that Dr. Kuhn's conduct is attributable to NRC. But Dr. Kuhn's declaration also makes clear that Plaintiff *could not* allege such facts. And since the defense of sovereign immunity implicates the Court's subject-matter jurisdiction under Rule 12(b)(1), the Court may, if necessary, resolve disputed issues of facts that go to immunity. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

identify an 'act outside the territory of the United States' and allege that it 'cause[d] a direct effect in the United States.'" *Valambhia v. United Republic of Tanzania*, 964 F.3d 1135, 1140 (D.C. Cir. 2020) (quoting 28 U.S.C. § 1605(a)(2)). A "direct effect" must "follow[] as an immediate consequence of the [foreign sovereign's] activity." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 617–18 (1992) (cleaned up) (quoting *Weltover, Inc., v. Republic of Argentina*, 941 F.2d 145, 152 (2d Cir. 1991)). A "direct effect … is one which has *no intervening element*, but, rather, flows in a straight line without deviation or interruption." *Princz v. Fed. Republic of Germany*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (emphasis added) (quoting *Upton v. Empire of Iran*, 459 F. Supp. 264, 266 (D.D.C. 1978)). "[A]n effect is not direct if many events and actors necessarily intervened between the act perpetrated overseas and the impact felt here." *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 31 (D.D.C. 2013) (cleaned up) (quoting *Princz*, 26 F.3d at 1172).

Plaintiff has not alleged that NRC took any action beyond employing Dr. Kuhn in Canada. *See* Compl. ¶¶ 12, 44. Again, Plaintiff has not alleged facts establishing that Dr. Kuhn's statements were made in his official capacity or that his statements are attributable to NRC. *See also* Kuhn Decl. ¶ 14 & Ex. 1. But even if he could, Plaintiff also fails to plead any effect—direct or otherwise—that Dr. Kuhn's statements had *in the United States*. For example, Plaintiff does not allege that anyone in the United States read or heard Dr. Kuhn's statements, much less acted on them to Plaintiff's detriment.[4] And even if Plaintiff could

---

[4] As recounted by Dr. Kuhn: "The Winnipeg Symposium was attended by approximately 130 attendees. It was not broadcast or recorded for broader public distribution. Thus, the only audience that heard me speak were the attendees of the Winnipeg Symposium in Canada." Kuhn Decl. ¶ 10.

make non-speculative, factual allegations along those lines, such allegations would neces-

sarily involve "many events and actors [who] intervened between the act perpetrated over-

seas and the impact felt here." *Odhiambo*, 930 F. Supp. 2d at 31 (cleaned up) (quoting

*Princz*, 26 F.3d at 1172); *see Virtual Countries Inc. v. Republic of South Africa*, 300 F.3d

230, 237–38 (2d Cir. 2002).[5] Such effects would not "follow[] as an immediate conse-

quence" of NRC's alleged conduct employing Dr. Kuhn in Canada and therefore cannot

support abrogation of NRC's immunity. *Republic of Argentina*, 504 U.S. at 617–18

(cleaned up) (quoting *Weltover*, 941 F.2d at 152).

**3.** Even if Plaintiffs could identify *some* U.S. conduct by the NRC or *some* direct

effect in the United States, the FSIA further requires that the alleged U.S. conduct or effects

must constitute the "gravamen" of Plaintiff's lawsuit. *Wye Oak*, 24 F.4th at 702 n.2. "[T]he

gravamen analysis does not require courts to undertake a 'claim-by-claim, element-by-el-

ement analysis,' but rather to 'zero in on the core of the suit.'" *Jam v. Int'l Fin. Corp.*, 3

F.4th 405, 409 (D.C. Cir. 2021) (cleaned up) (quoting *OBB Personenverkehr AG v. Sachs*,

577 U.S. 27, 34–35 (2015)). "[I]f the 'gravamen' of a lawsuit is tortious activity abroad,"

the Court cannot assert jurisdiction over the foreign state under the commercial activity

exception. *Id.* at 408 (quoting *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215 (2019)).

