## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Douglas Mastriano | : | CIVIL NO. 5:24-cv-00567-F |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| James Gregory, III, *et al* | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT KUHN'S MOTION TO DISMISS AND BRIEF IN SUPPORT

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorney, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendant KUHN's motion to dismiss and brief in support, filing this Response in Opposition and Brief in Support, requesting denial of Defendant's motion.

THE COX LAW CENTER, LLC
By:
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
THE COX LAW CENTER, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

TABLE OF CONTENTS _____ 2

TABLE OF AUTHORITIES _____ 3

I.    INTRODUCTION_____ 4

II.   ARGUMENT _____ 5

  A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT KUHN _____ 10

    1.  *18 U.S.C. § 1965(b) Provides Power for This Court To Confer Personal Jurisdiction Over Defendant Kuhn* _____ 10

    2.  *Col. Mastriano's Complaint Alleged Sufficient Facts to Establish Traditional Personal Jurisdiction Over Defendant Kuhn* _____ 13

    3.  *Defendant Kuhn Incorrectly Argues That Plaintiff's Co-Conspirator Allegations Do Not Confer Jurisdiction* _____ 15

  B.  PLAINTIFF HAS SUBMITTED SUFFICIENT SERVICE UNDER FRE 12(B)(5) ___ 16

  C.  PLAINTIFF HAS STANDING TO ASSERT ALL CLAIMS UNDER RICO, SHERMAN ACT _____ 16

    1.  *Plaintiff Has Suffered an Injury-in-fact* _____ 17

    2.  *Plaintiff's Injury-in-fact Is Traceable to Kuhn's Actions* _____ 18

    3.  *Plaintiff's Injury-in-Fact Is Redressable by This Court* _____ 19

  D.  PLAINTIFF HAS PROPERLY STATED CLAIMS UNDER RICO _____ 19

  E.  PLAINTIFF HAS PROPERLY STATED CLAIMS UNDER SHERMAN ACT _____ 20

  F.  PLAINTIFF HAS PROPERLY STATED DEFAMATION CLAIM UNDER OCPA ____ 21

III.  REQUEST FOR LEAVE TO AMEND COMPLAINT_____ 23

IV.   CONCLUSION _____ 24

# TABLE OF AUTHORITIES

*Cases*

*XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020) _____ 11

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006)_____ 11,12

*Sanders v. United States*, 373 U.S. 1 (1963) _____ 11

*Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535 (9th Cir. 1986) _____ 12

*PT. United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998) _____ 12

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998) 13

*Statutes*

18 U.S.C. § 1965(b) _____ 12

U.S. Const. art. III, § 2 _____ 17

18 U.S.C. §§ 1961–68 _____ 17

15 U.S.C. §§ 1–7 _____ 17

12 O.S. § 1430 _____ 22

12 O.S. § 1441 _____ 23

*Rules*

Fed. R. Civ. P. 12(b)(5) _____ 10,16

## I.    INTRODUCTION

Defendant Kuhn, an internationally known "researcher" working for the government of Canada, admits to presenting a "case study" at the 2023 Canadian Symposium on Academic Integrity (CSAI), attended by 130 individuals, providing his academic support to Oklahoma defendant Gregory's and UNB's "allegations" – what plaintiff has well-pleaded as an unlawful scheme - which Kuhn then titled and highlighted in his presentation as "**credible allegations of academic fraud [against plaintiff Douglas Mastriano]...in the face of attention from the media."** Kuhn Declaration ¶ 9-11. This international election interference and malicious civil RICO smear campaign against Senator Douglas Mastriano is stated by Kuhn, a top National Research Council of Canada (NRC) researcher, to include "summarizing conclusions." *Id.*

