IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Douglas Mastriano | : CIVIL NO. 5:24-cv-00567-F |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| James Gregory, III, *et al* | : |
| | : |
| Defendants. | : |

**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorneys, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendants' motions to dismiss and briefs in support, incorporating his prior responses in opposition and, pursuant to Federal Rule of Proc. 15(a)(2) and LRvR15.1, filing this Motion for Leave to Amend the Complaint in Opposition to Defendants' Motions to Dismiss, requesting denial of Defendants' motions and grant of leave for Plaintiff to amend his Complaint, saying:

**I.   INTRODUCTION**

Pursuant to LRvR15.1, no scheduling order has issued yet setting a date in this case for amendments of pleadings. Additionally, counsel has inquired of defense counsel and all have objected to both filing this motion for leave to amend and amending the complaint, except for counsel for NRC, who does not object to the motion nor amending out NRC.

Col. Mastriano respectfully requests this Court to deny Defendants' respective motions to dismiss and to grant Col. Mastriano leave to amend his Complaint as set forth in the attached Amended Complaint to remedy any issues raised by Defendants in their

respective motions to dismiss. This Court should do so for the reasons set forth below. Further, Defendants' arguments regarding certain of Col. Mastriano's claims do not raise sufficient grounds to dismiss those claims, and to the extent there are any insufficiencies in the Complaint regarding any claim, Col. Mastriano's amendment of his Complaint can remedy such insufficiencies. Exhibit A, proposed Amended Complaint, attached hereto. The Complaint and proposed Amended Complaint are well-pleaded, having set forth sufficient facts to provide at least reasonable notice to Defendants of the claims brought against them. Therefore, Col. Mastriano respectfully requests this Court grant him leave to do so. Justice necessitates granting Col. Mastriano leave to amend his Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

## II.   ARGUMENT

Plaintiff's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, Plaintiff's Response in Opposition to Defendant Kuhn's Motion to Dismiss and Brief in Support, and Plaintiff's Response in Opposition to UNB Defendants' Motion to Dismiss and Brief in Support are hereby incorporated as if set forth fully herein. Additionally, this Court should deny Defendants' respective motions to dismiss and grant Col. Mastriano leave to amend his complaint because the Complaint sufficiently alleges RICO, Sherman Antitrust Act, tort and defamation causes of action; and the proposed amended Complaint includes one additional count, Oklahoma common law cause of action False Light Invasion of Privacy. Additionally, to the extent the Complaint has any deficiency in pleading these allegations, any deficiency is remediable by granting Col.

Mastriano leave to amend. Granting such leave pursuant to FRCP 15(a)(2) is not precluded by any disqualifying reason.

### A.  The Amended Complaint Sufficiently Alleges RICO Counts

#### 1.  Amended Complaint Sufficiently Alleges RICO Violation

##### a.  Defendants Engaged in Multiple Acts of Mail and/or Wire Fraud Predicate Acts

Defendants argue that Col. Mastriano's Complaint does not sufficiently allege a pattern of predicate racketeering acts for his RICO claim. However, the Complaint, including as amended, does sufficiently allege such pattern. The Complaint alleges multiple acts of mail and/or wire fraud and deprivation of Col. Mastriano's tangible and intangible property by Defendants— which are RICO predicate acts. 18 U.S.C. § 1961(1). As amended, the Complaint specifically alleges that Gregory filed a series of false and/or fraudulent complaints with UNB beginning in 2019 and that his initial complaint was dismissed as meritless by UNB (thus proven false). (Am. Compl. at ¶27). Despite this, Gregory continued filing complaints and UNB continued to publicly open and later close investigations into Col. Mastriano's Ph. D. thesis without further action as a result—with timing of these investigations coming immediately before Col. Mastriano's respective political elections. (Am. Compl. at ¶28–40). Further, as amended, the Complaint notes specific examples of false and/or fraudulent statements by Defendants that were publicly disseminated via the internet, including Gregory's statements in October 2022 – just days before the 2022 gubernatorial election where Col. Mastriano was the GOP nominee for Governor in a competitive race, that Col. Mastriano's citations and Ph. D. work were

