## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

*PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council
of Canada, Paul Mazerolle, President and
Vice-Chancellor, University of New
Brunswick, Canada; David MaGee, Vice-
President, Research; Drew Rendall, Dean,
Graduate Studies; Jeff Brown; Cindy Brown;
Stephen Dutcher; Sean Kennedy; Erin
Morton; Mattew Sears; Lee Windsor; Stefanie
Hunt-Kennedy; Carolyn MacDonald; Sasha
Mullaly; Lisa Todd; Sarah-Jane Corke;
Bonnie Huskins; Elizabeth Mancke; Janet
Mullin; Angela Tozer; Margaret MacMillan;
Robert Bothwell; John Ferris;
  -   *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

*DEFENDANTS*.

Case No.: 5:24-cv-00567-J

Assigned to the Hon. Bernard M. Jones

**UNB'S MOTION TO DISMISS
PLAINTIFF'S AMENDED
COMPLAINT AND BRIEF IN
SUPPORT AND JOINDER TO THE
INDIVIDUAL UNIVERSITY
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................. **Error! Bookmark not defined.**

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .... **Error! Bookmark not defined.**

    A.    The Plaintiff and the University Defendants ....... **Error! Bookmark not defined.**

    B.    The Underlying Dispute and The Alleged "Scheme" ........ **Error! Bookmark not defined.**

    C.    Procedural History ............................................................................. 5

III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB **Error! Bookmark not defined.**

    A.    UNB Is A "Foreign State" Within The Meaning Of FSIA. **Error! Bookmark not defined.**

        1.    New Brunswick Created UNB For A Public Purpose .... **Error! Bookmark not defined.**

        2.    New Brunswick, Its Officials, And Its Voters Actively Supervise UNB .. **Error! Bookmark not defined.**

        3.    New Brunswick Requires The Hiring Of Public Employees At UNB ..... **Error! Bookmark not defined.**

        4.    New Brunswick Affords Exclusive Rights To UNB And Its President .... **Error! Bookmark not defined.**

        5.    New Brunswick Law Treats UNB As A Public Institution ... **Error! Bookmark not defined.**

    B.    No Exceptions to the Immunity Provided by the FSIA Apply .......................... 17

        1.    The waiver exception does not apply as Plaintiff has failed to provide evidence establishing either an express or implied waiver ............................ 17

        2.    The commercial activity exception does not apply as Plaintiff has failed to provide evidence of commercial activities ...................................................... 19

        3.    The expropriation exception does not apply as Plaintiff has failed to show that UNB "took" property from him........................................................................ 21

4.    The tortious acts exception does not apply as Plaintiff does not allege tortious acts in the United States..................................................................................24

IV.    THIS COURT LACKS PERSONAL JURISDICTION OVER UNB....................25

A.    This Court Does Not Have General Jurisdiction Over UNB ..............................26

B.    This Court Does Not Have Specific Jurisdiction Over UNB .. **Error! Bookmark not defined.**

1.    The University Defendants do not have sufficient minimum contacts with the forum..........................................................................................................27

a.    There are no allegations that UNB purposefully directed its activities at the United States...................................................................................28

b.    There are no allegations that UNB purposefully directed its activities at Oklahoma ........................................................................................31

2.    The exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice .................................................................31

V.    PLAINTIFF FAILS TO STATE A CLAIM ...........................................................35

VI.    CONCLUSION ....................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**United States Cases**

*Adkins v. Rectors & Visitors of George Mason Univ.*,
No. 1:15CV879 .................................................................................. 13

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428, 109 S. Ct. 683 (1989)........................................... 24

*Asahi Metal Indus. Co. v. Superior Court of Calif.*,
480 U.S. 102 (1987) .......................................................... 27, 32, 34

*Asociacion de Reclamantes v. United Mexican States*,
735 F.2d 1517 (D.C. Cir. 1984) ........................................... 23-24

*Benton v. Cameco Corp.*,
375 F.3d 1070 (10th Cir. 2004) ........................................... 32, 34

*Brickner v. Gooden*,
525 P.2d 632 (Okla. 1974) ......................................................... 33

*Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*,
89 F.3d 650 (9th Cir. 1996) ......................................................... 8

*Cory v. Aztec Steel Bldg., Inc.*,
468 F.3d 1226 (10th Cir. 2006) ............................................... 27

*Cutcliffe v. Univ. of Ulster*,
No. 1:12-CV-00193-DBH, 2013 WL 682842 (D. Me. Feb. 5, 2013) .................. 14, 17

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
946 F.3d 1223 (10th Cir. 2020) ............................................... 28

*Doe v. Fed. Democratic Republic of Ethiopia*,
189 F. Supp. 3d 6 (D.D.C. 2016), *aff'd on other grounds*, 851 F.3d 7
(D.C. Cir. 2017) ......................................................................... 24

*Eighteen Seventy, LP v. Jayson*,
32 F.4th 956 (10th Cir. 2022) ........................................... 26, 28, 30

*Fed. Ins. Co. v. Indeck Power Equip. Co.*,
No. CIV-15-491, 2016 WL 3676803 (W.D. Okla. July 7, 2016) ............... 33

*Hansen v. PT Bank Negara Indonesia (Persero), TBK,*
   601 F.3d 1059 (10th Cir. 2010) ............................................................6-7, 17

*Hood v. Am. Auto Care, LLC,*
   21 F.4th 1216 (10th Cir. 2021) ................................................................ 26

*Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,*
   205 F.3d 1244 (10th Cir. 2000) ............................................................... 32

*Intercontinental Dictionary Series v. De Gruyter,*
   822 F. Supp. 662 (C.D. Cal. 1993) ..................................................... 10, 24

*Irizarry-Mora v. Univ. of Puerto Rico,*
   647 F.3d 9 (1st Cir. 2011) .................................................................. 10, 14

*Jam v. Int'l Fin. Corp.,*
   586 U.S. 199, 139 S. Ct. 759 (2019) ........................................................ 20

*Kashani v. Purdue Univ.,*
   813 F.2d 843 (7th Cir. 1987) ............................................................. 12, 14

*Kelly v. Syria Shell Petroleum Dev. B.V.,*
   213 F.3d 841 (5th Cir. 2000) .................................................................... 8

*Lotus Foods Bos., LLC v. Go Fresh 365, Inc.,*
   No. 2:23-CV-01859-MJH, 2023 WL 8836461 (W.D. Pa. Dec. 21, 2023)................. 30

*Med. Corp. v. McGonigle,*
   955 F.Supp. 374 (E.D.Pa. 1997) ............................................................... 8

*Monge v. RG Petro-Mach. (Grp.) Co.,*
   701 F.3d 598 (10th Cir. 2012) ................................................................ 28

*OBB Personenverkehr AG v. Sachs,*
   577 U.S. 27, 136 S. Ct. 390 (2015).......................................................... 6

*O'Bryan v. Holy See,*
   556 F.3d 361 (6th Cir. 2009) ................................................................. 23

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,*
   149 F.3d 1086 (10th Cir. 1998) ................................................26-27, 32-34

*Patterson v. Rural Water Dist. 2,*
   438 F. Supp. 3d 1258 (W.D. Okla. 2020) .................................................... 7

*Persinger v. Islamic Republic of Iran*,
    729 F.2d 835 (D.C. Cir. 1984) ................................................................................ 24

*Rep. of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ............................................................................................... 19

*In re Rivera Torres*,
    432 F.3d 20 (1st Cir. 2005) .................................................................................... 18

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ............................................................................................... 17

*Shapiro v. Republic of Bolivia*,
    930 F.2d 1013 (2d Cir. 1991) ................................................................................. 18

*Supra Med. Corp. v. McGonigle*,
    955 F.Supp. 374 (E.D.Pa. 1997) .............................................................................. 8

*Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority*,
    325 F.Supp.2d 15 (D.R.I. 2004) ............................................................................. 18

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 109 (2d Cir. 2013) ................................................................................... 23

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*,
    488 F.3d 1282 (10th Cir. 2007) ......................................................................... 32, 34

*TIG Ins. Co. v. Republic of Argentina*,
    110 F.4th 221 (D.C. Cir. 2024) .......................................................................... 18-19

*United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*,
    821 F. Supp. 1405 (D. Colo. 1993), *aff'd*, 33 F.3d 1232 (10th Cir. 1994) ................. 27

