# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DOUGLAS MASTRIANO | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-567-J |
| | ) | |
| JAMES GREGORY, III, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ROLAND KUHN'S RENEWED MOTION TO DISMISS
## AND BRIEF IN SUPPORT

Callan G. Stein (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110
callan.stein@troutman.com

-and-

Matthew J. Lund (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
500 Woodward Ave., Suite 2800
Detroit, MI 48226
248.359.7300
matthew.lund@troutman.com

Gerard M. D'Emilio, OBA No. 33496
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
T: (405) 235-5500
F: (405) 235-2875
Email: gdemilio@gablelaw.com

-and-

R. Trent Shores, OBA No. 19705
Barrett L. Powers, OBA No. 32485
**GABLEGOTWALS**
110 N. Elgin Ave., Ste. 200
Tulsa, Oklahoma 74120-1495
Telephone (918) 595-4800
Facsimile (918) 595-4990
Email: tshores@gablelaw.com
          bpowers@gablelaw.com

*Attorneys for Defendant Roland Kuhn*

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND ................................................................................. 2
      A.    Plaintiff's Allegations Against Dr. Kuhn ................................... 2
      B.    Facts Relevant to Personal Jurisdiction ..................................... 2
      C.    Facts Relevant to Service of Process .......................................... 4
      D.    Procedural Background ............................................................... 5

III.    ARGUMENT ..................................................................................... 6
      A.    The Court Should Dismiss the Complaint Against Dr. Kuhn
            Pursuant To Rule 12(b)(2) Because This Court Does Not Have
            Personal Jurisdiction Over Him. ................................................ 6
            1.    The Court Does Not Have Diversity Jurisdiction. ........... 7
            2.    The Court Does Not Have Federal Question Jurisdiction ............... 13
            3.    Plaintiff's co-conspirator allegations do not confer
                jurisdiction ................................................................. 16
      B.    The Court Should Dismiss the Complaint Against Dr. Kuhn
            Pursuant To Rule 12(b)(5) For Insufficient Service. ................. 17
      C.    Plaintiff Lacks Standing to Assert Any Claims Under RICO And
            Under The Sherman Act ............................................................. 18
      D.    Plaintiff Fails To State Either Of His Claims Under RICO. ...... 21
            1.    Plaintiff does not allege that Dr. Kuhn committed any
                racketeering activity, let alone the required "pattern". ........ 22
            2.    Plaintiff does not define any RICO "enterprise," much less
                plead how its members associated in fact and worked
                together ........................................................................ 24
      E.    Plaintiff Fails To State A Sherman Act Claim. .......................... 26
            1.    Plaintiff does not allege any anticompetitive or trade-
                restraining conduct by Dr. Kuhn that could violate the
                Sherman Act. ................................................................ 26
      F.    At Most, Plaintiff Alleges Harm To His Personal Business Interests,
            Which Is Not An "Antitrust Injury". ........................................... 28
      G.    Plaintiff Fails To State A Claim For Defamation. ...................... 29
            1.    The Court should dismiss Plaintiff's defamation claim under
                the OCPA because Plaintiff has brought it in response to
                Kuhn's valid exercise of his First Amendment rights ............... 29
      H.    Plaintiff's allegations of statements Dr. Kuhn made are vague and
            devoid of the required detail to state a claim for defamation. ................... 31

I.   Plaintiff's Claim for False Light Invasion of Privacy is Duplicative
     Of and Fails With His Defamation Claim. ................................................. 33

J.   Plaintiff Has Already Amended His Complaint And, In Doing So,
     Demonstrated His Inability To Make Sufficient Allegations Against
     Dr. Kuhn; Thus, Dismissing This Case Against Dr. Kuhn With
     Prejudice Is Appropriate. ........................................................................ 33

IV.  CONCLUSION ................................................................................................ 34

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Invs., LLC v. Rubin*, 494 Fed. Appx. 856 (10th Cir. 2012) ........................................ 11

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987)........... 22

*Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1254 (10th Cir. 2003) .................................................................................................................................. 19

*Bowen v. Adidas Am. Inc.*, 84 F.4th 166, 177 (4th Cir. 2023)........................................... 19

*Boyle v. U.S.*, 556 U.S. 938, 946-947 (2009) .................................................................... 24

*Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1146 (10th Cir. 1998) ............................................................................................................................... 26

*Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1107 (10th Cir. 2017) ............................................................................................................................... 32

*Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 496 (S.D. Iowa 2007) ................................. 7, 13

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)........................ 20

*Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1179-80 (10th Cir. 2023) ...... 27

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002)............................ 20

*Comet Mech. Contractors, Inc. v. E.A. Cowen Constr., Inc.*, 609 F.2d 404, 406 (10th Cir. 1980) ............................................................................................................................... 21

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229–31 (10th Cir. 2006) ...................... 14

*Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014) ......................................... 7, 13

*Craig PC Sales & Service, LLC v. CDW Government, LLC*, 2018 WL 4861522, *11 (W.D. Okla. April 30, 2018).......................................................................................... 30

*Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153 (1967) ................................................ 30

*Dalton v. City of Las Vegas*, 282 Fed. Appx. 652, 654-55 (10th Cir. 2008).................... 22

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) ...... 2

*Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 750 (10th Cir. 1999) ................ 28

*Gil Ramirez Group, L.L.C. v. Houston Ind. School Dist.,* 786 F.3d 400, 408–09 (5th Cir. 2015) ................................................................................................................ 19

*H.J. Inc. v. Northwestern Bell Telephone, Co.,* 492 U.S. 229, 236 (1989) ...................... 22

*Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015) ..................................................... 14

*Hemi Group, LLC v. City of New York, N.Y.,* 559 U.S. 1, 9 (2010)................................. 20

*Herbert v. Oklahoma Christian Coal.*, 992 P.2d 322, 328 (Okla. 1999) ......................... 30

*Holmes v. Secs. Investor Prot. Corp.,* 503 U.S. 258, 267 (1992)...................................... 19

*Jacobs v. Credit Suisse First Bos.,* No. 11-CV-00042-CMA-KLM, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011) ..................................................................................... 23

*Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015)................................................ 13

*Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d Cir. 2000) ..................................................... 19

*McGeorge v. Continental Airlines, Inc.,* 871 F.2d 952, 955 (10th Cir. 1989) ................. 32

*Melea Ltd. v Jawar SA*, 511 F.3d 1060, 1070 (10th Cir. 2007) ........................................ 17

*Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir.1980)........... 27

*New York Times v. Sullivan*, 376 U.S. 254, 280 (1964) .................................................... 30

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (2017)........................... 8

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) 12

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).............. 13

*Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 728 (8th Cir. 2004)............................ 20

*Reves v. Ernst & Young,* 507 U.S. 170, 178-179 (1993)................................................... 26

*Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1291 n.5 (W.D. Okla. 2018)... 2

*Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496 (1985)..................................................19

*Sharp v. United Airlines, Inc.*, 967 F.2d 404, 407–08 (10th Cir. 1992)...........................28

*Tal v. Hogan,* 453 F.3d 1244, 1253 (10th Cir. 2006)..........................................................19

*U.S. v. Hutchinson,* 573 F.3d 1011, 1021-1022 (10th Cir. 2009) .....................................25

*XMission, L.C., v. Fluent LLC,* 955 F.3d 833 (2020)...........................................................7

*Yates v. Gannett Co., Inc.,* 523 P.3d 69, 75 (Okla. Civ. App. 2022).................................30

## Statutes

§ 1962(d)................................................................................................................................21

12 O.S. Supp. 2014 § 1430(B) ............................................................................................29

18 U.S.C. § 1961 ..................................................................................................................22

18 U.S.C. § 1964(c)..............................................................................................................19

18 U.S.C. § 1965 ..................................................................................................................14

## Rules

Fed. R. Civ. P. 12(b)(2) .........................................................................................................7

Fed. R. Civ. P. 4(f)...............................................................................................................17

## I.    INTRODUCTION

At the heart of this case lies an academic debate between two military historians—Plaintiff Douglas Mastriano and Defendant James Gregory—about the exploits of Alvin York, a World War I hero. In short, while Gregory was researching his own book on Sgt. York, he found errors in Plaintiff's work, and he did what anyone would expect him to do: he reported the errors to the school that granted Plaintiff his PhD on the topic.

