## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

Douglas Mastriano            :     CIVIL NO. 5:24-cv-00567-J
                           :
Plaintiff,                :
               v.        :
                           :
                           :
James Gregory, III, *et al.*    :
                           :
Defendants.             :
                           :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT UNB's MOTION TO DISMISS AND BRIEF IN SUPPORT

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorney, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendant UNIVERSITY OF NEW BRUNSWICK's motion to dismiss and brief in support, filing this Response in Opposition and Brief in Support, requesting denial of Defendant's motion.

                                     **The Cox Law Center, LLC**
                                     By:
                                 _____//s//_____
                                 Daniel L. Cox, OKWD Bar 2490
                                 Attorney for Plaintiff
                                 The Cox Law Center, LLC
                                 P.O. Box 545
                                 Emmitsburg, MD 21727
                                 Ph: 410-254-7000
                                 Fx: 410-254-7220
                                 E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

*TABLE OF AUTHORITIES*.......................................................................................3

*I.   INTRODUCTION* ...............................................................................................5

*II.   ARGUMENT* ......................................................................................................6

   **A.   This Court has Proper Subject Matter jurisdiction as UNB is Not Entitled to FSIA Immunity** ........................................................................**6**

      **1.   UNB is Not an "Organ" of a Foreign State Under FSIA** .......................7

      **2.   UNB's Conduct Constitutes Commercial Activity Within the Meaning of FSIA**................................................................................................12

      **3.   The Tortious Acts Exception Applies** .....................................................14

      **4.   The Waiver Exception Applies** ................................................................17

   **B.   This Court has Proper Personal Jurisdiction over UNB**..........................**18**

      **1.   UNB Has Sufficient Minimum Contacts with the United States, and Purposefully Directed Its Activities Toward the United States** .................18

      **2.   Exercising Jurisdiction Comports with Fair Play and Substantial Justice** ........................................................................................................21

   **C.   Plaintiff Pleads Cognizable Claims Against UNB Under Rule 12(b)(6).23**

      **1.   Mastriano Properly Pleads Valid RICO Claims**....................................24

      **2.   Mastriano Sufficiently Pleads Claims Under the Sherman Act** ..........26

**3. Mastriano Pleads Plausible Defamation and Other Tort Claims**........28

**III.   CONCLUSION**..............................................................................***30***

**TABLE OF AUTHORITIES**

*Cases*

*Hansen v. PT Bank Negara Indon.*, 601 F.3d 1059 (10th Cir. 2010)_____4

*Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607 (1992)_____7

*Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C. Cir. 1984)_____10

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)_____11

*XMission, L.C. v. Fluent LLC,* 955 F.3d 833 (10th Cir. 2020)_____13

*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)_____14

*United States v. Turkette,* 452 U.S. 576 (1981)_____16

*Boyle v. United States*, 556 U.S. 938 (2009)_____16

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)_____17

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398
(2004)_____17

*Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008) __18

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990)_____18

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)_____19

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009)_____19

***Statutes***

28 U.S.C. § 1602 et seq_____5

28 U.S.C. § 1603(b)_____5

28 U.S.C. § 1605(a)(2)_____8

15 U.S.C. § 1_____17

***Rules***

Fed. R. Civ. P 12(b)(6)_____4

Fed. R. Civ. P 15(a)(2)_____19

Fed. R Civ. P Rules 8(a), 9(b)_____15

## I.    INTRODUCTION

Plaintiff Douglas Mastriano respectfully submits this Response in Opposition to Defendant University of New Brunswick's ("UNB") Renewed Motion to Dismiss. He incorporates by reference his prior responses in opposition, including his affidavit and verifications, as if set forth herein.  Defendant UNB attempts to shield itself from accountability for its participation in a coordinated scheme to destroy Plaintiff's academic reputation and interfere with his political campaigns by invoking foreign sovereign immunity. This gambit fails for multiple, independent reasons.

