# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DOUGLAS MASTRIANO, | **)** | |
| Plaintiff, | **)** | |
| | **)** | |
| v. | **)** | Civil No.  5:24-cv-00567-J |
| | **)** | |
| JAMES GREGORY III, | ) | |
| *et al.* | **)** | |
| Defendant. | **)** | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO CERTAIN
## <u>DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

**The Cox Law Center, LLC**
By:
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 4

I. INTRODUCTION ................................................................ 8

II. CORRECTED STATEMENT OF FACTS AND PROCEDURAL

BACKGROUND ................................................................ 9

   A. Defendants' Mischaracterizations of the Record ........................................ 9

   B. Procedural History ................................................................ 10

III. ARGUMENT ................................................................ 11

   A. Subject-Matter Jurisdiction Exists Under the Foreign Sovereign

Immunities Act ................................................................ 11

      1. Defendants' Conduct Constitutes Commercial Activity ..................... 12

      2. Individual Defendants Are Not "Foreign States" ................................. 14

      3. The Commercial Activity Exception Applies ........................................ 14

      4. Federal Statutes Provide Independent Jurisdictional Bases ............... 16

   B. This Court Has Personal Jurisdiction Over All Defendants .................. 16

      1. Defendants Purposefully Availed Themselves of the Oklahoma Forum

................................................................ 17

      2. RICO's Nationwide-Service Provision Establishes Jurisdiction ......... 18

      3. Pendent Personal Jurisdiction Applies to Remaining Claims ............. 19

      4. Jurisdiction Comports with Fair Play and Substantial Justice ........... 19

**C. Plaintiff's Complaint States Actionable Claims Under Rule 12(b)(6)**

**.................................................................................................... 20**

**1. Civil RICO (Counts I & II)** ....................................... 21

**2. Sherman Act (Counts III & IV)** ................................ 22

**3. Fraud (Count V)** .......................................................... 23

**4. Aiding and Abetting (Count VI)** ............................... 23

**5. Breach of Contract (Count VII)** ................................ 24

**6. Negligence (Count VIII)** ............................................ 24

**7. Defamation and Defamation per se (Count IX)** ..................................... 24

**D. Service of Process Was Proper and Satisfied the Hague Convention**

**.................................................................................................... 25**

**E. Alternative Request for Leave to Amend and/or To Conduct Limited**

**Jurisdictional Discovery** ............................................................... 26

**IV. CONCLUSION** ....................................................................... 27

**CERTIFICATE OF SERVICE** ................................................. 28

# TABLE OF AUTHORITIES

***Cases***

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................... 20

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).......................... 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ………...................................... 20

*Boyle v. United States*, 556 U.S. 938 (2009)......................................................... 18

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986)

…………………………………………….…………………………….... 22

*Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006) ……………....... 18

*Cooper v. Bondoni*, 841 P.2d 608 (Okla. Civ. App. 1992) (No. 75,153) ..............23

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017

(2021) ……………………………………………………………………..... 17

*Gaylord Ent. Co. v. Thompson*, 958 P.2d 128 (Okla. 1998)...................................24

*George v. Urban Settlement Servs.*, 833 F.3d 1242 (10th Cir. 2016).............. 19, 21

*Hand v. Matchett*, 957 F.2d 791, 794 (10th Cir., 1992)………………….............26

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ………….............................. 18

*Hanson v. Denckla*, 357 U.S. 235 (1958) ……………….................................... 18

*Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18 (D. Mass. 2019)…............... 13

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) …………............................. 17

*Jackson v. GreerWalker LLP*, No. 17-CV-0436-CVE-FHM, 2018 WL 827913

(N.D. Okla. Feb. 14, 2018) …………………………………………………….... 23

*Jenkins v. Prime Ins. Co.*, No. 23-4113, 2024 WL 5198761 (10th Cir. Sept. 4,

2024) ..................................................................................................... 20

*Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360 (3d Cir. 1993) ………………... 26

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277

(S.D.N.Y. 2001) ………………………………………………........................13, 27

*Lowery v. Echostar Satellite Corp.*, 160 P.3d 959 (Okla. 2007) …………………25

*Marcus Food Co. v. DiPanfilo*, No. 09-1261-EFM, 2010 WL 3946314 (D. Kan.

