## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Douglas Mastriano | : | CIVIL NO. 5:24-cv-00567-J |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| | : | |
| James Gregory, III, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT KUHN'S MOTION TO DISMISS AND BRIEF IN SUPPORT

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorney, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendant KUHN's motion to dismiss and brief in support, filing this Response in Opposition and Brief in Support, requesting denial of Defendant's motion.

**The Cox Law Center, LLC**
By:
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

*I.*  *INTRODUCTION* _____ **5**

*II.*  *ARGUMENT* _____ **6**

  **A.  This Court Has Personal Jurisdiction Over Defendant Kuhn** _____ **7**

    **1.  RICO's "Ends of Justice" Standard Confers Jurisdiction Over Foreign Co-Conspirators** _____ 7

    **2.  Kuhn purposefully directed tortious and racketeering conduct toward the United States and Oklahoma** _____ 9

    **3.  Exercising Jurisdiction Over Kuhn Comports with Due Process** ___ 11

  **B.  Service of Process Was Proper and Sufficient** _____ **11**

  **C.  Plaintiff Has Standing to Assert His Claims under RICO and the Sherman Act** _____ **13**

    **1.  Plaintiff asserts Concrete Injury to Business and Property Interests** 13

    **2.  Plaintiff's Injuries are Directly Traceable to Kuhn's Conduct** ____ 14

    **3.  Plaintiff's Injuries are Redressable** _____ 15

  **D.  Plaintiff Properly Pleads RICO and RICO Conspiracy Claims** _____ **16**

    **1.  The Amended Complaint Alleges a Pattern of Racketeering Activity** 16

    **2.  The Amended Complaint Adequately Alleges a RICO Enterprise** __ 19

  **E.  Plaintiff States a Cognizable Claim Under § 1 of the Sherman Act** ___ **20**

    **1.  Using Fraud to Eliminate Competition is Anti-Competitive Conduct** 21

    **2.  Plaintiff Alleges Concerted Action Among Multiple Market Participants** _____ 23

  **F.  Plaintiff States a Plausible Claim for Defamation Under Rule 12(b)(6) and the OCPA** _____ **24**

**G.    Request for Leave to Amend Complaint** _____**27**

***III.    CONCLUSION*** _____**29**

***CERTIFICATE OF SERVICE*** _____**30**

## TABLE OF AUTHORITIES

*Cases*

*Cory v. Aztec Steel Bldg., Inc.,* 468 F.3d 1226 (10th Cir. 2006)_____4

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, (10th Cir. 2008)_____6

*Burger King Corp. v. Rudzewicz***,** 471 U.S. 462 (1985)_____6

*Melea Ltd. v. Jawer SA,* 511 F.3d 1060  (10th Cir. 2007)_____9

*Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008)_____11

*Tal v. Hogan,* 453 F.3d 1244 (10th Cir. 2006)_____12

*Boyle v. United States*, 556 U.S. 938  (2009)_____12

*New York Times v. Sullivan,* 376 U.S. 254 (1964)_____12

*Yates v. Gannett Co., Inc.,* 523 P.3d 69 (Okla. Civ. App. 2022)_____18

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009)_____19

**Statutes**

18 U.S.C. § 1965(b) _____4

8 U.S.C. §1964(c)_____8

15 U.S.C. § 15(a) _____ 9

18 U.S.C. § 1961(1) _____ 11

18 U.S.C. §§ 1341, 1343 _____ 11

15 U.S.C. § 1 _____ 13

Okla. Stat. tit. 12, § 1432(A) _____ 16

**Rules**

Rule 15(a)(2) _____ 5

Fed. R. Civ. P. 4(f) _____ 8

## I. INTRODUCTION

Defendant Roland Kuhn's Renewed Motion to Dismiss rests on the same flawed premises this Court has already rejected in connection with other defendants: that Plaintiff Douglas Mastriano's claims are extraterritorial, speculative, or jurisdictionally barred. None of these contentions withstands scrutiny.  Plaintiff incorporates herewith his Response in Opposition and exhibits previously filed to Defendant's first motions to dismiss, as if fully set forth herein.

