## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

Douglas Mastriano : CIVIL NO. 5:24-cv-00567-J
:
Plaintiff, :
           v. :
:
:
James Gregory, III, *et al.* :
:
Defendants. :
:

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
## GREGORY'S MOTION TO DISMISS AND BRIEF IN SUPPORT

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorney, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendant GREGORY's motion to dismiss and brief in support, filing this Response in Opposition and Brief in Support, requesting denial of Defendant's motion.

**The Cox Law Center, LLC**
By:
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

*TABLE OF AUTHORITIES*_____*4*

*I.   INTRODUCTION* _____*6*

*II.   ARGUMENT*_____*6*

**A.   Mastriano Pleads a Plausible Claim for Defamation Based on Fact and Precedent Under FRCP Rule 12(b) and the OPCA** _____**6**

  **1.   The Challenged Statements are factual assertions, not mere protected opinion.** _____7

  **2.   The Amended Complaint Plausibly Alleges Actual Malice.** _____8

  **3.   Mastriano Alleges Adequate Damages.**_____8

  **4.   Mastriano Meets the OCPA's Evidentiary Burden, and the Claim is Timely.** _____9

  **5.   Gregory's First Amendment Defense Fails as a Matter of Law.** ____10

**B.   Mastriano Properly Pleads Valid RICO Claims that Survive Dismissal 10**

  **1.   The Amended Complaint Alleges Mail and Wire Fraud with Sufficient Particularity Under Rule 9(b).** _____11

  **2.   The Amended Complaint Adequately Alleges a RICO Enterprise.**__14

  **3.   Reputational Harm Constitutes Cognizable RICO Injury.** _____15

  **4.   Gregory Knowingly Joined the RICO Conspiracy and Mischaracterized Lawful Political Activity.** _____17

**C.   Amended Complaint Sufficiently Pleads a Cognizable Claim under § 1 of the Sherman Act** _____**18**

  **1.   Using Fraud to Eliminate Competition is Classic Anti-Competitive Conduct.** _____19

**2.    The Amended Complaint Adequately Defines the Relevant Market.** 21

**3.    Mastriano Properly Alleges Injury to Competition and to His Business.** _____ 22

**D.    Mastriano's Alternative Request for Leave to Amend is Warranted Under Rule 15(a)(2)** _____ **22**

**1.    Mastriano's Request Complies with Procedural Requirements.** _____ 23

***III.    CONCLUSION*** _____ ***24***

# TABLE OF AUTHORITIES

## *Cases*

*Krimbill v. Talarico,* OK Civ. App. 37 (2018)_____3

*Milkovich v. Lorain Journal Co.***,** 497 U.S. 1  (1990)_____4

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)_____4

*Robbins v. Wilkie*, 300 F.3d 1208 (10th Cir. 2002)_____5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)_____7

*Tal v. Hogan,* 453 F.3d 1244 (10th Cir. 2006)_____7

*United States v. Turkette,* 452 U.S. 576 (1981)_____9

*Boyle v. United States*, 556 U.S. 938  (2009)_____9

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)_____12

*Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398

(2004)_____13

*Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111 (10th Cir. 2008)___15

*Frank v. U.S. West, Inc.* 3 F.3d 1357 (10th Cir. 1993)_____16

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009)_____19

## *Statutes*

12 Okla. Stat. §
95(A)(4)_____5

18 U.S.C. §§ 1341,
1343_____8

15 U.S.C. §
1_____13

***Rules***

Fed. R. Civ. P.
15(c)(1)(B)_____5

Fed. R. Civ. P.
8(a)(2)_____9

## I.  INTRODUCTION

Plaintiff Douglas Mastriano respectfully submits this Response in Opposition to Defendant James Gregory's Renewed Motion to Dismiss. Defendant's renewed motion merely reiterates previously rejected arguments and fails to identify any legal or factual basis for dismissal. Plaintiff incorporates herewith his Response in Opposition and exhibits previously filed to Defendant's first motions to dismiss, as if fully set forth herein. As set forth below, Plaintiff's claims under RICO, the Sherman Act, and Oklahoma defamation law remain sufficiently pleaded under the applicable standards of Rule 12(b)(6) and the Oklahoma Citizens Protection Act ("OCPA"), and, in any event, Plaintiff is entitled to amend to cure any perceived deficiency. Justice necessitates that this Court should deny Gregory's motion to dismiss, and/or grant Col. Mastriano leave to amend his Amended Complaint to add additional factual detail outlined in his Declaration and outlined in his Response in Opposition.

