UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DOUGLAS MASTRIANO ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JAMES GREGORY, III, *et al.*, ) <br> ) <br> Defendants. ) | Case No. CIV-24-567-J |

**DEFENDANT ROLAND KUHN'S REPLY BRIEF
SUPPORTING HIS RENEWED MOTION TO DISMISS**

Callan G. Stein (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110
callan.stein@troutman.com

-and-

Matthew J. Lund (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
500 Woodward Ave., Suite 2800
Detroit, MI 48226
248.359.7300
matthew.lund@troutman.com

Gerard M. D'Emilio, OBA No. 33496
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Avenue, Suite 2200
Oklahoma City, OK 73102
T: (405) 235-5500
F: (405) 235-2875
Email: gdemilio@gablelaw.com

-and-

R. Trent Shores, OBA No. 19705
Barrett L. Powers, OBA No. 32485
**GABLEGOTWALS**
110 N. Elgin Ave., Ste. 200
Tulsa, Oklahoma 74120-1495
Telephone (918) 595-4800
Facsimile (918) 595-4990
Email: tshores@gablelaw.com
          bpowers@gablelaw.com

*Attorneys for Defendant Roland Kuhn*

I.       **PERSONAL JURISDICTION**

The Court's analysis of personal jurisdiction over Dr. Kuhn depends upon the claim. Claims subject to a diversity analysis are analyzed differently than claims based on nationwide service of process. *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015).

A.       **Diversity Analysis**

1.       **Minimum Contacts**

Plaintiff argues that Dr. Kuhn directed his conduct "toward the United States and Oklahoma" because Dr. Kuhn (1) "authored, circulated, and promoted online statements," (2) "knowing the statements would reach American audiences and media," and (3) "coordinated those publications with [Defendant] Gregory." *Pl. Br. at 9–10*. While such allegations appear only by inference, if at all, in Plaintiff's Amended Complaint, they are insufficient to allow Plaintiff to meet his burden of establishing a prima facie case of personal jurisdiction.

Dr. Kuhn has submitted evidence showing that the actions attributed to him in the Amended Complaint were not directed toward Oklahoma, or for that matter, the United States.[1] *See Dkt. 105-1, Kuhn Declaration and attachments*. Where a motion under Rule

---

[1] Alleged actions directed toward the "United States" are not relevant to the diversity jurisdiction analysis. In setting forth his argument, Plaintiff misquotes the United States Supreme Court in arguing that jurisdiction is proper because Dr. Kuhn "availed himself of the privilege of conducting business in the United States." *Pl. Br. at 10*, purporting to quote *Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985). The language used by the Supreme Court in *Burger King* referenced business in a forum state, not the United States, and it did so in the context of addressing whether jurisdiction was proper in Florida, not in the United States. *Id*. at 476. Plaintiff does not allege or argue that jurisdiction is appropriate here pursuant to Fed. R. Civ. P. 4(k)(2), nor can he, as the rule does not apply in diversity cases. *See* Fed. R. Civ. P. 4(k)(2) (referencing "a claim that arises under federal law"). To meet his burden, Plaintiff must show that Dr. Kuhn directed his alleged actions at Oklahoma.

1

12(b)(2) is resolved upon written submissions, a plaintiff must make a prima facie showing of personal jurisdiction "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Accordingly, Plaintiff may not succeed merely by resting on his allegations.

The only evidence before the Court in relation to Dr. Kuhn shows that Dr. Kuhn submitted his Abstract to the University of Manitoba; that he played no active role in making it public; and that, when it became publicly available, it was available through a publication directed at a Canadian audience. *Kuhn Br. at 9–10*. Moreover, Plaintiff has submitted no evidence to support his bald assertion that Dr. Kuhn had knowledge that his Abstract "would reach American audiences and media" (*Pl. Br. at 9*) and no evidence showing any "coordinat[ion]" between Dr. Kuhn and Defendant Gregory. *Id*. Plaintiff has failed to show that Dr. Kuhn had the requisite minimum contacts with Oklahoma to allow for personal jurisdiction in this case.

