## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

       *PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council
of Canada, Paul Mazerolle, President and
Vice-Chancellor, University of New
Brunswick, Canada; David MaGee, Vice-
President, Research; Drew Rendall, Dean,
Graduate Studies; Jeff Brown; Cindy Brown;
Stephen Dutcher; Sean Kennedy; Erin
Morton; Mattew Sears; Lee Windsor; Stefanie
Hunt-Kennedy; Carolyn MacDonald; Sasha
Mullaly; Lisa Todd; Sarah-Jane Corke;
Bonnie Huskins; Elizabeth Mancke; Janet
Mullin; Angela Tozer; Margaret MacMillan;
Robert Bothwell; John Ferris;
    -   *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

       *DEFENDANTS*.

|  |
|---|

Case No.: 5:24-cv-00567-J

Assigned to the Hon. Bernard M. Jones

**UNIVERSITY OF NEW
BRUNSWICK'S REPLY BRIEF IN
SUPPORT OF ITS MOTION TO
DISMISS THE AMENDED
COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................ 1

II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB ..... 2

   A.    UNB Is An Instrumentality Of A "Foreign State" Entitled To Immunity ......... 2

     1.    UNB Is Incorporated In The Province Of New Brunswick ......................... 2

     2.    UNB Is "An Agency Or Instrumentality Of A Foreign State" ..................... 3

   B.    No Exceptions To Foreign Sovereign Immunity Apply ........................................ 8

     1.    The Commercial Activity Exception To Immunity Does Not Apply ........... 8

     2.    The Tortious Act Exception To Immunity Does Not Apply ....................... 11

   C.    UNB Did Not Waive Its Immunity .................................................... 12

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER UNB ............... 13

   A.    UNB Lacks Sufficient Minimum Contacts With The Forum ......................... 13

   B.    The Exercise Of Personal Jurisdiction Over UNB In This Forum Offends Traditional Notions Of Fair Play And Substantial Justice .............................. 14

IV.   PLAINTIFF FAILS TO STATE A CLAIM ......................................... 16

V.    PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS COMPLAINT OR CONDUCT JURISDICTIONAL DISCOVERY ................. 16

VI.   CONCLUSION ............................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*,
    480 U.S. 102 (1987) ................................................................................ 14, 15

*Benton v. Cameco Corp.*,
    375 F.3d 1070 (10th Cir. 2004) ...................................................... 14, 15, 16

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*,
    629 F.3d 1173 (10th Cir. 2010) .................................................................. 3

*Cutcliffe v. Univ. of Ulster*,
    No. 1:12-CV-00193-DBH, 2013 WL 682842, at * 11 (D. Me. Feb. 5,
    2013), *adopted by* No. 1:12-CV-193-DBH, 2013 WL 685668, at *1 (D.
    Me. Feb. 25, 2013) ..................................................................................... 7

*Filler v. Hanvit Bank*,
    378 F.3d 213 (2d Cir. 2004) ....................................................................... 3

*Garrett v. Selby Connor Maddux & Janer*,
    425 F.3d 836, 841 (10th Cir. 2005) ............................................................ 8

*Gross v. Burggraf Constr. Co.*,
    53 F.3d 1531 (10th Cir. 1995) .................................................................... 7

*Hyewoong Yoon v. Seyeon Lee*,
    433 F. Supp. 3d 18 (D. Mass. 2019) ........................................................ 10

*Irizarry-Mora v. Univ. of Puerto Rico*,
    647 F.3d 9 (1st Cir. 2011) .......................................................................... 4

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
    213 F.3d 841 (5th Cir. 2000): (1) ..................................................... 3, 6, 8

*Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*,
    184 F. Supp. 2d 277 (S.D.N.Y. 2001) ...................................................... 10

*Persinger v. Islamic Republic of Iran*,
    729 F.2d 835 (D.C. Cir. 1984) ........................................................... 11, 12

*Phillips v. Calhoun*,
    956 F.2d 949 (10th Cir. 1992) ..................................................................... 8

*Qandah v. Johor Corp.*,
    799 F. App'x 353 (6th Cir. 2020) ................................................................ 3

*Republic of Arg. v. Weltover, Inc.*,
    504 U.S. 607 (1992) ................................................................................ 8, 9

