**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DOUGLAS MASTRIANO,<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES GREGORY III, *et al*.,<br><br>*Defendants*. | **CIVIL ACTION NO.: 5:24-cv-00567-J** |

**DEFENDANT JAMES GREGORY'S MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR, NINE, AND TEN, AND BRIEF IN SUPPORT**

Under Federal Rule of Civil Procedure 12(b)(6) and the Oklahoma Citizens Participation Act (Okla. Stat. tit. 12, § 1430, *et seq.*), Defendant James Gregory respectfully moves to dismiss all counts against him, i.e., counts One, Two, Three, Four, Nine, and Ten of Mastriano's Second Amended Complaint, ECF No. 188 ("SAC"). Respectfully submitted,

*/s/ Sara Berinhout*
SARA BERINHOUT*
MA Bar No. 703217
GREG HAROLD GREUBEL*
PA Bar No. 321130
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
sara.berinhout@fire.org
greg.greubel@fire.org
* Admitted *Pro Hac Vice*

Robert D. Nelon, OBA #6610
Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .......... 3

Gregory Reports Inaccuracies in Mastriano's Publications. .......... 3

Over Two Years Ago, University Defendants—Not Gregory—Publish a Letter Criticizing Mastriano's Political Ideology. .......... 6

Years After Gregory Reports His Concerns to the University, Mastriano Sues Gregory and 27 Other Defendants to Silence Their Criticism. .......... 6

ARGUMENT .......... 8

I. Mastriano's Defamation and False Light Claims Cannot Survive Under Rule 12(b)(6) and Oklahoma's anti-SLAPP Statute. .......... 10

A. Gregory's academic opinions about Mastriano's historical scholarship cannot form the basis of his defamation or false light claims. .......... 11

B. Mastriano's defamation and false light claims also fail because he does not allege actual malice. .......... 13

C. The statute of limitations bars Mastriano's defamation claim. .......... 14

D. Mastriano's false light claim also fails because Gregory's alleged statements did not reveal anything not already public. .......... 17

E. The OCPA requires dismissal of Mastriano's defamation and false light claims with an award of attorney's fees and sanctions. .......... 17

II. Public Debate Among Historians Is Not a Violation of Civil RICO or Antitrust Law. .......... 19

A. Mastriano's claims that Gregory violated, and conspired to violate, civil RICO cannot satisfy Rule 12(b)(6). .......... 20

1. Mastriano has not plausibly alleged that Defendants committed a single predicate act, let alone a "pattern" of racketeering activity. .......... 20

2. Mastriano has not plausibly alleged facts to support the existence of a common "enterprise." ....... 22

3. Mastriano's highly speculative injuries cannot sustain a RICO claim. ....... 23

4. Mastriano's RICO conspiracy claim fails because he has not alleged facts to support that Gregory knowingly joined a conspiracy to violate RICO. ....... 25

B. Academic debate is not an unreasonable restraint on trade under the Sherman Antitrust Act. ....... 26

1. Mastriano's unreasonable restraint on trade claim fails because he did not allege any adverse effect on competition in general, rather than on his business interests. ....... 27

2. Defendants did not unlawfully tie two products to exploit a market in violation of the Sherman Antitrust Act. ....... 28

CONCLUSION ....... 30

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Intermountain Health Care Inc.*,
461 F.3d 1249 (10th Cir. 2006) ........ 9, 28, 29

*Andrews v. Heaton*,
483 F.3d 1070 (10th Cir. 2007) ........ 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8, 25

*Boyle v. United States*,
556 U.S. 938 (2009) ........ 22, 23

*Brown v. JBS USA Food Co.*,
773 F. Supp. 3d 1193 (D. Colo. 2025) ........ 16

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
846 F.3d 1297 (10th Cir. 2017) ........ 28

*Budicak, Inc. v. Lansing Trade Grp., LLC*,
452 F. Supp. 3d 1029 (D. Kan. 2020) ........ 27

*Bustos v. A & E Television Networks*,
646 F.3d 762 (10th Cir. 2011) ........ 11

*Chase Mfg., Inc. v. Johns Manville Corp.*,
84 F.4th 1157 (10th Cir. 2023) ........ 29

*Colbert v. World Pub. Co.*,
1987 OK 116 ........ 16

*Cox Broadcasting Corp. v. Cohn*,
420 U.S. 469 (1975) ........ 17

*Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*,
No. civ-17-003-F, 2018 WL 4861522 (W.D. Okla. Apr. 30, 2018) ........ 18

*Dalton v. City of Las Vegas*,
282 F. App'x 652 (10th Cir. 2008) ........ 20

*Deck v. Engineered Laminates*,
349 F.3d 1253 (10th Cir. 2003) ........ 20

*Deghand v. Wal-Mart Stores, Inc.*,
926 F. Supp. 1002 (D. Kan. 1996) ........ 15, 16

*Dilworth v. Dudley*,
75 F.3d 307 (7th Cir. 1996) ........ 12

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ........ 28

*ePlus Tech., Inc. v. Aboud*,
313 F.3d 166 (4th Cir. 2002) ........ 21

*F.D.I.C. v. Conner*,
20 F.3d 1376 (5th Cir.1994) ........ 16

*Foster v. Wintergreen Real Estate Co.*,
363 F. App'x 269 (4th Cir. 2010) ........ 20, 21

*George v. Urb. Settlement Servs.*,
833 F.3d 1242 (10th Cir. 2016) ........ 23, 24

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........ 11

*Ghrist v. CBS Broad., Inc.*,
40 F. Supp. 3d 623 (W.D. Pa. 2014) ........ 14

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
398 U.S. 6 (1970) ........ 11

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991) ........ 21, 25

*Keyishian v. Bd. of Regents*,
385 U.S. 589 (1967) ........ 12

*KLX Energy Servs., LLC v. Magnesium Mach., LLC*,
521 F. Supp. 3d 1124 (W.D. Okla. 2021) ........ 8, 18

*McBride v. Peak Wellness Ctr., Inc.*,
688 F.3d 698 (10th Cir. 2012) ........ 15

*McCormack v. Oklahoma Pub. Co.*,
1980 OK 98 .......... 17

*McGeorge v. Cont'l Airlines, Inc.*,
871 F.2d 952 (10th Cir. 1989) .......... 8, 16

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
No. 20-cv-00054-SPF-JFJ, 2022 WL 377415 (N.D. Okla. Jan. 7, 2022) .......... 4

*Morgan v. Winters*,
1979 OK 68 .......... 14

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) .......... 9, 13

*Nat. Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974) .......... 11

*NMP Corp. v. Parametric Tech. Corp.*,
958 F. Supp. 1536 (N.D. Okla. 1997) .......... 14

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
720 F.3d 490 (2d Cir. 2013) .......... 12

