# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

*PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council
of Canada, Paul Mazerolle, President and
Vice-Chancellor, University of New
Brunswick, Canada; David MaGee, Vice-
President, Research; Drew Rendall, Dean,
Graduate Studies; Jeff Brown; Cindy Brown;
Stephen Dutcher; Sean Kennedy; Erin
Morton; Matthew Sears; Lee Windsor;
Stefanie Hunt-Kennedy; Carolyn MacDonald;
Sasha Mullaly; Lisa Todd; Sarah-Jane Corke;
Bonnie Huskins; Elizabeth Mancke; Janet
Mullin; Angela Tozer; Margaret MacMillan;
Robert Bothwell; John Ferris;
  -  *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

*DEFENDANTS*.

Case No.: 5:24-cv-00567-F

Assigned to the Hon. Bernard M.
Jones

**THE INDIVIDUAL UNIVERSITY
DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT, BRIEF
IN SUPPORT, AND JOINDER TO
UNB'S MOTION TO DISMISS
PLAINTIFF'S SECOND
AMENDED COMPLAINT**

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................... 1

III.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE
      INDIVIDUAL UNIVERSITY DEFENDANTS ......................................................... 2

   A.  Sovereign Immunity Applies to the Individual University Defendants Allegedly
       Affiliated With UNB Because They Were Sued in Their Official Capacity ............ 2

      1.  The faculty members were sued in their official capacity .................................. 3

      2.  The committee members were sued in their official capacity ............................. 5

      3.  A ruling against any individual UNB Defendant would have the effect of
          enforcing a rule of law against UNB ................................................................. 6

   B.  In the Alternative, Sovereign Immunity Applies to UNB, and Claims Against the
       Individuals Allegedly Affiliated with UNB Cannot Go Forward ............................ 7

IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL
      UNIVERSITY DEFENDANTS ............................................................................... 9

   A.  This Court Does Not Have General Jurisdiction Over the Individual University
       Defendants ........................................................................................................ 10

   B.  This Court Does Not Have Specific Jurisdiction Over the Individual University
       Defendants ........................................................................................................ 11

      1.  The Individual University Defendants do not have sufficient minimum contacts
          with the forum ................................................................................................ 11

      2.  The exercise of personal jurisdiction over the Individual University Defendants
          offends traditional notions of fair play and substantial justice ........................ 13

V.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS TO
CERTAIN INDIVIDUAL DEFENDANTS FOR INSUFFICIENT SERVICE OF
PROCESS ............................................................................................................ 17

VI.    PLAINTIFF FAILS TO STATE A CLAIM ........................................................... 18

    1.    Plaintiff has failed to state a claim in support of a RICO violation in Counts
One and Two ..................................................................................................... 19

    2.    Plaintiff fails to plead a Sherman Act violation in Counts Three and Four ....... 20

    3.    Plaintiff fails to plead a fraud claim in Count Five ............................................ 21

    4.    Plaintiff fails to plead an aiding and abetting claim in Count Six ...................... 23

    5.    Plaintiff fails to plead a breach of contract claim in Count Seven ..................... 24

    6.    Plaintiff fails to plead a negligence claim in Count Eight .................................. 25

    7.    Plaintiff fails to plead a defamation claim in Count Nine .................................. 26

    8.    Plaintiff fails to plead a false light invasion of privacy claim in Count Ten ...... 29

VII.    CONCLUSION ..................................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. BOKF, NA,*
    471 F. Supp. 3d 1181 (N.D. Okla. 2020) ..................................................... 23

*Andrews v. Heaton,*
    483 F.3d 1070 (10th Cir. 2007) ................................................................. 19

*Asahi Metal Indus. Co. v. Superior Court of Calif.,*
    480 U.S. 102 (1987) ........................................................................... 11, 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................. 18

*Barrett v. Tallon,*
    30 F.3d 1296 (10th Cir. 1994) ................................................................. 21

*Bayro v. State Farm Fire and Cas. Co.,*
    No. Civ-14-1084-D, 2015 WL 4717166 (W.D. Okla., Aug. 7, 2015) ........................ 24

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................. 18

*Benton v. Cameco Corp.,*
    375 F.3d 1070 (10th Cir. 2004) ............................................................ 14-15

*Bowman v. Presley,*
    212 P.3d 1210 (Okla. 2009) ..................................................................... 21

*Boyle v. United States,*
    556 U.S. 938 (2009) ................................................................................. 19

*Bradshaw v. Uber Tech., Inc.,*
    No. CIV-16-388-R, 2017 WL 2455151 *5 (W.D. Okla. June 6, 2017) ..................... 25

*Brickner v. Gooden,*
    525 P.2d 632 (Okla. 1974) ....................................................................... 18

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,*
    429 U.S. 477 (1977) ................................................................................. 21

*Bruton v. Oklahoma Dept. of Corr.*,
  2019 WL 3413853 (W.D. Okla. July 29, 2019) ............................................................. 30

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ...................................................................................................... 11

*Bush v. Gore*,
  531 U.S. 98 (2000) ........................................................................................................ 28

*Calder v. Jones*,
  465 U.S. 783 (1984) ...................................................................................................... 11

*Cohimia v. Ardent Health Services, L.L.C.*,
  448 F. Supp. 2d 1253 (N.D. Okla. 2006) ...................................................................... 26

*Colbert v. World Pub. Co.*,
  747 P.2d 286 (Okla. 1987) ............................................................................................ 30

*Cooper v. Bondoni*,
  841 P.2d 608 (Okla. Ct. App. 1999) ............................................................................. 23

*Cory v. Aztec Steel Bldg., Inc.*,
  468 F.3d 1226 (10th Cir. 2006) ..................................................................................... 10

*Deck v. Engineered Laminates*,
  349 F.3d 1253 (10th Cir. 2003) ..................................................................................... 19

*Digital Design Grp., Inc. v. Info. Builders, Inc.*,
  24 P.3d 834 (Okla. 2001) .............................................................................................. 24

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ..................................................................................... 12

*Eighteen Seventy, LP v. Jayson*,
  32 F.4th 956 (10th Cir. 2022) ....................................................................................... 10

*Fed. Ins. Co. v. Indeck Power Equip. Co.*,
  No. CIV-15-491, 2016 WL 3676803 (W.D. Okla. July 7, 2016) ................................. 18

*Gallucci v. Phillips & Jacobs, Inc.*,
  613 A.2d 294 (Pa. Super. Ct. 1992) .............................................................................. 29

*Hill v. Stowers*,
  680 S.E.2d 66 (W. Va. 2009) ........................................................................................ 28

*Hood v. Am. Auto Care, LLC,*
   21 F.4th 1216 (10th Cir. 2021) .................................................................. 10

*HomeStake Prod. Co. v. Talon Petroleum Co.,*
   907 F.2d 1012 (10th Cir. 1990) ................................................................. 12

*Jackson v. GreerWalker, LLP,*
   2018 WL 894873 (N.D. Okla. Feb. 14, 2018) ........................................... 23

*Kentucky v. Graham,*
   473 U.S. 159 (1985) .................................................................................. 2-3

*Koch v. Koch Indus.,*
   203 F.3d 1202 (10th Cir. 2000) ................................................................. 21

*Lane v. Simon,*
   495 F.3d 1182 (10th Cir. 2007) ................................................................. 19

*McCormack v. Oklahoma Pub. Co.,*
   613 P.2d 737 (Okla. 1980) ........................................................................ 30

