## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| Douglas Mastriano | : | CIVIL NO. 5:24-cv-00567-F |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| | : | |
| James Gregory, III, *et al.* | : | |
| | : | |
| Defendants. | : | |
| | : | |

### PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT UNB'S MOTION TO DISMISS AND INDIVIDUAL UNIVERSITY DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

NOW COMES Plaintiff DOUGLAS MASTRIANO, by and through his attorney, Daniel L. Cox, The Cox Law Center, LLC, and opposes Defendant UNB's and Individual University Defendants' motions to dismiss and brief in support, filing this Response in Opposition and Brief in Support, requesting denial of Defendants' motions.

**The Cox Law Center, LLC**
By:
_____//s//_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... iii

I.      INTRODUCTION ....................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................... 3

III.    STANDARD OF REVIEW ......................................................................... 4

IV.     ARGUMENT ............................................................................................... 6

    A.  UNB is Not Entitled to FSIA Immunity. ............................................... 6

        1.  UNB Does Not Qualify as an "Organ" of a Foreign State. ........................ 7

        2.  The Commercial Activity Exception Strips Immunity. ........................... 10

        3.  The Tortious Acts Exception Applies. ...................................................... 12

        4.  The Waiver Exception Applies. ................................................................ 14

        5.  The Expropriation Exception Applies. ..................................................... 15

    B.  This Court Has Personal Jurisdiction Over All Defendants. ...................... 16

        1.  UNB Has Sufficient Minimum Contacts with the United States. ............ 16

        2.  Individual Defendants Purposefully Directed Harm at the United States. 18

        3.  Exercising Jurisdiction is Reasonable. .................................................... 19

    C.  The Individual Defendants Are Not Shielded by Official-Capacity

    Immunity. ...................................................................................................... 21

D.   Service of Process is Proper. .............................................................. 24

E.   The Second Amended Complaint Pleads Sufficient Claims. ........................ 24

   1.   Col. Mastriano Properly Pleads RICO Claims. ........................................ 24

   2.   Col. Mastriano Properly Pleads Claims Under the Sherman Act. ............ 26

   3.   Col. Mastriano Properly Pleads Defamation and False Light. ................. 27

   4.   Col. Mastriano Properly Pleads the Remaining Claims. .......................... 28

F.   Dismissal With Prejudice Would be Improper. ........................................... 31

V.   CONCLUSION .................................................................................. 32

VI.   CERTIFICATE OF SERVICE ................................................................ 33

## TABLE OF AUTHORITIES

### *Cases*

*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 (10th Cir. 2007) ........................................5

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987) ..................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................5

*Boyle v. United States*, 556 U.S. 938 (2009) .................................................................25

*Bylin v. Billings*, 568 F.3d 1224 (10th Cir. 2009) .........................................................33

*Eighteen Seventy, LP v. Jayson*, 32 F.4th 956 (10th Cir. 2022) ................................6, 16

*Hansen v. PT Bank Negara Indonesia*, 601 F.3d 1059 (10th Cir. 2010) ...................6, 7

*Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841 (5th Cir. 2000) .......................7

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) ...............................................13, 29

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..................................................14

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998) .....20

*Patterson v. Rural Water Dist. 2*, 438 F. Supp. 3d 1258 (W.D. Okla. 2020) .................5

*Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83 (D.C. Cir. 2005) .................7

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ................................11, 13

*Republic of Philippines v. Pimentel*, 553 U.S. 851 (2008) ...........................................24

*Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374 (E.D. Pa. 1997) .............................7

*Tal v. Hogan*, 453 F.3d 1244 (10th Cir. 2006) ..............................................................25

*TJGEM LLC v. Republic of Ghana* 26 F. Supp. 3d 1 (D.D.C. 2013) .............................23

*United States v. Turkette*, 452 U.S. 576 (1981) .............................................................25

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ...............................16

*XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020) ......................................................17

## *Statutes*

15 U.S.C. § 1 .................................................................................................................. 19

28 U.S.C. § 1603(b) .......................................................................................................... 5

28 U.S.C. § 1605(a)(2) ...................................................................................................... 8

28 U.S.C. § 1605(a)(3) ...................................................................................................... 11

28 U.S.C. § 1605(a)(5) ...................................................................................................... 9

28 U.S.C. § 1605(a)(5)(B) ................................................................................................. 10

## *Rules*

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 4

Fed. R. Civ. P. 15(a)(2) ..................................................................................................... 23

Fed. R. Civ. P. 19(a)(1)(B) ................................................................................................ 17

vi

## I.    INTRODUCTION

Plaintiff Col. Mastriano respectfully submits this Consolidated Response in Opposition to the Motion to Dismiss filed by Defendant University of New Brunswick (ECF 195) ("UNB") and the Motion to Dismiss filed by the Individual University Defendants (ECF 196) (collectively, "Individual Defendants"). Because the Individual Defendants' motion expressly adopts UNB's factual allegations and jurisdictional arguments in their entirety, a consolidated response best serves judicial economy by avoiding redundant briefing on substantially overlapping issues.

