# IN THE UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO

*PLAINTIFF*,

v.

James Gregory, III
1509 Vandivort Place
Edmond, OK 73034

And

Roland Kuhn, the National Research Council of Canada, Paul Mazerolle, President and Vice-Chancellor, University of New Brunswick, Canada; David MaGee, Vice-President, Research; Drew Rendall, Dean, Graduate Studies; Jeff Brown; Cindy Brown; Stephen Dutcher; Sean Kennedy; Erin Morton; Mattew Sears; Lee Windsor; Stefanie Hunt-Kennedy; Carolyn MacDonald; Sasha Mullaly; Lisa Todd; Sarah-Jane Corke; Bonnie Huskins; Elizabeth Mancke; Janet Mullin; Angela Tozer; Margaret MacMillan; Robert Bothwell; John Ferris;
  - *each in his or her individual capacity*

And

University of New Brunswick, Canada,

And

John & Jane Doe

*DEFENDANTS*.

Case No.: 5:24-cv-00567-J

Assigned to the Hon. Bernard M. Jones

**THE UNIVERSITY OF NEW BRUNSWICK AND THE INDIVIDUAL UNIVERSITY DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB ........2

   A.   UNB Is An Instrumentality Of A "Foreign State" Entitled to Immunity.............2

      1. UNB Is "An Agency Or Instrumentality Of A Foreign State" ..........................3

      2. The Individual University Defendants Are Also Entitled To Immunity ...........6

      3. No Exceptions To Foreign Sovereign Immunity Apply....................................8

         a. The Commerical Activity Exception To Immunity Does Not Apply ...........8

         b. The Tortious Act Exception To Immunity Does Not Apply.......................10

      4. UNB Did Not Waive Its Immunity ...............................................................10

      5. The Expropriation Exception Does Not Apply ..............................................11

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER UNB AND THE
      INDIVIDUAL UNIVERSITY DEFENDANTS .................................................12

   A.   UNB Lacks Sufficient Minimum Contacts With The Forum ...........................12

   B.   The Individual University Defendants Did Not Purposely Avail Themselves Of
        The Oklahoma Forum .....................................................................................13

   C.   The Exercise Of Personal Jurisdiction Over UNB and the Individauls In This
        Forum Offends Traditional Notions Of Fair Play And Substantial Justice.........15

IV.   PLAINTIFF FAILS TO STATE A CLAIM............................................................17

   A.   Plaintiff Fails To Plead A Racketeering Claim ....................................................17

   B.   Plaintiff Fails To Plead A Sherman Act Claim.....................................................19

   C.   Plaintiff Fails To Plead A Fraud Claim ................................................................20

   D.   Plaintiff Fails To Plead An Aiding And Abetting Claim....................................21

   E.   Plaintiff Fails To Plead A Breach Of Contract Claim .......................................21

F.    Plaintiff Fails To Plead A Negligence Claim ....................................................... 22

G.    Plaintiff Fails To Plead A Defamation Claim....................................................... 22

H.    Plaintiff Fails To Plead A False Light Claim ....................................................... 23

V.    DISMISSAL SHOULD BE WITH PREJUDICE AND PLAINTIFF SHOULD
      NOT BE PERMITTED TO AMEND ........................................................................ 23

VI.   PLAINTIFF SHOULD NOT BE PERMITTED TO CONDUCT
      JURISDICTIONAL DISCOVERY ........................................................................... 24

VII.  CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abelesz v. Magyar Nemzeti Bank,*
  692 F.3d 661 (7th Cir. 2012) ...................................................................... 12

*Almeida v. BOKF,*
  NA, 471 F. Supp. 3d 1181 (N.D. Okla. 2020). ............................................ 21

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.,*
  480 U.S. 102 (1987) ............................................................................... 15, 16

*Barrett v. Tallon,*
  30 F.3d 1296 (10th Cir. 1994) .................................................................... 20

*Benton v. Cameco Corp.,*
  375 F.3d 1070 (10th Cir. 2004) ...................................................... 15, 16, 17

*Breakthrough Mgmt. Grp. v. Chukchansi Gold Casino & Resort,*
  629 F.3d 1173 (10th Cir. 2010) ......................................................... 3, 24, 25

*Calder v. Jones,*
  465 U.S. 783 (1984) ............................................................................... 14, 15

*Cutcliffe v. Univ. of Ulster,*
  No. 1:12-CV-00193-DBH, 2013 WL 682842 (D. Me. Feb. 5, 2013) ........... 6

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,*
  51 F.3 1063 (10th Cir 2008) ...................................................................... 15

*Gross v. Burggraf Constr. Co.,*
  53 F.3d 1531 (10th Cir. 1995) ...................................................................... 6

*Farberware, Inc. v. Groben,*
  764 F.Supp. 296 (S.D.N.Y.1991) ............................................................... 19

*Filler v. Hanvit Bank,*
  378 F.3d 213 (2d Cir. 2004) ......................................................................... 3

*Hill v. Stowers,*
  680 S.E.2d 66 (W. Va. 2009) ...................................................................... 23

iii

*Indep. Towers of Wash. v. Wash.*,
  432 F.3d 20 (1st Cir. 2005) ............................................................................... 18

*In re Rivera Torres,*
  432 F.3d 20, 23-24 (1st Cir. 2005) .................................................................... 11

*In re Terrorist Attacks on Sept. 11, 2001,*
  714 F.3d 109 (2d Cir. 2013) .............................................................................. 10

*Irizarry-Mora v. Univ. of Puerto Rico,*
  647 F.3d 9 (1st Cir. 2011) ................................................................................... 5

*Jackson v. GreerWalker, LLP*,
  2018 WL 894873 (N.D. Okla. Feb. 14, 2018) ................................................... 21

*Jam v. Int'l Fin. Corp.,*
  586 U.S. 199 (2019) ............................................................................................. 9

*Johnson v. Arden,*
  614 F.3d 785 (8th Cir. 2010) ............................................................................. 14

*Kansas Penn Gaming, LLC v. Collins,*
  656 F.3d 1210 (10th Cir. 2011) ........................................................................... 7

*Kashani v. Purdue Univ.,*
  813 F.2d 843 (7th Cir. 1987) ........................................................................... 5, 6

