## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

DOUGLAS MASTRIANO,

*Plaintiff,*

v.

JAMES GREGORY III, *et al.,*

*Defendants.*

**CIVIL ACTION NO.:**
**5:24-cv-00567-J**

## DEFENDANT JAMES GREGORY'S REPLY BRIEF IN SUPPORT OF HIS
## MOTION TO DISMISS COUNTS ONE, TWO, THREE, FOUR, NINE, AND TEN

SARA BERINHOUT*
MA Bar No. 703217
GREG HAROLD GREUBEL*
PA Bar No. 321130
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
sara.berinhout@fire.org
greg.greubel@fire.org
* Admitted *Pro Hac Vice*

ROBERT D. NELON, OBA #6610
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................... iii

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

I.      Mastriano's Response Does Nothing to Resolve the Fatal Deficiencies of
        His Defamation Claim Under Rule 12(b)(6) and the OCPA...................................3

        A.   The SAC still does not allege any false statement of fact................................3

        B.   Mastriano still does not plausibly show actual malice.....................................6

        C.   The statute of limitations bars Mastriano's defamation claim..........................7

II.     Mastriano Mischaracterizes False Light as Watered-Down Defamation in
        an Unsuccessful Attempt to Salvage This Claim. .......................................................9

III.    The OCPA Bars Mastriano's Claim and Requires Dismissal with an Award
        of Attorneys' Fees. .......................................................................................11

IV.     Mastriano's Response Fails to Save His RICO Claim. .........................................11

V.      Mastriano's Response Fails to Save His Sherman Act Claim.................................13

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Intermountain Health Care Inc.*,
461 F.3d 1249 (10th Cir. 2006) ...............................................................14, 15

*Ayyadurai v. Floor64, Inc.*,
270 F. Supp. 3d 343 (D. Mass. 2017)...........................................................5

*Brown v. JBS USA Food Co.*,
773 F. Supp. 3d 1193 (D. Colo. 2025) .......................................................8, 9

*Cayman Expl. Corp. v. United Gas Pipe Line Co.*,
873 F.2d 1357 (10th Cir. 1989) ...................................................................12

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010) .....................................................................................7

*Cohlmia v. St. John Med. Ctr.*,
693 F.3d 1269 (10th Cir. 2012) ...................................................................15

*Colbert v. World Publ'g. Co.*,
1987 OK 116, 613 P.2d 737 ....................................................................9, 10

*Coleman v. MacLennan*,
98 P. 281 (Kan. 1908).....................................................................................7

*Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*,
CIV-17-003-F, 2018 WL 4861522 (W.D. Okla. Apr. 30, 2018)...................11

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ......................................................................................14

*Eng. Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*,
172 F.3d 862, 1999 WL 89125 (4th Cir. 1999).............................................8

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........................................................................................4

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
398 U.S. 6 (1970) .......................................................................................4, 5

*Keyishian v. Bd. of Regents*,
385 U.S. 589 (1967) .....................................................................................3, 4

*Letter Carriers v. Austin,*
    418 U.S. 264 (1974) ...................................................................................4, 6

*Mastriano v. Gregory*,
    No. CIV-24-567-F, 2025 WL 392731 (W.D. Okla. Feb. 4, 2025) ...........................1, 12

*Mathews v. Lancaster Gen. Hosp.*,
    87 F.3d 624 (3d Cir. 1996) ...................................................................................15

*McBride v. Peak Wellness Ctr., Inc.*,
    688 F.3d 698 (10th Cir. 2012) ...................................................................................8, 9

*McCormack v. Oklahoma Publ'g. Co.*,
    1980 OK 98, 613 P.2d 737 ...................................................................................9, 10

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990) ...................................................................................4, 5

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...................................................................................7

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999)...................................................................................5

*Nunes v. Fusion GPS*,
    531 F. Supp. 3d 993 (E.D. Va. 2021) ...................................................................................12, 13

*O'Rourke v. Dominion Voting Sys. Inc.*,
    552 F. Supp. 3d 1168 (D. Colo. 2021) ...................................................................................12

