## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DOUGLAS MASTRIANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-567-J |
| | ) | |
| JAMES GREGORY, III, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ROLAND KUHN'S REPLY BRIEF SUPPORTING HIS MOTION TO DISMISS SECOND AMENDED COMPLAINT

Callan G. Stein (*admitted pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
High Street Tower
125 High Street, 19th Floor
Boston, MA  02110
callan.stein@troutman.com

-and-

Matthew J. Lund (*admitted pro hac vice)*
**TROUTMAN PEPPER LOCKE LLP**
500 Woodward Ave., Suite 2800
Detroit, MI 48226
248.359.7300
matthew.lund@troutman.com

Gerard M. D'Emilio, OBA No. 33496
**GABLEGOTWALS**
BOK Park Plaza
499 West Sheridan Ave., Suite 2200
Oklahoma City, OK 73102
T: 405.235.5500
F: 405.235.2875
gdemilio@gablelaw.com

-and-

R. Trent Shores, OA No. 19705
Barrett L. Powers, OBA No. 32485
**GABLEGOTWALS**
110 N. Elgin Ave., Suite 200
Tulsa, Oklahoma 74120-1495
T: 918.595.4800
F: 918.595.4990
tshores@gablelaw.com
bpowers@gablelaw.com

*Attorneys for Defendant Roland Kuhn*

**TABLE OF CONTENTS**

**Page(s)**

I.    PERSONAL JURISDICTION ................................................................................ 1

    A.    Long-Arm Jurisdiction Analysis ................................................................ 1
        1.    Minimum Contacts ........................................................................ 1
        2.    Fair Play and Substantial Justice ................................................. 4
    B.    RICO Nationwide Service of Process ........................................................ 5
        1.    Due Process .................................................................................. 5
        2.    Ends of Justice ............................................................................. 6
    C.    Plaintiff's Co-Conspirator Allegations ...................................................... 6

II.   RICO AND SHERMAN ACT CLAIMS .............................................................. 7

    A.    RICO and Sherman Act Standing .............................................................. 7

III.  FAILURE TO ALLEGE A RICO "PATTERN" OR A RICO
     "ENTERPRISE" ................................................................................................... 11

IV.   FAILURE TO ALLEGE DEFAMATION OR FALSE LIGHT ........................... 14

V.    PLAINTIFF'S REQUEST TO FILE A *FOURTH* VERSION OF HIS
     COMPLAINT IS ABUSIVE AND HIGHLIGHTS THE GAMES HE IS
     PLAYING ........................................................................................................... 16

VI.   CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdulina v. Eberl's Temp. Servs., Inc.*,
  79 F. Supp. 3d 1201 (D. Colo. 2015) ................................................................... 13, 14

*Asahi Metal Indus. Co. v Superior Court of California*,
  480 U.S. 102 (1987) ..................................................................................................... 4

*BancOklahoma Mortg. Corp. v. Cap. Title Co.*,
  194 F.3d 1089 (10th Cir. 1999) ................................................................................... 9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ..................................................................................................... 8

*Craig PC Sales & Serv., LLC v. CDW Gov't, LLC*,
  2018 WL 4861522 (W.D. Okla. Apr. 30, 2018) ....................................................... 14

*Dental Dynamics v. Jolly Dental Grp. LLC*,
  946 F.3d 1223 (10th Cir. 2020) ................................................................................... 6

*Hart v. Salois*,
  605 F. App'x 694 (10th Cir. 2015) ............................................................................... 6

*Hemi Group, LLC v. City of N.Y.*,
  559 U.S. 1 (2010) .................................................................................................... 8, 10

*In re Ward*,
  589 B.R. 424 (Bankr. W.D. Okla. 2018) ............................................................. 13, 14

*Jeter v. Wild W. Gas, LLC*,
  2025 WL 1819241 (N.D. Okla. Jul. 1, 2025) ............................................................. 9

*Jojola v. Chavez*,
  55 F.3d 488 (10th Cir. 1995) ..................................................................................... 13

*Klein v. Cornelius*,
  786 F.3d 1310 (10th Cir. 2015) ............................................................................... 1, 5

*Medical Marijuana, Inc. v. Horn*,
  604 U.S. 593 (2025) ................................................................................................... 10

*Melea Ltd. v. Jawar* SA,
    511 F.3d 1060 (10th Cir. 2007) ................................................................. 7

