**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| DOUGLAS MASTRIANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-567-J |
| | ) | |
| JAMES GREGORY, III, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is Defendant University of New Brunswick, Canada's (UNB) motion to dismiss [Doc. No. 195]. Plaintiff has filed a response, and UNB has filed a reply.

## I. Background

Plaintiff filed this case on May 31, 2024, alleging claims for civil racketeering, anti-trust violations, fraud, aiding and abetting/breach of fiduciary duty, negligence, and defamation. On February 8, 2025, Plaintiff filed an amended complaint, and on February 10, 2026, Plaintiff filed a second amended complaint (SAC). According to Plaintiff:

> This is an action for damages arising from Defendants' coordinated efforts of fraud, defamation, and anti-competitive conduct designed to destroy Plaintiff's academic reputation, eliminate him as a competitor in the market for World War I military history and scholarship, and interfere with his political campaigns for public office.

SAC at 2. Plaintiff asserts claims against UNB; its president, vice-president/director of research, dean of graduate studies, and several UNB history professors, faculty members, and instructors; and James Gregory III (Gregory), who was a graduate student and Ph.D. candidate at the University of Oklahoma at the time of the events at issue in this case. UNB now moves to dismiss all claims against it with prejudice for lack of subject matter jurisdiction. Specifically, UNB asserts

it is immune from this Court's subject matter jurisdiction under the terms of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602, et seq.

## II. Discussion

"The FSIA provides the exclusive basis for obtaining jurisdiction over claims against a foreign state or its instrumentalities in the United States." *Hansen v. PT Bank Negara Indonesia (Persero), TBK*, 601 F.3d 1059, 1062 (10th Cir. 2010). A "foreign state" "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state". 28 U.S.C. § 1603(a).

> An "agency or instrumentality of a foreign state" means any entity–
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b). Pursuant to 28 U.S.C. § 1604, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604.

> Courts apply a burden-shifting analysis to determine whether a foreign state or its instrumentality is immune under the FSIA. Under this analysis, once the defendant establishes that it is a foreign state entitled to immunity, the plaintiff bears the burden of production to make an initial showing that an FSIA exception to immunity applies. If the plaintiff carries its initial burden, the defendant bears the ultimate burden of proving by a preponderance of the evidence that the claimed exemption does not apply in the particular case.

*Hansen*, 601 F.3d at 1062. Because UNB's assertion of immunity under the FSIA is a factual attack on the Court's subject matter jurisdiction, this Court may not presume the truthfulness of the complaint's factual allegations and has discretion to allow affidavits and other documents to

resolve disputed jurisdictional facts. *See Herrera v. Las Cruces Pub. Schs.*, 695 F. App'x 361, 367 (10th Cir. 2017).

**A. Whether UNB Is a Foreign State**

UNB asserts it is a "foreign state" under the FSIA. Specifically, UNB contends that it is an organ of the Province of New Brunswick. Plaintiff does not dispute that UNB is a separate legal person and is neither a citizen of a State of the United States nor created under the laws of any third country but does dispute that UNB qualifies as an organ of a foreign state.

When assessing whether an entity qualifies as an organ of a foreign state, courts consider the following five factors: "(1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 846-47 (5th Cir. 2000). These factors provide a "helpful framework," but are not mechanically applied, and there is no requirement that all five factors support an organ-determination. *See id.* at 847.

Having reviewed the five factors, the Court concludes UNB qualifies as an organ of the Province of New Brunswick and, thus, is an organ of a foreign state under the FSIA. First, the Court finds the Province of New Brunswick created UNB for a national purpose. The Province of New Brunswick established UNB on April 13, 1859 "to make provision for a comprehensive system of University Education, such as will embrace not only the usual subjects of a Collegiate course, but also those branches of practical science and art which are adapted to the agricultural, commercial, and mechanical pursuits of the great body of the inhabitants of New Brunswick . . . ." 23 Victoria – Chapter 63 (1859). Additionally, UNB's website states that UNB "create[s] the

industries and opportunities of the New Brunswick of tomorrow." *See* https://www.unb.ca.toward2030/vision.html (last accessed August 26, 2026). The website further exemplifies the public mission as follows:

> New Brunswick and Canada need bold new ideas and decisive action to secure a more prosperous and just future. We will create and share the knowledge that is essential to push society forward. UNB will tackle society's great challenges head-on and create positive change. This is our mission of service to our province and the world.