Here, the gravamen of Plaintiff's lawsuit is that UNB—a Canadian university—

---

[5] As for Plaintiff's conclusory assertion that Dr. Kuhn's statements were made "in order to defraud and extort him" (Compl. ¶ 43), the Complaint includes no factual allegations describing the nature of the fraud or how Dr. Kuhn's statements amounted to extortion. He appears to be using the terms "fraud" and "extortion" here not in their legal sense but rather to express outrage at statements he considers to be "extreme and malicious falsity." *Id.*

released Plaintiff's PhD thesis to the public and opened an investigation into potential academic misconduct and other irregularities surrounding the conferral of Plaintiff's degree, and a group of sixteen UNB faculty issued an open letter allegedly defaming Plaintiff. Aside from Mr. Gregory, every Defendant resides, or is headquartered, in Canada; the alleged contract that Plaintiff sues on was formed, performed, and allegedly breached in Canada; and nearly all of the allegedly tortious conduct occurred in Canada. The "core" or "gravamen" of Plaintiff's lawsuit is thus centered in Canada. *Sachs*, 577 U.S. at 34–35. Plaintiff's suit accordingly lacks a sufficient nexus to the United States to support jurisdiction under the commercial activity exception.

### C.    The Complaint does not allege a taking in violation of international law.

Plaintiff invokes the FSIA's expropriation exception (Compl. ¶ 5), which applies to "rights in property taken in violation of international law." 28 U.S.C. § 1605(a)(3). To exercise jurisdiction over a foreign agency under that exception, Plaintiff must allege that (1) "[the expropriated] property … is owned or operated by" the foreign agency; and (2) "that agency … is engaged in a commercial activity in the United States." *Id.*; *see De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107 (D.C. Cir. 2017).

The Complaint alleges that "property" was "taken by Defendants from Col. Mastriano that exists in the United States in connection with the commercial activity of an international PhD program for United States military members which was carried out in the United States by Defendants." Compl. ¶ 5. This allegation fails to allege any elements of a taking by NRC: It does not allege NRC took Plaintiff's property "in violation of

international law" or that NRC "own[s] or operate[s]" the expropriated property. 28 U.S.C. § 1605(a)(3). And, as explained above, the Complaint fails to allege that NRC is "engaged in a commercial activity in the United States." *Supra* Section I.B. Indeed, Plaintiff does not (and cannot) allege any facts connecting NRC to the supposed "commercial activity of an international PhD program for United States military members"—a program that Plaintiff alleges is run by UNB, not NRC. Compl. ¶ 5. The expropriation exception therefore does not apply.

### D.    The Complaint fails to plead that NRC committed any tortious conduct in the United States.

Finally, Plaintiff invokes the non-commercial tort exception (Compl. ¶ 5), which authorizes suits for certain domestic torts that are not covered by the commercial-activity exception. 28 U.S.C. § 1605(a)(5). The non-commercial tort exception applies in cases "in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." *Id.* § 1605(a)(5). The exception further provides two carve-outs: First, the non-commercial tort exception "shall not apply" to "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused"; and second, the exception "shall not apply" to "any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." *Id.*

The non-commercial tort exception does not apply here for three reasons.

*First*, "Section 1605(a)(5) is limited by its terms … to those cases in which the damage to or loss of property occurs in the United States." *O'Bryan v. Holy See*, 556 F.3d 361, 381–82 (6th Cir. 2009) (quoting *Amerada Hess*, 488 U.S. at 439). Thus, "in order to apply the tortious act exception, the 'entire tort' must occur in the United States." *Id.* at 382; *see Schermerhorn v. State of Israel*, 876 F.3d 351, 354 (D.C. Cir. 2017) (limiting exception to torts committed within "the geographic territory of the United States"); H.R. Rep. No. 94-1487, at 21 (1976) ("[T]he tortious act or omission must occur within the jurisdiction of the United States ….").

The Complaint fails to allege *any* tortious act or omission by NRC that occurred in the United States, much less an "entire tort." Instead, the Complaint apparently seeks to hold NRC liable for statements allegedly made by an employee, Ronald Kuhn. *See* Compl. ¶¶ 12, 43–44. But Plaintiff has not alleged facts establishing that Dr. Kuhn's statements were made in his official capacity or that his statements are attributable to NRC. *See* Kuhn Decl. ¶ 14 & Ex. 1. And even if Dr. Kuhn had acted in an official capacity, that would not bring Dr. Kuhn's conduct within the exception for *domestic* torts: Dr. Kuhn's statements were allegedly published "in the journal 'Canadian Perspectives on Academic Integrity', Vol. 6, No. 1 (2023)," and at the "Canadian Symposium for Academic Integrity (CSAI) 2023 program in June 2023 at the University of Toronto." Compl. ¶ 43; *see* Kuhn Decl. ¶ 10. The Complaint makes no allegation that Dr. Kuhn engaged in any conduct—wrongful or otherwise—in the United States.

*Second*, even if Dr. Kuhn's conduct were attributable to NRC and committed in the United States, that conduct falls within the exception's exclusion for "libel, slander,

misrepresentation, [or] deceit" and thus cannot abrogate NRC's immunity. 28 U.S.C. § 1605(a)(5)(B). The Complaint alleges that Dr. Kuhn published a "fraudulent article"; that he "falsely claim[ed] UNB awarded Col. Mastriano's PhD under 'unusual circumstances'"; and that he spoke at a symposium on academic integrity where he "claim[ed]" UNB's investigation "was election related," "cit[ed] additional false information," and "includ[ed] an extreme and malicious falsity and fraud that Col. Mastriano was a 'participant in … an invasion of the U.S. Capitol." Compl. ¶ 43. All of Plaintiff's claims with respect to NRC thus arise out of alleged "libel, slander, misrepresentation, [or] deceit" by Dr. Kuhn—conduct that is expressly excluded from the non-commercial torts exception. 28 U.S.C. § 1605(a)(5)(B).

*Third*, even if the Complaint alleged that NRC committed a tort in the United States, the Complaint would still fail under the non-commercial tort exception's carveout for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 1605(a)(5)(A). To determine whether the discretionary function exception applies, courts apply a two-part test:

> The first inquiry is whether the challenged action involved an element of choice or judgment, for it is clear that the exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." If choice or judgment is exercised, the second inquiry is whether that choice or judgment is of the type Congress intended to exclude from liability—that is, whether the choice or judgment was one involving social, economic or political policy.

*O'Bryan*, 556 F.3d at 384 (quoting *Vickers v. United States*, 228 F.3d 944, 949 (9th Cir. 2000), in turn quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Plaintiff's claims are based entirely on statements made by NRC's employee, Dr.

17

Kuhn. *See* Compl. ¶¶ 12, 43–44. Again, Plaintiff has not alleged that Dr. Kuhn was acting in his professional capacity or on behalf of NRC when he made those statements. (He was not. *See* Kuhn Decl. ¶ 14.) But even if Dr. Kuhn's statements were made in his official capacity and attributable to NRC, such statements—concerning a matter of public interest and made in the context of a symposium on academic integrity—involve an element of professional judgment that falls within the exclusion. *See O'Bryan*, 556 F.3d at 384; *cf. Nat'l Rifle Assn. of Am. v. Vullo*, 49 F.4th 700, 714–15 (2d Cir. 2022) ("[A] government official has the right to speak for herself (and her agency) and to select the views she wishes to express."), *vacated and remanded on other grounds*, 602 U.S. 175 (2024). Likewise, NRC's decision whether and how to retain and supervise Dr. Kuhn is a quintessential discretionary function. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) ("[T]he decision of whether and how to retain and supervise an employee … [is] the type of discretionary judgment[] that the exclusion was designed to protect."); *cf. Bibeau v. Pac. Nw. Rsch. Found., Inc.*, 339 F.3d 942, 945–46 (9th Cir. 2003) (U.S. government's decision not to supervise government-funded research falls with discretionary function exclusion).

For all these reasons, the non-commercial tort exception does not apply.

\* \* \*

Because no exception to immunity applies, NRC is immune from suit, and this Court is divested of both subject-matter jurisdiction and personal jurisdiction over all claims against it. 28 U.S.C. §§ 1330, 1603–07; *Amerada Hess*, 488 U.S. at 435 n.3. The Court therefore must dismiss Plaintiff's claims against NRC.

**II.    The Complaint Fails to State a Valid Claim for Relief.**

NRC's immunity is sufficient to dismiss Plaintiff's claims against NRC in full, but the Court can—and should—dismiss Plaintiff's claims for the additional reason that Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court considering a motion to dismiss "must take all of the factual allegations in the complaint as true," but a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor can the Court "assume that [Plaintiff] can prove facts that [he] has not alleged." *Carpenters*, 459 U.S. at 526.

Plaintiff's lawsuit includes nine causes of action, but only five are pleaded against NRC: a RICO claim and RICO conspiracy claim (Counts 1 and 2), two antitrust claims under the Sherman Act (Counts 3 and 4), and a defamation claim (Count 9). Compl. ¶¶ 47, 57, 68, 79, 124.[6] And even these causes of action are pleaded against NRC only insofar as they are brought against "all Defendants." None specifically names NRC or any conduct by NRC. Beyond that, the Complaint fails to allege even the barest elements of these causes of action, much less plausible facts concerning NRC that are sufficient to state a claim for which relief can be granted. The Court therefore should dismiss Plaintiff's claims against NRC with prejudice.

---

[6] The Complaint's other four claims—for fraud, aiding and abetting breach of fiduciary duty, breach of contract, and negligence—are pleaded against specific Defendants only and do not name NRC. *See* Compl. ¶¶ 95, 101, 110, 118.

### A.     The Complaint fails to state a RICO claim.

The RICO Act makes it unlawful "to conduct or participate … in the conduct" of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). And it creates a private civil cause of action for certain injuries resulting from a violation of the Act. *Id.* § 1964(c). In order to recover under RICO's civil cause of action, Plaintiff must show that he suffered a domestic injury to his person or property that was proximately caused by NRC's violation of 18 U.S.C. § 1962. *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016); *Yegiazaryan v. Smagin*, 599 U.S. 533, 544 n.3 (2023). Section 1962, in turn, requires Plaintiff to establish (1) that NRC was employed by, associated with, or otherwise acquired or maintained an interest in an enterprise affecting interstate commerce; and (2) that NRC participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(b), (c). Plaintiff fails to clear any of these hurdles, and both of his RICO claims (Counts 1 and 2) must be dismissed.

#### 1.     *Plaintiff fails to sufficiently allege any predicate acts.*

To state a RICO claim, Plaintiff must allege facts demonstrating that NRC committed "at least two acts" of "racketeering activity" as defined in 18 U.S.C. § 1961(1). *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989) (quoting 18 U.S.C. § 1961(5)). A pattern of racketeering activity is the "key requirement" that a RICO plaintiff must allege and prove. *Id.* at 236. Yet Plaintiff fails to identify any racketeering activity by any Defendant and fails to plead that NRC specifically engaged in any of the (non-racketeering) conduct he does identify.

The RICO statute enumerates the specific criminal violations that qualify as

"racketeering activity." 18 U.S.C. § 1961(1). That list is "exhaustive": Conduct that does not appear in § 1961(1) does not constitute "racketeering activity" and thus cannot support a civil RICO claim. *Annulli v. Panikkar*, 200 F.3d 189, 200 (3d Cir. 1999); *see Dalton v. City of Las Vegas*, 282 F. App'x 652, 654–55 (10th Cir. 2008).

Plaintiff's RICO claim (Count 1) lists eight acts of supposed "racketeering activity":

(1)     "interfering with the American elections in the United States";

(2)     "[c]ountenancing and opening a false investigation in or about October 2022";

(3)     "willful failure and refusal to notify and provide due process to Col. Mastriano concerning the 'complaints' against him";

(4)     "willful failure and refusal to follow University and Tri-Agency ethics and professional rules regarding 'investigation(s)' against him";

(5)     "publication of a false and defamatory letter against Col. Mastriano to defraud him of his intangible property";

(6)     "[c]ountenancing and re-opening of a false investigation in or about March 2023";

(7)     "[c]ountenancing and, 'extending' and/or re-opening of a false investigation of him in or about December 12, 2023"; and

(8)     "[s]peaking to the American press criticizing and discussing his dissertation in violation of election inference [*sic*] law and student privacy law."

Compl. ¶ 49.

Plaintiff, however, does not even attempt to explain how this alleged conduct falls within RICO's enumerated list of criminal "racketeering activity." *See* 18 U.S.C. § 1961(1). Nor could he. "[I]nterfering with the American elections" is not racketeering. Compl. ¶ 49. Nor is "[c]ountenancing," "opening," "re-opening," or "extending" academic

investigations. *Id.* Nor is violating "due process" or "ethics and professional rules." *Id.* Nor is violating "election inference [*sic*] law and student privacy law." *Id.*[7] Nor is "publication of a false and defamatory letter." *Id.*

In response to Mr. Gregory's motion to dismiss, Plaintiff argues that the Complaint adequately alleges that "Defendants engaged in multiple acts of mail fraud and wire fraud." Pl.'s Opp. to Def. Gregory's MTD at 6 (ECF No. 110). But Plaintiff never identifies— much less with the particularity required under Rule 9 of the Federal Rules of Civil Proce- dure—*who* relied on *what* specific misrepresentations or *how* that reliance harmed him. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). To be sure, Plaintiff uses the terms "fraud" and "fraudulent" throughout his Complaint in reference to state- ments he claims are "false" and "defamatory." *See, e.g.*, Compl. ¶¶ 42–43, 49. But labeling an allegedly false statement "fraud" does not make it so: a "pleading that offers labels and conclusions … will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). And courts across the country have resoundingly rejected attempts, like this, "to shoehorn a defamation claim into the RICO framework." *Ctr. for Immigr. Studs. v. Cohen*, 410 F. Supp. 3d 183, 191 (D.D.C. 2019); *see, e.g.*, *Kimberlin v. Nat'l Bloggers Club*, No. 13-cv- 3059, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015) (citing cases); *Kimm v. Lee*, No. 04-cv-5724, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005) (citing cases); *Ritchie v. Sem- pra Energy*, No. 10-cv-1513, 2013 WL 12171757, at *4 (S.D. Cal. Oct. 15, 2013).

Plaintiff's failure to identify any RICO predicate act is alone sufficient to dismiss

---

[7] Plaintiff notably does not identify which provisions of the election interference or student privacy laws were violated or how, much less facts supporting those supposed violations.

his RICO claims. But the Complaint suffers the additional defect that Plaintiff fails to allege that *NRC* engaged in any of the (non-racketeering) conduct Plaintiff identifies. Only three paragraphs of the Complaint refer to NRC at all and only to identify NRC as Dr. Kuhn's employer or sponsor. None of those paragraphs—nor any other paragraph in the Complaint—includes any allegation that NRC engaged in even one of the eight supposed RICO predicates that Plaintiff identifies, much less two or more acts of racketeering activity. *Compare* Compl. ¶¶ 11, 12, 44 *with* ¶ 49. And, as for mail and wire fraud, the Complaint does not allege that NRC used the mails or wires at all, much less that NRC knowingly and willfully used the mails or wires to intentionally further a scheme to defraud.[8] Even Plaintiff's conclusory allegations—of "fraudulent[] us[e] [of] the electronic wires and mails of the United States by defendant signatories [of the allegedly defamatory letter] and University" (*id.* ¶ 39)—do not mention NRC, nor does Plaintiff allege that NRC had any role in writing or publishing the allegedly defamatory letter. *See id.* ¶¶ 24, 34. The Complaint therefore fails to state a RICO claim against NRC.

### 2.    *Plaintiff fails to allege a pattern of racketeering activity.*

Moreover, the alleged conduct does not amount to a "pattern of racketeering activity" under RICO, 18 U.S.C. § 1962(c), because Plaintiff alleges only a single scheme and a single victim. "[I]f a plaintiff alleges only a single scheme, a single injury, and few victims it is 'virtually impossible for plaintiffs to state a RICO claim.'" *W. Assocs. Ltd. P'ship*

---

[8] "To prove mail or wire fraud, the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme." *U.S. v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001).

*v. Mkt. Square Assocs.*, 235 F.3d 629, 634 (D.C. Cir. 2001) (quoting *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995)). Moreover, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Id.* (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)). "The pattern requirement thus helps to prevent ordinary business disputes"—or, as here, an ordinary defamation claim—"from becoming viable RICO claims, with defendants subject to treble damages, simply because the parties used the United States mails or a fax machine" (or, as alleged here, email). *Id.*

Courts have thus consistently rejected civil RICO claims arising out of mail and wire fraud—even if they involved numerous uses of the mails or wires over many years—where the scheme was directed at a small group of victims or caused a single injury. *See, e.g.*, *Johnson v. Heath*, 56 F.4th 851, 862 (10th Cir. 2022) ("Even if all the allegedly fraudulent transactions committed … constitute RICO predicates, the predicates were all similar and amounted to a single, noncomplex scheme with a discrete goal."); *Edmondson*, 48 F.3d at 1264–65 (a single scheme spanning three years with multiple predicate acts of mail and wire fraud and three victims); *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 657 F. Supp. 2d 104, 115 (D.D.C. 2009) ("one scheme, spanning about two years, with only four identified victims"). The same is true here. Plaintiff alleges only a single, discrete scheme of which he is the sole target. *See* Compl. ¶ 49. Such allegations do not amount a "pattern of racketeering activity" sufficient to state a RICO claim.

### 3. *Plaintiff fails to allege a RICO enterprise.*

A RICO enterprise-in-fact has "at least three structural features" that are essential to plead a RICO claim: the alleged enterprise must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The Complaint fails to plead these essential features with respect to *any* Defendant, and especially fails with respect to NRC. Plaintiff simply asserts that "all Defendants" were either "employed by, associated with, or joined in action with, the enterprise." Compl. ¶¶ 47, 48.[9] But that conclusory assertion is not supported by any factual allegations. Plaintiff does not identify how the enterprise functioned, what its structure was, which Defendants were "employed by" it, or which Defendants were merely "associated with" it. *Id.* ¶ 48. And, with respect to NRC, the Complaint includes no factual allegations at all, except for describing NRC's employment relationship with Dr. Kuhn.[10] Plaintiff does not allege that NRC was aware of the supposed enterprise, that NRC had any relationship or communications whatsoever with any other members, that NRC shared the supposed enterprise's purpose, or that NRC engaged in any conduct to further that purpose. Simply put, the Complaint includes no factual allegations that NRC "conduct[ed] or participat[ed] in the

---

[9] Notably, in Plaintiff's opposition to the motion to dismiss filed by Mr. Gregory, he mentions some Defendants specifically, but not NRC. *See* Pl.'s Opp. to Def. Gregory's MTD at 8.

[10] It is well-established that an enterprise cannot consist of a corporation and its employee. *See, e.g.*, *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205–06 (2d Cir. 2017); *US Dominion, Inc. v. MyPillow, Inc.*, No. 21-cv-0445, 2022 WL 1597420, at *5 (D.D.C. May 19, 2022).

conduct of the enterprise's affairs, not just its own affairs." *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1146 (10th Cir. 1998) (cleaned up) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

4.  *Plaintiff fails to state a RICO conspiracy claim.*

Plaintiff's RICO conspiracy claim (Count 2) fails from the start because the Complaint does not state a substantive RICO violation for the reasons above. *See Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("If a plaintiff has no viable [RICO] claim under [18 U.S.C.] § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."). But even if the Complaint stated a RICO claim (and it does not), Plaintiff's RICO conspiracy count against NRC would still fail because Plaintiff does not allege that NRC knowingly agreed to join a RICO conspiracy. *See United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2011); *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048 (D.C. Cir. 2012). Indeed, the Complaint lacks any factual allegation that NRC knew or should have known that the alleged conspiracy even existed, much less that NRC agreed to further the conspiracy's supposed goals.

**B.     The Complaint fails to state an antitrust claim.**

Plaintiff's antitrust claims (Counts 3 and 4) are untethered from even the most basic concepts of antitrust law. To begin, both claims fail because Plaintiff does not allege any injury to competition (as distinct from any alleged harms he suffered himself as a competitor). And even if Plaintiff could clear that hurdle, he fails to allege that NRC entered into an unreasonable agreement in restraint of trade or an unlawful tying agreement.

      1.    *Plaintiff fails to allege antitrust injury.*

U.S. antitrust laws protect competition, not individual competitors. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 179–80 (2006); *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1310 (10th Cir. 2017) ("[B]ecause the antitrust laws are concerned with effects on consumers rather than competitors, the plaintiff must show 'an adverse effect on competition in general.'" (quoting *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1205 (10th Cir. 2006))). To state an antitrust claim, a plaintiff must demonstrate an "antitrust injury." *Tal*, 453 F.3d at 1253. Injury to "one specific competitor … is insufficient to support a finding that the market as a whole is or will be injured." *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 486–87 (D.C. Cir. 1996). Rather, Plaintiff bears the burden of proving that a Defendant's action targeted or harmed competition as a whole in the relevant market, and not just Plaintiff as a competitor. *See Am. President Lines, LLC v. Matson, Inc.*, 633 F. Supp. 3d 209, 220–21 (D.D.C. 2022).

Even assuming that the relevant antitrust market is the amorphous "international market for WWI history products" (Pl.'s Opp. to Def. Gregory's MTD at 13), Plaintiff has not alleged any injury to that market as a whole. Instead, the Complaint alleges harms to Plaintiff's personal business interests, namely, the "use of his PhD," "publication and sales of his books," "potential movie deals," and "speaking opportunities." Compl. ¶¶ 71–72. These are individual harms to "one specific competitor," not harms to "the market as a whole." *Dial A Car*, 82 F.3d at 486–87. Plaintiff therefore fails to state an antitrust injury, and both of his antitrust claims must be dismissed.

> ### 2. *Plaintiff fails to allege that NRC entered into an agreement to unreasonably restrain trade.*

Section 1 of the Sherman Act prohibits any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations." 15 U.S.C. § 1. To state a Section 1 claim, a plaintiff must allege (1) a conspiracy or agreement among two or more independent actors that (2) unreasonably restrains trade in commerce. *TV Commc'ns Network, Inc. v. Turner Network Television Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992). "Only after an agreement is established will a court consider whether the agreement constituted an unreasonable restraint of trade." *Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1280 (10th Cir. 2012) (quoting *AD/SAT v. AP*, 181 F.3d 216, 232 (2d Cir. 1999)).

Plaintiff's Section 1 claim (Count 3) alleges: "Defendants conspired to restrain trade and commerce internationally and intrastate [*sic*] by joining with James Gregory III to accept his complaints against Col. Mastriano's PhD and thesis, and books, all in exchange for Mr. Gregory's similar-topic book and speaking engagements would benefit [*sic*] and that UNB's economic opportunities would advance [*sic*] in the face of smears of one of its students' [*sic*] Col. Mastriano." Compl. ¶ 70. This sentence is challenging to parse; but even read generously, it fails to allege any facts from which the Court could infer that *NRC* entered into any agreement with anyone, much less an agreement to unreasonably restrain trade. Without allegations of an agreement, Plaintiff's must be dismissed. *Cohlmia*, 693 F.3d at 1280.

>    3.    *Plaintiff fails to allege an unlawful tying agreement.*

A tying agreement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product." *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5–6 (1958). Such agreements are unlawful where a seller unreasonably exploits its market power over the "tying" product to force a buyer to purchase the "tied" product. *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1263 (10th Cir. 2006).

Plaintiff's "unlawful tying" claim (Count 4) alleges: "Defendants have illegally tied Gregory's conflicted and compromised complaints against Col. Mastriano's PhD to a widespread attack on his intangible voting rights and property interests including his elections and campaigns to public office and the publication of his books on Sgt. Alvin York and the WWI conflict in France." Compl. ¶ 81. Aside from using the word "tied," nothing in that sentence has anything remotely to do with "tying agreements" as that term is understood in antitrust law. Plaintiff does not identify what commercial products were tied or that any Defendant (much less NRC) unreasonably exploited its market power to force Plaintiff (or anyone else) to buy a tied product. Simply put, Plaintiff's "unlawful tying" claim lacks any basis in law or fact and should be dismissed.

## C.    The Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law defamation claim, which is meritless in any event.

In the absence of any properly pleaded federal claims against NRC, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law defamation claim (Count 9). *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726

(1966). But if the Court opts to exercise supplemental jurisdiction, it should dismiss that claim as well for failure to state a claim.

"A public official (or public figure) who prosecutes a defamation case must prove that the publication was a defamatory falsehood and that the statement was made with actual malice (with knowledge that it was false or with reckless disregard of whether it was false)." *Gaylord Ent. Co. v. Thompson*, 958 P.2d 128, 141 n.46 (Okla. 1998). Plaintiff alleges: "On or about the summer of 2023 and prior, Defendants made statements, including but not limited to Exhibit D under seal, that exposed Col. Mastriano to public hatred, contempt, ridicule and disgrace." Compl. ¶ 125. Exhibit D to the Complaint is a letter signed by a long list of "history professors, faculty or instructors at the University of New Brunswick," whom Plaintiff has named as Defendants. *Id.* ¶ 17. Aside from that letter, the Complaint does not identify any other allegedly defamatory statements by any Defendant, much less NRC. *See, e.g.*, *id.* ¶ 24 ("a letter horrifically defaming Col. Mastriano"); *id.* ¶ 49 ("a false and defamatory letter"). Indeed, the Complaint does not allege that NRC made any statements about Plaintiff whatsoever, much less that NRC acted with actual malice. Plaintiff's defamation claim against NRC therefore also must be dismissed.

## CONCLUSION

For the foregoing reasons, NRC respectfully requests that the Court dismiss the claims against NRC with prejudice.

Respectfully Submitted,

Dated: December 4, 2024                    By:  _/s/ Paul E. Swain III_
                                                Paul E. Swain III (OBA# 8785)
                                                Paul E. Swain, PLC
                                                2727 E. 21st Street, Suite 420
                                                Tulsa, OK 74114
                                                Telephone: (918) 599-0100
                                                pswain@swainlaw.com

                                                John B. Bellinger III*
                                                Stephen K. Wirth*
                                                ARNOLD & PORTER KAYE SCHOLER LLP
                                                601 Massachusetts Avenue, N.W.
                                                Washington, DC 20001
                                                Telephone: (202) 942-5000
                                                Facsimile: (202) 942-5999
                                                john.bellinger@arnoldporter.com
                                                stephen.wirth@arnoldporter.com

                                                Robert Reeves Anderson*
                                                ARNOLD & PORTER KAYE SCHOLER LLP
                                                1144 Fifteenth Street, Suite 3100
                                                Denver, CO 80202
                                                Telephone: (303) 863-1000
                                                Facsimile: (303) 863-2301
                                                reeves.anderson@arnoldporter.com

                                                *Admitted pro hac vice*

                                                *Counsel for National Research Council
                                                Canada*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2024, I effected service of the foregoing document on all counsel of record via the Court's CM/ECF filing system.

/s/ Paul E. Swain III
Paul E. Swain III