Defendant Kuhn goes on to admit that he submitted his "Abstract" smearing Senator Mastriano to at least two University journals published online, the Universities of Manitoba and Calgary.  Kuhn MTD pg. 3, ECF 105, pg. 10, ¶ 2, 4; ECF 105 pg. 11, ¶ 1.  While defendant Kuhn alleges facts not in the record and to which plaintiff vigorously disputes as material, namely, but not limited to, that "he addressed the manner by which the University of Brunswick address issues related to requests for Plaintiff's dissertation," ECF 105 at 10, "[the symposium] was not broadcast or recorded **for broader public distribution**, *id.* at ¶ 3 (emphasis added) (Kuhn admitting by inference the presentation *was* in fact broadcast and recorded), "...the only audience that heard Dr. Kuhn speak were the attendees...," *id.*, and that the "primary" purpose of Kuhn's Abstract and the online journals were only for "Canadian practitioners" in "the Canadian context." *Id.*   The

Abstract on its face used Oklahoma resident, adjunct professor and PhD student Gregory's false smears to validate its own "summarizing conclusions." Kuhns "conclusions" included alleging Senator Mastriano's PhD thesis was granted under a cloud of "credible academic fraud" – joining in with defendants Gregory, Brown and UNB and the other defendants in their scheme to destroy Senator Mastriano and cause him permanent harm, via internationally distributed online *academic journals* **during the U.S. elections** when Senator Mastriano was a candidate, in order to spread through the wires, media and mails the wide distribution of an appearance of academic validiation of Oklahoma resident Gregory's civil RICO actions and malicious false smears.

## II.    ARGUMENT

Senator Mastriano did not take the false and malicious accusations of Gregory into the worldwide academic context and the U.S. and Canadian media and election news coverage, Defendants did.  And they, with Canadian government agent defendant Kuhn a willing participant, did so with a highly sophisticated and methodological means of seeking to widely distribute and validate Gregory's false and malicious claims, all in order to destroy Senator Mastriano's political and economic interests.

It is of no small matter that Kuhn acted intentionally against Senator Mastriano *after* Senator Mastriano hired counsel to vigorously and privately defend his good name, research and PhD, and after the Canadian UNB defendants launched their outrageous political attack on Senator Mastriano alleging his "political career" in "dismay" with his statements "reflect[ing] an anti-2SLGBTQQIA+, Islamophobic, antisemitic, sexist, racist, anti-science, violently authoritarian ideology…" *every single allegation of which was*

5

*completely false.* (Compl. ¶ 42; *See also* formerly sealed Exhibit 4, UNB defendants letter maliciously attacking his U.S. state and federal political career after national news announced him the front-runner for the United States Senate).

Furthermore, though Kuhn pleads independence from his job and position as research officer and agent of the Canadian government ("NRC defendant"), this allegation is specious and a material fact in dispute. Kuhn MTD, ECF 105 at pg. 11.

Senator and Colonel Douglas Mastriano, plaintiff, like other American patriots, is the victim of a scheme by defendants to interfere with his elections as Governor of Pennsylvania and then, as the next United States Senator for Pennsylvania. The only issue before the Court is the well-pleaded Complaint and not in any way a test on the sufficiency of evidence with discovery not even being yet provided. Even so, the exhibits provided with the Complaint demonstrate and well plead that but for the actions of Kuhn and defendants, Senator Mastriano would not have been eggregiously harmed in his campaign for Governor of Pennsylvania, the false smears of "fraud" against his PhD contributing to a false and malicious smear campaign against him in the media. Nor would he have suffered a direct attack on his PhD, his books being prevented from additonal publications and his speaking fees lost. Additionally, Senator Mastriano was **the front-runner by a huge margin** to be the next United States Senator for Pennsylvania, a race he arguably would have also won as his Republican colleague has now won the seat[1]. This demonstrates the intangible property interest lost, showing that Senator Mastriano's

---

[1] Senator-elect Republican Dave McCormick, https://www.foxnews.com/politics/democrat-bob-casey-concedes-pennsylvania-senate-race-dave-mccormick accessed on December 6, 2024.

election opportunity was interfered with by the defendants because they knew he would be the next U.S. Senator if he was the GOP candidate, and they did everything they could to interfere with that from happening and destroy his good name, good will and economic property, depriving him of such intangible property interests as a U.S. citizen running for state and federal office – all in violation of RICO and U.S. law prohibiting foreign interference in elections.   And at the heart of defendants' scheme to destroy Senator Mastriano's political elections and candidacies was Kuhn's public attacks on plaintiff's PhD, calling these malicious and easily proven false smears to be "credible allegations of fraud…" in academic journals, all in order to join with defendants to smear him falsely during elections and destroy him personally, professionally and financially. Mr. Kuhn did so while presenting himself as a "professional research officer" with the Canadian government who "sits on PhD committees." Kuhn's actions therefore provided official governmental "cover," power and prestige to defendants' horrific false attacks.  Each of these factual matters at dispute are well-pleaded in Senator Mastriano's complaint.  Compl. ¶¶ 22-45.

　　　　This is no "straightforward historical debate between academics" (Kuhn MTD pg. 1, ECF 105 pg. 8), and at no place has Senator Mastriano's complaint limited defendant Kuhn's actions solely as "based in Canada." *Id.*  They were intentionally distributed via the mail, wires and media worldwide and targeted Senator Mastriano during his elections in the United States, all in advancing the scheme of Oklahoma resident Gregory and UNB defendants.  The scheme was to destroy Senator Mastriano's political career in his state and federal offices and candidacies and his economic interests, a scheme advanced by

Gregory and defendants.  These are well-pleaded with detailed and sufficient factual declarations.  Compl. ¶¶ 22-45.

Kuhn's false claims and inventions of uncited "facts" are belied by the four-corners of Senator Mastriano's complaint and must be rejected by this court.  As a representative of Canada defendant Kuhn published purposefully *to the world* in his online forums and journals the false smears about Senator Mastriano's PhD work as if the Senator had been determined – by Kuhn and Gregory and UNB defendant Brown – to be a "fraud," and by all UNB defendants to be horrifically described as possessing "violently authoritarian ideology" found in "facsist regimes" such that has resulted in "violence…hate crimes…and **murder.**" Compl. Ex. 4 formerly filed under seal.

Kuhn's attack on Senator Mastriano during the U.S. 2023 primary election did not merely claim Senator Mastriano's PhD contained "errors" as he now claims, Kuhn MTD pg. 1, ECF 105 pg. 8, but Senator Mastriano well-pleaded and Kuhn admits to claiming Gregory's claims were "credible allegations of fraud" by Col. Mastriano.  *Id.* at pg. 11.

Kuhns actions provided Gregory and Brown and the UNB defendants to take to the wires and airways in the United States and claim Senator Mastriano was a "fraud" unfit for office, had open claims against his PhD alleging fraud as unlawfully disclosed in the media by UNB defendants, his PhD embargo lifted against the law and his demands and released to the world during his elections in order to permit false public attacks by Gregory during the elections, with the Senator then being accused by UNB defendants on its website and via wires and mails and online media distribution of having a "violent[]" ideology equating his views with "fascist regimes" and "murder." *Id.*  Allegations and inferences of "fraud"

and unfitness for American political office were stated on air by Gregory and UNB defendant Brown which were then repeated over and over again by Canadian and American media during the Senator's candidacies for election.  This is also a political "warfare" tactic.  Operation Mockingbird and most recently, Operation Crossfire Hurricane, which incoming FBI director Kashyap Patel exposed in his book "Government Gangsters," are known political disinformation campaigns, the latter of which was domestically and internationally coordinated in a scheme to unlawfully destroy American political candidates.  Indeed, the United States Marine Corps has recently published in its *Journal of Advanced Military Studies* an article studying the active threat of disinformation by domestic and foreign actors in American politics.

> In 1970, Canadian media theorist Marshall McLuhan predicted that World War III would involve "a guerrilla information war with no division between military and civilian participation."…researchers define *foreign-influence efforts* as: 1) coordinated campaigns by one state to impact one or more specific aspects of politics in another state, 2) through media channels, including social media, and by 3) producing content designed to appear indigenous to the target state. The objective of such campaigns can be quite broad and to date have included influencing political decisions by shaping election outcomes at various levels, shifting the political agenda on topics ranging from health to security, and encouraging political polarization.

Forest, James J.F., PhD, 'Political Warfare and Propaganda – An introduction,' *Journal of Advanced Military Studies* (JAMS), Vol. 12, No. 1. (available at https://www.usmcu.edu/Outreach/Marine-Corps-University-Press/MCU-Journal/JAMS-vol-12-no-1/Political-Warfare-and-Propaganda/ , accessed on December 6, 2024).

Kuhn's actions are no small matter.  Senator Mastriano well-pleaded his claims and factual allegations demonstrating interference in his intangible property

interests in his elections, and such interference is a serious concern, particularly recently, with numerous federal indictments against foreign and domestic actors for alleged interference in and misinformation against other American politicians in order to destroy them and thus interefere in United States' elections. This is a gravamen of the instant matter. And it is well-pleaded by Colonel and Senator Douglas Mastriano.

Col. Mastriano respectfully requests that this Court deny Kuhn's Motion to Dismiss and Brief in Support because this Court has personal jurisdiction over Kuhn, Col. Mastriano has submitted sufficient service pursuant to Federal Rule of Civil Procedure 12(b)(5), Col. Mastriano has standing to assert his RICO and Sherman Act claims against Kuhn, and Col. Mastriano's Complaint properly states claims for RICO, Sherman Act, and defamation counts against Kuhn. To the extent of any insufficiency in the Complaint, Col. Mastriano respectfully requests this Court to grant him leave to amend the Complaint to remedy such insufficiency.

### A.    This Court Has Personal Jurisdiction Over Defendant Kuhn

Col. Mastriano has met his burden of establishing that the court has the power to exercise personal jurisdiction over Defendant Kuhn. Col. Mastriano has made this *prima facie* showing that jurisdiction exists through means of affidavits, acceptance with signatures of actual authorities of the UNB, notices, and other written material. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

### 1.    18 U.S.C. § 1965(b) Provides Power for This Court to Confer Personal Jurisdiction Over Defendant Kuhn

Under 18 U.S.C. § 1965(b), personal jurisdiction is created for "any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned." The Tenth Circuit has interpreted this section to create this avenue for personal jurisdiction over a defendant so long as the "ends of justice" standard is met. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006) (holding that there was nationwide jurisdictional reach of RICO as given by this statutory section if the ends of justice require it and that the ends of justice analysis was not controlled by the fact that all defendants were amenable to suit in one forum).

The evolution of this ends of justice standard has shown that courts tend to construe this broadly and note that this standard "cannot be too finely particularized." *Sanders v. United States*, 373 U.S. 1, 17 (1963). Congress created this section for the intention that the "ends of justice" provision to enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial. *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). So long as there is personal jurisdiction over one defendant, this ends of justice standard covers all co-conspirators that are involved in the alleged RICO violation. *PT. United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998)

(using Paragraph A to show that there must be personal jurisdiction over one defendant, and then using Paragraph B to then incorporate all other defendant conspirators into personal jurisdiction).

Here, Col. Mastriano's claim has personal jurisdiction over Defendant Kuhn because of 18 U.S.C. § 1965(b). Defendant Kuhn falls under § 1965(b) because the statute allows this court to summon any party so long as it meets the ends of justice. Summoning Defendant Kuhn for Col. Mastriano's claim satisfies the ends of justice. Because Congress' intention for this section of the statute cannot be too finely particularized, enabling Col. Mastriano to bring all members of a RICO conspiracy is in the best interest of this court to satisfy Congress' intention; this includes Defendant Kuhn. The standard, as interpreted by the Second Circuit, and adopted by *Cory v. Aztec Steel* in this Circuit, is that so long as one defendant meets the personal jurisdiction standard in the action, the ends of justice cover all co-conspirators that are involved in the alleged RICO violation. Defendant Kuhn argues that this court does not have traditional personal jurisdiction over him, and while mistaken on this argument, even if it were true, this jurisdiction has general jurisdiction over Defendant Gregory, who's domicile is in Oklahoma, and thus, because this court has personal jurisdiction over one defendant, § 1965(b) covers Defendant Kuhn.

> **2.    Col. Mastriano's Complaint Alleged Sufficient Facts to Establish Traditional Personal Jurisdiction Over Defendant Kuhn**

Col. Mastriano's complaint correctly alleges the appropriate standard for traditional personal jurisdiction and that standard is confirmed by Defendant Kuhn in his Motion to Dismiss and Brief in Support. This Court's analysis of personal jurisdiction turns on the reasonableness factors that courts have analyzed with the exercise of personal jurisdiction. These factors, as indicated by the defendant, are (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

The first of the due process factors is the burden on the defendant. Defendant Kuhn does have a burden in coming to Oklahoma to try this case. However, if this court were to find that traveling away from home were a substantial burden that would allow Defendant Kuhn to hide himself from trial would hinder future out of state defendants from being sued by citizens of Oklahoma simply because they do not live in the state.

Second, Oklahoma has an interest in resolving this dispute seeing as one of its citizens was a co-conspirator to this alleged RICO violation. Most if not all actions for the conspiracy took place while Defendant Gregory was in the state. All of the

actions occurred when Defendant Gregory was a citizen of this state, and thus, Oklahoma has a great interest in seeking justice for one of its own citizens.

Third, Col. Mastriano, like any other plaintiff, has the right to choose a proper venue and forum in which he wishes to sue. Just because Defendant Kuhn does not like the one that Col. Mastriano has chosen does not make the forum improper nor does it show that a plaintiff must choose the forum that is "most convenient" to him as the defendant may allege.

Fourth, America as a whole has a great interest in pursuing RICO violations and punishing individuals who commit this civil harm. Again, simply because the defendants do not like the forum in which Col. Mastriano has chosen does not diminish the nation's interest in resolving this controversy.

Finally, like the fourth factor, and unlike the defendant's contention, there are substantial social policies at issue. Conspiracy, especially conspiracies that involve out of country defendants conspiring against an American citizen standing for state and federal elected office, holds great interest in society. American citizens have a great social interest in protecting themselves and their property against other Americans who conspire with foreign individuals to take away their freedoms, their property, and interfere in their election with intent to defame and defeat them.

> **3.      Defendant Kuhn Incorrectly Argues That Plaintiff's Co-Conspirator Allegations Do Not Confer Jurisdiction**

In essence, Defendant Kuhn asks Col. Mastriano to prove his RICO conspiracy in order to confer jurisdiction onto Kuhn. It attempts to disprove this allegation through showing that the presentation at the Symposium and the Abstract written by Kuhn were not activities directed at the forum state. This is simply not the standard. In order to confer jurisdiction, this court must assume facts are true for a *prima facie* showing of personal jurisdiction. Here, the most important facts in proving jurisdiction are not the Abstract or the Symposium. While these activities do show that Kuhn acted with an OK resident in furtherance of the conspiracy, the most important facts are the conversations that took place with Gregory while he was in OK and the acts that Kuhn took in furtherance of the conspiracy by filing false complaints with the UNB and possibly other acts like false statements on the press in OK. So long as these facts show that Kuhn took "substantial steps in furtherance of the conspiracy," or that he actually committed the allegations in the four-corners of the complaint – which here he has admitted to these actions (ECF 105 pgs. 8-11), there is a prima facie showing of facts to permit personal jurisdiction. However, if this court were to find that the complaint is insufficient in showing these facts, Mastriano is more than willing and able to amend the complaint to meet the additional sufficient facts necessary to show personal jurisdiction over Kuhn and incorporates herewith his motion for leave to amend with attached amended complaint.

15

**B.    Plaintiff Has Submitted Sufficient Service Pursuant to FRE 12(b)(5)**

Defendant contends that insufficient service has been made, and as such, invokes the defense as outlined in Federal Rule of Civil Procedure Rule 12(b)(5), "insufficient service of process." Fed. Rule Civ. P. 12(b)(5). However, as outlined in Federal Rule of Civil Procedure Rule 4(m), service of process is required to be made "within 90 days after the complaint is filed." Fed. Rule Civ. P. 4(m). As the signature line on the Complaint shows, as well as in the Electronic Case Filing database (ECF), the Plaintiff's Complaint was filed on May 31, 2024. This filing was done through ECF, which automatically and immediately provides all registered parties with copies of the filed documents, including this complaint. The ECF system is an authorized system used by the Federal Judiciary system, and is accepted as sufficient service of process.

**C.    Plaintiff Has Standing to Assert All Claims Under RICO, Sherman Act**

Defendant Kuhn, in his Motion to Dismiss and Brief in Support, claims that Col. Mastriano has no standing to bring this case before the court on his allegations of RICO and the Sherman Act. Standing, as established and outlined in Article III of the United States Constitution, explains that the plaintiff must allege that he has a genuine stake in the outcome of the case because he has personally suffered (1) an injury-in-fact, that is a concrete and particularized injury; (2) that is traceable to the

16

allegedly unlawful actions of the opposing party; and (3) that is redressable by a favorable judicial decision. U.S. Const. art. III, §2.

### 1.    Plaintiff Has Suffered an Injury-in-fact

Col. Mastriano has suffered an injury-in-fact, which is both a concrete and particularized injury. Col. Mastriano has suffered an injury created by Kuhn, and other named defendants, on the basis of RICO and Sherman Act violations established by 18 U.S.C. §§ 1961-68 and 15 U.S.C. §§ 1-7, respectively. As outlined in the Complaint, Col. Mastriano is the victim of a multi-year racketeering and antitrust enterprise seeking to derivatively steal, use, and thereupon debunk his work, taking the equity and market therefrom, which is worth, in present value and future contracts, a minimum of $10 million in tourism-related events, validated museum artifacts, book, media, television and movie deals. Kuhn advanced this fraudulent enterprise by, *inter alia*, falsely alleging impropriety in order to pressure the University of New Brunswick (UNB) into reopening a debunked "investigation."

The injury-in-fact requirement states that an injury must be personally experienced by the plaintiff and be a particularized and concrete injury. The racketeering and antitrust enterprise advanced by the Defendant deprived Col. Mastriano of his intangible property interests in his PhD, his books, and his speaking engagements. Col. Mastriano's deprivation of these interests is a concrete and particularized injury, personally experienced by him, as the enterprise has stripped

the Plaintiff of his livelihood, years of intense research and work, has created a permanency of economic harm, and has interfered with his state and federal U.S. elections, candidacies and opportunities.

### 2. Plaintiff's Injury-in-fact Is Traceable to Kuhn's Actions

Further, Col. Mastriano's injury is traceable to the unlawful actions of Defendant Kuhn. As aforementioned, Kuhn furthered and advanced the racketeering and antitrust enterprise by falsely alleging impropriety in order to pressure the University of New Brunswick (UNB) into reopening a debunked "investigation." Defendant is also employed by The National Research Council of Canada (NRC), which is a government entity that allowed Kuhn to publish and advance the scheme of racketeering against Col. Mastriano. Kuhn, through his employer, published a fraudulent article titled "The Douglas Mastriano Scandal" in order to defraud Col. Mastriano of his PhD and intangible property and economic interests. As a proximate cause of Kuhn's actions, the violations of RICO and the Sherman Act and the damages Mastriano ensued, occurred.

### 3. Plaintiff's Injury-in-fact Is Redressable by a U.S. Jury and by this Court.

Additionally, the injury Col. Mastriano endured is redressable by a jury of peers and,  favorable judicial decision. As outlined in the Complaint, the Plaintiff requests relief by asking a federal jury to award damages including compensatory,

consequential and nominal, treble damages, emotional and pain and suffering, and punitive damages amounting to $10 million. The Plaintiff also asks this court to grant declaratory judgment and and will seek an injunction against defendants, pre-judgment interest, post-judgment interest, attorney's fees and cost of suit, as well as any relief as justice may require. These requests for relief, while they will not fully repair the damages to the Plaintiff's reputation, will contribute to making the Plaintiff whole, which is the interest of justice.

### D.     Plaintiff Has Properly Stated Claims Under RICO

Plaintiff re-alleges each of the allegations as set forth in paragraphs 1–130 in the Complaint. Defendant engaged in a pattern of racketeering in direct violation of the Civil Racketeering Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. 1962(c). Kuhn engaged in conduct that aided the co-defendants in calling into question the truthfulness and validity of Col. Mastriano's books. Kuhn made false and fraudulent media claims sourced by co-defendants for the purpose of intentionally defrauding Col. Mastriano of his economic interests, both tangible and intangible.

Kuhn's racketeering activities were also targeted at Col. Mastriano's election campaign, bringing him and his work into disrepute. Kuhn further disseminated the fraud via social media, contact with news outlets, and electronic mail. Additionally, defendant advanced a scheme that included the operation and management of a

RICO enterprise specifically created to harm Mastriano. This endeavor did in fact harm Col. Mastriano, both economically and generally.

Plaintiff re-alleges each of the allegations as set forth in paragraphs 1–130 in the original complaint. A specific enterprise does not need to be named for a group of members to act in accordance with one another in conduct that violates RICO. It is simply enough to know of their mutual plane to engage in such conduct and do so with intentional malignance. A defendant does not need to participate in the facilitation of every part of the offense. Kuhn's signature on the letters, and the published mail and news media clearly proves his participation in the racketeering enterprise. The co-conspirator's actions are plainly alleged to have violated 18 U.S.C. § 1962(d).

### E.    Plaintiff Has Properly Stated Claims Under Sherman Act

Plaintiff re-alleged each of the allegations as set forth in paragraphs 1–130 in the Complaint in his Sherman Act claim. Defendant Kuhn has joined the defendants in a public, widespread attack on Col. Mastriano's intangible property interests, including the publication of his books and his campaigns for public office. Kuhn participated in conduct, including civil RICO predicate acts and libel, that were aimed at driving down the economic interests of Col. Mastriano's property, holding him in international disrepute, damaging his intangible electoral interests, all while creating opportunities for himself in advancing his journal publications and speaking

events. Kuhn's purpose in doing was to reduce procompetitive efficiencies in the same market that Col. Mastriano strives to participate in and to deprive him of his intangible interests in his PhD and elected offices while driving up the status of his own PhD in research and speaking engagements.

The effects of these actions unreasonably restricted Col. Mastriano's use of his PhD and sale of his books, damaged his ability to serve and run as a candidate for public office in the United States which offices would serve the benefit of the United States, and caused the disruption of speaking engagements and earnings therefrom. Col. Mastriano has been deprived of the opportunity to pursue the rewards of his own widely acclaimed works, materials, engagements and copyrighted books, which interests were widely distributed on a global scale. Defendant's actions served no lawful purpose for its anticompetitive results.

Defendant's actions created an antitrust injury to Col. Mastriano, an injury far surpassing that of just personal business interests. Kuhn made it impossible for Col. Mastriano to compete in the free market. The intent of Kuhn to deprive plaintiff of the opportunity to monetize his life's work in historical research, military science, and knowledge interferes in the commerce of alternative viewpoints and interpretations of these areas. It is one thing to disagree with an academic work, as that is the basis of much of academia.  It is entirely another to engage in

disinformation to seek to destroy the political career, PhD, public works and books of a competitor researcher and join in false and malicious allegations of "fraud."

Defendant Kuhn demonstrates no basis for his conduct other than to discourage plaintiff's competition in the market. Kuhn's publications are highly prejudicial against plaintiff's work, and Kuhn continues to engage in unlawful anticompetitive conduct in an attempt to destroy Col. Mastriano's reputation and interests.

**F.    Plaintiff Has Properly Stated Defamation Claim Under OCPA**

Plaintiff re-alleged each of the allegations as set forth in paragraphs 1–130 in the original complaint. Plaintiff's defamation claims against Kuhn are proper under the Oklahoma Citizens Participation Act (OCPA). A defined purpose of the OCPA is to "protect the rights of a person to file meritorious lawsuits for demonstrable injury." 12 O.S. § 1430.  That is precisely what Col. Mastriano has done.

Col. Mastriano has shown that defendant's actions have caused significant harm, demonstrated by the emotional pain and suffering, severe public scrutiny, and reputational damage suffered by plaintiff.

Defendant Kuhn's actions were not a proper exercise of his First Amendment rights under OCPA and are thus not protected by OCPA.  Additionally, he is arguably not even protected, as a Canadian citizen, under the First Amendment for publishing international lies and misinformation against Col. Mastriano.  Kuhn's public and

published statements were knowingly false and made with malice aforethought. Defendant was not merely expressing opinions but was acting with malicious intent to cause reputational harm to Col. Mastriano and discredit his academic work.

Col. Mastriano has identified Kuhn's statements with particularity as a proximate cause of Col. Mastriano's damages.

Kuhn subjected Col. Mastriano to public hatred, ridicule, contempt and disgrace through his public criticism of Col. Mastriano's academic work. These statements were communicated publicly by Kuhn, in presentations, online research journals available to the entire world, and newspaper articles distributed both in the mails and online.

Plaintiff has established each of the required elements of libel under Oklahoma law. Oklahoma state statute defines libel as:

> [A] false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends. 12 O.S. § 1441.

Defendant Kuhn knowingly made a false and malicious publication by writing via a newspaper article and online academic journal. Additionally, in June of 2023, defendant made a presentation titled, "The Mastriano PhD Scandal at UNB," in which he directly called out Col. Mastriano. Defendant Kuhn exposed Col.

Mastriano to of public ridicule and contempt and deprived him of public confidence, and he did so referencing UNB's and Gregory's public attack on Col. Mastriano. These publications were made during Senator Mastriano's campaign for a United States Senate seat in Pennsylvania and his office, Senate chairmanship over Veteran's Affairs, and election as state senator.

The publications were made with malicious intent to deprive Col. Mastriano of any credibility and destroy his reputation as an esteemed academic, military historican and politician. Defendants' motion to dismiss must be denied.

## III.    REQUEST FOR LEAVE TO AMEND COMPLAINT

Col. Mastriano incorporates herewith his accompanying motion for leave to amend his complaint.  Generally, courts should grant a party leave to amend unless there is a showing that doing so would produce "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

As set forth above in detail below, pursuant to Federal Rule of Civil Procedure 15(a)(2), Col. Mastriano respectfully requests this Court to grant him leave to amend the Complaint after Col. Mastriano's receipt of all Defendants' motions to dismiss

to remedy any insufficiencies identified by those motions. Doing so would not produce any of the effects warranting denial of such amendment.

## IV.    CONCLUSION

WHEREFORE, based on the reasoning above, Col. Mastriano respectfully requests this Court to deny Kuhn's Motion to Dismiss and Brief in Support and to grant Col. Mastriano leave to amend the Complaint to the extent of any insufficiency.

Respectfully submitted,

THE COX LAW CENTER, LLC
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
E-mail: dcox@coxlawcenter.com

### CERTIFICATE OF SERVICE

This is to certify on this 6th day of December, 2024, that a copy of the foregoing was served on counsel of record via CM/ECF.
_____/s/_____
Daniel L. Cox