"fraudulent," Gregory and Brown's statements in July or August 2023 that Col. Mastriano and his Ph. D. work were a "fraud," Brown's statements in October 2022 that he raised red flags on the dissertation committee and was embarrassed to take part in giving Col. Mastriano his Ph.D., and UNB Defendants' statements in Exhibit 4's letter of denouncement implying that Col. Mastriano had personally committed hate crimes and harbored views leading to murder (Am. Compl. at ¶ 32–33, 52, 44). Kuhn also made false and/or fraudulent statements regarding Col. Mastriano and his Ph. D. thesis in his published article and during an academic integrity symposium from around June to July 2023, including that Col. Mastriano was a "participant in . . . an invasion of the U.S. Capitol." (Am. Compl. at ¶53). These statements have not been retracted and remain disseminated to the public. (Am. Compl. at ¶44, 56). These actions against Col. Mastriano caused him serious harm, including but not limited to a reduction in his printing contract and book sales through University of Kentucky for his WWI historical work because the University of Kentucky received complaints by Gregory, loss of speaking engagements, outrageously with malice aforethought interfered with his elections for governor in 2022 and U.S. Senator in 2023, and sought to deprive him of his PhD. (Am. Compl. at ¶41, 69).

Consequently, the pattern of multiple predicate acts of mail and/or wire fraud by Defendants is specifically and sufficiently alleged by the Complaint's inclusion of time, place, manner, and contents of false and/or fraudulent statements, details and causal relationship of Defendants' actions, and injury to Col. Mastriano.

        **b.**      **Defendants Joined Together in RICO Enterprise Against Col. Mastriano**

4

Defendants argue that Col. Mastriano's Complaint does not sufficiently allege their joining together in a RICO enterprise. However, as argued in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, interpersonal relationships among UNB Defendants and Individual Defendants are specifically alleged in the Complaint. Here, Col. Mastriano alleges in the Complaint that Gregory is an Oklahoma history professor as well as Ph. D. student who communicated with UNB by filing false complaints with UNB from 2019 to 2023, and that as a result of Gregory's actions, UNB Defendants launched a series of public fraudulent investigations into Col. Mastriano's Ph. D. work from 2022 to 2023 and along with Individual Defendants made multiple false and/or fraudulent statements to the world through various means regarding Col. Mastriano and his Ph. D. work from 2022 to 2023. (Am. Compl. at ¶27–40, 52). Further Col. Mastriano alleges in the Complaint that Defendant Kuhn, a self-proclaimed mentor of student interns focusing on academic integrity and sitting on Ph. D. committees, joined with Gregory to advance the fraudulent scheme, endorsing Gregory as a "respected historian" who "found instances of fraud" in Col. Mastriano's Ph. D. thesis. (Am. Compl. at ¶9, 53).

A common purpose among Defendants has been sufficiently alleged by the Complaint. Here, Col. Mastriano alleges in the Complaint that Defendants joined together in a concerted effort to destroy Col. Mastriano's Ph. D. work and academic reputation in order to defraud him his Ph. D. property and related interests as well as interfere with his elections in gubernatorial and senatorial races in Pennsylvania. (Am. Compl. at ¶27, 53, 60, 69, 75, 99). Gregory stood to benefit because at the time of this enterprise, he was

5

working to publish a competing historical work for his own Ph. D. (Am. Compl. at ¶22, 61). Implicitly, UNB Defendants and Kuhn stood to benefit from its actions against Col. Mastriano by popular media attention and increased tuition enrollment (for UNB) by their actions against a political figure who they identified with President Donald J. Trump in certain academic circles, causing Col. Mastriano to serve as their international "whipping post" all in order to advance a scheme of deprivation of his tangible and intangible property and ensure anyone – all PhD academics – were on notice to distance themselves from Col. Mastriano, decimating his career, his good will, and his life. (Am. Compl. at ¶ 25). Implicitly, for the same reason, all Defendants stood to benefit through property interests that came from attacking Col. Mastriano. (Am. Compl. at ¶ 25). Not only did UNB Defendants and Gregory stand to benefit, but at least implicitly, all Defendants also had a common partisan political purpose in that they all joined in interfering with Col. Mastriano's elections through their actions. Further, as amended, the Complaint alleges that there was a concerted effort among UNB Defendants and Gregory to commit mail and/or wire fraud by joining together to make false and/or fraudulent statements about Col. Mastriano on radio around July or August 2023 and the causal relationship between Gregory's complaints, the UNB investigations, the UNB defendants defamation and false light of Col. Mastriano, and the unlawful release of his embargoed thesis. (Am. Compl. at ¶¶27–40, 52). In sum, the Complaint as amended sufficiently alleges a RICO enterprise among Defendants with common purpose and interpersonal relationships among them.

    **c.**  **Defendants' RICO Activities Caused Injury to Col. Mastriano**

Defendants argue that Col. Mastriano's Complaint does not sufficiently allege injury for RICO. General factual allegations are sufficient to allege damages in a RICO claim at the pleadings stage. *See Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). As noted in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, the Complaint alleges that as a result of Defendants' RICO violations, Col. Mastriano suffered severe damages to his property interests in his Ph. D. work and damages to his business interests in relation to economic opportunities stemming from his Ph. D. work and academic reputation—both specifically including loss of international book sales, appearances, speaking opportunities, teaching and professorship opportunities, and movie and television opportunities. (Am. Compl. at ¶22, 41, 49, 65). The factual allegations regarding damages set forth in the Complaint are sufficient at this stage of litigation under *Robbins*. Further, Col. Mastriano alleges in the Complaint facts showing Defendants' actions set forth above caused these damages. Here, Col. Mastriano alleges in the Complaint that as a direct result of Gregory's complaints to UNB and University of Kentucky, Col. Mastriano's book sales declined and the University of Kentucky reduced printing of Col. Mastriano's book accordingly. (Am. Compl. at ¶22, 41, 69).

### 2.    Amended Complaint Sufficiently Alleges RICO Conspiracy

#### a.    Defendants Knowingly Entered into RICO Conspiracy Agreement

The element of agreement in a RICO conspiracy may be proven exclusively by circumstantial evidence. *See United States v. Hampton*, 786 F.2d 977, 979 (10th Cir. 1986).

As noted in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, the Amended Complaint alleges that UNB released Col. Mastriano's Ph. D. thesis from embargo against his wishes and in violation of law; Gregory filed complaints regarding that thesis to UNB from 2019-2023; Gregory made false and/or fraudulent statements to the press regarding that thesis in 2022; certain UNB Defendants also made false and/or fraudulent statements to the press in 2022 regarding that thesis and the launching of an investigation; and Gregory filed complaints regarding that thesis to University of Kentucky (likely using that thesis released by UNB), causing loss sales and reduction of printing of Col. Mastriano's book. (Am. Compl. at ¶ 13, 27–42, 46, 60, 69). Kuhn also made false and/or fraudulent statements regarding that thesis at a Canadian symposium. (Am. Compl. at ¶52–53). Additionally, as alleged in the Amended Complaint, there was a concerted effort among UNB Defendants and Gregory to commit mail and/or wire fraud by joining together to make false and/or fraudulent statements about Col. Mastriano on American radio around July to August 2023 and a causal relationship between Gregory's complaints and UNB's investigations. (Am. Compl. at ¶52, 27–40). Here, the facts alleged in the Complaint present circumstantial evidence from which it may be reasonably inferred that there was an unlawful agreement pursuant to a RICO conspiracy—Gregory filed complaints with UNB about Col. Mastriano's thesis, UNB launched an investigation into the thesis, Defendants acted in parallel and in concert with fraudulent and/or false statements on radio and to the press about that thesis and Col. Mastriano personally, and Gregory directly utilized UNB's release of that thesis in his own work debunking Col. Mastriano's work and likely in filing complaints with University of

8

Kentucky. (Am. Compl. at ¶22, 27–42, 69). The agreement in this case involved the commission of numerous RICO predicate acts of wire and mail fraud, which are established by false and/or fraudulent communication to the press, University of Kentucky, and others by Defendants using various media over a period of years.

### B. Amended Complaint Sufficiently Alleges 15 U.S.C. § 1 Unreasonable Restraint of Trade

#### 1. Defendants' Concerted Actions Were Anti-Competitive, Harming WWI History Product Market

Defendants claim that their actions did not cause an anti-trust injury by harming competition generally. As argued in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, Gregory's wrongful and illegal actions as part of the RICO conspiracy with other Defendants harmed competition in the WWI history market by promoting his own competing historical work, book(s), speaking events and theory at the expense of Col. Mastriano's. Gregory's particular actions of making false and/or fraudulent statements to the press about Col. Mastriano's competing historical work (a product in the WWI history market) and filing false complaints with UNB and University of Kentucky about that work harmed competition in the WWI history market because Col. Mastriano's historical work product was destroyed as a result of these actions in furtherance of the RICO conspiracy. (Am. Compl. at ¶22, 41–42, 61, 83, 96, 98). This destruction, which harmed competition in the WWI history market through wrongful and illegal actions, occurred through devaluation of Col. Mastriano's historical work from the scandal created by Gregory's and other Defendants' actions in making false and/or fraudulent statements and launching fraudulent investigations, the reduction of book sales

9

and printing through Gregory's false complaints, and at least implicitly, the undermining of Col. Mastriano's academic reputation as a WWI historian. (Am. Compl. at ¶ 22, 27–42, 71, 132, 140).

### 2. Defendants' Actions Restrained Trade Generally

Defendants claim that Col. Mastriano's Complaint has not alleged a general restraint on trade. As stated in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, the Complaint alleges a significant international market for WWI history products. (Am. Compl. at ¶ 84–86). Not only were Col. Mastriano's own property and business interests harmed, but also the market for WWI history products itself was naturally harmed by a general restraint on trade of WWI history products through the devaluation and reduction of Col. Mastriano's WWI historical work in this market. (Am. Compl. at ¶ 22, 41, 69, 70, 85–88, 132). This is because the market was deprived of a valuable, high-demand product as a result of Gregory's and other Defendant's illegal, anti-competitive actions rather than legitimate consumer demand. (Am. Compl. at ¶ 83–88). Therefore, as alleged by the Complaint, because of these actions, a fraud was perpetrated on the WWI history product market that unreasonably restrained trade generally in this market. (Am. Compl. at ¶ 22, 83–88).

### 3. WWI History Market Is A Defined Market

Defendants argue that Col. Mastriano's Complaint has not sufficiently defined a market for his anti-trust claims. As set forth in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, in order to state a claim for a violation of 15 U.S.C. § 1, the plaintiff must allege facts establishing (1) that the

10

defendant contracted, conspired, or combined (2) in a manner that unreasonably restrains trade in the relevant market. *TV Communications Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992). To establish a relevant market, the plaintiff must define the product and geographic markets, defining the former in terms of reasonable interchangeability and cross-elasticity of demand. In doing so, the defined market must not be underinclusive but must reflect the total demand for the plaintiff's product. *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008). Here, Col. Mastriano alleges in the Complaint both the product and geographic markets for his WWI historical product, as he describes the market to be residents, educational institutions, and bookstores located across the globe with concentration in Europe and the United States of America. (Am. Compl. at ¶84, 86). Consequently, Col. Mastriano sufficiently defines the relevant market for his 15 U.S.C. § 1 claim.

### C.   Amended Complaint Sufficiently Alleges Defamation

Defendants claim that Col. Mastriano's Complaint has not sufficiently alleged facts for defamation and that Col. Mastriano's claim is barred by OCPA's statute of limitations as against certain Defendants. However, as argued in his Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, the Complaint sufficiently alleges these facts with the Amended Complaint.

#### 1.   Defendants Made Numerous False and/or Fraudulent Statements

As set forth above and in the Amended Complaint, Defendants made various false and/or fraudulent statements across different media regarding Col. Mastriano and his Ph.

D. thesis. *See supra* discussion in Section II.A.1.a. The Amended Complaint specifically alleges the content, time, place, and manner of these statements, as shown above. *See id.*

### 2. Defendants Acted with Actual Malice in Making Statements

Defendants acted with actual malice in making false and/or fraudulent statements against Col. Mastriano because they acted with knowledge of the falsity of the statements or with reckless disregard as to the falsity. In fact, in October 2022, Gregory continued to call Col. Mastriano's work "fraudulent" to media even after UNB expressly dismissed his initial complaint (his complaint allegations thus being proven false) and stated no formal investigation into Col. Mastriano's thesis was required as the only error was mere honest mistake. (Am. Compl. at ¶27; Exhibit 6). Nonetheless, Gregory and other Defendants persisted in the fraudulent open and closed investigations into the thesis and the making of false and/or fraudulent statements to various media against Col. Mastriano and his thesis from 2022 to summer 2023. (Am. Compl. at ¶27–44).

### 3. Defendants' Statements Were Relied on Such That Col. Mastriano Was Injured

Persons did rely upon Defendants' various false and/or fraudulent statements, as is shown by University of Kentucky's reduction of Col. Mastriano's book printing, depression of book sales, and loss of various opportunities by Col. Mastriano in relation to his work as a military historian during and after Defendants' actions. (Am. Compl. at ¶22, 41).

### 4. Col. Mastriano's Claim Is Not Barred by Statute of Limitations

As argued in Col. Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss and Brief in Support, Gregory joined with Brown to speak on a radio show in Harrisburg, PA around July to August 2023, wherein both Defendants made false and/or fraudulent statements regarding Col. Mastriano and his Ph. D. thesis. (Am. Compl. at ¶52).

Under Federal Rule of Civil Procedure 15(c)(1)(B), an amendment that asserts a claim arising out of the same transaction, conduct, or occurrence that was set out or attempted to be set out in the original pleading relates back to the date of that pleading. Fed. R. Civ. P. 15(c)(1)(B). Here, the defamatory statements by Gregory and Brown were a part of the same transaction and conduct alleged as part of the scheme against Col. Mastriano involving RICO conspiracy, RICO violations, and defamation by Gregory and other Defendants. Further, these statements were made less than one year after the filing of the Complaint on May 31, 2024; therefore, under Federal Rule of Civil Procedure 15(c)(1)(B)'s relation back rule, the OCPA statute of limitations does not bar Col. Mastriano's defamation claim.

### D. In Absence of Opposing Reasons, Leave to Amend Complaint Should Be Granted Pursuant to FRCP 15(a)(2)

Generally, courts should grant a party leave to amend unless there is a showing that doing so would produce "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Col. Mastriano respectfully requests this Court to grant him leave to amend the Complaint after Col. Mastriano's receipt of all Defendants' motions to dismiss to remedy any insufficiencies identified by those motions. Doing so would not produce any of the effects warranting denial of such amendment. This is because there is no undue delay, as the Amended Complaint sets forth the proposed amendments and is attached hereto; there is no demonstrated prejudice to Defendants; this Motion for Leave to Amend is made in good faith; there has not yet been any allowed amendments permitting Col. Mastriano to cure any deficiencies; and as demonstrated above, this Motion for Leave to Amend is not futile. Additionally, the Complaint has been well-pleaded, giving reasonable notice of Col. Mastriano's claims against Defendants.

### III. CONCLUSION

WHEREFORE, for the above-mentioned reasons, Col. Mastriano respectfully requests that this Court deny Defendants' respective motions to dismiss and grant him leave to amend the Complaint according to the attached Amended Complaint to remedy any insufficiency identified by Defendants in their respective motions to dismiss.

Respectfully submitted,

The Cox Law Center, LLC
By: _____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727

Ph: 410-254-7000  
Fx: 410-254-7220  
E-mail: dcox@coxlawcenter.com

**CERTIFICATE OF SERVICE**

This is to certify on this 17th day of January, 2025, that a copy of the foregoing was served on counsel of record via CM/ECF.

_____/s/_____
Daniel L. Cox