*Watson v. Univ. of Utah Med. Ctr.*,
    75 F.3d 569 (10th Cir. 1996) .................................................................................. 12

*World–Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ............................................................................................... 27

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
    296 F.3d 1154 (D.C. Cir. 2002) .............................................................................. 18

*XMission, L.C. v. Fluent LLC*,
    955 F.3d 833 (10th Cir. 2020) ............................................................................ 28-30

**Decisions of the Commissioner to the Visitor of the University of New Brunswick**

*Isaac v. University of New Brunswick*,
     1992 CarswllNB 417 (Nov. 25, 1992) .............................................................. 9, 11, 35

**Federal Statutes**

18 U.S.C. § 1965 ......................................................................................................... 26

28 U.S.C. § 1602 ........................................................................................................... 6

28 U.S.C. § 1603 ........................................................................................................ 7, 9

28 U.S.C. § 1604 ........................................................................................................... 7

28 U.S.C. § 1605 ............................................................................................. 17-19, 21-23, 25

28 U.S.C. § 1608 ......................................................................................................27-28

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 4 ......................................................................................................... 27

Fed. R. Civ. P. 12................................................................................................ 1, 2, 7, 25, 35

**United Kingdom Statutes**

Canadian Constitution Act, 1867, 30 & 31 Victoria c. 3................................................... 8

**New Brunswick Statutes**

23 Victoria – Chapter 63 (1859) ...............................................................................8-9, 11

An Act to Appoint Lord Beaverbrook Honorary Chancellor of the
     University of New Brunswick, SNB 1954................................................................... 13

Assessment Act, RSNB 1973, c A-14 ............................................................................. 15

Expenditure Management Act, 1991, SNB 1991, c E-13.1 ............................................... 16

Interpretation Act, RSNB 1973 ..................................................................................... 12

Maritime Forestry Complex Corporations Act, RSNB 2012, c 108 ................................. 16

Order of New Brunswick Act, SNB 2000, c O-5.01 ........................................................ 15

Right to Information and Protection of Privacy Act, SNB 2009, c R-10.6 ...................... 16

Procurement Act, RSNB 2012, c 20...................................................................... 16

The University of New Brunswick Act, SNB 1984, c 40 ("UNB Act") ........... 8, 13, 15, 35

**New Brunswick Regulations**

Goods and Services Regulation, NB Reg 2014-93 ............................................. 16

**Secondary Sources**

Alexa Ashworth, *et al.*, *Limitation to tortious acts and injuries occurring in
    United States*, 13A Fed. Proc., L. Ed. § 36:511 ........................................... 24

NOW COMES the University of New Brunswick (identified in the Complaint as "University of New Brunswick, Canada," and referred to herein as "UNB"), by its undersigned counsel, and respectfully submits this Motion to Dismiss the Amended Complaint of Plaintiff Douglas Mastriano ("Plaintiff"), Brief in Support, and Joinder to the Motion to Dismiss filed by the Individual University Defendants. For the reasons stated herein and in the Individual University Defendants' Motion to Dismiss, which are incorporated by reference, this Court should dismiss the Amended Complaint *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). In support of its Motion, UNB states as follows:

## I. <u>INTRODUCTION</u>

This is a dispute over academic protocol that should be resolved by an educational committee but instead has been dressed up as an international conspiracy. As alleged in Plaintiff's Amended Complaint, he received a Ph.D. from UNB, and years later, questions were raised as to the credibility of Plaintiff's research that served as the basis for his doctoral thesis, and UNB investigated those same questions. (Doc. # 133 at ECF pp. 13, 27). However, according to Plaintiff, this exercise in academic analysis and protocol constituted racketeering, anti-trust violations, and an endless parade of horribles that caused Plaintiff unspecified economic harm.

While UNB vehemently denies the allegations brought against it, the threshold issue for the Court to decide is whether the Court has jurisdiction over UNB. It does not. As an instrumentality of the Canadian government, UNB is entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"), and thus this Court lacks subject matter

jurisdiction over the claims asserted.  Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(1), all claims against UNB should be dismissed.

Additionally, this Court lacks personal jurisdiction over UNB.  As alleged in Plaintiff's Amended Complaint, UNB is located in Canada, and all of the purported conduct at issue occurred there.  (*Id.* at ECF pp. 8, 11).  The Amended Complaint contains no allegations that UNB purposefully directed any activities toward the State of Oklahoma – indeed, Plaintiff himself is a resident of Pennsylvania.  Oklahoma has no meaningful connection to this dispute and no legitimate interest in adjudicating claims between a Canadian university and a Pennsylvania plaintiff.  Requiring UNB to litigate this matter in Oklahoma would offend traditional notions of fair play and substantial justice.  Thus, pursuant to Fed. R. Civ. P. 12(b)(2), this Court should dismiss all claims against UNB.

Finally, even if the Court were to have jurisdiction, and even accepting all of Plaintiff's disorganized and speculative allegations as true, Plaintiff has nonetheless failed to state a legally cognizable claim against UNB.  Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), all claims brought by Plaintiff against UNB should be dismissed *with prejudice*.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

For the purposes of this Motion to Dismiss, UNB has generally presented the facts alleged in Plaintiff's Amended Complaint.  UNB does not admit that these facts are true and expressly reserves the right to challenge these facts in this litigation.

### A.    The Plaintiff and the University Defendants

In 2013, UNB awarded Plaintiff a Ph.D. in military history.  (*Id.* at ECF p. 6). Plaintiff has since published books, written several articles, and given historical lectures or

presentations. (*Id.* at ECF p. 3). Plaintiff is currently a Pennsylvania State Senator and has run for other political positions in Pennsylvania. (*Id.* at ECF p. 6).

Defendant UNB is a public university located in Fredericton, New Brunswick, Canada. (*Id.* at ECF p. 8). Defendant Paul Mazerolle is allegedly the president of UNB. (*Id.* at ECF p. 7). Defendant David MaGee is allegedly the Vice President and Director of Research at UNB. (*Id.*). Defendant Drew Rendall is allegedly the Dean of Graduate Studies at UNB. (*Id.* at ECF pp. 6-7; in fact, he is the past Dean of Graduate Studies).

Defendant Jeffrey Brown is allegedly a history department professor at UNB who allegedly served on the dissertation approval board for Plaintiff's Ph.D. (*Id.* at ECF p. 7). In addition to Dr. Brown, Defendants Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, Elizabeth Mancke, Janet Mullin, and Angela Tozer allegedly are also current or former history professors, faculty or instructors at UNB (these aforementioned individuals are collectively referred to as the "Individual University Defendants" and when referenced in conjunction with UNB, they are collectively referred to as the "University Defendants"). (*Id.* at ECF p. 7). Plaintiff alleges that the addresses for all the Individual University Defendants are in New Brunswick, Canada. (*Id.* at ECF p. 8).

### B.    The Underlying Dispute and The Alleged "Scheme"

In 2019, James Gregory, a graduate student at the University of Oklahoma. (*Id.* at ECF p. 6), allegedly joined with "unnamed persons" to debunk Plaintiff's academic

research pertaining to the topic of Plaintiff's Ph.D. thesis. (*Id.* at ECF pp. 10-11). Mr. Gregory allegedly called Plaintiff's work on this topic a "fraud." (*Id.* at ECF p. 10).

At the time that Mr. Gregory brought allegations against Plaintiff's academic research, Plaintiff's Ph.D. thesis was "embargoed," meaning that it was not available to the public. Plaintiff requested that UNB continue the embargo until 2030. On July 11, 2022, Dr. Rendall is alleged to have written to Plaintiff denying his request to keep his thesis embargoed. In his letter to Plaintiff, Dr. Rendall explained that UNB's guidelines provided for a maximum embargo duration on a graduate thesis for only four years. Therefore, the embargo on Plaintiff's thesis would "be removed, effective immediately, in order to uphold long-standing policy and ensure appropriate accessibility of publicly funded research and scholarly activity." (*Id.* at ECF p. 11; Doc. # 133-1 at p. 2).

In 2022, Mr. Gregory is alleged to have filed a "false" complaint with UNB, again raising questions about the validity of the research contained in Plaintiff's thesis. (Doc. # 133 at ECF p. 11). In or about October 2022, UNB allegedly opened an investigation into Plaintiff's Ph.D. based on the issues raised in Gregory's complaint. (*Id.* at ECF p. 13). Around the same time period, Dr. Brown allegedly made "fraudulent" statements to the American press referring to Plaintiff's Ph.D. research. (*Id*. at ECF p. 12). UNB, Dr. Mazerolle, and Dr. MaGee also allegedly made statements to the press calling into question Plaintiff's thesis and books and informing the world that they had opened an investigation. (*Id.* at ECF pp. 12-13). Finally, Mr. Gregory also allegedly made a complaint to the University of Kentucky, Plaintiff's publisher, which allegedly led the University of Kentucky to lose sales and scale back printing of Plaintiff's books. (*Id*. at ECF p. 14).

4

In 2023, several Individual University Defendants allegedly signed a "public letter of denouncement" concerning Plaintiff that was allegedly disseminated via social media across the United States and via email to UNB students and alumni. (*Id.* at ECF pp. 14-15; *see* Doc. # 133-4). Plaintiff also alleges that Dr. Brown led unidentified others in disseminating unspecified Facebook posts, e-mails, and letters to students, colleagues, and the world in a "bad faith effort to repeatedly open and close so-called investigations in [Plaintiff's] dissertation work." (*Id.* at ECF p. 14-15).

Plaintiff alleges that, through these actions, the University Defendants advanced a "RICO scheme" that deprived Plaintiff "from having open doors for opportunities to teach at Universities, continued the depression of his book sales and interfered with his election campaign for the United States Senate." (Doc. # 133 at ECF pp. 16-17).

### C.    Procedural History

On May 31, 2024, Plaintiff filed his Complaint. (Doc. # 1). On July 16, 2024, Plaintiff attempted to serve the University Defendants, except Janet Mullin, by delivering Summonses and the Complaint to UNB's President's Chief of Staff. (Doc. # 8). On August 6, 2024, UNB and certain Individual University Defendants moved to dismiss. (Doc. # 12). Plaintiff opposed that motion to dismiss (Doc. # 81) and the briefing on that motion to dismiss concluded on September 27, 2024. (Doc. # 94).

On August 30, 2024, the remaining Individual University Defendants (with the exception of Dr. Mullin) filed their own motion to dismiss (Doc. # 66), wherein they joined several of the arguments previously raised by the other Individual University Defendants (Doc. # 12). Plaintiff did not file an opposition brief.

On August 30, 2024, Plaintiff delivered to UNB's President's Executive Assistant a Summons and the Complaint addressed to Dr. Mullin.  (Doc. # 73).  On September 16, 2024, Dr. Mullin moved to dismiss.  (Doc. # 85).  Plaintiff did not file an opposition brief.

On January 7, 2025, Plaintiff filed a motion for leave to amend the Complaint.  (Doc. # 126).  On February 4, 2025, the Court granted Plaintiff's motion for leave to amend the Complaint but also ruled that Plaintiff's service of process upon the Individual University Defendants and co-defendant Roland Kuhn was invalid.  The Court therefore quashed service of process on the Individual University Defendants and Dr. Kuhn.  (Doc. # 132).

On February 8, 2025, Plaintiff filed his Amended Complaint.  (Doc. # 133).  On March 28, 2025, the Court ordered that each Defendant shall answer, move, or otherwise respond to Plaintiff's Amended Complaint by 21 days after Plaintiff files his proofs of service for all individual Canadian defendants and a notice that all individual Canadian defendants have been served or by September 26, 2025, whichever occurred earlier.  (Doc. # 140).  Plaintiff has not served all of the defendants, and this Motion is timely filed today.

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB

The Foreign Sovereign Immunities Act ("FSIA") provides the sole basis for obtaining jurisdiction over a foreign state in American courts.  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30, 136 S. Ct. 390, 393 (2015); *see* 28 U.S.C. § 1602 *et seq*.  Courts apply a burden-shifting analysis to determine whether a foreign state or its instrumentality is immune under the FSIA.  *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1062 (10th Cir. 2010).  Under this analysis, once the defendant establishes that it is a foreign state entitled to immunity, the plaintiff bears the burden of production to

make an initial showing that an FSIA exception to immunity applies. *Id.* If the plaintiff carries its initial burden, the defendant bears the ultimate burden of proving by a preponderance of the evidence that the claimed exception does not apply. *Id.*

An assertion of sovereign immunity is considered a factual challenge to the pleadings. *Patterson v. Rural Water Dist. 2*, 438 F. Supp. 3d 1258, 1266 (W.D. Okla. 2020). Therefore, in this part of the Motion, the Court may not presume the truthfulness of the complaint's factual allegations; instead, the Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts—without converting the Motion into one for summary judgment. *Id.* at 1266-67.

UNB is immune from suit because it a "foreign state or government" within the meaning of FSIA and no exceptions to immunity apply. Therefore, UNB must be dismissed *with prejudice* for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

A.    **UNB Is A "Foreign State" Within The Meaning Of FSIA**

A "foreign state shall be immune from the jurisdiction of the courts of the United States and of the States," subject to limited exceptions. 28 U.S.C. § 1604. A "foreign state" includes "a political subdivision of a foreign state" and "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" includes any entity that is "a separate legal person," "an organ of a foreign state," and not organized under the laws of a U.S. state or third country. 28 U.S.C. § 1603(b). The Province of New Brunswick is unquestionably "a political subdivision of a foreign state" – Canada. Therefore, UNB qualifies as a "foreign state" within the meaning of FSIA

because UNB is "a separate legal person" that is <u>not</u> organized under the laws of a U.S. state or third country, and UNB is "an organ of [the Province of New Brunswick]."

UNB is "a separate legal person" that is <u>not</u> organized under the laws of a U.S. state or third country. This is because UNB is a public corporation established in 1859 by the Lieutenant Governor, Legislative Council, and General Assembly of the Province of New Brunswick. 23 Victoria – Chapter 63 (1859) (Doc. # 12-1 at ECF pp. 1-2). When Canada became independent, the laws in New Brunswick remained in force. Canadian Constitution Act, 1867, 30 & 31 Victoria c. 3, at WHERAS clause and § 129 (Doc. # 94-1 at ECF pp. 16, 48). UNB is currently governed by the University of New Brunswick Act (the "UNB Act"), which is a public act that recognizes and continues UNB's incorporation. The University of New Brunswick Act, SNB 1984, c 40 at § 2 (Doc. # 12-2 at ECF p. 3).

The University qualifies as "an organ of a foreign state" under the factors considered by courts applying FSIA: "(1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000) (quoting *Supra Med. Corp. v. McGonigle*, 955 F.Supp. 374, 379 (E.D.Pa. 1997)); *see generally Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 654-55 (9th Cir. 1996).

UNB is not required to satisfy every factor to qualify as "an organ of a foreign state." *Kelly*, 213 F.3d at 847 (the factors provide a "helpful framework" for analyzing whether an

entity is an organ of a foreign state, but "we will *not* apply them mechanically or require that all five support an organ-determination") (emphasis original).  However, as discussed below, UNB satisfies every one of these factors, and UNB is an organ of a foreign state.

### 1.  New Brunswick Created UNB For A Public Purpose

Plaintiff correctly alleges that UNB is a public university.  (Doc. # 133 at ECF p. 8). UNB was established by the Lieutenant Governor, Legislative Council, and General Assembly of the Province of New Brunswick.  23 Victoria – Chapter 63 (1859).  (Doc. # 12-1 at ECF pp. 1-2).[1]  UNB remains a *public corporation*.  *Isaac v. University of New Brunswick*, 1992 CarswllNB 417, ¶ 38 (Nov. 25, 1992) (UNB is a "publicly incorporated educational institution").  (Doc. # 94-2 at ECF p. 9).

When UNB was established, the General Assembly of the Province of New Brunswick explained that the purpose of UNB was "… to make provision for a comprehensive system of University Education, such as will embrace not only the usual subjects of a Collegiate course, but also those branches of practical science and art which are adapted to the agricultural, commercial, and mechanical pursuits of the great body of the inhabitants of New Brunswick."  23 Victoria – Chapter 63 (1859).  (Doc. # 12-1 at ECF p. 1).  UNB's website underscores its continued public mission in New Brunswick and Canada.  UNB advertises itself as "[c]reating the New Brunswick of tomorrow."  *See* https://www.unb.ca/toward2030/vision.html (last accessed September 23, 2025).  UNB's

---

[1] As noted above, for the purposes of applying FSIA, a "foreign state" includes "a political subdivision of a foreign state."  28 U.S.C. § 1603(a).  The Province of New Brunswick is unquestionably a political subdivision of Canada, which is itself a "foreign state," and therefore New Brunswick is also a "foreign state" for the purposes of applying FSIA.

websites also states that "We [UNB] create the industries and opportunities of the New Brunswick of tomorrow." (*Id.*)  UNB's website further explains its public "mission of service" to benefit New Brunswick, Canada, and the world:

> New Brunswick and Canada need bold new ideas and decisive action to secure a more prosperous and just future. We will create and share the knowledge that is essential to push society forward. UNB will tackle society's great challenges head-on and create positive change. This is our mission of service to our province and the world. (*Id.*)

Accordingly, UNB was created by a New Brunswick for a public purpose and is entitled protection as "an organ of a foreign state."  *See Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 14 (1st Cir. 2011) ("[T]he vast majority of state universities have been found to be 'arms' of the State") (citation omitted).[2]

### 2.  New Brunswick, Its Officials, And Its Voters Actively Supervise UNB

A foreign state actively supervises UNB in at least three ways: (1) the university is publicly accountable to New Brunswick's Lieutenant Governor and legislature; (2) a majority of UNB's Board of Governors are appointed or elected directly or indirectly by public officials or the voting public; and (3) the government of New Brunswick retains the power to directly intervene in the university's governance.

First, the university is publicly accountable to New Brunswick's Lieutenant Governor and legislature.  The King of Canada is the official Head of State of New Brunswick but is represented in New Brunswick by the Lieutenant Governor of New

---

[2] Although the court in *Irizarry-Mora* determined whether the university was immune under the 11th Amendment, "[t]he factors determinative of 11th Amendment immunity are analogous to those for determining 'agency or instrumentality' status under the FSIA." *Intercontinental Dictionary Series v. De Gruyter*, 822 F. Supp. 662, 674 (C.D. Cal. 1993)

Brunswick, who serves as the nominal Head of State at the provincial level and is empowered with the responsibility of representing the King in the province. *See* https://www2.gnb.ca/content/gnb/en/lgnb/ltgov/role.html (last accessed September 23, 2025). The Lieutenant Governor of New Brunswick is the "Visitor" of UNB on behalf of the King. 23 Victoria – Chapter 63 (1859). (Doc. # 12-1 at ECF p. 3). In British and Canadian tradition, the "Visitor" of an educational institution is the person who has the right or duty of inspecting and reporting on the institution, often as the representative or successor to the institution's founder. Here, the Visitor is the representative of the King.

The involvement of the "Visitor" (*i.e.*, the Lieutenant Governor) in UNB's governance ensures that UNB remains accountable to New Brunswick's legislature:

> The continuation of the Office of the Visitor by a <u>public statute</u>, for a <u>publicly incorporated educational institution</u>, emphasizes the unique nature of the University of New Brunswick. The University has the full power and authority to promote and carry out the work of a university but, as a <u>public institution</u>, it is subject to the <u>scrutiny of the Legislature</u> responsible for its continued existence. The Office of the Visitor allows the University to maintain its independence, without undue public interference, while providing for <u>public accountability</u>.

*Isaac*, 1992 CarswllNB 417, ¶ 38. (Doc. # 94-2 at ECF p. 9) (emphasis added). The university is publicly accountable to New Brunswick's Lieutenant Governor and legislature and therefore is supervised by a foreign state.

Next, a majority of UNB's Board of Governors are appointed or elected directly or indirectly by public officials or the voting public. Subject to the "public accountability" to the "Visitor" and New Brunswick's legislature, responsibility for UNB's financial issues, property and facilities, and other matters necessary for the governance of the university

rests with the Board of Governors.  *See* <u>Exhibit 1</u>, UNB Board Charter.  The UNB Board

Charter underscores UNB's leadership's accountability to the public: "As stewards, [the

Board] hold[s] the university in trust for the people of the province."  (*Id*. at § B(1)).

Nearly two-thirds of Board members were appointed by the Lieutenant Governor in

Council, were elected by voters, or were appointed by the Board that includes individuals

appointed by the Lieutenant Governor in Council and by elected officials.  *See* <u>Exhibit 2</u>,

Third Declaration of Paul Mazerolle at ¶¶ 9-10, 12-16.[3]  Accordingly, UNB is actively

supervised by New Brunswick, which entitles UNB to FSIA protection as "an organ of a

foreign state."  *See Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir. 1996)

(majority of members of board appointed by Governor; university was arm of the state);

*Kashani v. Purdue Univ.*, 813 F.2d 843, 847 (7th Cir. 1987) (majority of board selected by

Governor; university was instrumentality of the state).

---

[3] The Board includes UNB's Chancellor and UNB's President / Vice-Chancellor, who are appointed by the Lieutenant Governor of New Brunswick in Council.  (Doc. # 12-2 at ECF pp. 10, 13).  Ten additional members of the Board are appointed by the Lieutenant Governor in Council.  (Doc. # 12-2 at ECF p. 13).  The Board also includes two democratically elected officials: the Mayor of the City of Fredericton and the Mayor of the City of Saint John.  (Doc. # 12-2 at ECF p. 13).  The Board as a whole – which includes the members appointed by the Lieutenant Governor in Council or elected by the voters – then appoints: (a) Vice-Presidents; (b) the Secretary of the Board; (c) Governors Emeriti; and (d) other "additional members" – all of which also serve on the Board.  (Doc. # 12-2 at ECF pp. 12-14).  The "Lieutenant Governor in Council" means the Lieutenant Governor acting with the advice of the Executive Council of New Brunswick.  Interpretation Act at § 38 (Doc. # 94-5 at ECF p. 21).  The Executive Council's President is the Premier, the head of New Brunswick's elected government.  *See* Members of the Executive Council, https://www.gnb.ca/en/gov/contacts/members-executive-council.html    (last   accessed September 23, 2025).  Therefore, ultimate authority for the appointment of much of the Board rests with the democratically elected government of the Province of New Brunswick.

Finally, the government of New Brunswick retains the power to directly intervene in the university's governance. By way of example, in 1954, by legislation passed by the New Brunswick legislature, the Queen of Canada (the late Elizabeth II) and the New Brunswick legislature directly intervened in UNB's governance to appoint an Honorary Chancellor of UNB, who was entitled to all of the rights, privileges and powers of the UNB Chancellor set out in the UNB Act. *See* Exhibit 3, An Act to Appoint Lord Beaverbrook Honorary Chancellor of the University of New Brunswick, SNB 1954 at §§ 1-3.

### 3. New Brunswick Requires The Hiring Of Public Employees At UNB

UNB employees are public employees. *See* Exhibit 2, Third Declaration of Paul Mazerolle at ¶ 8. By way of example, eligible UNB employees (other than faculty members who, for service after January 1, 1993, are in a different plan) are members of the New Brunswick Public Service Pension Plan, and certain retired employees and active employees after age 65 are eligible to join the New Brunswick Retiree Dental Plan, a publicly funded dental plan which is only accessible by public service employees. (*Id*.)

UNB receives significant funding from the Province of New Brunswick. *See* Exhibit 2, Third Declaration of Paul Mazerolle at ¶ 5. That funding contributes significantly to the operations of UNB, including paying the salaries of public employees. (*Id*. at ¶ 7). Accordingly, New Brunswick requires the hiring of public employees at UNB and pays their salaries, entitling UNB to FSIA protection as "an organ of a foreign state." *See also Adkins v. Rectors & Visitors of George Mason Univ.*, No. 1:15CV879 JCC/MSN, 2015 WL 5638102, at *2 (E.D. Va. Sept. 23, 2015) ("A state supported university enjoys the same sovereign immunity as States.") (citation omitted).

In his brief opposing UNB's Motion to Dismiss the original Complaint, Plaintiff argued that UNB is not an instrumentality of New Brunswick because Plaintiff's education at UNB was paid for by U.S. Department of Defense grants – not Canadian funds. (Doc. # 81 at ECF p. 11; *see* allegations in Doc. # 133 at ECF p. 5). Charging tuition and fees does not negate a foreign public university's sovereign nature. *See Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842, at *11 (D. Me. Feb. 5, 2013). In *Cutcliffe*, the defendant was a public university in Northern Ireland that obtained the majority of its funding from the government, which subsidized tuition for students. *Id*. at *2. The existence of tuition payments was not an obstacle to the District Court concluding that the public university was an organ of a foreign state and consequently qualified as an "agency or instrumentality of a foreign government" for the purpose of FSIA. *See Id*. at *11 *adopted by* No. 1:12-CV-193-DBH, 2013 WL 685668, at *1 (D. Me. Feb. 25, 2013).

In reaching its decision, the District Court in *Cutcliffe* relied on *Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 16 (1st Cir. 2011), wherein the U.S. Court of Appeals for the First Circuit found that a public university in Puerto Rico that charged tuition was entitled to sovereign status and immunity under the 11th Amendment of the U.S. Constitution. The *Irizarry-Mora* decision relied on *Kashani v. Purdue Univ.*, 813 F.2d 843, 847 (7th Cir. 1987), wherein the U.S. Court of Appeals for the Seventh Circuit found that a public university in Indiana that also charged tuition was entitled to sovereign status and immunity under the 11th Amendment of the U.S. Constitution. Accordingly, charging tuition and fees does not negate a public university's sovereign nature, and UNB is entitled

to FSIA protection as "an organ of a foreign state" because a foreign state requires the hiring of public employees at UNB and pays their salaries.

### 4. New Brunswick Affords Exclusive Rights To UNB And Its President

UNB is afforded certain exclusive rights and privileges in New Brunswick. For example, non-commercial property owned by UNB is generally not subject to New Brunswick's Provincial taxes on real property. *See* Exhibit 4, Assessment Act, RSNB 1973, c A-14, at § 4(1)(l) and Schedule B. Additionally, real property vested in UNB is afforded certain statutory protections, including protection from expropriation by municipal corporations and an applicable statutory limitations period equal to that of land vested in the Crown. UNB Act at §§ 10(1) & 10(2) (Doc. # 12-2 at ECF p. 7). In turn, UNB is, under some circumstances, entitled to expropriate real property when necessary for the purposes of the university. UNB Act at § 10(3) (Doc. # 12-2 at ECF p. 7). In the same vein, UNB is not permitted to enter into a lease for a period of greater than 21 years nor can it sell or dispose of its real property without governmental approval. UNB Act at § 14 (Doc. # 12-2 at ECF pp. 8-9).

In addition, on a rotating basis with other public university presidents, the President of UNB statutorily serves on the council that considers nominations for the Order of New Brunswick, which recognizes individuals who have demonstrated excellence and achievement and who have made outstanding contributions to the social, cultural or economic well-being of New Brunswick and its residents. *See* Exhibit 5, Order of New Brunswick Act, SNB 2000, c O-5.01, at §§ 3, 10, 14(1), and 14(2). Similarly, the President of UNB is also statutorily privileged to appoint one of the directors of New Brunswick's

regional forestry corporation.  *See* <u>Exhibit 6</u>, Maritime Forestry Complex Corporations Act, RSNB 2012, c 108, at § 6(2)(e).  Accordingly, New Brunswick affords exclusive rights to UNB and its President, entitling UNB to FSIA protection as "an organ of a foreign state."

### 5.  New Brunswick Law Treats UNB As A Public Institution

New Brunswick law treats UNB as a statutory "public body."  Right to Information and Protection of Privacy Act, SNB 2009, c R-10.6, at § 1 (Doc. # 94-3 at ECF p. 9) ("public body" includes "local public body," "local public body" includes "educational body," and "educational body" includes UNB).

New Brunswick law also treats UNB as a statutory "publicly funded employer."  *See* <u>Exhibit 7</u>, Expenditure Management Act, 1991, SNB 1991, c E-13.1, at § 1 and Schedule A ("publicly funded employer" is the person or body listed in Schedule A, including UNB).

Similarly, the Procurement Act places restrictions on government bodies in the use of funds for the purchase of goods and services. *See* <u>Exhibit 8</u>, Procurement Act, RSNB 2012, c 20.  UNB is regulated by the Procurement Act alongside other government entities, like public health care corporations and the workers compensation commission.  *See* <u>Exhibit 9</u>, Goods and Services Regulation, NB Reg 2014-93 at Schedule B.

Accordingly, because New Brunswick law treats UNB as a "public body" and a "publicly funded employer," and because UNB is regulated by the same restrictions governing other government entities, UNB is entitled to FSIA protection as "an organ of a foreign state."  ((Doc. # 94-2 at ECF p. 9) (UNB is a "public institution")).

In sum, UNB was founded by the Province of New Brunswick, UNB is regulated, supervised, and financed by New Brunswick, UNB is afforded exclusive rights in New

16

Brunswick, UNB is a public institution that is part of the government of New Brunswick, and UNB has a public role, public mission, public funding, and public oversight. These facts establish UNB as an organ of a foreign state entitled to sovereign immunity. *See Cutcliffe*, 2013 WL 682842, at *11 (university was an organ of the state where "the University was founded as a charity to advance education and the vast majority of its funding is public, the University serves a national purpose of advancing education . . . [and] [t]he University has a public role, public mission, and public funding.").

## B. No Exceptions to the Immunity Provided by the FSIA Apply

As noted above, once the defendant establishes that it is a foreign state entitled to immunity, the <u>plaintiff</u> bears the burden of production to make an initial showing that an FSIA exception to immunity applies. *Hansen*, 601 F.3d at 1062. In other words, a foreign state is <u>presumptively immune</u> from the jurisdiction of United States courts unless a specified and limited exception applies. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

In his Amended Complaint, Plaintiff asserts the following exceptions apply pursuant to 28 U.S.C. § 1605(a): (1) waiver; (2) certain commercial activities; (3) expropriations; and (4) damages caused by specific tortious acts. In fact, no exceptions apply.

### 1. The waiver exception does not apply as Plaintiff has failed to provide evidence establishing either an express or implied waiver

Under FSIA, a foreign sovereign is not immune from the jurisdiction of United States courts in any case "in which the foreign state has waived its immunity either explicitly or by implication . . . ." 28 U.S.C. § 1605(a)(1).

17

With respect to explicit waiver of immunity, "[t]he standard for finding a waiver is quite stringent. A waiver must be 'unequivocally expressed' and 'must be strictly construed in favor of the sovereign,' with ambiguities construed against waiver." *In re Rivera Torres*, 432 F.3d 20, 23-24 (1st Cir. 2005) (citations omitted). "A foreign sovereign will not be found to have waived its immunity unless it has clearly and unambiguously done so." *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002); *see also Estates of Ungar and Ungar ex rel. Strachman v. Palestinian Authority*, 325 F.Supp.2d 15, 26–27 (D.R.I. 2004) (waiver must be clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity).

Plaintiff contends that the University Defendants waived their immunity by "accepting and signing commercial education payment agreements with the Plaintiff and with the Department of Defense for the education of its soldiers including [Plaintiff]." (Doc. # 133 at ECF p. 5). However, Plaintiff fails to provide any evidence that these purported documents establish a waiver of immunity under the FSIA. Plaintiff has not even alleged *any* specific terms of the purported documents, let alone any terms purportedly waiving sovereign immunity. Because Plaintiff has not alleged – and certainly cannot meet his burden to prove – that any particular language unequivocally expressing UNB's intent to waive its sovereign immunity, the explicit waiver exception does not apply.

With respect to implied waiver, "the implied waiver provision must be construed narrowly. *TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 236 (D.C. Cir. 2024); *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). In fact, there are only three circumstances in which a sovereign will be treated as having impliedly waived its

immunity: (1) executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (2) filing a responsive pleading without asserting sovereign immunity; or (3) agreeing to submit a dispute to arbitration in the United States. *TIG Ins. Co.*, 110 F. 4th at 236.  Plaintiff has not alleged—and certainly cannot meet his burden to prove—any of these three circumstances as applicable in this case.  Accordingly, the implied waiver exception to sovereign immunity also does not apply.

### 2. The commercial activity exception does not apply as Plaintiff has failed to provide evidence of commercial activities

The commercial activity exception only applies if action is based upon: (1) a commercial activity carried on in the United States by the foreign state; (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.  28 U.S.C. § 1605(a)(2).  The test is "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce."  *Rep. of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (emphasis original; quotation marks omitted).

Plaintiff provides no facts to support the application of this exception.  Instead, Plaintiff merely cites "28 U.S.C. 1605(a)(2), Commercial Activity" and states that he attended UNB as part of a government program to educate soldiers that is paid for by the Department of Defense.  (Doc. # 133 at ECF p. 5).  In fact, there are no allegations to suggest that Plaintiff's program was available to anyone except anyone other than soldiers,

*i.e.*, state employees of a sovereign.  Plaintiff expressly alleges that "he was one of only two colonels selected for the highly competitive PhD program at the U.S. Army War College" and his Ph.D. program was "for United States military members."  (Doc. # 133 at ECF pp. 2 and 5).  A public education program wherein one sovereign engages another sovereign to educate soldiers, who are one sovereign's employees, is not the type of action by which a private party engages in trade and traffic or commerce.  Likewise, a public university's investigation of academic research is not the type of action by which a private party engages in trade and traffic or commerce.

Even if UNB's activities alleged in this lawsuit qualify as commercial (which they are not), that does <u>not</u> mean that UNB is automatically subject to suit.  For the commercial activity exception to apply, the gravamen of the lawsuit must be based upon tortious activity <u>within the United States</u>.  *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215, 139 S. Ct. 759, 772 (2019).  "Thus, if the 'gravamen' of a lawsuit is tortious activity abroad, the suit is <u>not</u> 'based upon' commercial activity within the meaning of the FSIA's commercial activity exception."  *Id.* (emphasis added).

Here, there is no question that the "gravamen" of the claims against UNB in this lawsuit involve allegations of activity in Canada, and therefore this suit does not come within the commercial activity exception to FSIA immunity.  This suit is about an academic dispute related to the research Plaintiff undertook for his Ph.D. thesis.  Plaintiff alleges that his PhD program was at UNB, which Plaintiff admits is a public university in Canada.  (Doc. # 133 at ECF pp. 6 and 8).  Plaintiff alleges that UNB released Plaintiff's previously embargoed PhD thesis by way of a letter which bears UNB's Canadian address.  (Doc. #

20

133 at ECF p. 11; *see also* Doc. # 133-1 at ECF p. 2).  Plaintiff alleges that UNB's faculty denounced Plaintiff by way of another letter which bears UNB's logo and was allegedly sent by faculty that Plaintiff alleges are located in Canada.  (Doc. # 133 at ECF pp. 8 and 15; *see also* Doc. # 133-4 at ECF p. 2).  Plaintiff's allegation that UNB and other defendants sent communications "into the United States" impliedly admits that such communications originated *outside* of the United States.  (Doc. # 133 at ECF p. 26).  In other words, the "gravamen" of the claims against UNB in this lawsuit involve alleged activity in Canada, and therefore the commercial activity exception does not apply.

### 3.    The expropriation exception does not apply as Plaintiff has failed to show that UNB "took" property from him

Plaintiff next contends that its claims against UNB fall under the "expropriation exception" to immunity.  (*Id*. at ECF p. 5).  This exception applies when "… rights in property taken in violation of international law are in issue" and that property or any property exchanged for such property is either (a) present in the United States in connection with a commercial activity carried on in the United States by the foreign state, or (b) owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.  28 U.S.C. § 1605(a)(3).  Plaintiff alleges that there was "property taken by Defendants from [Plaintiff] that exists in the United States in connection with the commercial activity out of an international Ph.D. program for United States military members which was carried out in the United States by Defendants."  (Doc. # 133 at ECF p. 5).

However, in the Amended Complaint, Plaintiff has not alleged *what property* UNB allegedly took.  There are no facts alleged to support the proposition that UNB took any property from Plaintiff.  Rather, Plaintiff alleges that he is engaged in an academic dispute with UNB relating to the release of Plaintiff's thesis from embargo and statements made about the veracity and viability of Plaintiff's research.

In addition, even if Plaintiff alleged that UNB took any property from Plaintiff (which Plaintiff does not allege), the "expropriation exception" to foreign sovereign immunity only applies to "… rights in property taken *in violation of international law*[.]"  *See* 28 U.S.C. § 1605(a)(3) (emphasis added).  There are no allegations of any violations of international law in the Amended Complaint.  In fact, the phrase "international law" does not even appear in the Amended Complaint.

Instead, Plaintiff specifically alleges violations of U.S. federal statutes (Counts 1 through 4) or common law (Counts 5 through 10).  (Doc. # 133 at ECF pp. 20-40).  The specific expression of violations of *federal statutes* and *common law* indicates the exclusion of allegations of violations of *international law* – which do not appear in the Amended Complaint.  This is a simple application of the legal principle of *expressio unius est exclusio alterius* – the expression of one item in an associated group or series excludes another left unmentioned.  Here, Plaintiff is not alleging violations of international law.

This action is a dispute over academic protocol, not international law.  The expropriation exception is inapplicable here.

**4.    The tortious acts exception does not apply as Plaintiff does not allege tortious acts in the United States**

Lastly, Plaintiff argues that the "tortious acts" exception prevents the application of immunity under the FSIA.  (Doc. # 133 at ECF p. 5).  Pursuant to 28 U.S.C. § 1605(a)(5), a foreign entity is not immune under the FSIA in any case:

> . . . in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment.

The "tortious act" exception does <u>not</u> apply for three reasons: (1) Plaintiff alleges an academic dispute, not "tortious" acts; (2) the "tortious act" exception only applies when the *entire tort* was committed in the United States; and (3) to the extent Plaintiff alleges any tortious conduct by UNB, his claims arise from alleged types of claims expressly excepted from the "tortious act" exception.

First, in support of the application of this exception, Plaintiff pleads that "tortious acts of fraud and RICO election interference."  (Doc. # 133 at ECF p. 5).  Despite the legal labels Plaintiff assigns, the acts that serve as a basis for Plaintiff's fraud and RICO claims concern alleged failure to follow academic protocol.  (*Id*. at ECF pp. 20-26, 31-32).  None of UNB's alleged actions were "tortious."  The exception is inapplicable.

Second, even if Plaintiff has alleged "tortious" acts on the part of UNB (which Plaintiff does <u>not</u> allege), for the "tortious act" exception to apply, the *entire tort* must be committed in the United States.  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115 (2d Cir. 2013); *O'Bryan v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009); *Asociacion de*

*Reclamantes v. United Mexican States*, 735 F.2d 1517, 1525 (D.C. Cir. 1984); Alexa Ashworth, *et al*., *Limitation to tortious acts and injuries occurring in United States*, 13A Fed. Proc., L. Ed. § 36:511 (Mar. 2025). In other words, for the "tortious act" exception to be applicable, both the tortious acts or omissions and the injury must occur within the United States. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984); *Intercontinental Dictionary Series*, 822 F. Supp. at 677; Ashworth, 13A Fed. Proc., L. Ed. § 36:511.

In fact, Congress' primary purpose in creating the "tortious act" exception to FSIA immunity was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439–40, 109 S. Ct. 683, 691 (1989); *Asociacion de Reclamantes*, 735 F.2d at 1525; *see also Doe v. Fed. Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 18–19 (D.D.C. 2016), *aff'd on other grounds*, 851 F.3d 7 (D.C. Cir. 2017). The "tortious act" exception was never intended by Congress as a broad exception to avoid FSIA immunity for all alleged torts that bear some relationship to the United States. *See Asociacion de Reclamantes*, 735 F.2d at 1525.

Plaintiff does not and cannot allege that the entirety of UNB's alleged tortious conduct took place in the United States. On the contrary, Plaintiff alleges that UNB released Plaintiff's previously embargoed PhD thesis by way of a letter which bears UNB's Canadian address. (Doc. # 133 at ECF p. 11; *see also* Doc. # 133-1 at ECF p. 2). Plaintiff alleges that UNB's faculty denounced Plaintiff by way of another letter which bears UNB's logo and was allegedly sent by faculty that Plaintiff alleges are located in Canada. (Doc. #

133 at ECF pp. 8 and 15; *see also* Doc. # 133-4 at ECF p. 2). Plaintiff's allegation that UNB and other defendants sent communications "into the United States" indicates that such communications originated *outside* of the United States. (Doc. # 133 at ECF p. 26).

Third, the "tortious act" exception does <u>not</u> apply to "… any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B). To the extent that Plaintiff alleges any tortious conduct at all, Plaintiff labels his claims against UNB as "Breach of Contract" (Count 7), "Defamation" (Count 9), and "False Light Invasion of Privacy" (Count 10). (Doc. # 133 at ECF pp. 34-40). The gravamen of Plaintiff's Amended Complaint is an academic dispute in which Plaintiff believes he was falsely accused of having evil viewpoints and committing evil acts. (*Id.* at ECF p. 15). Accordingly, the "tortious act" exception to FSIA immunity does <u>not</u> apply because, to the extent Plaintiff alleges any tortious conduct by UNB, his claims arise from alleged libel, slander, misrepresentation, deceit, or interference with contract rights.

*        *        *

UNB is entitled to FSIA immunity. No exceptions apply. Plaintiff's claims must be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## IV.    <u>THIS COURT LACKS PERSONAL JURISDICTION OVER UNB</u>

If the Court agrees with UNB that UNB is entitled to FSIA immunity, then the Court's analysis of the claims against UNB is over and UNB must be dismissed for lack of subject matter jurisdiction. However, if the Court determines that adjudicating Plaintiff's

claims against UNB is within the *subject matter jurisdiction* of the Court, then the Court must take the additional step of determining whether it has *personal jurisdiction* over UNB.

Plaintiff bears the burden of establishing that the court can exercise personal jurisdiction. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff must make a *prima facie* showing that jurisdiction exists. *Eighteen Seventy, LP*, 32 F.4th at 964.

### A.     This Court Does Not Have General Jurisdiction Over UNB

There are two types of personal jurisdiction: general and specific. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021). A court can exercise general jurisdiction over defendants who are "essentially at home" in the forum, as when an individual is domiciled in the State, or a corporation is incorporated or has its principal place of business there. (*Id.*). There are no allegations suggesting that UNB "at home" in the Western District of Oklahoma. On the contrary, Plaintiff alleges that UNB is a public university located in Canada. (Doc. # 133 at ECF p. 8). As such, general jurisdiction does <u>not</u> apply.[4]

---

[4] Plaintiff also alleges that, when required by the ends of justice, 18 U.S.C. § 1965(b) authorizes *nationwide* service of process in RICO actions to confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum sufficient contacts with the United States. (Doc. # 133 at ECF p. 5). However, UNB does <u>not</u> reside in a judicial district of the United States and was <u>not</u> served in the United States. (*Id.* at ECF pp. 8; Doc. # 8). Therefore, RICO's nationwide service of process provision cannot provide the statutory basis for personal jurisdiction in this case. *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006).

**B.**    **This Court Does Not Have Specific Jurisdiction Over UNB**

A specific jurisdiction analysis involves a two-step inquiry.  First, the Court must consider whether UNB has minimum contacts such that it should reasonably anticipate being hauled into court there.  *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Second, if the defendant's actions create sufficient minimum contacts, a court must consider whether the exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice.  *See Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987); *OMI,* 149 F.3d at 1091.

**1.**    **The University Defendants do not have sufficient minimum contacts with the forum**

Here, Plaintiff alleges that this Court has two different bases for jurisdiction over the Defendants: (1) 28 U.S.C. § 1608; and (2) diversity jurisdiction.  (Doc. # 133 at ECF p. 4).  These two bases for jurisdiction are subject to two different minimum contacts tests.

First, 28 U.S.C. § 1608 governs service on foreign state or political subdivision of a foreign state.  *See* FRCP 4(j)(1).   If service is made under 28 U.S.C. § 1608, then, for the purposes of the Court's due process analysis, the relevant area in delineating contacts is the United States, not the forum state.   *United World Trade, Inc. v. Mangyshlakneft Oil Prod. Ass'n*, 821 F. Supp. 1405, 1410 (D. Colo. 1993), *aff'd*, 33 F.3d 1232 (10th Cir. 1994).   For the purposes of this Motion, the Court may assume that Plaintiff served UNB pursuant to 28 U.S.C. § 1608.  Therefore, *if the Court finds that UNB is a foreign state or a political subdivision of a foreign state, but finds that FSIA immunity does not apply*, then

the Court should examine UNB's contacts with the *United States* in determine whether UNB should reasonably anticipate being hauled into court in the *United States*.

Second, in a diversity action, Plaintiff must demonstrate that jurisdiction is proper under the laws of the forum state – Oklahoma – and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). "Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, [so] the personal jurisdiction inquiry collapses into the single due process inquiry." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012). Therefore, *if the Court finds that UNB is <u>not</u> a foreign state or a political subdivision of a foreign state*, then the Court should examine UNB's contacts with *Oklahoma*.

An analysis of either contacts with the *United States* or contacts with *Oklahoma* will show that exercising personal jurisdiction over UNB would violate due process.

### a. There are no allegations that UNB purposefully directed its activities at the United States

To establish that a defendant's contacts with a forum are such that they should reasonably anticipate being hauled into court here, a plaintiff must establish that the defendant purposely directed its activities at residents of the forum. *See Eighteen Seventy, LP*, 32 F.4th at 966. Specific jurisdiction does not attach as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840-41 (10th Cir. 2020). Instead, specific jurisdiction is premises on

something of a *quid pro quo*: in exchange for benefitting from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts. *Id.* at 840. The U.S. Court of Appeals for the 10th Circuit applies the "harmful effects test" under which, to establish that the defendant purposely directed its activities at residents of the forum, the plaintiff must show: (a) an intentional action that was; (b) expressly aimed at the forum with; (c) knowledge that the brunt of the injury would be felt in the forum state. *Id.* at 841.

Plaintiff has not established that UNB has the requisite minimum contacts within the United States. Plaintiff does <u>not</u> allege that UNB has any bank accounts in the U.S., any offices or other property in the U.S., that it conducts any business/provides educational opportunities in the U.S., has any employees in the U.S., that it advertises in the U.S., or that it pays taxes in the U.S. Instead, Plaintiff admits that UNB is a Canadian public university. (*Id.* at ECF p. 8). None of Plaintiff's education, including the writing of his thesis, is alleged to have occurred in the United States. UNB allegedly released Plaintiff's PhD thesis by way of a letter which bears UNB's Canadian address. (Doc. # 133 at ECF p. 11; *see also* Doc. # 133-1 at ECF p. 2). There are no allegations that anyone involved in the so-called "investigatory committee" into Plaintiff's PhD thesis has any connection to the United States. On the contrary, Plaintiff alleges only that one of the appointees is from the University of Canada, another Canadian public university. (Doc. # 133 at ECF p. 20).

Plaintiff alleges that UNB and its staff used the "wires or mail of the United States," "social media across the United States," and "electronic wires and mails of the United States" to speak "to the world" or "to the American press." (Doc. # 133 at ECF pp. 11, 12

15-16, and 37). Plaintiff also alleges, with no explanation, that UNB history professor

Jeffrey Brown "appeared on local American radio in Harrisburg, Pennsylvania" to speak

about Plaintiff. (Doc. # 133 at ECF p. 19; *see also* Doc. # 133 at pp. 36 and 38 and Doc.

133-5 at ECF p. 4). But there are no allegations of (a) how UNB or Dr. Brown might have

benefited from communicating into the United States, (b) whether such communications

were expressly aimed at the United States, or (c) whether UNB had knowledge that the

brunt of the injury would be felt in the United States – as is required to establish personal

jurisdiction under *XMission*, 955 F.3d at 840-41. There are no allegations that Dr. Brown

visited the United States. On the contrary, the facts alleged suggest that Canadian

academics spoke in Canada about a PhD earned in Canada. *See XMission*, 955 F.3d at 845-

47 (specific jurisdiction is proper over an email sender only if a plaintiff can show that the

sender had knowledge that the offending emails were going to a specific forum).

In fact, Plaintiff's allegations vastly overstate Dr. Brown's connection to the United

States and to Oklahoma.[5] Dr. Brown became a permanent resident of Canada in 2002 and

since then has resided exclusively in Canada. *See* Exhibit 10, Declaration of Jeffrey Brown

at ¶¶ 1-2. Dr. Brown obtained Canadian citizenship in 2006 and since then has not held a

U.S. Passport or voted in United States elections. *Id.* at ¶¶ 1, 3-4. Any communications

---

[5] Plaintiff's failure to make a *prima facie* showing that jurisdiction exists is fatal to his claim. *See Eighteen Seventy, LP*, 32 F.4th at 964. However, the Court may also consider evidence extrinsic to the Amended Complaint in deciding a Rule 12(b)(2) Motion without converting the Motion into one for summary judgment. This is because a resolution of factual issues may be required to decide the issue of personal jurisdiction. *See Lotus Foods Bos., LLC v. Go Fresh 365, Inc.*, No. 2:23-CV-01859-MJH, 2023 WL 8836461, at *1 (W.D. Pa. Dec. 21, 2023). The Court should consider Dr. Brown's Declaration to clarify the allegations of the Amended Complaint.

that Dr. Brown has had with the press or media about Douglas Mastriano have occurred while Dr. Brown was physically located in Canada. *Id.* at ¶ 5. Mr. Gregory may have participated in conversations with the media but did not do so jointly or simultaneously with Dr. Brown. *Id.* at ¶ 6. In fact, Dr. Brown and Mr. Gregory have never met in person. *Id.* at ¶ 7. Dr. Brown did not travel into the United States to participate in a radio program with a citizen of Oklahoma; instead, Dr. Brown's alleged conduct happened in Canada.

Accordingly, UNB does <u>not</u> have the requisite minimum contacts with the United States for this Court to exercise personal jurisdiction over UNB.

### b. There are no allegations that UNB purposefully directed its activities at Oklahoma

As noted above, *if the Court finds that UNB is <u>not</u> a foreign state or a political subdivision of a foreign state*, then the Court should examine UNB's contacts with *Oklahoma*. There are no allegations that UNB aimed any communications into Oklahoma or knew that anyone in Oklahoma would be injured by its communications. On the contrary, Plaintiff alleges that he is a resident of *Pennsylvania*, complains about a letter UNB sent him at his address in *Pennsylvania*, and complains about a UNB faculty member allegedly appearing on the radio in *Pennsylvania*. (Doc. # 133 at ECF pp. 6 and 19 and Doc. 133-1 at ECF p. 2). UNB does <u>not</u> have the requisite minimum contacts with Oklahoma for this Court to exercise personal jurisdiction over UNB.

### 2. The exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice

Even if UNB has sufficient contacts, this Court must still consider whether the exercise of personal jurisdiction over UNB offends traditional notions of fair play and

substantial justice.  *See Asahi Metal*, 480 U.S. at 113.  In assessing whether an exercise of jurisdiction is reasonable, a court must consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.  *TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007); *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000); *see also OMI*, 149 F.3d at 1095.

The analyses of minimum contacts and reasonableness are complementary:

> … the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*OMI*, 149 F.3d at 1092 (alterations in original); *see also TH Agric.*, 488 F.3d at 1292.

With respect to the first factor, UNB is unquestionably burdened by litigating in Oklahoma given that it is located in Canada (Doc. # 133 at ECF p. 8) and there are no allegations that UNB maintains offices, owns property, or employs anyone in Oklahoma or the United States.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (the burden on a Canadian corporation with no offices, property, or employees in the forum state was "significant" and weighed against exercising jurisdiction).

With respect to the second factor of the reasonableness analysis, Oklahoma has no interest in the dispute between Plaintiff and UNB.  UNB is a public university in Canada.

(Doc. # 133 at ECF p. 8). The relationship between Plaintiff and UNB arises from Plaintiff's receipt of an academic degree in Canada. (*Id.* at ECF p. 6). There are no allegations that any part of the investigation into Plaintiff's PhD is happening anywhere except Canada. The letter that Plaintiff alleges defamed him is not addressed to anyone in Oklahoma or the United States and was allegedly sent by UNB faculty that Plaintiff admits are located in Canada. (Doc. # 133-4 at ECF p. 2). Accordingly, this factor weighs in favor of dismissal. *See OMI*, 149 F.3d at 1096 (concluding that this factor weighed heavily in favor of defendants where no parties were residents of the forum state or conducted business in the forum state, and the forum state's law did not apply, and the relationship between the parties was formed in Canada). In fact, the United States has little interest in this dispute because, although Plaintiff is a United States citizen, this dispute involves education he received in Canada and statements made in Canada about that education.[6]

---

[6] Choice-of-law analysis is a fact intensive process which a court is typically ill-equipped to engage in at the early stages of litigation. *See Fed. Ins. Co. v. Indeck Power Equip. Co.*, No. CIV-15-491, 2016 WL 3676803 at *2 (W.D. Okla. July 7, 2016). However, the chance that Oklahoma law would apply to any of the claims against UNB is extremely thin. This is because UNB and the UNB Individual Defendants are located in Canada, UNB and the UNB Individual Defendants formed a relationship with Plaintiff in Canada, and UNB's and the UNB Individual Defendants' conduct allegedly occurred in Canada. Accordingly, there is a significant chance that Canadian law applies to at least some of Plaintiff's claims. *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974) (applying multi-factored choice-of-law test including analysis of the place where the parties were domiciled, the place where the relationships of the parties' occurred, and the place where the defendant's conduct occurred). Plaintiff himself is a resident of Pennsylvania. The significant likelihood that Canadian law or Pennsylvania law governs some or all of these claims underscores UNB's argument that exercising jurisdiction in Oklahoma over UNB and the Individual University Defendants offends the traditional notions of fair play and substantial justice, and the claims should be dismissed. If this action progresses past the pleading stage, the Individual UNB Defendants expressly reserve the right to litigate choice-of-law issues and to take discovery, if necessary, to resolve such issues.

With respect to the third and fourth factors of the reasonableness analysis, there is no reason to assume that this Court is the only place, or even the most effective place, for Plaintiff to obtain relief.  Plaintiff is seeking to recover from a Canadian public university and from Canadian individuals for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian public university.  The witnesses will therefore be in Canada.  There are no allegations to suggest that litigating in Canada would cause undue hardship to Plaintiff.  In fact, Plaintiff is not an Oklahoma resident, so Plaintiff will be geographically inconvenienced regardless of whether litigation proceeds in Oklahoma or Canada.  *See Benton*, 375 F.3d at 1079 (holding that the third factor weighed against exercising jurisdiction because Canadian law governed the dispute and litigating in Canada would not cause undue hardship).

Finally, the fifth factor of the reasonableness analysis focuses on whether the exercise of personal jurisdiction by the forum state affects the substantive social policy interests of other states or foreign nations.  *TH Agric.*, 488 F.3d at 1297.  "[G]reat care must be exercised when considering personal jurisdiction in the international context."  *Asahi Metal*, 480 U.S. at 103.  "[W]hen jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated."  *OMI*, 149 F.3d at 1098.  Plaintiff is seeking to recover from a Canadian public university for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian public university.  All the policy interests at play are held by Canada and New Brunswick, and none are held by Oklahoma or the United States.

The interests of Canada and New Brunswick are especially strong here because UNB is a public university governed by a New Brunswick statute and publicly accountable to New Brunswick's Lieutenant Governor and legislature. *See* UNB Act at § 17(1) and *Isaac*, 1992 CarswllNB 417, ¶ 38. (Doc. 12-2 at ECF p. 9 and Doc. # 94-2 at ECF p. 9).

In sum, Plaintiff has failed to establish sufficient purposeful contacts between the UNB and either the United States or the State of Oklahoma. Extending jurisdiction over UNB in this Court would offend traditional notions of fair play and substantial justice. The claims against UNB must be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(2).

## V.    **PLAINTIFF FAILS TO STATE A CLAIM**

UNB joins and adopts the arguments and statements set forth in Section V of the Individual University Defendants' Motion to Dismiss as though fully set forth herein.

## VI.    **CONCLUSION**

UNB respectfully request that its Motion to Dismiss be granted, the claims against it be dismissed *with prejudice*, and for such further relief this Court deems just and proper.

*** SIGNATURE BLOCK ON FOLLOWING PAGE ***

Dated: September 26, 2025

Respectfully submitted,

/s/ William C. Swallow

Don W. Danz
McATEE & WOODS, P.C.
410 NW 13th Street
Oklahoma City, OK 73103
T: (405) 232-5067
F: (405) 232-0009
E: DonD@McAteeandWoods.com

William C. Swallow (IL No. 6293910)
*Pro Hac Vice To Be Filed*
Michael H. Passman (IL No. 6297381)
*Pro Hac Vice To Be Filed*
Emily M. Vanderlaan (CO No. 55293)
*Pro Hac Vice To Be Filed*
CLYDE & CO US LLP
55 W. Monroe Street, Suite 3000
Chicago, Illinois 60603
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

*Attorneys for the University Defendants*