From this straightforward historical debate among academics, Plaintiff has manufactured a sprawling, multi-count federal lawsuit against twenty-six Defendants alleging international violations ranging from racketeering to antitrust violations to garden variety defamation. On its face, the claims do not match the facts.

This mismatch is particularly acute with respect to Roland Kuhn, one of the many parties Plaintiff has sued. Dr. Kuhn is a respected member of the academic community in Canada. Based on the Complaint, he is alleged to have done *nothing* to warrant being accused of racketeering, defamation, or antitrust violations. By Plaintiff's own admission, *all* of Dr. Kuhn's alleged actions were based on Canada. None impacted this forum.

Simply stated, Dr. Kuhn has done nothing wrong. Like many of the Defendants, it appears that his only sin is finding himself on the long list of individuals against whom Plaintiff has an axe to grind. Plaintiff's claims against Dr. Kuhn fail on jurisdictional and substantive grounds. The claims fail on procedural bases, as well; after nearly sixteen months Plaintiff has failed to serve Dr. Kuhn. The Court should dismiss Dr. Kuhn from this case with prejudice, award him his attorneys' fees for this motion, and sanction Plaintiff under the Oklahoma Citizens Participation Act.

## II.     BACKGROUND

### A.     Plaintiff's Allegations Against Dr. Kuhn

Plaintiff filed this sprawling, 148-paragraph Amended Complaint against twenty-

six (26) defendants, including Dr. Kuhn. Relevant to Dr. Kuhn, Plaintiff asserts as follows:

> In concert with Gregory's complaint and UNB's appointment of a new
> 'investigation committee,' Kuhn published a fraudulent article entitled 'The
> Douglas Mastriano scandal' on July 31, 2023, in the Journal 'Canadian
> Perspectives on Academic Integrity', Vol. 6, No.1 (2023), all in order to
> defraud Colonel Mastriano . . .
>
> He furthermore used a Canadian Symposium for Academic Integrity (CSAI)
> 2023 program in June 2023 at the University of Toronto to scheme with UNB
> to fraudulently reopen a closed investigation into Colonel Mastriano's PhD
> to defraud him of his intangible property...

Am. Compl. ¶ 51. Plaintiff does not set forth any allegations referencing conversations or

written communications between Dr. Kuhn and any other Defendant.

### B.     Facts Relevant to Personal Jurisdiction[1]

Dr. Kuhn is a Canadian citizen. Ex. 1, Kuhn Decl. ¶ 1. He resides in Ottawa, which

is in the province of Ontario, Canada. *Id.* ¶ 2. He is a Principal Research Officer at the

National Research Council (the "NRC"). *Id.* ¶ 3. Dr. Kuhn works from the NRC office in

Ottawa, Ontario. *Id.* ¶ 3. Dr. Kuhn has never conducted business or even been physically

present in Oklahoma. *Id.* ¶ 4. He has no interstate business that involves Oklahoma. *Id.*

¶ 4. In 2023, Dr. Kuhn drafted an Abstract ("Abstract") for the purpose of submitting it to

a committee of faculty at the University of Manitoba, in Canada, which was organizing an

---

[1] It is proper for the Court to consider these facts on a motion to dismiss for personal
jurisdiction. *Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1291 n.5 (W.D.
Okla. 2018) (citation omitted).

2

Academic Integrity symposium. *Id.* ¶ 5. The Abstract was a stand-alone document with no article or other substantive writing attached. *Id.* ¶ 5. Dr. Kuhn submitted the Abstract to the university committee with a request to present a case study at the University of Manitoba's 2023 Canadian Symposium on Academic Integrity. *Id.* ¶ 5.

The faculty committee granted Dr. Kuhn's request. *Id.* ¶ 7. The symposium was held on June 1, 2023, and on June 2, 2023, at the Winnipeg campus of the University of Manitoba (the "Winnipeg Symposium"). *Id.* ¶ 7. Dr. Kuhn spoke at the Winnipeg Symposium on June 1, 2023. *Id.* ¶ 7. In his case study presentation, he addressed the manner by which the University of New Brunswick addressed issues related to requests for Plaintiff's dissertation. *Id.* ¶ 7; *see also* Kuhn Decl. Ex. 1, at 3 ("The focus [of this case study] is on [the University of New Brunswick's] response to credible allegations of academic fraud surrounding the granting of a PhD thesis, in the face of attention from the media."). *Id.* at 9–11 (summarizing conclusions).

Nothing in the substance of Dr. Kuhn's prepared remarks or in the substance of his answers to any question at the Winnipeg Symposium was directed to the State of Oklahoma or any resident of the state. *Id.* ¶ 6. The Winnipeg Symposium was attended by approximately 130 attendees. *Id.* ¶ 10. It was not broadcast or recorded for broader public distribution. *Id.* ¶ 10. Thus, the only audience that heard Dr. Kuhn speak were the attendees of the Winnipeg Symposium in Canada.

The Abstract that Dr. Kuhn had submitted to speak at the symposium was made publicly available by the University of Calgary in July 2023 through its journal, *Canadian*

*Perspectives on Academic Integrity. Id.* ¶ 11; *see also* Kuhn Decl. Ex. 2. *Canadian Perspectives on Academic Integrity* is an online journal with a primary objective of "provid[ing] Canadian practitioners working in the area of academic integrity with a venue to share experiences and insights about their work." *About the Journal,* Canadian Perspectives on Academic Integrity, https://journalhosting.ucalgary.ca/index.php/ai/about. The online journal "was developed to give practitioners and researchers of academic integrity in the Canadian context a space to share experiences and expertise." *Id.*; *see also id.* ("This journal is focused on the Canadian context").

Dr. Kuhn is not aware of a "Canadian Symposium for Academic Integrity" that was held at the University of Toronto as alleged in the Amended Complaint. Am. Compl. ¶ 51; Kuhn Decl. ¶ 13. If any such event were held, he did not present at it, did not attend it, and was not associated with it in any manner. *Id.* ¶ 13. Dr. Kuhn submitted his Abstract to the University of Manitoba committee on his own behalf, not as a representative of the NRC. *Id.* ¶ 14. Dr. Kuhn made his presentation at the Winnipeg Symposium on his own behalf, not as a representative of the NRC. *Id.* ¶ 14. Dr. Kuhn made this clear to all attendees in his presentation's first slide:

> DISCLAIMER: this presentation does not in any way represent the views
> of my employer! (I'm on my own time and paying my own way here)

Kuhn Decl. Ex. 1, at 1. He placed a similar disclaimer on all slides containing any of his substantive remarks. The disclaimers were printed in a green colored font for emphasis. *Id.* at 1–17.

### C.    Facts Relevant to Service of Process

Plaintiff filed his Complaint on May 31, 2024. (Dkt. 1). On July 2, 2024, while on vacation, Dr. Kuhn received an email from the Plaintiff's lawyer, asking that he waive service of the Plaintiff's Complaint. Kuhn Decl. ¶ 15. Dr. Kuhn did not agree to waive service. *Id.* ¶ 15. On August 27, 2024, Dr. Kuhn received a package with his name on it through interoffice mail at his NRC office in Ottawa. *Id.* ¶ 16. The package arrived with two other packages addressed to individuals other than Dr. Kuhn, which Dr. Kuhn returned unopened to his supervisor. *Id.* ¶ 16. The package bearing Dr. Kuhn's name was sent by mail to the NRC. *Id.* ¶ 17. Dr. Kuhn had not authorized the NRC or any of its personnel to accept service of process on his behalf. *Id.* ¶ 18. The contents of the package addressed to Dr. Kuhn included a Civil Cover Sheet, a Summons issued to "National Research Council," and a copy of the Plaintiff's Complaint. *Id.* ¶ 19*, see also* Kuhn Decl. Ex. 3. The package did not include a Summons issued in Dr. Kuhn's name. *Id.* ¶ 21.

### D.    Procedural Background

In lieu of answering Plaintiff's Complaint, Dr. Kuhn filed a Motion to Dismiss on October 16, 2024. (Dkt. 105). Dr. Kuhn's Motion requested dismissal under (i) Fed. R. Civ. P. 12(b)(2) on the ground that this Court does not have jurisdiction over him, (ii) Rule 12(b)(6) on the ground that Plaintiff failed to state a claim upon which relief could be granted, and (iii) Rule 12(b)(5) for insufficient service. As part of his Response to Dr. Kuhn's Motion, Plaintiff sought leave to amend his Complaint (Dkt. 120 at 24), and thereafter, filed a motion to amend that Dr. Kuhn opposed (Dkt. 126, 131).

Through an Order dated February 4, 2025, this Court (Judge Friot) granted Plaintiff leave to amend his Complaint and struck, as moot, Dr. Kuhn's Motion on all issues other

than service of process. (Dkt 132, 133). The Order addressed the substance of Dr. Kuhn's arguments related to service of process, emphatically rejecting Plaintiff's assertion that Dr. Kuhn was served via the Court's electronic filing system and finding the argument to be "preposterous." (Dkt. 132 at 11, n.3). The Court held that "plaintiff's service upon [Dr. Kuhn] was invalid." *Id*. at 11.   In lieu of dismissing the Complaint, the Court quashed service of process, and provided Plaintiff with 45 days to serve his amended pleading upon Dr. Kuhn. *Id*.  Thereafter, upon Plaintiff's request, this Court allowed Plaintiff an additional six months, to September 5, 2025, to effectuate service (Dkt.138). There is no dispute that Plaintiff missed the deadlines imposed by the Court and, to date, has not served Dr. Kuhn (Dkt. 143).

## III.    ARGUMENT[2]

### A.    The Court Should Dismiss the Complaint Against Dr. Kuhn Pursuant To Rule 12(b)(2) Because This Court Does Not Have Personal Jurisdiction Over Him.

Personal jurisdiction is a fundamental aspect of judicial authority. It ensures that a court has the power to adjudicate matters involving the parties before it. Here, this Court does not have personal jurisdiction over Dr. Kuhn under either diversity jurisdiction or federal question jurisdiction. Dr. Kuhn is a Canadian citizen, and none of the actions Plaintiff attributes to him in the Complaint were directed to Oklahoma or its residents. Absent that relationship, jurisdiction fails, notwithstanding Plaintiff's conspiracy allegations. Proceeding with this case would violate Dr. Kuhn's due process rights under

---

[2] Kuhn joins and incorporates by reference the arguments in Defendant Gregory's Motion to Dismiss (Dkt. 89).

the Fifth and Fourteenth Amendments.

Plaintiff's Complaint asserts five claims against Dr. Kuhn, four based upon alleged violations of federal law (Count One through Count Four) and two based upon state law (Count Nine and Ten). The analysis of personal jurisdiction differs based upon the claim. However, jurisdiction over Dr. Kuhn fails under any standard. Thus, the Court should dismiss Plaintiff's Complaint against Dr. Kuhn pursuant to Fed. R. Civ. P. 12(b)(2).

### 1.     The Court Does Not Have Diversity Jurisdiction.

In connection with Plaintiff's state law claims (Counts Nine and Ten) and Sherman Act claims (Counts Two and Three),[3] the Court must assess personal jurisdiction over Dr. Kuhn by using the analysis applied in a diversity action. Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction. *XMission, L.C., v. Fluent LLC*, 955 F.3d 833 (2020). Neither is present here.

### (a)     There is no general jurisdiction in Oklahoma.

A person is subject to general jurisdiction within a state if his contacts with the State are so continuous and systematic that the person is essentially at home in the state. *Id*. Plaintiff makes no allegation that alleges, or even implies, that Dr. Kuhn is "at home" in the State of Oklahoma. Dr. Kuhn is a citizen of Canada. Ex. A, Kuhn Decl. ¶ 1. He resides and works in Ottawa, Ontario. *Id*. ¶ 2–3. Dr. Kuhn is not subject to general jurisdiction in Oklahoma, and Plaintiff does not even make any allegations on which he could be.

---

[3] The Sherman Act does not have a nationwide service of process provision. *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014); *see also Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 496 (S.D. Iowa 2007). As such, the state long-arm statute governs.

**(b)**    **There is no specific jurisdiction in Oklahoma.**

To establish specific jurisdiction over Dr. Kuhn, jurisdiction must be proper under the laws of Oklahoma and the exercise of that jurisdiction must comply with the due process clause of the Fourteenth Amendment. *Dental Dynamics v. Jolly Dental Grp. LLC*, 946 F.3d 1223, 1228 (2020). Oklahoma's long-arm statute authorizes jurisdiction to the full extent of the Oklahoma and United States Constitutions; thus, the analysis "collapses into a single due process inquiry" that assesses: (i) whether Dr. Kuhn "purposefully established minimum contacts within [Oklahoma]"; and, (ii) whether the assertion of personal jurisdiction over Dr. Kuhn "comport[s] with traditional notions of fair play and substantial justice." *Id*. The answer to both inquiries is a resounding "no."

**(i)**    **Dr. Kuhn lacks the requisite minimum contacts with Oklahoma.**

To satisfy the minimum contacts test, Plaintiff must show that: (i) Dr. Kuhn "purposely directed [his] activities at residents of [Oklahoma]"; and, (ii) Plaintiff's injuries "aros[e] out of" Dr. Kuhn's forum related activities. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (2017).

The Tenth Circuit analyzes the purposeful direction element of the analysis using a number of different frameworks that examine whether there exists: (i) continuing relationships with forum state residents; (ii) deliberate exploitation of the forum state market; and, (iii) harmful effects in the forum state. *Id.* at 905. Plaintiff makes no allegations going to either of the first two frameworks; he alleges no continuing relationships and no market exploitation by Dr. Kuhn. Thus, the third framework—whether

there were harmful effects in Oklahoma—is the only arguably relevant test.

To establish such harmful effects, Plaintiff "must show (a) an intentional action that was (b) expressly aimed at [Oklahoma] with (c) knowledge that the brunt of the injury would be felt in Oklahoma. *XMission*, 955 F.3d at 841. He does not do so. Plaintiff alleges, broadly and conclusorily, that Dr. Kuhn was part of a "multi-year racketeering and anti-trust enterprise seeking to derivatively steal, use and thereupon debunk his work." Am. Compl. at 4 (introduction). Plaintiff identifies only two alleged activities that he claims comprised Dr. Kuhn's alleged role in this enterprise: (i) he drafted his Abstract (the content of which was subsequently made public in a Canadian online journal); and, (ii) he participated as a speaker at a Canadian symposium. Am. Compl. ¶ 51. Plaintiff cannot meet his burden of even alleging, much less showing, that either of these alleged activities were directed at any resident of the State of Oklahoma (intentionally or otherwise) with knowledge that the brunt of any injury would be felt in Oklahoma.

Dr. Kuhn directed his action of drafting the Abstract to the committee of faculty at the University of Manitoba who were organizing the Winnipeg Symposium (on the subject of Academic Integrity), not to any resident of Oklahoma. Kuhn Decl. ¶ 5–6. And while Dr. Kuhn played no active role in the public dissemination of his Abstract through *Canadian Perspectives on Academic Integrity* (the University of Calgary's online journal), Plaintiff alleges no facts (because none exist) that could even imply that the dissemination of his Abstract was directed to the residents of Oklahoma. *Canadian Perspectives on Academic Integrity* is an online journal compiled by a Canadian university (the University of

9

Calgary), dedicated to the topic of academic integrity in the "Canadian context," and directed to a Canadian audience.[4] Moreover, nothing in the substance of the Abstract even mentions the state of Oklahoma. Kuhn Decl. Ex. 2. The Abstract notifies prospective symposium attendees that they will learn about the ethical issued faced by the University of New Brunswick (also a Canadian university). *Id.* at 2. There is no plausible argument that Dr. Kuhn or anyone else directed the Abstract to residents of Oklahoma.

Nor did Dr. Kuhn or anyone else direct Dr. Kuhn's participation in the Winnipeg Symposium to residents of Oklahoma. Kuhn Decl. ¶ 6. The Winnipeg Symposium took place in Winnipeg, a city in the province of Manitoba, Canada. Dr. Kuhn directed his remarks to the in-person attendees. *Id.* ¶ 9.  As the symposium was neither broadcasted nor recorded for broader public distribution, *id.* ¶ 10, the 130 attendees in Winnipeg constitute the exclusive audience that heard Dr. Kuhn's presentation. While Plaintiff offhandedly references "videotaped lecture(s)" (Am. Compl. ¶¶ 135, 143), this bald allegation is incorrect: there was one presentation, and it was not broadcast or recorded. Kuhn Decl. ¶ 10. There is no conceivable basis upon which Plaintiff can allege and show that Dr. Kuhn directed his participation in the Winnipeg Symposium to the residents of Oklahoma.

And like the Abstract, Dr. Kuhn did not direct any of the substance of his presentation to Oklahoma or its residents. Dr. Kuhn's talk related to the manner by which the University of New Brunswick addressed issues related to requests for Plaintiff's

---

[4] *About the Journal,* Canadian Perspectives on Academic Integrity, https://journalhosting.ucalgary.ca/index.php/ai/about.

dissertation. *Id.* ¶ 7*; see also* Kuhn Decl. Ex. 1 at 3, 9-11.  Even reading the Complaint most generously, the only conceivable link to Oklahoma is Dr. Kuhn's mention of the book written by James Gregory (a former Oklahoma resident), and even that was merely one of several contextual facts. *See generally id*. There is no conceivable argument that Dr. Kuhn intentionally aimed his participation in the Winnipeg Symposium at Oklahoma and knew the brunt of injury would be felt there. *XMission*, 955 F.3d at 841.

Finally, while Dr. Kuhn is employed by the NRC (which Plaintiff dismissed as a Defendant), Dr. Kuhn submitted his Abstract and participated in the Winnipeg Symposium on his own behalf. Kuhn Decl. ¶ 14, *see also* Kuhn Decl. 1-21 (disclaimer displayed prominently on each page). Thus, no alleged business, characteristic, or action of the NRC can be attributed to Dr. Kuhn when determining personal jurisdiction. *Ace Invs., LLC v. Rubin*, 494 F. App'x. 856 (10th Cir. 2012).

Plaintiff cannot show that Dr. Kuhn purposely directed his activities at residents of Oklahoma; thus, he cannot make the showing necessary for this Court to exercise jurisdiction over Dr. Kuhn. As Plaintiff cannot meet this burden, the analysis need go no further. *Dental Dynamics,* 946 F.3d at 1229.

### (ii) Fair play and substantial justice factors weigh against this Court asserting jurisdiction.

Even if Plaintiff could somehow meet the burden of showing minimum contacts, personal jurisdiction over Dr. Kuhn still fails because exercising jurisdiction over Dr. Kuhn here would not "comport with traditional notions of fair play and substantial justice." *Dental Dynamics,* 946 F.3d at 1228.

11

This inquiry "requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In determining whether the exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice," courts consider five factors, all of which compel a finding that jurisdiction over Dr. Kuhn would be unreasonable even if Plaintiff could show the requisite minimum contacts:

> (1) burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* at 1095 (citation omitted).

First, the Court's exercise of jurisdiction here would impose the substantial burden on Dr. Kuhn of mounting an out-of-state (and, indeed, an *out-of-country*) defense. Where Dr. Kuhn has no business dealings, residence, or office in Oklahoma, defending this action here would be burdensome as a matter of law. *Dental Dynamics*, 946 F.3d at 1232. Second, Oklahoma has no interest in this dispute as it relates to Dr. Kuhn. Indeed, the only interest Oklahoma could possibly have in this dispute at all is that one out of twenty-six defendants formerly resided in the state. To the extent that even qualifies as an interest, it does not make the exercise of jurisdiction over Dr. Kuhn reasonable. Third, Plaintiff asserts nothing in his Amended Complaint to suggest that he could not receive "convenient and effective" relief in another forum, such that his chance of recovery "will be greatly diminished by forcing him to litigate in another forum." *OMI Holdings, Inc.,* 149 F.3d at 1097. Fourth,

all but one of the twenty-six defendants are located outside of Oklahoma (and many outside the country). *Id*. Fifth, the social policies factor is neutral; there are no social policies at issue here. *Id*.

Importantly, showing reasonableness operates on a "sliding scale" depending on the strength or weakness of Plaintiff's minimum contacts showing. *Dental Dynamics*, 946 F.3d at 1229. Here, Plaintiff alleges no meaningful contacts between Dr. Kuhn and Oklahoma. Thus, Dr. Kuhn's burden on the reasonableness factors is minimal. *Id*. Jurisdiction is not proper over Dr. Kuhn with regard to Counts Two, Three, Nine, and Ten.

### 2.    The Court Does Not Have Federal Question Jurisdiction.

To assert federal question personal jurisdiction over a defendant, "the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (*citing Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). Once again, the answers to these questions are "no."

### (a)    Neither the Sherman Act nor RICO provide for nationwide service of process here.

The Sherman Act (Counts Three and Four) does not have a nationwide service of process provision. *Courboin v. Scott*, 596 F. App'x 729, 732 (11th Cir. 2014); *see also Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 496 (S.D. Iowa 2007). As such, the state long-arm statute governs, and for the reasons discussed above, Plaintiff cannot establish personal jurisdiction over Mr. Kuhn.

13

Under RICO (Counts One and Two), if the action is brought in a district where personal jurisdiction can be established over at least one defendant, nationwide service of process is allowed on other defendants "if required by the ends of justice." *See Cory v. Aztec Steel Bldg., Inc*., 468 F.3d 1226, 1229–31 (10th Cir. 2006); *see also Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015) ("ends of justice" analysis is the "first step" in determining whether 18 U.S.C. § 1965 "potentially confers jurisdiction by authorizing service of process on defendants"). To do so, though, Plaintiff must bear the burden of "demonstrat[ing] that § 1965 potentially confers jurisdiction by authorizing service of process on defendants." *Hart*, 605 F. App'x at 699. Plaintiff must point to facts alleged in his Amended Complaint supporting that "ends of justice" require nationwide service of process in the case. *Id*. Neither allegations regarding a confluence of defendants in the forum state, nor allegation that the "ends of justice is a flexible concept" are sufficient to meet the standard. *Id*. Here, Plaintiff's Amended Complaint is devoid of any facts that support that the "ends of justice" require haling Dr. Kuhn into Oklahoma. Plaintiff provides only a conclusory statement that "process may be served in any judicial district of the United States 'when required by the ends of justice,'" Am. Compl. ¶ 5, and he articulates no facts to suggest why he claims justice so requires. Because Plaintiff has not met his burden to establish why justice so requires haling Mr. Kuhn an "unexpected forum," *Cory*, 468 F.3d at 1240, nationwide service of process under RICO is improper here.

**(b)    Exercising personal jurisdiction over Dr. Kuhn does not comport with due process.**

Even if Plaintiff could show that the "ends of justice" justify nationwide service of

process, the Court's exercise of jurisdiction must still comport with due process under the Fifth Amendment, which requires that the forum be "fair and reasonable" to Dr. Kuhn. *Klein*, 786 F.3d at 1317, 1318 (citation omitted). Jurisdiction is not proper where "the forum district burdens the defendant with 'constitutionally significant inconvenience,'" as determined by examination of the following non-exclusive factors: (i) the extent of contact with the forum state; (ii) the inconvenience of having to litigate in a foreign jurisdiction, including considerations related to the interstate character of Dr. Kuhn's business and the distance between the forum and his residence; (iii) judicial economy; (iv) the probable situs of the discovery proceedings, and whether they are outside of the place of Dr. Kuhn's residence; and (v) the nature of Dr. Kuhn's activities and the extent of its impact beyond his state/country's borders. *Id.* at 1318*; see also Peay*, 205 F.3d at 1212. All factors weigh against exercising jurisdiction.

As discussed above, Plaintiff's allegations do not reflect any meaningful contact with Oklahoma; the actions Plaintiff attributes to Dr. Kuhn occurred in Canada, with no impact on Oklahoma (factors one and five). Dr. Kuhn has no interstate business that involves Oklahoma, Ex. A Kuhn Decl. ¶ 4, he lives in Ottawa, which is over 1,500 miles from Oklahoma City,[5] and his need to mount a defense to a case in Oklahoma is burdensome as a matter of law (factor two). *Dental Dynamics*, 946 F.3d at 1232. With only one of twenty-six Defendants residing in Oklahoma, there can be no basis for Plaintiff to assert that judicial economy favors an exercise of personal jurisdiction over Dr. Kuhn in

---

[5] *See* https://maps.app.goo.gl/i7tSF7TgDcrvUzAc6.

this case (factor three). The bulk of discovery proceedings will occur outside of Ottawa, as only one defendant is located there (factor four). Defending the claims in Oklahoma presents constitutionally significant inconvenience to Dr. Kuhn.

Because it is clear that Oklahoma is an unduly inconvenient forum, the Court's exercise of jurisdiction over Dr. Kuhn can only comport with due process if a federal interest in litigating in Oklahoma outweighs the burden imposed on Dr. Kuhn. *Peay*, 205 F.3d at 1213. Balancing the federal interest involves consideration of the policies advanced by the RICO statute, the relationship between service of process and the advancement of these policies, the connection between Oklahoma and the vindication of Plaintiff's rights under the statute, and concerns of judicial efficiency and economy. *Id.*

While RICO may have broad remedial purposes, Plaintiff does not and cannot articulate how those purposes are served by adjudicating a claim against Dr Kuhn—whose alleged actions all occurred in Canada—in Oklahoma, a forum that appears to have been chosen by Plaintiff because a single defendant is a former resident. For all of the reasons analyzed above, there can be no valid argument that there is any federal interest in the Plaintiff adjudicating his claims against Dr. Kuhn in Oklahoma.

### 3. Plaintiff's co-conspirator allegations do not confer jurisdiction.

Finally, to the extent Plaintiff argues that Dr. Kuhn participated in a conspiracy that included a former Oklahoma resident, that still does not confer personal jurisdiction. Plaintiff's Amended Complaint fails to set forth any cognizable allegations of any meeting of the minds between Dr. Kuhn and any other Defendant. Plaintiff's failure in this regard

16

alone is fatal to an argument advocating for personal jurisdiction based upon a conspiracy theory. *Melea Ltd. v Jawar SA*, 511 F.3d 1060, 1070 (10th Cir. 2007).

Even assuming, *arguendo*, that Plaintiff's conspiracy allegations state a claim for RICO conspiracy (which they do not), Plaintiff would still have to show that Dr. Kuhn had minimal contacts with Oklahoma. "To hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability." *Melea*, 511 F.3d at 1070. In addition to pleading a prima facie conspiracy, due process requires a defendant also have minimum contacts with the forum. *Id.* "[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum." *Id*

As discussed above, Plaintiff cannot show Dr. Kuhn took any action in Oklahoma, nor that Dr. Kuhn directed any alleged actions towards the state. Even if, for the sake of argument, Dr. Kuhn's Abstract and his presentation at the Winnipeg Symposium were considered actions in furtherance of a conspiracy, those actions are limited to Canada. There is no plausible basis to conclude that the actions were directed to Oklahoma.

## B.     The Court Should Dismiss the Complaint Against Dr. Kuhn Pursuant To Rule 12(b)(5) For Insufficient Service.

Dr. Kuhn resides in Canada. Ex. A, Kuhn Decl. ¶ 1. Service on an individual in a foreign country is governed by Fed. R. Civ. P. 4(f), which provides for service in a number of specifically articulated means. *See* Fed. R. Civ. P. 4(f). Nearly eight months ago, this

17

Court held that Plaintiff failed to properly serve Dr. Kuhn, and in that span of time, Plaintiff has failed to remedy his failure. Dismissal with prejudice under Rule 12(b)(b)(5) is appropriate at this stage.

Plaintiff has been apprised of his need to properly effectuate service since the very beginning of this case. In August 2024, this Court ordered Plaintiff to show cause for his failure to effect service upon Dr. Kuhn and others (Dkt. 67). In October 2024, Dr. Kuhn raised the deficiency of service in his Motion to Dismiss (Dkt. 105), and this Court expressly affirmed that service was deficient in its February 4, 2025 Order (Dkt. 132). The Court gave Plaintiff not one, but two opportunities to serve Dr. Kuhn following Plaintiff's previously flawed effort (Dkt. 132, 138), and Plaintiff simply has failed to do so (Dkt. 143) (referencing failure to serve Dr. Kuhn by the September 5, 2025 deadline). Plaintiff has given no proper reason to justify his failure. After the lapse of 16 months, Plaintiff's claims should be dismissed, with prejudice, pursuant to Fed. R. Civ. P 12(b)(5). *See, e.g. Caldwell v. Martin*, 104 F.3d 367, 1996 WL 731253 (10th Cir., Dec. 20, 1996) (unpublished) (affirming dismissal for failure to timely serve where "[t]he district court had already granted plaintiff two extensions of time," and "given a considerable length of time" to serve defendants); *Heartland Ceramic Applications, Inc. v. Pro-tek-USA, LLC*, No. 15-CV-242-TCK-PJC, 2016 WL 447498, at *3 (N.D. Okla. Feb. 4, 2016) (dismissing complaint, with prejudice, for failure to timely serve where "two generous extensions" were granted to plaintiff to effectuate service).

### C.    Plaintiff Lacks Standing to Assert Any Claims Under RICO And Under The Sherman Act

Both RICO and the Sherman Act contain an identical enhanced standing requirement that is more "rigorous" that typical Article III "injury-in-fact" standing. *Tal v. Hogan,* 453 F.3d 1244, 1253 (10th Cir. 2006).[6] Both statutes require Plaintiff to allege and then prove that he was "injured in his business or property by the conduct constituting the violation." *Id.,* at 1254. That "conduct" being the alleged racketeering acts for RICO, 18 U.S.C. § 1964(c), and the violation of the antitrust laws for the Sherman Act, *Ashley Creek Phosphate Co. v. Chevron USA, Inc.,* 315 F.3d 1245, 1254 (10th Cir. 2003). Here, Plaintiff fails to plead either.

Starting with the RICO claims, Plaintiff's Amended Complaint is devoid of any allegations that Dr. Kuhn's conduct caused him concrete financial loss. To the contrary, in the RICO count Plaintiff prattles off a number of alleged injuries, which he concedes are "intangible," including alleged: "lost economic interests in his books, in his teaching and speaking, and in his university professorship opportunities, in his future book and movie/tv script opportunities and in his academic and property interests in his PhD." Am. Compl. ¶ 63. It is black letter law that, even taking such "intangible" injuries as true for purposes of this motion, they are not recoverable under RICO because they do not constitute injuries to Plaintiff's "business or property."[7] *See, e.g., Maio v. Aetna, Inc.,* 221 F.3d 472, 483 (3d

---

[6] The enhanced standing requirement is identical for both statutes because it is well known that Congress modeled RICO's civil remedies provision—18 U.S.C. § 1964(c)—on the Clayton Act. *See Holmes v. Secs. Inv. Prot. Corp.,* 503 U.S. 258, 267 (1992); *see also Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496 (1985).

[7] At one point in the Amended Complaint, Plaintiff also appears to claim personal injury damages from "sleepless nights, physical illness and extreme emotional pain and suffering." Am. Compl. ¶ 47. Once again, it is black letter law that such personal injury

Cir. 2000); *Bowen v. Adidas Am. Inc.,* 84 F.4th 166, 177 (4th Cir. 2023); *Gil Ramirez Group, L.L.C. v. Houston Ind. School Dist.,* 786 F.3d 400, 408–09 (5th Cir. 2015); *Regions Bank v. J.R. Oil Co., LLC,* 387 F.3d 721, 728 (8th Cir. 2004); *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1087 (9th Cir. 2002).

Moreover, these alleged damages are all speculative and untethered to any conduct (let alone racketeering activity) by Dr. Kuhn. For example, Plaintiff alleges damages from lost "movie/tv script opportunities," but provides no information alleging that he actually had any such opportunities, much less that he lost them because of what he claims Dr. Kuhn did. Rather, he seems to be alleging that he lost the possible chance at "movie/tv script opportunities" in the future, which is plainly insufficient.

To satisfy RICO's standing requirement, Plaintiff must assert "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group, LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010). Plaintiff falls well short of doing so. Even the most generous reading of Plaintiff's alleged damages cast them as "remote," "purely contingent," and "indirect," any of which renders them insufficient. *Id.* In doing so, Plaintiff asks the Court to provide the necessary causation for him by inviting speculation that "go[es] beyond the first step," which the U.S. Supreme Court has forbidden. *Id.* (*citing Holmes,* 503 U.S. at 271–72).

Plaintiff's Sherman Act allegations are similarly deficient to confer standing. Plaintiff must, but does not, allege an "antitrust injury," which embraces the identical

---

damages are not recoverable under RICO or the Sherman Act. *Tal,* 453 F.3d at 1253.

"business or property" standard as used in RICO (and discussed above), but must also be an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Tal,* 453 F.3d at 1253 (*citing Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977)). Here, at most Plaintiff alleges injuries to his own personal interests. *See, e.g.,* Am. Compl. ¶¶ 41–49. But these are not "antitrust injuries" because "[t]he primary concern of the antitrust laws is the corruption of the competitive process, not the success or failure of a particular firm." *Tal,* 453 F.3d at 1258 (*citing Brunswick,* 429 U.S. at 488). Moreover, as noted above, to the extent Plaintiff alleges any specific harm, it is, at best, speculative and incidental, which does not confer Sherman Act standing. *Tal,* 453 F.3d at 1258 ("exclud[ing] secondary or remote injuries . . . incidental and speculative [injuries are] insufficient") (*citing Comet Mech. Contractors, Inc. v. E.A. Cowen Constr., Inc.,* 609 F.2d 404, 406 (10th Cir. 1980)).

### D.    Plaintiff Fails To State Either Of His Claims Under RICO.

In the Amended Complaint, Plaintiff asserts two RICO claims against Dr. Kuhn, one under § 1962(c)—*i.e.,* that he conducted a RICO enterprise's affairs through a pattern of racketeering activity (Count I)—and one under § 1962(d)—*i.e.,* that he conspired to violate § 1962(c) (Count II). Plaintiff fails to state a claim for either. There are no allegations that Dr. Kuhn committed any racketeering acts—much less a pattern—or that an enterprise even existed—much less that Dr. Kuhn conducted its affairs (*see* Sections 1 and 2, below). Since Plaintiff "has no viable claim under . . . § 1962(c), then [his] subsection (d) conspiracy claim fails as a matter of law." *Tal,* 453 F.3d at 1270.

21

### 1.    Plaintiff does not allege that Dr. Kuhn committed any racketeering activity, let alone the required "pattern."

Two of the four necessary elements of Plaintiff's § 1962(c) RICO claim go directly to Dr. Kuhn's alleged conduct. Plaintiff must allege and then prove that Dr. Kuhn not only committed "racketeering activity"—*i.e.,* that he committed violations amongst those Congress enumerated in § 1961(1)—but that he committed a "pattern" of such violations—*i.e.,* that he committed "at least two acts of racketeering activity" within ten years (among other requirements), 18 U.S.C. § 1961(5). The U.S. Supreme Court has described the purported "pattern of racketeering activity" as the "heart of any RICO complaint," *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987), and the "key requirement" that a RICO plaintiff must allege and prove, *H.J. Inc. v. Nw. Bell Tele., Co.,* 492 U.S. 229, 236 (1989). Yet, here, Plaintiff's allegations in this critical area fall well short of what is required.

Plaintiff's allegations of supposed conduct that violates the RICO statute are all found in Paragraph 58 of the Amended Complaint, within the § 1962(c) RICO count itself. Plaintiff lists eight categories of conduct, all of which are deficient as both a matter of law and of pleading. They are deficient as a matter of law because they allege conduct that does not constitute "racketeering activity" as the RICO statute defines it. The RICO statute explicitly enumerates the violations that qualify as "racketeering activity." 18 U.S.C. § 1961(1). Conduct that does not appear on that enumerated list does not constitute "racketeering activity." *Dalton v. City of Las Vegas,* 282 F. App'x. 652, 654–55 (10th Cir. 2008). Yet Plaintiff ignores this, and purports to premise his RICO claims on conduct like

"interfering with the American elections," "opening [and re-opening] a false investigation," "refusal to notify and provide due process," "refusal to follow University and Tri-Agency ethics and professional rules," "defamat[ion]," and "speaking to the American press criticizing and discussing his dissertation." Am. Compl. ¶ 58. *Not one of these* appears anywhere on RICO's enumerated list of "racketeering activity."

These categories of conduct likewise fail as a matter of pleading because Plaintiff does not make any allegations that Dr. Kuhn committed these acts. This is no mere oversight. Repeatedly throughout the Complaint, Plaintiff fails to allege any actionable conduct by Dr. Kuhn. And where Plaintiff does attempt to allege facts that could arguably be read as going to the "pattern of racketeering" element, he consistently excludes Dr. Kuhn from them. For example, Plaintiff alleges a number of so-called "schemes" perpetrated against him, *all* of which reference other specific Defendants (albeit collectively) but *none* of which reference Dr. Kuhn. *See, e.g.,* Am. Compl. ¶ 20 ("scheme" to release Plaintiff's embargoed thesis referencing UNB, Mazerolle, Rendell, MaGee, and Gregory, but not Kuhn), ¶ 21 (a "letter horrifically defaming [Plaintiff]" referencing sixteen individuals, but not Kuhn), ¶¶ 23-24 ("scheme" to "debunk" Plaintiff's research referencing Gregory). Thus, Plaintiff does not even allege Dr. Kuhn participated in these "schemes," much less that he conducted the RICO enterprise's affairs in connection with them. *Tal,* 453 F.3d at 1269. And even if Plaintiff had lumped Dr. Kuhn into these allegations, that would still be insufficient to state a claim as courts routinely reject such collective allegations in multi-defendant cases. *See, e.g., Jacobs v. Credit Suisse First Bos.,*

No. 11-CV-00042-CMA-KLM, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011).

Lastly, Plaintiff's RICO counts do not include any reference to the mail and wire fraud statutes (which are among RICO's enumerated "racketeering activity" conduct). Nonetheless, Plaintiff may attempt to argue that he has asserted a pattern of mail and wire fraud. This argument, should it be made, fails as to Dr. Kuhn on the face of the Complaint. Stated simply, Plaintiff does not allege *any* of the elements of mail or wire fraud against Dr. Kuhn, and he certainly does not assert them with the particularity Rule 9(b) requires. *See Tal,* 453 F.3d at 1263 ("The particularity requirement of Rule 9(b) . . . applies to claims of mail and wire fraud."). Plaintiff does not make even the basic allegations that Dr. Kuhn engaged in any "scheme or artifice to defraud" or that Dr. Kuhn used the "mails [or interstate wires] for the purpose of executing the scheme." *Id.* And Plaintiff certainly does not allege "the time, place and contents" of a false representation" by Dr. Kuhn, or the "purpose of the mailing [or wire] within the defendant's fraudulent scheme." *Id.* Indeed, the sum total of Plaintiff's allegations against Dr. Kuhn are found in a single paragraph of the Complaint, Am. Compl. ¶ 51 (a portion of which Plaintiff then repeats in ¶¶ 135, 143), and they *all* involve a print article or verbal statements, *none* of which had any connection to the U.S. mails or interstate wires. Even if the allegations are accepted as true, they do not and cannot state a claim for mail/wire fraud.

### 2.    Plaintiff does not define any RICO "enterprise," much less plead how its members associated in fact and worked together.

To plead an actionable RICO "enterprise," Plaintiff must allege and then prove three things: (i) a "purpose"; (ii) a "relationship" among those associated with the "enterprise";

and, (iii) sufficient "longevity" to enable the members to pursue the "purpose." *Boyle v. United States*, 556 U.S. 938, 946–47 (2009). Plaintiff's "enterprise" allegations fall short of pleading even one, much less all three, of these components.

As a threshold matter, Plaintiff does not even attempt to define or identify the members of the supposed "enterprise." Plaintiff's sole allegation is a conclusory assertion that everyone he has sued—whom he improperly lumps together in the term "Defendants"— was either "employed by, associated with, or joined in action with, the enterprise." Am. Compl. ¶ 57. Plaintiff offers nothing by way of which Defendants he claims were "employed by" the "enterprise" versus those that he claims merely "associated with" or "joined" the "enterprise." And there is, quite literally, not one single allegation about Dr. Kuhn in this regard. But for his status as one of the many "Defendants" in this case, there is nothing in the Complaint that would even put Dr. Kuhn on notice that he is alleged to have participated in this RICO "enterprise," much less how.

Plaintiff's vague and rote assertion that every Defendant did something—whether it be employment, association, or joining—to participate in the "enterprise" is insufficient as a matter of law. Plaintiff's Complaint is devoid of any allegation that Dr. Kuhn maintained the necessary "interpersonal relationships" to effectuate the "enterprise's" stated purpose, *i.e.,* allegations evidencing that Kuhn "joined together" with other "enterprise" participants. *United State v. Hutchinson,* 573 F.3d 1011, 1021–22 (10th Cir. 2009). To the contrary, Plaintiff's scant allegations about Dr. Kuhn make clear he did not.

Plaintiff has likewise failed to allege that Dr. Kuhn (or any specific Defendant for

25

that matter) "conduct[ed], or participate[d] . . . in the conduct of such enterprise's affairs," as § 1962(c) requires. 18 U.S.C. § 1962(c). As noted above, Plaintiff's allegations about Dr. Kuhn are limited to him making certain verbal and written statements. Am. Compl. ¶ 51. Those actions do not constitute "racketeering activity" (as discussed above). But even if they were "racketeering activity," Plaintiff would still have to allege and then prove that in making those statements Dr. Kuhn was exercising a "managerial role in the enterprise's affairs" or "directing those affairs." *See Reves v. Ernst & Young,* 507 U.S. 170, 178–79 (1993). Plaintiff offers no allegation that Dr. Kuhn was even aware of the "enterprise," much less that he was "functioning as a continuing unit" with the "enterprise" as the U.S. Supreme Court requires. *Boyle,* 556 U.S. at 948. Quite to the contrary, the allegations make clear that Dr. Kuhn made those alleged statements independent of any "enterprise," and was thus conducting his "own affairs" not the "enterprise's" affairs. It is black letter law in this Circuit that "liability under § 1962(c) 'depends on a showing that the defendant[] conduct[s] or participat[es] in the conduct of the enterprise's affairs, not just [his] own affairs." *Brannon v. Boatmen's First Nat'l Bank of Okla.,* 153 F.3d 1144, 1146 (10th Cir. 1998) (*citing Reves,* 507 U.S. at 185).

### E.    Plaintiff Fails To State A Sherman Act Claim.

#### 1.    Plaintiff does not allege any anticompetitive or trade-restraining conduct by Dr. Kuhn that could violate the Sherman Act.

Stated simply, this is not an antitrust case, and Plaintiff should not be trying to shoehorn it into one. Antitrust laws (including the Sherman Act) are concerned with "corruption of the competitive process." *Tal*, 453 F.3d at 1258 (*citing Brunswick Corp.,*

26

429 U.S. at 488). They are not concerned with individual people who "fail[] because of legitimate competitive forces." *Id.* Indeed, this is why the threshold element of a Sherman Act claim is an "unreasonable restraint of trade" and "anticompetitive conduct." *Id.* at 1244. Plaintiff does not plead this element here.

The allegations Plaintiff makes in purported support of his Sherman Act claim are the barest of bones and the type that federal courts have consistently found insufficient. Read most generously, Plaintiff makes a single allegation that the "Defendants"—all of them lumped together, without any specificity as to which Defendant he claims did what— conspired to restrain trade by "accept[ing] [] complaints" against Plaintiff's thesis in "exchange for Mr. Gregory's similar-topic book and speaking engagements." Am. Compl. ¶ 79. Even accepting this allegation as true, it is insufficient.

First, Plaintiff's conclusory assertion of a Sherman Act conspiracy without any supporting allegations or details is precisely the type that the Tenth Circuit consistently has found insufficient. *Tal,* 453 F.3d at 1261 ("Bare bones accusations of a conspiracy without any supporting facts are insufficient to state an antitrust claim." (*quoting Mountain View Pharmacy v. Abbott Labs.*, 630 F.2d 1383, 1388 (10th Cir.1980)).

Second, even accepting Plaintiff's bare bones allegations as true, they do not state a Sherman Act claim as a matter of fact. Even if the lumped-together "Defendants" did share information about the accuracy of Plaintiff's thesis, in no way does that (or could that) constitute an unreasonable restraint of trade or a corruption of the competitive process. Academic discourse, especially discourse that results in more information, more books,

27

and more speakers on a particular topic, represents legitimate, competitive forces that are not actionable under the Sherman Act.

Third, to the extent Plaintiff attempts to base his Sherman Act claim on unlawful tying allegations, he likewise fails. An unlawful tying claim requires a defendant to control "significant market power" and then leverage that market power to "force a customer to buy another product it likely wouldn't have bought." *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1179–80 (10th Cir. 2023). Here, Plaintiff asserts:

> Defendants have illegally tied . . . complaints against [Plaintiff's] PhD to a widespread attack on his intangible voting rights and property interests including his elections and campaigns to public office and publication of his books . . .

Am. Compl. ¶ 90. But a complaint about his PhD or thesis is not a product actionable under the Sherman Act; the exchange of information is not a "corruption of the competitive process." Moreover, Plaintiff offers no allegation that Dr. Kuhn (or any Defendant, for that matter) leveraged market power to force customers to buy an additional product. *Chase*, 84 F.4th at 1179. Nor could he. Such an allegation would make no sense in the context of this academic dispute.

### F.    At Most, Plaintiff Alleges Harm To His Personal Business Interests, Which Is Not An "Antitrust Injury."

To plead a Sherman Act claim, Plaintiff must also allege and then prove an "antitrust injury," which is to say he must allege and prove an injury of the type the antitrust laws were intended to prevent. *Full Draw Prods. v. Easton Sports, Inc.*, 182 F.3d 745, 750 (10th Cir. 1999) (*quoting Brunswick*, 429 U.S. at 489). "[I]t is axiomatic that the antitrust laws were enacted for the protection of competition not competitors." *Id.* (internal citations and

quotations omitted). An "antitrust injury" therefore "excludes personal injuries." *Tal*, 453

F.3d at 1253 (*citing Sharp v. United Airlines, Inc.*, 967 F.2d 404, 407–08 (10th Cir. 1992).

"Injury to [] reputation, dignity and emotional damages are not the type of injuries

redressable by the antitrust laws." *Tal*, 453 F.3d at 1254.

Notwithstanding this black letter law, Plaintiff exclusively pleads injuries to his

*personal* business interests. For example, Plaintiff alleges the introduction of other books

and perspectives into the supposed market for World War I history, but then claims only

that this generated economic opportunities for other authors and speakers instead of him.

Am. Compl. ¶¶ 79, 93. Even if this was anticompetitive behavior (which it is not), Plaintiff

only alleges harm in the form of decreases in *his* book sales and promotional opportunities.

Such purely personal injuries are precisely the type that the Tenth Circuit has rejected in

the context of a Sherman Act claim. *Full Draw,* 82 F.3d at 75–55; *Sharp*, 967 F.2d at 407–

08. On his best day, Plaintiff alleges increased competition and a legitimate loss of market

share, which "is not necessarily the result or manifestation of a reduction in competition."

*Id.* at 408. This is not a cognizable "antitrust injury."

### G.     Plaintiff Fails To State A Claim For Defamation.

#### 1.     The Court should dismiss Plaintiff's defamation claim under the OCPA because Plaintiff has brought it in response to Kuhn's valid exercise of his First Amendment rights.

In the text of the Oklahoma Citizens Participation Act ("OCPA"), the Oklahoma

Legislature stated that the purpose of enacting the law was to "encourage and safeguard

the constitutional rights of a person to . . . speak freely . . . to the maximum extent permitted

by law." 12 O.S. § 1430(B). To preserve this sacrosanct right, the Legislature created, in

the OCPA, a special motion to dismiss process to enable a Defendant like Dr. Kuhn to seek

dismissal, at an early stage, of a lawsuit like Plaintiff's that is "based on, relates to or is in

response to" Kuhn's "exercise of the right of free speech." *Id.* § 1432(A). The OCPA

utilizes a burden-shifting framework.

> First, the defendant must show by a preponderance of the evidence that
> "the legal action is based on, relates to, or is in response to, the party's
> exercise" of his "right of free speech" . . .

> If the defendant meets this burden, the court must dismiss the action unless
> the plaintiff establishes by "clear and specific evidence a prima facie case
> for each essential element of the claim in question." . . .

> If the plaintiff satisfies this burden, the court must still dismiss the action
> if the defendant establishes by a preponderance of the evidence each
> essential element of a valid defense to the plaintiff's claim.

*Craig PC Sales & Service, LLC v. CDW Government, LLC,* 2018 WL 4861522, *11 (W.D.

Ok. Apr. 30, 2018); *see also Yates v. Gannett Co., Inc.,* 523 P.3d 69, 75 (Okla. Civ. App.

2022). Dr. Kuhn satisfies his burdens under the OCPA, while Plaintiff cannot.

Plaintiff's allegations against Dr. Kuhn are clearly "based on, relate[] to, or [are] in

response to" Dr. Kuhn's exercise of free speech. Indeed, the *only* such allegations Plaintiff

makes are that Dr. Kuhn made verbal statements at the Winnipeg Symposium or written

statements in articles. Am. Compl. ¶ 51. The OCPA protects such statements. *Yates,* 523

P.3d at 75 ("articles and headlines [are] a legitimate exercise of the right of free speech").

And those OCPA protections are even more pronounced here where Plaintiff has admitted

and alleged that he is a public figure. Am. Compl. ¶ 6 (alleging he is a "current State

Senator," the "2022 Republican nominee for Governor," and "the frontrunner for the 2024

U.S. Senate seat"); *Herbert v. Okla. Christian Coal.*, 992 P.2d 322, 328 (Okla. 1999) ("when public figures such as *political candidates* sue for libel or slander, their rights to recover are severely limited") (emphasis added); *see also Yates,* 523 P.3d at 75 (protecting "news reports and public comments about public officials and public figures"); *N.Y. Times v. Sullivan*, 376 U.S. 254, 280 (1964).

Having satisfied the first step in the OCPA's framework, the burden shifts to Plaintiff to establish by "clear and specific evidence" a prima facie case for defamation. As explained below, Plaintiff does not and cannot even *plead* a defamation claim against Dr. Kuhn, let alone establish it with "clear and specific evidence" as the OCPA requires. Dr. Kuhn is not just entitled to dismissal of the claim—he is likewise entitled to his "costs, reasonable attorney fees, and other expenses." 12 O.S. § 1438(A)(1).

## H.    Plaintiff's allegations of statements Dr. Kuhn made are vague and devoid of the required detail to state a claim for defamation.

The elements of defamation that Plaintiff must plead are familiar. He must allege and then prove that Dr. Kuhn published to a third party a false and defamatory statement that caused injury. *Yates,* 523 P.3d at 76. Typically, Plaintiff would also have to allege that Dr. Kuhn acted with "fault at least amounting to negligence." *Id.* However, because Plaintiff pleads allegations admitting he is a political candidate and, thus, a public figure, *see* Am. Compl. ¶ 6, he must make allegations that satisfy a heightened standard, namely, that Dr. Kuhn made the allegedly defamatory statements with "'actual malice'—[*i.e.,*] made with knowledge that [they were] false, or with reckless disregard of whether [they were] false or not." *Id.* This heightened standard is no mere technicality. To the contrary,

31

the Oklahoma Supreme Court has observed that it serves as "a formidable burden on a public figure plaintiff seeking to recover for defamation." *Herbert,* 992 P.2d at 328. Indeed, that "formidable burden" applies to "political candidates" like Plaintiff, whose rights to recover for defamation are "severely limited." *Id.* Here, Plaintiff fails to plead the elements of typical defamation, much less this "formidable" heightened burden.

In the Amended Complaint, Plaintiff alleges three statements by Dr. Kuhn: (i) that James Gregory is a "'respected historian' that 'found multiple instances of fraud in [Plaintiff's] thesis'"; (ii) that UNB awarded Plaintiff's PhD under "unusual circumstances"; and, (iii) that Plaintiff was a "participant in . . . an invasion of the U.S. Capitol." Am. Compl. ¶ 51.[8] Putting aside that Plaintiff does not and cannot allege that Dr. Kuhn made any of these with "actual malice," none is actionable as defamation because none is "demonstrably" or "material[ly]" false. *See Yates,* 523 P.3d at 76; *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,* 861 F.3d 1081, 1107 (10th Cir. 2017) ("[u]nless statement contains a *material* falsehood it simply is not actionable" (emphasis in original)). Moreover, even if these alleged statements were false (and there is no evidence they were), Plaintiff does not allege how they caused him damage. Plaintiff conclusorily alleges that he suffered at least $10 million in damages, but he alleges no facts that even purport to

---

[8] Plaintiff makes other vague references to Dr. Kuhn in this paragraph. Am. Compl. ¶ 43 (he "alleg[ed] impropriety in order to pressure UNB into reopening a debunked 'investigation'" and "published a fraudulent article"). These do not support the defamation claim because they do not "provide sufficient notice of the communications complained of to allow [Kuhn] to defend [himself]." *McGeorge v. Continental Airlines, Inc.,* 871 F.2d 952, 955 (10th Cir. 1989).

connect those damages to the alleged statements. This is insufficient, even at the Rule 12 stage.

**I.      Plaintiff's Claim for False Light Invasion of Privacy is Duplicative Of and Fails With His Defamation Claim.**

For the first time in the Amended Complaint, Plaintiff purports to allege in Count 10 a claim for False Light Invasion of Privacy. For all intents and purposes, this claim is identical to his deficient defamation claim in Count 9 and, thus, fails for the same reasons. Factually, the allegations on which Plaintiff bases his "new" False Light Invasion of Privacy claim are substantively identical to those on which he bases his defamation claim. *Compare* Am. Compl. ¶ 135 (Defamation) *with* Am. Compl. ¶ 143 (False Light Invasion of Privacy). Legally, the tort of False Light Invasion of Privacy "overlaps the more familiar [claim of] defamation," and where, as here, it is paired with a defamation claim it serves only as an "alternative avenue for relief from a single wrongful occurrence." *Id.* On account of this duplication and overlap, the bases on which the court should dismiss Plaintiff's defamation claim apply equally to his "new" False Light Invasion of Privacy claim.

**J.      Plaintiff Has Already Amended His Complaint And, In Doing So, Demonstrated His Inability To Make Sufficient Allegations Against Dr. Kuhn; Thus, Dismissing This Case Against Dr. Kuhn With Prejudice Is Appropriate.**

As discussed above, Plaintiff did not seek leave to file his Amended Complaint until *after* Dr. Kuhn and the other Defendants filed their Motions to Dismiss his initial Complaint. Thus, Plaintiff was fully aware of the myriad pleading deficiencies when he drafted and submitted his Amended Complaint. His utter failure to allege *any* new allegations against Dr. Kuhn (much less sufficient allegations to support *any* of his claims)

33

lays bare the fatal flaws in Plaintiff's case and warrants, if not outright mandates, that the Court dismiss the Amended Complaint against Dr. Kuhn with prejudice.

To be sure, Plaintiff's failure to allege any new facts as to Dr. Kuhn is an *inability* to do so; it is no mere oversight. In the Amended Complaint, Plaintiff attempted to make new factual allegations against virtually every single other Defendant, *see, e.g.,* Am. Compl., Dkt. 126-1[9], at 11 (¶¶ 27–29, new allegations about Defendants Gregory and Brown), 12 (¶¶ 31–32, Defendants Mazerolle, MaGee, UNB, and Gregory), 13 (¶¶ 33–37, Defendants Brown, Mazerolle, and UNB), 14 (¶¶ 38–40, Defendants UNB, the UNB Defendants, and Magee), 19 (¶ 52, Defendants Gregory and Brown). But Plaintiff did not, because he cannot, add *anything* new as to Dr. Kuhn. Plaintiff has had his opportunity to amend his Complaint, and it remains woefully deficient. The Court should dismiss this case against Dr. Kuhn with prejudice.

## IV.    CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's Complaint against Dr. Kuhn should be dismissed, with prejudice.

Dated: September 26, 2025                     Respectfully submitted,

                                             */s/Gerard M. D'Emilio*
                                             _____

---

[9] Dr. Kuhn cites here to Plaintiff's Proposed Amended Complaint, attached to his Motion for Leave to Amend, because that document shows Plaintiff's additions in track-changes format.

Gerard M. D'Emilio, OBA No. 33496
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
T: (405) 235-5500
F: (405) 235-2875
Email: gdemilio@gablelaw.com

-and-

R. Trent Shores, OBA No. 19705
Barrett L. Powers, OBA No. 32485
**GABLEGOTWALS**
110 N. Elgin Ave., Ste. 200
Tulsa, Oklahoma 74120-1495
Telephone (918) 595-4800
Facsimile (918) 595-4990
Email: tshores@gablelaw.com
bpowers@gablelaw.com

-and-

Callan G. Stein (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP** High
Street Tower
125 High Street, 19th Floor
Boston, MA 02110
callan.stein@troutman.com

-and-

Matthew J. Lund (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
500 Woodward Avenue, Suite 2800 Detroit,
MI 48226
248.359.7300
matthew.lund@troutman.com

*Attorneys for Defendant Roland Kuhn*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.


*/s/ Gerard M. D'Emilio*
Gerard M. D'Emilio