UNB does not qualify as an "organ of a foreign state" entitled to FSIA immunity. While UNB receives some public funding, it operates with substantial autonomy, engages extensively in commercial activities, and lacks the necessary indicia of governmental control required for sovereign status. UNB's own governing documents emphasize its independence from direct governmental control. Even if UNB could establish prima facie entitlement to FSIA immunity, multiple statutory exceptions strip that immunity in this case. UNB engaged in commercial activity with direct effects in the United States, committed tortious acts causing injury in the United States, expressly and impliedly waived any immunity through its commercial contracts and conduct, and unlawfully expropriated Plaintiff's property rights.

This Court has proper personal jurisdiction over UNB based on its extensive, purposeful contacts with the United States and specifically with residents and institutions in this country. UNB deliberately entered into educational contracts with U.S. military personnel, accepted U.S. government funding, disseminated defamatory statements into the United States through press releases and media appearances, and coordinated with U.S.-based co-conspirators to harm Plaintiff's business and property interests.

The motion fails to establish that this Court lacks subject-matter or personal jurisdiction and further fails to demonstrate any deficiency in the pleadings under Rule 12(b)(6). Plaintiff's Amended Complaint alleges a coordinated scheme by UNB and other defendants to defame him, damage his professional reputation, and eliminate him from academic and political competition through fraudulent conduct. These allegations, accepted as true at this stage, establish jurisdiction and state valid claims under RICO, the Sherman Act, and Oklahoma law.

Accordingly, UNB's motion should be denied in full.

## II.      ARGUMENT

### A. This Court has Proper Subject Matter jurisdiction as UNB is Not Entitled to FSIA Immunity

UNB's argument for dismissal under the Foreign Sovereign Immunities Act (FSIA) fails.  While UNB is a public university located in Canada, its challenged conduct, including publication of false statements, participation in a transnational

fraud scheme, and intentional interference with U.S. commerce and elections, falls squarely within the FSIA exceptions for commercial activity and tortious acts causing injury in the United States. 28 U.S.C. § 1602 et seq.

UNB bears the burden of establishing that it qualifies as a "foreign state" entitled to FSIA immunity. *Hansen v. PT Bank Negara Indon.*, 601 F.3d 1059, 1062 (10th Cir. 2010). If that burden is met, the Plaintiff then merely needs to make a prima facia showing that an exception applies. *Id.* However, the defendant bears the ultimate burden of proving by a preponderance of the evidence that the claimed exception does not apply in the particular case, and UNB cannot carry either of these burdens. Even if, *arguendo*, that it does, multiple exceptions strip any immunity. In *Hansen*, the 10th Circuit stated that courts identify the commercial exception, for instance, whether there is particular conduct of the actor upon which the action is based, if there is a commercial nature to the conduct and if there is a nexus between that and the United States. *Id.* at 1068. All three factors are also met here.

### 1.  UNB is Not an "Organ" of a Foreign State Under FSIA

To qualify as an "agency or instrumentality" of a foreign state under 28 U.S.C. § 1603(b), an entity must be a separate legal person, an organ of a foreign state or political subdivision, or a majority of whose shares are owned by a foreign

state; *and* not a citizen of a U.S. state or organized under the laws of a third country. UNB fails all three prongs.

Although UNB was incorporated under the University of New Brunswick Act (SNB 1984, c 40), in which Section 1 states that the "University … is hereby continued" and that it "has, holds, possesses and enjoys all the rights, powers, privileges and immunities … which are vested in or belong to the University at the time of the coming into force of this Act." That continuation was also stated in the earlier Act, SNB 1968, c 12, and similarly described the University as "incorporated by Chapter 63 of the Acts 22 Victoria (1859) … and continued …" and given full rights and privileges, (see, Statutes of New Brunswick, available at: https://www.canlii.org/en/nb/laws/astat/snb-19681-c-12/latest/snb-19681-c-12.html ), see also, Defs. MTD, Exhibits. 5-10, it cannot argue that prongs two and three are met because it asserts its independence of action from Canada, it in fact acted in opposition to Canadian interests by interfering in US elections and commerce and encouraging its professors to do the same on its own letterhead all targeting the defeat and permanent ridicule of Col. Mastriano, acted in defiance of Canadian and US law by releasing without permission the embargoed thesis of Col. Mastriano to hostile persons and to US and Canadian media at the height of his US based elections and electoral announcements, and each additional actions alleged in the Amended Complaint. Furthermore, as its status is "continued" as it was originally

organized, which was under the laws of a "third country," namely, Great Britain, it was "created under the laws of [a] third country." 28 U.S.C. § 1603(b).

UNB instead adopts a five-factor test in its motion to dismiss from a 5th Circuit case to determine whether an entity qualifies as an "organ" of a foreign state. These factors include: (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights in the country; and (5) how the entity is treated under foreign state law. UNB mischaracterizes the evidence regarding each factor. *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 846-47 (5th Cir. 2000)[1]. UNB cannot satisfy these factors.

UNB's purpose is educational, not national or governmental. While UNB was originally established by provincial charter in 1859, its mission as a private institution is to provide education. The fact that a university was created by a governmental act does not transform it into a sovereign entity. UNB's own materials emphasize its role as an independent academic institution, not a governmental agency executing sovereign functions.

Further, UNB operates with substantial autonomy from governmental supervision. UNB's Board of Governors exercises primary authority over the

---

[1] After a diligent search by the undersigned, it does not appear the 10th Circuit has a similar test adopted.

institution's operations, finances, and policies. While some Board members are appointed by the Lieutenant Governor in Council, the Board functions independently, and makes autonomous decisions without any meaningful governmental oversight. The mere fact that some board members have governmental connections does not establish active supervision required for sovereign status. Indeed, UNB's own Board Charter emphasizes the Board's stewardship role and independent decision-making authority.

The visitor role that UNB emphasizes is ceremonial and symbolic rather than substantive. The Lieutenant Governor does not exercise day-to-day control over UNB's operations, does not approve its academic decisions, and does not supervise its faculty or administration. UNB fails to identify a single instance where the Lieutenant Governor exercised any meaningful authority over UNB's operations.

The employees of UNB are not governmental employees. While UNB receives small public funding that contributes to employee salaries, UNB has the freedom to hire its own employees, set their compensation, and manage employment relationships without governmental involvement. The Province of New Brunswick does not require the hiring of any particular employees at UNB, and their faculty and staff are employees of the university, not the provincial government.

Moreover, UNB derives substantial revenue from non-governmental sources, including tuition, fees, research grants, and private donations. UNB specifically contracted with the U.S. Department of Defense to provide education to U.S. military personnel, including Plaintiff, in exchange for payment. These commercial revenue streams undermine any claim that UNB is simply an arm of the provincial government.

UNB does not hold exclusive rights in any meaningful sense. The tax exemptions and statutory privileges UNB cites in its motion are typical benefits afforded to educational institutions, not unique governmental powers. Many private universities enjoy similar tax-exempt status and statutory protections.

New Brunswick law's treatment of UNB is equivocal.  While certain statutes reference UNB as a public body for purposes of open records laws and procurement regulations, this designation is for administrative convenience, not sovereign status. Many institutions subject to public records laws, including private entities receiving government contracts, do not enjoy such sovereign immunity. Critically, UNB's own governing statute emphasizes the university's autonomy and independence. The UNB Act grants the university broad powers to operate independently, enter contracts, manage property, and conduct business without governmental approval in most circumstances. This statutory framework is inconsistent with "organ" status.

Importantly, UNB's actions against Col. Mastriano were never authorized by, nor recognized as unofficial or official actions, of any government entity.

Courts have consistently found that educational institutions operating with autonomy, engaging in commercial activities, and deriving substantial non-governmental revenue do not qualify as foreign state instrumentalities. UNB's substantial autonomy, commercial activities, and mixed funding sources place it far outside the reach of FSIA's protection.

### 2. UNB's Conduct Constitutes Commercial Activity Within the Meaning of FSIA

The commercial activity exception of FSIA strips immunity where an action is "based upon a commercial activity carried on in the United States by the foreign state" or "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

It is beyond dispute that UNB engaged in commercial activity with direct effects in the United States. The university contracted with the U.S. Department of Defense to provide educational services to U.S. military personnel, including Col. Mastriano, in exchange for substantial payments. This is quintessential commercial activity, the provision of educational services in exchange for payment. *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 612 (1992). When a foreign entity acts in the manner of a private player of a market, their actions are commercial. *Id.* at 614.

There the court helpfully illuminated the reasoning of Congress that:

> "…the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce"... Thus, a foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a "commercial" activity, because private companies can similarly use sales contracts to acquire goods…"

*Id.* at 614-15.

UNB cannot credibly argue that providing Ph.D. education to U.S. military officers such as Col. Mastriano in exchange for payment does not constitute commercial activity. It is for the officer what new army boots are for the private: tools provided not by governments but by commercial services under contract. *Id.* Private universities routinely provide identical services on a commercial basis. The fact that the customer was a sovereign government does not transform the transaction into a sovereign act. *Id.* UNB and its officials made deliberate use of U.S. instrumentalities of commerce (email servers, media outlets, and the internet) to disseminate defamatory and fraudulent materials to U.S. audiences. Such activity is indistinguishable from that of any private academic or corporate actor.

Additionally, UNB's subsequent conduct was all in connection with this commercial educational relationship. This conduct includes investigating Col. Mastriano's dissertation, releasing his previously embargoed thesis, making statements to the press about his work, and coordinating with others to harm Col. Mastriano's professional reputation. These acts had direct effects in the United States and on Col. Mastriano's U.S. and State elections. The direct effects of UNB's actions in the United States are substantial and concrete. Plaintiff cleanly alleges loss of book sales and publishing contracts with U.S. publishers, loss of speaking and teaching opportunities at U.S. institutions, harm to political campaigns in the United States, and damage to professional reputation in U.S. markets. These explicit injuries satisfy the direct effect requirement outlined in 28 U.S.C. § 1605(a)(2).

### 3.  The Tortious Acts Exception Applies

The FSIA also provides some immunity where a foreign state commits a tortious act causing personal injury or property loss in the United States. 28 U.S.C. §1605(a)(5). The tortious acts exception strips immunity in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state. Plaintiff alleges reputational and economic injuries in the United States. These are direct results of UNB's defamatory statements and

fraudulent communications transmitted into the U.S. via interstate wires and publication platforms.

Courts have recognized that foreign entities are not immune to defamation or related tort claims causing injury in the United States. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984). UNB's conduct was tortious in nature, and was directed at a U.S. public figure and foreseeably caused harm within the United States. For the tortious acts exception to apply, both the tort and the injury must occur in the United States. *Id.* Plaintiff has demonstrated substantial evidence of both an action and injury within the United States.

In the Amended Complaint, Plaintiff alleges defamation, false light invasion of privacy, breach of contract, participation in a fraudulent scheme, and conspiracy. These are paradigmatic torts. UNB's dismissive characterization of these claims as "academic disputes" is a transparent attempt to minimize serious legal violations. Making knowingly false statements to destroy someone's professional reputation, their official elections, and their academic and professional work, is defamation, not academic discourse.

The injury to Col. Mastriano occurred in the United States. The proper inquiry for this showing is where the injury was felt, not where the tortfeasor was located when committing the tort. Courts have consistently recognized that reputational and economic injuries occur where the victim suffers harm to business

relationships, professional opportunities, and property interests. Plaintiff's book sales declined at U.S. retailers and through U.S. publishers. His speaking engagements at U.S. institutions were cancelled. His teaching opportunities at U.S. universities evaporated. His political campaigns in the United States were damaged and lost with radio and media appearances occurring by UNB agents during early voting and just days before the culminating election day. His professional reputation in U.S. markets was destroyed. These injuries occurred in the United States. The fact that some of the tortious conduct originated in Canada via the wires or mails is irrelevant in analyzing whether the injury occurred in the United States and instead goes to support the civil RICO claim.

Further, UNB affirmatively directed tortious communications into the United States. UNB made statements to the American press, issued press releases disseminated in the United States, issued mass e-mails throughout the United States to its colleagues, students and former students, posted defamatory content on social media accessible to U.S. audiences, and coordinated with U.S.-based co-conspirators. These affirmative acts caused injury in the United States and satisfy the statute's requirements.

UNB argues that claims arising from libel, slander, misrepresentation, deceit, or interference with contract rights are excluded. However, this argument fails because Plaintiff's claims include far more than these specified torts. Plaintiff

alleges federal RICO violations, Sherman Act violations, civil conspiracy, and breach of fiduciary duty. None of these claims fall within § 1605(a)(5)(B)'s exclusions. The tortious acts exception clearly applies and strips any immunity UNB might otherwise enjoy even if it were a governmental organ acting as such.

### 4. The Waiver Exception Applies

UNB waived any sovereign immunity both expressly and by implication when it entered into commercial contracts with Plaintiff and the U.S. Department of Defense. When UNB contracted to provide education to U.S. military personnel in exchange for payment from the U.S. Department of Defense, it entered the commercial marketplace and subjected itself to the jurisdiction of U.S. courts for disputes arising from those contracts. While Plaintiff has not yet obtained discovery regarding the specific terms of these contracts, the nature of the commercial relationship itself constitutes an express waiver of immunity for disputes arising from that relationship.

UNB cannot have it both ways. They cannot accept substantial payments from the U.S. government to educate U.S. military personnel while simultaneously claiming immunity from suit when disputes arise from that commercial relationship. The educational contract between UNB and Plaintiff, facilitated through Department of Defense funding, necessarily contemplated that disputes would be resolved in a forum where both parties could seek redress. Given that

Plaintiff is a U.S. citizen and U.S. military officer, and given that the contract was funded by the U.S. government, the parties necessarily contemplated U.S. jurisdiction.

Even absent express contractual language, UNB impliedly waived immunity by engaging extensively in commercial activities directed at the United States. UNB actively solicited U.S. military personnel to enroll in its programs, accepted substantial U.S. government funding, and held itself out as providing educational services in the U.S. market. These commercial activities constitute an implied waiver of immunity for disputes arising from those activities.

**B. This Court has Proper Personal Jurisdiction over UNB**

Even if UNB were entitled to FSIA immunity, this Court possesses personal jurisdiction over UNB based on its extensive, purposeful contacts with the United States and Oklahoma.

**1. UNB Has Sufficient Minimum Contacts with the United States, and Purposefully Directed Its Activities Toward the United States**

Personal jurisdiction exists where a defendant has purposefully directed its activities toward the forum and the United States as a whole. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987). The forum was targeted by UNB with repeated contacts to Oklahoma, Pennsylvania, Washington D.C., potentially Kentucky, and the United States as a whole. *J. McIntyre Machinery, LTD. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 2788, 180 L. Ed. 2d 765 (2011).

Furthermore, UNB, by contracting with the United States Army for the provision of PhD education of Col. Mastriano and continuing its outrageous course of conduct related thereto including issuing defamatory letters and media statements inside the United States in coordination with the Oklahoma defendant Gregory, demonstrated "defendant's activities manifest an intention to submit to the power of the sovereign." *Id.* at 2785.  Additionally, and directly applicable here, the *Nicastro* Court found that intentional torts may also permit the exercise of personal jurisdiction even without the general rule of finding a targeting of the forum by the defendant.  *Id.* at 2785.

   The Amended Complaint details how UNB and its officials disseminated false statements about Plaintiff to U.S. media, coordinated with co-defendants located in Oklahoma and Pennsylvania, and used U.S.-based communication systems to publish defamatory materials. By publishing and promoting accusations of "fraud" regarding Plaintiff's dissertation, whilst knowing Plaintiff was a U.S. citizen and public figure running for federal office, UNB expressly targeted U.S. audiences. The exercise of jurisdiction in such circumstances is consistent with traditional notions of fair play and substantial justice.

   If UNB qualifies as a foreign state for FSIA purposes, then the relevant contacts analysis examines UNB's connections with the United States as a whole. UNB's contacts with the United States are both substantial and purposeful. UNB

purposefully directed commercial activities at U.S. residents by actively

participating in a Department of Defense program to educate U.S. military

personnel. This was not a passive relationship. UNB affirmatively sought out and

enrolled U.S. military students, accepted substantial payments from the U.S.

government, and held itself out as providing educational services to U.S. service

members. UNB benefited substantially from this relationship through tuition

payments and prestige associated with educating U.S. military officers. In

exchange for these benefits, UNB subjected itself to U.S. jurisdiction for disputes

arising from these commercial relationships.

The 10th Circuit has previously applied a harmful effects test, requiring

intentional action expressly aimed at a forum with knowledge that injury would be

felt there. UNB's allegedly tortious conduct was expressly aimed at, "purposefully

directed," to cause harm to Col. Mastriano in the United States, and UNB knew

that the brunt of his injury would be felt in the United States. *XMission, L.C. v.*

*Fluent LLC,* 955 F.3d 833, 841 (10th Cir. 2020).  Even if additional harm occurred

outside the United States, say in France or NATO where Col. Mastriano has

worked in the past, the purposeful direction by defendants was solely within the

United States at Col. Mastriano here, and nowhere else.

UNB cannot plausibly claim ignorance regarding where the harm would be

felt. Plaintiff is a U.S. citizen, a Pennsylvania state senator, a U.S. Senate

candidate, a major party Candidate for Governor, and an author who sells books in U.S. markets. His speaking engagements and teaching opportunities are predominantly in the United States. His publisher is in the United States. The entire purpose of the alleged conspiracy was to harm Plaintiff's professional and political activities in the United States.

UNB's conduct had direct and substantial effects in the United States. As alleged in the Complaint, UNB's conduct caused concrete economic harm in the United States. These effects are neither "random" nor "fortuitous." They are the direct and intended consequences of UNB's purposeful conduct aimed at harming Col. Mastriano in the United States.

## 2. Exercising Jurisdiction Comports with Fair Play and Substantial Justice

Requiring UNB to answer in this forum is consistent with fairness. UNB voluntarily engaged in conduct aimed at the U.S. and reaped commercial and reputational benefits from its academic ties here. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). UNB's argument that litigation would be inconvenient or burdensome cannot overcome its purposeful targeting of U.S. commerce.

Modern communication technology and international legal practice make defending a lawsuit in Oklahoma no more burdensome than defending it in any other forum. UNB is a sophisticated institution that regularly deals with

international legal matters. The university created this burden by choosing to engage in commercial activities in the United States and by purposefully directing tortious conduct at a U.S. resident. Oklahoma and the United States have strong interests in this litigation. Oklahoma has a direct interest in regulating the conduct of its residents, and ensuring that Oklahoma does not serve as a base of operations for conspiracies targeting citizens of other states. The United States has a paramount interest in protecting U.S. citizens from foreign tortious conduct, in enforcing federal RICO and antitrust laws, and in ensuring that foreign entities that engage in commercial activities in the United States and commit torts harming U.S. residents are subject to U.S. jurisdiction.

Col. Mastriano's interest in convenient and effective relief supports jurisdiction. He is a U.S. citizen who suffered harm in the United States, and requiring him to litigate in Canada would be unjust and would effectively deny him a remedy. Canadian courts may not recognize U.S. federal claims under RICO and the Sherman Act, may apply different substantive standards, and may be unable to provide effective relief against all conspirators, many of whom are U.S. residents. Moreover, Plaintiff has no meaningful connection to Canada except for having attended graduate school there. Requiring him to travel to Canada to litigate disputes arising from a conspiracy orchestrated substantially in the United States would impose severe hardship.

The conspiracy at issue involves multiple defendants, many of whom are U.S. residents. Key evidence regarding harm to Plaintiff's book sales, speaking engagements, publishing contracts, and political campaigns is located in the United States. Witnesses regarding these injuries are in the United States. Litigating in Canada would require extensive international discovery and potentially cause litigation to take place across multiple forums.

All five reasonableness factors support exercising jurisdiction, and thus, UNB's motion should be denied.

### C. Plaintiff Pleads Cognizable Claims Against UNB Under Rule 12(b)(6)

Even if jurisdiction were disputed, dismissal under Rule 12(b)(6) would still be improper. Plaintiff alleges detailed facts supporting each claim. The Complaint details specific false complaints, email correspondence, and press statements orchestrated to destroy Plaintiff's professional reputation. These allegations satisfy *Twombly* and *Iqbal* standards of plausibility. UNB's attempt to recast this as an academic disagreement fails. The allegations describe a coordinated scheme to weaponize false accusations through U.S. communication channels and institutions, actions far removed from legitimate academic review. Each of Plaintiff's RICO and Sherman Act counts identifies predicate acts, concerted behavior, and direct economic harm, all of which are sufficient to proceed to discovery.

### 1.  Mastriano Properly Pleads Valid RICO Claims

Plaintiff's RICO claims against UNB satisfy all pleading requirements under Rules 8(a) and 9(b). First, UNB participated in a RICO enterprise.  The Supreme Court has defined a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583 (1981). The enterprise need not be formal or have a hierarchical structure. *Boyle v. United States*, 556 U.S. 938, 948 (2009). It need only be "a group of individuals associated in fact" with "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

The Complaint alleges that UNB acted in concert with Gregory, other Individual University Defendants, and additional co-conspirators, to destroy Plaintiff's academic reputation through fraudulent means. This coordinated conduct, including Gregory filing complaints, UNB opening investigations, UNB releasing embargoed materials, and all defendants making coordinated statements to the press, occurred over multiple years and establishes an ongoing organization functioning as a continuing unit.

The enterprise had a common purpose to eliminate Col. Mastriano as a competitor in the WWI history market, and to interfere with his political campaigns. UNB's role was critical. Without its willingness to open sham investigations and release embargoed materials in coordination with Gregory's

complaints, the conspiracy could not have succeeded. Further, UNB used mail and electronic communications to advance the fraudulent scheme. Specifically, UNB sent fraudulent letters to Plaintiff regarding the embargo status of his dissertation, made false statements to the American press via email and electronic communications, issued press releases via wire communications announcing investigations based on known falsehoods, and disseminated defamatory content via social media and email to students, alumni, and the public.

Each of these communications was made with knowledge of falsity or reckless disregard for the truth, with the specific intent to harm Plaintiff's professional and political interests. These allegations satisfy Rule 9(b)'s particularity requirements by identifying the necessary details of the fraudulent scheme.

Next, UNB caused a cognizable RICO injury. Plaintiff alleges concrete economic injuries directly traceable to UNB's conduct, as mentioned above, all of which are classic business and property injuries cognizable under RICO. UNB cannot escape liability by characterizing its conduct as "academic protocol" or "legitimate investigation." Nor can they hide behind the fact that Col. Mastriano is a public figure who had political opponents. This does not give co-conspirators free rein to defame an individual through coordinated fraud. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). The Complaint alleges that UNB's

investigations were coordinated with co-conspirators for the purpose of

manufacturing a false scandal. Fraudulent investigations conducted for improper

purposes are actionable under RICO regardless of whether they masquerade as

academic proceedings.

### 2. Mastriano Sufficiently Pleads Claims Under the Sherman Act

Plaintiff's Sherman Act claim alleges that defendants conspired to eliminate

him as a competitor in the market for WWI historical products through fraudulent

means. The Sherman Act prohibits "every contract, combination...or conspiracy, in

restraint of trade or commerce." 15 U.S.C. § 1. The Supreme Court has made clear

that this prohibition extends to concerted action that unreasonably restrains

competition "by an element of anticompetitive *conduct*," regardless of the specific

method employed. *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko,*

*LLP*, 540 U.S. 398, 407 (2004)(emphasis in original).

UNB engaged in anti-competitive conduct. The Complaint alleges that UNB

used fraudulent means to destroy Col. Mastriano's reputation and thereby eliminate

him as a competitor in the WWI history market. UNB conspired with Gregory and

others to destroy Plaintiff's academic reputation through false allegations, thereby

eliminating Plaintiff as a competitor in the relevant market. This conduct did not

involve competition on the merits whatsoever. It involved using fraud to drive a

competitor from the market and forever seek to defame him from reentering the market.

Additionally, the relevant market is adequately defined. The Tenth Circuit has articulated a cause of action for prohibited conduct under § 2 of the Sherman Act.  The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power. *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1117-1118 (10th Cir. 2008). Plaintiff identifies both the product market and the geographic market. This level of detail is sufficient at the pleading stage. Market definition disputes are typically resolved through expert testimony at summary judgment or trial, not on a motion to dismiss.

UNB caused anti-competitive injury. By destroying Plaintiff's reputation through fraud, defendants successfully reduced output and consumer choice in the WWI history market. Consumers lost access to Plaintiff's books, lectures, and historical analysis. This reduction in output and variety constitutes cognizable antitrust injury. Plaintiff suffered direct injury to his business interests. These injuries flow directly from the anti-competitive conspiracy and are compensable under antitrust law. UNB's argument that its conduct was "pro-competitive" because it involved academic criticism is absurd. Using fraud to eliminate competitors is *per se*, anti-competitive. The Sherman Act does not permit

competitors to lie about products to drive each other from the market, regardless of whether the lies are dressed up as academic discourse.

### 3. Mastriano Pleads Plausible Defamation and Other Tort Claims

The Complaint alleges, and provides supporting documentation, that UNB made false and defamatory statements against Col. Mastriano. UNB publicly accused Plaintiff of academic fraud and dishonesty, and even horrific false accusations inferring antisemitism and anti-LGBTQ viewpoints, through statements to the press and through its faculty's public letter of denunciation. These are verifiable factual statements, not protected opinion. Accusing someone of fraud and falsely inferring a "hate" crime is not rhetorical hyperbole. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1,19 (1990). "Simply couching such statements in terms of opinion does not dispel these implications" of defamation. *Id.*

Perhaps most importantly, UNB acted with actual malice. As detailed in Plaintiff's declaration (Exhibit 1), UNB knew or should have known that Gregory's allegations were baseless because UNB had previously investigated and rejected similar allegations. Nevertheless, UNB reopened investigations at Gregory's urging and made public statements casting doubt on Plaintiff's work. This pattern of conduct - reopening previously rejected complaints, making statements without adequate investigation, timing statements to coincide with Plaintiff's political campaigns - supports a showing of actual malice.

UNB was the direct and proximate cause of concrete damages to Col. Mastriano. UNB published defamatory statements to the American press, on social media, and through email distribution lists reaching thousands of people. As a result, Plaintiff suffered reputational harm, loss of professional opportunities, and economic injury. These damages are adequately pleaded.

UNB's invocation of academic freedom and First Amendment protections is misplaced. The Constitution does not shield knowingly false factual allegations made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Academic freedom protects scholarly debate and good-faith criticism, not coordinated campaigns of defamation as here.

In addition, Plaintiff's other tort claims are similarly well-pleaded. The Complaint adequately alleges breach of contract, false light invasion of privacy, and civil conspiracy. UNB violated its commitment to maintain the embargo on Plaintiff's dissertation and published false information portraying Plaintiff in a false light. The university took part in coordinated unlawful objectives with others, and committed overt acts in furtherance of these objectives. Accordingly, the Complaint more than plausibly alleges a defamation claim that survives Rule 12(b)(6). UNB's renewed motion should therefore be denied.

III.    CONCLUSION

WHEREFORE, based on the reasoning above, Col. Mastriano respectfully

requests this Court to DENY UNB's Motion to Dismiss and Brief in Support and

to grant Col. Mastriano leave to amend the Complaint to the extent of any

insufficiency.

Respectfully submitted,

The Cox Law Center, LLC
By:
_____/s/_____
Daniel L. Cox, OKWD Bar
2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail:
dcox@coxlawcenter.com

**CERTIFICATE OF SERVICE**

This is to certify on this 24th day of October, 2025, that a copy of the foregoing
was served on counsel of record via CM/ECF.

_____/s/_____
Daniel L. Cox
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com