Oct. 7, 2010) ........................................................................................ 25

*Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058 (Okla. Civ. App. 2002)…..... 26

*OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015)....................................... 15

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998)

…………………………………………………………………………………..... 18–19

*PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65 (2d Cir. 1998)

………………………………………………………………………........ 22

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ………………….. 12

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) ………............................... 12

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ……………............................................ 14

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)............................................... 17

*Silk v. Phillips Petroleum Co.*, 760 P.2d 174 (Okla. 1988) …................................23

*Southway Constr. Co. v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999)

…………………………………………………………….... 13–15

*Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137 (10th Cir. 1997)............... 22

*Thrasher v. Rocky Mountain Auto Brokers, Inc.*, No. 18-cv-01713-RBJ, 2019 U.S.

Dist. LEXIS 164799 (D. Colo. Sept. 25, 2019) …………………………….... 26

*Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 143 S. Ct. 940 (2023) 14

*United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002)................................... 19

*United States v. Grinnell Corp.,* 384 U.S. 563 (1966) …...................................... 19

*Wathor v. Mut. Assur. Adm'rs, Inc.*, 87 P.3d 559 (Okla. 2004)............................25

*XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020)………………16, 17

*Yegiazaryan v. Smagin*, 599 U.S. 533, 143 S. Ct. 1900 (2023) ……..……11, 16, 21

### Statutes

15 U.S.C. §§ 1–2 ................................................................... 22

18 U.S.C. § 1341 .................................................................. 20

18 U.S.C. § 1343 .................................................................. 20

18 U.S.C. §§ 1961–1964 ...................................................... 21

18 U.S.C. § 1964(c) ........................................................ 11, 16

28 U.S.C. §§ 1602–1611 ................................................... 8, 12

28 U.S.C. § 1603(d) ....................................................... 12, 14

28 U.S.C. § 1605(a)(2) ............................................................................ 12, 14, 15

*Rules*

Fed. R. Civ. P. 4(f)(1) ............................................................................ 25

Fed. R. Civ. P. 8(a) ............................................................................ 25

Fed. R. Civ. P. 9(b) ............................................................................ 21, 23, 25

Fed. R. Civ. P. 12(b)(1)–(6) ............................................................................ 10, 20, 25, 26

Fed. R. Civ. P. 15(a)(2) ............................................................................ 26

*Other Authorities*

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 ............................................................................ 10, 25

## I. INTRODUCTION

COMES NOW Plaintiff Colonel Douglas Mastriano ("Plaintiff" or "Col. Mastriano"), by and through Counsel, Daniel L. Cox, The Cox Law Center, LLC., respectfully submits this response in opposition to Defendants' Motion to Dismiss. He incorporates by reference his prior responses in opposition, including his affidavit and verifications, as if set forth herein. Defendants once again attempt to avoid accountability for their ongoing racketeering, fraud, and defamation campaign by invoking immunity doctrines and procedural defenses that do not apply. As demonstrated below, this Court has both subject-matter and personal jurisdiction. Plaintiff's claims are properly pleaded under the Federal Rules of Civil Procedure, and service of process was valid and effective.

Defendants' renewed motion offers nothing new; only a repetition of arguments previously raised and rejected in substance. The governing law and facts remain unchanged: Defendants' actions constitute commercial conduct within the exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 et seq.; their extensive use of United States communications and commerce subjects them to jurisdiction; and Plaintiff has set forth viable claims under RICO, the Sherman Act, and Oklahoma common law. Accordingly, the renewed motion should again be denied in full.

## II. CORRECTED STATEMENT OF FACTS AND PROCEDURAL
## BACKGROUND

Col. Mastriano is a retired U.S. Army officer with an impeccable service record who is having his life and intangible property destroyed by the racketeering of Defendants, an Oklahoma Ph.D. student, Gregory, and his cohorts, the UNB and Individual Defendants. This civil action and the circumstances surrounding the same arose in Oklahoma, United States. UNB and Defendants did the acts alleged using the United States wires and mails, defaming him in the press, all while falsely claiming UNB was not involved in the egregious libel letter.

### A. Defendants' Mischaracterizations of the Record

Plaintiff opposes Defendants' "generally presented" recitals of his facts as mischaracterizations and sets forth his corrections as follows. Defendants once more misstate the operative facts and procedural posture. The Amended Complaint and supporting exhibits allege a coordinated scheme among the University of New Brunswick ("UNB"), its senior officials, and Oklahoma resident James Gregory III to destroy Col. Mastriano's reputation and livelihood, interfere with his United States and State elections, and defraud him of his intangible property interests in his doctoral research, publications, and professional standing.

Contrary to Defendants' portrayal, this action is not an "academic dispute." Rather, it arises from an unlawful enterprise that used the United States wires and

mails to circulate defamatory statements, misappropriate confidential academic materials, and manipulate public perception of Plaintiff during his political campaigns for Governor and United States Senate.

Defendant Gregory, a Ph.D. candidate and adjunct professor in Oklahoma, conspired with UNB administrators, including Defendants Mazerolle, Rendall, MaGee, Brown, and others, to file false academic complaints, publicly release Plaintiff's embargoed doctoral thesis, and distribute a defamatory "open letter" intended to destroy Plaintiff's credibility and income. Their actions had immediate and substantial effects within the United States, including reputational injury, lost sales, and cancellation of speaking engagements.

**B. Procedural History**

Service of process was properly accomplished through Canadian process servers consistent with Article 10 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and affidavits of service were duly notarized and filed, except the few that are presently being served under the extended Court's Order through December 5, 2025. Defendants nonetheless seek dismissal under Rules 12(b)(1), (2), (5), and (6), relying primarily on FSIA immunity and personal-jurisdiction challenges.

Plaintiff's initial opposition brief demonstrated the baselessness of those defenses. Defendants have now simply "renewed" the same motion with cosmetic adjustments, warranting the same outcome: denial.

## III. ARGUMENT

This case presents clear and compelling grounds for the Court's exercise of jurisdiction and for the denial of Defendants' renewed motion to dismiss. Each of the defenses raised, sovereign immunity, lack of personal jurisdiction, and alleged pleading insufficiency, fail as a matter of law when measured against the facts and controlling precedent.

The Federal Rules of Civil Procedure require only a short and plain statement showing that the pleader is entitled to relief, and Plaintiff has more than met that burden. When the allegations are accepted as true and construed in the light most favorable to Plaintiff, as required at this stage, it is evident that this Court possesses both the authority and the obligation to adjudicate these claims on their merits.

### A. Subject-Matter Jurisdiction Exists Under the Foreign Sovereign Immunities Act

Plaintiff has sued under the Racketeer Influenced and Corrupt Organizations Act (RICO), which provides a private right of action to "[a]ny person injured in his business or property by reason of a violation of" RICO's substantive provisions. 18

U. S. C. §1964(c). The Supreme Court has held that "a plaintiff alleges a domestic injury for purposes of §1964(c) when the circumstances surrounding the injury indicate it arose in the United States. *Yegiazaryan v. Smagin*, 599 U. S. 533, 534 (2023).

Since the United States was founded, foreign sovereign states received near complete civil immunity from suit in American courts. *Orient Mineral Co. v. Bank of China*, 506 F.3d 980 (10th Cir. 2007) (internal citations omitted). In 1952, the State Department adopted a rule allowing suits for "private or commercial activity." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 487, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *Republic of Austria v. Altmann*, 541 U.S. 677, 690, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004). In 1976, Congress codified this practice. Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602-11. See 506 F.3d at 991.

## 1. Defendants' Activities Fall Within the FSIA Commercial Activity Exception

Defendants UNB and certain individuals again assert immunity under the FSIA, 28 U.S.C. §§ 1602-1611. This argument fails because their conduct constitutes commercial activity within the meaning of § 1603(d) and therefore falls squarely within the commercial activity exception under § 1605(a)(2). The Supreme Court has long recognized that sovereign immunity does not extend to a

foreign entity's private or commercial acts. *Republic of Austria v. Altmann*, 541 U.S. 677, 688 (2004); *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992). The focus is on the nature, not the purpose, of the conduct.

Here, Defendants' actions of repeated reopening Plaintiff's doctoral review in coordination with Gregory's demands during two of Col. Mastriano's political campaigns, disseminating defamatory material, and contracting with U.S. entities for defense-related education programs, are plainly commercial in character. The Tenth Circuit, and other federal courts, have held that educational institutions and their employees act commercially when engaging in tuition contracts, publishing, or public relations activities. *Southway Construction Co. v. Central Bank of Nigeria*, 198 F.3d 1210, 1217-18 (10th Cir. 1999) (acts of "the type" private parties engage in" are commercial); *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 296–98 (S.D.N.Y. 2001) (defamation and media publication by foreign officials constituted commercial activity; "if they provided the [documents] with knowledge that the [entity] planned to use them in violation of [Plaintiff's copyright] they cannot contend that they were uninvolved in the commercial activity that forms the basis of [Plaintiff's] complaints."). Likewise, *Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 24–25 (D. Mass. 2019), found that defamation and misuse of intellectual property were commercial acts under FSIA.

Here, UNB marketed graduate programs to U.S. students, accepted U.S. Department of Defense funds, and used American communications channels to publish false statements about Plaintiff. These are precisely the kind of transactions "by which a private party engages in trade and commerce." *Weltover*, 504 U.S. at 614.

### 2. Individual Defendants Are Not "Foreign States" Under FSIA

The FSIA applies only to "foreign states" and their agencies or instrumentalities, not to individual officials sued in their personal capacities. *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010). Thus, even if UNB were deemed an instrumentality of Canada, its employees and administrators remain subject to suit. Recent precedent reaffirms that distinction. In *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 940-49 (2023), the Court confirmed that FSIA immunity does not automatically extend to state-owned entities engaged in commercial acts, much less to natural persons. Defendants' attempt to cloak individual wrongdoing in sovereign immunity directly contradicts *Samantar* and its progeny.

### 3. Plaintiff's Claims Fall Within the FSIA "Commercial Activity" Exception

Even assuming arguendo that UNB, and thus the certain "UNB" individual

defendants[1], constitutes a "foreign state," the commercial-activity exception

applies. FSIA defines "commercial activity" as follows:

> [E]ither a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose. 28 U.S.C. § 1603(d).

Section 1605(a)(2) provides that a foreign state is not immune where an

action is based on commercial activity with a direct effect in the United States.

Under § 1605(a)(2)'s exception to FSIA immunity for commercial activities

("commercial activity exception"):

> [A foreign state is not immune from suit when] the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2).

---

[1] It is important to note for the record that multiple professors named in this lawsuit have left UNB and now work elsewhere, and one has passed away and the Estate is named. At least three were not employed by UNB but by other Universities. All these include, at least, Morton, Ferris, Bothwell, MacMillan, Rendall, and the Estate of Elizabeth Menke. Hague process service is currently being executed on each of these, with the Estate having already been served, Rendall was served in person by a NB local process server and is presently seeking to be served by the Sheriff of Calgary under the Hague Convention after he moved from UNB to Alberta, and so far Ferris, MacMillan and Bothwell are apparently avoiding their University offices so are being served at their homes.

Courts look to the "gravamen" of the complaint, the core conduct giving rise to the alleged injury, to find substantial contact with the United States and that an action is "based upon" the "particular conduct" when it constitutes the gravamen of the suit. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35-37 (2015).

The gravamen here is Defendants' intentional misuse of U.S. communications and media to defame Plaintiff and interfere with his elections and professional opportunities through misuse of his dissertation and through issuances of defamatory letters and communications. Joining in repeatedly with an Oklahoma-based Ph.D. student and adjunct to target Col. Mastriano while he was in the United States involved in US business, elections and commerce, in order to destroy him, mock and ridicule him and ruin his reputation and career, is substantial contact with the United States. All plead facts show damage and harm via contact here in the United States by defendants' conduct. Such conduct had an immediate and foreseeable impact within the United States, where Plaintiff resides and conducts his business. This satisfies the "direct effect" requirement. See *Southway Construction*, 198 F.3d at 1217-18 (finding direct effect where harm was felt in the United States).

Moreover, accepting U.S. funds or recruiting American students constitutes a commercial contact sufficient to invoke jurisdiction. UNB's own website and

published materials target U.S. students and solicit U.S. government partnerships activities indistinguishable from those of a private corporation. Accordingly, Defendants' invocation of sovereign immunity fails. This Court possesses subject-matter jurisdiction under the FSIA's commercial-activity exception.

### 4. RICO and Other Federal Statutes Provide Independent Bases for Jurisdiction

Plaintiff's RICO claims under 18 U.S.C. § 1964(c) independently confer federal-question jurisdiction. The Supreme Court has clarified that civil RICO applies to foreign actors where the injury is domestic. *Yegiazaryan v. Smagin*, 599 U.S. 533, 1907-08 (2023). The injury here, economic and reputational harm suffered in the United States, is quintessentially domestic.

The Court in *Smagin* emphasized that the proper inquiry is "where the injury occurred, not where the predicate acts were committed." Id. at 8. Plaintiff was politically harmed, was smeared and interfered with during the final days of the Governor race that was polling very close, lost his massive lead and front-runner status in the U.S. Senate race to another candidate who went on to win the U.S. Senate seat, lost business and speaking opportunities, received diminished and canceled book contracts, and incurred diminished professional reputation within the United States. These domestic injuries independently sustain federal jurisdiction irrespective of FSIA arguments.

**B. This Court Has Personal Jurisdiction Over Defendants**

Defendants also renew their challenge to personal jurisdiction. Their arguments fail for at least three reasons: (1) Defendants purposefully directed their conduct toward the United States and Oklahoma; (2) statutory provisions under RICO authorize nationwide service of process; and (3) the doctrine of pendent personal jurisdiction applies to the remaining claims. But Plaintiff has met his preponderance burden of establishing that the court can exercise personal jurisdiction and has made his *prima facie* showing that jurisdiction exists through means of affidavits, acceptance with signatures of actual authorities of UNB, notices and other written material. *XMission, L.C. v. Fluent LLC.*, 955 F.3d 833, 839 (10th Cir. 2020).

**1. Defendants Purposefully Availed Themselves of U.S. and Oklahoma Forums**

The Due Process Clause requires only that a defendant have "minimum contacts" with the forum such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The test is satisfied where a defendant purposefully directs its activities toward the forum and the litigation arises from those contacts. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 1026-28 (2021).

Here, at all times relevant to the Amended Complaint, Defendant Gregory resides and works in Oklahoma and used his position there to initiate and propagate false complaints through U.S. interstate communications channels. UNB officials coordinated with him via e-mail, telephone, and social media, all directed to recipients in Oklahoma and elsewhere in the United States. The resulting defamation and interference caused foreseeable injury in Oklahoma, where the conspiratorial and defamatory communications originated.

The Tenth Circuit has repeatedly held that such intentional, forum-directed conduct establishes specific jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020) (jurisdiction is proper where defendant intentionally targeted the forum through electronic communications); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1094 (10th Cir. 1998).

### 2. RICO's Nationwide Service Provision Confers Personal Jurisdiction

Civil RICO authorizes nationwide service of process where "the ends of justice" so require. 18 U.S.C. § 1965(b). The Tenth Circuit interprets this provision broadly to ensure that all participants in a single racketeering enterprise may be haled into one forum. See *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006)("When a civil RICO action is brought in a district court where personal jurisdiction can be established over at least one defendant, summonses can be served nationwide on other defendants if required by the ends of justice.").

Here, the ends of justice plainly favor consolidated adjudication. Defendant Gregory's conduct in Oklahoma is inseparable from that of the UNB Defendants abroad. Fragmented litigation would risk inconsistent rulings and frustrate RICO's remedial purpose. Accordingly, the Court may exercise personal jurisdiction over all defendants pursuant to § 1965(b).

### 3. The Doctrine of Pendent Personal Jurisdiction Applies

Even if this Court were to find independent personal jurisdiction lacking as to certain defendants, the doctrine of pendent personal jurisdiction permits the Court to exercise jurisdiction over all related claims arising from a common nucleus of operative fact. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002).

Where, as here, at least one claim, the federal RICO count, supports nationwide service of process, other claims based on the same underlying conduct may "piggyback" on that jurisdictional foundation. *Id*. This doctrine prevents duplicative litigation and ensures that interconnected defendants in a single fraudulent scheme are adjudicated together. Because Plaintiff's RICO, Sherman Act, and common-law claims all arise from the same racketeering enterprise and commercial activity, pendent personal jurisdiction properly extends to each defendant.

### 4. Exercising Jurisdiction Comports with Fair Play and Substantial Justice

The exercise of jurisdiction here also satisfies the traditional reasonableness inquiry. The Court considers (1) the burden on defendants; (2) the forum state's interest; (3) plaintiff's interest in obtaining relief; and (4) the interstate judicial system's interest in efficient resolution. *OMI Holdings*, 149 F.3d at 1095. All four factors favor jurisdiction. Defendants already maintain significant U.S. contacts—marketing to American students, receiving U.S. government funds, and actively engaging in U.S. commerce. Oklahoma has a strong interest in adjudicating disputes involving local residents and injuries initiated within its borders. Plaintiff, a U.S. citizen injured domestically, has a compelling interest in relief. And consolidating all claims in a single forum serves judicial economy.

Accordingly, this Court's exercise of personal jurisdiction over all defendants is proper under both constitutional and statutory standards.

### C. Plaintiff's Complaint States Actionable Claims Under Rule 12(b)(6)

Defendants renew their argument that Plaintiff's claims fail to state a plausible cause of action under Federal Rule of Civil Procedure 12(b)(6). That argument is without merit.

Under well-established standards, a complaint survives a motion to dismiss where its factual allegations, accepted as true, "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must view all well-pleaded facts in the light most favorable to the plaintiff and draw all reasonable inferences in his favor. *Jenkins v. Prime Ins. Co.*, No. 23-4113 (10th Cir. Sept. 4, 2024).

Plaintiff's Complaint easily meets that standard across all counts.

### 1. Civil RICO - Counts I & II

Plaintiff alleges predicate acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, constituting a pattern of racketeering activity under 18 U.S.C. § 1961(5). The Complaint details how Defendants used interstate communications to transmit false academic charges, defamatory statements, and stolen intellectual property with the common purpose of destroying Plaintiff's business and political prospects.

The Supreme Court has confirmed that RICO applies extraterritorially when the injury is domestic. *Yegiazaryan v. Smagin*, 599 U.S. 533, 1907-09 (2023). In *Smagin*, the Court held that a plaintiff suffers a "domestic injury" whenever the circumstances indicate that harm is felt in the United States, regardless of where the predicate acts occurred. *Id*, at 9-10. Plaintiff's economic and reputational

damages were sustained entirely within the United States; accordingly, his RICO claim is cognizable and properly before this Court.

Furthermore, Defendants' collective participation in the enterprise satisfies § 1962(c). The "enterprise" consisted of UNB and its agents acting together with Gregory to further a coordinated campaign to discredit Plaintiff and suppress competition in the historical-research marketplace. Such collusion constitutes conduct "in or affecting interstate commerce," 18 U.S.C. § 1962(a)–(c). The allegations, supported by specific e-mails and public statements, meet Rule 9(b)'s particularity standard.

## 2. Sherman Act - Counts III & IV

The Complaint also pleads violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1–2. Plaintiff alleges an unlawful combination among Defendants to restrain trade and monopolize the niche market for academic and commercial exploitation of World War I historical research.

To state a claim under § 1, a plaintiff must allege concerted action resulting in an unreasonable restraint of trade. *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1141 (10th Cir. 1997). Defendants' agreement to circulate false information, devalue Plaintiff's works, and elevate Gregory's competing book constitutes exactly that.  It is clear here that "an agreement between a buyer and seller alone may satisfy the concerted action requirement." *Id.* at 1142.

The nexus and tying of the concerted actions of Defendants is blatant, included a campaign that Col. Mastriano was "a fraud," repeated these matters in the market place and niche of commercial production, a reopened coordination of investigations not once but at least twice by a competitor selling his own book on the exact WWI topic, and issuance of a horrifically false and defamatory letter accusation of disdain, antisemitism, and related false and fraudulent allegations spread throughout the United States and world, all of which was destructive of Col. Mastriano's profession, trade, books, market opportunities and product rights and income.

For § 2, monopolization requires (1) possession of monopoly power and (2) willful acquisition or maintenance of that power. Defendants collectively wielded control over the academic market for World War I research through UNB's institutional platform and access to international publishers. Their efforts to discredit Plaintiff were intended to maintain dominance and exclude a direct competitor, satisfying § 2's requirements.

### 3. Fraud - Count V

Under Oklahoma law, fraud requires (1) a material misrepresentation, (2) made with knowledge of its falsity, (3) with intent to induce reliance, and (4) resulting injury. *Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 176 (Okla. 1988).

Defendants knowingly fabricated allegations of academic misconduct and disseminated them through official UNB channels to the U.S. media. They falsely represented that an "investigation" had been reopened to imply Plaintiff's dishonesty, intending that publishers, readers, and voters would rely on that implication. Plaintiff indeed suffered substantial harm: lost contracts, diminished income, and irreparable damage to reputation. The complaint identifies the "who, what, when, where, and how" of each misrepresentation, satisfying Rule 9(b).

### 4. Aiding and Abetting - Count VI

Oklahoma recognizes liability for aiding and abetting another's tortious conduct where the defendant gives substantial assistance or encouragement. *Jackson v. GreerWalker LLP*, No. 17-CV-0436-CVE-FHM, at *8 (N.D. Okla. Feb. 14 2018), citing Cooper v. Bondoni, 841 P.2d 608 , 611(Okla. Ct. App. 1992).* Defendants Rendall, MaGee, Brown, and others materially aided Gregory by facilitating the release of embargoed documents and endorsing his defamatory publications. Their participation transformed UNB's official channels into vehicles of personal retribution, easily meeting the "substantial assistance" standard.

### 5. Breach of Contract - Count VII

Plaintiff entered a contractual relationship with UNB for the completion and conferral of his Ph.D. in History. That contract included an implied covenant of good faith and fair dealing. By reopening the degree ten years after conferral and

publicly questioning its validity, and issuing negative statements prior to allowing *any* hearing which was required under UNB and Canadian higher education rules, UNB materially breached the agreement. Courts routinely recognize a university's contractual obligation to confer degrees according to its established policies. See, *Hand v. Matchett*, 957 F.2d 791, 794 (10th Cir., 1992)("because the Board had no role in revoking Michael Hand's degree, the revocation was void.).

Defendants' unilateral decision to nullify Plaintiff's degree for political reasons constitutes a textbook breach of contract.

### 6. Negligence - Count VIII

Defendants owed Plaintiff a duty of reasonable care arising from their professional relationship and foreseeable reliance on UNB's representations. *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1367 (3d Cir. 1993) (university owed duty to athlete due to special relationship). The deliberate release of confidential materials and reckless disregard for accuracy breached that duty and foreseeably caused harm within the United States.

### 7. Defamation - Count IX

Finally, Plaintiff's defamation claim is more than adequately pleaded. Defendants published false, malicious statements accusing Plaintiff of academic fraud and moral unfitness, per se defamatory in nature. Oklahoma recognizes such accusations as actionable without proof of special damages. *Gaylord*

*Entertainment Co. v. Thompson*, 958 P.2d 128, 147 (Okla. 1998). Defendants'
publication on official letterhead, press interviews, and online postings all
constitute republication under Oklahoma law. The statements were unprivileged,
false, and made with actual malice—intended to destroy Plaintiff's reputation
during a high-profile political campaign.

Accordingly, every claim in the Complaint satisfies Rule 8(a) and Rule 9(b).
Dismissal under Rule 12(b)(6) is unwarranted.

### D. Service of Process Was Proper and Satisfied the Hague Convention

Defendants again argue that service of process was defective. This assertion
is contradicted by the record. Federal Rule of Civil Procedure 4(f)(1) authorizes
service on individuals in a foreign country "by any internationally agreed means
reasonably calculated to give notice, such as those authorized by the Hague
Convention." Canada is a signatory and has not objected to Article 10's provisions
permitting service by mail or competent persons.

Plaintiff effected service upon each defendant personally through both
Canada Hague Convention government offices and again personally via licensed
Canadian process servers, who personally delivered the summons and amended
complaint to the defendants and notarized the affidavits of service, complete with
the Hague Convention form, which have been filed with the Court, except for the
few remaining outstanding defendants noted in the Court's extension of service.

Courts have consistently deemed such service valid. *Marcus Food Co. v.*
*DiPanfilo*, No. 09-1261-EFM, 2010 WL 3946314, 4-5 *(D. Kan. 2010)*. Even if,
*arguendo*, that minor irregularities existed which they do not, the proper remedy is
quashing or allowing curative service, not dismissal. *Thrasher v. Rocky Mountain*
*Auto Brokers, Inc.*, 2019 U.S. Dist. LEXIS 164799 (D. Colo. Sept. 25 2019). The
remaining several defendants that are still being served as this is filed have, at least
in several cases, apparently sought to avoid service of process even under the
Hague Convention but are still being pursued for service by Canadian authorities,
now at their homes. The Court has already granted extensions to ensure these are
served and that time has not yet expired (ECF 155, Order of Judge Bernard M.
Jones).

Because Defendants had actual notice and participated through counsel, any
technical objection is also waived. See Fed. R. Civ. P. 12(h)(1). The Court should
therefore deny dismissal under Rule 12(b)(5).

### E. Alternative Request for Leave to Amend and/or Engage In Limited Jurisdictional Discovery

Should the Court find any jurisdictional pleading deficiency, Plaintiff
respectfully requests both permission to engage in limited jurisdictional discovery
and leave to amend under Federal Rule of Civil Procedure 15(a)(2). The Federal
Rules permit amendment without leave of court under timelines that by courtesy

may be extended, as here. Fed. R. Civ. Proc. 15(a)(1). Because sovereign immunity defenses go many times, as here, to the heart of the merits and claims rather than mere jurisdictional questions of immunity, limited jurisdictional discovery is recognized as a mechanism for to resolve jurisdictional questions which may overlap the merits of the allegations. *Leutwyler* 184 F. Supp 2d at 296-97 ("it is well established that plaintiffs facing motions to dismiss under FSIA are entitled to "limited discovery with respect to the jurisdictional issue.")(citations omitted).

Furthermore, the Rule also allows the Court to permit leave to amend "freely when justice so requires." *Id.* at 2.

In the event this Court dismisses any part of Plaintiff's Amended Complaint, he requests leave to amend and to conduct limited discovery. It is improper of Defendants, and outrageous, to falsely claim Col. Mastriano's pleading is "meritless" inferring any intent by the Colonel to "intimidate and harass" Defendants. The Tenth Circuit repeatedly affirms this liberal standard, particularly where an amendment can cure alleged technical defects. Given the ongoing harm to Plaintiff's reputation and business, justice demands full adjudication on the merits rather than dismissal on procedural grounds.

## IV. CONCLUSION

Defendants' renewed motion to dismiss offers nothing new. Their conduct falls squarely within the FSIA commercial-activity exception; this Court possesses

both subject-matter and personal jurisdiction; every claim satisfies the plausibility standard; and service of process complied with international and federal law.

**WHEREFORE**, the Plaintiff, DOUGLAS MASTRIANO, by and through his attorney Daniel L. Cox, The Cox Law Center, LLC, respectfully requests this court to DENY the Defendant's Motion to Dismiss in its entirety and grant such other relief as the Court deems just and proper.

Respectfully submitted,

The Cox Law Center, LLC
_____/s/_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail:
dcox@coxlawcenter.com

## CERTIFICATE OF SERVICE

This is to certify on this 24th day of October, 2025, that a copy of the foregoing was served on counsel of record via CM/ECF.

_____/s/_____
Daniel L. Cox
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com