As the Amended Complaint details, Roland Kuhn, a Canadian academic and co-conspirator of Defendant Gregory, knowingly participated in a coordinated enterprise designed to destroy Col. Mastriano's professional standing, academic reputation, and political career through calculated acts of defamation and fraud.  From abroad, Kuhn used email, internet platforms, and publications directed at the United States to repeat and amplify false allegations of "academic fraud" against Plaintiff, conduct that was both foreseeable and intended to cause injury within this District and throughout the United States.

Kuhn now seeks to avoid accountability by invoking personal jurisdiction and service defenses that are incompatible with the broad reach of the RICO statute, established due process principles, and the realities of modern cross-

border communications. His argument that he is insulated from liability merely because he resides outside the United States finds no support from the law. When a foreign defendant intentionally directs racketeering conduct toward the United States, he purposefully avails himself of this forum and may be haled into court here.

Mastriano's claims are substantively sound. The Amended Complaint pleads a pattern of racketeering activity under the RICO Act, a concerted restraint of trade under the Sherman Act, and actionable defamation under Oklahoma law and the Oklahoma Citizens Protection Act (OCPA). Each claim is supported by detailed factual allegations, plausible on their face, and reinforced by documentary exhibits.

For these reasons, and as further explained below, Defendant Kuhn's Renewed Motion to Dismiss should be denied in its entirety. Alternatively, should the Court find any deficiency in pleading, Plaintiff respectfully requests leave to amend under Rule 15(a)(2) to provide additional factual detail already identified in his verified declaration.

## II.    ARGUMENT

This case presents clear and compelling grounds for the Court's exercise of jurisdiction and for the denial of Defendants' renewed motion to dismiss. Each of the defenses raised by Kuhn fails as a matter of law when measured against the facts and controlling precedent.

The Federal Rules of Civil Procedure require only a short and plain statement showing that the pleader is entitled to relief, and Plaintiff has more than met that burden. When the allegations are accepted as true and construed in the light most favorable to Plaintiff, as required at this stage, it is evident that this Court possesses both the authority and the obligation to adjudicate these claims on their merits.

### A. This Court Has Personal Jurisdiction Over Defendant Kuhn

Kuhn's jurisdictional arguments rest on the false premise that his conduct was "based in Canada" and had no connection to the United States. This characterization ignores both the substance of his conduct and binding legal precedent. This Court has personal jurisdiction over Kuhn under RICO's nationwide service provision and under traditional minimum contacts analysis, or both simultaneously.

### 1. RICO's "Ends of Justice" Standard Confers Jurisdiction Over Foreign Co-Conspirators

RICO's service of process provision, 18 U.S.C. § 1965(b), provides that in "any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned." This provision "create[s] nationwide personal jurisdiction" when two conditions are met: (1) the forum court has personal jurisdiction over at least one defendant, and (2) the "ends of justice"

require bringing additional defendants before the court. *Cory v. Aztec Steel Bldg., Inc.,* 468 F.3d 1226, 1231 (10th Cir. 2006).

Both conditions are easily satisfied here. First, this Court indisputably has personal jurisdiction over Defendant Gregory, who resided in Oklahoma during the relevant time period and whose conduct forms the foundation of this conspiracy. Second, the ends of justice clearly require bringing Kuhn before this Court because judicial economy and fairness demand that all participants in an alleged nationwide conspiracy be tried together.

Contrary to Kuhn's assertion, Col. Mastriano need not "demonstrate" that § 1965 "potentially confers jurisdiction" through detailed factual allegations in the Amended Complaint. Rather, the "ends of justice" standard is "flexible" and cannot be too particularized. *Id*. So long as there is personal jurisdiction over one defendant, the ends of justice standard covers all co-conspirators that are involved in the alleged RICO violation. *Id.* at 1230.

This case involves alleged coordination among twenty-seven defendants across multiple countries over multiple years. The Amended Complaint alleges that these defendants worked together to destroy Col. Mastriano's academic reputation and interfere with his political campaigns through a pattern of fraudulent communications. Trying these defendants separately would risk inconsistent factual findings about whether the conspiracy existed, who participated, and what

damages resulted. It would also impose enormous burdens on Col. Mastriano to litigate the same core facts in multiple forums and on this Court to coordinate potentially overlapping proceedings.

Kuhn was a central participant in the conspiracy, not a peripheral figure. The alleged conspiracy could not have achieved its purpose, which was interfering with American elections and destroying Col. Mastriano's reputation, without the veneer of international academic validation that Kuhn provided. The Court should reject Kuhn's jurisdictional challenge under RICO's nationwide service provision.

**2. Kuhn purposefully directed tortious and racketeering conduct toward the United States and Oklahoma**

Even under a traditional specific-jurisdiction analysis, Mastriano easily meets his burden. A defendant purposefully directs activity at a forum when (1) he commits an intentional act, (2) expressly aimed at the forum state, (3) causing harm that he knows is likely to be suffered there. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071-1073 (10th Cir. 2008). Kuhn satisfies all three elements.

Kuhn authored, circulated, and promoted online statements accusing Plaintiff of "academic fraud" and "fabrication," knowing those statements would reach American audiences and media. He coordinated those publications with Gregory, an Oklahoma resident, to maximize political and reputational harm to

Plaintiff during his U.S. Senate campaign. Kuhn's conduct predictably caused economic and reputational injury to Plaintiff in the United States, including in Oklahoma, where Plaintiff's professional and political activities are centered.

These allegations easily meet the "purposeful direction" standard recognized by the Supreme Court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). By repeatedly republishing falsehoods to American audiences for the express purpose of influencing U.S. academic and political institutions, Kuhn "availed himself of the privilege of conducting activities within the United States," making it reasonable for him to anticipate being haled into court here. *Id.* at 476.

These allegations easily meet the "purposeful direction" standard recognized by the Supreme Court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). By repeatedly republishing falsehoods to American audiences for the express purpose of influencing U.S. academic and political institutions, Kuhn "availed himself of the privilege of conducting activities within the United States," making it reasonable for him to anticipate being haled into court here. *Id.* at 476.

### 3.  Exercising Jurisdiction Over Kuhn Comports with Due Process

When a defendant purposefully directs conduct toward the forum, here the United States, jurisdiction is presumed reasonable. *Id.* at 473.  The burden then shifts to the defendant to present a compelling case that other considerations render jurisdiction unreasonable. *Id.* at 476. Kuhn cannot do so.

The relevant factors all weigh in favor of jurisdiction. Modern electronic discovery and virtual proceedings minimize any hardship of defending this case against Canada. Oklahoma has a substantial interest in adjudicating conduct by one of its residents (Gregory) and his co-conspirators. Finally, Plaintiff has a strong interest in obtaining convenient and effective relief in the United States, where the injury occurred.

Accordingly, exercising jurisdiction over Kuhn is both lawful and fair.  *Cory* at 1231. For these reasons, Kuhn's jurisdictional challenge should be denied.

### B. Service of Process Was Proper and Sufficient

Kuhn argues that service was insufficient under Federal Rule of Civil Procedure 4(f) because Col. Mastriano sent papers by mail to an individual at the NRC who was not authorized to accept service on Kuhn's behalf. This argument fails for multiple reasons.

First, as a threshold matter, Kuhn is still being served by Canadian authorities via the Hague Convention. He has not waived, nor cooperated, with service. Canadian authorities are attempting service at his work and home.

Rule 12(b)(5) challenges to sufficiency of service are disfavored and easily cured. If the Court finds any technical deficiency in service, which is not yet ripe in any case, the appropriate remedy is to permit Col. Mastriano to effect proper service, not to dismiss the action.

Kuhn's characterization of the service attempts is incomplete. The record shows that Col. Mastriano attempted and is still attempting service by multiple means, including an email to Kuh requesting waiver of service, mail service to NRC addressed to Kuhn, Hague Convention government service and additional service attempts being considered including Canadian private investigator/process service.

While Kuhn argues some methods were improper, he does not dispute that he received actual notice of the Amended Complaint. Indeed, he hired a prestigious law firm and filed a detailed motion to dismiss addressing the substance of the allegations, demonstrating he has suffered no prejudice from any alleged service defect.

Service by mail on a foreign defendant is permissible under Rule 4(f)(1) when "not prohibited by international agreement." Fed. R. Civ. P. 4(f)(1). Canada has not objected to service by mail. Therefore, service by mail was permissible.

Even if service on Kuhn via his employer the NRC was improper, Kuhn admits <u>he personally received the package</u>. He opened it, reviewed its contents, and

retained counsel to file a motion to dismiss. Under these circumstances, any technical deficiency in the service method is harmless. The purpose of service, to provide notice and opportunity to respond, was indisputably fully accomplished.

Col. Mastriano had named both Kuhn individually and the NRC as defendants. It is entirely appropriate to serve both defendants. If there was any confusion about whether a particular summons was directed at Kuhn individually or the NRC, Kuhn could have sought clarification rather than filing a motion to dismiss. The Court should reject Kuhn's insufficient service argument or, at a minimum, grant additional leave for Col. Mastriano to perfect service if that becomes necessary after December 5, 2025.

### C. Plaintiff Has Standing to Assert His Claims under RICO and the Sherman Act

Kuhn argues that Col. Mastriano lacks standing to assert RICO and Sherman Act claims because he has not alleged injury to business or property. This argument fundamentally mischaracterizes both the Amended Complaint's allegations and the applicable legal standards. Col. Mastriano has alleged concrete economic injuries that easily satisfy Article III standing and the enhanced standing requirements for RICO and Sherman Act claims.

### 1.  Plaintiff asserts Concrete Injury to Business and Property Interests

Pursuant to 18 U.S.C. §1964(c), any person injured in his business or property by reason of a violation of 1962 may sue for treble damages. Mastriano's

lost income, royalties, and contractual benefits are precisely the type of business injuries that confer RICO standing.

Further, the Sherman Act grants a private right of action, and treble damages, to any person injured in his business or property "by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15(a).  Plaintiff's allegations of lost book sales and reduced market access constitute a direct antitrust injury flowing from Defendants' concerted refusal to deal. Kuhn's renewed argument that Plaintiff lacks standing because he is a competitor rather than a consumer is contrary to settled law. The Supreme Court has recognized that competitors who suffer exclusionary injury from fraudulent or collusive practices may sue. *Blue Shield of Va. v. McCready*, 457 U.S. 465, 478-79 (1982). Plaintiff's allegations of being driven from the relevant market fall squarely within that principle.

### 2.  Plaintiff's Injuries are Directly Traceable to Kuhn's Conduct

Kuhn's republication of Gregory's false claims combined with his participation in the coordinated communications to universities and publishers foreseeably produced Plaintiff's economic losses. As an initial matter, in a conspiracy case, each co-conspirator is liable for all injuries caused by the conspiracy, not just injuries directly caused by his own individual acts. *Melea Ltd. v. Jawer SA,* 511 F.3d 1060, 1070 (10th Cir. 2007). The Amended Complaint alleges that Kuhn joined and participated in a conspiracy alongside Gregory, UNB

Defendants, and others to destroy Col. Mastriano's reputation and interfere with his election. Kuhn is liable for all injuries caused by the conspiracy, including injuries directly caused by other co-conspirators.

Even if each co-conspirator were not liable for all injuries caused by the conspiracy, Col. Mastriano's injuries are directly traceable to Kuhn's specific conduct. The causal chain is straightforward. Gregory made false allegations about Col. Mastriano's dissertation. UNB opened sham investigations. Kuhn subsequently endorsed Gregory's allegations and validated UNB's investigations via a public forum, publishing the same throughout the United States and the world. Media outlets and voters relied on Kuhn's endorsements as evidence that the allegations were credible.

Because Plaintiff's allegations establish concrete injury, causation, and redressability, he has both Article III and statutory standing to pursue each claim. Kuhn's Rule 12(b)(1) challenge therefore fails.

### 3. Plaintiff's Injuries are Redressable

Kuhn does not seriously challenge redressability, and for good reason. Col. Mastriano seeks monetary damages, declaratory relief, and injunctive relief. All of these remedies would redress his injuries. A judgment awarding damages would compensate him for lost income and opportunities. A declaratory judgment would

vindicate his reputation. An injunction would prevent further harm. These are classic forms of redress and they should be awarded Col. Mastriano.

Kuhn suggests in passing that damages might not fully repair Col. Mastriano's reputational harm. Perhaps not. But "complete relief" is not required. The question is whether the requested relief would meaningfully redress the injury, not whether it would make Col. Mastriano entirely whole. It would. The Court should reject Kuhn's standing challenges.

### D. Plaintiff Properly Pleads RICO and RICO Conspiracy Claims

Kuhn renews his argument that the Amended Complaint fails to state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), contending that Plaintiff alleges "no enterprise, no pattern, and no racketeering acts." The record demonstrates otherwise with ample factual support, and Col. Mastriano pleads each element of a RICO violation. This includes the existence of an enterprise, a pattern of racketeering activity, injury to business or property, and finally, causation.

### 1. The Amended Complaint Adequately Alleges a Pattern of Racketeering Activity

Kuhn misunderstands both what constitutes "racketeering activity" and how conspiracy liability operates under RICO. As a threshold matter, RICO defines "racketeering activity" to include, among other things, mail fraud and wire fraud. 18 U.S.C. § 1961(1). Mail fraud and wire fraud, in turn, require a scheme to

defraud, use of the mails or interstate wires in furtherance of the scheme, and intent to defraud. 18 U.S.C. §§ 1341, 1343. The Amended Complaint alleges all three elements. It identifies a scheme, identifies use of mails and wires, and it alleges intent.

In a conspiracy case, each conspirator need not personally commit every predicate act. Rather, each conspirator is liable for all predicate acts committed by any conspirator in furtherance of the conspiracy. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647-48 (2008). The Amended Complaint alleges that Kuhn joined and participated in the conspiracy by endorsing Gregory's allegations, validating UNB's investigations, and publishing these endorsements during Col. Mastriano's Governor's election during the early voting and days before the state-wide election day vote, and the United States Senate campaign. It further alleges that co-conspirators used mails and wires to transmit fraudulent communications as part of the same scheme. Under conspiracy principles, Kuhn is liable for those communications, even if he did not personally send them.

Kuhn also argues that his own conduct, presenting at a symposium and publishing statements accusing Col. Mastriano in an academic journal, does not constitute "racketeering activity." ECF 105 at 28-29. This argument fails for two reasons. First, Kuhn's presentation and publication did involve use of interstate wires. The abstract was published in an online journal accessible via the internet.

Internet publication involves transmission via interstate wires. Kuhn's publication was part of a fraudulent scheme and therefore constitutes wire fraud.

Second, all of Kuhn's specific acts do not have to themselves constitute predicate acts, as he would still be liable under RICO's conspiracy provision. Conspiracy liability does not require that the defendant personally commit predicate acts; it requires only that he knowingly agreed to participate in a conspiracy that would commit such acts.

Rule 9(b) particularity, which applies to claims of mail and wire fraud, is met in Plaintiff's Amended Complaint because it set forth the "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir. 2006). The Amended Complaint details that Kuhn held a public presentation symposium claiming falsely there were "credible allegations of academic fraud…" and that he furthermore published a false Abstract writing that Mastriano committed academic fraud, which was published worldwide targeting the United States, during the election season, and resulted in destructive consequence for Col. Mastriano. Additionally, Kuhn himself admits these things in his Declaration filed in the record. The Amended Complaint provides sufficient detail to put Kuhn on notice of the claims against him and to allow him to prepare a defense. That is all Rule 9(b) requires at the pleading stage. Kuhn's attempt to

characterize his conduct as mere "academic debate," "speaking to the press," or "opening investigations" does not change the legal character of that conduct. Kuhn's false statements and subsequent dissemination of them constitutes mail and wire fraud regardless of the academic or political context in which it occurred.

### 2.  The Amended Complaint Adequately Alleges a RICO Enterprise

A RICO enterprise requires a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit pursuit of the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). The enterprise need not be formal or hierarchical. *Id.* It can be proven through evidence that participants "function[ed] as a continuing unit" to achieve a common purpose. *Id. at 948.* The Amended Complaint demonstrates all three elements of an enterprise.

First, it identifies a common purpose. The objective of the conspiracy was to destroy Col. Mastriano's Ph. D. work and academic reputation in order to defraud him of his Ph. D. property and related interests as well as interfere with his elections in gubernatorial and senatorial races in Pennsylvania. This is a specific, concrete purpose that guided the alleged conspirators' actions over multiple years. Enterprise participants need not share identical motivations or even be aware of all other participants. They need only pursue a common purpose, even if their individual reasons for doing so differ. *Boyle* at 946.

Second, the Amended Complaint alleges relationships among the participants. Gregory filed complaints with UNB, UNB opened investigations in response, and Kuhn endorsed and validated these investigations. This demonstrates an ongoing organization with various associates functioning as a continuing unit.

Third, the Amended Complaint alleges longevity. The enterprise operated from at least 2019, when Gregory first filed complaints with UNB, through 2023, when Kuhn published his abstract and presented at the symposium. This spans multiple years and election cycles, easily satisfying the longevity requirement.

The Amended Complaint alleges sufficient facts to establish a RICO enterprise. Whether those facts will ultimately be proven is a question for trial, not for a motion to dismiss.

### E. Plaintiff States a Cognizable Claim Under § 1 of the Sherman Act

Kuhn alleges that Plaintiff's Sherman Act claim must fail because academic speech cannot constitute commercial restraint of trade. However, this position misstates both the scope of § 1 of the Sherman Act, and the nature of Plaintiff's allegations. The Amended Complaint does not challenge academic discourse, it challenges a coordinated, exclusionary campaign to restrain Plaintiff's participation in the market for historical research, publication, and public commentary. Such conduct is precisely what the antitrust laws prohibit.

### 1. Using Fraud to Eliminate Competition is Anti-Competitive Conduct

The Sherman Act prohibits "[e]very contract, combination... or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. This prohibition extends to any concerted action that unreasonably restrains competition. It is not limited to traditional antitrust violations like price-fixing or market allocation.

Kuhn argues that his fraudulent conduct was not "anti-competitive" because he was merely expressing his views about Col. Mastriano's academic work. This argument rests on the false premise that conduct is only anti-competitive if it involves traditional antitrust violations. But the Sherman Act reaches any unreasonable restraint on trade, including fraud designed to eliminate a competitor. The Amended Complaint alleges that defendants, including Kuhn, conspired to eliminate Col. Mastriano as a competitor in the WWI history market by destroying his reputation through fraud. This is classic anti-competitive conduct. Defendants did not compete on the merits by producing superior scholarship. They competed through fraud, by making false allegations designed to drive Col. Mastriano out of the market.

The fact that this occurred in an academic market rather than a commercial market does not change the analysis. Academic historians compete for book sales, speaking engagements, teaching positions, and research grants. This competition

occurs in identifiable markets. When competitors use fraud to eliminate rivals from these markets, they violate the Sherman Act.

Traditional anti-competitive effects, like reduced output, increased prices, or decreased consumer welfare are not required elements of a Sherman Act claim. The Sherman Act protects the competitive process, not particular economic outcomes. *Tal* at 1261. Fraud that eliminates competitors harms the competitive process even if it does not immediately affect prices or output. Moreover, the Amended Complaint does allege traditional anti-competitive effects. It alleges that defendants' fraud scheme reduced competition in the WWI history market by eliminating Col. Mastriano as a viable competitor, and that this harmed consumers by depriving them of access to Col. Mastriano's books, lectures, and scholarship. These allegations establish harm to the competitive process.

Kuhn argues that his conduct was "pro-competitive" because it involved introducing information into the market. This argument inverts the concept of competition. Introducing false information to destroy a competitor is not pro-competitive. In fact, it is the antithesis of competition on the merits. The Sherman Act was designed to prevent precisely this type of conduct. Therefore, the Court should reject Kuhn's arguments that the Amended Complaint fails to allege anti-competitive conduct.

## 2. Plaintiff Alleges Concerted Action Among Multiple Market Participants

Section 1 of the Sherman Act forbids "[e]very contract, combination…, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To plead a violation, a plaintiff must allege a  concerted action among separate entities, an unreasonable restraint of trade, and resulting antitrust injury. *Monsanto Co. v. Spray-Rite Serv. Corp.,* 465 U.S. 752 (1984).

Col. Mastriano satisfies all three elements. The Amended Complaint identifies a conspiracy among Gregory, Kuhn, Brown, and others who agreed to blacklist Plaintiff's work and obstruct his access to scholarly and commercial outlets. Their coordinated refusal to publish, endorse, or platform Plaintiff was not independent academic judgment but a concerted refusal to deal motivated by shared political and economic interests. Their coordinated efforts to dimmish the work of Col. Mastriano unreasonably restrained his participation in the market, and the value of the works he produced.

The Amended Complaint alleges both injury to Col. Mastriano individually and injury to competition generally. It alleges that defendants' fraud scheme eliminated a viable competitor from the WWI history market, thereby reducing competition and depriving consumers of access to his scholarship. Defendants did not out-compete Col. Mastriano on the merits, but rather eliminated him through fraud. That fraud harmed not only Col. Mastriano individually but also the

competitive process and ultimately consumers, who were deprived of access to his scholarship based on false information. This is antitrust injury, and is precisely the kind of harm the Sherman Act prohibits.

### F. Plaintiff States a Plausible Claim for Defamation Under Rule 12(b)(6) and the OCPA

The OCPA creates a special motion to dismiss for cases "based on, relat[ing] to, or in response to" a party's exercise of free speech rights. Okla. Stat. tit. 12, § 1432(A). The statute employs a burden-shifting framework. First, the defendant must show by a preponderance of evidence that the action relates to his exercise of free speech. If he does so, the burden shifts to the plaintiff to establish by "clear and specific evidence a prima facie case for each essential element of the claim." *Id.* § 1434(C). If the plaintiff satisfies this burden, the burden shifts back to the defendant to establish by preponderance of evidence each essential element of a valid defense. *Id.* § 1434(D). Kuhn argues that his conduct constitutes an exercise of free speech rights and that Col. Mastriano has failed to meet his burden of establishing a prima facie defamation case. These arguments fail at multiple levels.

While Kuhn's statements may facially appear to be exercises of free speech, the OCPA does not protect fraudulent or knowingly false statements made as part of a conspiracy to harm another person. The right to speak freely does not include the right to defame others with knowing falsehoods. Kuhn's conduct falls outside

the OCPA's protections. The statute protects legitimate exercise of free speech rights, not immunize defamatory conspiracies merely because the defamation occurs through speech.

Even if Kuhn's conduct facially constitutes protected speech, Col. Mastriano has established a prima facie defamation case with clear and specific evidence. The Declaration of Mastriano provides detailed information about the statements Kuhn made, when and where those statements were made, why the statements were false, and how those statements caused harm to Col. Mastriano. These facts satisfy the specific evidence required by the OCPA.

Kuhn argues that his statements are protected under the First Amendment because Col. Mastriano is a public figure. While it is true that public figures face a higher burden in defamation cases, requiring actual malice, that burden is not insurmountable. Public figures can recover for defamation if they prove actual malice—knowledge of falsity or reckless disregard for truth. *New York Times v. Sullivan,* 376 U.S. 254, 280 (1964). The Amended Complaint alleges facts sufficient to establish actual malice, alleging that Kuhn knew his statements were false or acted with reckless disregard for their truth. At the OCPA motion stage, where the court must consider evidence, this allegation combined with the surrounding circumstances provides sufficient evidence of actual malice to survive the motion.

Moreover, Kuhn's invocation of public figure protections is somewhat ironic. He argues that Col. Mastriano's status as a political candidate gives Kuhn broad license to make false statements about him. But the reason the actual malice standard exists is to protect robust debate about public issues, not to protect coordinated fraud schemes targeting political candidates. If Kuhn's statements were honest expressions of academic opinion, he would be protected. But if, as alleged, his statements were knowing falsehoods made as part of a conspiracy, no amount of First Amendment protection can save them.

Kuhn argues that his statements about Col. Mastriano are not actionable as defamation because they are protected opinion or because they are not "demonstrably false." These arguments fail because they mischaracterize both the statements at issue and the legal standard. Kuhn's characterization of his statements is incomplete. He focuses on language in his abstract discussing UNB's response to allegations, but ignores the broader context and implications of his statements. Kuhn's statements go far beyond expressing an opinion about how UNB handled a difficult situation. They affirmatively assert that credible allegations of fraud exist and that a "scandal" occurred. These are assertions of fact, not expressions of opinion.

Further, Kuhn's statements are demonstrably false. The Amended Complaint alleges and the Declaration confirms that no academic fraud occurred. Col.

26

Mastriano properly conducted his research, properly cited his sources, and properly earned his PhD. The investigations that UNB opened were sham investigations designed to create the appearance of impropriety, not legitimate inquiries into actual misconduct. Kuhn endorsed UNB's allegations as "credible," called Gregory a "respected historian," and titled his presentation to suggest a scandal had occurred. These characterizations go beyond mere description and constitute assertions of fact that are demonstrably false.

Even if some ambiguity existed about whether Kuhn's statements were fact or opinion, that ambiguity should be resolved against Kuhn at the pleading stage. Whether statements are fact or opinion is often a question for the jury, not the court. The question is whether a reasonable listener could understand the statements as asserting facts. Here, a reasonable listener, could certainly understand Kuhn's endorsement of "credible allegations of fraud" as asserting facts. That is sufficient to survive a motion to dismiss.

### G. Request for Leave to Amend Complaint and/or for Limited Discovery

The Federal Rules of Civil Procedure make clear that leave to amend should be "freely given when justice so requires," and courts consistently grant such leave absent a showing of "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously

allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

As set forth more fully below, and pursuant to Rule 15(a)(2), Col. Mastriano respectfully submits that justice strongly favors allowing amendment in this case, and if the Court finds any deficiencies, renews his motion to amend which is incorporated herewith. Following receipt of all Defendants' motions to dismiss, amendment, if required, will enable the Plaintiff to cure any alleged deficiencies and further clarify the factual and legal bases for his claims. Granting such leave would serve the interests of judicial efficiency and fairness, and would not result in undue delay, prejudice, or any other factor warranting denial.

Furthermore, because defenses go many times, as here, to the heart of the merits and claims rather than mere jurisdictional questions of immunity, limited jurisdictional discovery is recognized as a mechanism for to resolve jurisdictional questions which may overlap the merits of the allegations. See generally, *Leutwyler* 184 F. Supp 2d at 296-97.

Furthermore, the Rule also allows the Court to permit leave to amend "freely when justice so requires." *Id.* at 2.

In the event this Court dismisses any part of Plaintiff's Amended Complaint, he requests leave to amend and to conduct limited discovery. Given the ongoing

harm to Plaintiff's reputation and business, justice demands full adjudication on the

merits rather than dismissal on procedural grounds.

**III.      CONCLUSION**

WHEREFORE, based on the reasoning above, Col. Mastriano respectfully

requests this Court to Deny Kuhn's Motion to Dismiss and Brief in Support and

to grant Col. Mastriano leave to amend the Amended Complaint and/or for

limited discovery to the extent of any insufficiency.


Respectfully submitted,

The Cox Law Center, LLC
_____/s/_____
Daniel L. Cox, OKWD Bar
2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail:
dcox@coxlawcenter.com

## CERTIFICATE OF SERVICE

This is to certify on this 24th day of October, 2025, that a copy of the foregoing

was served on counsel of record via CM/ECF.

                                _____/s/_____
Daniel L. Cox
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com