## II.     ARGUMENT

### A. Mastriano Pleads a Plausible Claim for Defamation Based on Fact and Precedent Under FRCP Rule 12(b) and the OPCA

Defendant Gregory's renewed motion again fails to show that Mastriano's defamation claim should be dismissed under Rule 12(b)(6) or the Oklahoma Citizens Participation Act (OCPA). Okla. Stat. tit. 12 § 1430. The Amended Complaint properly pleads (1) a false and defamatory statement concerning

Mastriano; (2) Publication of the statement to a third party; (3) Fault that amounts to at least negligence; (4) Resulting damages. Under Oklahoma law, only an allegation of general facts supporting the elements of a cause of action is sufficient to establish a *prima facie* case. *Krimbill v. Talarico,* OK Civ. App. 37, 19 (2018).

## 1. The Challenged Statements are factual assertions, not mere protected opinion.

Gregory's renewed motion repeats his prior claim that his remarks about Plaintiff were protected opinion or "academic debate." That mischaracterizes the pleadings. Plaintiff alleges that Gregory publicly accused him of "fraud" and "academic dishonesty" during a radio broadcast aired in Harrisburg, Pennsylvania, in July and August 2023 and republished those accusations via online posts and interviews. *Compl.* ¶ 45. Unlike rhetorical hyperbole, an accusation that a scholar committed "fraud" is a verifiable statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). Courts have consistently distinguished protected opinion from factual allegations of misconduct. *Id.* at 10. Here, Gregory's accusation that Plaintiff's doctoral research was fraudulent can be proven true or false through the actual text of the dissertation and university findings.

Nor does the OCPA convert every academic dispute into protected speech. Oklahoma's anti-SLAPP statute is designed to protect free participation in government, not calculated campaigns of falsehood. *Krimball* at 703. Gregory's

repeated publication of provably false claims to national audiences falls outside the OCPA's safe harbor.

### 2. The Amended Complaint Plausibly Alleges Actual Malice.

As a public figure, Plaintiff must allege that Gregory made the defamatory statements with actual malice, that is, "with knowledge that they were false or with reckless disregard of whether they were false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964). The Amended Complaint easily clears this bar. Plaintiff alleges that Gregory (a) filed prior unfounded complaints with the University of New Brunswick in 2019 and 2022, both rejected as baseless; (b) knew those outcomes when he later accused Plaintiff of "fraud" on air; and (c) persisted in repeating those accusations despite documented exoneration by the university. *Compl.* ¶ 29–33, 41–43. Such allegations support an inference of deliberate falsity.

Further, Gregory's timing in reviving false accusations during Plaintiff's U.S. Senate campaign plausibly shows motive and reckless disregard for the truth. A pattern of repetition of known falsehoods satisfies the actual-malice standard.

### 3. Mastriano Alleges Adequate Damages.

Gregory published the defamatory statements both on a publicly broadcast radio program and through internet postings accessible worldwide. Publication is thus beyond dispute. Mastriano pleads concrete reputational and pecuniary harm, including loss of book sales, revocation of publishing contracts, and exclusion

from speaking and teaching opportunities arising from the scandal caused by

Gregory's statements. At the pleading stage, such allegations suffice. *Robbins v.*

*Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).

### 4. Mastriano Meets the OCPA's Evidentiary Burden, and the Claim is Timely.

Under § 1434(C) of the OCPA, once a defendant makes a prima facie

showing that the claim involves protected speech, the burden shifts to the plaintiff

to establish by clear and specific evidence a prima facie case for each essential

element of the claim. Mastriano meets that burden through his verified declaration

and the detailed factual allegations of the Amended Complaint. Plaintiff's

declaration specifies the date, medium, and content of the broadcast in which

Gregory called him a "fraud," identifies co-speaker Defendant Brown, and attaches

supporting transcripts. These facts provide far more than conclusory assertions;

they constitute the "clear and specific" evidence the OCPA demands.  Exhibit 1,

attached hereto.

Defendant's renewed motion again invokes the one-year statute of

limitations for defamation. 12 Okla. Stat. § 95(A)(4). However, Mastriano's radio-

broadcast allegations fall well within that period, and, in any event, relate to the

same course of conduct alleged in the original and Amended Complaint. Fed. R.

Civ. P. 15(c)(1)(B). Plaintiff's claim arises from the same fraudulent campaign

described in the Amended Complaint, in which Gregory disseminated false

accusations to academic institutions and the press. Relation back is permitted where later-added defamatory statements are part of the same continuing publication and common scheme.

### 5. Gregory's First Amendment Defense Fails as a Matter of Law.

Finally, Gregory invokes First Amendment protections, arguing that criticism of a public official is *per se* protected activity. Yet the Constitution does not shield defamatory falsehoods made with actual malice. *Sullivan* at 279. Here, Gregory's statements were not expressions of political disagreement, but knowingly false factual allegations intended to destroy Mastriano's professional and political career. Such calculated falsehoods receive no constitutional protection.

Accordingly, the Amended Complaint more than plausibly alleges a defamation claim that survives both Rule 12(b)(6) and the OCPA. Gregory's renewed motion should therefore be denied as to Count Nine of the Amended Complaint.

### B. Mastriano Properly Pleads Valid RICO Claims that Survive Dismissal

Gregory dedicates significant space in his reply brief to attacking Col. Mastriano's RICO claims, but his arguments collapse under scrutiny. He acknowledges that the Amended Complaint alleges mail and wire fraud predicate acts, but claims sufficient detail is lacking. He concedes interpersonal relationships among defendants but argues no "enterprise" exists. He recognizes allegations of

injury but disputes causation. Each of these arguments fails because Gregory applies an inappropriately stringent standard at the motion to dismiss stage and ignores binding precedent regarding RICO pleading requirements.

### 1.  The Amended Complaint Alleges Mail and Wire Fraud with Sufficient Particularity Under Rule 9(b).

Gregory argues that the Amended Complaint fails to plead the elements of mail and wire fraud with the particularity required by Rule 9(b). This argument fails for three independent reasons.

First, the Amended Complaint specifically identifies multiple instances of fraudulent communications transmitted via mail and wire. The Amended Complaint alleges that Gregory filed false complaints with UNB in 2019 and 2022, that UNB Defendants and Individual Defendants made fraudulent statements to the press regarding Col. Mastriano's Ph.D. work from 2022 to 2023,  and that these communications were disseminated via email and other electronic means to universities, students, and the American press. These allegations identify the "who, what, when, where, and how" of the alleged fraud.

Gregory's argument that these allegations amount to "conclusory statements" devoid of factual content misstates the standard. The Supreme Court has held that a complaint need not include "detailed factual allegations" but must contain "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, the Amended Complaint goes well beyond labels and conclusions by identifying specific communications, their content, their transmission methods, and their fraudulent nature.

Second, the Tenth Circuit has repeatedly held that Rule 9(b)'s particularity requirement must be applied in context, and motions to dismiss are "not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan,* 453 F.3d 1244, 1266 (10th Cir. 2006). The alleged fraud involves communications among Gregory and UNB Defendants that are uniquely within their personal knowledge and control. Col. Mastriano has identified the general nature and timeframe of these communications based on the information available to him. Requiring greater specificity before discovery would allow Gregory to successfully conceal the details of his alleged fraud.

Gregory cannot have it both ways: demanding dismissal for lack of specificity, while possessing the very documents and communications that would provide that specificity. The proper remedy, if any deficiency exists, is to permit targeted discovery or amendment, not dismissal.

Third, even if the Amended Complaint lacks enough specific details regarding the predicate acts, which it does not, this deficiency is easily cured by amendment.

The elements of mail and wire fraud are well-established: (1) a scheme to defraud, (2) use of the mails or wires in furtherance of the scheme, and (3) specific intent to defraud. 18 U.S.C. §§ 1341, 1343. The Amended Complaint alleges all three elements. It identifies a scheme, the coordinated effort to destroy Col. Mastriano's academic reputation through false allegations of academic fraud. It identifies the use of mail and wires, emails, letters, and press statements disseminated electronically. Finally, it alleges intent, that Gregory and other defendants acted with knowledge of the falsity of their statements and with the purpose of causing harm to Col. Mastriano.

Gregory does not dispute any of these core allegations. Instead, he quibbles about the level of detail provided. But Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Moreover, Gregory's own Reply Brief to his first motion to dismiss confirms the adequacy of the Amended Complaint's allegations. He acknowledges that Col. Mastriano "clarifies that mail and wire fraud are the intended bases of his RICO claims," and directs the Court's attention to specific paragraphs of the Complaint that allege these predicate acts. If Gregory understands the nature of the claims against him, as his detailed Reply Brief demonstrates he does, then the Amended Complaint has satisfied its notice-pleading function. *Twombly* at 555.

### 2.  The Amended Complaint Adequately Alleges a RICO Enterprise.

Gregory's argument that the Amended Complaint fails to allege a RICO

"enterprise" rests on a fundamental misunderstanding of what constitutes an

enterprise under 18 U.S.C. § 1961(4). Gregory claims that the Amended Complaint

identifies nothing more than "communication towards a common purpose" and

argues that the political process is, at its core, communication towards a common

purpose. This argument asks for too much. Under Gregory's reasoning, no political

activity could ever constitute a RICO enterprise—a proposition flatly contradicted

by Supreme Court precedent.

The Supreme Court has defined a RICO enterprise as "a group of persons

associated together for a common purpose of engaging in a course of conduct."

*United States v. Turkette,* 452 U.S. 576, 583 (1981). The enterprise need not be

formal or have a hierarchical structure. *Boyle v. United States*, 556 U.S. 938, 948

(2009). It need only be "a group of individuals associated in fact" with "a purpose,

relationships among those associated with the enterprise, and longevity sufficient

to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

The Amended Complaint identifies a common purpose: destroying Col.

Mastriano's academic reputation and interfering with his political campaigns. This

is not "lawful political activity" as Gregory suggests. It is a coordinated campaign

of defamation and fraud designed to eliminate a political opponent. The fact that

the enterprise's goal had a political dimension does not insulate it from RICO liability.

The Amended Complaint also alleges relationships among the participants. Gregory filed complaints with UNB in 2019 and 2022. UNB launched investigations in response to Gregory's complaints. Gregory and UNB Defendants made parallel statements to the press about Col. Mastriano's work. Gregory utilized UNB's improper release of Col. Mastriano's thesis to file additional complaints with the University of Kentucky. And Gregory and Defendant Brown appeared together on a radio program to make defamatory statements about Col. Mastriano. These allegations establish an ongoing organization with various associates functioning as a continuing unit. *Id.* at 948.

Finally, the Amended Complaint alleges longevity. The enterprise operated from at least 2019 through 2023, spanning multiple election cycles and involving repeated acts of fraud. This multi-year pattern of coordinated conduct easily satisfies the longevity requirement. *Turkette* at 583.

### 3. Reputational Harm Constitutes Cognizable RICO Injury.

Gregory argues that "injury to reputation" cannot confer RICO standing and that Col. Mastriano has failed to allege proximate causation. Both arguments fail. While Gregory correctly notes uncertainty in the Tenth Circuit regarding whether reputational harm alone can support RICO standing, he ignores that the Amended Complaint alleges far more than reputational harm. The Amended Complaint

alleges concrete economic injuries: interference with and loss of elections, loss of book sales, reduction in printing contracts, loss of speaking opportunities, loss of teaching opportunities, and loss of media opportunities. These are classic business and property injuries cognizable under RICO.

The reputational harm Col. Mastriano suffered is not an abstract or speculative injury divorced from economic loss. It is the direct mechanism by which the defendants caused his economic injuries. When Gregory and his co-conspirators destroyed Col. Mastriano's academic reputation through false allegations of fraud, they directly caused the University of Kentucky to reduce printing of his book, caused speaking invitations to be withdrawn, and directly caused other economic opportunities to evaporate. These injuries are precisely the type of concrete harm RICO was designed to remedy.

Gregory's proximate causation argument rests on the false premise that Col. Mastriano's election losses were the sole or primary injury alleged. Yet the complaint's RICO claims focus primarily on economic injuries to Col. Mastriano's academic and business interests, not electoral harm. The electoral interference is a relevant context and an additional injury, but it is not the sole basis for RICO standing.

Moreover, the Amended Complaint adequately alleges proximate causation as to the economic injuries. It alleges that Gregory filed false complaints, that UNB

opened investigations in response, that both Gregory and UNB made public statements about these investigations, and that, as a direct result, Col. Mastriano's book sales declined and the University of Kentucky reduced printing. This is a straightforward causal chain with no attenuated links.

Finally, Gregory's dismissive and false reference to Col. Mastriano being unpopular reveals the true nature of this case. Defendants allegedly used fraudulent means to amplify and exploit alleged unpopularity, which if it exists at all exists in the context of their own smear and for their own benefit. That is precisely the type of conduct RICO prohibits. The fact that Col. Mastriano had political opponents does not give Defendants, including Gregory, license to defame him through coordinated fraud. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

### 4. Gregory Knowingly Joined the RICO Conspiracy and Mischaracterized Lawful Political Activity.

Gregory characterizes his conduct as "lawful political activity" and "regular political activity/" This mischaracterization represents an inappropriate attempt to reframe factual disputes as legal conclusions.

The Amended Complaint does not challenge Gregory's right to criticize Col. Mastriano's historical work or to promote his own competing scholarship. It challenges specific acts of fraud: filing false complaints with academic institutions, making false statements to the press, and coordinating with co-conspirators to

manufacture a scandal timed to interfere with political campaigns. These acts may have occurred in a political context, but that does not transmute fraud into protected speech or insulate it from RICO liability.

Gregory's argument that accepting Col. Mastriano's allegations would "end political association as we know it" is meritless fearmongering. Political associations do not typically involve multi-year campaigns of defamation based on manufactured academic fraud allegations. They do not typically involve filing false complaints with universities to trigger sham investigations. And they do not typically involve coordinating the timing of those investigations to coincide with election campaigns. The conduct alleged here is far outside the bounds of legitimate political discourse.

The proper forum for resolving whether Gregory's conduct was lawful political activity or actionable fraud is not a Rule 12(b)(6) motion but discovery and, if necessary, trial. At the pleading stage, the Court must accept the Amended Complaint's factual allegations as true and draw all reasonable inferences in Col. Mastriano's favor. Under that standard, the RICO claims easily survive dismissal.

## C. The Amended Complaint Sufficiently Pleads a Cognizable Claim under § 1 of the Sherman Act

Gregory's Sherman Act arguments inadvertently demonstrate why the antitrust claim should proceed to discovery. Gregory's Reply Brief acknowledges that he engaged in conduct designed to devalue and reduce demand for Col. Mastriano's

historical work while promoting his own competing work, but argues this conduct was somehow "pro-competitive." This Orwellian inversion of the term "anti-competitive" only underscores the plausibility of Col. Mastriano's claim.

### 1. Using Fraud to Eliminate Competition is Classic Anti-Competitive Conduct.

The Sherman Act prohibits "every contract, combination... or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. The Supreme Court has made clear that this prohibition extends to any concerted action that unreasonably restrains competition, regardless of the specific method employed. *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004).

Gregory argues that his conduct was "pro-competitive" because competition itself is not anti-competitive, which is a dangerous argument. Under Gregory's reasoning, any conduct that harms a competitor is permissible because it advances the actor's competitive position. But that is not the law. The Sherman Act distinguishes between competition on the merits, which benefits consumers through better products and lower prices, and improper conduct designed to eliminate competitors through means other than legitimate competition.

Here, the Amended Complaint does not allege that Gregory competed with Col. Mastriano by producing superior scholarship, offering lower prices, or otherwise providing greater value to consumers. It alleges that Gregory used fraudulent means to destroy Col. Mastriano's reputation and thereby eliminate him

as a competitor in the WWI history market. Specifically, Gregory filed false complaints with academic institutions, made false statements to the press, and coordinated with others to manufacture a scandal that devalued Mastriano's work.

This conduct is anti-competitive in the most classic sense. It does not involve competing on the merits, but rather by using fraud to undermine a competitor. Consumers who might have purchased Col. Mastriano's books or attended his lectures were deprived of that opportunity because Gregory successfully destroyed Col. Mastriano's reputation through false allegations.

Gregory's own description of his conduct confirms its anti-competitive nature. He admits that his actions had the effect of "devaluing" Col. Mastriano's work and "promoting his own competing historical work and theory at the expense of Col. Mastriano's." Gregory does not claim he succeeded because his work was better; he claims he succeeded because he eliminated Col. Mastriano as a competitor.

Gregory argues that his actions are not cognizable harms under antitrust law.. But this ignores the inquiry at issue. The cognizable harm required under the Sherman Act can be demonstrated through evidence of harm to competitors where that harm results from anti-competitive conduct rather than legitimate competition. *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.,* 846 F.3d 1297, 1310 -

1311 (10th Cir. 2017). Here, the harm to Col. Mastriano resulted from fraud, which is precisely the type of conduct the Sherman Act exists to prohibit.

### 2.  The Amended Complaint Adequately Defines the Relevant Market.

Gregory argues that the Amended Complaint fails to adequately define the relevant market for Sherman Act purposes. However, this argument fails because the Amended Complaint specifically identifies both the product market (WWI history products) and the geographic market (worldwide, with concentration in the United States and Europe).

The Tenth Circuit has articulated for a cause of action for prohibited conduct under § 2 of the Sherman Act. *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1118 (10th Cir. 2008). Gregory does not deny this standard, but rather, he makes a bare assertion that the standard is somehow insufficient without explaining what additional information is required. The Amended Complaint identifies the relevant products, the relevant consumers, and the relevant geographic scope. This is precisely the type of market definition courts require at the pleading stage.

Further, Gregory's argument ignores that market definition disputes are typically resolved through expert testimony and economic analysis, not on a motion to dismiss. The Amended Complaint has alleged facts sufficient to

plausibly define a relevant market. Whether that market definition withstands scrutiny is a question of fact for summary judgment or trial, not dismissal.

### 3. Mastriano Properly Alleges Injury to Competition and to His Business.

Plaintiff pleads that Defendants' coordinated actions reduced output and consumer choice in the relevant market by suppressing his book, lectures, and derivative media opportunities. This harm extends beyond Mastriano. Consumers and institutions lost access to his historical scholarship and competing interpretation of World War I.

In the Tenth Circuit, such "reduction in output and variety" constitutes injury to competition. *Buccaneer Energy (USA) Inc* at 1310.

Additionally, Plaintiff alleges direct injury to his own business and property interests, including canceled contracts, lost royalties, and diminished speaking fees. All of these injuries are directly traceable to Defendants' collusive acts. These damages flow naturally from the anticompetitive scheme, and are compensable under Antitrust law.

### D. Mastriano's Alternative Request for Leave to Amend is Warranted Under Rule 15(a)(2)

Assuming *arguendo* that any portion of Plaintiff's Amended Complaint could be found deficient, dismissal with prejudice would still be improper. FRCP 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Denying such leave is generally unjustified unless there is a showing

of undue delay, undue prejudice, bad faith, or futility of amendment. *Frank v. U.S. West, Inc.* 3 F.3d 1357, 1365 (10th Cir. 1993). None of these factors applies at present, and thus amendment should be allowed.

### 1. Mastriano's Request Complies with Procedural Requirements.

Col. Mastriano requested leave to amend in his opposition brief, and he did so expressly and clearly. He explained the basis for the request, identified the deficiencies he sought to cure, and described the substance of the proposed amendments. That is all that is required under Fed. R. Civ. P. 15(a)(2).

Moreover, numerous district courts in the Tenth Circuit have permitted parties to seek leave to amend in opposition briefs, particularly when the motion to dismiss identifies deficiencies that can be cured by amendment. The alternative (requiring a separate motion for leave to amend) would be a wasteful formality that serves no purpose other than generating additional paperwork and resources of the judicial system.

The Tenth Circuit has repeatedly emphasized that courts should "freely give leave" to amend and should not deny leave based on technical violations of local rules where the party has substantially complied with the rule's purpose. *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).

Gregory also argues that Col. Mastriano's approach constitutes improper "shotgun pleading." This argument is both wrong and ironic. Shotgun pleading refers to complaints that fail to separate claims into counts, incorporate all

preceding paragraphs into each count, or otherwise makes it impossible to determine which allegations support which claims. Col. Mastriano's Amended Complaint does not follow this pattern. It contains separate counts with specific allegations supporting each claim.

Ironically, Gregory's motion to dismiss engages in the very conduct he ascribes to Col. Mastriano. Gregory's brief attacks the Amended Complaint for being simultaneously too specific and too vague, for alleging too much and too little, for making claims that are conclusory and claims that include too much detail. This scattered approach resembles a true "shotgun pleading."

## III.   CONCLUSION

WHEREFORE, based on the reasoning above, Col. Mastriano respectfully requests this Court to Deny Gregory's Motion to Dismiss and Brief in Support and to grant Col. Mastriano leave to amend the Amended Complaint and/or to conduct targeted discovery to the extent of any insufficiency.

<div style="margin-left: 40%;">

Respectfully submitted,

The Cox Law Center, LLC
_____/s/_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

</div>

## CERTIFICATE OF SERVICE

This is to certify on this  24th day of October, 2025, that a copy of the foregoing

was served on counsel of record via CM/ECF.


_____/s/_____
Daniel L. Cox
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com