## 2.    Fair Play and Substantial Justice

Dr. Kuhn addressed each of the relevant factors to show that an exercise of jurisdiction over him here would not comport with traditional notions of fair play and substantial justice. *Kuhn Br. at 12–13*. With the exception of one factor (the fifth factor, which relates to social policies and is neutral), all point to the conclusion that an exercise of jurisdiction would be unreasonable. *Id*. Plaintiff responds that "electronic discovery and virtual proceedings" would "minimize any hardship" on Dr. Kuhn, who resides in Canada, at a location over 1,500 miles from Oklahoma City. *Pl. Br. at 11*. It is difficult to conceive

how "electronic discovery" relates to burden, and Plaintiff offers no explanation. And while Plaintiff does not explain which proceedings he believes will be "virtual" (so as to "minimize any hardship"), a trial on the merits of Plaintiff's claims against 26 defendants most assuredly will not be a virtual proceeding. Where, as here, Dr. Kuhn is from another country, considerations of burden are not only a relevant part of the analysis, but the relevance is "heightened[,] and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *OMI Holdings, Inc.* 149 F.3d at 1096 (citing *Asahi Metal Indus. Co. v Superior Court of Cal.*, 480 U.S. 102, 114 (1987)). Plaintiff cannot meet this heightened scrutiny.

Nor does Plaintiff offer anything meaningful as to Oklahoma's interest in this case. *Pl. Br. at 11*. While Plaintiff points to the presence of one Defendant, James Gregory, he overlooks the fact that the 25 remaining defendants are either out-of-state or out-of-country, and he offers no bases on which one could reasonably conclude that Oklahoma has an interest in adjudicating claims against them. *Pl. Br. at 11*. Plaintiff's final argument, that he, as Plaintiff, has a strong interest in obtaining "convenient and effective relief in the United States," (*Pl. Br. at 11*) misses the mark completely. In a diversity analysis, Plaintiff must articulate the nature of his interest in relief in Oklahoma, not the United States. *See note 1, above*.

B.   **RICO Nationwide Service of Process**

The analysis of whether jurisdiction is proper under the civil RICO statute has two parts: (1) an assessment of whether the ends of justice require exercising jurisdiction over one defendant where personal jurisdiction is established over another; and (2) whether an

exercise of jurisdiction under those circumstances comports with due process. Both must be shown for this Court to assert jurisdiction over Dr. Kuhn. *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015).

### 1. Due Process

A federal question case where jurisdiction is invoked based on nationwide service of process requires an analysis of due process considerations under the Fifth Amendment due process analysis, which is different than the Fourteenth Amendment analysis applicable in diversity cases. *Klein*, 786 F.3d at 1318. The differing analyses, however, do not come into play in any meaningful way here, because Plaintiff makes no due process argument at all in his RICO nationwide service of process analysis. *Pl. Br. at 7–9, Section II.A.1*. Plaintiff's implicit concession of this point is fatal to his argument that the RICO statute confers jurisdiction over Counts One and Two, as due process is a critical and required consideration.

### 2. Ends of Justice

Plaintiff is also required to point to facts in his Complaint supporting an assertion that the "ends of justice" require an exercise of jurisdiction. *Hart v. Salois*, 605 F. App'x 694, 699 (10th Cir. 2015). General allegations do not suffice. *Id*. In his Response, Plaintiff argues that "judicial economy and fairness" require that his claims against all defendants be tried together. *Pl. Br. at 8–9*. Plaintiff offers nothing, however, to explain how jurisdiction in Oklahoma promotes judicial economy where twenty-five of twenty-six defendants reside elsewhere. Indeed, where the majority of parties, witnesses, and evidence exists out of state, considerations of efficiency work against the Plaintiff. *Dental Dynamics*

*v. Jolly Dental Grp. LLC*, 946 F.3d 1223, 1233 (10th Cir. 2020). Beyond that argument, Plaintiff only asserts that "the 'ends of justice' standard is flexible and cannot be too particularized"—a general argument that, absent anything else, is insufficient. *Hart*, 605 F. Appx. at 699.

### 3. Plaintiff's Failure to Serve Dr. Kuhn Precludes Jurisdiction Pursuant to 18 U.S.C. § 1965

Finally, and fundamental to the overall RICO jurisdiction analysis, Plaintiff seeks to assert jurisdiction through service of process. Plaintiff, however, cannot assert that Dr. Kuhn has been served to date. Without service of process on Dr. Kuhn, Plaintiff cannot even assert that jurisdiction under RICO's nationwide service of process clause is proper. *See Feb. 2, 2025, Order at 8 n.2*.

### C. Plaintiff Provides No Basis to Request Discovery

At the end of his brief, Plaintiff includes a paragraph suggesting that "limited jurisdictional discovery is recognized as a mechanism for to [sic] resolve jurisdictional questions which may overlap with the merits of the allegations." *Pl. Br. at 28*. While this single paragraph is difficult to comprehend, it appears that Plaintiff is suggesting that there is some overlap between "jurisdictional questions of immunity" and issues related to the merits of his allegations, and that he is asking for the Court to allow him discovery of some sort. *Id*. As an initial matter, Dr. Kuhn has made no immunity argument in asserting that this Court lacks personal jurisdiction over him. Moreover (and perhaps relatedly) Plaintiff identifies no factual issues related to Dr. Kuhn's arguments on which he would need or even want discovery. Accordingly, Plaintiff offers no basis for this Court to even consider

5

his half-hearted request.

## II. SERVICE OF PROCESS

This Court has already held that Dr. Kuhn must be properly served in accordance with Fed. R. Civ. P. 4(f). *See Feb. 2, 2025, Order at 11 n.3*. Plaintiff has not served Dr. Kuhn, to date (*Pl. Br. at 12*). After acknowledging that fact, Plaintiff suggests that his prior efforts at service should suffice. *Id. at 12–13*. Plaintiff's arguments fail. An email requesting waiver of service (*Pl. Br. at 12*) is not a proper means of service under Rule 4(f). Service of process is a constitutional requirement; knowledge of a plaintiff's complaint (*Pl. Br. at 12*) is no substitute for service of process. *See, e.g., Habyarimana v. Kagame*, 821 F. Supp. 2d 1244, 1255 (W.D. Okla. 2011). As for Plaintiff's reference to the "package" he sent by mail to the National Research Council (*id.*), both the addressee/recipient of the package and the contents the package contained render irrelevant Plaintiff's argument that his effort to serve Dr. Kuhn by mail is somehow compliant with Rule 4(f). The package was sent to the National Research Council ("NRC"). *Dkt. 105-1, Kuhn Decl., ¶ 17*. As Dr. Kuhn did not authorize the NRC or any of its personnel to accept service on his behalf (*id. ¶18*), receipt of the package by the organization is not service on Dr. Kuhn. Additionally, the Summons contained in the package was issued to the NRC, and not to Dr. Kuhn. *Dkt. 105-1, Kuhn Decl., ¶¶ 19–20*.

In any event, Plaintiff's prior attempt at service was addressed by Dr. Kuhn in his initial Motion to Dismiss (Dkt. 105 at 16–17), and this Court determined that service was invalid. *Dkt. 132, Feb. 4, 2025, Order at 11*. As Plaintiff has not served Dr. Kuhn after more than 17 months and two extensions from this Court, Plaintiff's Complaint should be

dismissed, with prejudice, pursuant to Rule 12(b)(5).

## III. RICO AND SHERMAN ACT CLAIMS

### A. RICO and Sherman Act Standing

In his Motion, Dr. Kuhn articulated why Plaintiff lacks standing to bring claims under RICO and the Sherman Act—namely, because those statutes contain enhanced standing requirements that he does not and cannot satisfy. *Kuhn Br. at 19–21*. Plaintiff concedes this point (as he must), *Pl. Br. at 13*, which is fatal to his claims because he does not (and cannot) offer any support for how he satisfies this enhanced standing.

With respect to RICO, in his Motion Dr. Kuhn identifies two primary standing deficiencies: (1) Plaintiff only alleges injuries that he concedes are *intangible*, and thus not cognizable under RICO, *see Pl. Br. at 19–20* (collecting cases that intangible injuries are not recoverable); and (2) Plaintiff's admittedly intangible injuries are too attenuated and "untethered" to any underlying racketeering activity by Dr. Kuhn, *see id. at 20*. In his Response, Plaintiff barely addresses the first and does not address the second at all.

*First*, Plaintiff argues that he satisfies RICO's "injury to business or property" standard by alleging "lost income, royalties, and contractual benefits," which he claims are "precisely the type of business injuries that confer RICO standing." *Pl. Br. at 13–14*. But Plaintiff offers *no citations* to support this statement: not to RICO case law approving these types of damages, and not even to paragraphs of his Complaint where he alleges them.

*Second*, Plaintiff offers no citations for the same reason that he altogether ignores the second deficiency Dr. Kuhn identifies: the intangible injuries Plaintiff identifies are far too attenuated and speculative. As Dr. Kuhn pointed out in his Motion, it is black letter law

7

that to confer RICO standing Plaintiff must plead "some direct relation between the injury asserted and the injurious conduct alleged," and that in doing so Plaintiff is not permitted to "go beyond the first step." *Hemi Group, LLC v. City of N.Y.,* 559 U.S. 1, 9 (2010). Yet that is precisely what Plaintiff invites. For example, he argues he has standing to recover damages from supposed lost "royalties." *Pl. Br. at 14*. Plaintiff, of course, does not provide any citation to his Amended Complaint where he claims to allege these lost "royalties." But the *only* references to "royalties" therein are to unspecified and heretofore unrealized "future" royalties that Plaintiff seems to hope he would earn from things like "speaking engagements" and "book sales." Am. Compl. at 4 (Introduction); *see also id.* ¶ 43. Plaintiff does not plead any details surrounding these "royalties" precisely because they are aspirational. Plaintiff does not plead he ever had them in the past or that he currently has them, and it is clear that he may *never* have them.

Allegations of hypothetical, aspirational injuries clearly violate the Supreme Court's instruction not to "go beyond the first step" by requiring this Court to fill in *multiple* steps for which there is *no* support. Nowhere is this multi-step attenuation made clearer than in Plaintiff's own Opposition where he tries (but fails) to argue that his injuries are "[d]irectly [t]raceable" to Dr. Kuhn. In so trying, Plaintiff describes the so-called "causal chain" and admits that it takes *three steps* to even get to Dr. Kuhn's alleged conduct, and an additional *fourth step* to the alleged cause of injuries. The chain is: (1) "Gregory made false allegations about [Plaintiff's] dissertation"; (2) "UNB opened sham [sic] investigation"; (3) "Kuhn subsequently endorsed Gregory's allegations"; (4) "Media outlets and voters

8

relied on Kuhn's endorsements." *Pl. Br. at 15*.[2] Stated simply, Plaintiff's own argument reveals, as clearly as possible, that he has no RICO standing as a matter of law, a sentiment that the U.S. Supreme Court echoed as recently as earlier this year. *See Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) ("whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement'" (quoting *Hemi*, 559 U.S. at 10)).

Turning to Sherman Act standing, Dr. Kuhn articulated in his Motion that Plaintiff does not allege any "antitrust injuries" in part because the Sherman Act embraces the same "business or property" standard as RICO *(Kuhn Br. at 20–21)*, but also because Plaintiff only alleges injuries to his *personal interests* that are, in any event, speculative, *(id. at 21)*. Plaintiff barely responds to these arguments in his Opposition, because he cannot.

*First*, Plaintiff again doubles down by repeating the same *personal interest* injuries that do not satisfy the Sherman Act. He identifies (again, without any citations) "lost book sales" (from a hypothetical book deal) and "reduced market access" (to a hypothetical market), and claims (again, without supporting authority) that these are "direct antitrust injur[ies]." *Pl. Br. at 14*. Plaintiff repeats these and adds other *personal interest* injuries later in his Opposition as well. *Id.* at 21 ("book sales, speaking engagements, teaching positions, and research grants"). Of course, these injuries are *not* "antitrust injuries," *Tal*, 453 F.3d at 1254 (rejecting "lost profits and business opportunities" as a "personal injury"

---

[2] It bears repeating that Plaintiff does not include *any citations* when describing this so-called "causal chain," not even to paragraphs of his Complaint where he claims to make these allegations (let alone to legal authority supporting his arguments).

9

not an "antitrust injury"), which is why he cites no legal authority in his Opposition. And even if they were, hypothetical and speculative injuries are insufficient. *Id.* at 1258.

*Second*, Plaintiff then pivots to arguing that his injuries are "antitrust injuries" because he is "a competitor rather than a consumer." *Pl. Br. at 21*. Here, Plaintiff *finally* provides a citation to legal authority he claims supports his position, namely, a Supreme Court case titled *Blue Shield of Va. v. McCready,* 457 U.S. 465 (1982). But this case does not stand for what he claims, and his citation to it merely underscores his fundamental misunderstanding and misapplication of the Sherman Act.

In *Blue Shield,* members of a group health plan filed an antitrust class action against the plan because it only reimbursed services provided by psychiatrists and not psychologists. Thus, the standing issue (on which Plaintiff purports to rely) was whether *consumers* (*i.e.,* the members) had standing to sue based on the defendants' (*i.e.,* psychiatrists) conduct toward their competitors (*i.e.,* psychologists). *Id.* at 478–79. Plaintiff's assertion that this case "recognized that competitors who suffer exclusionary injury from fraudulent or collusive practices may sue" is flatly incorrect. *Pl. Br. at 14*.

## IV.    FAILURE TO ALLEGE A RICO "PATTERN" OR "ENTERPRISE."

Plaintiff fares no better trying to argue that he pleaded other essential elements of his RICO claims.

*First*, in his Motion, Dr. Kuhn demonstrated Plaintiff's failure to allege the most basic RICO element—that Dr. Kuhn participated in any "racketeering activity," let alone a "pattern" of it. *Kuhn Br. at 22–24*. This is because none of the categories of conduct Plaintiff alleges against Dr. Kuhn falls within the definition of "racketeering activity." *Id.*

10

In his Opposition, Plaintiff admits this failure but argues, for the *first time,* that what he really alleges against Dr. Kuhn is mail and wire fraud. *Pl. Br. at 17*.

Dr. Kuhn anticipated and preemptively debunked this pivot in his Motion based on Plaintiff's (1) failure to include *any* reference to either the mail or wire fraud statutes in his Complaint, and (2) failure to allege *any* of the elements of such a violation against Dr. Kuhn, much less with heightened particularity as Rule 9(b) requires. *Kuhn Br. at 24*. With Dr. Kuhn having made this argument in his Motion, one would expect Plaintiff to respond by citing specific paragraphs in his Amended Complaint in which he mentions the mail/wire statutes and claims to plead violations with particularity. But Plaintiff does no such thing. His Response does not contain a *single citation to his Complaint.* And for good reason; no such allegations of mail/wire fraud exist. Critically, Dr. Kuhn also made this argument in his original Motion to Dismiss, (*see* Dkt. 105 at 22), meaning Plaintiff was on notice of this deficiency *before* he filed his Amended Complaint but still failed to cure it.[3] There is hardly a clearer admission by Plaintiff that he does not and cannot plead mail or wire fraud, and that he will not be able to do so, thereby rendering disingenuous (or at the very least moot) his request for leave to amend a second time. *Pl. Br. at 27–28*.

*Second*, in his Motion, Dr. Kuhn also demonstrated that Plaintiff failed to allege a RICO "enterprise" because: (1) even after amending his Complaint, Plaintiff still does not

---

[3] Plaintiff's argument in his Opposition that Dr. Kuhn's verbal presentation "did involve the use of interstate wires" is, of course, likewise deficient and not in compliance with Rule 9(b). But even if that were not the case, Plaintiff "cannot amend [his] complaint by adding factual allegations in [his] response to a motion to dismiss." *In re Ward*, 589 B.R. 424, 430 (Bankr. W.D. Okla. 2018); *see also Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995)).

identify the *members* of the supposed enterprise; and (2) Plaintiff does not allege what Dr. Kuhn did to conduct or participate in the affairs of the *enterprise*. *Kuhn Br. at 25–26.* Plaintiff responds to *neither* of these arguments in his Response, instead opting to argue (again, without citing *any* supporting legal authority) elements of the RICO "enterprise" that Dr. Kuhn did not attack—common purpose, relationships, and longevity. *Pl. Br. at 19–20.* Plaintiff's non-responsive Opposition serves as a further admission that this is yet another ground on which his RICO claims should be dismissed.

## V.   CONCLUSION

For the reasons stated above and in Dr. Kuhn's principal brief, the Court should dismiss Plaintiff's Amended Complaint with prejudice.

Dated: November 7, 2025                              Respectfully submitted,

*/s/ Gerard M. D'Emilio*
Gerard M. D'Emilio, OBA No. 33496
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
T: (405) 235-5500
F: (405) 235-2875
Email: gdemilio@gablelaw.com

R. Trent Shores, OBA No. 19705
Barrett L. Powers, OBA No. 32485
**GABLEGOTWALS**
110 N. Elgin Ave., Ste. 200
Tulsa, Oklahoma 74120-1495
Telephone (918) 595-4800
Facsimile (918) 595-4990
Email: tshores@gablelaw.com
bpowers@gablelaw.com

- and -

Callan G. Stein (*admitted pro hac vice*)
**TROUTMAN  PEPPER  LOCKE  LLP**
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110
callan.stein@troutman.com

Matthew J. Lund (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
500 Woodward Avenue, Suite 2800
Detroit, MI 48226
248.359.7300
matthew.lund@troutman.com

***Attorneys for Defendant Roland Kuhn***

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF system for filing and transmittal of a notice of electronic filing to all ECF registrants.

*/s/ Gerard M. D'Emilio*
Gerard M. D'Emilio