*In re Rivera Torres*,
    432 F.3d 20 (1st Cir. 2005) ...................................................................... 12

*RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*,
    338 F. Supp. 2d 1208 (D. Colo. 2004) ....................................................... 3

*Saudi Arabia v. Nelson*,
    50 U.S 349 (1993) ..................................................................................... 9

*Southway Construction Co. v. Central Bank of Nigeria*,
    198 F.3d 1210 (10th Cir. 1999) ................................................................ 10

*In re Terrorist Attacks on Sept. 11*,
    2001, 714 F.3d 109 (2d Cir. 2013) ........................................................... 11

*Jam v. Int'l Fin. Corp.*,
    586 U.S. 199, 139 S. Ct. 759 (2019) .......................................................... 9

*TIG Ins. Co. v. Republic of Argentina*,
    110 F.4th 221 (D.C. Cir. 2024) ................................................................ 12

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) ....................................................................... 1

*Watson v. Univ. of Utah Med. Ctr.*,
    75 F.3d 569 (10th Cir. 1996) ..................................................................... 4

*XMission, L.C. v. Fluent LLC*,
    955 F.3d 833 (10th Cir. 2020) ................................................................. 13

**Statutes**

28 U.S.C. § 1603(a) .......................................................................................... 2

28 U.S.C. § 1603(b) .......................................................................................... 2

28 U.S.C. § 1605(a)(5)(B) .............................................................................. 12

**New Brunswick Statutes**

23 Victoria – Chapter 63 (1859).........................................................................2, 4

Interpretation Act, RSNB 1973 ...............................................................................5

The University of New Brunswick Act, SNB 1984, c 40 ("UNB Act")............................2

**Other Authorities**

Members of the Executive Council,
    https://www.gnb.ca/en/gov/contacts/members-executive-council.html
    (last accessed Nov. 3, 2025) ...........................................................................5

Select Committee on Public Universities,
    https://www.legnb.ca/en/committees/15/select-committee-on-public-
    universities (last accessed Nov. 4, 2025) ........................................................6

Webcast of February 28, 2023 Appearance,
    https://www.legnb.ca/en/webcasts/854 (beginning at 3:06:26, last
    accessed Nov. 4, 2025) ..................................................................................6

In further support of its Motion to Dismiss (Doc. # 153) and in reply to the Plaintiff's Response Brief (Doc. # 159), the University of New Brunswick ("UNB") states as follows:

## I.    <u>INTRODUCTION</u>

Nothing in Plaintiff's Response Brief changes the fact that this dispute is, at base, a dispute over the credibility of Plaintiff's academic research that should be resolved by an educational committee. *See Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation"). Nothing in Plaintiff's Response Brief changes the fact that Plaintiff is suing the instrumentality of a foreign state that is immune from suit. Nothing in Plaintiff's Response Brief changes the fact that this Court lacks personal jurisdiction over UNB because this dispute concerns claims against a Canadian university and Canadian individuals relating to an academic relationship formed in Canada, statements allegedly made in Canada, and an investigation allegedly taking place in Canada. Nothing in Plaintiff's Response Brief changes the fact that Plaintiff fails to state a legally cognizable claim. All of Plaintiff's claims should be dismissed *with prejudice*.

To avoid repetitive argument and in compliance with LCvR7.1(h), this Reply Brief focuses on the arguments raised in Plaintiff's Response Brief (Doc. # 159). However, in support of its Motion to Dismiss, UNB also incorporates by reference, and adopts to the extent they apply, the arguments in support of dismissal advanced by the Individual University Defendants, Defendant Gregory, and Defendant Kuhn.

## II.     THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB

Plaintiff argues that: (1) UNB is not an instrumentality of a foreign state; (2) even if UNB is an instrumentality of a foreign state, UNB is not entitled to FSIA immunity because several exceptions to immunity apply; and (3) UNB waived its immunity. As explained below, Plaintiff is incorrect on each of these issues.

### A.     UNB Is An Instrumentality Of A "Foreign State" Entitled To Immunity

The Foreign Sovereign Immunities Act defines a "foreign state" to include both "a political subdivision of a foreign state" and "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" includes any entity that is "a separate legal person," "an organ of a foreign state," and not organized under the laws of a U.S. state or third country. 28 U.S.C. § 1603(b).

#### 1.     UNB Is Incorporated In The Province Of New Brunswick

Plaintiff first argues that UNB cannot qualify as "an agency or instrumentality of a foreign state" because it was organized under the laws of a "third country," which Plaintiff identifies as "Great Britain." (Doc. # 159 at ECF pp. 8-9). In fact, UNB was incorporated by an act of the Lieutenant Governor, Legislative Council, and Assembly of the *Province of New Brunswick*. 23 Victoria – Chapter 63 (1859) (Doc. # 12-1 at ECF pp. 1-2). To the extent that prior acts of incorporation were inconsistent with the establishment statute, those were repealed. (Doc. # 12-1 at ECF pp. 1-2). The current incorporation is continued by the UNB Act (Doc. # 12-2 at ECF p. 3), which was enacted by Elizabeth II, by and with the advice and consent of the Legislative Assembly of *New Brunswick*. (Doc. # 12-2 at ECF p. 1). At the time the UNB was passed, Elizabeth II was Queen of Canada and the

2

Head of State of New Brunswick. Accordingly, UNB was, and remains, incorporated in the Province of New Brunswick, a political subdivision of Canada.

## 2.    UNB Is "An Agency Or Instrumentality Of A Foreign State"

Plaintiff argues that UNB does not qualify as "an agency or instrumentality of a foreign state" under the multi-factored test applied in *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000): (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law. (Doc. # 159 at ECF pp. 10-12).[1]

First, Plaintiff argues that UNB is a private institution with no governmental purpose. (Doc. # 159 at ECF p. 9). Plaintiff ignores his own admission that UNB is a "public university." (Doc. # 133 at ECF p. 8). Moreover, the General Assembly of the

---

[1] Although neither Plaintiff nor UNB has located a decision by the U.S. Court of Appeals for the 10th Circuit adopting the test used in *Kelly*, the *Kelly* decision has been cited with approval by the 10th Circuit in *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010) and by a District Court in the 10th Circuit in *RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1215 (D. Colo. 2004). The test applied in *Kelly* has also been applied by other Courts of Appeal. *See, e.g.*, *Qandah v. Johor Corp.*, 799 F. App'x 353, 358 (6th Cir. 2020); *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004). In *Qandah*, the U.S. Court of Appeals for the Sixth Circuit explained that the *Kelly* factors "aid in the determination of the organ prong, [but] there is no clear test… [a]nd Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly. *Qandah*, 799 F. App'x at 358. Accordingly, UNB urges the Court to apply the *Kelly* factors and interpret the terms of FISA broadly. As noted in *Kelly*, an entity is <u>not</u> required to satisfy every factor to qualify as "an organ of a foreign state." *Kelly*, 213 F.3d at 847 (the factors provide a "helpful framework" for analyzing whether an entity is an organ of a foreign state, but "we will *not* apply them mechanically or require that all five support an organ-determination") (emphasis original).

Province of New Brunswick expressly explained that UNB's purpose was not only "not only the usual subjects of a Collegiate course, *but also those branches of practical science and art which are adapted to the agricultural, commercial, and mechanical pursuits of the great body of the inhabitants of New Brunswick*."  23 Victoria – Chapter 63 (1859) (Doc. # 12-1 at ECF p. 1) (emphasis added). "[T]he vast majority of state universities have been found to be 'arms' of the State" *Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 14 (1st Cir. 2011).

Second, Plaintiff seeks to minimize the relationship between the Province of New Brunswick and UNB. (Doc. # 159 at pp. 9-10). Plaintiff suggests that the relationship boils down to "some board members have governmental connections[.]" (Doc. # 159 at ECF p. 10). In fact, nearly two-thirds of UNB's board members were appointed by the Lieutenant Governor in Council, were elected by voters, or were appointed by the Board that includes individuals appointed by the Lieutenant Governor in Council and by elected officials.[2] (Doc. # 153 at ECF p. 20). The U.S. Court of Appeals for the 10th Circuit has held that a where the majority of a university's board members were appointed by a state governor, the university was an arm of the state. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir. 1996). The same is true here: most of UNB's board is ultimately answerable to the public.

---

[2] UNB acknowledges that the position of Visitor, which historically was held by the Lieutenant Governor, no longer exists. However, as discussed in Footnote 3 in UNB's Motion to Dismiss (Doc. # 153 at ECP p. 12), the Lieutenant Governor in Counsel appoints a significant number of Board Members who in turn select other Board Members. The continued existence of the position of Visitor is not determinative of the role the provincial government plays in the Board's composition.

4

Nowhere is the Province of New Brunswick's supervision clearer than in its relationship with UNB's President. Selection of UNB's President begins with a search committee, which is a joint committee of UNB's Board and the faculty senate. *See* Exhibit 1, Fourth Declaration of Paul Mazerolle at ¶ 2. The search committee makes a recommendation to the Lieutenant Governor in Council. *Id*. at ¶ 3. The "Lieutenant Governor in Council" means the Lieutenant Governor acting with the advice of the Executive Council of New Brunswick. Interpretation Act at § 38. (Doc. # 94-5 at ECF p. 21). The Executive Council's President is the Premier, the head of New Brunswick's elected government. See Members of the Executive Council, https://www.gnb.ca/en/gov/contacts/members-executive-council.html (last accessed Nov. 3, 2025). If the search committee's recommendation is approved by the Lieutenant Governor in Council, then the Lieutenant Governor of New Brunswick approves the appointment of UNB's President. *See* Exhibit 1, Fourth Declaration of Paul Mazerolle at ¶ 4; *see also* UNB Act, Doc. # 12-2 at ECF p. 10.

During his first week of orientation, UNB's President met with New Brunswick's Premier, and UNB's President continues to occasionally meet with New Brunswick's Premier. *See* Exhibit 1, Fourth Declaration of Paul Mazerolle at ¶ 5. UNB's President attends regular (often quarterly) meetings with New Brunswick's Minister of Post-Secondary Education and his or her Deputy Ministers. *Id*. at ¶ 6. UNB's President also attends meetings with New Brunswick's Minister of Health and his or her Deputy Ministers. *Id*. at ¶ 7. During these meetings, UNB's President and representatives of the Provincial government discuss issues of mutual interest, such as where UNB can serve

issues of strategic importance for the Province, and where the Province could fund UNB's activities. *Id*. at ¶ 8. In the past, such topics have included tuition, student accessibility, student loans, and student housing. *Id*. One recent example of mutual interest has been the New Brunswick's ongoing shortage of health professionals, and UNB's President has discussed with representatives of New Brunswick's Post-Secondary Education Ministry and Health Ministry how UNB can expand its programs for social work, physiotherapy, optometry, and pharmacy to meet Provincial need. *Id*. at ¶ 9.

In addition, UNB's President, along with other officers of UNB, is invited on a regular basis to appear before the Legislative Assembly of New Brunswick's Select Committee on Public Universities in order to provide insight to the Provincial legislature into university administration, programming, performance measurement, accountability and transparency. *Id*. at ¶ 10; *see* Select Committee on Public Universities, https://www.legnb.ca/en/committees/15/select-committee-on-public-universities (last accessed Nov. 4, 2025). These appearances take place at the New Brunswick Legislative Building in Fredericton, New Brunswick. *See* Exhibit 1, Fourth Declaration of Paul Mazerolle at ¶ 10. UNB respectfully invites the Court to view a recent appearance by UNB's President before the Select Committee on Public Universities that is available on the Legislative Assembly's website. *See* Webcast of February 28, 2023 Appearance, https://www.legnb.ca/en/webcasts/854 (beginning at 3:06:26, last accessed Nov. 4, 2025).

Third, Plaintiff argues without citation that UNB's employees are not "governmental employees" (Doc. # 159 at ECF p. 10), a term not used in *Kelly* and which Plaintiff does not define. In fact, UNB employees are public employees. (Doc. # 153 at

ECF p. 13). Plaintiff further argues that UNB's employees are not public employees because UNB has sources of funding other than the Province of New Brunswick. (Doc. # 159 at ECF p. 11). Plaintiff ignores case law cited by UNB in which the court held that the defendant, a foreign public university that obtained funding both from the government *and from tuition payments*, qualified as an organ of a foreign state and consequently qualified as an "agency or instrumentality of a foreign government" for the purpose of FSIA. *See Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842, at * 11 (D. Me. Feb. 5, 2013), *adopted by* No. 1:12-CV-193-DBH, 2013 WL 685668, at *1 (D. Me. Feb. 25, 2013).

Fourth, Plaintiff argues that UNB does <u>not</u> hold exclusive rights "in any meaningful sense" because "the tax exemptions and statutory privileges UNB cites in its motion are typical benefits afforded to educational institutions…" and "[m]any private universities enjoy similar tax-exempt status and statutory protections." (Doc. # 159 at ECF p. 11). Plaintiff cites <u>nothing</u> in support of this argument. Therefore, the argument can and should be ignored by the Court. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (courts will not consider factual allegations in briefs that are unsupported by citation). Plaintiff's argument is also factually incorrect: the statutory privileges extended to UNB and its President go beyond tax exemptions. (Doc. # 153 at ECF pp. 23-24).

Fifth, Plaintiff argues that New Brunswick's treatment of UNB is "equivocal." (Doc. # 159 at ECF p. 11). In support, Plaintiff cites <u>nothing</u>. In fact, New Brunswick law identifies UNB as a "public body" and a "publicly funded employer," and places

restrictions on UNB's use of funds for the purchase of goods and services. (Doc. # 153 at ECF p. 24). New Brunswick law unquestionably treats UNB as a public institution.

Finally, Plaintiff argues that UNB cannot qualify as an organ of a foreign sovereign in this case because, according to Plaintiff, UNB's actions were not authorized by the Province of New Brunswick and were in opposition to Canadian interests. (Doc. # 159 at ECF pp. 8 and 12). In support, Plaintiff cites <u>nothing</u>. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (finding that a court cannot and will not take on the responsibility of constructing arguments). Plaintiff also cites <u>nothing</u> to suggest that these facts, even if true, would be relevant to the application of FISA or the *Kelly* test. The Court does not need to consider arguments that have <u>no basis</u> in fact or law. *See Phillips v. Calhoun*, 956 F.2d 949, 953-54 (10th Cir. 1992) ("[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point").

## B.    No Exceptions To Foreign Sovereign Immunity Apply

Plaintiff argues that even if UNB otherwise qualifies for foreign sovereign immunity, several exceptions to immunity apply. Plaintiff is incorrect.

### 1.    The Commercial Activity Exception To Immunity Does Not Apply

Plaintiff argues that UNB engaged in commercial activity by contracting with the U.S. Department of Defense to provide educational services to Plaintiff. (Doc. # 159 at ECF p. 12). Plaintiff cites *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607 (1992) for the proposition that UNB's alleged contract with the U.S. Department of Defense to educate a soldier was "quintessential commercial activity…" (Doc. # 159 at ECF p. 12). In fact, the

*Republic of Argentina* case involved the issuance of bonds and had nothing to do with contracting to educate soldiers. A public education program wherein one sovereign engages another sovereign to educate soldiers, who are one sovereign's employees, is not the type of action by which a private party engages in trade and traffic or commerce.

Second, this suit is <u>not</u> about the enforcement, terms, or breach of the alleged contract with the U.S. Department of Defense. In *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), the U.S. Supreme Court held that a foreign university's recruitment of American students and acceptance of U.S. funds did <u>not</u> automatically create U.S. jurisdiction. In *Saudi Arabia*, the Court rejected jurisdiction over the Saudi government (and its hospital) even though the Saudi hospital had recruited the U.S citizen plaintiff through a U.S. magazine advertisement and entered into a contract signed in the United States. The Court held the claim was not based upon those contacts because the conduct giving rise to the claim was detention and torture abroad—not the recruitment of U.S. citizens or contracts signed in the United States. *Id*. at 355-58. Here, Plaintiff's claim is not based on the alleged contract with the U.S. Department of Defense. Instead, as Plaintiff admits, the gravamen of his claim is Defendants' alleged use of communications and media to allegedly defame Plaintiff. (Doc. # 160 at ECF p. 16). This is <u>not</u> a commercial dispute.

Third, for the commercial activity exception to apply, the gravamen of the lawsuit must be based upon tortious activity <u>within the United States</u>. *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215, 139 S. Ct. 759, 772 (2019). Even if UNB contracted with the U.S. Department of Defense, this suit is <u>not</u> about the enforcement or breach of that contract in the United States. Instead, this suit is about an academic dispute related to the research

Plaintiff undertook in Canada (Doc. # 133 at ECF pp. 6 and 8) and allegedly defamatory communications allegedly sent from Canada. (Doc. # 133 at ECF pp. 6, 8, 11 and 15; Doc. # 133 at ECF p. 11; *see also* Doc. # 133-1 at ECF p. 2 and Doc. # 133-4 at ECF p. 2). Because the "gravamen" of the claims against UNB in this lawsuit involve alleged activity in Canada, the commercial activity exception does <u>not</u> apply.

Finally, Plaintiff's reliance on the *Southway Construction*, *Leutwyler*, and *Hyewoong Yoon* decisions (Doc. #160 at ECF p. 13) is misplaced. Each of those cases involved foreign officials or entities engaged in acts that private parties routinely perform for profit, such as entering into contracts, publishing, or distributing materials with knowledge that they would be commercially exploited. *See Southway Construction Co. v. Central Bank of Nigeria*, 198 F.3d 1210, 1217–18 (10th Cir. 1999) (commercial acts "of the type private parties engage in"); *Leutwyler v. Office of Her Majesty Queen Rania Al Abdullah*, 184 F. Supp. 2d 277, 296–98 (S.D.N.Y. 2001) (defamation and media publication tied to private commercial exploitation); *Hyewoong Yoon v. Seyeon Lee*, 433 F. Supp. 3d 18, 24–25 (D. Mass. 2019) (misuse of intellectual property for commercial purposes).

By contrast, the Defendants here are foreign educational institutions and officials whose conduct falls squarely within their sovereign, public, and regulatory functions, including academic review processes, faculty oversight, and administration of defense-related programs. They are not engaging in private, profit-driven activity, and Plaintiff's allegations about coordinating academic reviews or disseminating information do not constitute acts of the type private parties engage in commercially. Mere recruitment of U.S. students or accepting U.S. funds for educational programs does not transform inherently

sovereign or public acts into commercial activity. Accordingly, none of the cases cited by Plaintiff support the application of the FSIA commercial activity exception.

### 2. The Tortious Act Exception To Immunity Does Not Apply

Plaintiff argues that, even if UNB qualifies as an agency or instrumentality of a foreign government, the tortious acts exception strips UNB of immunity. (Doc. # 159 at ECF pp. 14-17). As discussed in UNB's Motion, the tortious act exception does <u>not</u> apply because: (1) Plaintiff alleges an academic dispute, not tortious acts; (2) the tortious act exception only applies when the *entire tort* was committed in the United States; and (3) Plaintiff's alleged claims arise from types of claims expressly excepted from the "tortious act" exception. (Doc. # 159 at ECF p. 31).

Plaintiff admits that "[f]or the tortious acts exception to apply, both the tort and the injury must occur in the United States." (Doc. # 159 at ECF p. 15). But Plaintiff ignores that, for the "tortious act" exception to apply, the *entire tort* must be committed in the United States. *In re Terrorist Attacks on Sept. 11*, 2001, 714 F.3d 109, 115 (2d Cir. 2013). Plaintiff alleges that UNB committed conduct in Canada. (Doc. # 133 at ECF p. 8, 11, 15 and 26; *see also* Doc. # 133-1 at ECF p. 2 and Doc. # 133-4 at ECF p. 2). Therefore, the tortious acts exception cannot apply because the *entire tort* did <u>not</u> occur in the United States.

Plaintiff argues that "Courts have recognized that foreign entities are not immune to defamation or related tort claims causing injury in the United States." (Doc. # 15 at ECF p. 15). In support, Plaintiff cites *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842 (D.C. Cir. 1984). The *Persinger* decision says no such thing. In fact, the word "defamation"

11

does not appear in the *Persinger* decision. The tortious act exception does not apply to "…
any claim arising out of malicious prosecution, abuse of process, libel, slander,
misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 1605(a)(5)(B).
Accordingly, the tortious act exception does not apply because, to the extent Plaintiff
alleges any tortious conduct, his claims arise from alleged libel, slander, misrepresentation,
deceit, or interference with contract rights. (Doc. # 133 at ECF pp. 34-40).

### C.    UNB Did Not Waive Its Immunity

First, Plaintiff argues that UNB waived immunity when it contracted with the U.S.
Department of Defense. (Doc. # 159 at ECF p. 17). But Plaintiff fails to cite any of the
terms of that alleged contract. Accordingly, Plaintiff <u>cannot</u> meet the standard for explicit
waiver of immunity, which requires that waiver must be "unequivocally expressed." *In re
Rivera Torres*, 432 F.3d 20, 23-24 (1st Cir. 2005) (citations omitted).

Second, Plaintiff argues that the contractual relationship between UNB and Plaintiff,
facilitated by the U.S. Department of Defense funding, indicates that "the parties
necessarily contemplated U.S. jurisdiction." (Doc. # 159 at ECF pp. 17-18). This is an
implied waiver argument. Plaintiff ignores that the implied waiver provision must be
construed narrowly and there are only three circumstances in which a sovereign will be
treated as having impliedly waived its immunity: (1) executing a contract containing a
choice-of-law clause designating the laws of the United States as applicable; (2) filing a
responsive pleading without asserting sovereign immunity; or (3) agreeing to submit a
dispute to arbitration in the United States. *TIG Ins. Co. v. Republic of Argentina*, 110 F.4th
221, 236 (D.C. Cir. 2024). In this case, Plaintiff neither alleges nor argues that any of these

three circumstances occurred. Accordingly, the alleged contractual relationship between UNB and Plaintiff <u>cannot</u> be an implied waiver of immunity.

*    *    *

UNB is entitled to immunity. No exceptions apply. Plaintiff's claims must be dismissed *with prejudice* pursuant for lack of subject matter jurisdiction.

### III.    THIS COURT LACKS PERSONAL JURISDICTION OVER UNB

Plaintiff argues that this Court has specific personal jurisdiction over UNB because UNB has sufficient minimum contacts with the forum and requiring UNB to litigate in the U.S. District Court for the Western District of Oklahoma comports with fair play and substantial justice. As discussed below, Plaintiff is incorrect on both issues.

### A.    UNB Lacks Sufficient Minimum Contacts With The Forum

Plaintiff argues that UNB has sufficient minimum contacts with the United States because UNB must have known that Plaintiff would be harmed in the United States. (Doc. # 159 at ECF 18-21). But the mere foreseeability that actions may cause injury in that jurisdiction is <u>not</u> a basis for specific personal jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840-41 (10th Cir. 2020). To establish specific personal jurisdiction, Plaintiff instead must show: (a) an intentional action that was; (b) expressly aimed at the forum with; (c) knowledge that the brunt of the injury would be felt in the forum state. *Id*. at 841. Plaintiff cannot do so. (Doc. # 153 at ECF pp. 37-39).

UNB urges the Court to carefully examine the centerpiece of the alleged conduct upon which Plaintiff complains—the alleged "public letter of denouncement" attached to Plaintiff's Amended Complaint as Exhibit 4. (Doc. # 133 at ECF pp. 14-15). Plaintiff

13

himself alleges that it was "issued to the world." (Doc. # 133 at ECF p. 14). The document itself makes clear that it was aimed at *UNB students* in *Canada*. This is because the letter proposes three things: (1) a new event; (2) a new scholarship; and (3) an invitation for students to participate in departmental initiatives. (Doc. # 133-4 at ECF p. 2). No reasonable person would read this letter as inviting Plaintiff (in the United States) to attend the new event, apply for the new scholarship, or participate in departmental initiatives.

Accordingly, UNB does not have the requisite minimum contacts with the United States for this Court to exercise specific personal jurisdiction over UNB.

**B.    The Exercise Of Personal Jurisdiction Over UNB In This Forum Offends Traditional Notions Of Fair Play And Substantial Justice**

Even if UNB has sufficient contacts, this Court must still consider whether the exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987). The exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice. (Doc. # 153 at ECF pp. 39-43).

In response, Plaintiff first argues that modern communication technology and international legal practice makes defending a lawsuit in Oklahoma no more burdensome than defending it in any other forum." (Doc. # 159 at ECF p. 21). However, the U.S. Court of Appeals for the 10th Circuit has held that the burden on a Canadian corporation with no offices, property, or employees in the forum state was "significant" and weighed against exercising jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004).

14

Email, cellular phones, and other modern technologies existed in 2004 when *Benton* was decided. There is no reason to depart from the Court of Appeals' precedent.

Second, Plaintiff argues that UNB is "a sophisticated institution that regularly deals with international legal matters." Plaintiff cites nothing to support this argument. In fact, other than this case, UNB has no record of ever litigating in the United States or anywhere outside of Canada. *See* Exhibit 1, Fourth Declaration of Paul Mazerolle at ¶ 11.

Third, Plaintiff argues that Oklahoma and the United States have strong interests in this litigation. (Doc. # 159 at ECF p. 22). However, his dispute involves education Plaintiff received in Canada and statements made in Canada about that education. (Doc. # 153 at ECF p. 41). Moreover, Plaintiff completely ignores that "great care must be exercised when considering personal jurisdiction in the international context." *Asahi Metal*, 480 U.S. at 103 (1987). Even if Oklahoma or the United States had a minimal interest in this litigation, Canada's interest is greater because Plaintiff is seeking to recover from a Canadian public university for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian public university. (Doc. # 153 at ECF pp. 42-43).

Fourth, Plaintiff argues that he personally has an interest in receiving convenient and effective relief in this jurisdiction. (Doc. # 159 at ECF p. 22). But Plaintiff—a Pennsylvania resident—fails to provide any explanation for why Oklahoma is a convenient jurisdiction even for him. Plaintiff further argues that Canadian courts may not recognize the claims he wishes to pursue, may apply different substantive standards, and may not permit him to obtain relief against all alleged conspirators. (Doc. # 159 at ECF p. 22).

Plaintiff cites <u>nothing</u> for this sweeping summary of what Canadian law may (or may not) recognize. Plaintiff has no real interest in litigating in Oklahoma.

Fifth, Plaintiff argues that many of the defendants are U.S. residents, that both evidence and witnesses exist in the United States, and therefore litigating in Canada would require "international discovery." (Doc. # 159 at ECF p. 23). But there is only one defendant who is a U.S. resident—Mr. Gregory. There are twenty-four defendants in Canada. Wherever this suit is litigated, it will involve discovery across international lines. Given these facts, this Court should follow the Court of Appeals decision that the burden on a Canadian corporation with no offices, property, or employees in the forum state was "significant" and weighed against exercising jurisdiction. *Benton*, 375 F.3d at 1079.

## IV.  PLAINTIFF FAILS TO STATE A CLAIM

On this point, to avoid duplicative argumentation, UNB joins and adopts the arguments set forth in Individual University Defendants' Reply Brief in Support of their Motion to Dismiss as though fully set forth herein.

## V.  PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND HIS COMPLAINT OR CONDUCT JURISDICTIONAL DISCOVERY

On this point, to avoid duplicative argumentation, UNB joins and adopts the arguments set forth in Individual University Defendants' Reply Brief in Support of their Motion to Dismiss as though fully set forth herein.

## VI.  CONCLUSION

UNB respectfully requests that its Motion to Dismiss be granted, the claims against it be dismissed *with prejudice*, and for such further relief this Court deems just and proper.

16

Dated: November 7, 2025

Respectfully submitted,

/s/ William C. Swallow

William C. Swallow (IL No. 6293910)          Don W. Danz
*Admitted Pro Hac Vice*                       McATEE & WOODS, P.C.
Michael H. Passman (IL No. 6297381)           410 NW 13th Street
*Admitted Pro Hac Vice*                       Oklahoma City, OK 73103
Emily M. Vanderlaan (CO No. 55293)            T: (405) 232-5067
*Admitted Pro Hac Vice*                       F: (405) 232-0009
CLYDE & CO US LLP                             E: DonD@McAteeandWoods.com
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

*Attorneys for the University of New Brunswick*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically on this 7th day of November 2025, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

*/s/ William C. Swallow*
William C. Swallow
*Admitted Pro Hac Vice*

17