*Rickman v. Cone Mills Corp.*,
129 F.R.D. 181 (D. Kan. 1989) .......... 16

*Rinsley v. Brandt*,
700 F.2d 1304 (10th Cir. 1983) .......... 10, 11

*Roberts v. Bush*,
537 P.3d 147 (Okla. Civ. App. 2023) .......... 10, 14

*Schiavone v. Fortune,*
477 U.S. 21 (1986) .......... 16

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) .......... 20

*Sensoria, LLC v. Kaweske*,
581 F. Supp. 3d 1243 (D. Colo. 2022) .......... 24

*Snyder v. Phelps*,
562 U.S. 443 (2011) .......... 18

*Sports Racing Servs., Inc. v. Sports Car Club of Am.*,
131 F.3d 874 (10th Cir. 1997) ....................28

*Stinson ex rel. U.S. v. Maynard*,
341 F. App'x 413 (10th Cir. 2009) ....................21

*Stinson v. Maynard*,
No. 07-CV-387-WFD, 2008 WL 4525399 (W.D. Okla. Sept. 30, 2008)....................21, 22

*Sweezy v. New Hampshire*,
354 U.S. 234 (1957)....................18

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ....................5, 20, 23, 27

*Talley v. Time, Inc.*,
923 F.3d 878 (10th Cir. 2019) ....................13

*Thacker v. Cowling*,
473 P.3d 518 (Okla. Civ. App. 2020) ....................14

*Turkish Coal. of Am., Inc. v. Bruininks*,
678 F.3d 617 (8th Cir. 2012) ....................12

*Underwager v. Salter*,
22 F.3d 730 (7th Cir. 1994) ....................12

*United States v. Alvarez*,
567 U.S. 709 (2012)....................22

*United States v. Harris*,
695 F.3d 1125 (10th Cir. 2012) ....................25

*United States v. O'Connor*,
910 F.2d 1466 (7th Cir. 1990) ....................21

*United States ex rel. Reed v. KeyPoint Gov't Sols.*,
923 F.3d 729 (10th Cir. 2019)....................15

*Yates v. Gannett Co., Inc.*,
523 P.3d 69 (Okla. Civ. App. 2022) ....................13, 17, 18

**Statutes**

15 U.S.C.
§ 1 ....................26

18 U.S.C.
§ 1961(1) ........ 26
§ 1961(4) ........ 20
§ 1964 ........ 20

42 PA. CONS. STAT.
§ 5523(1) ........ 14

Okla. Stat. tit. 12,
§ 1430 ........ 2, 17
§ 1431 ........ 2
§ 1431(7) ........ 10
§ 1431(7)(b) ........ 18
§ 1431(7)(d) ........ 18
§ 1431(7)(e) ........ 18
§ 1434(B) ........ 8, 9, 17, 19
§ 1434(C) ........ 9, 19
§ 1434(D) ........ 19
§ 1438 ........ 3, 9, 30

**Rules**

Fed. R. Civ. P. 15(c)(1)(B) ........ 15

**Other Authorities**

Douglas Mastriano,
*Alvin York: A New Biography of the Hero of Argonne (American Warrior Series)* (2014) ........ 4

*Fraud*, Black's Law Dictionary (12th ed. 2024) ........ 22

William L. Prosser,
*Handbook of the Law of Torts* § 105 (4th ed. 1971) ........ 22

## INTRODUCTION

Plaintiff Douglas Mastriano, a prominent Pennsylvania politician, filed this strategic lawsuit against public participation (SLAPP) over twenty months ago. ECF No. 1 ("Complaint"). Yet after receiving the opportunity to amend his complaint twice and a warning from the court that "ill-conceived attempts to prosecute RICO claims can have adverse consequences for both the pleader and his client" under Fed. R. Civ. P. 11, *Mastriano v. Gregory*, No. CIV-24-567-F, 2025 WL 392731, at *4 (W.D. Okla. Feb. 4, 2025), Mastriano still offers nothing to warrant anything other than dismissal.

Mastriano's *third* failure to state any claim for relief leaves no doubt: His goal is not to prevail on the merits, but rather to silence his critics by forcing them to defend frivolous claims for defamation, false light invasion of privacy, and unfounded claims under the civil Racketeer Influenced and Corrupt Organizations (RICO) Act and Sherman Antitrust Act. The First Amendment and the Oklahoma Citizens Participation Act (OCPA) bar Mastriano's Second Amended Complaint, just like the previous two complaints, because even the most powerful must engage their critics in the marketplace of ideas, not the courts.

This dispute is at bottom an academic debate between military historians. While Mastriano has been a prominent political figure for years, he has also published scholarly works on Alvin York, a World War I hero who, as one story goes, single-handedly captured over 130 German soldiers, inspiring a 1941 Academy Award-winning movie, *Sergeant York*. While earning his Ph.D. at the University of New Brunswick, Mastriano wrote a thesis on Sgt. York and later expanded it into a book, tracking themes from the movie.

For years, some historians argued Sgt. York's role in the German soldiers' capture was exaggerated. Defendant James Gregory is one of those historians. In his critically acclaimed 2022 book, *Unraveling the Myth of Sgt. Alvin York: The Other Sixteen*, Gregory describes the soldiers who bravely fought alongside Sgt. York but whose contributions are largely absent from the historical account Mastriano and others popularized.

While conducting his research, Gregory identified numerous errors in Mastriano's scholarship. After careful review, Gregory reported 213 documented inaccuracies to Mastriano's publisher and the University of New Brunswick in 2021 and 2022. When Mastriano ran for governor of Pennsylvania in 2022, the media covered Gregory's reports, and Gregory opined that Mastriano's hundreds of inaccuracies suggest academic fraud.

Rather than publicly rebut Gregory's opinion, Mastriano filed this meritless suit to intimidate Gregory into silence. The OCPA mandates dismissal of Mastriano's defamation and false light claims because they are premised on protected speech regarding matters of public concern. *See* Okla. Stat. tit. 12, §§ 1430 *et seq*. And none of the claims meet Rule 12(b)(6)'s pleading standards. Indeed, even the most generous reading of Mastriano's Second Amended Complaint cannot satisfy a single element of his RICO and Sherman Antitrust Act claims. Quite simply, criticizing a fellow historian's scholarship is neither racketeering activity nor an unreasonable restraint on trade.

From the first filing, this action was a textbook SLAPP, brought to silence criticism Mastriano will not or cannot refute in the marketplace of ideas. But the First Amendment and Oklahoma law ensure scholars like Gregory are free to opine on the merits of a public official's academic scholarship. The Court should dismiss claims One, Two, Three, Four,

Nine, and Ten of Mastriano's Second Amended Complaint with prejudice under Rule 12(b)(6). It should also dismiss counts Nine and Ten (for defamation and false light) under the OCPA, award Gregory mandatory attorneys' fees for this motion, and sanction Mastriano for this SLAPP that he has maintained despite this Court's prior warning. Okla. Stat. tit. 12, § 1438.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant James Gregory is a respected historian and museum director. SAC ¶¶ 8, 21, 80. He first read Mastriano's scholarship on Sgt. York as a graduate student at the University of Oklahoma. *Id.* ¶¶ 21, 26. Gregory later authored his own book on Sgt. York, offering a different perspective on historical events, entitled *Unraveling the Myth of Sgt. Alvin York: The Other Sixteen*. *Id.* ¶ 41.

Plaintiff Douglas Mastriano is a Pennsylvania state senator, veteran, and former Republican gubernatorial candidate. *Id.* ¶¶ 7, 23. He received a Ph.D. in 2013 from the University of New Brunswick in Canada ("the University"). *Id.* ¶¶ 26, 46. His doctoral thesis on Sgt. York formed the basis of his 2014 book, *Alvin York: A New Biography of the Hero of the Argonne*. *Id.* ¶ 21.

### Gregory Reports Inaccuracies in Mastriano's Publications.

In 2018, Gregory began researching Sgt. York as a graduate student and observed numerous inaccurate citations in Mastriano's publications about Sgt. York. *Id.* ¶¶ 21, 26. Gregory carefully documented these inaccuracies and, as their number grew, he began to suspect Mastriano had engaged in academic fraud. *Id.* To confirm his suspicions, Gregory spent two years reviewing Mastriano's work and comparing it with the historical record.

Only then did he report his concerns to the University and the publisher of Mastriano's book. *Id.* ¶¶ 21, 26, 29, 40.

As one example, Gregory discovered that the cover photograph of Mastriano's book was not what Mastriano claimed. Mastriano asserts that the photo depicts Sgt. York escorting his German prisoners on October 8, 1918. *See* Douglas Mastriano, *Alvin York: A New Biography of the Hero of Argonne (American Warrior Series)* [112] (2014).[1] In his dissertation, Mastriano labeled the photograph, also attached as Exhibit 2, as shown below:



Photo of York escorting his German prisoners on 8 October 1918 near Varennes. AHEC

[1] Because Mastriano repeatedly references his book and Gregory's reports of suspected academic fraud, those documents are incorporated by reference and this Court may consider them when ruling on this motion. *See Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, No. 20-cv-00054-SPF-JFJ, 2022 WL 377415, at *5 (N.D. Okla. Jan. 7, 2022), *aff'd*, 79 F.4th 1209 (10th Cir. 2023). A copy of the cover of Mastriano's book is attached as Exhibit 1 to this motion.

U.S. Army records, however, confirm that Mastriano's depiction is a magnified portion of a larger photo taken September 26—weeks before October 8—that depicts "PRISONERS ON WAY TO P.C. 36th Division near 35th Division headquarters near Boureuilles, Meuse, France," with no mention of Sgt. York:


SUBJECT: 111 SC
31859
NUMBER
H
Sgt. A. C. Duff, S. C.
PHOTOGRAPHER
Dec. 27, 1918
REC'D
Sept. 26, 1918
TAKEN
DESCRIPTION:
PRISONERS ON WAY TO P.C. 36th Division near 35th Division headquarters near Boureuilles, Meuse, France.
Same as 45799 23041
Passed by A.E.F. censor, date not given.




Item 45799, WWI Signal Corps Collection, 82nd Division, Box 55 (annotated).[2]

When Gregory reported his concerns about Mastriano's book to the University, Gregory requested that the University also release Mastriano's embargoed thesis on Sgt. York. SAC ¶¶ 26–27.[3] After the University did so, Gregory reviewed it and filed another

[2] This photograph is attached as Exhibit 3 to this motion. Because this photograph is a public document, the Court may take judicial notice of its presence among U.S. Army records without converting this motion to dismiss to one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

[3] The Second Amended Complaint mistakenly describes the initial report as occurring "[i]n or about 2019." SAC ¶ 26. The articles Mastriano attached to the Second Amended Complaint correctly note that Gregory first contacted the University in 2021. ECF No. 188-3 at 5–6; ECF No. 133-7 at 16.

report with the University in 2022, identifying similar concerns in Mastriano's thesis. *Id.* ¶ 29–30.

Gregory's reports to the University attracted media attention during Mastriano's 2022 bid for the Pennsylvania governorship. *Id.* ¶ 32. Around 2022 and 2023, Gregory spoke with journalists who contacted him about his concerns regarding the veracity of Mastriano's scholarship. *Id.* ¶¶ 31, 51.

**Over Two Years Ago, University Defendants—Not Gregory—Publish a Letter Criticizing Mastriano's Political Ideology.** [4]

On April 26, 2023, faculty members in the University's Department of History (who are also Defendants) published an open letter broadly criticizing Mastriano's "anti-trans political discourses" and "hatred and bigotry" (the "faculty letter"). *Id.* ¶¶ 22, 42, ECF No. 188-5. The faculty letter does not reference any criticism of Mastriano's scholarship. And Gregory, who has no affiliation with the University, is not listed as an author of the letter or otherwise mentioned in it. *Id.* [5]

**Years After Gregory Reports His Concerns to the University, Mastriano Sues Gregory and 27 Other Defendants to Silence Their Criticism.**

On May 31, 2024, Mastriano sued Gregory and 27 others, most of whom are affiliated with the University. ECF No. 1 ¶¶ 11–21. The Complaint asserted nine causes of

---

[4] The "University Defendants" are the University of New Brunswick, Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, and Angela Tozer. ECF No. 12.

[5] This faculty letter formed the exclusive factual basis of Mastriano's defamation claim against Gregory in his original Complaint. *See* ECF No. 1 ¶ 125; ECF No. 89 at 10.

action, five of which include Gregory: Defamation (Count 9); Violation of RICO (Count 1); Civil conspiracy to violate RICO (Count 2); Violation of the Sherman Antitrust Act based on an unreasonable restraint on trade (Count 3); and Violation of the Sherman Antitrust Act based on unlawful tying of products (Count 4).

Between August and December 2024, Gregory and the other defendants filed motions to dismiss.[6] Mastriano opposed the first five motions to dismiss.[7] But on January 17, 2025, the deadline for Mastriano's opposition to the National Research Council (NRC) of Canada's motion to dismiss, he voluntarily dismissed the NRC as a defendant, ECF No. 127, and moved for leave to amend his complaint, ECF No. 126. The Court granted his motion on February 4, 2025, and directed him to properly serve the individual Canadian defendants. ECF No. 132.

On February 8, 2025, Mastriano filed the First Amended Complaint, ECF No. 133, and the Court denied the remaining motions to dismiss as moot, ECF No. 134. The First Amended Complaint included an additional cause of action against Gregory for False Light (Count 10). After Defendants fully briefed motions to dismiss a second time, Mastriano sought leave to amend his complaint once again. ECF No. 178. This Court granted his motion, which brings us to the third round of motions to dismiss.

---

[6] ECF No. 12 (University Defendants); ECF No. 66 (Committee Defendants); ECF No. 85 (Defendant Janet Mullin); ECF No. 89 (Defendant James Gregory); ECF No. 105 (Defendant Roland Kuhn); ECF No. 119 (Defendant National Research Council of Canada).

[7] ECF No. 75-1 (University Defendants); ECF No. 81 (Committee Defendants); ECF No. 110 (Defendant James Gregory); ECF No. 120 (Defendant Roland Kuhn).

**ARGUMENT**

Mastriano's claims against Gregory rest on years-old protected speech, sparse factual allegations, and implausible legal theories. Even under the most generous interpretation of his allegations, he has failed to state a claim against Gregory under Rule 12(b)(6). The Second Amended Complaint offers nothing to substantiate Mastriano's unsupported conclusions that Gregory made "false and fraudulent" statements about Mastriano's scholarship. SAC ¶¶ 26, 41, 51, 186. As with the two previous versions of the Complaint, the only statements Mastriano alleges Gregory made are non-actionable opinions, made without actual malice and outside the statute of limitations for defamation. *Id.* ¶ 31. The law requires more, including alleging the substance of Gregory's assertedly "false" statements. *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989).

Mastriano's mere "labels and conclusions" and "[t]hreadbare recitals of the elements of a cause of action" cannot satisfy his pleading burden. *KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124, 1129 (W.D. Okla. 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Only Mastriano's well-pleaded factual allegations, of which there are notably few, are accepted as true and viewed in a light favorable to him during the analysis. *Id.* Yet even if Mastriano's limited factual allegations are accepted as true, he still fails to state a claim because they cannot overcome the First Amendment's protections for opinions about public figures, and they are barred by the statute of limitations.

Mastriano's defamation and false light claims also trigger the OCPA because each claim is "based on, relates to or is in response to" Gregory's protected speech. Okla. Stat.

tit. 12, § 1434(B). For the same reasons Mastriano's defamation and false light claims fail under Rule 12(b)(6), they fail to satisfy the OCPA's requirement to support each element with "clear and specific evidence." *Id.* § 1434(C). The Court should thus dismiss these claims not only under both Rule 12(b)(6) but also the OCPA, and award Gregory fees and sanctions under the OCPA. *Id.* §§ 1438, 1434(C).

The civil RICO and Sherman Antitrust Act claims also fail under Rule 12(b)(6). Mastriano does not allege Gregory and his co-defendants committed anything approaching a RICO predicate act, let alone a pattern of racketeering activity, and Mastriano does not allege tangible injury suffered from a RICO violation, or facts showing Gregory knowingly joined a RICO conspiracy.

As to the Sherman Antitrust Act claim, Mastriano asserts two baffling theories. First, he alleges Gregory's criticism constituted an unreasonable restraint on market competition, even though public debate and the exchange of viewpoints serve to *advance* and *contribute to* competition—not suppress it. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (affirming our "profound national commitment … that debate on public issues should be uninhibited, robust, and wide-open"). And he does not explain what harm allegedly befell consumers, as opposed to Mastriano's own alleged business interests. Second, he alleges Gregory unlawfully "tied" two products together but neither identifies them nor alleges Gregory possessed control over *any* two products—the *sine qua non* of unlawful tying. *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1263–65 (10th Cir. 2006). Instead, he alleges *voters* "tied" Gregory's criticism of Mastriano's scholarship

to decisions to not vote for him. SAC ¶¶ 118–19. That's not an antitrust violation—it's democracy.

## I. Mastriano's Defamation and False Light Claims Cannot Survive Under Rule 12(b)(6) and Oklahoma's anti-SLAPP Statute.

Mastriano's attempt to silence his critics by suing them for defamation and false light fails under Fed. R. Civ. P. 12(b)(6) and the OCPA for five reasons. First, Mastriano's claims are premised entirely on Gregory's academic opinions, which cannot give rise to liability for defamation or false light claims because they are not statements of fact. *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983). Second, Mastriano's conclusory allegations fail to carry his burden of pleading actual malice for both claims. *Roberts v. Bush*, 537 P.3d 147, 151–52 (Okla. Civ. App. 2023). Third, because the alleged statements underlying Mastriano's defamation claim in the Second Amended Complaint were not in the original Complaint, it does not relate back to the original filing, so his defamation claim continues to violate the statute of limitations. Fourth, Mastriano's false light claim fails as it is premised on statements made long after the information had already been made public. Finally, not only do Mastriano's defamation and false light claims fail under Rule 12(b)(6), the OCPA also compels their dismissal because they target Gregory's protected speech on matters of public concern—specifically, statements related to a "public figure," a "product … in the marketplace," and "community well-being." Okla. Stat. tit. 12, § 1431(7). And for this last reason, as Mastriano cannot satisfy his OCPA burden, the Court should dismiss his defamation and false light claims, sanction him for filing this SLAPP, and award Gregory attorneys' fees under the OCPA for defending this lawsuit.

### A. Gregory's academic opinions about Mastriano's historical scholarship cannot form the basis of his defamation or false light claims.

Mastriano's defamation and false light claims fail at the most basic level because he does not allege that Gregory made any demonstrably false statement of fact. Indeed, every statement Mastriano alleges Gregory made is an academic opinion—and thus cannot support liability. "Under the First Amendment there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974).

Mastriano admits "honest error[s]" exist in his scholarship. SAC ¶ 31. His defamation and false light claims thus reduce to targeting Gregory's unactionable *opinion* that 213 invalid citations are too many to attribute to sloppiness alone and his alleged statement calling Mastriano a fraud. But that is precisely the type of "rhetorical hyperbole" that is not actionable as defamation. *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970). The First Amendment protects "[e]xpression of such an opinion, even in the most pejorative terms," and as a public figure and politician, Mastriano must live with "loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies." *Nat. Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (citation omitted). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id.* (quoting *Gertz*, 418 U.S. at 339–40); *see also Rinsley*, 700 F.2d at 1307 (same). Mastriano has not identified any false statement of fact by Gregory, which is "a First Amendment imperative" in a defamation case brought by a public official, and, therefore, his claim fails. *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011).

What's more, Gregory expressed his opinions as an exercise of academic freedom, which is "a special concern of the First Amendment." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). The law requires that academic controversies "be settled by the methods of [academia] rather than by the methods of litigation." *Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994). This is so for good reason. For one thing, "courts are ill-equipped to undertake to referee such controversies." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013). "Instead, the trial of ideas plays out in the pages of peer-reviewed journals, and the scientific public sits as the jury." *Id.*

Courts have not hesitated to protect academics from baseless lawsuits attacking scholarship. For instance, when an engineer sued a mathematician for defamation because the mathematician wrote a book criticizing the engineer's academic articles and calling him a "crank," the Seventh Circuit affirmed dismissal, emphasizing that "judges are not well equipped to resolve academic controversies …. Unlike the ordinary citizen, a scholar generally has ready access to the same media by which he is allegedly defamed." *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996). Judge Posner, writing for the court, explained that such academic controversies are inactionable because it is "not the character but the ideas of the scholar [that] are attacked." *Id.*

That is even more true in the field of history, where "a subjective evaluation of the credibility of the historical sources … is essentially an opinion," and "different historians might well come to different conclusions." *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 625 (8th Cir. 2012). Here, as in *Dilworth*, Gregory's alleged statements concern

Mastriano's academic scholarship. But instead of publicly refuting Gregory's criticism, Mastriano asks this Court to silence it. Decades of law foreclose that effort.

**B. Mastriano's defamation and false light claims also fail because he does not allege actual malice.**

The defamation and false light claims also fail because Mastriano fails to support them with factual allegations showing Gregory made a false statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Sullivan*, 376 U.S. at 279–80 (defamation); *see also Talley v. Time, Inc.*, 923 F.3d 878, 894 (10th Cir. 2019) (false light plaintiffs "must show … reckless disregard as to the falsity of the publicized matter"). The Second Amended Complaint, which describes Mastriano as a well-known elected official, politician, and military historian, leaves no doubt he is a public figure. *E.g.,* SAC pp. 2–4, ¶ 7. In fact, under Oklahoma law, public officials like Mastriano are categorically "public figures." *See, e.g.*, *Yates v. Gannett Co., Inc.*, 523 P.3d 69, 76 (Okla. Civ. App. 2022). That means actual malice is required.

Yet Mastriano makes no attempt to allege facts suggesting Gregory recklessly disregarded whether his statements were true or false. Contrary to Mastriano's claim, the University's decision not to investigate Gregory's first report on Mastriano—a decision it later reversed, SAC ¶¶ 33–39—neither suggests Gregory's assertions were "proven false" nor that he recklessly disregarded any falsehood in making the reports. *Id.* ¶ 188. Nor does it suffice for Mastriano to offer bald legal conclusions that all Defendants' "statements were false and … known to be false or were made with reckless disregard as to their falsity by Defendants when they made the same with malice aforethought." *Id*. Such conclusory

allegations fail to plausibly allege actual malice. *See Roberts v. Bush*, 537 P.3d 147, 152 (Okla. Civ. App. 2023). Nor does Mastriano's unsubstantiated claim that Gregory's statements were "defamatory per se" relieve Mastriano of his obligation to plead *facts* suggesting Gregory's well-documented opinions were actually false and made with actual malice. *Morgan v. Winters*, 1979 OK 68, ¶ 7 (holding actual malice is not presumed when a public figure alleges plaintiff's statement was defamatory per se).

**C. The statute of limitations bars Mastriano's defamation claim.**

Mastriano's defamation claim also fails because his Second Amended Complaint does nothing to cure the claim's untimeliness. Mastriano alleges Gregory made his assertedly defamatory statements between October 2022 and August 2023. SAC ¶¶ 31, 186. Under Oklahoma's one-year statute of limitations for defamation, Mastriano had until August 2024 at the latest to bring a defamation claim. *See Thacker v. Cowling*, 473 P.3d 518, 522 (Okla. Civ. App. 2020) (calculating statute of limitations from publication date).[8] But he did not file his Amended Complaint until February 8, 2025, or his Second Amended

[8] "Under Oklahoma conflict of law rules, the rights and liabilities of parties in a tort action are determined by the substantive law of the state having the most significant relationship to the occurrence and to the parties involved." *NMP Corp. v. Parametric Tech. Corp.*, 958 F. Supp. 1536, 1543 (N.D. Okla. 1997). Oklahoma's substantive defamation law controls because Mastriano does not allege Gregory made any statement outside Oklahoma. *See, e.g.*, *Thacker*, 473 P.3d at 522. Even if the Court were to apply Pennsylvania law (as the jurisdiction where any alleged harm caused to Mastriano's reputation ostensibly occurred), the statute of limitations remains the same. *See* 42 PA. CONS. STAT. § 5523(1) (establishing a one-year limitations period for defamation); *see also Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 628 (W.D. Pa. 2014) (affirming Pennsylvania's one-year statute of limitations for defamation begins running from time of "initial publication").

Complaint until February 10, 2026, neither of which add any allegedly defamatory statements Gregory made in the preceding year. ECF Nos. 133, 188.

And Mastriano's allegations in the Second Amended Complaint do not relate back to his original filing, because Rule 15's relation-back standard requires the "conduct, transaction, or occurrence" underlying each claim to be "set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). As "each [alleged defamatory] statement" is a "discrete, potentially actionable occurrence," the only statements that relate back to the date of the original filing are those Mastriano originally pleaded—which are none. *McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 710 (10th Cir. 2012), *abrogated on other grounds by United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729 (10th Cir. 2019). In fact, Mastriano alleged nothing in his original Complaint even suggesting what Gregory allegedly said about Mastriano, when he said it, or under what circumstances. Instead, the original Complaint included only vague allegations, such as "Defendants made statements … that exposed [him] to public hatred, contempt, ridicule, and disgrace" at some point in 2023 or earlier. Compl. ¶ 125.[9]

While "amendments will relate back if they amplify the facts previously alleged … or add another claim arising out of the same facts," an amendment that "interject[s] entirely different facts, conduct, transactions or occurrences" does not. *Deghand v. Wal-Mart*

[9] In his original Complaint, the sole factual allegation Mastriano offered in support of his defamation claim was the faculty letter attached as Exhibit 4. As Gregory pointed out in his initial Motion to Dismiss, and as Mastriano now (necessarily) recognizes, Gregory had no awareness of or involvement in that letter. SAC ¶¶ 14, 22 (attributing the faculty letter attached as Ex. 4 to UNB and the University Defendants).

*Stores, Inc.*, 926 F. Supp. 1002, 1021 (D. Kan. 1996) (citing *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385–86 (5th Cir. 1994)). According to Mastriano's Second Amended Complaint, the new grounds for his defamation claim are statements Gregory allegedly made in an interview in October 2022, and a radio appearance he did in August 2023. SAC ¶¶ 31, 51. There was no hint of these statements in Mastriano's original pleading.

At its core, Mastriano's Second Amended Complaint cannot satisfy "the principal inquiry under Rule 15(c)" of "whether adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 186 (D. Kan. 1989) (quoting *Schiavone v. Fortune,* 477 U.S. 21, 31 (1986)). The Tenth Circuit has made this very clear "in the context of a defamation claim," no less, in noting "Fed. R. Civ. P. 8(a) requires that the complaint provide sufficient notice of the communications complained of …." *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989). The first time Mastriano provided Gregory any such "notice," *id.*, was the First Amended Complaint in February 2025—months after the statute of limitations had run. As the law precludes Mastriano's amended defamation allegations from relating back to the original filing, *Rickman*, 129 F.R.D. at 186, Mastriano's defamation claim is time-barred and must be dismissed for that reason as well.[10]

[10] To the extent Mastriano supports his false light invasion of privacy claim based on the new factual allegations from 2022, the two-year statute of limitations bars those statements because they occurred before February 8, 2023, *Colbert v. World Pub. Co.*, 1987 OK 116 ¶ 1, and do not relate back to the original Complaint. *Rickman*, 129 F.R.D. at 186; *see also Brown v. JBS USA Food Co.*, 773 F. Supp. 3d 1193, 1229 (D. Colo. 2025) (collecting cases).

### D. Mastriano's false light claim also fails because Gregory's alleged statements did not reveal anything not already public.

Mastriano's false light claim also fails because Gregory's alleged statements related to Mastriano's *published* scholarship. SAC ¶¶ 31, 200, 202. It is simply frivolous to bring a false light claim based on a dispute over information Mastriano himself put into "the public record." *McCormack v. Oklahoma Pub. Co.*, 1980 OK 98, ¶ 18 (quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975)). Mastriano has not and cannot identify any case where a court allowed a plaintiff to bring a false light claim against someone for identifying errors in the plaintiff's publications. Mastriano chose to enter the public square by publishing a book on an American hero, and Oklahoma law does not permit him to sue Gregory into silence under a false light theory for giving his opinion on this matter of public concern. *Yates*, 523 P.3d at 78 (public official could not maintain false light claim based on a dispute over "voluntary statements regarding matters of public concern"). This is yet another reason the Court should dismiss this claim.

### E. The OCPA requires dismissal of Mastriano's defamation and false light claims with an award of attorney's fees and sanctions.

The OCPA requires dismissal of Mastriano's defamation and false light claims as a "legal action [that] is based on, relates to, or is in response to the party's exercise" of the "right of free speech," "right to petition," or "right of association." Okla. Stat. tit. 12, § 1434(B). The statute's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 1430. And federal

district courts in Oklahoma have concluded the OCPA applies to state claims in federal court. *See KLX Energy*, 521 F. Supp. 3d at 1131; *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*, No. civ-17-003-F, 2018 WL 4861522, at *16 n.8 (W.D. Okla. Apr. 30, 2018).

The OCPA applies to Mastriano's defamation and false light claims for at least three reasons. First, the OCPA protects Gregory's speech about "a public official or public figure." Okla. Stat. tit. 12, § 1431(7)(d) (defining "Matter of public concern" under the OCPA). As a state senator and former candidate for higher office, Mastriano is *both* a public official and a public figure. SAC pp. 2–4, ¶ 7; *see, e.g.*, *Yates*, 523 P.3d at 76 (affirming public officials are categorically "public figures" under Oklahoma law).

Second, Gregory's speech relates to "community well-being," *see* Okla. Stat. tit. 12, § 1431(7)(b), as the academic community and wider public have strong interests in protecting historians who critically analyze one another's scholarship. *Cf.* § I.A., *supra* (discussing the importance of academic freedom and debate). As the Supreme Court explained in *Sweezy v. New Hampshire*, "[t]eachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die." 354 U.S. 234, 250 (1957). The Supreme Court has also broadly interpreted what constitutes speech on matters of public concern. *See Snyder v. Phelps*, 562 U.S. 443, 453 (2011). And media coverage surrounding Gregory's criticism of Mastriano's scholarship confirms the community cares deeply about the integrity of a public official's claims on matters of historical importance.

Third, Gregory's speech, as criticism of Mastriano's book and other publications, relates to "a good … in the marketplace." Okla. Stat. tit. 12, § 1431(7)(e). Mastriano admits

this throughout his Amended Complaint. For instance, Mastriano repeatedly alleges that Gregory's speech was an effort to "devalue" his book in the marketplace. *See, e.g.*, SAC ¶¶ 31, 41, 91. Because Mastriano bases his defamation and false light claims on Gregory's criticism of his book, the OCPA applies.

Accordingly, because Mastriano's defamation and false light claims are "based on, relate[] to, or [are] in response to" his "right of free speech," the OCPA requires this Court to dismiss both counts unless Mastriano "establishes by clear and specific evidence a prima facie case for each essential element." Okla. Stat. tit. 12, § 1434(B–C). For the reasons discussed *supra*, § I, Mastriano fails to allege sufficient facts to support his defamation or false light claims—let alone carry his burden under the OCPA of establishing each element "by clear and specific evidence." *Id.* at § 1434(C). The statute of limitations also requires OCPA dismissal of Mastriano's defamation claim. *Id.* § 1434(D) (a court "shall" dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the claim"); *see* § I.B., *supra*. Oklahoma law grants Gregory's speech another layer of protection in the form of the OCPA, and this Court should dismiss Mastriano's defamation and false light claims under it.

## II. Public Debate Among Historians Is Protected Speech and Cannot Violate Civil RICO or Antitrust Law.

Mastriano's claims against Gregory have never amounted to more than a defamation suit that runs headlong into the First Amendment and the OCPA. With no viable claim under the law, and even after being warned by the district court about the "confines of Rule 11," Mastriano again brings implausible claims under the RICO Act and the Sherman

Antitrust Act. *Mastriano*, 2025 WL 392731, at *4. But laws intended to stop racketeering and protect commerce have no place in a historical debate. And Mastriano's Second Amended Complaint does not cure his prior failure to plausibly allege a single element of these claims. In short, Mastriano's attempt to plead around the First Amendment fails.

### A. Mastriano's claims that Gregory violated, and conspired to violate, civil RICO cannot satisfy Rule 12(b)(6).

Mastriano fails to plead a private RICO cause of action because he has not plead sufficient facts to establish even one of the necessary elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Dalton v. City of Las Vegas*, 282 F. App'x 652, 654 (10th Cir. 2008) (cleaned up); *see also* 18 U.S.C. § 1964(c).

#### 1. Mastriano has not plausibly alleged that Defendants committed a single predicate act, let alone a "pattern" of racketeering activity.

Gregory's alleged criticism of Mastriano's scholarship does not satisfy RICO's pattern of racketeering activity, which requires Mastriano allege "that the defendants committed at least two predicate acts (violations of criminal statutes listed in RICO, § 1961(1)) and that the plaintiff has suffered injury to his business or property as a result." *Deck v. Engineered Laminates*, 349 F.3d 1253, 1255 (10th Cir. 2003). Nor does Mastriano plead sufficient facts to meet each element of a predicate criminal act. *Tal*, 453 F.3d at 1257–60; *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

Mastriano's failure to plead this "pattern" of racketeering activity is fatal because this requirement is the heart of any RICO claim. 18 U.S.C. § 1961(4). "Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." *Foster v. Wintergreen Real Estate Co.*, 363 F. App'x 269, 273 (4th

Cir. 2010) (internal quotations omitted). Federal courts have used the "pattern" element as a means "to trim off the excesses of a civil RICO claim" and distinguish proper RICO claims from "garden variety" fraud cases. *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990); *see also ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 181 (4th Cir. 2002).

Yet Mastriano makes little effort to establish this critical element. He does not plead *any* facts to support his claim that Gregory allegedly committed mail or wire fraud, let alone a pattern in concert with Defendants. SAC ¶¶ 49, 50. In fact, of the "predicate acts" Mastriano lists in Count One, the *single* act attributable to Gregory is "[s]peaking to the American press criticizing and discussing [Mastriano's] dissertation." *Id*. at ¶ 76. Public criticism is not a RICO predicate act—it is protected speech. And Mastriano's assertions that Gregory's statements constitute "mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343," *e.g.*, *id.* ¶ 78, are "conclusory allegations without supporting factual averments" insufficient to state a claim. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That is particularly problematic here, as fraud must meet Rule 9(b)'s pleading requirements, which in the RICO context are "especially crucial given the threat of treble damages and injury to reputation which attend RICO claims." *Stinson v. Maynard*, No. 07-CV-387-WFD, 2008 WL 4525399, at *2 (W.D. Okla. Sept. 30, 2008), *aff'd sub nom. Stinson ex rel. U.S. v. Maynard*, 341 F. App'x 413 (10th Cir. 2009) (internal quotations and citations removed) (citing *Andrews v. Heaton,* 483 F.3d 1070, 1076 (10th Cir. 2007)).

Mastriano's "Civil RICO Case Statement," included in his Second Amended Complaint, only underscores why his claims lack merit. What he labels a pattern of predicate acts amounts to protected speech: Gregory sent emails from the United States to

Canada identifying errors in Mastriano's scholarship and made public statements about those errors. ECF No. 188-8 at 10. Calling these actions "wire fraud" and "mail fraud" does not make it so, let alone remove them from the First Amendment's protection based simply on an allegation that Gregory's statements were false. *United States v. Alvarez*, 567 U.S. 709, 722–23 (2012) (plurality op.) (distinguishing false statements generally from fraud).

Fraud is not, as Mastriano claims, saying something false online. *Legally*, it is a "knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud*, Black's Law Dictionary (12th ed. 2024). This requires not just a false statement, but one made to persuade another to "part[] with money, or property of value in reliance upon the defendant's representations." William L. Prosser, *Handbook of the Law of Torts* § 105, at 684 (4th ed. 1971). Even accepting every one of Mastriano's factual allegations as true, it does not approach this most basic definition. Mastriano cannot merely "ma[k]e bald allegations on each … element[] of fraud," but must "state the circumstances surrounding the alleged fraud with particularity." *Id.* His failure to do so dooms his RICO claim.

**2. Mastriano has not plausibly alleged facts to support the existence of a common "enterprise."**

Mastriano also fails to allege any facts about a "relationship" or "common interest" among Gregory and his co-defendants, as required to plead a RICO "enterprise." *Boyle v. United States*, 556 U.S. 938, 946 (2009). A RICO enterprise must be a group of individuals or entities that are "associat[ed]-in-fact" with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit

these associates to pursue the enterprise's purpose." *Id.*; *see also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016) (applying this definition of "enterprise"). Mastriano fails to allege "both interpersonal relationships and a common interest" among those alleged to comprise the "enterprise." *Boyle*, 556 U.S. at 946.

Instead, accepting each of Mastriano's factual allegations as true, Defendants' interests concerning Mastriano's scholarship directly *conflict*. Apart from Gregory and two co-defendants, each Defendant is directly affiliated with the University where Mastriano received his doctorate. As Mastriano suggests, Gregory could benefit—albeit legitimately and *lawfully*—from criticizing Mastriano's historical narrative on Sgt. York. SAC ¶ 41. The same cannot be said about the University and its affiliates. The University granted Mastriano his doctorate based on the same flawed research Gregory now criticizes. Thus, Gregory's criticism of Mastriano's scholarship impugns the University's doctoral policies and procedures; it does not benefit the University in any way. Without alleging facts to support that Gregory and his co-defendants had a common purpose and an ongoing relationship sufficient to permit them to pursue it, Mastriano's RICO claim fails for this reason as well. *See, e.g.*, *Boyle*, 556 U.S. at 946; *George*, 833 F.3d at 1248.

**3. Mastriano's highly speculative injuries cannot sustain a RICO claim.**

Mastriano fails another essential RICO element because he has not plausibly alleged that "his business or property" has suffered injury as a direct result of defendants' alleged racketeering activity. *Tal*, 453 F.3d at 1270. Like all RICO elements, the causation and injury requirements present a high bar: the injury "must be tangible, quantified, realized

(that is, actual and not hypothetical), non-speculative, and non-contingent." *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1267 (D. Colo. 2022). Mastriano cannot merely assert that an injury occurred but must allege "the injuries [he] suffered as a result" in "detail." *George*, 833 F.3d at 1256. And even where, unlike here, a plaintiff adequately pleads two or more predicate acts, if he "do[es] not plead a direct link between [his] property loss and a predicate RICO act by Defendants," the RICO claim fails. *Sensoria*, 581 F. Supp. 3d at 1267. Mastriano's Second Amended Complaint satisfies none of these requirements.

Mastriano's alleged injuries are conclusory and highly speculative. Mastriano alleges he "has been injured in his personal, intangible and tangible property interests, his business and in his economic opportunity in that he has lost economic interests in his books, in his teaching and speaking, in his University professorship opportunities, in his future book and movie/tv script opportunities and in his academic and property interests in his Ph.D." SAC ¶ 84. Elsewhere, Mastriano alleges that he was injured by the cancellation of speaking engagements, lost opportunities for adjunct teaching positions, and the termination of media consulting contacts for documentaries about WWI. SAC ¶ 69. Even if these purported injuries were verifiable, Mastriano alleges nothing to substantiate or quantify them. Nor does Mastriano advance any factual allegations suggesting a RICO violation caused these injuries. He only vaguely alleges that "Defendants' conduct" caused these alleged injuries. *Id.* These types of generalized allegations highlight why Mastriano's RICO claim is merely conclusory, and this Court should dismiss it.

#### 4. Mastriano's RICO conspiracy claim fails because he has not alleged facts to support that Gregory knowingly joined a conspiracy to violate RICO.

Mastriano does not allege facts necessary to support a RICO conspiracy claim against Gregory that (1) a conspiracy or agreement existed between Gregory and one or more persons "to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity"; (2) Gregory "deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose"; and (3) Gregory agreed that someone "would commit at least two of the racketeering acts detailed in the indictment." *United States v. Harris*, 695 F.3d 1125, 1131 (10th Cir. 2012). Instead, he offers only a series of bald assertions and legal conclusions that cannot satisfy Rule 12(b)(6). *See Hall*, 935 F.2d at 1110; *see also Twombly*, 550 U.S. at 570.

For instance, instead of factual allegations showing Gregory knowingly entered an agreement to violate RICO, Mastriano offers several conclusory statements:

- "The Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violat[e] 18 U.S.C. 1962(c)." SAC ¶ 93.
- "Defendants are liable for a RICO conspiracy as they knew or should have known that additional American antagonists with whom they joined in confederacy were part of a network of competing scholars who saw the elections of Col. Mastriano as their opportunity to file complaints with and push UNB in publicly defaming him, committing extortion and election interference, so that he might drop out of the election or lose." *Id.* ¶ 94.
- "The conspirator Defendants … knew of the faculty's plan to defame, destroy and interfere with Col. Mastriano's election, and that he was standing for office when they did so, and that they affixed their signatures to the letter(s) and then published the same on the mails and wire of the United States and into the United States and Pennsylvania news media,

> disseminating their conspiracy to interfere with and destroy his election." *Id.* ¶ 95.

Not only do these allegations fail to support a RICO conspiracy claim, Mastriano's exhibits and arguments affirmatively disprove some of them. For instance, the letter Mastriano references and attaches as Exhibit 4 disproves his claim that Gregory ever "affixed [his] signature[] to the letter." ECF No. 188-5. Nor does Mastriano allege facts to suggest Gregory had any involvement in, or even knowledge of, that letter. And in any case, neither election interference nor defamation—even properly alleged (which they are not here)—constitute predicate acts under RICO. 18 U.S.C. § 1961(1). The Court should dismiss Mastriano's RICO conspiracy claim for these reasons as well.

### B. Academic debate is not an unreasonable restraint on trade under the Sherman Antitrust Act.

Mastriano cannot satisfy the elements of his "unreasonable restraint on trade" claim in Count 3 "under Section 1 of the Sherman Act, 15 U.S.C. § 1," which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Even accepting each of Mastriano's factual allegations as true, Gregory's critiques of Mastriano's work and proffering of alternative viewpoints *advanced* and *contributed to* competition—they did not suppress it. Criticizing a competitor's work is not unlawful conduct, let alone an unlawful restriction on trade—it's protected speech.

**1. Mastriano's unreasonable restraint on trade claim fails because he did not allege any adverse effect on competition in general, rather than on his business interests.**

Mastriano's allegations that Defendants' actions harmed his business interests, rather than commerce in general, cannot support an antitrust claim. The Sherman Act requires Mastriano to plead a "contract, combination, or conspiracy among two or more independent actors" that "unreasonably restrains trade" and "substantially affects[] interstate commerce." *Budicak, Inc. v. Lansing Trade Grp., LLC*, 452 F. Supp. 3d 1029, 1052 (D. Kan. 2020). When a business venture "fails because of legitimate competitive forces, it is not entitled to recover under the antitrust laws." *Tal*, 453 F.3d at 1258.

While Mastriano concludes that Gregory's actions impacted "trade and commerce internationally and intrastate," SAC ¶ 101, every alleged fact pertains to his business interests and no more. Mastriano alleges, for instance, that Defendants' actions served to "unreasonabl[y] restrict Col. Mastriano's use of his PhD" and "destroy Plaintiff's reputation through false allegations and allocate market share among themselves by excluding Plaintiff." *Id.* ¶¶ 102, 105. He further alleges that Defendants "conspired to restrain trade and commerce internationally and intrastate" by publicly undermining Mastriano's dissertation. SAC ¶¶ 101–103.[11]

[11] Mastriano asserts that the "UNB's economic opportunities would advance in the face of smears of one of its students' [*sic*] Col. Mastriano." SAC ¶ 101. As described *supra*, II.B., this claim is nonsensical. Criticisms levied against Mastriano's scholarship—and particularly against his "PhD and thesis" [*sic*], *id.*—necessarily impugn the UNB's doctoral program, which enabled Mastriano to receive a Ph.D. on the basis of faulty research.

Even if these purported injuries exist, Mastriano's allegations fail to tie them to any unlawful conduct—and in any case, they are not actionable under antitrust law. Instead, they reflect an impact on Mastriano's personal business interests, i.e., the "use of his PhD," "potential movie deals," and "speaking opportunities." *Id.* ¶¶ 102, 103. Because antitrust laws are, by design, "concerned with effects on *consumers* rather than *competitors*," Mastriano cannot maintain a claim based solely on harm to his own business interests. *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1310 (10th Cir. 2017) (emphasis added). His conclusory allegations that Defendants' conduct "reduc[ed] the number of competitors" and "reduc[ed] consumer choice" lack any alleged facts showing an impact on anyone but himself. SAC ¶ 106. And after spending nearly two years seeking to silence another scholar's criticism, his assertion that *Gregory's* protected speech "chill[ed] academic discourse and innovation" is unserious. *Id.*

**2. Defendants did not unlawfully tie two products to exploit a market in violation of the Sherman Antitrust Act.**

None of Mastriano's factual allegations support his second Sherman Act claim (Count Four) for "unlawful tying," and the facts he does allege directly undermine this theory of liability. Antitrust law proscribes unreasonable restraints on trade through a "tying arrangement." *Abraham*, 461 F.3d at 1265. This is "an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product." *Id.* at 1263. These agreements are unlawful because the seller denies "competitive access to the tied product market" by leveraging "the tying product market, and forc[ing] buyers to forego free choice between sellers." *Id.*

To successfully plead an unlawful tying agreement, a plaintiff must first "establish the existence of two separate products." *Id.*; *see also Sports Racing Servs., Inc. v. Sports Car Club of Am.*, 131 F.3d 874, 886 (10th Cir. 1997); *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992). Second, a plaintiff must show a relationship between "the demand for the two items," not simply their "functional relation." *Abraham*, 461 F.3d at 1264 (cleaned up.) Third, a plaintiff must establish that "the seller's exploitation of its control over the tying product [] force[d] the buyer []to [] purchase [] the tied product." *Id.* at 1265.

Mastriano alleges "Unlawful Tying of PhD to Elections and Books Sales," SAC Count IV, but his "PhD" and "Elections" are neither products nor tied together, making his "unlawful tying" claim as implausible as his others. Even if the Court very liberally construes Mastriano's Second Amended Complaint as alleging the unlawful tying of his and Gregory's books on Sgt. York (the only two "products" he alleges), the claim still fails because Defendants have no control over both books in any way. *Chase Mfg., Inc. v. Johns Manville Corp.*, 84 F.4th 1157, 1179–80 (10th Cir. 2023) ("The thrust of an unlawful tying claim is leveraging *control* over a tying-product market to force a customer to buy another product it likely wouldn't have bought.").

There are no allegations to suggest that a single seller controls the sale of each book (one does not), much less exploits that control to force buyers to purchase both together.[12]

[12] Getting over this "hurdle" means demonstrating "*significant* market power—more than the mere ability to raise price only slightly, or only on occasion, or only to a few of a seller's many customers." *Chase Mfg.*, 84 F.4th at 1180.

And Mastriano's repeated assertions that his and Gregory's books are competitors directly undermine this notion. In fact, Mastriano refers to himself as Gregory's "primary competition[,]" alleging that Gregory "was publishing and marketing a competing book" and "seeking to steal the market share." SAC ¶¶ 110, 80. Mastriano's entire theory of damages—i.e., that Gregory's actions improperly *harmed* the marketability of Mastriano's book—negates this claim. Either Mastriano and Gregory are marketplace competitors, or their books are jointly controlled and unlawfully tied such that the purchase of one ensures the purchase of the other. It cannot be both. The Court should dismiss this claim, too.

**CONCLUSION**

Mastriano cannot identify any false statement made by Gregory—let alone one made with actual malice. With no viable defamation or false light claim under the law, Mastriano tried and failed to stretch the RICO and Sherman Antitrust Acts beyond recognition to silence critics of his scholarship. His Second Amended Complaint does nothing to cure these fatal deficiencies. For these reasons, Defendant James Gregory respectfully requests this Court dismiss claims One, Two, Three, Four, Nine, and Ten of Plaintiff's Amended Complaint with prejudice under Rule 12(b)(6). The Court should also dismiss the defamation and false light claims under the OCPA, sanction Mastriano for this SLAPP, and award Gregory attorneys' fees for this motion. Okla. Stat. tit. 12, § 1438.

Respectfully submitted,

*/s/ Sara Berinhout*
SARA BERINHOUT*
MA Bar No. 703217
GREG HAROLD GREUBEL*

Robert D. Nelon, OBA #6610
Hall, Estill, Hardwick, Gable,
Golden & Nelson, P.C.
100 North Broadway, Suite 2900

PA Bar No. 321130; NJ Bar No. 171622015; CA Bar No. 343028; IA Bar No. 201452
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
sara.berinhout@fire.org
greg.greubel@fire.org

Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

* Admitted *Pro Hac Vice*