*Melea, Ltd. v. Jawer SA,*
   511 F.3d 1060 (10th Cir. 2007) ................................................................. 12

*Mohammadi v. Islamic Republic of Iran,*
   947 F. Supp. 2d 48 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015) ........ 3

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada,*
   149 F.3d 1086 (10th Cir. 1998) ............................................... 10-11, 14-16

*Paccar Int'l., Inc. v. Com. Bank of Kuwait, S.A.K.,*
   757 F.2d 1058 (9th Cir. 1985) ................................................................... 16

*Phillips Univ. Legacy Found., Inc. v. Charles H Bentz Assocs., Inc.,*
   No. CIV-09-408-R, 2012 WL 12861099 (W.D. Okla. Mar. 1, 2012) .......... 24

*Republic of Philippines v. Pimentel,*
   553 U.S. 851 (2008) .................................................................................... 7

*Richardson v. Att'y Gen. of the Brit. Virgin Islands,*
   No. CV 2008-144, 2013 WL 4494975 (D.V.I. Aug. 20, 2013) .................... 3

*Roberts v. Wamser,*
   883 F.2d 617 (8th Cir. 1989) ..................................................................... 28

*Rudman v. Oklahoma ex rel. Bd. of Regents for the Reg'l Univ. Sys. of Oklahoma*,
No. CIV-22-0091-F, 2022 WL 17083406 (W.D. Okla. Nov. 18, 2022) ............... 16-17

*Rush v. Savchuk*,
444 U.S. 320 (1980) ................................................................................................ 11

*Samantar v. Yousuf*,
560 U.S. 305 (2010) .......................................................................................... 2, 3, 7

*Skidmore v. Gilbert*,
No. 20-cv-06415-BLF, 2022 WL 464177 (N.D. Cal. Feb. 15, 2022) ........................ 28

*Starks v. Tula Life, Inc.*,
684 F.Supp.3d 941 (D. Neb. 2023) .............................................................................. 28

*Stevens v. Tillman*,
855 F.2d 394 (7th Cir. 1988) ...................................................................................... 27

*Sturgeon v. Retherford Publications, Inc.*,
987 P.2d 1218 (Okla. Civ. App. Div. 4, 1999) ........................................................... 26

*Systemcare, Inc. v. Wang Laboratories Corp.*,
117 F.3d 1137 (10th Cir. 1997) ................................................................................. 20

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ........................................................................... 19-22

*Tannous v. Cabrini Univ.*,
697 F.Supp.3d 350 (E.D. Pa. 2023) ........................................................................... 27

*Thacker v. Cowling*,
473 P.3d 518 (Okla. Civ. App. 2020) ........................................................................ 29

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*,
488 F.3d 1282 (10th Cir. 2007) ........................................................................... 14, 16

*TJGEM LLC v. Republic of Ghana*,
26 F. Supp. 3d 1 (D.D.C. 2013), *aff'd*, No. 14-7036, 2015 WL 3653187
(D.C. Cir. June 9, 2015) ............................................................................................... 7

*TJGEM LLC v. Republic of Ghana*,
No. 14-7036, 2015 WL 3653187 (D.C. Cir. June 9, 2015) ..................................... 7-9

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) ................................................................................. 27

*TV Comm'ns Network, Inc. v. Turner Network Television, Inc.*,
   964 F.2d 1022 (10th Cir. 1992) ................................................................. 20

*Wofford v. Eastern State Hospital*,
   795 P.2d 516 (Okla. 1990) ...................................................................... 25

*World–Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................... 11

*XMission, L.C. v. PureHealth Research*,
   105 F.4th 1300 (10th Cir. 2024) ........................................................ 11, 12

*Zeran v. Diamond Broadcasting, Inc.*,
   203 F.3d 714 (10th Cir. 2000) ................................................................. 30

## Statutes

18 U.S.C. § 1961 ..................................................................................... 19

18 U.S.C. § 1962 ..................................................................................... 19

28 U.S.C. § 1602 ....................................................................................... 2

42 Pa. C.S.A. § 5523 ............................................................................... 29

## Federal Rules of Civil Procedure

Fed. R. Civ. P. 8 ..................................................................................... 20

Fed. R. Civ. P. 9 ........................................................................... 19, 20, 22

Fed. R. Civ. P. 12 ..................................................... 1-2, 7, 17-18, 19, 22

Fed. R. Civ. P. 19 ............................................................................... 2, 7-9

## Restatements

Restatement (Second) of Torts § 558 (1977) ....................................... 26

Restatement (Second) Torts § 566 (1977) ........................................... 27

## Secondary Sources

Francis C. Amendola, *et al.*, 17 C.J.S. Contracts § 61 (May 2024) ................................. 24

NOW COME the University of New Brunswick's ("UNB") alleged faculty and committee members Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, Angela Tozer, Margaret MacMillan, Robert Bothwell, and John Ferris (these individuals are collectively referred to as "Individual University Defendants"), by their undersigned counsel, and respectfully submit this Motion to Dismiss the Second Amended Complaint of Plaintiff Douglas Mastriano ("Plaintiff"), Brief in Support, and Joinder to the Motion to Dismiss filed by UNB. (Doc. # 195).  For the reasons stated herein and in UNB's Motion to Dismiss, which are incorporated by reference, this Court should dismiss the Second Amended Complaint *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).  In support of their Motion, the Individual University Defendants state as follows:

## I.    <u>INTRODUCTION</u>

The Individual University Defendants hereby join and adopt the arguments and statements set forth in Section I of UNB's Motion to Dismiss as though fully set forth herein. (Doc. # 195, ECF pp. 9-10).

## II.    <u>STATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

The Individual University Defendants hereby join and adopt the arguments and statements set forth in Section II of UNB's Motion to Dismiss as though fully set forth herein. (Doc. # 195, ECF pp. 10-15).  The Individual University Defendants do not admit

that the facts alleged in Plaintiff's Second Amended Complaint are true and expressly reserve the right to challenge these facts in this litigation, including in discovery and trial.

## III.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE INDIVIDUAL UNIVERSITY DEFENDANTS

As discussed in Section III of UNB's Motion to Dismiss, and as adopted fully herein, UNB is an instrumentality of Canada and the Canadian Province of New Brunswick. (Doc. # 195, ECF pp. 15-34).  Therefore, UNB is immune from this Court's subject matter jurisdiction pursuant to the terms of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.* ("FSIA").  (Doc. # 195, ECF pp. 15-34).  For the reasons discussed below, the Individual University Defendants are *also* immune from this Court's subject matter jurisdiction, and therefore the claims against them must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  In the alternative, pursuant to Fed. R. Civ. P. 19(b), the claims against the Individual University Defendants must be dismissed because they cannot go forward without UNB – which is immune from this Court's jurisdiction so cannot be joined.

### A.  Sovereign Immunity Applies to the Individual University Defendants Allegedly Affiliated With UNB Because They Were Sued in Their Official Capacity

Sovereign immunity applies to individuals who are sued in their official capacity. *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010).  Whereas *personal-capacity* suits seek to impose personal liability upon a government official for actions he takes under color of state law, an *official-capacity* suit is only another way of pleading an action against an entity of which an officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

Official-capacity suits against agents of foreign governments should be treated as actions against the foreign state itself, as the state is the real party in interest. *Samantar*, 560 U.S. at 325 (citing *Kentucky*, 473 U.S. at 166); *see also Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015) (where plaintiff alleges that actions taken by individual defendants were actions of a foreign state, case must be dismissed because the foreign state is the real party in interest).

By way of example, in *Richardson v. Att'y Gen. of the Brit. Virgin Islands*, No. CV 2008-144, 2013 WL 4494975, at *1 (D.V.I. Aug. 20, 2013), the plaintiffs were operating a boat when they were stopped by a customs officer of the Government of the British Virgin Islands. The plaintiffs sued the customs officer for actions he allegedly took while arresting the plaintiffs, operating their vessel, and operating his government issued vessel. *Id*. at *16. The District Court concluded that the alleged actions that gave rise to the complaint were undertaken within the scope of the customs officers' duties and thus fit neatly within the contours of official-act immunity. *Id*. at *16-17.

### 1. The faculty members were sued in their official capacity

In this case, Plaintiff alleges that some of the Individual University Defendants are "… history professors, faculty or instructors at the University of New Brunswick and each have committed the violations of law alleged herein and have signed the fraudulent letter attached herewith as <u>Exhibit 4</u>."[1]  (Doc. # 188 at ECF p. 8).  Later in the Second Amended

---

[1] The professors, faculty members, and instructors who signed the letter are identified by Plaintiff in his Second Amended Complaint as Jeffrey Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-

Complaint, Plaintiff links that letter to UNB's "investigation" of Plaintiff's PhD. (Doc. # 188 at ECF p. 10). The letter attached to Plaintiff's Second Amended Complaint reflects a UNB logo. (Doc. # 188-5 at ECF p. 2). In other words, according to Plaintiff, the Individual University Defendant faculty members who allegedly signed the letter are in this lawsuit because they are *UNB* employees who sent a letter with *UNB's* logo in connection with *UNB's* investigation of Plaintiff's PhD that was awarded by *UNB* for research that was performed at *UNB*.

Plaintiff seeks to hold the Individual University Defendant faculty members liable only as agents of UNB. For example, in connection with racketeering allegations, Plaintiff alleges that the Individual University Defendant faculty members joined in the alleged racketeering scheme to "advance their property interests [and] tuition enrollments." (Doc #188 at ECF p. 11). But individuals do <u>not</u> have "tuition enrollments." Universities like *UNB* have "tuition enrollments." Plaintiff alleges the existence of a contract only between himself and *UNB*. (*Id.* at ECF p. 45). Plaintiff alleges that the Individual University Defendant faculty members allegedly affiliated with UNB owe Plaintiff a duty of care only because *UNB* conferred a degree on Plaintiff and received payment for that degree. (Doc. *Id.* at ECF p. 47). Plaintiff alleges that the Individual University Defendant faculty members allegedly affiliated with UNB defamed Plaintiff by signing a letter that Plaintiff himself links to *UNB's* "investigation" of Plaintiff's PhD and which reflects a *UNB* logo. (*Id.* at ECF p. 10 and Doc. # 188-5 at ECF p. 2).

---

Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, The Estate of Elizabeth Mancke, Janet Mullin, and Angela Tozer.

However, there are no allegations in the Second Amended Complaint to suggest that the Individual University Defendant faculty members or any other individual did anything outside the scope of the official duties assigned to them by UNB. (*See, e.g.*, Doc. # 188 at ECF pp. 9-10, 12). In fact, there are no causes of action in the Second Amended Complaint that are pleaded only against the Individual University Defendant faculty members or any other individual allegedly affiliated with UNB; instead, any action pleaded against an individual is also pleaded against UNB. (*Id.* at ECF pp. 26, 29, 33, 36, 40-41, 45, 47, 49-50, 52). UNB is the real party in interest targeted by Plaintiff.

### 2. The committee members were sued in their official capacity

Likewise, Plaintiff also alleges in his Second Amended Complaint that other Individual University Defendants "… are members of the so-called 'investigatory commission' into Col. Douglas Mastriano's PhD work and as such have committed the violations of law alleged herein."[2] (*Id.* at ECF pp. 8-9). Later in the Second Amended Complaint, Plaintiff alleges that "Defendant UNB and the UNB defendants joined and advanced the scheme and enterprise to reopen the fraudulent 'investigation'…." (*Id.* at ECF p. 28). Plaintiff also alleges that "Defendants willful reopening, after 10 years and upon political and professional bias, Col. Mastriano's degree review process by way of the unlawful 'investigation committee' constituted a material breach of the agreements of UNB with Col. Mastriano." (*Id.* at ECF p. 46).

---

[2] The members of the "investigatory commission" identified by Plaintiff in his Second Amended Complaint are Margaret McMillian, Robert Bothwell, and John Ferris.

Like the Individual University Defendants in the faculty category, there are no allegations in the Second Amended Complaint to suggest that the Individual University Defendant committee members did anything outside the scope of the official duties assigned to them by UNB.  (*See, e.g.*, Doc. # 188 at ECF pp. 9-10, 12).  Again, there are no causes of action in the Second Amended Complaint that are pleaded only against the Individual University Defendant committee members or any other individual allegedly affiliated with UNB; instead, any action pleaded against an individual is also pleaded against UNB.  (*Id.* at ECF pp. 26, 29, 33, 36, 40-41, 45, 47, 49-50, 52).  Once more, UNB is the real party in interest targeted by Plaintiff.

### 3.  A ruling against any Individual UNB Defendant would have the effect of enforcing a rule of law against UNB

In the same vein, with respect to both the alleged faculty members and the alleged committee members, Plaintiff does not seek any damages from any individual allegedly affiliated with UNB that could be distinguished from the damages that Plaintiff seeks from UNB itself.  (*Id.* at ECF pp. 26, 29, 33, 36, 40-41, 45, 47, 49-50, 52).  Accordingly, a ruling against any individual allegedly affiliated with UNB would have the effect of enforcing a rule of law against UNB.

\*        \*        \*

Therefore, this is an *official-capacity* suit in which the claims against the Individual University Defendants should be treated as actions against UNB – the real party in interest. Common law immunity applies to the individuals allegedly affiliated with UNB, including the Individual University Defendants.  The individuals allegedly affiliated with UNB are

immune from this Court's subject matter jurisdiction, and therefore the claims against them must be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(1).

### B. In the Alternative, Sovereign Immunity Applies to UNB, and Claims Against the Individuals Allegedly Affiliated with UNB Cannot Go Forward

Even when a plaintiff names only a foreign official, it may be the case that the foreign state itself, its political subdivision, or an agency or instrumentality is a required party, because that party has an interest relating to the subject of the action and disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest. *Samantar*, 560 U.S. at 324 (citing Fed. R. Civ. P. 19). If this is the case, and the foreign entity is immune from suit under the FSIA, the District Court may have to dismiss the suit, regardless of whether the official is immune or not under the common law. *Id*. at 324-25. "[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008).

For example, in *TJGEM LLC v. Republic of Ghana*, 26 F. Supp. 3d 1, 3 (D.D.C. 2013), *aff'd*, No. 14-7036, 2015 WL 3653187 (D.C. Cir. June 9, 2015), the plaintiff was not awarded an anticipated construction contract in Accra, the capital city of the Republic of Ghana. The plaintiff sued, among others, the Republic of Ghana, the Accra Metropolitan Assembly, and two Ghanaian government officials. *Id*. The defendants moved to dismiss. *Id*. at *3-4. The District Court held that the Republic of Ghana and the Accra Metropolitan Assembly were both "foreign states" for the purposes of the FSIA because the Republic of

Ghana is a sovereign foreign state, and the Accra Metropolitan Assembly is a political subdivision of the Republic of Ghana. *Id*. at *7. Accordingly, the Republic of Ghana and the Accra Metropolitan Assembly were immune from suit pursuant to the FSIA, and the District Court lacked subject matter jurisdiction over the claims against them. *Id*. at *11.

With respect to the Ghanaian government officials, the District Court noted that there is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so. *Id*. at *13. The District Court found that the Republic of Ghana and the Accra Metropolitan Assembly, who could not be joined because they were immune from suit pursuant to the FSIA, had legitimate interests in the issues to be litigated in the case. *Id*. The District Court also found that because a Ghanaian official had been accused of corruption in plaintiff's action, resolution of that matter in an American court could compromise the interests held by the Republic of Ghana and the Accra Metropolitan Assembly. *Id*. Accordingly, the Republic of Ghana and the Accra Metropolitan Assembly were required parties under Fed. R. Civ. P. 19. The District Court held that "where a sovereign is a required party for the purposes of Rule 19, the case must be dismissed." *Id*. (citing *Pimentel*, 553 U.S. at 867). The U.S. Court of Appeals affirmed. *TJGEM LLC v. Republic of Ghana*, No. 14-7036, 2015 WL 3653187, at *2 (D.C. Cir. June 9, 2015).

Here, UNB is an instrumentality of Canada and the Canadian Province of New Brunswick, and therefore immune from this Court's subject matter jurisdiction pursuant to the terms of the Foreign Sovereign Immunities Act. Plaintiff's case against UNB cannot continue. However, UNB is unquestionably a required party under Fed. R. Civ. P. 19(a)(1)(B) because UNB has an interest relating to the subject of the action and disposing

of the action in UNB's absence may as a practical matter impair or impede UNB's ability to protect its interest.  Plaintiff alleges that the Individual University Defendants and the other individuals allegedly affiliated with UNB jointly committed racketeering, committed anti-trust violations, aided and abetted the breach of fiduciary duty, and defamed Plaintiff. It is self-evident that resolution of those highly inflammatory claims in an American court – without UNB's participation, which cannot continue – could compromise the interests held by UNB, the Province of New Brunswick, and/or Canada.

Accordingly, in the alternative, because UNB is required to be joined if feasible and cannot be joined, dismissal *with prejudice* of the claims against the Individual University Defendants and the other individuals allegedly affiliated with UNB is warranted under Fed. R. Civ. P. 19(b).  *See TJGEM*, 26 F. Supp. 3d at 13 ("where a sovereign is a required party for the purposes of Rule 19, the case must be dismissed.").

## IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL UNIVERSITY DEFENDANTS

If the Court agrees with the Individual University Defendants that they are entitled to FSIA immunity, then the Court's analysis of the claims against the Individual University Defendants is over and the Individual University Defendants must be dismissed for lack of subject matter jurisdiction. However, if the Court determines that adjudicating Plaintiff's claims against the Individual University Defendants is within the *subject matter jurisdiction* of the Court, then the Court must take the additional step of determining whether it has *personal jurisdiction* over the Individual University Defendants.

Plaintiff bears the burden of establishing that the court can exercise personal jurisdiction. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff must make a *prima facie* showing that jurisdiction exists. *Eighteen Seventy, LP*, 32 F.4th at 964. He has failed to do so.

## A.    This Court Does Not Have General Jurisdiction Over the Individual University Defendants

There are two types of personal jurisdiction: general and specific. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021). A court can exercise general jurisdiction over defendants who are "essentially at home" in the forum, as when an individual is domiciled in the State, or a corporation is incorporated or has its principal place of business there. (*Id.*). There are no allegations suggesting that the Individual University Defendants are "at home" in the Western District of Oklahoma, as all the Individual University Defendants are alleged to reside in Canada. (Doc. # 188 at ECF p. 8). As such, general jurisdiction does not apply.[3]

---

[3] Plaintiff also alleges that, when required by the ends of justice, 18 U.S.C. § 1965(b) authorizes *nationwide* service of process in RICO actions to confer personal jurisdiction over a defendant in any judicial district as long as the defendant has minimum sufficient contacts with the United States. (Doc. # 188 at ECF p. 6). However, Plaintiff does not allege that any of the Individual University Defendants reside in a judicial district of the United States and they were obviously not served in the United States. (*Id.* at ECF p. 8). Therefore, RICO's nationwide service of process provision cannot provide the statutory basis for personal jurisdiction in this case. *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006).

### B.    This Court Does Not Have Specific Jurisdiction Over the Individual University Defendants

A specific jurisdiction analysis involves a two-step inquiry. First, a court must consider whether defendants have minimum contacts such that they should reasonably anticipate being hauled into court there. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, if the defendant's actions create sufficient minimum contacts, a court must then consider whether the exercise of personal jurisdiction over the defendants would offend the traditional notions of fair play and substantial justice. *OMI*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)).

### 1.    The Individual University Defendants do not have sufficient minimum contacts with the forum

To establish that a defendant's contacts with a forum are such that they should reasonably anticipate being hauled into court here, a plaintiff must establish that the defendant purposely directed its activities at residents of the forum. *See XMission, L.C. v. PureHealth Research*, 105 F.4th 1300, 1308 (10th Cir. 2024). A defendant does not subject itself to jurisdiction in a forum simply because it worked in concert with another defendant having forum contacts; its own purposeful availment of the forum is required. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Specific jurisdiction over multiple defendants must be assessed separately for each defendant. *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (the plaintiff has the burden of

establishing that the personal jurisdiction requirements are met as to each defendant).[4]

Accordingly, Defendant Gregory's alleged connections to Oklahoma, or even the

Individual University Defendant's alleged communications with Defendant Gregory, are

not enough to establish specific jurisdiction over the Individual University Defendants. *See*

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1070 (10th Cir. 2007) (the mere presence of one

alleged co-conspirator in the forum did not automatically create personal jurisdiction over

the other alleged co-conspirator).

Specific jurisdiction does not attach as a result of random, fortuitous, or attenuated

contacts, the unilateral activity of another party or a third person, or the mere foreseeability

that its actions may cause injury in that jurisdiction. *XMission*, 105 F.4th at 1308-09.

Specific jurisdiction is proper over an email sender only if a plaintiff can show that the

sender had knowledge that the offending emails were going to a specific forum. *Id.* at

1310. When examining specific jurisdiction in the context of communications involving

the internet, the U.S. Court of Appeals for the 10th Circuit has applied a "harmful effects

test" under which a plaintiff must allege, among other things, that the defendant acted with

knowledge that the brunt of the injury would be felt in the forum. *Id.* at 1309-10.

Plaintiff admits that the Individual University Defendants are agents of UNB. (Doc.

# 188 at ECF pp. 8-9). In fact, the only address that Plaintiff provides for the Individual

---

[4] *See also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071–72 (10th Cir. 2008) (personal jurisdiction must be established separately for each defendant, and one defendant's contacts cannot automatically supply the contacts necessary for another defendant's jurisdictional ties); *HomeStake Prod. Co. v. Talon Petroleum Co.*, 907 F.2d 1012, 1020 (10th Cir. 1990) (minimum contacts must be found as to each defendant).

Defendants is in Canada. (*Id*. at p. 8). Plaintiff complains about a letter allegedly sent by UNB and an Individual Defendant that Plaintiff's own pleading indicates was sent to Pennsylvania, not Oklahoma. (Doc. # 188-2 at ECF p. 2). Plaintiff also complains of statements allegedly made by UNB and certain Individual University Defendants "to the press," "to the world," "to the American press and social media to the world," but not specifically Oklahoma. (Doc. # 188 at ECF pp. 12, 15, and 17). Additionally, for the reasons discussed in Section IV of UNB's Motion to Dismiss (Doc. # 195, ECF pp. 25-35), which is adopted herein by reference, Plaintiff's allegations with respect to Jeffrey Brown's alleged appearance on a Pennsylvania radio program vastly overstate Dr. Brown's connection to both the United States and to Oklahoma; in fact, Dr. Brown's alleged conduct at issue in this case happened in Canada.

In sum, there are no allegations that the Individual University Defendants directed anything at residents of Oklahoma, had knowledge that their communications were going to Oklahoma, or had information that the brunt of the injury their communications would (allegedly) cause would be felt in Oklahoma, especially when considering Plaintiff is domiciled in Pennsylvania.

###        2.    The exercise of personal jurisdiction over the Individual University Defendants offends traditional notions of fair play and substantial justice

In assessing whether an exercise of jurisdiction is reasonable, a court must consider: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the

shared interest of the several states in furthering fundamental substantive social policies.

*TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007);

*see also OMI*, 149 F.3d at 1095.

The analyses of minimum contacts and reasonableness are complementary:

> … the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*OMI*, 149 F.3d at 1092 (alterations in original); *see also TH Agric.*, 488 F.3d at 1292.

With respect to the first factor, the Individual University Defendants are unquestionably burdened by litigating in Oklahoma given that they are all located in Canada (Doc. # 188 at ECF p. 8) and there are no allegations that any of the Individual University Defendants maintain an office in Oklahoma, own property in Oklahoma, or employ anyone in Oklahoma (or the United States). *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004) (the burden on a Canadian corporation with no offices, property, or employees in the forum State was "significant" and weighed against exercising jurisdiction).

With respect to the second factor of the reasonableness analysis, Oklahoma has no interest in the dispute between Plaintiff and the Individual University Defendants. Plaintiff is a citizen of Pennsylvania. (Doc. # 188 at ECF p. 6). The Individual University Defendants are in Canada. (*Id.* at p. 8). The relationship between Plaintiff and the Individual University Defendants arises from Plaintiff's receipt of an academic degree in

14

Canada.  (*Id.* at p. 6).  Accordingly, this factor weighs in favor of dismissal.  *See OMI*, 149 F.3d at 1096 (concluding that this factor weighed heavily in favor of defendants where no parties were residents of the forum State or conducted business in the forum State, and the forum State's law did not apply, and the relationship between the parties was formed in Canada).  In fact, the United States has little interest in this dispute because, although Plaintiff is a United States citizen, this dispute involves education he received in Canada and statements about him made in Canada related to the education he received in Canada.

With respect to the third and fourth factors of the reasonableness analysis, there is no reason to assume that this Court is the only place, or even the most effective place, for Plaintiff to obtain relief.  Plaintiff is seeking to recover from a Canadian university and from Canadian individuals for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian university.  The witnesses will therefore be in Canada.[5]  There are no allegations to suggest that litigating in Canada would cause undue hardship to Plaintiff.  In fact, Plaintiff is not an Oklahoma resident, so Plaintiff will be geographically inconvenienced regardless of whether litigation proceeds in Oklahoma or Canada.  *See Benton*, 375 F.3d at 1079 (holding that the third factor weighed against exercising jurisdiction because Canadian law governed the dispute and litigating in Canada would not cause undue hardship).

---

[5] To the extent that Defendant Gregory could be considered a witness with respect to allegations against the Individual University Defendants, upon information and belief, Defendant Gregory lives in Louisiana (not Oklahoma), where he is the director of a museum affiliated with Louisiana State University. *See* https://www.lsu.edu/scholarship-first/blog/2023/05/29-gregory-military-museum.php (last accessed February 23, 2026).

Finally, the fifth factor of the reasonableness analysis focuses on whether the exercise of personal jurisdiction by the forum state affects the substantive social policy interests of other states or foreign nations. *TH Agric.*, 488 F.3d at 1297 (citation omitted). "[G]reat care must be exercised when considering personal jurisdiction in the international context." *Asahi Metal*, 480 U.S. at 103. "[W]hen jurisdiction is exercised over a foreign citizen regarding a contract entered into in the foreign country, the country's sovereign interest in interpreting its laws and resolving disputes involving its citizens is implicated." *OMI*, 149 F.3d at 1098 (citing *Paccar Int'l., Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir. 1985)). Again, Plaintiff is seeking to recover from a Canadian university and from Canadian individuals for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian university. All the policy interests in play are held by Canada, and none are held by Oklahoma.

Canada's policy interests are especially strong in this case because UNB is a public university (Doc. # 188 at ECF p. 8) and therefore an asset of the government of New Brunswick, a Canadian province. This Court should not exercise jurisdiction over a Canadian governmental entity and its alleged employees for conduct that allegedly occurred in Canada.

In sum, Plaintiff has failed to establish sufficient purposeful contacts between the Individual University Defendants and either the United States or the State of Oklahoma. Extending jurisdiction over them would offend traditional notions of fair play and substantial justice. This Court lacks personal jurisdiction over the Individual University

Defendants and the claims against them must be dismissed *with prejudice* pursuant to Fed. R. Civ. P. 12(b)(2).

## V.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED AS TO CERTAIN INDIVIDUAL DEFENDANTS FOR INSUFFICIENT SERVICE OF PROCESS

There is no dispute that Defendants Drew Rendall, Erin Morton, Margaret MacMillan, Robert Bothwell, John Ferris, and Roland Kuhn were not served with the initial complaint. (Doc. # 132). On September 4, 2025, Plaintiff filed a List of Returns of Service (Doc. # 171) stating that these individuals were served, but as discussed in their Response filed on December 10, 2025, they were not. (Doc. # 175).

On February 4, 2026, the Court held that Plaintiff could have until March 2, 2026 to serve these defendants via email as follows: (1) by emailing the summons, the Second Amended Complaint, and a copy of this Order to [these] Defendants three times per week for three consecutive weeks (unless a written response is received acknowledging receipt of service); (2) the subject line of each email shall include "Service of Federal Court Summons and Second Amended Complaint as Ordered by the United States District Court for the Western District of Oklahoma"; and (3) upon completion of these steps, Plaintiff shall file a declaration or proof of compliance with the Court's order once service is complete. (Doc. # 186). The time permitted for service pursuant to the Court's Order has not passed, and the Individual Defendants respectfully move for dismissal now to preserve the issue, but ask to be heard further in their reply on this matter once the allotted time has concluded.

## VI.    PLAINTIFF FAILS TO STATE A CLAIM

Plaintiff has failed to state a claim upon which relief can be granted under Fed. R.

Civ. P. 12(b)(6).[6]   To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  The question

to be decided is "whether the complaint sufficiently alleges facts supporting all the

elements necessary to establish an entitlement to relief under the legal theory proposed."

---

[6] Choice-of-law analysis is a fact intensive process which a court is typically ill-equipped to engage in at the early stages of litigation. *See Fed. Ins. Co. v. Indeck Power Equip. Co.*, No. CIV-15-491, 2016 WL 3676803 at *2 (W.D. Okla. July 7, 2016).  Therefore, in the absence of a ruling on choice-of-law, and solely for the purposes of this Motion seeking dismissal under Fed. R. Civ. P. 12(b)(6) that is filed in a Court sitting in Oklahoma, the Individual University Defendants discuss the application of Oklahoma law.  However, the chance that Oklahoma law would apply to any of the claims against UNB or the Individual UNB Defendants is extremely thin.  This is because UNB and the UNB Individual Defendants are located in Canada, UNB and the UNB Individual Defendants formed a relationship with Plaintiff in Canada, and UNB's and the UNB Individual Defendants' conduct allegedly occurred in Canada.  Accordingly, there is a significant chance that Canadian law applies to at least some of Plaintiff's claims.  *See Brickner v. Gooden*, 525 P.2d 632, 637 (Okla. 1974) (applying multi-factored choice-of-law test including analysis of the place where the parties were domiciled, the place where the relationships of the parties' occurred, and the place where the defendant's conduct occurred).  Plaintiff himself is a resident of Pennsylvania.  The significant likelihood that Canadian law or Pennsylvania law governs some or all of these claims underscores the Individual UNB Defendants' argument that exercising jurisdiction in Oklahoma over UNB and the Individual University Defendants offends the traditional notions of fair play and substantial justice, and the claims should be dismissed.  If this action progresses past the pleading stage, the Individual UNB Defendants expressly reserve the right to litigate choice-of-law issues and to take discovery, if necessary, to resolve such issues.

*Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (citation omitted).  Plaintiff has failed to do so with each of the theories and counts alleged in his Second Amended Complaint.

### 1. Plaintiff has failed to state a claim in support of a RICO violation in Counts One and Two

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff alleging a RICO violation must allege that the defendant (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006).  "Racketeering activity" is statutorily defined. 18 U.S.C. § 1961(1).  Additionally, a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of 18 U.S.C. § 1962.  *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir. 2003).  RICO violations must be pleaded with specificity to provide clear factual notice of the alleged basis for the claim.  *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007); *see also* Fed. R. Civ. P. 9(b).

Plaintiff's allegations fail at every step. First, in his Second Amended Complaint, Plaintiff does not plausibly identify a distinct "enterprise" with a shared purpose.  *Boyle v. United States*, 556 U.S. 938, 945-46 (2009).  Rather, the alleged "enterprise" is a vague assortment of unrelated individuals and institutions – including a Canadian university, faculty members, a competing author, and unnamed "American antagonists" – with no facts showing a structured association or a common purpose.  (Doc. # 188 at ECF pp. 31-32).

Plaintiff also fails to allege any qualifying predicate or overt acts of racketeering activity under 18 U.S.C. § 1961(1) or § 1962(d).  His claims center on university investigations, media criticism, and academic disputes.  (Doc. # 188 at ECF pp. 26-32, and

43).  However, Plaintiff's theory appears to conflate an academic dispute with a criminal enterprise, as university investigations, media criticism, and academic disputes are <u>not</u> crimes under RICO.  While Plaintiff references "wire fraud," "extortion," and "election interference" in passing, he provides no factual detail supporting any of these claims.  For example, Plaintiff alleges that faculty members spoke "to the American press criticizing and discussing his dissertation" (*Id.* at ECF p. 27), and that they "affix[ed] their signatures" to letters about him (*Id.* at ECF p. 30) but fails to allege how any of these acts constitute criminal racketeering, let alone the required pattern. These labels are unsupported by specific facts and fail to meet the pleading standards of Rules 8 and 9(b).  *Tal*, 453 F.3d at 1263.  Accordingly, Plaintiff's RICO allegations must be dismissed *with prejudice* against the Individual University Defendants.

### 2.  Plaintiff fails to plead a Sherman Act violation in Counts Three and Four

To allege a violation of Section I of the Sherman Act, a plaintiff must allege and prove: (1) concerted action in the form of a contract, combination or conspiracy; and (2) an unreasonable restraint of trade.  *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1027 (10th Cir. 1992).  Plaintiff alleges only that the University Defendants investigated accusations of academic misconduct and by doing so, allegedly violated academic procedures.  (Doc. # 188 at ECF p. 33-35, and 43).  Those contentions, even if true, simply do not amount to unreasonable restraints on trade.

Additionally, to plead an antitrust injury, the "plaintiff must allege a business or property injury, an antitrust injury, as defined by the Sherman Act." *Tal*, 453 F.3d at 1257-

58 (internal quotation marks) (citation omitted).  Antitrust injury is limited to an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*., 429 U.S. 477, 477-78, 489 (1977).  Thus, to have antitrust injury, a plaintiff must allege an injury to competition, not a generic injury to the plaintiff.  *Id*.  His claimed harm – lost book sales, halted publications, and reputational damage – relates solely to his personal business interests, not to any harm to market-wide competition.  (Doc. # 188 at ECF p. 37). Plaintiff's alleged injury is not the type the antitrust laws are designed to remedy. For these reasons, Plaintiff's Sherman Act Violation claims must also be dismissed *with prejudice*.

### 3.  Plaintiff fails to plead a fraud claim in Count Five

Under Oklahoma law, an actionable claim for fraud or deceit requires the plaintiff to establish the following elements: (1) a false material misrepresentation; (2) made as a positive assertion which is either known to be false or is made recklessly without knowledge of the truth; (3) with the intention that it be acted upon; and (4) which is relied on by the other party to his or her own detriment.  *Tal*, 453 F.3d at 1265; *see also Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009).  Common law fraud must be pleaded with particularity.  *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994).  In order to plead fraud with particularity, the Complaint must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof.  *Koch v. Koch Indus*., 203 F.3d 1202, 1236 (10th Cir. 2000).

In his Second Amended Complaint, Plaintiff alleges that UNB accepted tuition payments – funded in part by the United States Department of Defense – in exchange for

21

awarding him a PhD in History, but later "reopened" his thesis for political reasons, thereby defrauding both Plaintiff and the federal government.  (Doc. # 188 at ECF pp. 39-40).  However, Plaintiff does not identify any specific false representation made by UNB at the time of enrollment, during the course of the academic program, or at the time the degree was conferred.  He does not allege that UNB misrepresented its intentions or failed to provide the academic services promised.  Instead, the fraud claim rests solely on UNB's later decision – years after awarding the degree – to revisit or investigate the academic integrity of Plaintiff's thesis.  The Second Amended Complaint contains no details about who made any allegedly false statements, when they were made, or how they were intended to induce reliance.  These are fatal deficiencies under Rule 9(b).  *See Tal*, 453 F.3d at 1263.

Moreover, Plaintiff fails to allege any reasonable reliance on a misrepresentation or any damages that were proximately caused by fraud.  The harm he claims – economic loss, reputational damage, and the halting of book sales – stem from alleged academic and reputational fallout, not from any fraudulent inducement or deceit in connection with his enrollment or tuition payments.  At its core, the complaint expresses dissatisfaction with academic decisions made years after Plaintiff completed his program.  Such disputes, while perhaps giving rise to grievances that can be addressed by an academic committee, do <u>not</u> meet the elements of a fraud claim under federal law or Oklahoma common law.  Accordingly, the fraud claim should be dismissed *with prejudice* pursuant to Rules 12(b)(6) and 9(b).

### 4. Plaintiff fails to plead an aiding and abetting claim in Count Six

Plaintiff's allegations of an investigation into his PhD and purported violations of academic protocol (Doc. # 188 at ECF p. 42) do <u>not</u> allege aiding and abetting breach of fiduciary duty. Moreover, the Oklahoma Supreme Court has never recognized a claim for aiding and abetting a breach of fiduciary duty. *Jackson v. GreerWalker, LLP*, 2018 WL 894873, at *4 (N.D. Okla. Feb. 14, 2018). "Oklahoma courts have imposed civil aiding-and-abetting liability in only a handful of contexts, so it seems doubtful that the Oklahoma Supreme Court would expand the doctrine to cover aiding and abetting breach of fiduciary duty." *Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1198 (N.D. Okla. 2020). Therefore, even accepting as true the allegations in Plaintiff's Second Amended Complaint, and even assuming that American law would apply to actions in Canada, Plaintiff's claim for aiding and abetting a fiduciary duty must be dismissed because it does not allege a cognizable theory of recovery under Oklahoma law.

Additionally, even if Plaintiff's "aiding and abetting" claim was viable under Oklahoma law, Plaintiff's claim must nonetheless be dismissed for another reason. To state a claim for "aiding and abetting" a tort, a plaintiff must show that the defendant aided in the commission of a tort "by giving substantial assistance or encouragement to the tortfeasor." *Cooper v. Bondoni*, 841 P.2d 608, 611-12 (Okla. Ct. App. 1999). Moreover, any claim for aiding and abetting a breach of fiduciary duty "requires an allegation that the defendant had knowledge of the primary actor's wrongful conduct." *Almeida*, 471 F.Supp.3d at 1199 (citation omitted). A complaint claiming aiding and abetting of a tort must contain "enough information to put the defendant on notice of the factual basis for

the claims against them." *Id.* at 1198.  Therefore, to make a claim for aiding and abetting a breach of fiduciary duty, Plaintiff must plead sufficient factual allegations to establish that the Individual University Defendants and the other individuals allegedly affiliated with UNB: (1) had knowledge of a breach of fiduciary duty; and (2) gave substantial assistance or encouragement in allegedly breaching their fiduciary duties. Plaintiff's Second Amended Complaint fails to provide evidence of either requisite element and his aiding and abetting claim must be dismissed *with prejudice* accordingly.

### 5.  Plaintiff fails to plead a breach of contract claim in Count Seven

To state a claim for breach of contract, a plaintiff must plead facts showing: "1) formation of a contract; 2) breach of the contract; and 3) damages as a result of the breach." *Bayro v. State Farm Fire and Cas. Co.*, No. Civ-14-1084-D, 2015 WL 4717166 (W.D. Okla., Aug. 7, 2015) (citing *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001)).

Plaintiff alleges the existence of a contract only between himself and *UNB*.  (Doc. # 188 at ECF p. 45).  Although Plaintiff mentions the existence of an "enrollment agreement" (*Id.* at ECF p. 45), Plaintiff does not allege what contractual terms were breached.  *See Phillips Univ. Legacy Found., Inc. v. Charles H Bentz Assocs., Inc.*, No. CIV-09-408-R, 2012 WL 12861099, at *2 (W.D. Okla. Mar. 1, 2012) (declining to grant summary judgment to plaintiff on its breach-of-contract claim because plaintiff "[did] not point to any specific provision in the contract the [d]efendants breached").

Moreover, Plaintiff fails to plead a price for the alleged contract, which is fatal to the claim.  *See* Francis C. Amendola, *et al.*, 17 C.J.S. Contracts § 61 (May 2024) ("A

definite price or compensation is generally an essential element of a binding contract, and if a contract does not specifically fix it, a definite method for ascertaining it must ordinarily be provided"); *see also Bradshaw v. Uber Tech., Inc.*, No. CIV-16-388-R, 2017 WL 2455151 *5 (W.D. Okla. June 6, 2017) (plaintiff must plead facts to support both formation and breach of a contract, including whether there was a meeting of the minds as to essential terms).

Plaintiff alleges only, at most, violations of academic protocol—not breach of contract.  (Doc. # 188 at ECF pp. 45-46).  Therefore, Plaintiff's breach of contract claim should be dismissed *with prejudice*.

### 6.  Plaintiff fails to plead a negligence claim in Count Eight

The threshold question for negligence suits is whether a defendant owes a plaintiff a duty of care.  *Wofford v. Eastern State Hospital*, 795 P.2d 516, 519 (Okla. 1990).  Duty is a question of law.  *Id.*  "The court decides whether a defendant stands in such a relationship to a plaintiff that the defendant owes an obligation of reasonable conduct to persons "who are foreseeably endangered by his conduct with respect to risks which make the conduct unreasonably dangerous."  *Id.* at 519.

Plaintiff alleges that the Individual University Defendants and the other individuals allegedly affiliated with UNB "owed a duty of care to [Plaintiff] because [Plaintiff] is the beneficiary of the receipt of an unanimously conferred and intensely critiqued PhD in history, and because said Defendants are each recipients of a monetary benefit from the payments to UNB by [Plaintiff] and the United States on his behalf."  (Doc. # 188 at ECF

p. 47).  The law simply does <u>not</u> recognize an open-ended duty of care running in perpetuity from a university and its employees to someone who received a degree years earlier.

Even if this were a legally cognizable duty, there is no breach.  Plaintiff is alleging an academic dispute regarding the way in which a degree was conferred and later investigated.  (*Id.*)  That is a matter for an academic committee, not a court.  For these reasons, Plaintiff's negligence claim should be dismissed *with prejudice*.

### 7.  Plaintiff fails to plead a defamation claim in Count Nine

In order to prevail on a defamation claim, Plaintiff must show:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication.

*Sturgeon v. Retherford Publications, Inc.*, 987 P.2d 1218, 1223 (Okla. Civ. App. Div. 4, 1999) (citing Restatement (Second) of Torts § 558 (1977)).  "In pleading defamation, the plaintiff must afford defendant sufficient notice of the communications complained of to enable him to defend himself."  *Cohimia v. Ardent Health Services, L.L.C.*, 448 F. Supp. 2d 1253, 1268 (N.D. Okla. 2006) (internal quotation marks omitted) (citation omitted).

Plaintiff alleges that between 2022 and August 2023, various defendants made "malicious, false and defamatory statements" about him in a public letter, radio appearances, newspaper interviews, and social media posts.  (Doc. # 188 at ECF p. 50).  He references a radio appearance involving Defendants Jeffrey Brown and James Gregory, and various other vague communications "at university and history conferences" and "to Colleagues and former classmates" of Plaintiff.  (*Id.*)  However, Plaintiff fails to identify

with specificity the content of the allegedly defamatory statements in most instances, or the context in which they were made. The only document Plaintiff references with any specificity concerning the Individual University Defendants – "Exhibit 5" – is not quoted or summarized in the body of the Second Amended Complaint, and it is unclear what language in that document forms the basis of the defamation claim.

Plaintiff also fails to plausibly allege falsity. While Plaintiff conclusory states that the statements were false and made with "malice aforethought," he does not allege any facts to support that conclusion, nor does he address why the statements were demonstrably false rather than protected expressions of opinion, particularly in the context of academic and public discourse. (*Id.* at ECF p. 51). Allegations that the Individual University Defendants criticized Plaintiff's thesis or academic credentials do not, without more, rise to actionable defamation. *See* Restatement (Second) Torts § 566 (1977) (an opinion "is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."); *see also Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018) (finding that statements of pure opinion are protected from defamation actions).

Similarly, opinion statements regarding Plaintiff's views on race, gender, science, and religion (*see* Doc. #188-5 at p. 2) are also not actionable. "A statement characterizing someone as racist, like non-actionable opinion, is subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation." *Tannous v. Cabrini Univ.*, 697 F.Supp.3d 350, 364 (E.D. Pa. 2023); *see also Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("[i]n daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face ... [i]t is not actionable unless it implies the existence of

27

undisclosed, defamatory facts."); *Starks v. Tula Life, Inc.*, 684 F.Supp.3d 941, 948 (D. Neb. 2023) ("calling an individual a 'racist' or characterizing a person's statements as being 'racist' or 'hateful,' standing along [sic], is not 'capable of proof or disproof.'"); *Skidmore v. Gilbert*, Case No. 20-cv-06415-BLF, 2022 WL 464177, at *9 (N.D. Cal. Feb. 15, 2022) ("[A] term like racist, while exceptionally negative, insulting, and highly charged—is not actionable under defamation-type claims because it is a word that lacks precise meaning.").

Plaintiff's alleged damages are also not recoverable. Specifically, the Second Amended Complaint is replete with references to Plaintiff's political campaigns, and Plaintiff specifically alleges that the Defendants harmed his "political chances" and his "political career," and "interfere[d] with his political campaigns for public office." (Doc. # 188 at ECF pp. 2, 27, and 52). Courts do not recognize claims by unsuccessful candidates for damages based on political loss. *See Bush v. Gore*, 531 U.S. 98 (2000) (addressing constitutional review of vote-count procedures, not private damages for election loss); *see also Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) (holding that an unsuccessful candidate lacks standing to challenge election results simply because he lost, and cannot obtain monetary relief for the loss); *Hill v. Stowers*, 680 S.E.2d 66 (W. Va. 2009) (dismissing claim for monetary damages by losing candidate, a candidate "does not have a property right to win an election" and it would be contrary to public policy to allow a losing candidate to recover monetary damages from an opponent). Plaintiff has not identified a statutory basis for his claim, nor offered non-speculative proof that his election defeat was proximately caused by Defendants' alleged statements or actions. Accordingly, Plaintiff's

claim for defamation, and any other claim arising from alleged political harm, is non-justiciable.

At bottom, Plaintiff's defamation claim consists of vague and conclusory assertions about reputational harm without adequately identifying what was said, by whom, when, and how it was false. Without any allegations of facts to support these crucial elements, or any cognizable damages, Plaintiff's defamation claim cannot stand.

Finally, even if Plaintiff's defamation claim otherwise stated a claim (which is does not), all or most of Plaintiff's defamation claim is barred by the statute of limitations. Under Oklahoma's statute of limitations for defamation, Plaintiff had one year from publication date to bring his defamation claim. *See Thacker v. Cowling*, 473 P.3d 518, 522 (Okla. Civ. App. 2020) (calculating statute of limitations from publication date). The same statute of limitations applies in Pennsylvania. *See* 42 Pa. C.S.A. § 5523(1); *see Gallucci v. Phillips & Jacobs, Inc.*, 613 A.2d 294, 296 (Pa. Super. Ct. 1992). Plaintiff's Second Amended Complaint refers to communications that allegedly took place between 2019 and 2023, and specifically focuses on the Individual University Defendants' alleged "public letter of denouncement," which is dated April 26, 2023. (*See* Doc. # 188-5). This action was filed on May 31, 2024—more than a year after the alleged dates of publication.

### 8. Plaintiff fails to plead a false light invasion of privacy claim in Count Ten

To establish a claim of false light invasion of privacy, a plaintiff must allege and prove (1) defendant publicized a matter that placed plaintiff in a false light before the public; (2) the false light would be highly offensive to a reasonable person under the circumstances; and (3) defendant had knowledge of or acted in reckless disregard as to both

the falsity of the publicized matter and the false light in which plaintiff would be placed. *See Zeran v. Diamond Broadcasting, Inc.*, 203 F.3d 714, 719 (10th Cir. 2000); *Colbert v. World Pub. Co.*, 747 P.2d 286, 290 (Okla. 1987).

Here, Plaintiff merely repackages his defamation allegations into a false light claim. He alleges that Defendants gave publicity to matters that placed Plaintiff "before the public in a false light" through "false and malicious" statements, including social media posts, media appearances, and the publication of Plaintiff's thesis and a university letter. (Doc. # 188 at ECF p. 53). He also alleges that this publicity occurred in proximity to his political campaigns in 2022 and 2023. (*Id.*)

However, Plaintiff fails to identify how any of these public statements falsely attributed beliefs, characteristics, or conduct to him that would meet the heightened standard for false light liability. Allegations that the Individual University Defendants criticized or questioned Plaintiff's academic work, or reopened investigations into his thesis, do not amount to publicity that attributes false and highly offensive characteristics to him. *See McCormack v. Oklahoma Pub. Co.*, 613 P.2d 737, 740 (Okla. 1980) (false light claim requires more than negative publicity—it must be "highly offensive" to a reasonable person and "false in a major way").

Moreover, Plaintiff's generalized assertions that the Individual University Defendants acted "with reckless disregard" are wholly conclusory and unsupported by factual allegations. He does not plausibly allege that any Individual University Defendant knew a specific statement was false or acted with actual malice. As courts in this Circuit have made clear, claims sounding in defamation or false light must do more than allege

reputational harm – they must specifically plead the who, what, when, and how of the allegedly false and offensive representations. *See Bruton v. Oklahoma Dept. of Corr.*, 2019 WL 3413853, at *6 (W.D. Okla. July 29, 2019) ("Because Plaintiff has not parsed out her claims sufficiently as to each Defendant, the Court cannot discern which Defendant allegedly made a defamatory statement about Ms. Bruton, nor ascertain which defendant she seeks to hold liable for the alleged defamatory statements. Plaintiff's defamation claim fails to meet the pleading standards set forth in Rule 8 and accordingly, her defamation claim is hereby DISMISSED.").  Plaintiff's Second Amended Complaint falls far short of this standard.

## VII.  <u>CONCLUSION</u>

This Court lacks personal and subject matter jurisdiction over the Individual University Defendants, there was a complete lack of service of the Second Amended Complaint on some Individual University Defendants, and Plaintiff has further failed to state a legally cognizable claim upon which relief can be granted.  Accordingly, Plaintiff's Amended Complaint against the Individual University Defendants cannot proceed.  The Individual University Defendants respectfully request that their Motion to Dismiss be granted, the claims against them be dismissed *with prejudice*, and for such further relief this Court deems just and proper.

Dated: February __, 2026

*** SIGNATURE BLOCK ON FOLLOWING PAGE ***

Respectfully submitted,

 /s/ *William C. Swallow*

Don W. Danz
McATEE & WOODS, P.C.
410 NW 13th Street
Oklahoma City, OK 73103
T: (405) 232-5067
F: (405) 232-0009
E: don@mwoodslaw.com


William C. Swallow (IL No. 6293910)
*Pro Hac Vice To Be Filed*
Michael H. Passman (IL No. 6297381)
*Pro Hac Vice To Be Filed*
Emily M. Vanderlaan (CO No. 55293)
*Pro Hac Vice To Be Filed*
CLYDE & CO US LLP
55 W. Monroe Street, Suite 3000
Chicago, Illinois 60603
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

*Attorneys for the University Defendants*