Defendant UNB attempts to shield itself from accountability for its participation in a coordinated scheme to destroy Col. Mastriano's academic reputation and interfere with his political campaigns by invoking foreign sovereign immunity. UNB does not qualify as an "organ of a foreign state" entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"). While UNB receives some public funding, it operates with substantial autonomy, engages extensively in commercial activities, and lacks the necessary indicia of governmental control required for sovereign status. UNB's own governing documents emphasize its independence from direct governmental control. Even if UNB could establish prima facie entitlement to FSIA immunity, multiple statutory exceptions independently strip any immunity that might otherwise apply. UNB engaged in commercial activity with

1

direct effects in the United States, committed tortious acts causing injury in the United States, expressly and impliedly waived any immunity through its commercial contracts and conduct, and unlawfully expropriated Col. Mastriano's property rights.

This Court has personal jurisdiction over UNB and the Individual Defendants. UNB deliberately entered into educational contracts with U.S. military personnel, accepted U.S. government funding, disseminated defamatory statements into the United States through press releases and media appearances, and coordinated with U.S.-based co-conspirators to harm Plaintiff's business and property interests. The Individual Defendants similarly directed tortious communications at a U.S. public figure in U.S. markets, including a radio broadcast in Pennsylvania.

The Second Amended Complaint states valid claims under every count. The allegations describe a coordinated scheme to weaponize false fraud accusations through U.S. communication channels and institutions, which were actions far removed from any legitimate academic review. These allegations, accepted as true at this stage, establish jurisdiction and state valid claims under RICO, the Sherman Act, and applicable state law. For these reasons, UNB's and the Individual Defendants' motions should be denied in their entirety.

2

## II.    STATEMENT OF FACTS

The Second Amended Complaint alleges a multi-year coordinated campaign by the Defendants to destroy Col. Mastriano's academic reputation, book market, speaking career, and political viability. The following facts, which the Court must accept as true at this stage, are critical to this allegation.

Beginning in or about 2019, Defendant James Gregory III ("Gregory") filed a false and fraudulent complaint with the University of New Brunswick ("UNB") challenging the integrity of Col. Mastriano's PhD thesis. UNB dismissed this initial complaint as substantively without merit.

In or about July 2022, UNB released Col. Mastriano's previously embargoed PhD thesis without his consent, violating his privacy rights. UNB and its officials, including President Paul Mazerolle, Vice-President David MaGee, and others, joined with Gregory's campaign by opening sham investigations into Col. Mastriano's thesis, making public statements validating Gregory's false allegations, and coordinating with Gregory to maximize reputational harm. The Individual Defendants published an open letter in April 2023 on official UNB letterhead defaming Mastriano These actions were timed to correspond with Col. Mastriano's gubernatorial campaign in 2022 and his frontrunner status for the U.S. Senate in 2023.

3

In 2023, with Col. Mastriano's Senate candidacy at its height, the enterprise reopened a previously closed investigation into Col. Mastriano's thesis, appointed a new "investigation committee," and continued its coordinated public campaign against him. As a direct result, publishers notified Col. Mastriano they would cease printing his books, speaking engagements were cancelled, media and film contracts in negotiation were terminated, and his Senate campaign was damaged by the weaponization of these false allegations. All of Plaintiff's claims flow from this coordinated scheme.

### III.    STANDARD OF REVIEW

A complaint survives a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* at 678.

The plausibility standard does not require a plaintiff to plead "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It requires only enough factual content to raise the claim above the "speculative level" and "nudge the plaintiff's claims across the line from conceivable to plausible." *Id.* at 555, 570. When ruling on a Rule 12(b)(6) motion, the Court must accept all well-

pleaded factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and refrain from weighing the evidence or assessing the credibility of the allegations. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Court must consider those facts and inferences in the light most favorable to the plaintiff.

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may take the form of a facial challenge or a factual challenge. When defendant raises foreign sovereign immunity as a factual challenge to subject matter jurisdiction, the Court "may not presume the truthfulness of the complaint's factual allegations" and has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Patterson v. Rural Water Dist. 2*, 438 F. Supp. 3d 1258, 1266–67 (W.D. Okla. 2020).

The FSIA establishes a burden-shifting framework. Once the defendant establishes that it qualifies as a "foreign state" entitled to immunity, the burden shifts to the plaintiff to produce evidence making an initial showing that an FSIA exception applies. *Hansen v. PT Bank Negara Indonesia*, 601 F.3d 1059, 1062 (10th Cir. 2010). If the plaintiff makes that initial showing, the burden shifts back and the defendant bears the ultimate burden of proving by a preponderance of the evidence that the exception does not apply. *Id.* Critically, the defendant must first establish entitlement to immunity before the burden-shifting analysis even begins. *Id.*

On a motion to dismiss for lack of personal jurisdiction decided without an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022). The Court accepts the plaintiff's well-pleaded factual allegations as true and resolves all factual disputes in the plaintiff's favor. *Id.* The plaintiff is entitled to jurisdictional discovery if the existing record does not permit a definitive resolution of the jurisdictional question.

## IV.    ARGUMENT

### A. UNB is Not Entitled to FSIA Immunity.

The FSIA when and how foreign states can be sued in U.S. Courts. When the act may apply, Courts apply a burden-shifting analysis. The defendant must first establish that it qualifies as a "foreign state" entitled to immunity. If defendants satisfy this burden, the burden then shifts to the plaintiff to make an initial showing that an exception applies. Regardless, the defendant then bears the ultimate burden of proving the exception does not apply. *Hansen v. PT Bank Negara Indonesia*, 601 F.3d 1059, 1062 (10th Cir. 2010); *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d 83, 90 (D.C. Cir. 2005). UNB cannot carry either burden. It does not qualify as an "organ" of a foreign state, and even if it did, multiple statutory exceptions independently strip away any immunity.

### 1. UNB Does Not Qualify as an "Organ" of a Foreign State.

To qualify as an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b), an entity must be, among other things, "an organ of a foreign state." UNB invokes the five-factor test from *Kelly v. Syria Shell Petroleum Dev. B.V.*, and contends it satisfies every factor.

Under *Kelly,* Courts assess whether an entity qualifies as a organ of a foreign state by looking at five factors: (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights in the foreign country; and (5) how the entity is treated under foreign state law. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846–47 (5th Cir. 2000) (quoting *Supra Med. Corp. v. McGonigle*, 955 F. Supp. 374, 379 (E.D. Pa. 1997)). Importantly, these factors provide only a helpful framework and are not applied mechanically. An entity need not satisfy all five factors, and Courts should weigh the totality of the relationship between the entity and the foreign state. UNB fails the majority of these factors, and the totality of the evidence confirms that is does not function as a government organ.

UNB's purpose is educational, not national or governmental. While UNB was originally established by provincial charter in 1859, its mission as an institution is to provide education. The fact that a university was created by a governmental act does

7

not transform it into a sovereign entity. Many state universities in the United States were similarly established by governmental charters yet remain subject to suit. UNB's own materials emphasize its role as an independent academic institution. UNB advertises itself as "Creating the New Brunswick of tomorrow" and describes a "mission of service." This is the language of a university, not a government agency.

UNB operates with substantial autonomy from governmental supervision. UNB's Board of Governors exercises primary authority over the institution'' operations, finances, and policies. While some Board members are appointed by the Lieutenant Governor in Council, the Board functions independently and makes autonomous decisions without meaningful governmental oversight. The mere fact that some board members have governmental connections does not establish the active supervision required for sovereign status. UNB's own Board Charter emphasizes a stewardship role and independent decision-making authority. Critically, the visitor role that UNB emphasizes is ceremonial and symbolic rather than substantive. The Lieutenant Governor does not exercise day-to-day control over UNB's operations, does not approve academic decisions, and does not supervise faculty or administration. UNB fails to identify a single instance where the Lieutenant Governor exercised any meaningful authority over UNB's operations, particularity regarding the academic proceedings at the center of this dispute.

8

The employees of UNB are not governmental employees in any meaningful sense. While UNB receives some public funding that contributes to salaries, UNB has the freedom to hire its own employees, set their compensation, and manage employment relationships without governmental involvement. The Province of New Brunswick does not require the hiring of any specific employees at UNB, and faculty and staff are employees of the university, not of the provincial government.

UNB derives substantial revenue from non-governmental, commercial sources. These include tuition from domestic and international students, research grants, private donations, and contracts with the United States Department of Defense to provide graduate education to U.S. military personnel. This commercial revenue stream directly undermines any claim that UNB functions solely as an arm of the provincial government. The existence of tuition payments from Plaintiff and the U.S. government confirms UNB's commercial nature.

UNB does not hold exclusive rights in any meaningful sense. The tax exemptions and statutory privileges UNB cites are benefits typically afforded to educational institutions. They are not unique governmental powers. Many private universities enjoy similar tax-exempt status and statutory protections without enjoying sovereign immunity.

While certain statutes reference UNB as a "public body" for purposes of open records laws and procurement regulations, this designation is for administrative

9

convenience, not sovereign status. Many institutions subject to public records laws, including private entities receiving government contracts, do not enjoy sovereign immunity. Most importantly, the UNB Act grants the university broad powers to operate independently, enter contracts, manage property, and conduct business *without* governmental approval.

At minimum, the factual record on this threshold question is disputed, and Col. Mastriano is entitled to jurisdictional discovery before this issue is resolved against him.

### 2.  The Commercial Activity Exception Strips Immunity.

The commercial activity exception strips immunity where an action is based upon (1) a commercial activity carried on in the United States by the foreign state; (2) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) an act outside the United States in connection with a commercial activity elsewhere that causes a direct effect in the United States. 28 U.S.C. § 1605(a)(2). It is beyond dispute that UNB engaged in commercial activity with direct effects in the United States.

Providing PhD education in exchange for payment is quintessential commercial activity. "The relevant question is whether the challenged conduct caused a direct effect in the United States; i.e., whether the effect followed as an immediate consequence of the defendant's activity." *Republic of Argentina v.*

*Weltover, Inc.*, 504 U.S. 607, 614 (1992). Private universities routinely provide identical educational services on a commercial basis. UNB contracted with the U.S. Department of Defense to provide educational services to U.S. military personnel, including Col. Mastriano, in exchange for substantial payments. When a foreign entity acts in the manner of a private player in the market, its actions are commercial. *Id.* The fact that one contracting party was the U.S. government does not transform the transaction into a sovereign act. *Id.* The commercial educational contract between UNB and the Department of Defense is not merely background. It is the source of UNB's obligations to Plaintiff and the foundation of every claim.

UNB and its officials also made deliberate use of U.S. instrumentalities of commerce, including email servers, media outlets, and the internet, to disseminate defamatory and fraudulent materials to U.S. audiences. Such activity is indistinguishable from that of any private academic or corporate actor who uses commercial communication channels to transmit information to the United States.

All of UNB's subsequent challenged conduct was in connection with this commercial educational relationship. This includes investigating Col. Mastriano's dissertation, releasing his previously embargoed thesis, making statements to the American press about his work, and coordinating with others to harm his professional reputation. These acts had direct and substantial effects in the United States. Col. Mastriano suffered the loss of book sales and publishing contracts with

11

U.S. publishers, loss of speaking and teaching opportunities at U.S. institutions, harm to political campaigns in the United States, and damage to professional reputation in U.S. markets. These explicit injuries satisfy the direct effect requirement.

### 3. The Tortious Acts Exception Applies.

The tortious acts exception strips immunity for money damages sought against a foreign state for personal injury or property damage occurring in the United States caused by the foreign state's tortious acts. 28 U.S.C. § 1605(a)(5). Col. Mastriano's claims satisfy this exception for three independent reasons.

UNB's conduct was genuinely tortious, not merely "academic." UNB publicly accused Col. Mastriano of academic fraud, released his embargoed dissertation without authorization, made statements to the American press portraying his work as dishonest, and coordinated with faculty to publish a defamatory letter on official university letterhead. Making knowingly false statements to destroy someone's professional reputation is defamation, not academic discourse. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). The mischaracterization of these acts as "academic protocol" is grossly inaccurate and a transparent attempt to minimize serious legal violations. Accusing someone of fraud is not rhetorical hyperbole subject to constitutional protection. *Id.*

12

Further, Col. Mastriano's injuries occurred in the United States. The proper inquiry whether the conduct caused a direct effect in the United States, not where the tortious actor was located when committing the tort. *Weltover, Inc.* at 618. Col. Mastriano's professional reputation, political campaigns, place in the marketplace, and opportunities teaching and speaking all suffered harm. The fact that some of the tortious conduct originated in Canada is irrelevant to whether the injury occurred in the United States.

UNB affirmatively directed its tortious conduct at the United States. UNB made statements to the American press, issued press releases disseminated in the United States, posted defamatory content on social media accessible to U.S. audiences, and coordinated with U.S.-based co-conspirators. These are not passive acts with incidental U.S. effects. No, they are deliberate acts targeting a U.S. citizen in U.S. markets. UNB's invocation of the exclusions for libel, slander, misrepresentation, deceit, and interference with contract rights does not defeat this exception. Col. Mastriano's claims in the Second Amended Complaint extend well beyond these enumerated torts. The RICO claims Sherman Act claims, aiding and abetting, and negligence fall entirely outside of the exclusions under 28 U.S.C.§ 1605(a)(5)(B). UNB's invocation of academic freedom and First Amendment protections is equally misplaced. The Constitution does not shield knowingly false factual allegations made with actual malice. *New York Times Co. v. Sullivan*, 376

13

U.S. 254, 279–80 (1964). Academic freedom under the Constitution protects scholarly debate and good-faith criticism. It does not coordinated campaigns of defamation.

### 4. The Waiver Exception Applies.

UNB waived any sovereign immunity both expressly and implicitly. UNB cannot accept substantial payments from the U.S. government to educate U.S. military personnel, and simultaneously claim immunity from suit by a U.S. citizen and U.S. government beneficiary for conduct arising from that very relationship.

When UNB contracted with the Department of Defense to provide graduate education to U.S. military personnel in exchange for payment, it entered the commercial marketplace and subjected itself to the jurisdiction of U.S. Courts for disputes arising from those contracts. The educational contract between UNB and Col. Mastriano, facilitated through Department of Defense funding, necessarily contemplated that disputes would be resolved in a forum where both parties could seek redress. Given that Col. Mastriano is a U.S. citizen and U.S. military officer and that the contract was funded by the U.S. government, the parties necessarily contemplated U.S. jurisdiction. Col. Mastriano has not yet had the opportunity to obtain the specific contract documents through discovery, the nature of the commercial relationship itself constitutes an implied waiver for disputes arising from it.

14

Even absent any contractual waiver provision, UNB impliedly waived immunity by engaging extensively in commercial activities directed at the United States. UNB actively solicited U.S. military personnel to enroll in its programs, accepted substantial U.S. government funding, and held itself out as providing educational services in the U.S. market. These commercial activities constitute an implied waiver of immunity for disputes arising from those activities.

### 5.  The Expropriation Exception Applies.

The expropriation exception strips immunity where "rights in property taken in violation of international law are in issue," and the property is present in the United States in connection with commercial activity of the foreign state. 28 U.S.C. § 1605(a)(3). UNB unlawfully took Col. Mastriano's property rights in his doctoral degree, his dissertation, and his related intellectual property through the unauthorized release of his embargoed dissertation and the fraudulent manipulation of academic proceedings in coordination with a direct market competitor. This was done without of Col. Mastriano's consent or authorization.

These property rights existed in the United States and were directly connected to UNB's contract with the Department of Defense. This contract serves as UNB's commercial educational activities. UNB's improper release of embargoed materials, its participation in sham academic proceedings, and its coordination with Gregory to manufacture a pretext for undermining Col. Mastriano's intellectual property

15

rights constitute a taking within the meaning of the exception. The commercial nexus required by the statute is satisfied by UNB's ongoing DoD-funded educational contract.

## B. This Court Has Personal Jurisdiction Over All Defendants.

Col. Mastriano bears the burden of making a prima facie showing of jurisdiction, and the Court must accept his well-pleaded allegations as true. *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 964 (10th Cir. 2022). Specific jurisdiction requires that a defendant purposefully directed its activities at the forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If UNB is a foreign state for FSIA purposes, the relevant contacts are with the United States as a whole. Either way, jurisdiction is proper.

### 1. UNB Has Sufficient Minimum Contacts with the United States.

Personal jurisdiction exists where a defendant has purposefully directed its activities toward the forum or the United States as a whole. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987). UNB's contacts with the United States are both substantial and purposeful.

UNB purposefully directed commercial activities at U.S. residents by actively participating in a Department of Defense program to educate U.S. military personnel. This was not a passive relationship. UNB affirmatively sought out and enrolled U.S. military students, accepted substantial payments from the U.S.

government, and provided educational services to U.S. service members. UNB benefited substantially from this relationship through tuition payments and the prestige of educating U.S. military officers. In exchange for these benefits, UNB subjected itself to U.S. jurisdiction for disputes arising from these commercial relationships.

UNB then deliberately directed tortious communications into the United States. The 10th Circuit applies a "harmful effects test" requiring intentional action expressly aimed at the forum with knowledge that the brunt of the injury would be felt there. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020). UNB knew Mastriano was a U.S. citizen, a Pennsylvania state senator, a U.S. Senate candidate, and an author whose book market was overwhelmingly American. His speaking engagements and teaching opportunities were predominantly in the United States. His publisher was in the United States.

UNB cannot plausibly claim ignorance of where its actions would cause harm. The entire purpose of the alleged conspiracy was to harm Col. Mastriano's professional and political activities in the United States. UNB's effects on U.S. commerce were neither random nor fortuitous. They were the direct and deliberate consequences of conduct aimed at harming Col. Mastriano.

UNB also made statements to U.S. media, issued press releases disseminated in the United States, posted defamatory content on social media accessible to U.S.

17

audiences, and used U.S. instrumentalities of commerce to carry out its scheme. The Second Amended Complaint details how UNB coordinated with co-defendants located in Oklahoma and Pennsylvania, and used U.S.-based communication systems to publish defamatory materials. By publishing and promoting accusations of "fraud" regarding Col. Mastriano' dissertation while knowing Plaintiff was a U.S. citizen and public figure running for federal office, UNB expressly targeted U.S. audiences.

## 2. Individual Defendants Purposefully Directed Harm at the United States.

The Individual Defendants argue that specific jurisdiction must be assessed separately for each defendant. The Second Amended Complaint does not rely on Gregory's Oklahoma contacts to establish jurisdiction over the Individual Defendants. Rather, each University Defendant who signed the April 2023 open letter, made statements to the American press, or participated in coordinating with Gregory personally directed tortious acts at a U.S. public figure whose professional and political life was centered in the United States.

Defendant Jeffrey Brown, in particular, participated in a radio broadcast on WITF Public Radio in Harrisburg, Pennsylvania on July 25, 2023. This was not an incidental contact with the United States. This was the deliberate choice to broadcast false allegations about a Pennsylvania public figure over a Pennsylvania radio

18

station. Specific jurisdiction is proper where the sender had knowledge that offending communications were going to a specific forum. *Id.* at 1310. Brown knew the broadcast would reach Pennsylvania and U.S. audiences.

Each faculty member who affixed their signature to a letter on official UNB letterhead and disseminated it via social media and email to U.S. audiences likewise personally and in their individual capacity aimed that communication at the United States. These are not Canadian academics writing to each other in Canada. These are individuals who chose to use American media channels to make statements about an American public figure, knowing the injury would be felt there.

### 3. Exercising Jurisdiction is Reasonable.

Even where minimum contacts exist, this Court must consider whether jurisdiction comports with traditional notions of fair play and substantial justice under the Due Process Clause. This Court must assess reasonableness using the five-factor test from *OMI Holdings*. These factors include: (1) the burden on defendants; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial systems interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Jurisdiction is strongly supported here.

19

Any burden UNB and the Individual Defendants would bear in litigating in the United States is not constitutionally significant. UNB is a sophisticated institution that regularly engages in international transactions. It created this burden itself by choosing to engage in commercial activities in the United States and by purposefully directing tortious conduct at a U.S. resident. Modern communication technology and international legal practice make defending a lawsuit in Oklahoma no more burdensome than any international litigation. Further, UNB has retained experienced U.S. counsel throughout this proceeding.

The United States and Oklahoma have a direct interest in regulating the conduct of its residents and in ensuring they does not serve as a base of operations for conspiracies targeting citizens. The United States has a paramount interest in protecting U.S. citizens from foreign tortious conduct, in enforcing federal RICO and antitrust laws, and in ensuring that foreign entities that engage in commercial activities in the United States and commit torts harming U.S. residents are subject to U.S. jurisdiction.

Col. Mastriano is a U.S. citizen who suffered harm in the United States. Requiring him to litigate in Canada would be unjust and would effectively deny him a remedy. Canadian courts may not recognize U.S. federal claims under RICO and the Sherman Act, may apply different substantive standards, and may be unable to provide effective relief against all conspirators, many of whom are U.S. residents.

20

Moreover, he has no meaningful connection to Canada except for having attended graduate school there. Requiring him to travel to Canada to litigate a conspiracy orchestrated substantially in the United States would impose severe hardship.

The conspiracy at issue involves multiple defendants, many of whom are U.S. residents. Key evidence regarding harm to Col. Mastriano is in the United States. Litigating in Canada would require extensive international discovery and potentially split litigation across multiple forums. Canada's sovereign interests, while real, do not override U.S. jurisdiction given that UNB chose to contract with the U.S. government, enroll U.S. service members, and then direct a defamatory scheme at a U.S. public figure in U.S. markets.

All five reasonableness factors support exercising jurisdiction. UNB's argument that litigation would be inconvenient or burdensome cannot overcome its purposeful targeting of U.S. commerce. *World-Wide Volkswagen*, at 297.

**C. The Individual Defendants Are Not Shielded by Official-Capacity Immunity.**

The Individual Defendants argue they were sued in their official capacities and should be treated as UNB itself. This argument fails at the threshold. The Second Amended Complaint expressly states that all defendants are sued "in their individual capacities." This unambiguous pleading language forecloses any official-capacity

characterization. Courts accept Col. Mastriano's pleading as true at this stage, and he has chosen to sue these individuals personally for their tortious conduct.

The claims against the Individual Defendants target conduct they undertook as individual scholars and co-conspirators, not merely as UNB administrators. The faculty members who signed the April 2023 defamatory letter exercised their personal professional judgment in doing so. Defendant Brown chose on his own to appear on a Pennsylvania radio broadcast and make specific false statements. These individuals are sued because of specific tortious acts they personally committed, not merely because they hold positions at UNB. There appears to be no policy or recommendation encouraging or requiring professors at UNB to sign defamatory letters about former students, appear on American radio programs to call them frauds, or coordinate with competing historians to destroy a colleague's career. These were personal choices for which the individuals bear personal responsibility.

All causes of action pleaded against the Individual Defendants are also pleaded against other defendants not affiliated with UNB. This is not a case where the Individual Defendants are the sole conduit to UNB. Here, they acted as individual participants in a broader scheme.

The Individual Defendants alternatively argue that even if they are personally suable, UNB is a required party under Fed. R. Civ. P. 19(a)(1)(B) whose immunity

22

requires dismissal of all claims, relying on *TJGEM LLC v. Republic of Ghana*. This argument fails for three reasons.

First, as demonstrated above, UNB is not immune from this Court's jurisdiction. The Rule 19 argument is derivative of the FSIA immunity argument and falls with it. Second, even if UNB were immune, Rule 19 dismissal would not automatically follow. Courts considering whether an action may proceed in the absence of a required party must apply the equitable factors set forth in Federal Rule of Civil Procedure 19(b), including the prejudice to absent parties and the adequacy of alternative remedies. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–63 (2008). Here, Plaintiff has federal RICO and Sherman Act claims that cannot be adjudicated in Canadian courts. Dismissing this action in deference to Canadian jurisdiction would effectively deny Plaintiff the federal remedies Congress established for exactly this kind of coordinated fraud scheme. Third, the Individual Defendants overstate any prejudice to UNB. A judgment against a professor who personally signed a defamatory letter does not automatically impose institutional liability on UNB.

The cases the Individual Defendants cite involved situations where the foreign state was the real party in interest, and any judgment would be enforceable only against it. That is not the case here, where the individual faculty members made specific, personal choices to participate in tortious conduct.

23

**D. Service of Process is Proper.**

The Court authorized alternative email service on Defendants Rendall, Morton, MacMillan, Bothwell, Ferris, and Kuhn through March 2, 2026. Col. Mastriano fully complied with that order. The Individual Defendants' motion on this point was premature by their own admission. They seek dismissal only "to preserve the issue," while reserving the right to be heard on reply once the service period concludes. As to all other Individual Defendants, service has been properly effectuated consistent with the Court's prior orders.

**E. The Second Amended Complaint Pleads Sufficient Claims.**

UNB and the Individual Defendants attempt to recast a detailed fraud and defamation complaint as a mere academic dispute. It is not. The allegations describe a coordinated scheme to weaponize false accusations through U.S. communication channels and institutions, actions far removed from any legitimate academic review. Each of Plaintiff's counts identifies predicate acts, concerted behavior, and direct economic harm sufficient to proceed to discovery.

**1. Col. Mastriano Properly Pleads RICO Claims.**

A RICO claim requires (1) participation in the conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Tal v. Hogan*, 453 F.3d 1244, 1269 (10th Cir. 2006). Col. Mastriano has satisfied each claim with specificity in the Second Amended Complaint.

24

The Supreme Court defines a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The enterprise need not be formal or hierarchical. *Boyle v. United States*, 556 U.S. 938, 948 (2009). The enterprise at issue consists of Gregory, the Individual Defendants, UNB, and Roland Kuhn, all of whom associated for the common purpose of destroying Col. Mastriano's academic reputation and eliminating him as a market competitor. This is a defined group with identified roles, ongoing relationships, coordinated activities, and a seven-year operational history. UNB's role was critical. Without its willingness to open sham investigations and release embargoed materials, the conspiracy could not have succeeded.

The Second Amended Complaint identifies at least fourteen specific predicate acts of wire fraud under 18 U.S.C. § 1343. Each of these acts involved a scheme to defraud, the use of wire communications, an intent to deceive, and actual harm to Col. Mastriano. These acts were related, all in furtherance of a common scheme, and posed a continuing threat extending over years.

Col. Mastriano alleges concrete economic injuries directly traceable to the enterprise's conduct. These include cancelled speaking fees, lost royalties, terminated consulting contracts, withdrawn publisher interest, and interference with political campaigns. These are classic business and property injuries cognizable

25

under RICO. Fraudulent investigations conducted for improper purposes, coordinated with a market competitor, timed to political campaigns, and in violation of the university's own policies, are actionable under RICO regardless of whether they masquerade as academic proceedings.

### 2. Col. Mastriano Properly Pleads Claims Under the Sherman Act.

The Sherman Act prohibits every contract, combination, or conspiracy in restraint of trade or commerce. 15 U.S.C. § 1. This prohibition extends to any concerted action that unreasonably restrains competition, regardless of the specific method employed. *Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004). Using fraud to eliminate competitors is per se anticompetitive. The Sherman Act does not permit competitors to lie about products to drive each other from the market, regardless of whether they are disguised as academic discourse.

Col. Mastriano and Defendants compete in the relevant market for WWI military history. This includes books, lectures, media productions, and related products. The Second Amended Complaint identifies both the product market and the geographic market with sufficient specificity for this stage. Defendants collectively held significant market power and willfully used fraud to maintain it by eliminating Col. Mastriano as a competitor.

26

UNB caused cognizable antitrust injury. By destroying Col. Mastriano's reputation through fraud, Defendants reduced output in the WWI history market, reduced consumer choice, and chilled entry by other scholars. Consumers lost access to his books, lectures, and historical analysis. These are not mere personal injuries. They are factual injuries to competition, and are precisely the type of harm the antitrust laws were designed to prevent. The Individual Defendants argument that their conduct was "pro-competitive academic criticism" is no defense to a scheme that employed fraud rather than merit to drive a competitor from the market.

### 3. Col. Mastriano Properly Pleads Defamation and False Light.

Actual malice is established in this scheme by the fact that Defendant Gregory had actual knowledge of falsity. UNB had twice investigated Col. Mastriano for fraud allegations and found no academic fraud. He knew of UNB's findings, and yet broadcast the same allegations anyway. That is the paradigmatic definition of actual malice. Defendant Brown participated in and ratified the broadcast by making similar statements himself and by failing to challenge Gregory's false statements. Brown's participation on the broadcast was deliberate and knowing.

As to the statute of limitations, the primary defamatory statements at issue occurred during and after the July 2023 broadcast, and this action was filed May 31, 2024. This is well within the one-year limitations period. Prior statements may be referenced to establish the pattern of actual malice but do not trigger a separate

27

limitations bar on claims arising from the July 2023 broadcast.  And the defamatory letter is unretracted, distributed by electronic mails and internet postings to students and remains so by the UNB and individual defendants.

Regarding the False Light claim, the University Defendants created and sustained a false public impression that Mastriano was an academic fraud who fabricated sources and engaged in scholarly misconduct. They did so through UNB press statements, the faculty open letter, coordination with Gregory, and various media appearances. This false impression would be highly offensive to any reasonable person in Col. Mastriano's position. Defendants acted with knowledge of the falsity or reckless disregard for it.

The Individual Defendants argue that characterizing Col. Mastriano's political views is non-actionable opinion. The actionable false light is not the characterization of his political views. Rather, it is the sustained false representation that he committed academic fraud. That representation is false, verifiable, and highly offensive to a reasonable person. *Milkovich* at 19. False light and defamation are distinct torts that may both arise from the same underlying conduct, and Col. Mastriano is entitled to plead both.

### 4.  Col. Mastriano Properly Pleads the Remaining Claims.

The Second Amended Complaint pleads fraud against UNB, alleging that (1) UNB made representations to Col. Mastriano and the Department of Defense that it

would provide rigorous doctoral oversight, follow its own policies, maintain the integrity and value of the degrees it awarded, and provide due process; (2) Col. Mastriano and the DoD paid substantial sums in reliance on those representations; (3) UNB awarded Col. Mastriano a PhD in 2013 after unanimous approval; and (4) UNB then systematically worked to undermine the value of that degree by coordinating with a market competitor, releasing embargoed materials without authorization, opening sham investigations, and timing press statements to political campaigns.

These allegations satisfy FRCP Rule 9(b)'s particularity requirements. The Individual Defendants argue that Col. Mastriano does not identify a specific false representation made at enrollment. But fraud is not limited to misrepresentations at contract formation; it encompasses fraudulent conduct throughout performance. Each specific act Col. Mastriano identifies constitutes a particularized act of fraud that can be tested against UNB's own policies. The harm flows directly and proximately from these fraudulent acts, not merely from "academic fallout."

The aiding and abetting claim alleges that the Individual Defendants aided UNB's breach of fiduciary duty with knowledge and through substantial assistance. The elements are satisfied. The Individual Defendants had actual knowledge of UNB's fiduciary relationship with Col. Mastriano. They are UNB faculty who knew Col. Mastriano was a doctoral graduate to whom the university owed ongoing

29

obligations. They provided substantial assistance by signing and disseminating a defamatory letter on official university letterhead, making public statements, and participating in the investigation committee, all of which gave institutional credibility to baseless allegations. Without the participation of UNB faculty and administrators, Gregory's allegations would have had no institutional credibility.

Col. Mastriano's breach of contract claim identifies the enrollment agreement between him and UNB, together with UNB's published policies and procedures, as the governing contract. Col. Mastriano fully performed all obligations, including completing coursework, passing examinations, conducting extensive original research, successfully defending his dissertation, and paying all required tuition and fees. UNB breached their duty by releasing Col. Mastriano's embargoed dissertation in violation of its own embargo policies; reopening a closed investigation at the behest of a market competitor; failing to provide due process; coordinating press statements with Plaintiff's political campaigns; and systematically working to undermine the value of the degree for which it had been paid.

The Individual Defendants argue that Col. Mastriano does not identify a specific contractual term or allege a contract price. A doctoral enrollment agreement is a complex ongoing relationship governed by UNB's published policies and academic procedures. The specific provisions breached, including embargo policies, investigation procedures, due process protections, are specifically alleged. The

30

contract price is the tuition paid through the Department of Defense funding, which is also alleged. These are factual matters that discovery will confirm. Dismissal at this stage is unwarranted.

A duty of care arises here from the specific contractual and fiduciary framework created by the doctoral program, which includes ongoing obligations to maintain the validity and integrity of degrees awarded, to protect embargoed intellectual property, and to follow established academic procedures in any subsequent review. This is a specific claim that the ongoing relationship between UNB and Col. Mastriano created specific, concrete duties that UNB and its employees breached. The breach is well-pleaded. UNB failed to follow its own procedures, released confidential materials, coordinated with a competitor, and made public statements without adequate basis. The harm was entirely foreseeable and is concretely alleged.

## F. Dismissal With Prejudice Would be Improper.

UNB and the Individual Defendants ask Court to dismiss the Second Amended Complaint against them with prejudice on the ground that Col. Mastriano has already amended twice and still cannot state a claim. This argument is contrary to the applicable standard. The FRCP provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Dismissal with prejudice is appropriate only where amendment would be futile, where there has been willful

failure to cure after notice, or where the opposing party would suffer undue prejudice. *Bylin v. Billings,* 568 F.3d 1224, 1229 (10th Cir. 2009). None of those conditions are satisfied here.

As demonstrated above, the Second Amended Complaint states plausible claims against UNB and the Individual Defendants on multiple grounds. Dismissal with prejudice is therefore inappropriate as a matter of law because the Court should not dismiss with prejudice when the operative complaint states a claim. Even if this Court were to find any residual pleading deficiency, Col. Mastriano has identified in verified declarations and supporting materials additional facts not yet incorporated into the Second Amended Complaint that, if this Court so directs, could cure any such deficiency. Amendment would therefore not be futile.

This case is still in its early stages, no discovery has been taken, and no trial date has been set. Permitting Col. Mastriano to amend would not impose any unreasonable burden. Accordingly, should the Court identify any deficiency in the Second Amended Complaint, Col. Mastriano respectfully requests leave to amend under FRCP Rule 15(a)(2) to cure any such deficiency.

## V.    CONCLUSION

WHEREFORE, Col. Mastriano respectfully requests this Court to Deny UNB/Individual Defendants' Motions to Dismiss and Briefs in Support and, if any

32

deficiencies remain, to grant Col. Mastriano leave to amend the Complaint to the

extent of any insufficiency.

Respectfully submitted,

The Cox Law Center, LLC
By:
_____/s/_____
Daniel L. Cox, OKWD Bar 2490
Attorney for Plaintiff
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Ph: 410-254-7000
Fx: 410-254-7220
E-mail: dcox@coxlawcenter.com

## CERTIFICATE OF SERVICE

This is to certify on this 16th day of March 2026, that a copy of the foregoing was served on counsel of record via CM/ECF.

_____/s/_____
Daniel L. Cox

33