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) .................................................................... 3, 5, 24

*Koch v. Koch Indus.*,
  203 F.3d 1202 (10th Cir. 2000) ......................................................................... 20

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems
  Holdings, Inc.*,
  79 F.4th 1209 (10th Cir. 2023) .......................................................................... 24

*Qandah v. Johor Corp.*,
  799 F. App'x 353 (6th Cir. 2020) ........................................................................ 3

*Republic of Argentina v. Weltover, Inc.,*
  504 U.S. 607 (1992) ........................................................................................ 8, 10

*Roberts v. Wamser*,
  883 F.2d 617 (8th Cir. 1989) ............................................................................. 23

*RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*,
   338 F. Supp. 2d 1208 (D. Colo. 2004). ............................................................. 3

*Samson Resources Co. v. J. Aron & Co.*, 2009 WL 1606564 (N.D. Okla.
   June 8, 2009) .................................................................................................... 25

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993) ........................................................................................... 9

*Tal v. Hogan*,
   453 F.3d 1244 (10th Cir. 2006) ................................................................... 18, 20

*TIG Ins. Co. v. Republic of Argentina*,
   110 F.4th 221, 236 (D.C. Cir. 2024) ............................................................... 11

*Underwager v. Salter*,
   22 F.3d 730 (7th Cir. 1994) ............................................................................... 1

*Walden v. Fiore*,
   571 U.S. 277, 289 (2014) ................................................................................ 14

*Watson v. Univ. of Utah Med. Ctr.*,
   75 F.3d 569 (10th Cir. 1996) ........................................................................ 4, 5

*XMission, L.C. v. Fluent LLC*,
   955 F.3d 833 (10th Cir. 2020) ................................................................... 12, 13

*XMission, L.C. v. PureHealth Research*,
   105 F.4th 1300 (10th Cir. 2024) ..................................................................... 14

*Young v. New Haven Advocate,*
   315 F.3d 256 (4th Cir. 2002) ........................................................................... 14

**Statutes**

28 U.S.C. § 1603 ....................................................................................................2,3

28 U.S.C. § 1605 ..................................................................................................... 11

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 9.......................................................................................... 18, 19, 20

In further support of the University of New Brunswick's ("UNB") Motion to Dismiss (Doc. # 195), the Individual University Defendants' Motion to Dismiss (Doc # 196), and in reply to the Plaintiff's Consolidated Response Brief (Doc. # 200), UNB and Paul Mazerolle, David MaGee, Drew Rendall, Jeff Brown, Cindy Brown, Stephen Dutcher, Sean Kennedy, Erin Morton, Matthew Sears, Lee Windsor, Stefanie Hunt-Kennedy, Carolyn MacDonald, Sasha Mullaly, Lisa Todd, Sarah-Jane Corke, Bonnie Huskins, the Estate of Elizabeth Mancke, Janet Mullin, Angela Tozer, Margaret MacMillan, Robert Bothwell, and John Ferris (collectively, the "Individual University Defendants") state as follows:

## I.    <u>INTRODUCTION</u>

Plaintiff's Response Brief attempts to transform routine academic oversight into an international RICO, antitrust, and defamation conspiracy. However, nothing in Plaintiff's Response Brief changes the fact that this dispute is, at base, a dispute over the credibility of Plaintiff's academic research that should be resolved by an educational committee. *See Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation"). Nothing in Plaintiff's Response Brief changes the fact that Plaintiff is suing the alleged employees and agents of an instrumentality of a foreign state that is immune from suit, and that immunity extends to UNB's alleged employees and agents. Nothing in Plaintiff's Response Brief changes the fact that this Court lacks personal jurisdiction over UNB and the Individual University Defendants because this dispute concerns claims against a Canadian university and Canadian individuals relating to an academic relationship formed in Canada,

1

statements allegedly made in Canada, and an investigation allegedly taking place in Canada. Nothing in Plaintiff's Response Brief changes the fact that Plaintiff fails to state a legally cognizable claim. All of Plaintiff's claims should be dismissed *with prejudice*.

To avoid repetitious argument and in compliance with LCvR7.1(h), this Reply Brief focuses on the arguments raised in Plaintiff's Response Brief (Doc. # 200). However, in support of their respective Motions to Dismiss, UNB and the Individual University Defendants also incorporate by reference, and adopt to the extent they apply, the arguments in support of dismissal advanced by Defendant Gregory and Defendant Kuhn.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER UNB AND THE INDIVIDUAL DEFENDANTS

Plaintiff argues that: (1) UNB is not an instrumentality of a foreign state; (2) the Individual University Defendants are not shielded by official-capacity immunity; (3) even if UNB is an instrumentality of a foreign state, UNB is not entitled to FSIA immunity because several exceptions to immunity apply; and (4) UNB waived its immunity. As explained below, Plaintiff is incorrect on each of these issues as UNB is entitled to immunity and the Individual University Defendants cannot be sued independent of UNB or in a manner that defeats that immunity.

### A.    UNB Is An Instrumentality Of A "Foreign State" Entitled To Immunity

The Foreign Sovereign Immunities Act defines a "foreign state" to include both "a political subdivision of a foreign state" and "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" includes any

entity that is "a separate legal person," "an organ of a foreign state," and not organized under the laws of a U.S. state or third country. 28 U.S.C. § 1603(b).

### 1. UNB Is "An Agency Or Instrumentality Of A Foreign State"

Plaintiff argues that UNB does not qualify as "an agency or instrumentality of a foreign state" under the multi-factored test applied in *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000): (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law. (Doc. # 200 at ECF p. 7).[1]

---

[1] Although neither Plaintiff nor UNB has located a decision by the U.S. Court of Appeals for the 10th Circuit adopting the test used in *Kelly*, the *Kelly* decision has been cited with approval by the 10th Circuit in *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1190 (10th Cir. 2010) and by a District Court in the 10th Circuit in *RSM Prod. Corp. v. Petroleos de Venezuela Societa Anonima (PDVSA)*, 338 F. Supp. 2d 1208, 1215 (D. Colo. 2004). The test applied in *Kelly* has also been applied by other Courts of Appeal. *See*, *e.g.*, *Qandah v. Johor Corp.*, 799 F. App'x 353, 358 (6th Cir. 2020); *Filler v. Hanvit Bank*, 378 F.3d 213, 217 (2d Cir. 2004). In *Qandah*, the U.S. Court of Appeals for the Sixth Circuit explained that the *Kelly* factors "aid in the determination of the organ prong, [but] there is no clear test… [a]nd Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly." *Qandah*, 799 F. App'x at 358. Accordingly, UNB urges the Court to apply the *Kelly* factors and interpret the terms of FSIA broadly. However, as noted in *Kelly*, an entity is <u>not</u> required to satisfy every factor to qualify as "an organ of a foreign state." *Kelly*, 213 F.3d at 847 (the factors provide a "helpful framework" for analyzing whether an entity is an organ of a foreign state, but "we will *not* apply them mechanically or require that all five support an organ-determination") (emphasis original). Plaintiff concedes that the *Kelly* factors provide a helpful framework, are not to be applied mechanically, and that an entity need not satisfy every factor to qualify for FSIA immunity. (Doc. # 200 at ECF p. 13).

First, Plaintiff argues that UNB is an educational institution with no governmental purpose. (Doc. # 200 at ECF pp. 13-14). Plaintiff ignores his own admission that UNB is a "public university." (Doc. # 188 at ECF p. 9). Without citation, Plaintiff argues that "Many state universities in the United States were similarly established by governmental charters yet remain subject to suit." (Doc. # 200 at ECF p. 14). In fact, the U.S. Court of Appeals for the 10th Circuit has recognized that "Our cases have consistently found state universities are arms of the state." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575 (10th Cir. 1996). That approach should be followed in this case where the General Assembly of the Province of New Brunswick expressly explained that UNB's purpose was not only "not only the usual subjects of a Collegiate course, *but also those branches of practical science and art which are adapted to the agricultural, commercial, and mechanical pursuits of the great body of the inhabitants of New Brunswick*." 23 Victoria – Chapter 63 (1859) (Doc. # 12-1 at ECF p. 1) (emphasis added). In other words, the General Assembly expressly identified a public purpose for the Province's public beyond education alone.

Second, Plaintiff seeks to minimize the relationship between the Province of New Brunswick and UNB. (Doc. # 200 at p. 14). Plaintiff suggests that the relationship boils down to "some board members have governmental connections[.]" (*Id.*). Plaintiff also argues that UNB cannot be an instrumentality of a foreign sovereign because UNB's Board has "independent decision-making authority" and New Brunswick's Lieutenant Governor "does not exercise day-to-day control over UNB's operations." (Doc. # 200 at ECF p. 14). However, nearly two-thirds of UNB's board members were appointed by the Lieutenant

4

Governor in Council, were elected by voters, or were appointed by the Board that includes individuals appointed by the Lieutenant Governor in Council and by elected officials. (Doc. # 195 at ECF pp. 10-11). In *Watson*, 75 F.3d at 575-77, the State of Utah's legislature established a State Board of Regents vested with "control, management, and supervision," of the University of Utah, and the U.S. Court of Appeals for the 10th Circuit still held that a because the majority of a university's board members were appointed by a state governor, the university was an arm of the state. The same is true here: most of UNB's Board is ultimately answerable to the public. Moreover, the U.S. Court of Appeals for the Seventh Circuit recognized in *Kashani v. Purdue Univ.*, 813 F.2d 843, 847 (7th Cir. 1987) that the delegation of powers from the sovereign to the university's board is "necessary to enable the university to function." Accordingly, there is no requirement that UNB prove that it is micro-managed by the government to qualify for immunity.

Third, Plaintiff argues <u>without citation</u> that UNB's employees are not "governmental employees" (Doc. # 200 at ECF p. 9), a term not used in *Kelly* and which Plaintiff does <u>not</u> define. In fact, UNB employees are public employees. (Doc. # 195 at ECF p. 13). Plaintiff suggests that UNB's employees are not public employees because UNB has sources of funding other than the Province of New Brunswick. (Doc. # 200 at ECF p. 9). It is undisputed that public universities routinely charge tuition and fees. *See* U.S. News & World Report, Top Public Schools, https://www.usnews.com/best-colleges/rankings/national-universities/top-public (last accessed March 22, 2026). And still "the vast majority of state universities have been found to be 'arms' of the State." *Irizarry-Mora v. Univ. of Puerto Rico*, 647 F.3d 9, 14 (1st Cir. 2011). Consistent with that reality, a

5

public university's acceptance of tuition and fees, and use of such funds to pay employee salaries, does <u>not</u> defeat immunity. *See Kashani*, 813 F.2d at 847-48 (noting that Purdue University's board set tuition and fees, and still holding that Purdue University was entitled to sovereign immunity); *Cutcliffe v. Univ. of Ulster*, No. 1:12-CV-00193-DBH, 2013 WL 682842, at * 11 (D. Me. Feb. 5, 2013), *adopted by* No. 1:12-CV-193-DBH, 2013 WL 685668, at *1 (D. Me. Feb. 25, 2013) (foreign public university that obtained funding both from the government *and from tuition payments*, qualified as an organ of a foreign state and consequently qualified as an "agency or instrumentality of a foreign government" for the purpose of FSIA).

Finally, Plaintiff argues that UNB does <u>not</u> hold exclusive rights "in any meaningful sense" because "the tax exemptions and statutory privileges UNB cites in its motion are typical benefits afforded to educational institutions…" and "[m]any private universities enjoy similar tax-exempt status and statutory protections." (Doc. # 200 at ECF p. 15). Plaintiff cites <u>nothing</u> in support of this argument. Therefore, the argument can and should be ignored by the Court. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (courts will not consider factual allegations in briefs that are unsupported by citation). Plaintiff's argument is also factually incorrect: the statutory privileges extended to UNB and its President go beyond tax exemptions. (Doc. # 195 at ECF pp. 21-22).

### 2.  The Individual University Defendants Are Also Entitled To Immunity

The Individual University Defendants are immune from suit, in the first instance, because they are sued in their *official capacity*. (Doc. # 196 at ECF pp. 2-3). Plaintiff argues that this argument is "foreclose[d]" because Plaintiff "unambiguous[ly]" pleads that all

defendants are sued in their individual capacities. (Doc. # 200 at ECF p. 27). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

Accordingly, in evaluating the Plaintiff's Second Amended Complaint, the Court should look beyond the legal labels to the *facts* alleged in the Second Amended Complaint: (a) the Individual University Defendant faculty members who allegedly signed the letter filed as *Exhibit 5* to Plaintiff's Second Amended Complaint are in this lawsuit because they sent a letter with *UNB's* logo in connection with *UNB's* investigation of Plaintiff's PhD that was awarded by *UNB* for research that was performed at *UNB*; and (b) the Individual University Defendants serving on the "investigatory committee" are in this lawsuit for serving on a *UNB* committee investigating research performed at *UNB*. (Doc. # 154 at ECF pp. 10-13). Most significantly, Plaintiff expressly alleges both UNB *and the Individual University Defendants* committed acts of racketeering and conspiracy to "advance their property interests [and] tuition enrollments." (Doc. # 188 at p. 11). But individuals do not have "tuition enrollments." Universities like UNB have "tuition enrollments." Plaintiff clearly advances only *official capacity* claims.

With respect to the Individual University Defendants' alternative argument that the claims against the Individual University Defendants cannot go forward without UNB because UNB has an interest relating to the subject of the claims against the Individual University Defendants, and disposing of those claims in UNB's absence may impair or impede UNB's ability to protect its interests, Plaintiff argues that the Court should balance

the potential prejudice to Plaintiff of dismissal versus the potential prejudice to UNB if the claims against the Individual University Defendants go forward without UNB's participation. Doc. # 200 at ECF p. 29. However, the potential prejudice to UNB is overwhelming given Plaintiff's stature as a public figure and the highly inflammatory nature of Plaintiff's conspiracy and racketeering claims. It is self-evident that there would be far-reaching and significant consequences for UNB, the Province of New Brunswick, and Canada if—in UNB's absence—an American court adjudicates allegations of conspiracy and racketeering allegedly perpetrated by the employees of a Canadian government instrumentality against an elected U.S. politician.

### 3.    No Exceptions To Foreign Sovereign Immunity Apply

Plaintiff argues that even if UNB otherwise qualifies for foreign sovereign immunity, several exceptions to immunity apply. Plaintiff is incorrect.

### a.  The Commercial Activity Exception To Immunity Does Not Apply

Plaintiff argues that UNB engaged in commercial activity by contracting with the U.S. Department of Defense to provide educational services to Plaintiff. (Doc. # 200 at ECF p. 16). Plaintiff cites *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) for the proposition that UNB's alleged contract with the U.S. Department of Defense to educate a soldier was "quintessential commercial activity…" (*Id.* at ECF p. 10). In fact, the *Republic of Argentina* case involved the issuance of bonds and had nothing to do with contracting to educate soldiers. A public education program wherein one sovereign engages another sovereign to educate soldiers, who are one sovereign's employees, is not the type of action by which a private party engages in trade and traffic or commerce.

Second, this suit is <u>not</u> about the enforcement, terms, or breach of the alleged contract with the U.S. Department of Defense. In *Saudi Arabia v. Nelson*, 507 U.S. 349 (1993), the U.S. Supreme Court held that a foreign university's recruitment of American students and acceptance of U.S. funds did <u>not</u> automatically create U.S. jurisdiction. In *Saudi Arabia*, the Court rejected jurisdiction over the Saudi government (and its hospital) even though the Saudi hospital had recruited the U.S citizen plaintiff through a U.S. magazine advertisement and entered into a contract signed in the United States. The Court held the claim was not based upon those contacts because the conduct giving rise to the claim was detention and torture abroad—not the recruitment of U.S. citizens or contracts signed in the United States. *Id*. at 355-58. Here, Plaintiff's claim is not based on the alleged contract with the U.S. Department of Defense. Instead, the gravamen of his claim is Defendants' alleged use of communications and media to allegedly defame Plaintiff. This is <u>not</u> a commercial dispute.

Third, for the commercial activity exception to apply, the gravamen of the lawsuit must be based upon tortious activity <u>within the United States</u>. *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 215 (2019). Even if UNB contracted with the U.S. Department of Defense, this suit is <u>not</u> about the enforcement or breach of that contract in the United States. Instead, this suit is about an academic dispute related to the research Plaintiff undertook in Canada (Doc. # 188 at ECF p. 6) and allegedly defamatory communications allegedly sent from Canada. (*Id*. at ECF pp. 7-9; *see also* Doc. # 188-2 and Doc. # 133-5). Because the "gravamen" of the claims against UNB in this lawsuit involve alleged activity in Canada, the commercial activity exception does <u>not</u> apply.

### b.  The Tortious Act Exception To Immunity Does Not Apply

Plaintiff argues that, even if UNB qualifies as an agency or instrumentality of a foreign government, the tortious acts exception strips UNB of immunity. (Doc. # 200 at ECF pp. 18-20). As discussed in UNB's Motion, the tortious act exception does <u>not</u> apply because: (1) Plaintiff alleges an academic dispute, not tortious acts; (2) the tortious act exception only applies when the *entire tort* was committed in the United States; and (3) Plaintiff's alleged claims arise from types of claims expressly excepted from the "tortious act" exception. (Doc. # 195 at ECF pp. 23-25).

Plaintiff cites *Republic of Argentina v. Weltover, Inc.*, 504 U.S. at 618, for the proposition that the tortious act exception applies if a defendant's "conduct caused a direct effect in the United States[.]" (Doc. # 200 at ECF p. 19). The *Republic of Argentina* decision actually does <u>not</u> address the tortious act exception at all; instead, it analyzes the application of the commercial activity exception. *See Republic of Argentia*, 504 U.S. at 620. For the tortious act exception to apply, the *entire tort* must be committed in the United States. *In re Terrorist Attacks on Sept. 11*, 2001, 714 F.3d 109, 115 (2d Cir. 2013). Plaintiff alleges that UNB committed conduct in Canada. (Doc. # 188 at ECF pp. 6-9; *see also* Doc. # 188-2 and Doc. # 133-5). Therefore, the tortious acts exception cannot apply because the *entire tort* did <u>not</u> occur in the United States.

### 4.    UNB Did Not Waive Its Immunity

First, Plaintiff argues that UNB waived immunity when it contracted with the U.S. Department of Defense. (Doc. # 200 at ECF p. 14). But Plaintiff fails to cite any of the terms of that alleged contract. Accordingly, Plaintiff <u>cannot</u> meet the standard for explicit

waiver of immunity, which requires that waiver must be "unequivocally expressed." *In re Rivera Torres*, 432 F.3d 20, 23-24 (1st Cir. 2005) (citations omitted).

Second, Plaintiff argues that the contractual relationship between UNB and Plaintiff, facilitated by the U.S. Department of Defense funding, indicates that "the parties necessarily contemplated U.S. jurisdiction." (Doc. # 200 at ECF p. 14). This is an implied waiver argument. Plaintiff ignores that the implied waiver provision must be construed narrowly and there are only three circumstances in which a sovereign will be treated as having impliedly waived its immunity: (1) executing a contract containing a choice-of-law clause designating the laws of the United States as applicable; (2) filing a responsive pleading without asserting sovereign immunity; or (3) agreeing to submit a dispute to arbitration in the United States. *TIG Ins. Co. v. Republic of Argentina*, 110 F.4th 221, 236 (D.C. Cir. 2024). In this case, Plaintiff neither alleges nor argues that any of these three circumstances occurred. Accordingly, the alleged contractual relationship between UNB and Plaintiff <u>cannot</u> be an implied waiver of immunity.

### 5.    The Expropriation Exception Does Not Apply

Plaintiff argues that UNB is not immune because the expropriation exception to FSIA immunity allegedly applies. (Doc. #200 at ECF pp. 15-16). This argument fails. The expropriation exception, 28 U.S.C. § 1605(a)(3), applies only when a foreign sovereign or its instrumentality has taken property *in violation of international law* and the claim "relates to" that property. Plaintiff does not even attempt to argue that any defendant violated international law. Moreover, Plaintiff's claims arise entirely from alleged communications, academic disputes, and reputational harm, none of which involve the

11

taking of property. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 671 (7th Cir. 2012) (FSIA claims must have a direct nexus to property for the expropriation exception to apply). Accordingly, the expropriation exception does not apply, and Plaintiff's claims remain barred by sovereign immunity.

*    *    *

UNB is entitled to immunity. No exceptions apply, and UNB has not waived immunity. The Individual University Defendants are immune in their official capacities, and derivative claims cannot proceed without UNB. Accordingly, this Court lacks subject matter jurisdiction, and Plaintiff's claims must be dismissed *with prejudice* for lack of subject matter jurisdiction.

### III.   THIS COURT LACKS PERSONAL JURISDICTION OVER UNB AND THE INDIVIDUAL UNIVERSITY DEFENDANTS

In his Response Brief, Plaintiff argues that UNB and the Individual University Defendants are subject to specific personal jurisdiction in this forum. In fact, there is no basis for personal jurisdiction over these Defendants.

#### A. UNB Lacks Sufficient Minimum Contacts With The Forum

Plaintiff argues that UNB has sufficient minimum contacts with the United States because UNB must have known that Plaintiff would be harmed in the United States. (Doc. # 200 at ECF 22-24). But the mere foreseeability that actions may cause injury in that jurisdiction is not a basis for specific personal jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840-41 (10th Cir. 2020). To establish specific personal jurisdiction, Plaintiff instead must show: (a) an intentional action that was; (b) expressly aimed at the forum

12

with; (c) knowledge that the brunt of the injury would be felt in the forum state. *Id*. at 841. Plaintiff cannot do so.

UNB's alleged conduct took place in Canada. UNB urges the Court to carefully examine the centerpiece of the alleged conduct upon which Plaintiff complains—the alleged "public letter of denouncement" attached to Plaintiff's Second Amended Complaint as *Exhibit 5*. (Doc. # 188 at p. 15). Plaintiff himself alleges that it was "issued to the world." *Id.* The document itself makes clear that it was aimed at *UNB students* in *Canada*. This is because the letter proposes three things: (1) a new event; (2) a new scholarship; and (3) an invitation for students to participate in departmental initiatives. (Doc. # 188-5 at ECF p. 2). No reasonable person would read this letter as inviting Plaintiff (in the United States) to attend the new event, apply for the new scholarship, or participate in departmental initiatives. This letter to students in Canada does not evidence any intentional act expressly aimed at the United States forum with the knowledge that the brunt of the injury would be felt in the United States.

Accordingly, UNB does not have the requisite minimum contacts with the United States for this Court to exercise specific personal jurisdiction over UNB.

**B.    The Individual University Defendants Did Not Purposely Avail Themselves Of The Oklahoma Forum**

Plaintiff argues that the Individual University Defendants "purposefully directed harm at the United States" by signing a letter, speaking to media, or allegedly coordinating with a U.S.-based defendant. (Doc. # 200 at ECF p. 24). This argument fails because it applies the wrong legal standard and does not establish forum-directed conduct.

13

First, Plaintiff improperly aggregates the "United States" as a whole. Specific personal jurisdiction for individuals must be based on contacts with the forum state—Oklahoma—not with the United States. *Walden v. Fiore*, 571 U.S. 277, 289 (2014).

Second, the "effects test" requires that a defendant's conduct be expressly aimed at the forum state with knowledge that the brunt of the injury would be felt there. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *XMission, L.C. v. PureHealth Research*, 105 F.4th 1300, 1309–10 (10th Cir. 2024). None of the Individual University Defendants' alleged communications were "expressly aimed" at Oklahoma. Plaintiff alleges that the Individual University Defendants made statements "to the American press," "to the world," or via social media. (Doc. # 188 at ECF p. 17). Such generalized or global communications are insufficient to establish purposeful direction toward any particular forum. Courts consistently reject personal jurisdiction where statements are not targeted at the forum state itself. *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002).

Plaintiff's Response Brief does <u>not</u> identify any contacts with Oklahoma. Plaintiff argues that Defendant Jeffrey Brown participated in a radio broadcast in Pennsylvania about Plaintiff, a Pennsylvania citizen. (Doc. # 200 at ECF p. 24). Even if true, that allegation demonstrates, at most, contacts with Pennsylvania—not Oklahoma. With respect to the Individual University Defendants who are allegedly UNB faculty, Plaintiff argues that those Individual University Defendants disseminated a letter "via social media and email to U.S. audiences." (Doc. # 200 at ECF p. 25). Plaintiff identifies no connection with Oklahoma. Finally, Plaintiff does not even attempt to argue the existence of connection

14

between Oklahoma and the Individual University Defendants who are not alleged to be UNB faculty.[2] There is no Oklahoma connection to any Individual University Defendant.

In short, Plaintiff alleges foreign conduct by Canadian university officials, directed at non-Oklahoma audiences, with no forum-specific targeting. That is insufficient to establish purposeful direction toward Oklahoma, and personal jurisdiction is lacking.

**C. The Exercise Of Personal Jurisdiction Over UNB and the Individuals In This Forum Offends Traditional Notions Of Fair Play And Substantial Justice**

Even if UNB has sufficient contacts, this Court must still consider whether the exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice. *See Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987). The exercise of personal jurisdiction over UNB offends traditional notions of fair play and substantial justice. (Doc. # 195 at ECF pp. 31-35).

In response, Plaintiff first argues that "[m]odern communication technology and international legal practice makes defending a lawsuit in Oklahoma no more burdensome than defending it in any other forum." (Doc. # 200 at ECF p. 26). However, the U.S. Court of Appeals for the 10th Circuit has held that the burden on a Canadian corporation with no offices, property, or employees in the forum state was "significant" and weighed against exercising jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004).

---

[2] Plaintiff appears to acknowledge that the analysis of jurisdiction for the Individual University Defendants cannot be done on an aggregate basis. (Doc. # 200 at ECF p. 24). Indeed, personal jurisdiction must be assessed separately for each defendant, and one defendant's forum contacts cannot be imputed to another. *Calder*, 465 U.S. at 790 (1984); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071–72 (10th Cir. 2008).

Email, cellular phones, and other modern technologies existed in 2004 when *Benton* was decided. There is no reason to depart from the Court of Appeals' precedent.

Second, Plaintiff argues that UNB is "a sophisticated institution that regularly engages in international transactions." (Doc. # 200 at ECF p. 26). Plaintiff cites <u>nothing</u> to support this argument. In fact, other than this case, UNB has no record of ever litigating in the United States or anywhere outside of Canada. (Doc. # 195-4 at ECF p. 3, ¶ 11).

Third, Plaintiff argues that UNB created the burden of litigating in the United States by choosing to engage in commercial activities in the United States. (Doc. # 200 at ECF p. 26). On the contrary, UNB provided education in Canada, and Plaintiff chose to enter into a relationship with UNB in Canada.

Fourth, Plaintiff argues that Oklahoma and the United States have strong interests in this litigation. (Doc. # 200 at ECF p. 26). However, his dispute involves education Plaintiff received in Canada and statements made in Canada about that education. (Doc. # 188 at ECF pp. 6, 10-16D). Moreover, Plaintiff completely ignores that "great care must be exercised when considering personal jurisdiction in the international context." *Asahi Metal*, 480 U.S. at 103 (1987). Even if Oklahoma or the United States had a minimal interest in this litigation, Canada's interest is greater because Plaintiff is seeking to recover from a Canadian public university for statements allegedly made in Canada relating to a relationship formed in Canada between Plaintiff and a Canadian public university. (Doc. # 195 at ECF pp. 29-35).

Fifth, Plaintiff argues that he personally has an interest in receiving convenient and effective relief in this jurisdiction. (Doc. # 200 at ECF pp. 25-26). But Plaintiff—a

16

Pennsylvania resident—fails to provide any explanation for why Oklahoma is a convenient jurisdiction even for him. Plaintiff further argues that Canadian courts may not recognize the claims he wishes to pursue, may apply different substantive standards, and may not permit him to obtain relief against all alleged conspirators. (*Id*. at ECF p. 26). Plaintiff cites <u>nothing</u> for this sweeping summary of what Canadian law may (or may not) recognize. Plaintiff has no real interest in litigating in Oklahoma.

Sixth, Plaintiff argues that many of the defendants are U.S. residents, that both evidence and witnesses exist in the United States, and therefore litigating in Canada would require "international discovery." (*Id.* at ECF p. 26). But there is only one defendant who is a U.S. resident—Mr. Gregory. There are twenty-four defendants in Canada. Wherever this suit is litigated, it will involve discovery across international lines. Given these facts, this Court should follow the Court of Appeals decision that the burden on a Canadian corporation with no offices, property, or employees in the forum state was "significant" and weighed against exercising jurisdiction. *Benton*, 375 F.3d at 1079.

*    *    *

For these reasons, and for the reasons stated in UNB and the Individual University Defendants' respective Motions to Dismiss, this Court lacks personal jurisdiction over the claims against them, and those claims must be dismissed *with prejudice*.

## IV.    <u>PLAINTIFF FAILS TO STATE A CLAIM</u>

### A.    Plaintiff Fails To Plead A Racketeering Claim

Plaintiff contends that he has satisfied each element of a RICO claim by asserting the existence of an enterprise, a pattern of racketeering activity, and resulting injury. (Doc.

17

# 200 at ECF pp. 30-32). But these assertions are conclusory and fall far short of the pleading standards required—particularly where the alleged predicate acts sound in fraud and must satisfy the heightened requirements of Rule 9(b).

Plaintiff's allegations of an "enterprise" consisting of Gregory, UNB, the Individual University Defendants, and others are unsupported by facts showing an organized, ongoing association functioning as a continuing unit. (Doc. # 188 at ECF p. 11; Doc. # 200 at ECF p. 25). Instead, Plaintiff describes, at most, a collection of individuals and a university responding to an academic dispute. Conclusory statements that these Defendants "associated" for a common purpose over a "seven-year operational history" do not plausibly establish the existence of a RICO enterprise. (*Id.* at ECF p. 31).

Plaintiff's reliance on purported predicate acts of wire fraud fares no better. Although Plaintiff claims to identify "at least fourteen" such acts, he does not plead them with the particularity required by Rule 9(b). *Id.* Nor does he identify them in his Response Brief.[3] A RICO claim predicated on fraud must allege the time, place, content of the alleged misrepresentation, the identity of the speaker, and the consequences thereof. *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006). Plaintiff instead offers only generalized allegations of "fraudulent investigations," "false allegations," and "coordinated communications," without identifying any specific false statement, when it was made, who made it, or why it was fraudulent. (Doc. # 200 at ECF pp. 25-26). Simply invoking the term "wire fraud," or

---

[3] The Court is under no obligation to try to discern what Plaintiff's Response Brief attempts to reference. "[J]udges are not like pigs, hunting for truffles buried in briefs." *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

counting alleged "acts," is insufficient. *See* Fed. E. Civ. P. 9(b); *see also generally Farberware, Inc. v. Groben*, 764 F.Supp. 296 (S.D.N.Y.1991) (holding that allegations describing a fraudulent scheme but lacking particularized facts as to the grounds of the claims do not satisfy Rule 9(b)).

Plaintiff also fails to plausibly allege a "pattern" of racketeering activity. His allegations arise from a discrete set of events—namely, a university investigation and related alleged public statements. Recasting those events as racketeering activity does not establish continuity or a threat of ongoing criminal conduct.

Finally, although Plaintiff asserts various categories of economic harm, he does not plausibly allege that any such injuries were proximately caused by a qualifying RICO predicate act. The alleged harms stem from reputational injury and third-party reactions to public controversy, not from any specifically pleaded act of wire fraud. Such attenuated allegations are insufficient to establish RICO causation.

Plaintiff attempts to transform an academic and reputational dispute into a federal racketeering case through conclusory allegations untethered to specific facts. Because Plaintiff fails to plead a RICO enterprise, predicate acts, a pattern of racketeering activity, or a direct RICO injury with the required specificity, his RICO claims must be dismissed.

### B.    Plaintiff Fails To Plead A Sherman Act Claim

Plaintiff first argues—without citation—that the Defendants, including UNB and the Individual University Defendants, "collectively held significant market power." (Doc. # 200 at ECF p. 32). There are no non-conclusory facts alleged to support that assertion.

19

Second, and most critically, Plaintiff fails to allege an antitrust injury. To state a claim under the Sherman Act, a plaintiff must allege injury to competition—not merely injury to himself. *Tal*, 453 F.3d at 1257–58. In his Response Brief, Plaintiff makes the conclusory allegation that the Defendants "reduced output in the WWI history market, reduced consumer choice, and chilled entry by other scholars," but provides only a single specific example: "[c]onsumers lost access to his [Plaintiff's] books, lectures, and historical analysis." (Doc. # 200 at ECF p. 33). This alleged harm is personal to Plaintiff and does <u>not</u> reflect harm to the competition. Plaintiff neither pleads nor cites any facts showing any actual market-wide effect.

The Court should reject Plaintiff's attempt to transform an individual dispute over academic reputation into an antitrust case through conclusory allegations untethered to the requirements of antitrust law. The Sherman Act claims must be dismissed.

### C.    Plaintiff Fails To Plead A Fraud Claim

Common law fraud must be pleaded with particularity. *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). This means that the pleading must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof. *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000).

In his Response Brief, Plaintiff makes conclusory arguments regarding alleged "coordinating with a market competitor," "releasing embargoed materials," and "opening sham investigations." (Doc. # 200 at ECF p. 35). These arguments lack any specific facts and are insufficient to satisfy Rule 9(b). Plaintiff's attempt to extend fraud to any perceived

20

academic or reputational harm cannot substitute for the required factual particularity. Accordingly, the fraud claim must be dismissed.

### D.    Plaintiff Fails To Plead An Aiding And Abetting Claim

Oklahoma does not recognize liability for aiding and abetting a breach of fiduciary duty. *Jackson v. GreerWalker, LLP*, 2018 WL 894873, at *4 (N.D. Okla. Feb. 14, 2018) (Oklahoma Supreme Court has never expressly recognized this tort); *see also Almeida v. BOKF, NA*, 471 F. Supp. 3d 1181, 1198 (N.D. Okla. 2020) (civil aiding-and-abetting liability rarely recognized and doubtful in this context). Plaintiff's Response Brief does not respond to this argument. Accordingly, this claim must be dismissed.

### E.    Plaintiff Fails To Plead A Breach Of Contract Claim

Plaintiff contends that his enrollment agreement with UNB and the university's published policies created enforceable contractual obligations and that UNB breached these obligations by releasing his embargoed dissertation, reopening investigations, and coordinating press statements. (Doc. # 200 at pp. 36-37).

These arguments fail. The Second Amended Complaint identifies no specific contractual provisions allegedly breached, and it does not allege an implied covenant of good faith and fair dealing. (Doc. # 188 at ECF pp. 45-47). Plaintiff also fails to plead a contract price, a fundamental element of a contract claim. He may not use his Response to create new contractual terms or obligations not pleaded in the complaint. Accordingly, Plaintiff has not adequately alleged a breach of contract claim, and it must be dismissed.

21

### F.    Plaintiff Fails To Plead A Negligence Claim

In his Response Brief, Plaintiff argues that "[a] duty of care arises here from the specific contractual and fiduciary framework created by the doctoral program, which includes ongoing obligations to maintain the validity and integrity of degrees awarded, to protect embargoed intellectual property, and to follow established academic procedures in any subsequent review." (Doc. # 200 at ECF 37). Plaintiff cites nothing for the proposition that the law recognizes an open-ended duty of care running in perpetuity from a university and its employees to someone who received a degree years earlier. There is no such duty. Accordingly, the negligence claim must be dismissed.

### G.    Plaintiff Fails To Plead A Defamation Claim

According to Plaintiff, UNB and the Individual University Defendants made false statements with actual malice and an intent to destroy Plaintiff's reputation. (Doc. # 200 at ECF p. 33). However, this case is about an academic dispute. Academic researchers commonly disagree with each other, and call each other's opinions and conclusions into question, without actual malice. Plaintiff's defamation claim consists of vague and conclusory assertions without adequately identifying what was said, by whom, when, and how it was false. (Doc. # 188 at ECF pp. 50-52; *see also* Doc. # 200 at ECF pp. 27-28). Accordingly, Plaintiff's defamation claim should be dismissed.

Additionally, in his Response Brief, Plaintiff argues that he is seeking to recover for alleged false representations about academic fraud, not for the "characterization of his political views." (Doc. # 200 at ECF p. 34). First, this is inaccurate. Plaintiff is indeed alleging that Defendants made false allegations regarding his "viewpoints" and "political

22

viewpoints." (Doc. # 188 at ECF pp. 15, 19, and 36). Second, the more salient point is that Plaintiff is attempting to recover damages for alleged injury to his political prospects. (Doc. # 188 at ECF pp. 2, 22, 25-27, 30, 41-41, 46, 48, and 52). Courts do not recognize claims by unsuccessful candidates for damages based on political loss. *See Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) (holding that an unsuccessful candidate lacks standing to challenge election results simply because he lost, and cannot obtain monetary relief for the loss); *Hill v. Stowers*, 680 S.E.2d 66 (W. Va. 2009) (dismissing claim for monetary damages by losing candidate, noting that a candidate "does not have a property right to win an election" and it would be contrary to public policy to allow a losing candidate to recover monetary damages from an opponent). For this additional reason, dismissal is warranted on Plaintiff's claim for defamation, and any other claim arising from alleged political harm.

### H.    Plaintiff Fails To Plead A False Light Claim

In his Response Brief, Plaintiff argues that UNB and the Individual University Defendants "created and sustained a false impression that Mastriano was an academic fraud who fabricated sources and engaged in scholarly misconduct." (Doc. # 200 at ECF pp. 34). Plaintiff cites <u>nothing</u> in his Second Amended Complaint to support this conclusory statement. Plaintiff's false light claim should be dismissed.

### V.    <u>DISMISSAL SHOULD BE WITH PREJUDICE AND PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND</u>

Plaintiff argues that if the Court finds any defects in his Second Amended Complaint, then Plaintiff should be permitted to amend his pleading. (Doc. # 200 at ECF pp. 37-38). Opposing dismissal while adding a request to amend is not adequate to preserve

23

a request for leave to amend the pleading. *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1230 (10th Cir. 2023). This Court has already ruled that "[a]bsent extraordinary circumstances," the Court will not grant Plaintiff leave to amend his complaint again. (Doc. # 187 at ECF p. 1).

To the extent the Court still wishes to consider Plaintiff's substantive argument, UNB and the Individual University Defendants oppose Plaintiff's request for leave to amend his pleading for the same reasons set forth in Certain Defendants' Objections and Opposition to Plaintiff's Motion for Leave to Amend Complaint. (Doc. # 130). To avoid duplicative argumentation, the arguments set forth there are incorporated here.

## VI.    <u>PLAINTIFF SHOULD NOT BE PERMITTED TO CONDUCT JURISDICTIONAL DISCOVERY</u>

Plaintiff requests permission to engage in jurisdictional discovery. (Doc. # 200 at ECF p. 12). Plaintiff was alerted to deficiencies in his Complaint no later than August 6, 2024, when the University Defendants filed their Motion to Dismiss the original Complaint. (Doc. # 12). Plaintiff has had ample time and opportunity to seek such discovery and to request leave to issue subpoenas but chose not to do so. Courts have repeatedly held that a plaintiff cannot delay and then request jurisdictional discovery after the opportunity to obtain such evidence has passed. *See*, *e.g.*, *Kelly*, 213 F.3d at 849 (plaintiff was not entitled to "unlimited jurisdictional discovery" where ample opportunity existed to gather evidence prior to motion to dismiss); *see also Breakthrough,* 629 F.3d at 1190 (citing *Kelly* and denying late jurisdictional discovery).

Moreover, in *Breakthrough*, 629 F.3d at 1190-91, the U.S. Court of Appeals for the 10th Circuit held that the District Court did not abuse its discretion to deny jurisdictional discovery because, in part, the party seeking discovery did not identify what specific documents it would have sought in discovery and did not explain what value witness testimony would provide. Here, Plaintiff fails to identify what specific documents he would seek in discovery or what value witness testimony might provide. (Doc. # 200 at ECF pp. 12 & 32). UNB and the Individual University Defendants respectfully ask the Court to exercise its discretion to deny Plaintiff's belated and insufficiently supported request for discovery.

Additionally, immunity doctrines exist to shield defendants from the burdens of litigation itself, including discovery. Requiring such defendants to participate in discovery *before* the Court determines whether it is immune from suit would undermine the protections that immunity is designed to provide. As the U.S. District Court held in *Samson Resources Co. v. J. Aron & Co.*, 2009 WL 1606564 (N.D. Okla. June 8, 2009), stays of discovery pending dispositive motions may be appropriate "where the case is likely to be finally concluded as a result of the ruling thereon, where the facts sought through uncompleted discovery would not affect the resolution of the motion, or where discovery on all issues of the broad complaint would be wasteful and burdensome."

## VII.    CONCLUSION

UNB and the Individual University Defendants respectfully request that their respective Motions to Dismiss be granted, the claims against them be dismissed *with prejudice*, and for such further relief this Court deems just and proper.

25

Dated: March 23, 2026

Respectfully submitted,

/s/ William C. Swallow

William C. Swallow (IL No. 6293910)     Don W. Danz
*Admitted Pro Hac Vice*                 MAURICE WOODS, II PLLC
Michael H. Passman (IL No. 6297381)     4811 Gaillardia Parkway, Suite 100
*Admitted Pro Hac Vice*                 Oklahoma City, OK 73142
Emily M. Vanderlaan (CO No. 55293)      T: (405) 628-0000
*Admitted Pro Hac Vice*                 F: (405) 628-0001
CLYDE & CO US LLP                       E: don@mwoodslaw.com
30 S. Wacker Drive, Suite 2600
Chicago, Illinois 60606
T: (312) 635-7000
E: bill.swallow@clydeco.us
E: michael.passman@clydeco.us
E: emily.vanderlaan@clydeco.us

*Attorneys for the University of New Brunswick and*
*The Individual University Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was

filed electronically on this 23rd day of March 2026, which will send notification of such

filing to those attorneys of record registered on the CM/ECF system.

/s/ William C. Swallow
William C. Swallow
*Admitted Pro Hac Vice*

26