*Olsen v. Progressive Music Supply, Inc.*,
    703 F.2d 432 (10th Cir. 1983) ...................................................................................14

*ONY, Inc. v. Cornerstone Therapeutics, Inc.*,
    720 F.3d 490 (2d Cir. 2013) ...................................................................................6

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
    953 F.2d 724 (1st Cir. 1992)...................................................................................4, 5

*Rickman v. Cone Mills Corp.*,
    129 F.R.D. 181 (D. Kan. 1989) ...................................................................................8, 9

*Rinsley v. Brandt*,
    700 F.2d 1304 (10th Cir. 1983) ...................................................................................4

*Schiavone v. Fortune*,
477 U.S. 21 (1986) ...................................................................................8

*Spelson v. CBS, Inc.*,
581 F. Supp. 1195 (N.D. Ill. 1984) ........................................................5

*Sports Racing Servs., Inc. v. Sports Car Club of Am.*,
131 F.3d 874 (10th Cir. 1997) ..............................................................14

*Sturgeon v. Retherford Publications, Inc.*,
1999 OK CIV APP 78, 987 P.2d 1218 ..................................................10

*Tal v. Hogan*,
453 F.3d 1244 (10th Cir. 2006) ..................................................13, 14, 15

*Trump v. Clinton*,
161 F.4th 671 (11th Cir. 2025) ..............................................................12

*TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,
964 F.2d 1022 (10th Cir. 1992) ........................................................13, 14

*Underwager v. Channel 9 Austl.*,
69 F.3d 361 (9th Cir. 1995) .....................................................................5

*United States ex rel. Reed v. KeyPoint Gov't Sols.*,
923 F.3d 729 (10th Cir. 2019) ................................................................8

*Yates v. Gannett Co.*,
2022 OK CIV APP 41, 523 P.3d 69 ......................................................10

**Statutes**

15 U.S.C. § 1 ..............................................................................................13

**Rules**

Fed. R. Civ. P. 12(b)(6) ..........................................................................3, 13

**Other Authorities**

6 Wright & Miller, Federal Practice and Procedure, § 1497 (2d ed. 1982) .......................9

**INTRODUCTION**

For almost two years, Plaintiff Douglas Mastriano has entangled his critics in a time-consuming and expensive legal battle. It is time to end this litigation and relieve Defendant James Gregory Jr. (and his co-defendants) from the burden of repeatedly having to assert his most basic First Amendment rights against a frivolous lawsuit.

Plaintiff Mastriano's Response in Opposition to Defendant Gregory's Motion to Dismiss accomplishes one thing: It confirms this is a strategic lawsuit against public participation (SLAPP) designed to intimidate Mastriano's critics into silence rather than succeed on the merits. After two chances to amend his complaint, Mastriano's Response merely reiterates the same unfounded legal theories he's advanced since the day he brought suit two years ago. *See* ECF No. 179. Such tactics are not only sanctionable under the Oklahoma Citizens Participation Act (OCPA), but as Judge Friot already warned in this case, may warrant sanctions under Rule 11 of the Federal Rules of Civil Procedure. *Mastriano v. Gregory*, No. CIV-24-567-F, 2025 WL 392731, at \*4 (W.D. Okla. Feb. 4, 2025).

It is telling that Mastriano's Response does not cite his Second Amended Complaint ("SAC") *once* in the argument section, and but on a single page in his statement of facts. Opp. at 9. Instead, Mastriano's Response relies on legal conclusions, buzzwords, and bare recitations of law—conspicuously devoid of factual allegations. What facts he does allege, even when accepted as true as required at the pleading stage, do not state a claim.

Mastriano's dispute with Defendant Gregory has no place in the courts. Here is what Mastriano's allegations and the public record show: Defendant Gregory is a history

1

professor who came across Mastriano's scholarship on Sgt. Alvin York while researching his doctoral thesis. It eventually became apparent that Mastriano's work was riddled with hundreds of errors and inconsistencies, including citations to nonexistent sources and blatant misrepresentations of the historical record. *Mastriano does not dispute any of this* and attempts, instead, to downplay the significance of his errors. Gregory's opinion that so many errors could not be attributed to mistake alone is thus hardly culpable. Gregory raised these concerns with the University long before Mastriano ran for Governor, but they received media attention only when Mastriano, like every political candidate in American history, faced public scrutiny during his campaign. Members of the public were then free to review these errors and draw their own conclusions, and remain so, because Defendant University of New Brunswick (UNB) declassified Mastriano's doctoral thesis pursuant to its standard procedure for declassifying graduates' theses after a certain period of time.

None of this constitutes unlawful activity.

It is not defamation; it is not an invasion of privacy; it is not a RICO or Sherman Antitrust violation; and it is not a "multi-national" "conspiracy" "involving foreign commerce between the United States and Canada." SAC ¶ 92. It is the lawful expression of one historian's sincerely held opinion regarding the shoddy scholarship of a fellow historian-turned-politician. And if Mastriano disputes the veracity of Gregory's opinion, he is free to do so *in the court of public opinion*.

This Court should dismiss Mastriano's Second Amended Complaint with prejudice, award Gregory attorneys' fees, and sanction Mastriano for bringing this SLAPP in violation of Oklahoma law and the First Amendment.

## ARGUMENT

**I.    Mastriano's Response Does Nothing to Resolve the Fatal Deficiencies of His Defamation Claim Under Rule 12(b)(6) and the OCPA.**

A historian's well-founded critique of another's work is not only core free speech; it is an exercise of academic freedom, which is "a special concern of the First Amendment." *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967). Mastriano's bald assertions cannot conceal the nature of this action: a SLAPP that Mastriano designed to silence criticism in lieu of confronting it. Gregory's statements challenging whether the more than 200 inaccuracies in Mastriano's scholarship arose from sloppiness alone are not only inactionable under defamation law, but comprise speech the First Amendment unquestionably protects. Mastriano's Response offers legal conclusions and bare recitations of law that are unsupported by factual allegations and conspicuously bare of citations to his SAC.  Because Mastriano still fails to state a claim under Rule 12(b)(6), his suit is subject to dismissal with an award of attorneys' fees and sanctions under the OCPA.

**A.    The SAC still does not allege any false statement of fact.**

Mastriano continues to confuse Gregory's *opinion* that Mastriano engaged in academic malfeasance with the verifiable facts *informing* that opinion, the accuracy of which Mastriano does not dispute. Mastriano does not challenge the fact that Gregory identified over 200 inaccuracies in Mastriano's scholarship, including nonexistent sources and transparent misrepresentations of the historical record. SAC ¶ 31; *see also* ECF No. 188-7 at 18. Nor does he allege Gregory misrepresented a single error. Mastriano admits, as he must, that these "errors" exist. SAC ¶ 31. And he acknowledges Gregory's first report

3

to Defendant UNB required Mastriano to update his thesis with a six-page corrigendum to resolve the errors in his citations. *Id*.; ECF No. 188-3 at 5–6. What Mastriano challenges is Gregory's academic *opinion* that the number and nature of those issues call Mastriano's good faith into question. *Id.* And that is protected by the First Amendment. *Greenbelt Co-op. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 13 (1970); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974); *cf. Keyishian,* 385 U.S. at 603 (recognizing academic freedom is "a special concern of the First Amendment").

Mastriano cites *Milkovich v. Lorain Journal Co*. to argue there is not always a clear distinction between fact and opinion, Opp. at 13 (citing 497 U.S. 1, 18 (1990))—but ignores *Milkovich*'s caution that it is the plaintiff's burden to establish actionability based on the context and "general tenor" of surrounding statements. 497 U.S. at 19, 21. Indeed, despite Mastriano's best efforts to avoid engaging with the context surrounding Gregory's alleged statements, context is critical in any defamation claim. *See, e.g.*, *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983) (emphasizing importance of "context" in distinguishing fact from opinion). Here, the context surrounding Gregory's opinion was an academic debate over a contested period of history—one that includes more than 200 inaccuracies in Mastriano's scholarship, which Gregory revealed to UNB and to the public in fulfillment of his duty as a historian and academic to rehabilitate the historic record.

*Milkovich* also reaffirmed the principles in *Greenbelt* and *Letter Carriers v. Austin,* 418 U.S. 264, 284–86 (1974), that plaintiffs bear the burden of showing allegedly defamatory statements would be reasonably understood as asserting a verifiable statement of fact, and are false. *Milkovich*, 497 U.S. at 19–20; *see also Phantom Touring, Inc. v.*

4

*Affiliated Publ'ns*, 953 F.2d 724, 727 (1st Cir. 1992). Mastriano has not met this burden. For instance, "Doug Mastriano defrauded his creditors" would imply a statement of verifiable fact. "Doug Mastriano is a fraud, and so is his academic scholarship," does not. Many cases bear this out.

For example, the court in the post-*Milkovich* case *Ayyadurai v. Floor64, Inc.*, held a defendant's statements that the plaintiff was a "fraud" and his claim to have invented email were non-actionable opinions. 270 F. Supp. 3d 343, 361–62 (D. Mass. 2017). In *Nicosia v. De Rooy*, the court held blog posts accusing a writer involved in settling Jack Kerouac's estate of being "a 'fraud,' a 'criminal' and acting illegally" were opinion. 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999). The same was true when a critical review called a musical performance with the same name as a more famous Broadway show "a fraud," "fake," and "phony" in *Phantom Touring, Inc.*, 953 F.2d at 728; *see also Spelson v. CBS, Inc.*, 581 F. Supp. 1195, 1198, 1205 (N.D. Ill. 1984) (no actionable statement of fact in broadcaster's description of chiropractors as "practitioners of fraud" who sold "phony cures" for cancer), *aff'd*, 757 F.2d 1291 (7th Cir. 1985). And if the accusations in *Greenbelt* that a plaintiff's negotiations involved "blackmail," made within the context of political debate, were protected opinion, so too are Gregory's criticisms of Mastriano's scholarship publicized during Mastriano's political campaign. 398 U.S. at 7; *see also Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366–67 (9th Cir. 1995) (holding "general tenor" and "specific context" of professionals giving points of view in "heated debate" at a conference rendered accusations of "lying" nonactionable hyperbole).

Mastriano offers nothing to suggest Gregory's alleged statements would be reasonably interpreted as anything other than what they were: a stinging and subjective evaluation of facts that Mastriano does not deny. "Expression of [] an opinion, even in the most pejorative terms, is protected" by the First Amendment as "part of the conventional give-and-take in our economic and political controversies." *Letter Carriers*, 418 U.S. at 284 (citation omitted). So too with academic controversies. Anything else would "ensnare the Court in a thorny and extremely contentious debate over which side of this [historical] debate has 'truth' on their side. That is hardly the sort of issue … subject to verification based upon a core of objective evidence." *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 497 (2d Cir. 2013) (citation omitted). Because the SAC fails to allege any actionable statement of fact, the Court should dismiss Mastriano's defamation claim.

### B.    Mastriano still does not plausibly show actual malice.

Mastriano's Response makes little effort to defend his allegations of actual malice, and what attempt he does make is indecipherable. He appears to premise his actual malice argument on Defendant UNB's decision not to initially investigate Gregory's complaint. SAC ¶ 30; Opp. at 16. But as Gregory explained in his Motion to Dismiss, UNB's initial decision not to initiate an investigation that would have opened it to severe scrutiny, a decision it later reversed, does not invalidate the merits of Gregory's complaint. Defendant UNB's initial inaction bears neither on Gregory's mindset when he shared his findings, nor on his decision to answer honestly when asked questions by the media—as his opinion was informed by months of careful scrutiny of Mastriano's work and comparison with public historical records. *See, e.g.*, ECF No. 194 at 3–5.

6

Further, Mastriano's theory that making a statement about a political candidate near an election suggests actual malice is, in fact, wholly at odds with the purpose of that longstanding standard. Any theory that diminishes the protection for critics of public officials in proportion to the *increased* relevance of the candidate's reputation turns actual malice on its head. It chills speech "in the realm where its necessity is most evident: in the public dialogue preceding a real election." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 372 (2010). It is "of the utmost consequence that the people should discuss the character and qualifications of candidates." *New York Times Co. v. Sullivan*, 376 U.S. 254, 281 (1964) (quoting *Coleman v. MacLennan*, 98 P. 281, 286 (Kan. 1908)). And, certainly, criticism of a public official "does not lose its constitutional protection merely because it is effective." *Sullivan*, 376 U.S. at 273.

## C.    The statute of limitations bars Mastriano's defamation claim.

Nothing in Mastriano's Response rehabilitates the untimeliness of his defamation claim. As described in Gregory's Motion to Dismiss, Mastriano missed his August 2024 deadline (the latest possible date given the defamatory statements his Second Amended Complaint alleged) to file his claim. *See* ECF No. 194 at 14–16. The viability of Mastriano's defamation claim thus depends on its ability to relate back to his original pleading. It cannot. To argue otherwise, Mastriano's Response plucks a handful of words from the SAC, strips them of context or citation, and suggests that, in a case alleging a multi-year defamation "campaign" and sprawling "multi-national" conspiracy dating to 2019, he should be allowed to treat everything Gregory ever said about him as collective. Opp. at 13–14. Defamation does not work that way.

7

The Tenth Circuit has rejected the view that multiple alleged defamatory statements constitute a continuous transaction. *McBride v. Peak Wellness Ctr., Inc*., 688 F.3d 698, 710 (10th Cir. 2012), *abrogated on other grounds by United States ex rel. Reed v. KeyPoint Gov't Sols*., 923 F.3d 729 (10th Cir. 2019). As Mastriano acknowledges, the central inquiry is, instead, "whether adequate notice has been given to the opposing party 'by the general fact situation alleged in the original pleading.'" *Rickman v. Cone Mills Corp.*, 129 F.R.D. 181, 186 (D. Kan. 1989) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 31 (1986)). As originally pleaded, Mastriano's defamation claim was based solely on Exhibit 4—an April 26, 2023, open letter written by UNB faculty members, not Gregory. ECF No. 188-5; ECF No. 1 ¶ 125 ("Compl."). Beyond this letter, Mastriano can still provide no more specificity than a vague reference to "repeated fraud accusations in a coordinated publication campaign." Opp. at 17. Such fact-free generalizations cannot afford adequate notice to defendants. Mastriano's broad allegation that "Defendants made statements … that exposed [him] to public hatred, contempt, ridicule, and disgrace" at some point in 2023 or earlier, Compl. ¶ 125, is a legal conclusion, not a "fact situation," *Rickman*, 129 F.R.D. at 186.

Rule 15 does not permit Mastriano to "baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *Brown v. JBS USA Food Co.*, 773 F. Supp. 3d 1193, 1229 (D. Colo. 2025) (quoting *Eng. Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862, 1999 WL 89125, at *3 (4th Cir. 1999) (unpublished table decision)). A defamation "campaign" is simply not a concept recognized by Oklahoma law, and Mastriano cites no case to the contrary.

As a last-ditch effort, Mastriano claims that when an original statement is published again at a later date, it effectively resets the statute of limitations. Opp. at 18. The Tenth Circuit has foreclosed this argument. *See, e.g.*, *McBride*, 688 F.3d at 710; *see also Rickman*, 129 F.R.D. at 185 n.6 ("When plaintiff attempts to allege an entirely different transaction by amendment, as, for example, *the separate publication of a libelous statement*, or the breach of an independent contract, the new claim will be subject to the defense of statute of limitations.") (quoting 6 Wright & Miller, Federal Practice & Procedure, § 1497 at 489–90 (2d ed. 1982)).

The "publication campaign" Mastriano invokes, Opp. at 17, is exactly the kind of "broad course of conduct" that does not suffice, *Brown*, 773 F. Supp. 3d at 1229. For a claim to relate back, it must arise out of the same *facts* originally pleaded. Thus, Mastriano's failure to plead any facts in his original Complaint remains fatal to his claim.

## II.    Mastriano Mischaracterizes False Light as Watered-Down Defamation in an Unsuccessful Attempt to Salvage This Claim.

False light invasion of privacy is not, as Mastriano contends, merely defamation with an extended statute of limitations. It is a *privacy* tort that Mastriano's own factual allegations foreclose.

Oklahoma courts have consistently held false light—including the Restatement's fourth category, *i.e.*, placing plaintiff in a false light publicly, Opp. at 18—is fundamentally a *privacy* tort not intended to compensate for reputational harm. *See McCormack v. Oklahoma Publ'g. Co.*, 1980 OK 98, ¶ 15, 613 P.2d 737, (citing "The Right of Privacy," by Warren and Brandeis, 4 Harvard Law Review 193 (1890)); *Colbert v. World Publ'g.*

9

*Co.*, 1987 OK 116, ¶ 4, 613 P.2d 737 (Alma Wilson, J., concurring in part). Contrary to Mastriano's assertion, Oklahoma courts have found false light inapplicable where the plaintiff himself is responsible for the publicity he claims caused his injury. *See Yates v. Gannett Co.*, 2022 OK CIV APP 41, ¶ 21, 523 P.3d 69 (dismissing similar claim premised on plaintiff's own public statements); *Sturgeon v. Retherford Publications, Inc.*, 1999 OK CIV APP 78, ¶ 28, 987 P.2d 1218 (same).

In every relevant respect, Mastriano opened himself to public scrutiny and voluntarily entered the public discourse. He published his historical scholarship on Sgt. York. He entered the gubernatorial race in Pennsylvania, becoming a nationally recognized public figure in a hotly contested political race. He touted his PhD and academic credentials across the campaign trail. ECF No. 188-3 at 6. And as he claims throughout his SAC, he engages in countless "speaking engagements," "media" appearances, "a minimum of $10 million in tourism-related events," and "television and movie deals." SAC at 4. Mastriano cannot now cry "privacy violation!" because Gregory and other members of the public commented on matters Mastriano voluntarily made public.

"[W]hen individuals enter the fray, and make repeated, voluntary statements regarding matters of public concern," "the law will not intervene to assign liability 'for giving additional publicity to facts about the person's life which are already matters of public record.'" *Yates v. Gannett Co.*, 2022 OK CIV APP 41, ¶ 21, 523 P.3d 69 (quoting *McCormack v. Oklahoma Publ'g. Co.*, 1980 OK 98, ¶ 18, 613 P.2d 737). According to Mastriano himself, no one has "enter[ed] the fray" quite like he has. His false light theory of liability fails.

**III.    The OCPA Bars Mastriano's Claim and Requires Dismissal with an Award of Attorneys' Fees.**

This case involves what the OCPA was enacted to prevent—a public figure abusing the judicial system to silence good-faith criticism—and Gregory does not lose that protection simply because Mastriano filed in federal court. Mastriano stops short of claiming that the OCPA does not apply in federal court, and fails to provide any argument rebutting Judge Friot's well-reasoned conclusion that it does. *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*, CIV-17-003-F, 2018 WL 4861522, at *16 (W.D. Okla. Apr. 30, 2018). Instead, Mastriano attempts to avoid that by arguing OCPA does not cover "demonstrably false or malicious speech." Opp. at 20. The problem is that Mastriano has alleged no facts to plausibly suggest Gregory's statements were either "demonstrably false" or "malicious." Instead, they rested on months of careful examination of Mastriano's work that, as he concedes, eventually led UNB to require Mastriano to publish lengthy corrections. Because the OCPA covers speech about a public official, community well-being, and a good in the marketplace, Mastriano's Second Amended Complaint shows that his defamation and false light claims target the very speech the OCPA is designed to protect. ECF No. 194 at 17–19.

**IV.    Mastriano's Response Fails to Save His RICO Claim.**

Mastriano's Response fails to clarify, let alone save, his RICO claims. As an overarching matter, it neglects to cite a single allegation from the SAC to stave off dismissal and relies on conclusory statements in lieu of facts or legal argument. To start, Mastriano continues to misunderstand the nature of mail or wire fraud, his purported

11

predicate act for RICO liability. His strained theory comes down to a single allegation: Gregory "used identified interstate communications to make knowing misrepresentations as part of a scheme to deprive plaintiff of money and property interests." Opp. at 20. That is not mail or wire fraud, nor any kind of fraud. *See Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989) (generalized allegations that defendant sent false statements through the mail with intent to mislead plaintiff were insufficient to state a claim for mail or wire fraud). Once again, Mastriano's insistence that fraud is "saying something false online" does not make it so. ECF No. 194 at 22.

Mastriano fares no better on RICO's other elements. He contends the enterprise and common interest requirements are satisfied because he's alleged Defendants wanted to diminish his "political standing." Opp. at 22. But that weakens RICO beyond recognition— and would mean every political party and interest group is engaged in criminal enterprise. Unsurprisingly, he offers no precedent for this interpretation, though his invocation of RICO for political gain is not novel. In fact, a court in this circuit recently imposed sanctions against plaintiffs' counsel for bringing a RICO conspiracy claim premised on "rigging" the 2020 election. *See O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d 1168, 1199 (D. Colo. 2021), *modified on reconsideration*, No. 20-CV-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021); *see also Mastriano*, 2025 WL 392731, at *4 (warning that misuse of RICO can lead to sanctions). And courts from across the country are not shy about dismissing conclusory RICO claims by politicians seeking retribution against perceived enemies. *See Trump v. Clinton*, 161 F.4th 671, 691 (11th Cir. 2025) (affirming Rule 11 sanctions warranted for RICO claim); *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993,

12

1011 (E.D. Va. 2021) (dismissing RICO claim that "merely cites the wire fraud statute without adding factual material elaborating on the allegation").

Worse still, throughout his Response, Mastriano makes broad claims about the allegations in the SAC but conspicuously omits any citations. For instance, he claims the SAC identifies "the content of the fraud accusations, the interstate routes and recipients, the dates or date ranges, the University and media context, and the resulting economic harm." Opp. at 21. But it does not—and Mastriano makes no attempt to point to any such allegations. All told, because Mastriano lacks factual allegations to support a single element of his RICO claims, this Court should dismiss them under Rule 12(b)(6).

## V.    Mastriano's Response Fails to Save His Sherman Act Claim.

The Court should reject Mastriano's strained interpretation of antitrust law, which is unsupported by legal precedent. Mastriano's Response fails to show how he plausibly alleges an improper "restraint of trade or commerce" as the statute requires. 15 U.S.C. § 1. Instead, he repackages his defamation claim in antitrust-law terms. But the Tenth Circuit has been clear: "Absent specific factual allegations that support a claim" under the Sherman Act, a plaintiff's "use of antitrust buzz-words and parroting of general antitrust theories is insufficient to support a Sherman Act violation." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).

While Mastriano acknowledges the requirement that he must allege harm to *consumers* and the market rather than to himself, he still only offers the "diminished availability" of his own "books and related work." Opp. at 24. This is not an adverse "effect upon an appreciable amount of interstate commerce." *TV Commc'ns Network, Inc. v.*

*Turner Network Television, Inc.*, 964 F.2d 1022, 1026 (10th Cir. 1992) (quoting *Olsen v.*

*Progressive Music Supply, Inc.*, 703 F.2d 432, 438 (10th Cir. 1983)); *see also Hogan*, 453

F.3d at 1258. Nor is it attributable to an antitrust violation.

Mastriano claims Gregory's public criticisms were "aimed at excluding a rival from

the market." Opp. at 24. But even accepting Mastriano's allegations as true, disparaging a

competitor for purposes of diminishing demand for their product is not unlawful—and

certainly not an antitrust violation. Decreases in demand for a product "because of

legitimate competitive forces"—such as a substantiated critique of Mastriano's work by

Gregory and other fellow historians—is not actionable under any law, let alone the

Sherman Act. *Hogan*, 453 F.3d at 1258.

Mastriano's tying theory of antitrust liability is inscrutable. He describes the claim

as follows: "[The SAC] alleges that Gregory and others leveraged access to an institutional

complaint and credentialing mechanism – the effective tying product – to coerce the market

to reject Mastriano's scholarly products and related services – the tied products." Opp. at

25. Nowhere in that morass, nor anywhere else in the SAC, does Mastriano allege "the

existence of two separate *products*"—the baseline requirement for any tying theory of

antitrust liability. *Abraham v. Intermountain Health Care Inc*., 461 F.3d 1249, 1263 (10th

Cir. 2006) (emphasis added); *see also Sports Racing Servs., Inc. v. Sports Car Club of Am*.,

131 F.3d 874, 886 (10th Cir. 1997); *Eastman Kodak Co. v. Image Tech. Servs., Inc*., 504

U.S. 451, 462 (1992). Nor does it show a relationship between "the demand for the two

items," rather than simply their "functional relation." *Abraham*, 461 F.3d at 1264 (cleaned

up). And finally, it offers nothing to suggest "the seller's exploitation of its control over

14

the tying product … forced a buyer to purchase the tied product." *Id*. at 1265 (citation omitted).

This is unsurprising considering neither Gregory nor his co-Defendants have any market "control" to "exploit[]." *Id.* Mastriano does not allege Gregory undertook actions to manipulate "prices" or "quantity or quality of goods or services" in the marketplace—in no small part because Gregory lacks any ability to do so. *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996); *accord Cohlmia v. St. John Med. Ctr.*, 693 F.3d 1269, 1280 (10th Cir. 2012).

Mastriano's allegations in support of his antitrust claim boil down to this: Gregory criticized his scholarship and now fewer people are interested in purchasing Mastriano's publications or hearing Mastriano speak on historical subjects. That is not an antitrust violation: it is market forces at work. Antitrust laws are concerned with "'corruption of the competitive process, not the success or failure of a particular firm' or individual." *Cohlmia*, 693 F.3d at 1280 (quoting *Hogan*, 453 F.3d at 1258). For that reason, "the question is whether harm to competition has been demonstrated." *Id.* at 1281. Nothing of the sort has been alleged here.

### CONCLUSION

Debates over historical scholarship belong in the classroom, not the courtroom. Allowing lawsuits like this SLAPP to silence scholars risks undermining our shared pursuit of truth and understanding. To protect the integrity of free inquiry and prevent a chilling

15

effect on academic scholarship, this Court must dismiss Mastriano's claims with prejudice.[1]


Respectfully submitted,


*/s/ Greg Harold Greubel*
GREG HAROLD GREUBEL*
PA Bar No. 321130; NJ Bar No.
171622015; CA Bar No. 343028;
IA Bar No. 201452
SARA BERINHOUT*
MA Bar No. 703217
FOUNDATION FOR INDIVIDUAL
    RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
Fax: (215) 717-3440
greg.greubel@fire.org
sara.berinhout@fire.org

Robert D. Nelon, OBA #6610
Hall, Estill, Hardwick, Gable,
Golden & Nelson, P.C.
100 North Broadway, Suite 2900
Oklahoma City, OK 73102
Telephone: (405) 553–2828
Facsimile: (405) 553–2855
bnelon@hallestill.com

\* Admitted *Pro Hac Vice*

---

[1] Plaintiff has continued to incorrectly refer to Defendant Gregory as "James Gregory III" rather his correct legal name, James Gregory Jr.

16