*OMI Holdings, Inc. v Royal Ins. Co. of Canada*,
    149 F.3d 1086 (10th Cir. 1998) .............................................................. 2, 4

*Shrader v. Billinger*,
    633 F.3d 1235 (10th Cir. 2011) ................................................................. 3

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ............................................................... 11

*Wright v. Haas*,
    586 P.2d 1093 (Okla. 1978) .................................................................... 15

*XMission, L.C. v Fluent LLC*,
    955 F.3d 833 (10th Cir. 2020) ................................................................... 1

## Statutes

18 U.S.C. § 1962(c) ..................................................................................... 9

18 U.S.C. § 1962(d) ..................................................................................... 9

## Rules

Fed. R. Civ. P. 4(k)(2) ................................................................................. 2

iii

## I.    PERSONAL JURISDICTION

The Court's analysis of personal jurisdiction over Dr. Kuhn depends upon the claim. Claims subject to a long-arm jurisdiction analysis are analyzed differently than claims subject to an analysis based on nationwide service of process. *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015).

### A.    Long-Arm Jurisdiction Analysis

#### 1.    Minimum Contacts

In attempting to meet his burden, Plaintiff argues that Dr. Kuhn's actions are "intentional" because Dr. Kuhn's Abstract was published "in an online journal accessible throughout North America." *Pl. Br. at 14*. He goes on to argue that Dr. Kuhn's actions were "expressly aimed at the United States and Oklahoma" upon the argument that Plaintiff's "Second Amended Complaint alleges that Kuhn coordinated his publication with co-conspirators including Gregory, who was an Oklahoma resident." *Id. at 15*. Plaintiff concludes with an argument that Dr. Kuhn "knew the brunt of the injury would be felt in Oklahoma and the United States" because Defendant James Gregory was an Oklahoma resident and because Plaintiff's "professional reputation, publishing and speaking markets, and political activities are centered in the United States." *Id. at 15–16*. Plaintiff fails to meet his burden of establishing a prima facie case of personal jurisdiction.

Before examining the substance of each of these arguments, two threshold errors in Plaintiff's analysis require note. First, Plaintiff's multiple references to actions directed to the United States are irrelevant to the long-arm jurisdiction analysis. The required focus is on Plaintiff's actions vis-à-vis Oklahoma, not the United States. *XMission, L.C. v Fluent*

1

*LLC*, 955 F.3d 833, 841 (10th Cir. 2020). Indeed, Plaintiff expressly recognizes this in his Response Brief. *Pl. Br. at 14* (asserting that the relevant analysis is whether Dr. Kuhn's action were "expressly aimed at the *forum state*" (citations omitted) (emphasis added)).[1]

Second, where a motion under Rule 12(b)(2) is resolved upon written submissions, a plaintiff must make a prima facie showing of personal jurisdiction "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). As Dr. Kuhn has refuted Plaintiff's jurisdictional allegations, Plaintiff may not succeed merely by resting on his allegations. *Pl. Br. at 13*. And Plaintiff has proffered no affidavit or other evidence to refute the verified facts set forth in Dr. Kuhn's declaration.

As to the substance, Plaintiff's efforts flatly fail. Dr. Kuhn has submitted unrefuted evidence that precludes a finding that he intentionally directed any activity toward Oklahoma. *See Dkt. 105-1, Kuhn Decl. & attachments*. Dr. Kuhn's Abstract was not "an article titled for public dissemination" (*Pl. Br. at 14*), and Plaintiff presents nothing to suggest it was disseminated to Oklahoma. Dr. Kuhn submitted his Abstract to a faculty committee at University of Manitoba, and it had no article or other substantive writing attached to it. *Kuhn Decl. (Dkt. 105-1) at ¶ 5*. Dr. Kuhn played no active role in the public dissemination of his Abstract (*id. at ¶ 11*), and when the Abstract became publicly available, it was available through a publication directed at a Canadian audience. *Kuhn*

---

[1] Plaintiff does not allege or argue that jurisdiction is appropriate here pursuant to Fed. R. Civ. P. 4(k)(2), nor can he, as the rule does not apply in cases assessing jurisdiction under a state's long-arm statute. *See* Fed. R. Civ. P. 4(k)(2) (referencing "a claim that arises under federal law").

*Decl. at 8*. Finally, not only has Plaintiff failed to submit any evidence showing any "coordinat[ion]" between Dr. Kuhn and Defendant Gregory (*Pl. Br. at 15*), but Plaintiff does not even allege any such facts in his pleading.

Plaintiff argues that Dr. Kuhn "misunderstands the internet's reach" asserting that "an online journal is, by definition, accessible to anyone anywhere in the world," thus making jurisdiction in Oklahoma appropriate. *Pl. Br. at 15*. Plaintiff's logic is misaligned with well-established Tenth Circuit law. "[P]osting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read . . . ." *Shrader v. Billinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) (citations omitted). And "in considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id*. As discussed above, there is no evidence or plausible argument to suggest that Dr. Kuhn directed any message toward Oklahoma, much less intended to harm Plaintiff in Oklahoma.

Finally, Plaintiff squarely fails in his argument as to where the "brunt of the injury" would be felt. *Pl. Br. at 14–15*. Plaintiff is a resident of Pennsylvania, not Oklahoma. *Second Amended Complaint ("SAC") at ¶ 7*. The fact that James Gregory – a Defendant who does not claim any injury – resided in Oklahoma offers nothing to show that "the brunt of the injury" alleged in Plaintiff's Complaint was felt in Oklahoma. *Id. at 15–16*. Beyond that, what remains is Plaintiff's assertion that he was injured "in the United States" (*id. at 16*), an argument that is irrelevant to the long-arm jurisdiction analysis. Plaintiff has failed

3

to show that Dr. Kuhn had the requisite minimum contacts with Oklahoma to allow for personal jurisdiction in this case.

### 2.     Fair Play and Substantial Justice

Dr. Kuhn addressed each of the relevant factors to show that an exercise of jurisdiction over him here would not comport with traditional notions of fair play and substantial justice. *Kuhn Br. at 10–12*. With the exception of one factor (the fifth factor, which relates to social policies and is neutral), all point to the conclusion that an exercise of jurisdiction would be unreasonable. *Id*. Plaintiff responds that "electronic discovery, videoconference depositions, and remote court appearances substantially mitigate the practical inconvenience" that would be imposed upon Dr. Kuhn, who resides in Canada, at a location over 1,500 miles from Oklahoma City. *Pl. Br. at 16–17*. It is difficult to conceive how "electronic discovery" relates to burden, and Plaintiff offers no explanation. And whether or not there may be remote court appearances and videoconference depositions, a trial on the merits of Plaintiff's claims against 26 defendants most assuredly will not be a virtual proceeding. Where, as here, Dr. Kuhn is from another country, considerations of burden are not only a relevant part of the analysis, but the relevance is "heightened[,] and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *OMI Holdings, Inc.* 149 F.3d at 1096 (citing *Asahi Metal Indus. Co. v Superior Court of California*, 480 U.S. 102, 114 (1987)). Plaintiff cannot meet this heightened scrutiny.

Nor does Plaintiff offer anything meaningful as to Oklahoma's interest in this case. *Pl. Br. at 17.* While Plaintiff points to the presence of one Defendant who is a former

4

resident, he overlooks the fact that the 25 remaining defendants are either out-of-state or out-of-country, and he offers no bases on which one could reasonably conclude that Oklahoma has an interest in adjudicating claims against them. *Pl. Br. at 11*. Similarly, while Plaintiff asserts that judicial economy favors a single judicial proceeding, he offers nothing to support his argument that such a proceeding should be in Oklahoma.[2]

### B.    RICO Nationwide Service of Process

The analysis of whether jurisdiction is proper under the civil RICO statute has two parts: (1) an assessment of whether the ends of justice require exercising jurisdiction over one defendant where personal jurisdiction is established over another, and (2) whether an exercise of jurisdiction under those circumstances comports with due process. Both must be shown for this Court to assert jurisdiction over Dr. Kuhn. *Klein*, 786 F.3d at 1317.

#### 1.    Due Process

A federal question case where jurisdiction is invoked based on nationwide service of process requires an analysis of due process considerations under the Fifth Amendment due process analysis, which is different than the Fourteenth Amendment analysis. *Klein*, 786 F.3d at 1318. The differing analyses, however, do not come into play in any meaningful way here, because Plaintiff makes no due process argument at all in his RICO nationwide service of process analysis. *Pl. Br. at 16–18, Section IV.A.4*. Plaintiff's implicit concession

---

[2] "Constitutionally significant inconvenience," as referenced in Plaintiff's argument on long-arm jurisdiction (*Pl. Br. at 17*), is a consideration under a Fifth Amendment analysis, where jurisdiction is invoked based on nationwide service of process. *Klein*, 786 F.3d at 1318 (citation omitted). It is not the applicable standard under a Fourteenth Amendment due process analysis.

of this point is fatal to his argument that the RICO statute confers jurisdiction over Counts

One and Two, as due process is a critical and required consideration.

### 2.    Ends of Justice

Plaintiff is also required to point to facts in his Complaint supporting an assertion

that the "ends of justice" require an exercise of jurisdiction. *Hart v. Salois*, 605 F. App'x

694, 699 (10th Cir. 2015). General allegations do not suffice. *Id*. In his Response, Plaintiff

argues that the "efficient and comprehensive adjudication" contemplated by the RICO

statute require that his claims against all defendants be tried together. *Pl. Br. at 19–20*.

Plaintiff offers nothing, however, to explain how jurisdiction in Oklahoma promotes

judicial economy where all defendants reside elsewhere. Indeed, where the majority of

parties, witnesses and evidence exists out of state, considerations of efficiency work against

the Plaintiff. *Dental Dynamics v. Jolly Dental Grp. LLC*, 946 F.3d 1223, 1233 (10th Cir.

2020). Beyond that argument, Plaintiff only asserts that "the 'ends of justice' standard is

flexible and cannot be too particularized" – a general argument that, absent anything else,

is insufficient. *Hart*, 605 F. Appx. at 699.

### C.    Plaintiff's Co-Conspirator Allegations

Plaintiff offers nothing to support a cognizable argument that his co-conspirator

allegations confer personal jurisdiction. He asserts that the Court must accept as true an

allegation that Dr. Kuhn's actions were "timed and framed to coincide with and reinforce

a broader campaign involving Gregory and others." *Pl. Br. at 18*. On that basis, Plaintiff

argues that he has shown a "meeting of the minds" to support his claim. The problem with

this argument, however, is that Plaintiff's Second Amended Complaint does not allege

what Plaintiff asserts. Nowhere does the Plaintiff allege any facts to even suggest that Dr. Kuhn "timed and framed" anything with any other Defendant. Indeed, the only reference Plaintiff makes to "timing" of Dr. Kuhn's alleged conduct vis-à-vis others is just a recitation of various dates on which various events allegedly took place between 2022 and 2023. *SAC at ¶ 57.*

In any event, substantive allegations aside, Plaintiff's failure to show that Dr. Kuhn had minimum contacts with Oklahoma is fatal to his argument that the court has personal jurisdiction over Dr. Kuhn by virtue of any co-conspirator allegations. *Kuhn Br. at 16.* Plaintiff argues only that the alleged conspiracy was directed at the United States and that James Gregory acted in Oklahoma. *Pl. Br. at 18.* Even accepting the allegations as true, they say nothing to suggest contact between Dr. Kuhn and Oklahoma. As such, they do nothing to show that Dr. Kuhn is subject to jurisdiction in Oklahoma. *Melea Ltd. v. Jawar SA,* 511 F.3d 1060, 1070 (10th Cir. 2007).

## II.    RICO AND SHERMAN ACT CLAIMS

### A.    RICO and Sherman Act Standing

In his Motion, Dr. Kuhn articulated why Plaintiff lacks standing to bring his RICO and Sherman Act claims under those statutes' enhanced standing requirements. *Kuhn Br. at 16–19.* Plaintiff does not dispute this enhanced standard (because he cannot), which is fatal to his claims because he does not and cannot offer any support for how he satisfies it.

Turning first to RICO, in his Motion Dr. Kuhn identifies two primary standing deficiencies: (1) Plaintiff only alleges injuries that he concedes are *intangible*, and thus not cognizable under RICO, *see Pl. Br. at 17* (collecting cases that intangible injuries are not

recoverable), and, (2) Plaintiff's admittedly intangible injuries are too attenuated and "untethered" to any underlying racketeering activity by Dr. Kuhn, *see id. at 18*. Plaintiff's Opposition does nothing to refute these arguments. If anything, his inability to respond with supporting legal authority only serves to confirm they are grounds for dismissal.

First, Plaintiff argues that he satisfies RICO's "injury to business or property" standard because he alleges tangible injuries in the form of "lost book sales and royalty income," which he claims (without *any* support) flowed from "reputational destruction." *Pl. Br. at 21.* (emphasis added). Thus, Plaintiff recognizes and admits these supposed injuries are, at their core, *reputational.* Yet in the *very next sentence* Plaintiff contradicts himself, claiming that "[t]hese are all tangible injuries to business and property, not mere dignitary or *reputational* harms." *Id.* (emphasis added). He then purports to cite to an antitrust case—*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)— that says nothing about RICO and offers *zero* support for his position (to say nothing of reconciling his internal contradiction).

Second, Plaintiff flounders to try to explain how his claimed damages are "directly traceable" to any conduct by Dr. Kuhn, as RICO exactingly requires. It is black letter law that to have RICO standing Plaintiff must plead "some direct relation between the injury asserted and the injurious conduct alleged," and that in doing so Plaintiff is not permitted to "go beyond the first step." *Hemi Group, LLC v. City of N.Y.,* 559 U.S. 1, 9 (2010). Yet even the most generous reading of the SAC and Opposition reveals that is precisely what Plaintiff invites. Plaintiff accuses Dr. Kuhn of "misunderstanding how causation operates in conspiracy cases," before concluding that, simply because he has alleged Dr. Kuhn is

8

part of a conspiracy, he is automatically liable "for all injures caused by the conspiracy." *Pl. Br. at 22.* This, of course, is not a causation argument, and Plaintiff cites no authority that RICO's exacting causation standard does not apply to a § 1962(d) RICO conspiracy claim. Of course, it does apply because, among other reasons, § 1962(d) requires an underlying violation of § 1962(c). 18 U.S.C. § 1962(d); *see also, e.g., Jeter v. Wild W. Gas, LLC*, 2025 WL 1819241, at *5 (N.D. Okla. Jul. 1, 2025) (citing *BancOklahoma Mortg. Corp. v. Cap. Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999)) (granting summary judgment on § 1962(d) claim because the underlying § 1962(c) claim was without merit).

But even putting aside this fatal defect, there is perhaps no more compelling explanation for why Plaintiff fails to satisfy RICO's exacting direct causation requirement than his *own description* of the so-called causal chain:

> Gregory made false allegations about Col. Mastriano's dissertation. UNB opened investigations and created a record of institutional concern. Kuhn then published an article and delivered a public symposium presentation affirming the credibility of those allegations . . . Media outlets, publishers, and voters relied on Kuhn's independent academic endorsement . . . Contracts were terminated and negotiations ceased.

*Pl. Br. at 23.* Notably, Plaintiff does not include a *single* citation to paragraphs of the SAC where he purports to make these allegations. (In some cases, for obvious reasons: how could he possibly credibly allege what "media outlets, publishers, and voters" could have "relied on"?) But that does not even matter. Even if he made these allegations, they could hardly make clearer the *multiple* steps it takes to get from something Dr. Kuhn allegedly did to the injuries he alleges. Thus, by Plaintiff's own admission, his theory of this case violates (multiple times over) the U.S. Supreme Court's admonition in *Hemi Group* that

the Court is not to "go beyond the first step" when evaluating causation. Perhaps in recognition of the fatal impact of this holding, Plaintiff oddly argues that this binding Supreme Court precedent somehow does not apply here because it "concerned an intervening third-party actor whose independent decision broke the causal chain." *Pl. Br. at 23.* That is, of course, *precisely what Plaintiff alleges here* when he claims "media outlets, publishers, and voters" (*i.e.,* third-parties) chose to "terminate[] [contracts] and cease[] [negotiations]" (*i.e.*, independent decisions).

The exacting causation standard the U.S. Supreme Court set forth in *Hemi Group* is a bedrock principle of RICO jurisprudence that is applied consistently. In fact, the Supreme Court repeatedly reiterates this standard, including as recently as last year. *See Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 612 (2025) ("whenever the plaintiff's theory of causation requires moving 'well beyond the first step,' it 'cannot meet RICO's direct relationship requirement'") (quoting *Hemi*, 559 U.S. at 10). Plaintiff cannot escape this requirement, and his own words make clear he cannot satisfy it.

Turning next to Plaintiff's lack of standing under the Sherman Act, Dr. Kuhn articulated in his Motion that Plaintiff does not allege any "antitrust injuries." in part because the Sherman Act embraces the same "business or property" standard as RICO, but also because Plaintiff only alleges injuries to his *personal interests* that are, in any event, altogether speculative. *Kuhn Br. at 20–21.* Plaintiff barely responds to these arguments in his Opposition (because he cannot), and when he does, he lumps any response in with his failed RICO standing arguments. Thus, they fail for those same reasons as well.

First, Plaintiff barely addresses the fact that he only alleges *personal interests*,

10

which do not satisfy the Sherman Act. In fact, Plaintiff doubles down on all the *personal interest* injuries he claims. He identifies (again, without any citations) "lost book royalties" (from a hypothetical book deal), "cancelled speaking fees" (from, again, hypothetical speaking engagements that he claims, without support, would have materialized), among others. *Pl. Br. at 24.* Of course, these injuries are *not* "antitrust injuries," *Tal v. Hogan,* 453 F.3d 1244, 1254 (10th Cir. 2006) (rejecting "lost profits and business opportunities" as a "personal injury," not an "antitrust injury"), which is why Plaintiff cites no legal authority in his Opposition. And even if they were, these injuries are, at best, hypothetical and speculative, which are plainly insufficient. *Id. at 1258*.

Second, Plaintiff pivots to arguing that his injuries are "antitrust injuries" because the injuries are "to the competitive process itself, not merely to Col. Mastriano as an individual." *Pl. Br. at 30.* Plaintiff cites *no authority* to support this odd theory that he, an individual, has standing under the Sherman Act to pursue injuries allegedly suffered by "the competitive process." This is, of course, unsurprising, since such a theory makes little sense and would effectively eliminate the Sherman Act's standing requirement.

## III.     FAILURE TO ALLEGE A RICO "PATTERN" OR A RICO "ENTERPRISE"

Plaintiff fares no better trying to argue that he pleaded other essential elements of his RICO claims.

First, in his Motion, Dr. Kuhn demonstrated Plaintiff's failure to allege the most basic RICO element—that Dr. Kuhn participated in any "racketeering activity," let alone a "pattern" of it, in large part because none of the categories of conduct Plaintiff alleges against Dr. Kuhn falls within the definition of "racketeering activity." *Kuhn Br. at 20–23.*

11

In his Opposition, Plaintiff admits this failure but argues, for the *first time,* that what he really alleges against Dr. Kuhn is mail and wire fraud. *Pl. Br. at 25*.

Dr. Kuhn anticipated and preemptively debunked this pivot in his Motion based on Plaintiff's: (1) failure to include *any* reference to either the mail or wire fraud statutes in his Complaint; and, (2) failure to allege *any* of the elements of such a violation against Dr. Kuhn, much less with the heightened particularity Rule 9(b) requires. *Kuhn Br. at 20–23*. With Dr. Kuhn having made this argument in his Motion, one would expect Plaintiff to respond by citing specific paragraphs in the SAC in which he mentions the mail/wire statutes and claims to plead violations of them with the required particularity. But Plaintiff does no such thing. His Opposition does not contain a *single citation to his Complaint,* and for good reason: no allegations of mail/wire fraud exist against Dr. Kuhn.

Nor does Plaintiff make allegations that Dr. Kuhn somehow "participated in" a scheme by other Defendants to commit multiple acts of mail or wire fraud. In his Opposition, Plaintiff purports to rely on emails sent by other Defendants which he claims somehow constitute sufficient pleading of *Dr. Kuhn's* "participation" in a mail/wire fraud scheme. *Pl. Br. at 26.* This is the definition of "grasping at straws." As Dr. Kuhn pointed out in his Motion, there are *zero* allegations in the SAC connecting Dr. Kuhn to those emails (or any other use of the mail or wires). Yet Plaintiff claims that Dr. Kuhn "is personally liable for those predicate acts as a co-conspirator" because Dr. Kuhn has not "claim[ed] he was unaware" of them. *Id.* To state the obvious, this is not how pleadings in a lawsuit work. *Plaintiff* must sufficiently allege every element of every claim he brings against each Defendant, which he admits he has failed to do against Dr. Kuhn. Dr. Kuhn is

under no obligation to "claim[] he was unaware" of emails that had nothing to do with him. Plaintiff's attempted reliance on this argument underscores just how far afield his claim against Dr. Kuhn is from reality.

Plaintiff's continued failure to plead Dr. Kuhn's commission of or participation in a mail/wire fraud scheme is particularly telling because this is now at least the *third* time Dr. Kuhn has made this argument—it also appeared in his two prior Motions to Dismiss. This means Plaintiff has been on notice of this deficiency for *months* and certainly long *before* he filed his SAC, but he has still failed to cure it.[3] There is hardly a clearer admission by Plaintiff that he does not and cannot plead mail or wire fraud, and that he will not be able to do so.

Second, in his Motion, Dr. Kuhn also demonstrated that Plaintiff failed to allege a RICO "enterprise" because: (1) even after amending his Complaint, Plaintiff still does not identify the *members* of the supposed enterprise, and (2) Plaintiff does not allege what Dr. Kuhn did to conduct or participate in the affairs of the *enterprise*. *Kuhn Br. at 23–25*. Again, Plaintiff offers a half-hearted response, at best, which is not grounded in the SAC, as evidenced by his complete lack of citations thereto. For example, Plaintiff asserts that Dr. Kuhn's "publication and public statements were not purely independent acts divorced

---

[3] Plaintiff's argument in his Opposition that Dr. Kuhn's publication appeared in a journal that was "hosted on the internet," *Pl. Br. at 26,* is, of course, likewise deficient and not in compliance with Rule 9(b). But even if that were not the case, Plaintiff "cannot amend [his] complaint by adding factual allegations in [his] response to a motion to dismiss." *In re Ward*, 589 B.R. 424, 430 (Bankr. W.D. Okla. 2018); *see also Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez,* 55 F.3d 488, 494 (10th Cir. 1995)).

from the enterprise." *Pl. Br. at 28.* But he offers no citation to the Complaint where he fills in the gap he now recognizes is necessary to connect these activities to the enterprise.[4]

## IV.    FAILURE TO ALLEGE DEFAMATION OR FALSE LIGHT

In his moving brief, Dr. Kuhn demonstrated why the Court should dismiss Plaintiff's defamation and false light claims under the Oklahoma Citizens Participation Act's ("OCPA") burden shifting framework, *Kuhn Br. at 28–30,* and because Plaintiff's allegations are substantively far from sufficient, *id. at 30–32.* In his Opposition, Plaintiff all but *admits* these dispositive pleading failures and asks the Court to excuse them for a variety of reasons, none of which is valid and for which he provides no supporting authority.

Plaintiff's first excuse boils down to his apparent contention that no defamation claim should *ever* be subject to dismissal under the OCPA because doing so would "presuppose[] the very thing that is in dispute; whether his statements were legitimate expressions of academic opinion or knowing falsehoods." *Pl. Br. at 32–33.* This, of course, is not the law. Far from it. The Oklahoma Legislature passed the OCPA precisely to enable a defendant like Dr. Kuhn "to seek *dismissal*, at an early stage, of a legal action" that violates the statute. *Craig PC Sales & Serv., LLC v. CDW Gov't, LLC,* 2018 WL 4861522, at *10 (W.D. Okla. Apr. 30, 2018) (emphasis added).

Next, Plaintiff asks the Court to ignore his failure to allege "actual malice," which

---

[4] Once again, to the extent Plaintiff is attempting to "amend [his] complaint by adding factual allegations in [his] response to a motion to dismiss," that is flatly prohibited. *In re Ward*, 589 B.R. at 430; *see also Abdulina*, 79 F. Supp. 3d at 1206.

Dr. Kuhn demonstrated (and Plaintiff concedes) is a necessary element because Plaintiff is a "public figure." *Kuhn Br. at 30.* In his Opposition, Plaintiff offers a single, perfunctory response: "The Second Amended Complaint alleges facts sufficient to establish actual malice." *Pl. Br. at 33.* Again, this is Plaintiff's *third* attempt to plead his claims and his *third* attempt to respond to Dr. Kuhn's Motion to Dismiss arguments. And all Plaintiff can muster is a single sentence that baldly concludes he pleads this necessary element but without offering even *a single citation* to the SAC where he purports to do so. That is because he does not do so in this, or any prior, version of his Complaint. Indeed, Plaintiff *admits* as much, conceding he accuses *other Defendants* of actual malice but not Dr. Kuhn, but seeking to excuse this clear pleading failure as "hyper-technical." *Id. at 34.* Of course, he offers no legal citation for this assertion for obvious reason: alleging actual malice is not a technicality – it is a necessary *element* of any defamation claim against a public figure. *See, e.g., Wright v. Haas,* 586 P.2d 1093, 1096 (Okla. 1978) (actual malice is "an essential element"). Failing to allege this element is no more a "technicality" than failing to allege any other element of any other claim. Perhaps recognizing the dispositive nature of this failure, Plaintiff offers a final, legal "Hail Mary" argument, arguing that his allegations of a "conspiratorial framework" entitle him to an "actual malice inference." *Pl. Br. at 35.* Predictably, yet again, Plaintiff cites no legal authority that endorses such an "inference" in the absence of admitted actual allegations. There is, of course, no such authority.

Plaintiff then prattles on for several paragraphs, nary a citation to the Complaint to be found anywhere, before ultimately ending where he began: begging the Court to spare his claim by suggesting that defamation claims should *never* be dismissed because

15

"[w]ether statements constitute actionable fact versus protected opinion is generally a question for the jury, not a question of law to be resolved on a motion to dismiss." *Pl. Br. at 34.* Plaintiff, yet again, cites *zero* authority to support this sweeping assertion. There is, of course, none, and Courts routinely dismiss defamation claims at the Rule 12 stage where, as here, they are deficiently pleaded.

Finally, Plaintiff argues that his false light claim independently survives against Dr. Kuhn. Plaintiff admits, as he must, that this claim largely overlaps with his defamation claim. *Pl. Br. at 35.* On this point, Dr. Kuhn and Plaintiff agree. Indeed, as Dr. Kuhn articulated in his moving brief, it is precisely because of this overlap that all of the reasons this Court should dismiss Plaintiff's defamation claim likewise apply to his false light claim. This remains true, and Plaintiff again offers no citations to the SAC to alter this conclusion.

## V.    PLAINTIFF'S REQUEST TO FILE A *FOURTH* VERSION OF HIS COMPLAINT IS ABUSIVE AND HIGHLIGHTS THE GAMES HE IS PLAYING

The last thing Plaintiff requests in his Opposition is for a *fourth* chance to plead his claims. This request is, candidly, insulting to this Court and to Dr. Kuhn, who has already thrice spent substantial time and resources drafting and redrafting Motions to Dismiss to account for Plaintiff's moving target of allegations. That Plaintiff asserts that "Kuhn would suffer no undue prejudice from amendment," *Pl. Br. at 39,* is particularly galling and serves only to underscore the abusive nature of the request and Plaintiff's entire approach to this litigation. Dr. Kuhn has already suffered immense prejudice from Plaintiff's repeated amendments, having had to incur legal fees each time Plaintiff engages in a new round of

16

"whack-a-mole" with this Complaint. Plaintiff has had *three* chances to plead his claims already, and he has for months now been fully aware of the myriad deficiencies Dr. Kuhn asserts as grounds for dismissal. Simply put, if Plaintiff could plead his case, he would have done so already, and he certainly *should have* done so already. He has not, and he cannot. And his request for yet another opportunity is tantamount to an admission of these failures.

## VI.    CONCLUSION

For the reasons stated above and in Dr. Kuhn's principal brief, the Court should dismiss Plaintiff's Amended Complaint with prejudice. Further, Dr. Kuhn requests that the Court award him his costs, reasonable attorney fees, and other expenses pursuant to 12 O.S. §1438(A)(1).

Dated:  March 23, 2026                    Respectfully submitted,

                                          */s/ Gerard M. D'Emilio*
                                          Gerard M. D'Emilio, OBA No. 33496
                                          **GABLEGOTWALS**
                                          BOK Park Plaza 4
                                          99 West Sheridan Ave., Suite 2200
                                          Oklahoma City, OK 73102
                                          T: (405) 235-5500
                                          F: (405) 235-2875
                                          gdemilio@gablelaw.com

                                          R. Trent Shores, OBA No. 19705
                                          Barrett L. Powers, OBA No. 32485
                                          **GABLEGOTWALS**
                                          110 N. Elgin Ave., Ste. 200
                                          Tulsa, Oklahoma 74120-1495
                                          Telephone (918) 595-4800
                                          Facsimile (918) 595-4990
                                          Email: tshores@gablelaw.com
                                          bpowers@gablelaw.com

                                          *- and -*

                                          Callan G. Stein (*admitted pro hac vice*)
                                          **TROUTMAN PEPPER LOCKE LLP**
                                          High Street Tower
                                          125 High Street, 19th Floor
                                          Boston, MA 02110
                                          callan.stein@troutman.com

                                          Matthew J. Lund (*admitted pro hac vice*)
                                          **TROUTMAN PEPPER LOCKE LLP**
                                          500 Woodward Avenue, Suite 2800
                                          Detroit, MI 48226
                                          248.359.7300
                                          matthew.lund@troutman.com

                                          ***Attorneys for Defendant Roland Kuhn***

18

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2026, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.

*/s/ Gerard M. D'Emilio*
Gerard M. D'Emilio

19