*Id.*

Second, the Court finds the Province of New Brunswick actively supervises UNB. Nearly two-thirds of the members of UNB's Board of Governors[1] were appointed by New Brunswick's Lieutenant Governor in Council, were elected by voters, or were appointed by the Board of Governors, which includes individuals appointed by the Lieutenant Governor in Council and elected officials. Additionally, New Brunswick's Lieutenant Governor approves the appointment of UNB's president. *See* Fourth Declaration of Paul Mazerolle at ¶ 4. Finally, UNB's president occasionally meets with New Brunswick's Premier, attends regular meetings with New Brunswick's Minister of Post-Secondary Education or his or her Deputy Ministers, and attends meetings with New Brunswick's Minister of Health and his or her Deputy Ministers. *See id.* at ¶ 5-7.

Third, the Court finds UNB's employees are public employees whose salaries are paid for by funding from the Province of New Brunswick. *See* Third Declaration of Paul Mazerolle at ¶ 7. Fourth, the Court finds New Brunswick affords exclusive rights to UNB. For example, non-commercial property owned by UNB is generally not subject to New Brunswick's Provincial taxes

---

[1] The Board of Governors is responsible for UNB's financial issues, property and facilities, and other matters necessary for the governance of UNB.

on real property, *see* Assessment Act at 4(1)(l), and real property vested in UNB is afforded certain statutory protections, including protection from expropriation by municipal corporations and an applicable statutory limitations period equal to that of land vested in the Crown, *see* University of New Brunswick Act at § 10(1),(2). Finally, the Court finds New Brunswick law treats UNB as a publicly funded employer. *See* Expenditure Management Act, 1991 at 2 and 10 [Doc. No. 153-9].

**B. Whether an FSIA Exception to Immunity Applies to UNB**

Plaintiff contends that numerous exceptions to immunity apply in this case. Specifically, Plaintiff contends the commercial activity exception, the tortious acts exception, the waiver exception, and the expropriation exception apply. UNB asserts these exceptions to immunity do not apply.

**1. Commercial Activity Exception**

The commercial activity exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in any case:

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States; . . .

28 U.S.C. § 1605(a)(2). The FSIA defines "commercial activity" as follows:

> A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). The Supreme Court addressed the meaning of "commercial activity" for purposes of the FSIA in *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) and concluded:

> when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are "commercial" within the meaning of the FSIA. Moreover, because the Act provides that the commercial character of an act is to be determined by reference to its "nature" rather than its "purpose," 28 U.S.C. § 1603(d), the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in "trade and traffic or commerce".

*Weltover*, 504 U.S. at 614.

Having carefully reviewed the SAC, the Court concludes the commercial activity exception does not apply in this case. Plaintiff alleges UNB publicly released his embargoed PhD after Gregory filed fraudulent academic complaints and conducted an investigation into the allegations against Plaintiff's PhD thesis work. These actions are not commercial in nature – they are not the type of actions by which a private party engages in trade and traffic or commerce.

**2. Tortious Acts Exception**

The tortious acts exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in any case:

> not otherwise encompassed in [the commercial activity exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment . . . .

28 U.S.C. § 1605(a)(5). Courts "have repeatedly interpreted the phrase 'occuring within the United States' to mean that the 'entire tort' must have occurred in the United States." *Doe v. Fed.*

*Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 19 (D.D.C. 2016). "[B]oth the tort and the injury must occur in the United States. Congress' primary purpose in enacting § 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law." *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014). Having carefully reviewed the SAC, the Court concludes the tortious acts exception does not apply in this case. While any alleged injuries may have occurred in the United States, the tortious acts alleged to have been committed by UNB occurred in Canada.

**3. Waiver Exception**

The waiver exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in any case:

> in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver . . . .

28 U.S.C. § 1605(a)(1). "The standard for finding a waiver is quite stringent. A waiver must be 'unequivocally expressed,' and 'must be strictly construed in favor of the sovereign,' with ambiguities construed against waiver." *In re Rivera Torres*, 432 F.3d 20, 23-24 (1st Cir. 2005) (internal citations omitted). While Plaintiff asserts that UNB waived its sovereign immunity, Plaintiff provides no evidence of any waiver. Accordingly, the Court finds the waiver exception does not apply in this case.

**4. Expropriation Exception**

The expropriation exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States in any case:

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a

> commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a)(3). In the SAC, Plaintiff does not allege any violation of international law. Accordingly, the Court finds that expropriation exception does not apply in this case.

## III. Conclusion

As set forth above, UNB is an organ of a foreign state, and none of the FSIA exceptions to immunity asserted by Plaintiff apply. The Court therefore finds UNB is immune from this Court's subject matter jurisdiction under the FSIA and should be dismissed with prejudice. The Court, accordingly, GRANTS UNB's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 195] and DISMISSES Plaintiff's claims against UNB for lack of subject matter jurisdiction.

IT IS SO ORDERED this 1st day of September, 2026.

BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE